**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Hudson 1701/1706, LLC, *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Joint Administration Requested)<br><br>**Proposed Hearing Date: November 3, 2025 at 9:00 a.m. (ET)**<br>**Objection Deadline: At the time of the hearing** |

**EMERGENCY MOTION OF THE DEBTORS
FOR ENTRY OF AN ORDER AUTHORIZING
<u>THE DEBTORS TO CONDUCT RULE 2004 EXAMINATIONS</u>**

Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the **"Debtors"**), by and through their proposed special counsel, DLA Piper LLP (US), hereby submit this emergency motion (this "**Motion**") for entry of an order, substantially in the form attached to this Motion as **<u>Exhibit A</u>** (the "**Proposed Order**"), authorizing the Debtors to demand and compel by way of subpoenas (the "**Subpoenas**") the Books and Records (*as defined below*) and all other property of the Debtors' estates in the possession, custody or control from the parties identified in the Subpoenas attached to this motion as **<u>Exhibit C</u>**, pursuant to Rule 2004 and Local Rule 2004-1 of the Bankruptcy Rules of Practice and Procedures (the "**Bankruptcy Rules**").  This examination is critical to ensure the efficient administration of these Chapter 11 Case, to obtain documents essential for the management of the Debtors' estates—including, without limitation, the preparation and filing of traditional 'first day' pleadings and the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs—and providing timely and adequate notice to all creditors and parties in interest regarding matters affecting the Debtors.  In further support of this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

Motion, the Debtors submit the accompanying Declaration of Stuart Brown (the "**Brown Declaration**") attached to this Motion as **Exhibit B** and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2.      Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court on this Emergency Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested by this Emergency Motion are Bankruptcy Rules 2004, 7026, and 9016 of the Federal Rules of Bankruptcy Procedure, and Local Rules 2004-1 and 7026- 1.

## BACKGROUND

5.      This bankruptcy arises from an effort to redevelop the Hudson Hotel located at 353 West 57th Street, New York, New York 10019 (the "**Hudson Hotel**") into a multifamily residential property with commercial space and a penthouse unit.

6.      To develop that property, Alberto Smeke Saba and Salomon Smeke Saba (the "**Smekes**") secured a $207 million loan from Parkview Financial REIT, LP ("**Parkview**") (the "**Loan**").  The Loan was provided to the Smekes business entity, CSC Hudson, LLC ("**CSC**"), which

in turn set up the Debtor Hudson 1701/1706, LLC and Hudson 1702, LLC to run the development. To secure the loan, CSC pledged 100% of their equity interests in Debtors as security in the event of a default.

7.     After receiving the Loan, the Smekes severely mismanaged construction of the project.  This led to, among others, the New York City Department of Housing Preservation and Development ("**HPD**") finding that the Smekes were harassing existing rent-stabilized, single room occupancy tenants who enjoy protections under New York City law.  The HPD issued a stop work order halting construction.  Rather than appeal the determination, the Smekes agreed to enhanced permanent low-income housing requirements for the project to cure the finding of harassment.  The agreement requires new building plans and the Project remains subject to a Stop Work Order (the "**Stop-Work Order**").  At the same time, and as a consequence of the Smeke's conduct, the Ground Lessor demanded and obtained concessions that increased the Ground Rent due under the Ground Lease between the Debtors and the Ground Lessor.

8.     Thereafter, the Smekes effectively abandoned the Project and defaulted on the Loan on the Maturity Date.  As a result, on July 25, 2025, Parkview, through PV Hudson, LLC ("**PV Hudson**") acquired CSC's interest in the Debtors through a duly noticed public auction conducted pursuant to the New York Uniform Commercial Code, thereby becoming the sole member of the Debtors (the "**UCC Sale**").

9.     Subsequently, the Debtors, CSC, and the Smekes entered into a *Settlement and Release Agreement* dated August 7, 2025 (the "**Settlement Agreement**").  The Settlement included covenants requiring the Smekes and CSC to provide information and documents as reasonably requested by Parkview to administer the Debtors and the redevelopment.  *See* **Exhibit 1** to the Brown Declaration.

10.     Yet the Smekes and CSC have failed to provide the Debtors' books and records that are critical to the transition, ownership, and administration of the Debtors' estates, despite repeated requests going back to July 25, 2025 – the day of the UCC Sale itself.  *See* **Exhibit 2** to the Brown Declaration (the "**July Demand**").

