# EXHIBIT B

**Brown Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Hudson 1701/1706, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Joint Administration Requested)<br><br>**Proposed Hearing Date: November 3, 2025 at 9:00 a.m. (ET)**<br>**Objection Deadline: At the time of the hearing** |

**DECLARATION OF**
**STUART BROWN IN SUPPORT OF EMERGENCY**
**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER**
**AUTHORIZING THE DEBTORS TO CONDUCT RULE 2004 EXAMINATIONS**

I, Stuart Brown, hereby declare under penalty of perjury as follows:

1.　　I am a Partner at DLA Piper LLP (US) ("**DLA Piper**"), special counsel to the Debtors. I submit this declaration ("**Declaration**") in support of the Debtors' *Emergency Motion of the Debtors for Entry of an Order Authorizing the Debtors to Conduct Rule 2004 Examinations* (the "**Rule 2004 Motion**")[2].

2.　　DLA Piper LLP (US) has represented the Debtors' prepetition lender, Parkview, since 2024. On July 25, 2025, Parkview, through PV Hudson, LLC, acquired CSC's interest in the Debtors at a duly noticed public auction conducted pursuant to the New York Uniform Commercial Code, thereby becoming the Debtors' sole member (the "**UCC Sale**"). On October 15, 2025, DLA Piper was engaged by the Debtor, Hudson 1701/1706, LLC, and its debtor affiliate, Hudson 1702, LLC.

3.　　Immediately upon retention—and, in certain respects, prior to our retention in our capacity as counsel to Parkview—I, together with my team of attorneys at DLA Piper, commenced

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

[2] Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Rule 2004 Motion.

reviewing diligence materials, requesting production of documents, and evaluating strategic alternatives for the Debtors' businesses.  Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge.

4.      A true and correct copy of the *Settlement and Release Agreement* dated August 7, 2025 (the "**Settlement Agreement**") is attached hereto as **Exhibit 1**.  The Settlement Agreement is between Alberto Smeke Saba and Salomon Smeke Saba (the "**Smekes**"), the Debtors, and CSC and includes covenants requiring the Smekes and CSC to provide information and documents as reasonably requested by Parkview to administer the Debtors and the redevelopment.

5.      A true and correct copy of the July Demand, dated July 25, 2025, is attached to this Declaration as **Exhibit 2**. The July Demand requested the turnover of critical estate property and documents no later than July 29, 2025. The Debtors did not receive the requested materials.

6.      A true and correct copy of the October Demand, dated October 23, 2025, is attached to this Declaration as **Exhibit 3**.  The October Demand referenced the Settlement Agreement that required CSC and the Smekes to comply with their covenants to provide documents and information. The October Demand provided a clear list of the documents and information needed, and requested that they be provided no later than October 27, 2025.

7.      After receiving no response from Vedder Price by the deadline, DLA Piper, on behalf of the Debtors, promptly followed up via email, reiterating the demand for the immediate turnover of the books and records and expressly notifying counsel that, absent compliance, a Rule 2004 motion would be filed. On October 28, 2025, a day after the deadline, Vedder Price responded by email stating: "Confirming that none of David, I nor Vedder Price, have any of the information you sought in your letter."  A true and correct copy of this email string is attached to this Declaration as **Exhibit 4**.

8.      On October 29, 2025, counsel from DLA Piper and Vedder Price met and conferred. During the call, DLA Piper referred to the Postpetition Demand Letter addressed to Vedder Price demanding information from their clients.  Vedder Price reiterated their apparent confusion and asked for a detailed letter identifying each individual and entity within CSC that the demand was made to. DLA Piper sent another email stating that the request was directed to any entity who maintains property of the Debtors in its custody, possession and control.  The email also stated that the Debtors "believe that the entities and individuals who maintain the debtors' property may include, but is not limited to, CSC Hudson LLC, CSC Co-Living, Alberto Smeke Saba, Salomon Smeke Saba, K&L Gates LLP, Vedder Price LLP." *Id.*  The Debtors requested confirmation by 4:00 p.m. on October 29 that the Books and Records would be turned over by Friday, October 31, at 12:00 p.m. A true and correct copy of this email string is attached to this Declaration as **Exhibit 5**.

9.      During a follow-up call on October 29, counsel for the Smekes stated that they had requested a call with their client and would seek the necessary information, but did not confirm if or when information would be provided.  Debtors' counsel stated that they would wait for a further response until 12:00 p.m. on October 30, 2025.  Following the call, counsel for the Smekes sent an email stating only that "Alberto Smeke" was "not opposed to sharing what he has," and that he would "start working through the list tomorrow morning," and that he would "provide an update as to what he has and does not have." *See* **Exhibit 5**.

10.      On October 30, 2025, five hours after the 12:00 p.m. deadline had passed, counsel for the Smekes replied stating that the client is "putting together requested information" and that they "expect to receive" some documents which they will provide the next day.  I responded to this email noting that given the passage of time, and the urgency in receiving the Debtors' financial and other documents, the Debtors would continue with the filing of the rule 2004 motion. *Id.*

11.     The ongoing noncompliance and lack of clarity from the Smekes and CSC about who will produce which documents and when has impeded and continues to impede the Debtors' ability to administer their estates, evaluate their assets and liabilities, and fulfill their obligations under the Bankruptcy Code. Notably, the Debtors are unable to advance the continued development of the Property because CSC and the Smekes have refused to authorize a contractor to release essential plans and documentation, including a complete set of design documents necessary for ongoing development of the property. The Debtors are also unable to provide complete disclosures to the Court and its creditors and are unable to comprehensively respond to requests for information from the US Trustee.

