IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Hudson 1701/1706, LLC, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Joint Administration Requested)<br><br>Related Docket No. 18 |

**OBJECTION BY ALBERTO SMEKE SABA AND SALOMON SMEKE SABA TO EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO CONDUCT RULE 2004 EXAMINATIONS**

Alberto Smeke Saba and Salomon Smeke Saba (collectively, the "Smekes"), by and through their undersigned counsel, object (the "Objection") to the Debtors'[1] emergency motion seeking to conduct Rule 2004 examinations of the Smekes [D.I. 18] (the "2004 Motion"), including, without limitation, the unfounded emergency basis for such relief, and state as follows:

1. Without factual or contractual support for such relief, and ignoring the mutual releases contained the Settlement Agreement, the Debtors seek overly broad discovery relief returnable in an unreasonable timeframe, notwithstanding counsel for the Smekes having repeatedly informed Debtors' counsel, via written and oral communications, that such responses were being voluntarily prepared. In fact, Debtors' counsel confirmed such exchanges in the declaration they filed with the Court in support of the 2004 Motion [D.I. 18-2] (the "DLA Declaration"). See emails attached as exhibits to the DLA Declaration.

2. With respect to the facts supporting such relief, the Debtors misinform this Court about the history of the parties' discovery interactions. First, the July 25th discovery letter (attached as Exhibit 2 to the DLA Declaration) was not issued by the Debtors but by the then newly formed

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the 2004 Motion.

and sole managing member of the Debtors, PV Hudson,[2] in connection with the UCC Sale then completed by the Debtors' lender, Parkview. Moreover, such informal discovery requests became moot shortly thereafter as a result of the execution and closing of the Settlement Agreement pursuant to the terms therein. Specifically, Section 5 of the Settlement Agreement provides for mutual releases that (a) are between the Parkview and the Smekes, including, among others, their respective "*assigns …, subsidiaries, affiliates, partners (known or unknown)*", and (b) address, among other things, "*all claims, demands, … agreements, promises, and debts, of every kind and character, whether asserted or unasserted….*" See Settlement Agreement, ¶5 (emphasis added).

3. Second, following such July 25th letter, no further discovery discussions or requests were undertaken or communicated by and among the Smekes, the Debtors, PV Hudson, Parkview or their respective counsel until Debtors' counsel sent the October 23, 2025 (the "October 23 Letter", attached to the DLA Declaration as Exhibit 3), one day following the Debtors' commencement of these bankruptcy cases.

4. The October 23 Letter was not addressed to the Smekes nor any entity owned or controlled thereby. Rather, the October 23 Letter was addressed to Robert Salame and David Rownd of Vedder Price P.C., without any mention of or request for the demands included therein to relay the requests to any other parties.

5. Shortly after receiving the October 23 Letter, Smekes' counsel began discussions with Debtors' counsel despite the unjustified threats contained therein relating to the 2004 Motion, including the unreasonable demand for the production of a substantial amount of documentation and information in only five (5) calendar days. See DLA Declaration, ¶3. Despite such ongoing communications between counsel, written confirmation that the Smekes would produce relevant

---

[2] Parkview is the 100% owner of PV Hudson, the current and sole managing member of the Debtors.

information the following day (which was only two (2) calendar days following the date upon which Debtors counsel actually requested information from the Smekes), and the lack of any substantive filings in the Debtors' bankruptcy cases, Debtors' counsel filed the 2004 Motion.

6. So where are the exigent circumstances that warrant such expedited relief they now seek? Their 2004 Motion fails to set forth any evidentiary support for such exigency, only erroneously claiming that "*the Debtors have been requesting books and records from [the Smekes] since July 25, 2025 … and the Smekes …have failed to provide the requested information.*" As discussed above, nothing could be farther from the truth. In fact, on Friday afternoon, October 31st, consistent with counsel's prior communications, the Smekes provided Debtors' counsel with over 650 files and other documentation responsive to their unwarranted demands. See email communications attached hereto as Exhibit A.

7. Based on the above, there is no justifiable reason for this Court to grant Debtors' 2004 Motion, especially pursuant to the overbroad subpoenas attached thereto and in the unreasonable timeframe demanded pursuant to the proposed order (i.e., *"five (5) calendar days of the date of entry of this Order."*). See 2004 Motion, Exhibit A. The Smekes are entitled to have a fair opportunity and reasonable timeframe to respond, address any unreasonable demands, and if those demands cannot then be resolved between the parties, come back before this Court, on appropriate notice and opportunity, to explain their position.

8. At the same time, the Debtors have failed to explain to this Court why they do not have any of the information and documentation they seek from the Smekes given, among other things, that (a) PV Hudson has been the owner of the Debtors (and the real property at issue) for more than three months, (ii) Parkview, the lender to such real property since May, 2022, has had

access to such documentation and information pursuant to the applicable loan documents, and (iii) Parkview is the 100% owner of PV Hudson, the sole managing member of the Debtors.

9. Lastly, we wish to bring to the attention of the Court and the Office of the US Trustee our concern about potentially conflicting representations of DLA Piper LLP (US) given that they: (i) have been Parkview's longtime counsel in their role as secured lender to the Debtors and it is unclear whether they remain Parkview's advisor,[3] and if not when did that representation end and under what terms; (ii) on information and belief, continue to be counsel to PV Hudson, Debtors' sole managing member that is owned by Parkview; (iii) on information and belief, continue to be counsel to Parkview in connection with its loan portfolio administration; and (iv) seek to be special counsel to the Debtors, with the same attorneys representing the Debtors who have long represented Parkview (and recently PV Hudson) against these Debtors and the Smekes. To date, there have been no filings with this Court explaining such potential conflicts, nor any proposed walls that may be necessary given the history of representations and given that the Smekes are creditors of these Debtors, such concerns warrant explanation.

WHEREFORE, for the foregoing reasons, the Smekes respectfully request that the Court enter an order (A) sustaining this Objection, (B) denying the 2004 Motion, and (C) granting the Smekes such further relief as may be just and proper.

---

[3] We are aware of the notice of appearance filed on Friday by Hogan Lovells US LLP.

November 2, 2025  
Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

<u>/s/ Matthew P. Ward</u>
Matthew P. Ward, Esq. (Del. Bar No. 4471)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: matthew.ward@wbd-us.com

-and-

**VEDDER PRICE P.C.**
Michael L. Schein, Esq. (pending *pro hac vice*)
Robert Salame, Esq.
1633 Broadway, 31st Floor
New York, New York 10019
Telephone: (212) 407-7700
Facsimile:  (212) 407-7799
Email: mschein@vedderprice.com
        rsalame@vedderprice.com

*Counsel to Alberto Smeke Saba and Salomon Smeke Saba*