11.     Most recently, on October 23, 2025, the Debtors sent another Request for Information and Turnover of Accounts to counsel for the Smekes and CSC at Vedder Price (the "**October Demand**" and together with the July Demand, the "**Demand Letters**").  *See* **Exhibit 3** to the Brown Declaration.  The October Demand was sent as a follow up to the July Demand and referenced the Settlement Agreement that required CSC and the Smekes to comply with their covenants to provide documents and information.  The October Demand provided a clear list of the documents and information needed, and requested that they be provided no later than October 27, 2025.

12.     After receiving no response by the deadline, the Debtors promptly followed up via email, reiterating their demand for the immediate turnover of the books and records and expressly notifying counsel that, absent compliance, a Rule 2004 motion would be filed.  *See* **Exhibit 4** to the Brown Declaration.

13.     On October 28, 2025, Vedder Price responded by email stating: "Confirming that none of David, I nor Vedder Price, have any of the information you sought in your letter." *Id.*  This response appeared to misconstrue the request, which was not only to Vedder Price, but also to their clients for the information requested and outstanding for three months.

14.     As a result, on October 29, 2025, counsel to the Debtors and Vedder Price met and conferred.  *See* Brown Declaration ¶ 8. During the call, Vedder Price, reiterated their apparent confusion and asked for a detailed letter identifying each individual and entity within CSC that the demand was made to.  *See* Brown Declaration ¶ 8.  While the letter and multiple requests have been

clear, counsel for Debtors nonetheless sent another email stating that the request was directed to any entity who maintains property of the Debtors in its custody, possession and control.  *See* **Exhibit 5** to the Brown Declaration.  Although the information about who has possession and custody is within Vedder Price and its clients' knowledge only, Debtors also stated that they "believe that the entities and individuals who maintain the debtors' property may include, but is not limited to, CSC Hudson LLC, CSC Co-Living, Alberto Smeke Saba, Salomon Smeke Saba, K&L Gates LLP, Vedder Price LLP."  *Id.*  To ensure that the information is timely provided, the Debtors requested confirmation by 4:00 p.m. on October 29 that the Books and Records would be turned over by Friday, October 31, at 12:00 p.m.  *Id.*

15.     During a follow-up call on October 29, counsel for the Smekes stated that they had requested a call with their client and would seek the necessary information, but did not confirm if or when information would be provided.  Debtors' counsel stated that they would wait for a further response until 12:00 p.m. on October 30, 2025.  Following the call, counsel for the Smekes sent an email stating only that "Alberto Smeke" was "not opposed to sharing what he has," and that he would "start working through the list tomorrow morning," and that he would "provide an update as to what he has and does not have."  *See* **Exhibit 5** to the Brown Declaration.

16.     On October 30, 2025, five hours after the 12:00 p.m. deadline had passed, counsel for the Smekes replied stating that the client is "putting together requested information" and that they "expect to receive" some documents which they will provide the next day.  The Debtors replied stating that given the passage of time, and the urgency in receiving the Debtors' financial and other documents, the Debtors would continue with the filing of the rule 2004 motion.  *Id.*

17.     The ongoing noncompliance and lack of clarity from  the Smekes and CSC about who will produce which documents and when has impeded and continues to impede the Debtors' ability

to administer their estates, evaluate their assets and liabilities, and fulfill their obligations under the Bankruptcy Code. *See* Brown Declaration ¶ 11. Notably, the Debtors are unable to advance the continued development of the Property because CSC and the Smekes have refused to authorize a contractor to release essential plans and documentation, including a complete set of design documents necessary for ongoing development of the property. *Id.* The Debtors are also unable to provide complete disclosures to the Court and their creditors and are unable to comprehensively respond to requests for information from the US Trustee. *Id.*

18.    Accordingly, the Debtors seek authority to conduct a Rule 2004 examination of the Smekes and CSC to compel the production of the documents identified in the Subpoenas. Expedited examination and immediate production of all Debtors' books and records, as well as turnover of all servers with data preserved, are necessary to protect the estate, administer these Chapter 11 Cases and preserve the ongoing operations of the Debtors.

## **RELIEF REQUESTED**

19.    The Debtors request entry of an order authorizing the issuance of Subpoenas pursuant to Rule 2004 for the document production from the following parties: (i) Alberto Smeke Saba and Salomon Smeke Saba; and (ii) CSC Hudson, LLC (collectively, the "Requested Examinees").