Dated:   October 30, 2025             Respectfully submitted,
         Wilmington, Delaware
                                       _/s/ Stuart M. Brown_
                                      Stuart M. Brown

## **EXHIBIT 1**

**Settlement Agreement**

## SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** (this "**Agreement**"), dated August 7, 2025 (the "**Effective Date**") is entered into by and among (I) PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership having an office at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049, as administrative agent (in such capacity, together with its successors and assigns, "**Administrative Agent**") for itself (in such capacity as a Lender, the "**Parkview Lender**") and the other lenders from time to time a party to the Loan Documents (collectively, together with their successors and assigns, "**Lender**" or "**Lenders**"), (II) HUDSON 1702, LLC and HUDSON 1701/1706, LLC, each a Delaware limited liability company, having an office at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049 (collectively, "**Borrower**"), (III) CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("**Holdings**"), and (IV) ALBERTO SMEKE SABA and SALOMON SMEKE SABA, each a natural person (individually and collectively, as the context may require, and jointly and severally, "**Guarantor**" and Holdings and Guarantor, collectively, the "**Guarantor Parties**").

**WHEREAS**, Borrower, Lenders and Guarantor Parties (collectively, the "**Parties**"), as applicable, are parties to certain loan documents set forth on Exhibit A hereto (the "**Loan Documents**");

**WHEREAS**, the Parties have agreed to settle their respective claims upon the terms and conditions set forth herein, in order to avoid lengthy, costly, and time-consuming litigation and, and without any admission by any Party of liability or fault, or payment, whatsoever.

**NOW, THEREFORE**, in consideration of the foregoing, the mutual covenants and obligations contained herein and in exchange for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

**1.** **Capitalized Terms**. Capitalized terms not otherwise set forth herein have the meaning ascribed such terms in the Loan Documents.

**2.** **Covenants**.

a) Within two (2) business days of the Effective Date (the "**Escrow Date**"), Guarantors and Lender shall deliver to First American Title Insurance Company (the "**Escrow Agent**") and to Lender and Guarantors, respectively, a copy of the escrow agreement in the form attached hereto as Exhibit "B" (the "**Escrow Agreement**") duly executed by such Party.

b) Within two (2) business days of the Escrow Date, Guarantors shall deliver, or cause to be delivered, to the Escrow Agent four (4) duly executed and notarized counterpart signature pages from Hudson 1705, LLC, a Delaware limited liability company, together with an irrevocable authorization in favor of Administrative Agent and Borrower, in each case in form and substance attached hereto as Exhibit "C" (the "**Executed Counterparts**"), for Lender's and/or Borrower's attachment to a Waiver of Execution and Subordination to Cure Agreement (and to amendments thereto) to be submitted in connection with obtaining the Cure Approval and Lifting of the Stop Work Order (as such term is defined below) and shall deliver to Lender a copy of such Executed

Counterparts marked "draft". Such Executed Counterparts shall be held pursuant to the Escrow Agreement.

c)      No later than two (2) business days following notice from the Escrow Agent confirming that Escrow Agent has received the Executed Counterparts, together with a copy of the Escrow Agreement executed by the Guarantors, Lender shall deposit an amount equal to $4,637,500.00 (the "**Cure Delivery Fee**") into the escrow account of the Escrow Agent in accordance with the wire instructions attached to the Escrow Agreement. Such Cure Delivery Fee shall be held pursuant to the Escrow Agreement. If Lender does not so deposit the Cure Delivery Fee into such escrow account by such date, the Escrow Agent shall return the Executed Counterparts to the Guarantors who shall return them to Hudson 1705, LLC, a Delaware limited liability company.

d)      The Escrow Agreement shall provide that, within two (2) business days of the deposit of the Cure Delivery Fee into the escrow account, (x) the original Executed Counterparts shall be delivered to Lender, and (y) $3,000,000.00 of the Cure Delivery Fee shall be delivered to the Guarantors. The Escrow Agreement will further provide that, provided the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction, the remainder of the Cure Delivery Fee shall be delivered to the Guarantors within five (5) business days of the earlier to occur of (x) receipt by Borrower of the Cure Approval and Lifting of the Stop Work Order and the New York City Department of Buildings (the "Department of Buildings") and each applicable agency, including the New York City Department of Buildings, granting all approvals, permits and licenses required to complete the construction and development of the Project, including, without limitation, giving effect to the J-1 Unit Zoning Conversion and (y) the date that is ninety (90) days after the Effective Date.