20.    The scope of the examination and the information requested includes:

a.    All financial statements (whether audited or unaudited), income statements, balance sheets, federal and state tax returns, and other financial documents of the Debtors.

b.    All documents and communications related to the Loan, the Property, and the Settlement Agreement.

c.    All documents and communications related to the single-room occupancy ("SRO") tenants in the Property.

d.  All documents and communications related to the Stop-Work Order, all efforts to comply with it, and efforts to cure the violations.

e.  All contracts, agreements, leases, construction contracts, service and maintenance agreements, supply agreements, license agreements, utility agreements, warranties, guaranties, understandings and arrangements entered into between either Debtor and any entity, including any property management contracts, leases, etc., and any amendments or modifications thereto (collectively "Agreements"), and any other material documents and correspondence relating to such Agreements, including any notices of claims, demands or defaults.

f.  All Federal, state and local governmental permits, licenses, approvals and consents in connection with the Debtor's operations and the Property.

g.  All servers and passwords to email accounts owned or controlled by the Debtors.

h.  Information sufficient to access to all bank accounts in the Debtors' names and take all steps to cause the Debtors' current management to be signatory on all such bank accounts.

i.  Identify which account SRO rents are paid into, and account for all rents paid since July 25, 2025.

j.  Copies of all books and accounts of the Debtors and other records for the Property and the improvements thereon.

k.  A list of all of the current SRO Tenants, their contact information, and copies of all related leases and other agreements.

(the "**Books and Records**").

**BASIS FOR RELIEF**

21.     Bankruptcy Rule 2004(a) provides, "On motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).  The party seeking a 2004 examination has the burden of showing good cause.  *In re Millennium Lab Holdings, LLC*, 562 B.R. 614, 627–28 (Bankr. D. Del. 2016).

22.     By its express language, a Rule 2004 examination contemplates a broad and far-reaching inquiry into a debtor's affairs, including "any matter than may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).  Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate's interest in property, for discovering assets, examining transactions, and any matter that may affect the administration of the debtor's estate.  *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 278 (3d Cir. 2013) (citations omitted).

23.     Numerous courts have held that the scope of a Rule 2004 examination is broader than the discovery permitted under the Federal Rules of Civil Procedure.  *See In re Millennium Lab Holdings II,* 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Rule 2004 . . . has been likened to a fishing expedition and an inquisition" (internal quotation marks omitted)); *In re Washington Mut., Inc.*, 408 B.R. 45, 49 (Bankr. D. Del. 2009) ("The scope of a Rule 2004 examination is 'unfettered and broad.'") (quoting *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)); *In re Countrywide Home Loans*, 384 B.R. at 400 (same); *Jacobson v. Jacobson (In re Lev)*, 2008 WL 207523, at *3 (Bankr. D.N.J. 2008) (same).  Furthermore, a motion for a Rule 2004 examination may be heard on an *ex parte* basis.  *See* Advisory Committee Note to Rule 2004; *In re Hickman*, 151 B.R. 125 (Bankr. N.D. Ohio 1993).

24.     Here, the Debtors have good cause as denial of the Motion would result in undue hardship and injustice.  *See In re Millennium Lab Holdings, LLC*, 562 B.R. at 627–28 ("Good cause is shown if [] denial of [a rule 2004 request] would cause the examiner undue hardship or injustice."). The Books and Records rightfully belong to the Debtors pursuant to the UCC sale and are critical to the administration of the Debtors' estates.  Despite repeated requests over three months, the Smekes continued failure to produce documents or confirm the scope of compliance, custodians, and timing continues to hinder the Debtors' ability to administer their estates, assess assets and liabilities, and satisfy Bankruptcy Code requirements.

25.     Thus, this motion is necessary and critical for the production of documents as soon as possible to ensure that the Debtors have the information necessary to obtain the relief required to administer the estate, preserve estate assets, and provide timely and adequate notice to all creditors and parties in interest.

26.     The Debtors reserve all rights.

## CERTIFICATION PURSUANT TO LOCAL BANKRUPTCY RULE 2004-1

27.     In accordance with Local Rule 2004-1(b), the undersigned counsel certifies that, prior to filing this Motion, the Debtors met and conferred with counsel to CSC and the Smekes through the issuance of the Demand Letters and two conference calls with opposing counsel on October 29, 2025. Despite repeated requests, no documents have been produced, nor has there been any commitment to produce the Books and Records.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, requiring the Requested Examinees to produce the documents and other materials requested in the Subpoenas and send such documents and other materials to the undersigned counsel to the Debtors by 4:00 p.m. (ET) five (5) calendar days after the Court enters the Proposed Order and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated:  October 30, 2025
        Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 _/s/  Stuart M. Brown_
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email:  stuart.brown@us.dlapiper.com

-and-

David M. Riley (admitted *pro hac vice*)
Neal Kronley (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212-335-4501
Email:  david.riley@us.dlapiper.com
            neal.kronley@us.dlapiper.com

*Proposed Special Counsel to the Debtors*