As used herein the term "Cure Approval and Lifting of the Stop Work Order" means an agreement with New York City Department of Housing Preservation and Development ("HPD"), HPD's Inclusionary Housing Unit (the "IH Unit") and/or any other applicable authority, in such form as Administrative Agent shall approve, that cures the public record of any "Finding of Harassment" and that stipulates satisfaction of an "Affordability Requirement" that requires that a specified percentage of the residential or hotel floor area of the Project be rented to individuals earning at or below a specified percentage of the Area Median Income in perpetuity, and the term "J-1 Unit Zoning Conversion" means the issuance by the Department of Buildings and each other applicable agency, pursuant to applicable required documentation, of all required permits to permit construction of the Project with all of the non-SRO Units in the Property classified as "J-1" for purposes of Title 27 of the New York City Building Code (the "J-1 Zoned Units") being converted to residential apartment units classified as "R2" units for purposes of Title 27 of the New York City Building Code.

e)      No later than ten days after the Effective Date, Guarantors shall deliver to Administrative Agent any and all drawings, plans, warranties, licenses, permits, approvals, registrations and other authorizations and similar or related documentation for the use, development or operation of the Property.

f)      Guarantors agree to cooperate, as reasonably requested by Administrative Agent or Lender, including, without limitation by executing and delivering such instruments or documents, and taking such other action, as the Administrative Agent or Lender may reasonably request, in

connection with the transactions contemplated by this Agreement including, without limitation, obtaining the Cure Approval and Lifting of the Stop Work Order and obtaining the J-1 Unit Zoning Conversion.

      **3.**    **Certain Additional Fees.**    Guarantors shall have the right, on behalf of the Borrower, for a period of ninety (90) days after the Effective Date, to negotiate and settle amounts claimed as payable to third parties relating to the Property and set forth on Exhibit "D" hereto (the "**Existing Obligations**"). Provided Guarantors comply in full with their obligations hereunder, including, without limitation, complying with the obligations set forth in Section 2 of this Agreement, then within ten (10) business days following the expiration of such ninety (90)-day period, fifty percent (50%) of agreed reductions in the Existing Obligations, as evidenced by binding settlement agreements releasing the applicable claims or liens, and removing the liens, if applicable, in form and substance reasonably acceptable to the Administrative Agent and, with respect to the removal of liens, the Title Insurer, executed and delivered by the applicable claimants on or prior to the expiration of such ninety (90)-day period, will be paid to Guarantors. For the avoidance of doubt, the Parties acknowledge and agree that the total amount of the Existing Obligations is the amounts listed in the column titled "Lien Amount" on the table included in Exhibit "D" and that reductions in the Existing Obligations shall be measured against such aggregate number (for the avoidance of doubt, no amounts listed in the column titled "Draw 3&5 Balance" on the table included as Exhibit "D" shall be included in such Existing Obligations.

      **4.**    **Development Agreement.** Lender agrees that Guarantors may make a proposal for the terms and conditions of a "Property Management Agreement" and "Development Agreement" on which an affiliate of Guarantors would agree to manage the development of the Property, and Lender will review such proposal with proposals made by other parties to manage the development of the Property provided, however, that it is understood and agreed that in their sole discretion none of Administrative Agent, Lender or Borrower shall be under any obligation to select such affiliate of the Guarantors to manage the development of the Property or to negotiate, or enter into, the terms of any such Property Management Agreement or Development Agreement with Guarantors or any affiliate of the Guarantors.

      **5.**    **Mutual Release.**

      a)    Except for the agreements, obligations and covenants arising under this Agreement, effective upon the delivery by Lender to the Escrow Agent of the Cure Delivery Fee and a copy of the Escrow Agreement signed by Administrative Agent, the Guarantor Parties hereby release, waive, and forever discharge the Lender Parties and their successors in interest, and all past, present, and future assigns, officers, directors, employees, subsidiaries, affiliates, partners (known or unknown), insurers, underwriters, and attorneys, from any and all claims, demands, damages, losses, costs, expenses, fees, actions, agreements, promises, and debts, of every kind and character, whether asserted or unasserted, known or unknown, suspected or unsuspected, in law or in equity, for or by reason of any matter, cause, or thing whatsoever from the beginning of time related to the Loan Documents. In addition, nothing herein shall be deemed to be or operate as a discharge, waiver or release of a claim against any Lender for any damages arising from any fraud, misrepresentation or breach of this Agreement by Lender.

      b)    Except for the agreements, obligations and covenants arising under this Agreement, effective upon the delivery by Guarantors to the Escrow Agent of the Executed Counterparts and

a copy of the Escrow Agreement signed by Guarantors, the Lenders hereby release, waive, and forever discharge the Guarantor Parties and their successors in interest, and all past, present, and future assigns, officers, directors, employees, subsidiaries, affiliates, partners (known or unknown), insurers, underwriters, and attorneys, from any and all claims, demands, damages, losses, costs, expenses, fees, actions, agreements, promises, and debts, of every kind and character, whether asserted or unasserted, known or unknown, suspected or unsuspected, in law or in equity, for or by reason of any matter, cause, or thing whatsoever from the beginning of time related to the Loan Documents. For the avoidance of doubt, any guarantees executed in connection with the Loan Documents shall be deemed terminated and of no further force or effect. Notwithstanding the foregoing, the Mortgage shall remain as a good and valid mortgage lien and it is agreed that the indebtedness of the Borrower has not been, nor shall it be deemed, cancelled or paid until such time as the Mortgage is released of record.   Notwithstanding the foregoing or any other provision in this Agreement to the contrary, in the event (A) Holdings or any Guarantor becomes the subject of any bankruptcy proceeding and such proceeding affects any of Administrative Agent's or any Lender's rights under this Agreement, (B) a court of competent jurisdiction determines that the Holdings or the Guarantor has perpetrated any fraud upon the Administrative Agent or Lenders or made any misrepresentation in this Agreement, or (C) the Holdings or any Guarantor breaches or defaults under this Agreement, then the release and covenants in this  Section 5(b) shall be null and void and of no further force or effect, and the Administrative Agent and Lenders shall have all rights at law or in equity with respect to each of the  guarantees executed in connection with the Loan Documents. In addition, nothing herein shall be deemed to be or operate as a discharge, waiver or release of a claim against any particular Guarantor for any damages arising from any fraud, misrepresentation or breach of this Agreement by any Guarantor.

## 6.    **Mutual Non-Disparagement.**

a.    The Guarantor Parties agree that they will refrain from directly or indirectly making, causing to be made, publishing, ratifying, or endorsing any and all public disparaging remarks, derogatory statements, or comments with respect to Administrative Agent or  any of the Lenders.

b.    The Lenders agree that they will refrain from directly or indirectly making, causing to be made, publishing, ratifying, or endorsing any and all public disparaging remarks, derogatory statements, or comments with respect to any of the Guarantor Parties.

## 7.    **No Admission of Liability.** This Agreement shall not be construed as an admission of liability by any Party, and is limited to the terms and conditions contained in this Agreement.

## 8.    **Other Terms:**

a.    **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and there are no inducements, representations, warranties, or understandings that do not appear within the terms and provisions of this Agreement. This Agreement may be modified only by a writing signed by all Parties.

b.    **Joint Contribution and Drafting.** Each term of this Agreement is deemed to have been drafted jointly by the Parties and any uncertainty or ambiguity shall not be construed for or against either Party.

c.    **Costs and Attorneys' Fees.** Each party hereto shall pay its own costs and expenses, including legal fees, including, but not limited to, those incurred in negotiation, preparation and execution of this Agreement.

d.    **Severability**.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect.

e.    **Counterparts.** This Agreement may be executed in any number of separate counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one agreement, which shall be binding upon and effective as to all of the parties. Signatures communicated electronically or by facsimile are permissible and enforceable.

f.    **No Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party or parties waiving the breach.

g.    **Section Headings.** The paragraph, section and article headings used in this Agreement are intended solely for convenience and reference and shall not in any manner amend, limit, modify, or otherwise be used in the interpretation of any of the provisions of this Agreement.

h.    **Successors.** This Agreement, along with its terms and conditions, shall be binding on and shall inure to the benefit of each of the parties and to their heirs, executors, administrators, successors-in-interest, assigns, directors, officers, employees, agents, partners, consultants, representatives, attorneys, insurers, and licensees, and shall survive any reorganization of any party.

i.    **Governing Law; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the state of New York applicable to contracts to be wholly performed therein. The exclusive forum for any disputes arising out of or relating to this Agreement shall be an appropriate state or federal court situated in the state of New York.

[Signature Page to Follow]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:                          HUDSON 1702, LLC,
                                   a Delaware limited liability company

                                   By_____
                                      Name:   Ted Jung
                                      Title:    Authorized Signatory


                                   HUDSON 1701/1706, LLC,
                                   a Delaware limited liability company

                                   By_____
                                      Name:   Ted Jung
                                      Title:    Authorized Signatory


HOLDINGS:                          CSC HUDSON LLC,
                                   a Delaware limited liability company


                                   By_____
                                      Name:
                                      Title:

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:                              HUDSON 1702, LLC,
                                       a Delaware limited liability company


                                       By_____
                                           Name:
                                           Title:


                                       HUDSON 1701/1706, LLC,
                                       a Delaware limited liability company


                                       By_____
                                           Name:
                                           Title:

HOLDINGS:                              CSC HUDSON LLC,
                                       a Delaware limited liability company


                                       By_____
                                           Name:  **Alberto Smeke**
                                           Title: **Authorized Signatory**

GUARANTORS:

_____
ALBERTO SMEKE SABA

_____
SALOMON SMEKE SABA

ADMINISTRATIVE AGENT:   PARKVIEW FINANCIAL REIT, LP,
a Delaware limited partnership

By: Parkview Financial Fund GP, Inc.,
a California corporation,
its general partner

By_____
Name: Ted Jung
Title: Chief Credit Officer

LENDER:        PARKVIEW FINANCIAL REIT, LP,
a Delaware limited partnership

By: Parkview Financial Fund GP, Inc.
a California corporation,
its general partner

By_____
Name: Ted Jung
Title: Chief Credit Officer

## EXHIBIT 2

**July Demand**

**PV HUDSON, LLC c/o**
**PARKVIEW FINANCIAL REIT, LP**
11601 Wilshire Boulevard, Suite 2100
Los Angeles, California 90025

July 25, 2025

<u>**VIA ELECTRONIC MAIL**</u>
<u>**AND VIA OVERNIGHT COURIER**</u>

CSC Hudson, LLC
c/o CSC Coliving LLC
6 St. Johns Lane
New York, New York 10013
Attention: Saloman Smeke Saba and Alberto Smeke Saba
Email: SS@csc-coliving.com; AS@csc-coliving.com;
("<u>Pledgor</u>")

Alberto Smeke Saba
2008 East 3rd Street
Brooklyn, New York 11223
Email: AS@csc-coliving.com
       -and-
Salomon Smeke Saba
4 Lady Bess Drive
Deal, New Jersey 07723
Email: SS@csc-coliving.com
**(collectively, "<u>Guarantor</u>")**

Re:    **Hudson 1701/1706, LLC and Hudson 1702, LLC**
       **Request for Information and Turnover of Accounts**

Dear Alberto and Sal:

Reference is made to that certain Pledge and Security Agreement dated May 4, 2022 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "<u>Pledge</u>") in favor of Parkview Financial REIT, LP as Secured Party ("<u>Secured Party</u>"), pursuant to which CSC Hudson, LLC ("<u>Pledgor</u>") further secured the obligations of Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "<u>Company</u>") in connection with the Loan. Capitalized terms not otherwise defined have the meaning set forth in the Notice of Event of Default, dated November 22, 2024.

On July 25, 2025, PV Hudson, LLC ("<u>PV Hudson</u>") acquired Pledgor's interest in Borrower through a duly noticed public auction conducted in a commercially reasonable manner pursuant to the New York Uniform Commercial Code. As a result, PV Hudson, LLC is now the sole member and manager of Borrower and Pledgor has no right to participate in the management of the Company.

**PV HUDSON, LLC c/o**
**PARKVIEW FINANCIAL REIT, LP**
11601 Wilshire Boulevard, Suite 2100
Los Angeles, California 90025

To ensure an orderly transition of the management of the Company, this letter directs that you take the following actions, and do so no later than **July 29, 2025**.

- Provide all contracts, agreements, leases, construction contracts, service and maintenance agreements, supply agreements, license agreements, utility agreements, warranties, guaranties, understandings and arrangements entered into between the Company and any entity, including any property management contracts, leases, etc., and any amendments or modifications thereto (collectively "**Agreements**"), and any other material documents and correspondence relating to such Agreements, including any notices of claims, demands or defaults.

- Provide all Federal, state and local governmental permits, licenses, approvals and consents in connection with the Company's operations and the Property.

- Provide all written communications by or to the Company from any Governmental Authority within the most recent three years.

- Provide PV Hudson, LLC access to all bank accounts in Company's name and take all steps to cause Pledgor to be replaced by PV Hudson or its designee, as the signatory on all such bank accounts.

- Provide PV Hudson with copies of all books and accounts of the Company and other records for the Property and the improvements thereon.

- Notify all counterparties to any Agreements with the Company that PV Hudson is the Member of the Company, that all notices and communications to the Company under such Agreements should be made to PV Hudson (at the address set forth above) and that all directions, determinations, authorizations and consents to be made by the Company under such Agreements shall be made by PV Hudson.

- Maintain or renew all existing licenses, permits or other government-issued documents necessary for the continued operation of the Company, including all licenses or permits even if not issued in the Company's name. For the avoidance of doubt, if the issuing agency requires that the Company or its nominee apply for a new license, permit or other document, the Company may continue to operate under the current permit until the new one is issued to ensure no disruption of service occurs.

- Provide the following financial information as required by Section 8.16 of the various loan agreements: (a) a financial statement as of the end of the Company's fiscal year (including, without limitation, an income and expense statement) signed and certified to be correct by Sponsor; (b) copies of federal and state tax returns for the Company, together with all schedules thereto, each of which shall be signed and certified by Pledgor.

- Provide copies of all insurance policies covering the Property or the Project.

**PV HUDSON, LLC c/o**
**PARKVIEW FINANCIAL REIT, LP**
11601 Wilshire Boulevard, Suite 2100
Los Angeles, California 90025

- Provide all keys to any locks at the Property in the Company's possession and all other access codes, lock combinations, and other controls to locks at the Property.

- Provide a list of all of the current SRO Tenants, their contact information, and copies of all related leases and other agreements.

Please provide this information to Vincent Poncia at Dair Development and take the actions outlined herein as soon as possible, and no later than **July 29, 2025**. We are available to discuss if you have any questions or comments.

Very truly yours,

**PV HUDSON, LLC**
as Sole Member of Borrower

By:_____
Name:        Paul Rahimian
Title:        Authorized Signatory

cc:    Cole Schotz P.C.
       1325 Avenue of the Americas, 19th Floor
       New York, New York 10019
       Attn: Jordan J. Metzger Esq.
       Email: jmetzger@coleschotz.com
       (*by email and overnight courier*)

       356W Ground Lessor LLC c/o
       GLR Capital Investments, LLC
       2801 North Harwood Street, Suite 1200
       Dallas, Texas 75201
       Attn: Max Nipon
       Email: nipon@mspcm.com
       (*by email and overnight courier*)

       Adler & Stachenfield LLP
       555 Madison Ave., 6th Floor
       New York, New York 10022
       Attn: Danielle Ash, Esq.
       dash@adstach.com
       (*by email and overnight courier*)

**PV HUDSON, LLC c/o**
**PARKVIEW FINANCIAL REIT, LP**
11601 Wilshire Boulevard, Suite 2100
Los Angeles, California 90025

Ted Jung (*by email only*)
Neal Kronley (*by email only*)
Gerald Shepherd (*by email only*)
John Gibson (*by email only*)
Brian Flanagan (*by email only*)
Vincent Poncia (*by email only*)

## **EXHIBIT 3**

**October Demand**



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T  212.335.4584
F  917.778.8584

October 23, 2025

*VIA OVERNIGHT MAIL AND EMAIL*

**Vedder Price P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Attention: Robert Salame
          David Rownd
Email:    rsalame@vedderprice.com
          drownd@vedderprice.com

**Re:    Hudson 1701/1706, LLC and Hudson 1702, LLC**
**        Request for Information and Turnover of Accounts**

Dear Bobby and David:

On October 22, 2025, Hudson 1701/1706, LLC and Hudson 1702, LLC (each, a "Debtor" and together, the "Debtors") filed voluntary petitions for relief (each such voluntary petition concerning a "Chapter 11 Case" and, collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11. U. S. C. §§ 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  This firm is proposed special litigation and corporate counsel to the Debtors.

Reference is made to that certain *Pledge and Security Agreement* dated May 4, 2022 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "Pledge") granted by CSC Hudson, LLC ("Pledgor") in favor of Parkview Financial REIT, LP as Secured Party ("Parkview"), pursuant to which Pledgor further secured the obligations of the Debtors in connection with the Loan made by Parkview to the Debtors under that certain *Building Loan Agreement* and *Project Loan Agreement*, each dated May 4, 2022.

On July 25, 2025, PV Hudson, LLC ("PV Hudson") acquired Pledgor's interest in the Debtors through a duly noticed public auction pursuant to the New York Uniform Commercial Code.  As a result, PV Hudson is the sole member of the Debtors.

Reference is also made to that certain *Settlement and Release Agreement* dated August 7, 2025 among (i) the Debtors, (ii) Parkview, (iii) Pledgor, and (iv) Alberto Smeke Saba and Salomon Smeke Saba (individually and collectively, the "Smekes"), pursuant to which, among many other covenants, representations and warranties, the Smekes agreed to "cooperate, as reasonably requested" by Parkview, in its capacity as Administrative Agent and Lender.



October 23, 2025
Page Two

Under section 541(a) of the Bankruptcy Code, property of the Debtors' estates includes, among other things, "… all legal or equitable interests of the debtor in property as of the commencement of the cases." Pursuant to section 542 of the Bankruptcy Code, you are obligated to turn such property over immediately to the Debtors.

Accordingly, this letter serves as a meet and confer regarding the turnover to the Debtors of their property and demand for turnover of the following materials no later than **October 27, 2025**, and is hereby satisfying the requirements of the Local Rules for the District of Delaware to meet and confer before moving to compel discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedures:

- Provide all books and records of Pledgor, including those pertaining to the SRO Tenants.

- Provide all financial statements (whether audited or unaudited), income statements, balance sheets, federal and state tax returns, and other financial documents of the Debtors.

- Provide all contracts, agreements, leases, construction contracts, service and maintenance agreements, supply agreements, license agreements, utility agreements, warranties, guaranties, understandings and arrangements entered into between either Debtor and any entity, including any property management contracts, leases, etc., and any amendments or modifications thereto (collectively "Agreements"), and any other material documents and correspondence relating to such Agreements, including any notices of claims, demands or defaults.

- Provide all Federal, state and local governmental permits, licenses, approvals and consents in connection with the Debtor's operations and the Property.

- Provide possession of all servers and passwords to email accounts owned or controlled by the Debtors.

- Provide the Debtors with access to all bank accounts in the Debtors' names and take all steps to cause the Debtors' current management to be signatory on all such bank accounts.

- Identify which account SRO rents are paid into, and account for all rents paid since July 25, 2025.

- Provide the Debtors with copies of all books and accounts of the Debtors and other records for the Property and the improvements thereon.



October 23, 2025
Page Three

- Provide a list of all of the current SRO Tenants, their contact information, and copies of all related leases and other agreements.

If you do not provide the foregoing property by **October 27, 2025**, please be advised that the Debtors will seek an immediate hearing on a Rule 2004 examination motion.

This correspondence is not intended to convey all potential claims and defenses, and the Debtors reserve all rights, remedies, and cause of action, and waive none. We are available to discuss if you have any questions.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation
Counsel to the Debtors**

Neal Kronley

NK


Copy to

**DLA Piper LLP (US)**
Stuart Brown
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801

and

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

# **EXHIBIT 4**

**October 28, 2025 Email String**

**Eulmessekian, Shant**

---

| | |
|---|---|
| **From:** | Salame, Robert <rsalame@vedderprice.com> |
| **Sent:** | Tuesday, October 28, 2025 12:17 PM |
| **To:** | Kronley, Neal |
| **Cc:** | Brown, Stuart; chipman@chipmanbrown.com; Rownd, David |
| **Subject:** | RE: [EXT] RE: Hudson 1701/1706, LLC and Hudson 1702, LLC -- Request for Information and Turnover of Accounts |

⚠ EXTERNAL MESSAGE

I can make 10:00 work.

**Robert Salame,** Shareholder

**Vedder**Price

T +1 212 407 6941
M +1 917 494 9925

1633 Broadway, 31st Floor, New York, New York 10019
web | email | offices | biography

---

**From:** Kronley, Neal <neal.kronley@us.dlapiper.com>
**Sent:** Tuesday, October 28, 2025 1:23 PM
**To:** chipman@chipmanbrown.com; Salame, Robert <rsalame@vedderprice.com>; Rownd, David <drownd@vedderprice.com>
**Cc:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>
**Subject:** RE: [EXT] RE: Hudson 1701/1706, LLC and Hudson 1702, LLC -- Request for Information and Turnover of Accounts

10am works for me and I believe for Stuart as well.

Neal Kronley
Of Counsel

T  +1 212 335 4584
M  +1 917 757 5283
neal.kronley@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com

---

**From:** William Chipman <Chipman@chipmanbrown.com>
**Sent:** Tuesday, October 28, 2025 1:21 PM
**To:** Kronley, Neal <neal.kronley@us.dlapiper.com>; Salame, Robert <rsalame@vedderprice.com>; Rownd, David <drownd@vedderprice.com>
**Cc:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>
**Subject:** RE: [EXT] RE: Hudson 1701/1706, LLC and Hudson 1702, LLC -- Request for Information and Turnover of Accounts

⚠ EXTERNAL MESSAGE

10 or 11 a.m. works for me.



William E. Chipman, Jr. | *Partner*
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza | 1313 N. Market Street, Suite 5400
Wilmington, DE 19801
P: 302.295.0193 | F: 302.295.0199 | chipman@chipmanbrown.com
www.chipmanbrown.com | LinkedIn | vCard

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.  To reply to our email administrator directly, please send an email to Info@ChipmanBrown.com.*

**From:** Kronley, Neal <neal.kronley@us.dlapiper.com>
**Sent:** Tuesday, October 28, 2025 12:15 PM
**To:** Salame, Robert <rsalame@vedderprice.com>; Rownd, David <drownd@vedderprice.com>
**Cc:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>; William Chipman <Chipman@chipmanbrown.com>
**Subject:** RE: [EXT] RE: Hudson 1701/1706, LLC and Hudson 1702, LLC -- Request for Information and Turnover of Accounts

CAUTION EXTERNAL EMAIL

Let us know times that you are available for a call tomorrow.

Neal Kronley
Of Counsel

T  +1 212 335 4584
M  +1 917 757 5283
neal.kronley@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com

**From:** Salame, Robert <rsalame@vedderprice.com>
**Sent:** Tuesday, October 28, 2025 11:24 AM
**To:** Kronley, Neal <neal.kronley@us.dlapiper.com>; Rownd, David <drownd@vedderprice.com>
**Cc:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>; chipman@chipmanbrown.com
**Subject:** RE: [EXT] RE: Hudson 1701/1706, LLC and Hudson 1702, LLC -- Request for Information and Turnover of Accounts

⚠ EXTERNAL MESSAGE

Hi Neal,

We reviewed your letter (reattached for convenience). Confirming that none of David, I nor Vedder Price, have any of the information you sought in your letter. We did not represent those entities in connection with the project itself. We do not have information other than what was attached to the settlement agreements.

Note: I also did not do any work re SRO tenants, etc. while at K&L Gates LLP, so they should not have any information either.

Best,
Robert Salame

**Robert Salame,** Shareholder

VedderPrice

T +1 212 407 6941
M +1 917 494 9925
1633 Broadway, 31st Floor, New York, New York 10019
web | email | offices | biography

---

**From:** Kronley, Neal <neal.kronley@us.dlapiper.com>
**Sent:** Monday, October 27, 2025 6:22 PM
**To:** Salame, Robert <rsalame@vedderprice.com>; Rownd, David <drownd@vedderprice.com>
**Cc:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>; chipman@chipmanbrown.com
**Subject:** [EXT] RE: Hudson 1701/1706, LLC and Hudson 1702, LLC -- Request for Information and Turnover of Accounts

Bobby and David,

We have not received any response to my October 23, 2025, letter requesting the turnover of information to the Debtors.  As outlined in my letter, absent an immediate turnover of the materials, we will seek to compel the information under Rule 2004 of the Federal Rules of Bankruptcy Procedure.

We continue to reserve all rights and waive none.

Sincerely,


Neal Kronley
Of Counsel

T  +1 212 335 4584
M  +1 917 757 5283
neal.kronley@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com

---

**From:** Kronley, Neal
**Sent:** Thursday, October 23, 2025 1:27 PM
**To:** Salame, Robert <rsalame@vedderprice.com>; Rownd, David <drownd@vedderprice.com>
**Cc:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>; 'William Chipman' <Chipman@chipmanbrown.com>
**Subject:** Hudson 1701/1706, LLC and Hudson 1702, LLC -- Request for Information and Turnover of Accounts

Bobby and David,

Please see the enclosed correspondence.

**Neal Kronley**
Of Counsel

T  +1 212 335 4584
F  +1 917 778 8584
M  +1 917 757 5283
neal.kronley@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price (FL) LLP, which operates in Florida, and Vedder Price Pte. Ltd., which operates in Singapore.

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 609-5038 and also indicate the sender's name. Thank you.

d250106us

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

**<u>EXHIBIT 5</u>**

**October 29, 2025 Email String**

**Eulmessekian, Shant**

| | |
|---|---|
| **From:** | Brown, Stuart |
| **Sent:** | Thursday, October 30, 2025 2:59 PM |
| **To:** | Salame, Robert |
| **Cc:** | chipman@chipmanbrown.com; Silverman, Marc; Riley, David; Rownd, David; Kronley, Neal |
| **Subject:** | RE: [EXT] Hudson 1701/1706, LLC and Hudson 1702, LLC |

Looping in Neal...

Robert

Thank you for this update.

Given the passage of time and the debtors' urgency in receiving financial and other documents, the Rule 2004 motion will be filed this evening and we will ask for a hearing Monday at 930 am.  The Debtors' goal is to resolve the motion amicably and receive the needed information as promptly as possible.  When you have your hands on the documents tomorrow, please let us know what is there and what Is not and what and when you will send it along to the Debtors.

Much appreciated.

Stuart

**From:** Salame, Robert <rsalame@vedderprice.com>
**Sent:** Thursday, October 30, 2025 5:44 PM
**To:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>
**Cc:** chipman@chipmanbrown.com; Silverman, Marc <Marc.Silverman@us.dlapiper.com>; Riley, David <david.riley@us.dlapiper.com>; Rownd, David <drownd@vedderprice.com>
**Subject:** RE: [EXT] Hudson 1701/1706, LLC and Hudson 1702, LLC

⚠ EXTERNAL MESSAGE

All,

Following up on the below. Our client has been putting together requested information and I expect to receive (at least an initial) delivery tonight, which I will turn tomorrow.

Best,
Robert Salame

**Robert Salame,** Shareholder

VedderPrice
T +1 212 407 6941
M +1 917 494 9925

1633 Broadway, 31st Floor, New York, New York 10019
web | email | offices | biography

---

**From:** Salame, Robert
**Sent:** Wednesday, October 29, 2025 6:10 PM
**To:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>
**Cc:** chipman@chipmanbrown.com; Silverman, Marc <Marc.Silverman@us.dlapiper.com>; Riley, David <david.riley@us.dlapiper.com>; Rownd, David <drownd@vedderprice.com>
**Subject:** RE: [EXT] Hudson 1701/1706, LLC and Hudson 1702, LLC

All,

I connected with Alberto Smeke. He is not opposed to sharing what he has. His plan is to start working through the list tomorrow morning and provide an update as to what he has and does not have.

Best,
Robert Salame

**Robert Salame,** Shareholder

Vedder Price
T +1 212 407 6941
M +1 917 494 9925
1633 Broadway, 31st Floor, New York, New York 10019
web | email | offices | biography

---

**From:** Brown, Stuart <Stuart.Brown@us.dlapiper.com>
**Sent:** Wednesday, October 29, 2025 12:42 PM
**To:** Salame, Robert <rsalame@vedderprice.com>; Rownd, David <drownd@vedderprice.com>
**Cc:** chipman@chipmanbrown.com; Silverman, Marc <Marc.Silverman@us.dlapiper.com>; Riley, David <david.riley@us.dlapiper.com>
**Subject:** [EXT] Hudson 1701/1706, LLC and Hudson 1702, LLC
**Importance:** High

Robert and David,

Thank you for taking the time for the call earlier today and for the meet and confer respecting the above-referenced debtors' request for turnover of their property. We understand from our call that you believe DLA Piper's October 23, 2025, letter addressed to you as counsel to CSC Hudson, LLC, CSC Co-Living, and the Smekes was directed to you, individually and your current law firm, rather than to your clients. We explained that the debtors are seeking to recover and obtain possess and control over their property and information in your clients' (CSC Hudson, LLC, CSC Co-Living, and the Smekes, and should they or you believe there is any remaining relationship with the debtors, then please include the debtors) in possession, custody or control of your clients or any agent or representatives of your clients of debtors' property. We hereby reiterate the debtors' demand for the immediate turnover of the materials, including financial books and records of the debtors, tax returns, architecture, design and mechanical drawings, and more. During the call you responded that you needed a written list of parties from whom debtors are seeking information. We identified entities during the call but you refused to provide information unless a list was sent.

We now reiterate our demand that any entity identified above who maintains or which has received form any such entity or person property of the debtors, or either of them, in its or his/her custody, possession and control should confirm that such information will be turned over by no later than 4:00pm today, and that all information shall be turned over by Friday, October 31, at 12:00pm. As we explained, your failure to confirm and commit to produce such documents, property and information by 4:00 pm today will result in the debtors' filing appropriate papers with the bankruptcy court. Debtors believe that the entities and individuals who maintain debtors' property may include, but is not limited to, CSC Hudson LLC, CSC Co-Living, Alberto Smeke Saba, Salomon Smeke Saba, K&L Gates LLP, Vedder Price LLP and each of their r5espective agents, representatives and transferees.

We continue to reserve all rights and waive none

Stuart

## Stuart Brown
Partner

T  +1 302 468 5640          **DLA Piper LLP (US)**
F  +1 302 778 7913          1201 North Market Street
M  +1 302 388 4767          Suite 2100
stuart.brown@us.dlapiper.com    Wilmington, DE  19801-1147

                    dlapiper.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price (FL) LLP, which operates in Florida, and Vedder Price Pte. Ltd., which operates in Singapore.

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 609-5038 and also indicate the sender's name. Thank you.

d250106us