**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*, | Case No. 25-11853 (KBO) |
| Debtor.[1] | (Jointly Administered) |
| | **Related D.I. [__]** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE
CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION
TO PREPETITION LENDER; (III) MODIFYING THE AUTOMATIC STAY;
(IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "DIP Motion")[2] of the Debtors in the above-captioned chapter 11

cases (the "Chapter 11 Cases"), seeking entry of an interim order (this "Interim Order") and a final

order (the "Final Order" and, together with the Interim Order, the "DIP Orders"), under sections

105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C.

§§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, and 9013-1

of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"); the Court (as

defined below) having considered (i) the relief requested in the DIP Motion to be approved

pursuant to this Interim Order, that certain Senior Secured Priming Superpriority DIP Term Sheet,

dated as of November 12, 2025 (the "DIP Term Sheet"), by and among the Debtors, as borrowers,

and Parkview Financial REIT, LP ("Parkview"), as lender (in its capacity as such, the "DIP

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).  The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

[2] Capitalized terms used but not defined in this Interim Order have the meaning given to them in the DIP Motion or the DIP Term Sheet, as applicable. In the event of any discrepancy between the DIP Term Sheet and this Interim Order, the terms of the Interim Order shall control.

Lender"), a copy of which is attached to this Interim Order as **Exhibit 1** (together with any and all other agreements, instruments, certificates, and other documents executed and/or delivered in connection therewith, the "DIP Loan Documents"), pursuant to which the Debtors are seeking authority to (a) enter into and perform their obligations under the DIP Term Sheet and other DIP Loan Documents and borrow the DIP Loans (as defined below) pursuant to the provisions thereof and the DIP Orders, (b) use Cash Collateral of the Prepetition Lender (as such terms are defined below) to administer the Chapter 11 Cases and fund their operations in accordance with the Approved Budget, subject to Permitted Variances (as such terms are defined below), the DIP Term Sheet, the other DIP Loan Documents, and the DIP Orders, (c) grant the DIP Lender the DIP Liens and DIP Superpriority Claims (as such terms are defined below), and (d) grant the Prepetition Lender the Adequate Protection Liens and Adequate Protection Superpriority Claims (as each such term is defined below); and (ii) the *Amended and Restated Declaration of Alan Tantleff in Support of Debtors' Chapter 11 Petition and First Day Motions* (the "First Day Declaration"); and (iii) the evidence submitted and arguments proffered or adduced at the hearing held before the Court to consider entry of the relief requested in the DIP Motion to be approved pursuant to this Interim Order (the "Interim DIP Hearing"); and (iv) upon the record of the Chapter 11 Cases; and (v) adequate notice of the DIP Motion and Interim DIP Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014 and the applicable Local Rules; and (vi) it appearing that no other or further notice of the DIP Motion or Interim DIP Hearing need be provided; and (vii) all objections, responses, and reservations of rights with respect to the relief requested in the DIP Motion to be approved pursuant to this Interim Order having been withdrawn, resolved, or overruled by the Court; and (viii) after due deliberation and consideration, and for good and sufficient cause appearing therefor,

2

**THE COURT HEREBY FINDS AND CONCLUDES THAT**:[3]

A.     **Petition Date**.  On October 22, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing the Chapter 11 Cases.

B.     **Debtor in Possession**.  The Debtors continue in possession of, and to manage and operate, their businesses and property as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.     **Jurisdiction, Venue and Statutory Predicates**.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion and the parties and property affected hereby under 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6003, and 9014; and Local Rules 2002-1, 4001-2, and 9013-1.

D.     **Committee**.  As of the date hereof, the Office of the United States Trustee for Region 3 (the "U.S. Trustee") has not appointed a committee of unsecured creditors or any other committee (any such committee, the "Committee") under section 1102(a) of the Bankruptcy Code.

E.     **Notice**.  Notice of the DIP Motion, the relief requested therein to be approved pursuant to this Interim Order, and the Interim DIP Hearing, has been served by the Debtors on (i) the U.S. Trustee; (ii) the Debtors' top twenty (20) unsecured creditors; (iii) counsel to the DIP

---

[3] The findings and conclusions set forth in this Interim Order constitute the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

Lender and the Prepetition Lender; (iv) all other known holders of prepetition liens, encumbrances or security interests against the Debtors' property; (v) the Internal Revenue Service; (vi) New York Secretary of State; (vii) New York City Department of Housing Preservation and Development; (viii) the Delaware Secretary of State; (ix) the Delaware Secretary of the Treasury; (x) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (xi) any other party required to be provided notice under Local Rule 9013-1(m).  Under the circumstances, notice was sent under Bankruptcy Rules 4001(b), 4001(c) and 4001(d), Local Rule 4001-2, and section 102(1) of the Bankruptcy Code, in light of the emergency nature of the interim relief requested in the Motion, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

F. **Necessity and Uses of DIP Financing and Cash Collateral**.

i.  <u>Immediate Need for Postpetition Financing and Use of Cash Collateral</u>.  The Debtors have an immediate and critical need to obtain post-petition financing through the debtor-in-possession financing facility created by and through the DIP Loan Documents (the "<u>DIP Facility</u>") and to continue to use the Prepetition Collateral (as defined below), including, without limitation, Cash Collateral (as defined below), in order to, among other things, (a) fund the continued operation of their businesses, including, without limitation, to respond to various regulatory requirements and orders, (b) maintain business relationships with vendors, (c) pay the fees, costs, and expenses incurred in connection with the Chapter 11 Cases, and (d) satisfy other working capital and operational needs.  The incurrence of the DIP Loans and use of Cash Collateral is necessary and vital to the preservation and maintenance of the going concern and potential future value of the Debtors, their assets and businesses.  Immediate and irreparable harm will be caused to the Debtors, their creditors, estates, and other stakeholders if immediate post-

4

petition financing is not obtained and the Debtors are not immediately authorized to use Cash Collateral. The terms applicable to the extensions of credit under the DIP Facility are fair and reasonable, and the Debtors' entry into the DIP Facility reflects the sound exercise of the Debtors' business judgment and is supported by reasonably equivalent value and fair consideration. Therefore, it is in the best interest of the Debtors, their creditors, and their estates to establish the DIP Facility described in the Motion, as set forth in this Interim Order, and as contemplated by the DIP Loan Documents, and to authorize the Debtors' use of Cash Collateral, subject to the terms and conditions in the DIP Loan Documents and as set forth in this Interim Order. The Prepetition Lender has consented to the use of its Cash Collateral and to the priming of the Prepetition Liens (as defined below), in each case on the terms and conditions set forth in the DIP Term Sheet and this Interim Order.

ii. <u>No Credit Available on More Favorable Terms</u>. As set forth in the First Day Declaration, the DIP Facility is the best and likely only source of debtor-in-possession financing available to the Debtors at this time. Given their current financial condition, financing arrangements, and capital structure, stalled development, and the other circumstances leading to the commencement of the Chapter 11 Cases, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lender on terms and conditions more favorable than those set forth in the DIP Loan Documents, if at all. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of

5

the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Lender the priming DIP Liens and DIP Superpriority Claims pursuant to sections 364(d) and 364(c)(1) of the Bankruptcy Code, and the other protections set forth in the DIP Loan Documents and this Interim Order.

      iii. <u>Use of Cash Collateral and DIP Loans</u>. As a condition to the Debtors' entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Prepetition Collateral, including, without limitation, Cash Collateral, the Debtors have agreed that Cash Collateral and the DIP Loans will be used solely in accordance with the terms and conditions of this Interim Order (as may be amended and supplemented by the Final Order), the DIP Loan Documents, and the Approved Budget (subject to Permitted Variances).

      G.     <u>Good Faith of DIP Lender and Prepetition Lender</u>.

      i. <u>Willingness to Provide DIP Financing</u>. The DIP Lender has committed to provide financing to the Debtors subject to, among other things: (a) entry of this Interim Order and the Final Order, in stages as applicable; (b) approval of the terms and conditions of the DIP Term Sheet and other DIP Loan Documents; (c) satisfaction of the conditions set forth in the DIP Loan Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors under the DIP Loan Documents in good faith, and that the DIP Lender's claims, superpriority claims, liens and security interests, and other protections granted under this Interim Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

      ii. <u>Business Judgment</u>. Based on the DIP Motion and the First Day Declaration, and the record presented to the Court at the Interim Hearing, (a) the provisions the DIP Facility embodied in the DIP Loan Documents, including, without limitation, the fees, expenses, and other

charges paid and to be paid thereunder or in connection therewith, (b) the adequate protection authorized by the Interim Order (and to be authorized by the Final Order on the terms of such Final Order) and DIP Loan Documents, and (c) the terms on which the Debtors may continue to use the Cash Collateral, in each case under this Interim Order and the DIP Loan Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing and terms available under the circumstances.

 iii. <u>Good Faith Under Section 364(e)</u>. The terms and conditions of the DIP Loan Documents and the use of Cash Collateral were negotiated in good faith, at arm's length, and for fair consideration among the Debtors, the DIP Lender, and the Prepetition Lender, with the assistance and counsel of their respective advisors. Accordingly, all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the extension of the DIP Facility, the DIP Loan Documents, and all fees and other obligations or indebtedness owing to the DIP Lender, shall be deemed to have been extended by the DIP Lender in good faith (as that term is used in section 364(e) of the Bankruptcy Code), and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

 iv. <u>Consent to DIP Facility and Use of Cash Collateral</u>. The Prepetition Lender has consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Loan Documents, in accordance with and subject to the terms and conditions in this Interim Order and the DIP Loan Documents.

H.     <u>Property of the Estates</u>.  Each item of the DIP Collateral and Prepetition Collateral (each as defined below) constitutes property of the Debtors' estates to the fullest extent provided for in section 541 of the Bankruptcy Code.

I.     <u>Good Cause</u>.  Good and sufficient cause has been shown for immediate entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors, their creditors, estates, and other stakeholders.  Among other things, the Debtors have an immediate need for the liquidity provided by the DIP Facility and Cash Collateral, as authorized pursuant to the applicable DIP Orders, in order to avoid immediate, irreparable harm, and the relief granted in this Interim Order will minimize disruption of the Debtors' businesses and permit the Debtors to pay critical expenses necessary to maximize the value of their assets and estates.  The extensions of credit under the DIP Facility, the use of Cash Collateral, and the proposed adequate protection arrangements, each as set forth in this Interim Order, are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment.

J.     <u>Immediate Entry</u>.  Sufficient cause exists for the immediate entry and effectiveness of this Interim Order under Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.

K.     **<u>Debtors' Stipulations</u>**.  Each stipulation, admission, and agreement contained in this Interim Order and the DIP Term Sheet will be binding upon the Debtors, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtors) under all circumstances and for all purposes.  The Debtors have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  Without prejudice to the rights of any other party and subject to Paragraph 41 hereof, the Debtors, on their own behalf

8

and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (collectively, the "Debtors' Stipulations"):

      i.    Prepetition Loan Agreement.  Prior to the Petition Date, the Debtors, as borrowers, and Parkview, as lender (in its capacity as such, the "Prepetition Lender"), entered into (i) that certain *Building Loan Agreement*, dated as of May 4, 2022, as amended by Amendment to Building Loan Agreement dated as of May 1, 2023, (as amended, restated or modified from time to time, the "Building Loan"), together with (ii) that certain *Project Loan Agreement*, dated as of May 4, 2022, by and among the Debtors and Parkview (as amended, restated or modified from time to time, the "Project Loan" and, together with the Building Loan, the "Prepetition Loan Agreement"). The Building Loan is secured by that certain *Building Loan Mortgage Note*, by and among the Debtors and the Prepetition Lender, dated as of May 4, 2022.  The Project Loan is secured by that certain *Project Loan Mortgage Note*, by and among the Debtors and the Prepetition Lender, dated as of May 4, 2022.  For purposes of this Interim Order, the term "Prepetition Loan Documents" means the Prepetition Loan Agreement and all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Lender in connection with, evidencing or securing the Prepetition Secured Obligations (as defined below), including, without limitation, that certain Cash Collateral Agreement, dated October 22, 2025 (the "Prepetition Cash Collateral Agreement"), between the Debtors and Prepetition Lender (each as the same may have been amended, restated, renewed, replaced, supplemented or otherwise modified from time to time).  As of the Petition Date, the Building Loan and Project Loan were fully drawn and additional protective advances were provided by the Prepetition Lender, including a protective advance made by the Prepetition Lender on October 22, 2025, in the amount of $1,000,000, to enable the Debtors to pay critical payments and finalize preparations for filing the Bankruptcy Cases.

ii. <u>Prepetition Secured Obligations</u>.  As of the Petition Date, the Debtors are jointly and severally, justly and lawfully indebted and liable to the Prepetition Lender, without defense, counterclaim or offset of any kind, in the aggregate amount of approximately $146 million in principal amount outstanding on account of the Building Loan and the Project Loan plus all accrued and unpaid interest, fees, expenses, charges, indemnities and all other Obligations (as defined in the Prepetition Loan Agreement) incurred or accrued under or in connection with the Prepetition Loan Documents (collectively, the "<u>Prepetition Secured Obligations</u>").

iii. <u>Security for Prepetition Secured Obligations</u>.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Debtors granted to the Prepetition Lender security interests in and liens on (the "<u>Prepetition Liens</u>") all of their right, title and interest in the Collateral (as defined in the Prepetition Loan Documents) (the "<u>Prepetition Collateral</u>").

iv. <u>Validity of Prepetition Secured Obligations</u>.  The Prepetition Secured Obligations constitute legal, valid, and binding obligations of the Debtors, jointly and severally, enforceable against them in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Secured Obligations owing to, or any transfers made to the Prepetition Lender on account of the Prepetition Secured Obligations, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other legal or equitable challenges under the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Case (as defined below).

v. <u>Validity, Extent, Perfection, and Priority of Prepetition Liens</u>.  The Prepetition Liens granted to the Prepetition Lender constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), unavoidable

10

and perfected security interests in and liens on the Prepetition Collateral (including the proceeds thereof), at any time owned by the Debtors and thereafter acquired, were granted to, or for the benefit of, the Prepetition Lender for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery under the Bankruptcy Code or applicable non-bankruptcy law or equitable remedies or regulation by any person or entity, including in any Successor Case.

vi. <u>No Challenges or Claims Related to Prepetition Secured Obligations</u>.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Loan Documents, Prepetition Liens or Prepetition Secured Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition Loan Documents, Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) under the Bankruptcy Code or applicable non-bankruptcy law or equity.  The Debtors and their estates have no valid or meritorious Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action or basis for any equitable relief against the Prepetition Liens or other property of the Prepetition Lender, or the Prepetition Lender or any of its affiliates and its and their respective predecessors, agents, attorneys, advisors, professionals, officers, managers, directors, and employees with respect to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other Claims

11

arising under sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable non-bankruptcy law equivalents.    The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

vii. No Challenges or Claims Related to the DIP Facility.    No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the DIP Loan Documents, DIP Liens or DIP Obligations (as defined below) exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the DIP Loan Documents, DIP Liens or DIP Obligations exist, and no portion of the DIP Loan Documents, DIP Liens or DIP Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) under the Bankruptcy Code or applicable non-bankruptcy law or equity.    The Debtors and their estates have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action or basis for any equitable relief against the DIP Lender or any of its affiliates and its and their respective predecessors, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the DIP Obligations, the DIP Liens, the DIP Loan Documents or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other Claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable non-bankruptcy law equivalents.

viii.        Cash Collateral.    Except with respect to proceeds from the DIP Loans and proceeds from the DIP Collateral, all of the Debtors' cash constitutes Cash Collateral or proceeds

12

of the Prepetition Collateral and, therefore, is Cash Collateral of the Prepetition Lender.  For purposes of this Interim Order, the term "Cash Collateral" includes, without limitation: (i) all "cash collateral" as defined in section 363(a) of the Bankruptcy Code on hand or in any account or accounts; (ii) all cash equivalents; (iii) all deposits subject to setoff; and (iv) all cash arising from the collection or other conversion to cash of property of the Debtors in which the Prepetition Lender asserts security interests, liens or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arose thereafter pursuant to this Interim Order, and whether the property converted to cash existed as of the Petition Date or arose thereafter.

**NOW, THEREFORE**, based upon the foregoing findings of fact, the DIP Motion, the First Day Declaration, and the record before the Court with respect to the DIP Motion and the Cases, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. **Motion Granted**.  The DIP Motion is GRANTED as set forth in this Interim Order. Entry into the DIP Term Sheet and the other DIP Loan Documents is hereby authorized and approved, and the use of Cash Collateral is authorized, in each case, subject to the terms and conditions set forth in this Interim Order and in the DIP Loan Documents, including, without limitation, the Approved Budget (subject to Permitted Variances).  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved, and all included reservations of rights, are hereby denied and overruled on the merits.  This Interim Order will become effective immediately upon its entry.

## DIP Facility Authorization

2. **Authorization of the DIP Facility.**  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Loan Documents, and to incur and to

perform the DIP Obligations and other obligations under and in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all DIP Loan Documents, including, without limitation, all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens granted by this Interim Order and the DIP Loan Documents (the DIP Liens are immediately and automatically perfected by entry of this Interim Order and such perfection will continue upon entry of the Final Order without the need of the Debtors or the DIP Lender to take any action, file or record any mortgage, lien, or notice, or attach or take possession of any DIP Collateral).  The Debtors are hereby authorized to pay any principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents and this Interim Order, as such amounts become due and owing, subject to the Approved Budget (subject to Permitted Variances), without the need to obtain further Court approval (except as otherwise provided in this Interim Order or in the DIP Loan Documents), subject to and in accordance with their terms and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order and the DIP Loan Documents.  The DIP Loan Documents represent legal, valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms.  Each member, manager, and officer of a Debtor acting individually is hereby authorized to execute and deliver each of the DIP Loan Documents (in the event not already done), such execution and delivery to be conclusive evidence of such member, manager, or officer's respective authority to act in the name of and on behalf of the Debtors.

3.      In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized to perform all acts, to make, execute and deliver all instruments and

documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) that may be reasonably required or necessary for the Debtors' performance of their obligations under or in connection with the DIP Facility and DIP Loan Documents, including, without limitation, (i) the execution, delivery and performance of the DIP Loan Documents, any other documents or instruments that may be reasonably requested by the DIP Lender in connection with the DIP Facility, and, subject to the provisions of paragraph 21 of this Interim Order, any waivers, forbearances, consents or amendments to the DIP Loan Documents as the Debtors and the DIP Lender may agree in writing, all in accordance with the terms of the DIP Loan Documents and this Interim Order, and (ii) payment of all reasonable fees and expenses of the DIP Lender and its counsel and other retained professionals as set forth in the DIP Loan Documents and Paragraph 37 hereof.

4.     Upon entry of this Interim Order, the DIP Loan Documents shall constitute valid, binding and enforceable obligations of the Debtors, enforceable against the Debtors in accordance with the terms thereof and hereof.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be voidable, or recoverable under the Bankruptcy Code (including, without limitation, under section 502(d) or 549 of the Bankruptcy Code) or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim and shall survive dismissal of, or conversion of the case to a case under chapter 7 of the Bankruptcy Code.

5.     **Authorization of DIP Facility; Borrowing of Initial DIP Loan**.  The maximum amount of DIP Loans available under the DIP Facility is $32,762,104, which shall be available to the Debtors as follows: (i) $12,270,387, is available to be borrowed by the Debtors in one draw upon entry of this Interim Order, subject to the satisfaction of the Initial DIP Borrowing Conditions

and in accordance with the other provisions of the DIP Term Sheet (the "<u>Initial DIP Loan</u>"), and (ii) an additional $20,491,717, is available to be borrowed by the Debtors in multiple draws upon entry of the Final Order, subject to the satisfaction of the Subsequent DIP Borrowing Conditions and in accordance with the other provisions of the DIP Term Sheet (the "<u>Subsequent DIP Loans</u>"). The DIP Lender's commitment to make the DIP Loans is limited to the aggregate amount of the Interim DIP Loan and Subsequent DIP Loans, i.e., $32,762,104 (the "<u>DIP Commitment</u>"). To prevent immediate and irreparable harm to the Debtors' and their estates, and to enable the Debtors to continue to operate their businesses and preserve and maximize the value of their assets and estates, subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order, the Debtors are hereby authorized to borrow the Initial DIP Loan. Subject to entry of the Final Order, the Debtors will be authorized to borrow the Subsequent DIP Loans.

6.  **<u>Roll Up</u>**. The Initial Roll Up is hereby approved. Effective immediately upon entry of this Interim Order, $12,270,387 of the Prepetition Secured Obligations will be automatically "rolled up" on a 1:1 basis with the Interim DIP Loan, converted into, and treated for all purposes as DIP Loans and DIP Obligations. Subject to entry of the Final Order, simultaneous with the borrowing of any Subsequent DIP Loans by the Debtors under the DIP Facility, there shall be a dollar-for-dollar roll up of Prepetition Secured Obligations to Subsequent DIP Loans when and as funded by the DIP Lender to the Debtors. The outstanding aggregate amount of Prepetition Secured Obligations shall be automatically and irrevocably deemed reduced by the amount of Prepetition Secured Obligations included in the Roll Up.

7.  **<u>Early Termination Fee</u>**. The Early Termination Fee is hereby approved. In the event of a Voluntary Prepayment of all DIP Obligations, a fee equal to 2% of the DIP Commitment shall be paid by the Debtors in cash to the DIP Lender (the "<u>Early Termination Fee</u>"). The Early

Termination Fee shall be fully earned upon entry of this Interim Order and non-refundable once paid.

8. **DIP Obligations**. The DIP Loan Documents and this Interim Order constitute and evidence the validity and binding effect of the DIP Obligations. All DIP Obligations are enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion in any of the Chapter 11 Cases, in any other proceedings superseding or related to any of the foregoing (each, a "<u>Successor Case</u>"), or in the event any Bankruptcy Case is dismissed. The DIP Obligations include all loans, reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Lender, including, without limitation, all principal, accrued interest, costs, charges, fees, expenses, and other amounts, in each case payable under the DIP Loan Documents and/or pursuant to this Interim Order. The DIP Obligations are due and payable on the Termination Date (as defined below). No obligation, payment, transfer, or grant of collateral as security hereunder or under the DIP Loan Documents (including, without limitation, any DIP Obligations or DIP Liens) to the DIP Lender, including, without limitation, in connection with any adequate protection provided hereunder, will be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547–550 of the Bankruptcy Code or under any applicable state or common law), or be subject to any disgorgement, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), claim, counterclaim, charge, assessment, cross-claim, defense, or any other liability or

challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for any reason.

9. **DIP Collateral**. To secure the prompt payment and performance of all DIP Obligations, including, without limitation, all principal, the Roll Up, interest, premiums, payments, fees, costs, expenses, indemnities, and/or other amounts, effective as of the Petition Date, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition liens on and security interests in the DIP Collateral (collectively, the "DIP Liens"), subject to the Carve Out. The DIP Collateral consists of all assets and properties of each of the Debtors and their estates, including, without limitation, whether tangible or intangible, real, personal, or mixed, wherever located, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, the Debtors, whether prior to or after the Petition Date, including, without limitation, all of the Debtors' rights, title, and interests in (1) all Prepetition Collateral; (2) all money, cash, DIP Loan proceeds, and cash equivalents; (3) all funds in any deposit accounts, securities accounts, commodities accounts, deposits or other accounts together with all money, cash, and cash equivalents, instruments, and other property deposited therein or credited thereto from time to time; (4) all accounts and other receivables (including, without limitation, those generated by intercompany transactions); (5) all contracts and contract rights including, without limitation, landlord's rights under residential and non-residential real property leases; (6) all instruments, documents and chattel paper; (7) all securities (whether or not marketable); (8) all goods, as-extracted collateral, furniture, machinery, equipment, inventory and fixtures; (9) all real property interests and attendant rights, licenses, certifications and permits; (10) all interests in leaseholds; (11) all franchise rights; (12) all patents, tradenames, trademarks (other

than intent-to-use trademarks), copyrights, licenses and all other intellectual property; (13) all general intangibles, tax or other refunds, or insurance proceeds; (14) all equity interests, capital stock, limited liability company interests, partnership interests and financial assets; (15) all investment property; (16) all supporting obligations; (17) all letters of credit and letter of credit rights; (18) subject to entry of the Final Order all commercial tort claims, without regard to any description of any such commercial tort claims; (19) all claims and causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds of or property recovered, whether by judgment, settlement or otherwise, from such actions, subject to entry of the Final Order; (20) all permits, licenses, employment contracts, and license agreements, books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records), certifications, approvals, and permits; (21) to the extent not covered by the foregoing, all other goods, inventories, supplies, assets or properties of the Debtors, whether tangible, intangible, real, personal or mixed; and (22) all products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, including, without limitation, any and all proceeds of any insurance (including, without limitation, any business interruption and property insurance), indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing, now owned or hereafter acquired.

10.    **DIP Liens**.  The DIP Liens are valid, automatically perfected upon entry of this Interim Order, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, other encumbrances on, or claim to any of the DIP Collateral, except that the DIP Liens are subject and immediately junior to the Carve-Out (as defined below).  The DIP Liens are not and shall not be made subject to or *pari passu* with any lien or security interest heretofore or

19

hereinafter granted in the Chapter 11 Cases or any Successor Case, and will be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Case or Successor Case. The DIP Liens will not be subject to sections 510, 549, or 550 of the Bankruptcy Code. The DIP Liens have the priorities set forth below.

11.      <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to the Carve-Out, the DIP Liens constitute valid, binding, continuing, enforceable, fully and automatically perfected first priority liens on and senior security interests in the DIP Collateral that is not subject to a lien or security interest as of the Petition Date.

12.      <u>Priming DIP Liens</u>.  Pursuant to section 364(d) of the Bankruptcy Code, subject to the Carve-Out, the DIP Liens granted pursuant to this Interim Order constitute valid, binding, continuing, enforceable, fully and automatically perfected, first priority, priming DIP Liens upon (i) all DIP Collateral subject to a lien or security interest as of the Petition Date, including, without limitation, all Prepetition Liens and all Permitted Liens , and (ii) the Adequate Protection Liens.

13.      <u>Liens Senior to Certain Other Liens</u>.  Subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims are not and shall not be made subject to or *pari passu* with (i) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, including, without limitation, any lien or security interest granted in favor of any federal, state, municipal, or other governmental unit (including, without limitation, any regulatory body subject to the following proviso), commission, board, or court for any liability of the Debtors, (ii) any lien or security interest that is avoided or preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, or (iii) any other

lien, security interest, or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the Petition Date; *provided, however*, that if the DIP Lender determines, in consultation with the Debtors, that the imposition of the priming DIP Liens would impair any regulatory authority's lien or interest in any DIP Collateral such that the Debtors' rights, licenses, or privileges to continue and complete development of the Project would be materially and negatively impacted thereby, the DIP Lender agrees to enter into a subordination agreement, in all respects acceptable to the DIP Lender, pursuant to which the DIP Liens would be subordinated to such regulatory authority's lien or interest in any DIP Collateral solely to the extent necessary to ensure the Debtors may continue and complete development of the Project.

14.    **DIP Superpriority Claims**.    Subject to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, including, without limitation, the Adequate Protection Superpriority Claim granted to the Prepetition Lender hereunder, and all other claims against the Debtors, including, now or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, with recourse against all DIP Collateral (the "DIP Superpriority Claim"), and, such DIP Superpriority Claims shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

15.    **No Obligation to Extend Credit**.    The DIP Lender has no obligation to fund the Initial DIP Loan or any other DIP Loans, or extend any other financial accommodations, under the DIP Loan Documents or this Interim Order unless all of the applicable conditions precedent under the DIP Loan Documents, including, without limitation, the Initial DIP Borrowing Conditions and

this Interim Order have been satisfied in full or waived in writing by the DIP Lender in accordance with the terms of the DIP Loan Documents.

16.   **Use of DIP Proceeds**.  The DIP Loans and Cash Collateral shall be used by the Debtors solely to: (i) fund day-to-day working capital needs of the Debtors and expenditures during the Chapter 11 Cases and (ii) to pay reasonable fees and expenses of legal and financial advisors or other similar advisors, in each case in accordance with the applicable Approved Budget (subject to the Permitted Variances) and the provisions of the DIP Loan Documents and this Interim Order.

17.   **No Monitoring Obligation**.  The DIP Lender has no obligation or responsibility to monitor the Debtors' use of the DIP Loans and Cash Collateral, and the DIP Lender may rely upon the Debtors' representations that the use of the DIP Loans and Cash Collateral at any time is in accordance with the requirements of this Interim Order and the DIP Loan Documents, including, without limitation, the Approved Budget (subject to the Permitted Variances).

18.   **Authorization to Use Cash Collateral**.   The Prepetition Cash Collateral Agreement is hereby terminated (other than those provisions that survive termination) and superseded by this Interim Order.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtors are authorized to use Cash Collateral, including, without limitation, any remaining loan proceeds covered by the Prepetition Cash Collateral Agreement as long as such Cash Collateral use is included in the Approved Budget.  Nothing in this Interim Order authorizes the disposition of any assets of the Debtors outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted by

this Interim Order, the DIP Loan Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), as applicable.

19.   **Consent of Prepetition Lender**.   The Prepetition Lender consents to (i) the provisions of this Interim Order, including the Carve-Out, (ii) the Debtors' entry into the DIP Term Sheet and other DIP Loan Documents, (iii) the incurrence by the Debtors of the Initial DIP Loan, (iv) the granting of the DIP Liens and DIP Superpriority Claims, and (v) the Approved Budget (subject to the Permitted Variances).

20.   **Adequate Protection for Prepetition Lender**.   Subject only to a successful Challenge, the Prepetition Lender shall have and is hereby granted (effective upon the entry of this Interim Order and without the necessity of the execution of mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing statements or otherwise), the following adequate protection (collectively, "Adequate Protection") with respect to (i) (a) the priming of the Prepetition Liens securing the Prepetition Secured Obligations to be effectuated by the DIP Liens and DIP Facility, (b) the use of the Prepetition Collateral, including, without limitation, Cash Collateral, and (c) all of the other transactions contemplated by the DIP Facility; and (ii) for any diminution in the value of the Prepetition Liens whether or not such diminution in value results from the sale, lease or use by the Debtors of the Prepetition Collateral securing the Prepetition Secured Obligations, including, without limitation, Cash Collateral, the priming of the Prepetition Liens securing the Prepetition Secured Obligations or the stay of enforcement of any Prepetition Lien securing the Prepetition Secured Obligations arising from sections 105 or 362 of the Bankruptcy Code, or otherwise ("Diminution of Value"):

a.   Adequate Protection Liens.   Continuing valid, binding, enforceable, and perfected postpetition replacement liens under sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code

on the DIP Collateral, which will be subject and subordinated only to the Carve-Out, the DIP Liens, the Permitted Liens, and the DIP Superpriority Claims (the "Adequate Protection Liens") and which (a) shall otherwise be senior to all other liens on, security interests in, or claims against the DIP Collateral, and (b) shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case and will be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Case, and will not be subject to sections 510, 549, or 550 of the Bankruptcy Code.

b. <u>Adequate Protection Superpriority Claims</u>.  Administrative superpriority expense claims in the Chapter 11 Cases under section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), which will be subject and subordinated only to the Carve-Out, the DIP Liens, the Permitted Liens, and the DIP Superpriority Claims, and shall have priority over any and all other administrative expenses and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever as to and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code.

c. <u>Lender Fees and Expenses</u>.  Payment or reimbursement of all reasonable fees and expenses of the Prepetition Lender incurred in connection with the Prepetition Obligations, Prepetition Liens, Prepetition Loan Documents, the DIP Term Sheet and other DIP Loan Documents, the DIP Orders, and the Chapter 11 Cases, whether incurred prior to or following the Petition Date, which amounts shall be added to the principal amount of the Prepetition Obligations.

21. **Adequate Protection Reservation**.  Nothing in this Interim Order will impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender hereunder is insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during the Chapter 11 Case or any

Successor Case, subject to the Carve Out. The receipt by the Prepetition Lender of the adequate protection provided in this Interim Order shall not be deemed an admission that the interests of the Prepetition Lender are adequately protected, and this Interim Order will not prejudice or limit the rights of the Prepetition Lender to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

### General Provisions Regarding DIP Financing and Use of Cash Collateral

22. **Amendments to the DIP Loan Documents**. The Debtors and the DIP Lender may enter into one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case in the DIP Lender's sole discretion, and no further approval of this Court will be required for any amendment, waiver, consent, or other modification to and under the DIP Loan Documents (and any fees paid in connection therewith) that does not materially and adversely affect the Debtors or that does not (i) shorten the maturity of the DIP Facility, (ii) increase the principal amount of, the rate of interest on, or the fees payable in connection with the DIP Facility, (iii) change any Event of Default (other than to remove or make such Event of Default more favorable to the Debtors), or (iv) add any covenants or amend the covenants (other than to remove or amend a covenant to make it more favorable to the Debtors).

23. **Approved Budget**.

a. Initial Budget. Attached to this Interim Order as **Exhibit 2** is a 3-month budget commencing on the Petition Date (the "Initial Budget"), which has been agreed to by the DIP Lender, and is hereby approved. The Initial DIP Loans and Cash Collateral available to the Debtors under this Interim Order shall only be used by the Debtors in accordance with the Approved Budget (subject to Permitted Variances), this Interim Order, and the DIP Loan Documents.

b. <u>Budget Updating</u>.  Beginning on December 10, 2025, the Initial Budget, and each subsequent budget, shall be updated by the Debtors by no later than the tenth day of each month at 5:00 p.m. (Eastern time) (the "<u>Updated Budget</u>"), which Updated Budget shall in all respects be satisfactory in form and substance to the DIP Lender (the Initial Budget and each Updated Budget that is approved by the DIP Lender, the "<u>Approved Budget</u>").  If an Updated Budget is not approved in writing by the DIP Lender within two (2) business days of receipt thereof, subject to the occurrence of any Event of Default and/or the Termination Date, the prior Approved Budget shall continue in place until a subsequent proposed Updated Budget is approved in writing by the DIP Lender.  Other than with respect to the Carve-Out, the DIP Lender's consent to, or acknowledgement of, the Approved Budget shall not be construed as consent to use the DIP Loans or Cash Collateral beyond the Termination Date, regardless of whether all funds covered by such Approved Budget have been expended.  All amounts necessary to fund the Carve-Out (including the Professional Fee Reserve) shall be included in an Approved Budget and shall be subject to the DIP Commitment.

c. <u>Reporting</u>.  Beginning on January 1, 2026, not later than 5:00 p.m. (Eastern time) on the first business day of each calendar month, the Debtors shall deliver to the DIP Lender a variance report in all respects satisfactory in form and substance to the DIP Lender setting forth (i) the Debtors' expenditures and disbursements on an aggregate basis (excluding Case Professional (as defined below) fees and expenses incurred in accordance with the Initial Budget or subsequent Approved Budget) during the immediately preceding calendar month compared to the projected expenditures and disbursements (on a line-by-line basis) set forth in the Approved Budget for such Variance Testing Period (as defined below) and (ii) the variance in dollar amounts of the actual expenditures and disbursements (excluding all fees due and payable pursuant to 28

26

U.S.C. § 1930(a) plus any interest due and payable under 31 U.S.C. § 3717) for each monthly period ending on Sunday from those reflected for the corresponding period in the Approved Budget.  For purposes of this Interim Order, "Permitted Variance" means disbursements that are not more than 15% above the total aggregate amount of the actual disbursements across all line items (excluding Case Professional fees to the extent such fees are in accordance with, and do not exceed, amounts budgeted for such fees in an Approved Budget) (the "Operating Disbursements") during any Variance Testing Period against the projected Operating Disbursements in the Approved Budget for such Variance Testing Period; provided that, any net positive variance shall be carried forward and available in future Variance Testing Period(s) on a cumulative basis, subject to deduction for any negative variances in any prior period without duplication.

24.     **Modification of the Automatic Stay**.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit the Debtors, the DIP Lender and/or the Prepetition Lender to accomplish the transactions contemplated by this Interim Order.

25.     **Perfection of DIP Liens and Adequate Protection Liens**.  The DIP Liens and Adequate Protection Liens are automatically perfected upon the entry of, and pursuant to, this Interim Order.  This Interim Order is sufficient and conclusive evidence of the creation, extent, validity, perfection, and priority of all DIP Liens and the Adequate Protection Liens and any and all other liens granted in the DIP Term Sheet, any security DIP Loan Document executed and delivered in connection therewith or herewith, or granted in this Interim Order, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, attachment, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance

with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens or to entitle the DIP Lender and the Prepetition Lender to the priorities granted in this Interim Order. Notwithstanding the foregoing, the DIP Lender and the Prepetition Lender are authorized to file, as the DIP Lender or Prepetition Lender, as the case may be, deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents will be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation will be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  Each of the DIP Lender and the Prepetition Lender may, in its discretion, file an electronic copy or photocopy of this Interim Order as a financing statement, mortgage, or other official record with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments, and each such filing or recording office or with any registry of deeds or similar office is authorized to accept the same.  To the extent that the Prepetition Lender is, with respect to the DIP Collateral, a secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements or any other Prepetition Loan Documents or is listed as loss payee, lenders' loss payee or additional insured under any the Debtors' insurance policies, the DIP Lender will also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  Notwithstanding the foregoing, if the DIP Lender or Prepetition Lender so requires, the Debtors shall use reasonable efforts to execute, file or record any documents and/or

take any actions necessary or prudent to ensure the perfection of the DIP Liens and Adequate Protection Liens.

26.      **Proceeds of Subsequent Financing**.  If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Case obtains credit or incurs debt under sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations, if any, which expressly survive termination of the DIP Loan Documents, and which will be cash collateralized to the extent and on terms required by the DIP Lender) and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, then, after satisfaction of the Carve-Out, all cash proceeds derived from such credit or debt will immediately be turned over to the DIP Lender to be distributed in accordance with this Interim Order and the DIP Loan Documents; *provided, however*, that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court. If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in the Chapter 11 Cases, or any Successor Case, obtains credit or incurs debt (other than the DIP Facility) under section 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full of the Prepetition Secured Obligations (other than unasserted contingent obligations, if any, which expressly survive termination of the DIP Loan Documents, and which will be cash collateralized to the extent and on terms required by the DIP

29

Lender), the Prepetition Lender's and/or the DIP Lender's rights to object to the Debtors' use of Cash Collateral and assert a lack of adequate protection is and will be fully preserved.

27.    **Maintenance of DIP Collateral**.  Until the payment in full of the DIP Obligations and the Prepetition Secured Obligations, the Debtors shall: (i) insure and/or maintain insurance on the DIP Collateral to such extent and at such levels as exist as of the date of entry of this Interim Order and as otherwise may be reasonably required from time to time by the DIP Lender, and (ii) maintain the cash management system consistent with the terms and conditions of any orders entered by the Court with respect to the Debtors' cash management system.

28.    **Rights to Credit Bid**.

a.    Subject only to a successful Challenge, pursuant to section 363(k) of the Bankruptcy Code and the Prepetition Loan Documents, and subject to the Carve Out, the Prepetition Lender, or its designee, shall have the right to credit bid all or any portion of its liens and claims, including, without limitation, the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Adequate Protection Superpriority Claim, in connection with any sale of any, all, or substantially all of the Debtors' assets on which the Prepetition Lender has a lien or claim, including, without limitation, any sale occurring under section 363 of the Bankruptcy Code or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including, without limitation, a plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii), or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

b.    Pursuant to section 363(k) of the Bankruptcy Code and the DIP Loan Documents, subject to the Carve Out, the DIP Lender, or its designee, shall have the right to credit bid all or any portion of its liens and claims, including, without limitation, the DIP Liens, the DIP

Obligations, and the DIP Superpriority Claims, in connection with any sale of any, all, or substantially all of the Debtors' assets, including, without limitation, any sale occurring under Bankruptcy Code section 363 or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including, without limitation, a plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii), or a sale or disposition by a chapter 7 trustee for the Debtors under section 725 of the Bankruptcy Code.

29. **DIP Milestones**. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to the DIP Milestones. The failure of the Debtors to meet a DIP Milestone by the applicable specified deadline shall constitute an Event of Default under the DIP Term Sheet.

30. **Termination Date**. The Debtors may borrow DIP Loans and use Cash Collateral from the date of entry of this Interim Order until the earliest to occur of the following (the "Termination Date"):

    a.   the occurrence of an Event of Default that is not cured within the time allotted under the DIP Term Sheet, if any;

    b.   twelve (12) months after the Petition Date (as such date may be extended with the prior written consent of the DIP Lender);

    c.   the date of consummation of a sale of all or substantially all of the assets of any or all of the Debtors; and

    d.   the effective date of a chapter 11 plan with respect to any or all of the Debtors.

31. Upon the Termination Date, subject to the Carve Out, the Debtors shall repay to the DIP Lender all outstanding DIP Obligations, without any setoff or deduction. If the Termination Date occurs as a result of the closing of a sale of all or substantially all of the assets of any of the Debtors, all outstanding DIP Obligations shall be paid in full prior to or simultaneous with the

closing of such transaction either (i) directly from the buyer in such transaction or (ii) directly from the escrow account, via the escrow agent, established for the consummation of such transaction. Such payment shall be made by wire transfer of immediately available funds to an account designated in writing by the DIP Lender to the Debtors prior to the closing of such transaction.

32.    **Events of Default**.  The occurrence of any Event of Default under the DIP Term Sheet, unless waived in writing (which may be by electronic mail) and in accordance with the terms of the DIP Loan Documents, shall constitute an event of default thereunder and hereunder.

33.    **Rights and Remedies Upon Event of Default**.  Upon the occurrence of an Event of Default the DIP Lender shall not be obligated to make any further DIP Loans under the DIP Facility to the Debtors, and shall have the following additional rights and remedies:

a.    Subject to Paragraph 34 hereof, following five (5) business days' advance notice to the Debtors, any Committee, and the U.S. Trustee (a "Termination Notice"), the DIP Lender shall have the right, upon the expiration of such notice period and subject to the provisions of the Carve Out, to take all or any of the following actions without further order of or application to the Court, and notwithstanding the automatic stay:

i.    immediately terminate the Debtors' use of any Cash Collateral; *provided, however*, that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under

section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court;

ii. terminate the DIP Facility and DIP Commitment;

iii. declare all DIP Obligations to be immediately due and payable;

iv. freeze monies or balances in the Debtors' accounts (other than the Professional Fee Reserve Account) and sweep all funds contained in any account subject to a control agreement, or require the Debtors to transfer such funds to an account designated by the Lender for such purpose; *provided, however*, that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court;

v. immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Lender against the DIP Obligations, or otherwise enforce any and all rights against the DIP Collateral in the possession of the DIP Lender, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations; and

vi. take any other actions or exercise any other rights or remedies permitted under the DIP Orders, this DIP Term Sheet, the other DIP Loan Documents, or applicable law to effect the repayment of the DIP Obligations.

33

34.     No failure or delay by the DIP Lender in exercising any right, remedy, power or privilege hereunder or under any DIP Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The remedies provided herein and in the DIP Loan Documents are cumulative and not exclusive of any remedies provided by law.  Nothing contained herein or in any DIP Loan Document shall in any way affect the right of the DIP Lender to exercise any statutory or common law lien or right of setoff.

35.     **Emergency Hearing**.  The Debtors and/or Committee may seek an emergency hearing during the five (5) business days following the date a Termination Notice is delivered (such five (5) business day period, the "Remedies Notice Period").  During the Remedies Notice Period, the Debtors will continue to have the right to use Cash Collateral solely to satisfy obligations that are necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Unless the Court has entered an order prior to the expiration of the Remedies Notice Period finding that an Event of Default has not occurred or otherwise enjoining the DIP Lender from exercising rights and remedies, the DIP Lender shall be entitled to exercise all rights and remedies in accordance with the DIP Loan Documents, this Interim Order, and applicable law without further order of or application to the Court, and notwithstanding the automatic stay.

36.     **Carve-Out**.

a.     Carve-Out Definition.  As used in this Interim Order and the DIP Loan Documents, "Carve-Out" means the sum of: (i) to the extent allowed at any time, all unpaid professional fees and disbursements incurred at any time prior and on the date of to the delivery of the Carve-Out Trigger Notice (as defined below) ("Allowed Professional Fees") by the Debtors and any Committee for any of their respective retained professionals in the Chapter 11 Cases (the "Case

34

Professionals"), in an aggregate amount not to exceed the amounts set forth in the then existing Approved Budget in the applicable line for such Case Professionals prior to the Carve-Out Effective Date; (ii) all allowed and unpaid professional fees and expenses incurred by the respective Case Professionals following the delivery of the Carve-Out Trigger Notice in an aggregate amount not in excess of $1,000,000; (iii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726 of the Bankruptcy Code; plus (iv) all fees pursuant to 28 U.S.C. §1930(a) and all fees required to be paid to the Clerk of the Court for the Debtors for the time period beginning on the Petition Date and ending on the date of any dismissal or conversion of the Chapter 11 Cases, which fees described in this clause(iv) shall not be limited to amounts that may be set forth in any Approved Budget.

b. <u>Carve-Out Trigger Notice</u>" means a written notice, delivered by email or U.S. Mail, by the DIP Lender to the Debtors, their Chief Restructuring Officer, their counsel, the U.S. Trustee, and counsel to any Committees, of any default under the DIP Loan Documents.

c. <u>Professional Fee Reserve</u>. On a monthly basis, and as part of the Carve-Out, the fees, costs and expenses of Case Professionals included in the applicable Approved Budget may be deposited by the Debtors into a segregated escrow account held in trust by the Debtors (the "<u>Professional Fee Reserve</u>"). On the Carve-Out Effective Date, the estimated aggregate amount of any professional fees and disbursements accrued by Case Professionals prior to and on the date of delivery of the Carve-Out Effective Date (in an aggregate amount not to exceed the amounts set forth in the then existing Approved Budget prior to the Carve-Out Effective Date for all professional fees and expenses) not to exceed $1,000,000, shall, to the extent not already funded, be funded by the DIP Lender under the DIP Commitment as a DIP Loan and deposited by the Debtors into the Professional Fee Reserve into a segregated escrow account held in trust by the

Debtors (the "<u>Professional Fee Reserve</u>"), which funds shall be DIP Collateral, subject to the Carve-Out. Amounts funded into the Professional Fee Reserve shall be used by the Debtors in accordance with the provisions of this DIP Term Sheet, the DIP Orders, and any orders of the Court entered with respect to the allowance and payment of fees and expenses of Case Professionals. Any amounts remaining in the Professional Fee Reserve after payment of all allowed fees and expenses shall be transmitted promptly to the DIP Lender (unless the DIP Lender has been paid in full, in which case any such funds shall be promptly transmitted to the Debtors) without any setoff or deduction.

        d.   <u>No Obligation to Pay Professional Fees; Right to Object</u>. The DIP Lender and the Prepetition Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any of the Case Professionals incurred in connection with the Chapter 11 Cases, any Successor Case, or otherwise. Nothing in this Interim Order or otherwise shall, or be construed to, obligate the DIP Lender or the Prepetition Lender in any way to pay compensation to, or to reimburse expenses of, any Case Professional, or to guarantee that the Debtors or their estates have sufficient funds to pay such compensation or reimbursement. Nothing herein shall be construed as consent to the allowance of any fees or expenses of any Case Processionals in the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code, or of any other person or entity, or affect the right of the DIP Lender and/or the Prepetition Lender to object to the allowance and payment of any such fees and expenses, or any other fees and expenses.

        37.   **Good Faith Under Section 364(e) of the Bankruptcy Code**. The DIP Lender and the Prepetition Lender have acted in good faith in connection with the DIP Facility, the DIP Loan Documents, the Prepetition Loan Documents, and this Interim Order and are entitled to rely upon the protections granted in this Interim Order and by section 364(e) of the Bankruptcy Code. Based

on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, and notwithstanding any modification, amendment or vacatur of any or all of the provisions of this Interim Order by a subsequent order of this Court or any other court, the DIP Lender and Prepetition Lender are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

38.     **Reimbursement of Fees and Expenses.**   The Debtors shall reimburse the DIP Lender for all of its pre-petition and post-petition reasonable fees, costs, and expenses incurred in connection with the DIP Facility, DIP Obligations, DIP Liens, DIP Loan Documents, DIP Motion, DIP Orders, and the Chapter 11 Cases, including, without limitation, the reasonable fees and expenses of their attorneys and financial advisors.   A copy of any invoice submitted by the DIP Lender to the Debtors shall be delivered simultaneously to the U.S. Trustee and counsel to any Committee (the "Fee Notice").   Such invoices may be redacted to preserve any applicable privilege or work product doctrine and shall not be required to contain specific time entries.   None of such costs, fees, charges and expenses shall be subject to Court approval or required to be recorded or maintained in accordance with the United States Trustee guidelines relating to compensation and reimbursement of expenses and no recipient of any such payment shall be required to file any interim or final fee application with the Court, provided that if any objection is filed, the Court may review the reasonableness of such fees.   Subject to the Debtors, any Committee, or the U.S. Trustee filing a written objection with this Court to any such fees and expenses within ten (10) days after receipt of a Fee Notice, the Debtors shall pay promptly such invoice by adding the fees and expenses sought pursuant to such Fee Notice to the principal amount of the DIP Obligations. To the extent a timely filed objection is filed by the Debtors, any Committee, or the U.S. Trustee, the Debtor (i) shall pay such portion of the fees and expenses to which no objection is interposed

and (ii) shall pay any remaining fees and expenses as ordered by the Court (or upon withdrawal or resolution of the objection), in each case by adding the fees and expenses sought pursuant to such Fee Notice to the principal amount of the DIP Obligations.

39.     **Indemnification**.  Subject to entry of the Final Order, the Debtors will jointly and severally indemnify and hold harmless the DIP Lender and Prepetition Lender and each of their respective affiliates (but not the Debtors) and its and their respective directors, officers, employees, agents, attorneys, accountants, advisors, controlling persons, equity holders, partners, members, and other representatives and each of their respective successors and permitted assigns (each, an "Indemnified Party") against, and hold each Indemnified Party harmless from, any and all losses, claims, damages, liabilities, and reasonable, documented and invoiced out-of- pocket fees and expenses (including, without limitation, fees and disbursements of counsel but limited, in the case of counsel, to the extent set forth in the DIP Loan Documents) that may be incurred by or asserted or awarded against any Indemnified Party, in each case, arising out of, or in any way in connection with, or as a result of: (i) the execution or delivery of any of the DIP Loan Documents, the performance by the parties thereto of their respective obligations thereunder and the other transactions contemplated thereby; (ii) the use of the proceeds of the DIP Facility and use of Cash Collateral or other Prepetition Collateral; (iii) the enforcement or protection of their rights in connection with any of the DIP Loan Documents; (iv) the negotiation of and consent to this Interim Order; or (v) any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any Indemnified Party is a party thereto and regardless of whether such matter is initiated by a third party or the Debtors or any of their affiliates or creditors; *provided* that no Indemnified Party will be indemnified for any loss, claim, damage, liability, cost, or other expense to the extent such loss, claim, damage, liability, cost, or expense (i) is determined by a final, non-

38

appealable judgment of a court of competent jurisdiction to have resulted solely from the gross negligence, fraud, or willful misconduct of such Indemnified Party or (ii) relates to any proceeding between or among Indemnified Parties other than claims arising out of any act or omission on the part of the Debtors in accordance with this paragraph.

40.     **Limitations on the Use of DIP Proceeds, Cash Collateral, the Carve Out, and Other Funds**.  The DIP Loans, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out, may not be used, directly or indirectly, by the Debtors or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, any Committee, or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with any of the following:

a.  seeking authorization to obtain liens or security interests that are senior to or *pari passu* with the DIP Liens or the Prepetition Liens, except as necessary to pay off the DIP Obligations in full, in cash, or

b.  investigating (including, without limitation, by way of examinations or discovery proceedings), examining, preparing, asserting, joining, commencing, supporting or prosecuting any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the DIP Lender and/or the Prepetition Lender, and each of their respective officers, directors, controlling persons, employees, agents, attorneys, affiliates, assigns, or successors of each of the foregoing (all in their capacities as such), with respect to any transaction, occurrence, omission, action or other matter

39

(including, without limitation, formal discovery proceedings in anticipation thereof), including, without limitation:

    i.  any claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any state law equivalents;

    ii.  any so-called "lender liability" claims and causes of action or other actions to recover or disgorge payments against the DIP Lender, Prepetition Lender, or any of their affiliates, successors and assigns and the partners, shareholders, members, controlling persons, directors, officers, employees, agents, attorneys, advisors, and professionals;

    iii.  any action, challenge or objection with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Loan Documents or the Prepetition Secured Obligations, or any other rights or interests of the DIP Lender or Prepetition Lender;

    iv.  any action seeking to invalidate, modify, set aside, avoid, subordinate, recharacterize, or disallow, in whole or in part, the DIP Loan Documents, the DIP Obligations, the DIP Liens, the Prepetition Loan Documents, the Prepetition Liens, and/or the Prepetition Secured Obligations;

    v.  any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either (A) the DIP Lender under any of the DIP Loan Documents or this Interim Order, or (B) the Prepetition Lender under any of the Prepetition Loan Documents or this

Interim Order, in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Lender's or the Prepetition Lender's assertions, enforcements, realizations or remedies on or against the Debtors, the DIP Collateral or the Prepetition Collateral, as applicable; or

vi. objecting to, contesting, or interfering with, in any way, the DIP Lender's or the Prepetition Lender's enforcement or realization upon any of the DIP Collateral or the Prepetition Collateral, as applicable, once an Event of Default has occurred.

41. Subject to entry of the Final Order, notwithstanding the foregoing, a Committee may use up to $25,000 of Cash Collateral solely to investigate, but not in any way assert any claims against, challenge, commence or continue a Challenge to, the DIP Obligations, the Prepetition Secured Obligations, the DIP Liens, the Prepetition Liens, the Collateral, the Prepetition Collateral, the DIP Loan Documents, the Prepetition Loan Documents, or any claims or liens, held by or on behalf of the DIP Lender or the Prepetition Lender.

42. **<u>Payments Held in Trust</u>**.  Except as expressly permitted in this Interim Order or the DIP Loan Documents and other than with respect to the Prepetition Collateral, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents and termination of the DIP Facility in accordance with the DIP Term Sheet, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lender (in the same form received) and will immediately turn over such proceeds to the

DIP Lender (in the same form received, unless otherwise agreed by the DIP Lenders), for application in accordance with the DIP Loan Documents and this Interim Order.

43. **Effect of Stipulations on Third Parties. The agreements, stipulations and findings contained in this Interim Order shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, any Committee, except to the extent that (i) a party in interest with standing, has timely commenced an adversary proceeding or contested matter asserting any claims or causes of action against the Prepetition Lender, objecting to the Prepetition Lender's claims or liens, or challenging any of the admissions set forth in Paragraph K of this Interim Order (a "<u>Challenge</u>") no later than 75 days after the date of entry of this Interim Order (the "<u>Challenge Period</u>"), and (ii) the Court has ruled in favor of the party who timely commenced such Challenge. If no Challenge is timely commenced within the Challenge Period, (a) all of the stipulations, admissions, acknowledgements and agreements in Paragraph K of this Interim Order shall be binding and preclusive on the Debtors and their estates and their respective creditors, the Committee (if any), equity holders, and all other parties in interest in these Chapter 11 Cases, (b) the claims of the Prepetition Secured Parties shall constitute allowed claims for all purposes in these Chapter 11 Cases and any Successor Case, (c) the Prepetition Liens shall be deemed legal, valid, binding, perfected and otherwise unavoidable, (d) the Prepetition Liens and Prepetition Secured Obligations shall not be subject to subordination, counterclaims, set-off, defense, avoidance or any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (e) as a result of the foregoing, the repayment of any Prepetition Secured Obligations (including, but not limited to, by means of the Roll-Up Loans) in accordance**

with the terms of this Interim Order and the Prepetition Loan Documents, subject to the Carve Out, shall constitute an indefeasible payment and shall be final and binding for all purposes.  If a Challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in Paragraph K of this Interim Order shall nonetheless remain binding and preclusive on the Debtor and its estate and its creditors, the Committee (if any), equity holders, and all other parties in interest in these Chapter 11 Cases, except to the extent that such findings or admissions were expressly and successfully disputed in such Challenge.

44.     Nothing in this Interim Order confers on any person or entity, including, but not limited to any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, claims and defenses with respect to the Prepetition Secured Obligations.  However, a Challenge shall be deemed made, for purposes of the Challenge Period if a party in interest without standing files with the Court, and properly and timely serves the same, a request for standing to pursue a Challenge which attaches a draft complaint prior to the end of the Challenge Period.

45.     Failure of any party in interest, including any Committee, to file a Challenge during the Challenge Period with the Court shall forever bar such party from making any Challenge.  To the extent a party in interest with requisite standing and authority timely and properly commences a Challenge during the Challenge Period, all claims, causes of action and other matters not specifically set forth in such Challenge shall be deemed forever waived, released, and barred with respect to such party in interest and all other parties in interest.

46.     **Releases**.  Subject to entry of the Final Order and, solely with respect to the Prepetition Lender, the Challenge rights and limitations set forth in this Interim Order, the Debtors,

on behalf of themselves and their estates (including, without limitation, any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Case, and any party acting by, through or under the Debtors or their estates), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably discharge and acquit the Prepetition Lender, the DIP Lender, and their respective affiliates (but not the Debtors) and each of its and their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the DIP Liens, the DIP Obligations, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Secured Obligations, and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens and/or claims of the Prepetition Lender and/or the DIP Lender (collectively, the "Released Claims") that

44

exist or may exist prior to the entry of this Interim Order by the Court. Subject to entry of the Final Order, the Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order by the Court.

47.   **Waivers**.  Subject to entry of the Final Order, as a further condition of the DIP Loan Documents and the obligation of the DIP Lender to make DIP Loans under the DIP Loan Documents (and the consent of the DIP Lender to the payment of the Carve-Out to the extent provided in this Interim Order and the consent of the Prepetition Lender to the priming of the Prepetition Liens by the DIP Liens and the use of Cash Collateral):

a.   Limitation on Charging Expenses.  No costs or expenses of administration of the Chapter 11 Cases or any Successor Case shall be charged against or recovered from or against the DIP Lender, the Prepetition Lender, the DIP Collateral, or the Prepetition Collateral, in each case under section 105 or section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender or the Prepetition Lender, as applicable, and no such consent will be implied from any other action, inaction, or acquiescence of any or all of the DIP Lender or the Prepetition Lender.

b.   No Marshaling.  In no event shall the DIP Lender or the Prepetition Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Collateral, or Prepetition Secured Obligations, as applicable, and all proceeds shall be received and applied in accordance with this Interim Order, the DIP Loan Documents, and the Prepetition Loan Documents, as applicable.

45

c.  <u>Equities of the Case</u>.  In no event will the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Lender or Prepetition Collateral.

48.  **No Lender Liability**.  In determining to make any loan (whether under the DIP Loan Documents or the Prepetition Loan Documents or otherwise) or to permit the use of Cash Collateral, neither the DIP Lender nor the Prepetition Lender are or will be in control of the Debtors and none will owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estate.  Furthermore, nothing in this Interim Order will in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

49.  **No Third Party Beneficiaries**.  Except as explicitly provided for in this Interim Order or the DIP Term Sheet, neither this Interim Order nor the DIP Term Sheet creates any rights for the benefit of any third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

50.  **Insurance Proceeds and Policies**.  To the fullest extent provided by applicable law, the DIP Lender and the Prepetition Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral or Prepetition Collateral.

51.  **No Waivers or Modifications of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Lender and the Prepetition Lender, and no such consent will be implied by any other action, inaction, or acquiescence of the DIP Lender or the Prepetition Lender.

52.     **Binding Effect of this Interim Order**.  Immediately upon entry of this Interim Order by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lenders, the Prepetition Lender, the Case Professionals, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any Successor Case, or upon dismissal of any chapter 11 case or Successor Case; *provided* that neither the DIP Lender nor the Prepetition Lender shall have any obligation to permit the use of DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or to extend any DIP Loans or other financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors, their properties, or their estates.

53.     **Exculpation**.  Nothing in this Interim Order, the DIP Loan Documents, or any other documents related to the transactions contemplated hereby or thereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or Prepetition Lender any liability for any claims arising from the pre-petition or post-petition activities of the Debtors in the operation of their business, or in connection with their Chapter 11 Cases.

54.     **Discharge**.  The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein to the Prepetition Lender shall not be discharged by the entry of an order confirming any plan of reorganization in the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full, in cash.

55.     **Joint and Several Liability**.  The Debtors are jointly and severally liable for the DIP Obligations and all other obligations hereunder and under the DIP Loan Documents.  Nothing

47

in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates.

56.     **Survival**.  The provisions of this Interim Order and any actions taken pursuant hereto will survive entry of any order which may be entered: (i) confirming a plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (iii) dismissing any of the Chapter 11 Case or any Successor Case; or (iv) by which this Court abstains from hearing the Chapter 11 Case or any Successor Case.  The terms and provisions of this Interim Order, including, without limitation, the claims, liens, security interests, and other protections granted to the DIP Lender and the Prepetition Lender under this Interim Order and the DIP Loan Documents, will continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of the Chapter 11 Cases or any Successor Case, and will maintain their priority, subject to the Carve Out, as provided by this Interim Order until: (a) in respect of the DIP Facility, all the DIP Obligations under the DIP Loan Documents and this Interim Order have been indefeasibly paid in full, in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) or otherwise satisfied with the consent of the DIP Lender; and (b) in respect of the Prepetition Loan Documents, all of the Prepetition Secured Obligations under the Prepetition Loan Documents and this Interim Order, have been paid in full or otherwise satisfied with the consent of the Prepetition Lender.  The terms and provisions concerning the indemnification of the DIP Lender and Prepetition Lender shall continue in the Chapter 11 Cases, in any Successor Case, following dismissal of the Chapter 11 Cases or any Successor Case, following termination of the DIP Facility and/or the indefeasible repayment of the DIP Obligations.  In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Lender

48

notwithstanding the satisfaction in full or termination of the DIP Obligations until the satisfaction in full of the Prepetition Secured Obligations.

57.   **Necessary Actions**.  The Debtors are authorized and directed to take any and all such necessary actions as they may determine to be reasonable and appropriate to implement the terms of this Interim Order and the DIP Loan Documents.

58.   **Enforceability**.  This Interim Order constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and will take effect and be enforceable immediately upon entry thereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, any applicable Local Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be effective immediately and enforceable upon its entry and there will be no stay of execution or effectiveness of this Interim Order.

59.   **Rights Reserved**.  Notwithstanding anything in this Interim Order, any DIP Loan Document or any Prepetition Loan Document to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (i) the rights of the DIP Lender or the Prepetition Lender to seek any other or supplemental relief in respect of the Debtors that does not conflict with the terms of this Interim Order; (ii) the rights of the DIP Lender or the Prepetition Lender under the DIP Loan Documents, the Prepetition Loan Documents, or the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (a) request modification of the automatic stay of section 362 of the Bankruptcy Code, (b) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (c) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or

plans; or (iii) any other rights, remedies, claims, powers, or privileges (whether legal, equitable or otherwise) of the DIP Lender or the Prepetition Lender.

60.    **Headings**.  All paragraph headings used in this Interim Order are for reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

61.    **Final Hearing**.  The final hearing (the "Final Hearing") on the Motion will be held on December 12, 2025, at 10:00 a.m. (Eastern time).  The Debtors shall, within three business days of its entry, mail a notice of the entry of this Interim Order, together with a copy of this Interim Order, to the parties having been given notice of the Interim Hearing, to any party which has filed prior to the such date of service a request for notice with the Court and to counsel for any Committee.

62.    Such notice shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of, among other things, the proposed (i) full amount of the DIP Facility, less the amount of the Initial DIP Loan borrowed pursuant to this Interim Order; (ii) the Early Termination Fee; (iii) waiver of rights under section 506(c) of the Bankruptcy Code; (iv) findings that the Prepetition Liens of the Prepetition Lender in the Prepetition Collateral are valid, binding and enforceable against third parties, barring any successful Challenges to such liens brought in accordance with the requirements of the Final Order; (v) restriction on "marshaling" (or the application of any similar doctrine) relating to the DIP Lender and/or Prepetition Lender; (vi) waiver under section 552(b) of the Bankruptcy Code; and (vii) the Carve-Out.  The notice of entry of this Interim Order shall state that any party in interest objecting to the DIP Facility, DIP Loan Documents, use of Cash Collateral or other relief sought to be approved pursuant to the Final Order shall file a written objection (each, an

50

"Objection") on or before 4:00 p.m. (Eastern time) on November 24, 2025, and serve such Objection on the following parties: (a) (i) proposed special litigation and corporate counsel for the Debtors, DLA Piper LLP (US), (A) 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn.: Stuart M. Brown [stuart.brown@us.dlapiper.com]) and (B) 1251 Avenue of the Americas, New York, New York 10020 (Attn.: David Riley [david.riley@us.dlapiper.com]) and (ii) proposed general bankruptcy counsel for the Debtors, Chipman Brown Cicero & Cole, LLP, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (Attn: William E. Chipman Jr. [chipman@chipmanbrown.com]); (b) the Office of the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801 (Attn: Malcolm M. Bates [malcolm.m.bates@usdoj.gov]); (c) counsel to the DIP Lender and Prepetition Lender, Hogan Lovells US LLP, (i) 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067 (Attn: Richard Wynne [richard.wynne@hoganlovells.com] and David P. Simonds [david.simonds@hoganlovells.com]); and (i) 390 Madison Avenue, New York, New York, 10017 (Attn: Christopher R. Bryant [chris.bryant@hoganlovells.com]); (d) counsel to MSP Capital Investments, L.L.C., (i) Adler & Stachenfeld LLP, 555 Madison Avenue, 6th Floor, New York, New York 10022 (Attn: Danielle Ash [dash@adstach.com] and Morgan Stevens [mstevens@adstach.com]) and (ii) Landis Rath & Cobb, 919 Market Street, Suite 1800, Wilmington DE 19801 (Attn: Adam G. Landis [landis@lrclaw.com] and Matthew B. McGuire [mcguire@lrclaw.com]); and (e) counsel to CSC Hudson, LLC and Alberto Smeke Saba and Salomon Smeke Saba, (i) Vedder Price P.C., 1633 Broadway, 31st Floor, New York, New York 10019 (Attn: Michael L. Schein [mschein@vedderprice.com] and Robert Salame [rsalame@vedderprice.com]) and (ii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200 Wilmington, Delaware 19801 (Attn: Matthew P. Ward [matthew.ward@wbd-

us.com]).  Any objections to the relief sought to be granted pursuant to the Final Order shall be deemed waived unless filed and served in accordance with this paragraph.

63.  **Proofs of Claim**.  Neither the DIP Lender nor the Prepetition Lender will be required to file a proof of claim in the Chapter 11 Cases or any Successor Case.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in the Chapter 11 Cases or any Successor Case shall not apply to the DIP Lender or Prepetition Lender.  Notwithstanding the foregoing, each of the DIP Lender and the Prepetition Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Chapter 11 Cases.

64.  **Waiver**.  In determining to make any DIP Loan under the DIP Term Sheet, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Lender shall not, solely by reason thereof, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. § 9601 *et seq.,* as amended, or any similar federal or state statute).

65.  **Retention of Jurisdiction**.  The Court shall retain jurisdiction to interpret and enforce the provisions of the DIP Loan Documents and this Interim Order.  This retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or order confirming such chapter 11 plan or any order dismissing or closing one or both Chapter 11 Cases.

## <u>EXHIBIT 1</u>

**DIP Term Sheet**

## SENIOR SECURED PRIMING SUPERPRIORITY DIP TERM SHEET

### Hudson 1701/1706, LLC and Hudson 1702, LLC

This Senior Secured Priming Superpriority DIP Term Sheet (this "<u>DIP Term Sheet</u>"), dated November 12, 2025, sets forth certain of the terms and conditions of the proposed DIP Facility (as defined below) among the Debtors and the DIP Lender (each as defined below).

| | |
|---|---|
| **Debtors/Borrowers** | Hudson 1701/1706, LLC, a Delaware limited liability company, and Hudson 1702, LLC, a Delaware limited liability company (collectively, the "<u>Debtors</u>"). All obligations of the Debtors under the DIP Facility are joint and several. |
| **DIP Lender** | PARKVIEW FINANCIAL REIT, LP a Delaware limited partnership (together with all other lenders and agents from time to time parties to this DIP Term Sheet and/or any other DIP Loan Documents (as defined below), the "<u>DIP Lender</u>" or "<u>Parkview</u>"), or its designee or assignee. |
| **Chapter 11 Cases** | "<u>Chapter 11 Cases</u>" shall mean the cases commenced on October 22, 2025 (the "<u>Petition Date</u>"), by the Debtors under chapter 11 of title 11, United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"). |
| **Prepetition Loan Agreement** | "<u>Prepetition Loan Agreement</u>" means, (i) that certain *Building Loan Agreement*, dated as of May 4, 2022, by and among the Debtors and Parkview (in such capacity, and together with all other lenders and agents from time to time parties thereto, the "<u>Prepetition Lender</u>"), as amended by Amendment to Building Loan Agreement dated as of May 1, 2023 (as amended, restated or modified from time to time,), in the maximum principal amount of Eighty-One Million Seven Hundred Eighty-Two Thousand Five Hundred Twenty-Seven and No/100 Dollars ($81,782,527.00); together with (ii) that certain Project Loan Agreement, dated as of May 4, 2022, by and among the Debtors and Parkview (as amended, restated or modified from time to time) in the maximum principal amount of One Hundred Twenty-Five Million Two Hundred Seventeen Thousand Four Hundred Seventy-Three and No/100 Dollars ($125,217,473.00). The Prepetition Secured Obligations (as defined below) were reduced by $80 million as of July 25, 2025, upon the consummation of a credit bid for the equity interests of CSC Hudson, LLC.<br><br>All of the Debtors' obligations under or in connection with the Prepetition Loan Agreement and related loan documents (collectively, the "<u>Prepetition Loan Documents</u>") (as set forth more full in the Prepetition Loan Documents, the "<u>Prepetition Secured Obligations</u>") are secured by valid, enforceable, continuing, and perfected first priority liens on and security interests (the "<u>Prepetition Liens</u>") in the Collateral (as defined in the Prepetition Loan Agreement, including, without limitation, Cash Collateral (as defined below); and such Collateral as used herein, the "<u>Prepetition Collateral</u>"). |
| **DIP Facility and DIP Loan Documents** | A senior secured, priming, first-lien and superpriority multi-draw debtor-in-possession term loan credit facility in the principal amount of up to $32,762,104, with $12,270,387 (the "<u>Initial DIP Borrowing Cap</u>") available in one draw on an interim basis upon entry of the Interim DIP Order and subject to the satisfaction of the Initial |

|  | DIP Borrowing Conditions (as defined below), and an additional $20,491,717 (the "Subsequent DIP Borrowing Cap") available in multiple draws on a final basis upon entry of the Final DIP Order and subject to the satisfaction of the Subsequent DIP Borrowing Conditions (as defined below) (the "DIP Facility"; the loans to be made under the DIP Facility pursuant to the Interim DIP Order (as defined below), the "Initial DIP Loans", and the loans to be made under the DIP Facility pursuant to the Final DIP Order (as defined below), the "Subsequent DIP Loans" and, together with the Initial DIP Loans, the "DIP Loans"). The DIP Lender's commitment to make the DIP Loans is limited to the aggregate amount of the Interim DIP Borrowing Cap and Subsequent DIP Borrowing Cap (the "DIP Commitment").

The DIP Facility will be evidenced by:

    i.     This DIP Term Sheet;
    ii.    The Interim DIP Order;
    iii.   The Final DIP Order;
    iv.   Any other legal documentation as may be required by the DIP Lender from time to time to be executed and/or delivered in connection with the foregoing and/or any other DIP Matters (as defined below) (together with this DIP Term Sheet, the Interim DIP Order, and the Final DIP Order, collectively, the "DIP Loan Documents").

Subject to entry of the Interim DIP Order, and upon satisfaction of the Initial DIP Borrowing Conditions, the DIP Lender agrees to make the Initial DIP Loan to the Debtors, subject to the Approved Budget (as defined below), the provisions of this DIP Term Sheet, and the Interim DIP Order.

Subject to entry of the Final DIP Order, and upon satisfaction of the Subsequent DIP Borrowing Conditions (as defined below), the DIP Lender agrees to make Subsequent DIP Loans to the Debtors from time to time during the period commencing on the entry of the Final DIP Order through the Maturity Date, subject to the Approved Budget, the provisions of this DIP Term Sheet, and the Final DIP Order.

Once repaid or prepaid, DIP Loans cannot be reborrowed. |
| **Interim DIP Order** | The Debtors shall obtain entry of an interim order by the Bankruptcy Court (the "Interim DIP Order") authorizing and approving, among other matters, (i) the Debtors' entry into and performance of this DIP Term Sheet and the other DIP Loan Documents; (ii) the obtaining and making of the Initial DIP Loan up to the Initial DIP Borrowing Cap; (iii) the Debtors' use of Cash Collateral (as such term is defined under section 363(a) of the Bankruptcy Code) on an interim basis; (iv) subject to the Carve-Out, the granting to the DIP Lender of superpriority claims and first-priority priming liens and security interests priming the Prepetition Liens held by the Prepetition Lender on the Prepetition Collateral and the DIP Collateral (as defined below) against the Debtors and their assets to secure the prompt payment and performance of the DIP Obligations (as defined below), (v) the Initial Roll Up (as defined below); (vi) the Early Termination Fee (as defined below); (vii) those items set forth below in "Waivers, Releases, and Protections"; (viii) the use of Cash Collateral; and (ix) the granting of adequate protection to the Prepetition Secured Lender (collectively, the "DIP Matters"). The Interim DIP Order shall include a good |

*Execution Version*

| | |
|---|---|
| | faith finding under section 364(e) of the Bankruptcy Code. The Interim DIP Order shall be in all respects satisfactory to the DIP Lender. |
| **Final DIP Order** | The Debtors shall obtain entry of a final order by the Bankruptcy Court (the "<u>Final DIP Order</u>", and together with the Interim DIP Order, the "<u>DIP Orders</u>") authorizing and approving, among other matters, (i) the obtaining and making of the Subsequent DIP Loans up to the Subsequent DIP Borrowing Cap; (ii) the Debtors' use of Cash Collateral on a final basis; (iii) the Subsequent Roll Up (as defined below); (iv) the Debtors' entry into and performance of the DIP Loan Documents, on a final basis; (v) the DIP Matters on a final basis; and (vi) such other matters as may reasonably be required by the DIP Lender in light of the fact the DIP Lender has agreed to extend the DIP Loans pursuant to this DIP Term Sheet instead of a traditional loan and security agreement. The Final DIP Order shall include a good faith finding under section 364(e) of the Bankruptcy Code. The Final DIP Order shall be in all respects satisfactory to the DIP Lender. |
| **Superpriority DIP Claims** | In addition to the DIP Liens (as defined below), the DIP Obligations shall be allowed superpriority administrative expense claims under section 364(c) of the Bankruptcy Code against each of the Debtors, on a joint and several basis, which claims shall have priority, subject only to the Carve-Out (as defined below), over any and all administrative expense claims against the Debtors and their estates, now existing or hereafter arising, including, without limitation, of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, with recourse against all DIP Collateral (the "<u>DIP Superpriority Claims</u>"). |
| **DIP Collateral** | As security for the prompt payment and performance of all amounts due under the DIP Facility, including, without limitation, all principal, the Roll Up, interest, premiums, payments, fees, costs, expenses, indemnities, and/or other amounts (collectively, the "<u>DIP Obligations</u>"), immediately upon entry of the Interim DIP Order, the DIP Lender, shall be granted automatically and properly perfected priming liens on and security interests in (collectively, the "<u>DIP Liens</u>") all assets and properties of each of the Debtors and their bankruptcy estates, including, without limitation, whether tangible or intangible, real, personal, or mixed, wherever located, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, the Debtors, whether prior to or after the Petition Date, including, without limitation, all of the Debtors' rights, title, and interests in (1) all Prepetition Collateral; (2) all money, cash, DIP loan proceeds, and cash equivalents; (3) all funds in any deposit accounts, securities accounts, commodities accounts, deposits or other accounts (together with all money, cash, and cash equivalents, instruments, and other property deposited therein or credited thereto from time to time); (4) all accounts and other receivables (including, without limitation, those generated by intercompany transactions); (5) all contracts and contract rights including, without limitation, landlord's rights under residential real property leases; (6) all instruments, documents and chattel paper; (7) all securities (whether or not marketable); (8) all goods, as-extracted collateral, furniture, machinery, equipment, inventory and fixtures; (9) all real property interests and attendant rights, licenses, certifications and permits; (10) all interests in leaseholds; (11) all franchise rights; (12) all patents, tradenames, trademarks (other than intent-to-use trademarks), copyrights, licenses and all other intellectual property; (13) all general intangibles, |

| | |
|---|---|
| | tax or other refunds, or insurance proceeds; (14) all equity interests, capital stock, limited liability company interests, partnership interests and financial assets; (15) all investment property; (16) all supporting obligations; (17) all letters of credit and letter of credit rights; (18) subject to entry of Final DIP Order all commercial tort claims, without regard to any description of any such commercial tort claims; (19) all claims and causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds of or property recovered, whether by judgment, settlement or otherwise, from such actions, subject to entry of the Final DIP Order; (20) all permits, licenses, employment contracts, and license agreements, books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records), certifications, approvals, and permits; (21) to the extent not covered by the foregoing, all other goods, inventories, supplies, assets or properties of the Debtors, whether tangible, intangible, real, personal or mixed; and (22) all products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, including, without limitation, any and all proceeds of any insurance (including, without limitation, any business interruption and property insurance), indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing, now owned or hereafter acquired (collectively, the "<u>DIP Collateral</u>"). |
| **DIP Liens and Priority** | In addition to the DIP Superpriority Claims, the DIP Lender shall be granted the following DIP Liens on the DIP Collateral, which DIP Liens shall have the following priorities:<br><br>    i.   *Liens on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to the Carve-Out, the DIP Liens constitute valid, binding, continuing, enforceable, fully and automatically perfected first priority liens on and senior security interests in the DIP Collateral that is not subject to a lien or security interest as of the Petition Date.<br><br>    ii.   *Priming Liens*. Pursuant to section 364(d) of the Bankruptcy Code, subject to the Carve-Out, the DIP Liens granted pursuant to the Interim Order constitute valid, binding, continuing, enforceable, fully and automatically perfected, first priority, priming DIP Liens upon (i) all DIP Collateral subject to a lien or security interest as of the Petition Date, including, without limitation, all Prepetition Liens and all Permitted Liens (as defined below), and (ii) the Adequate Protection Liens (as defined in the Interim DIP Order).<br><br>    iii.   *Liens Senior to Other Liens*. Subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims shall not be made subject to or *pari passu* with (a) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any successor cases, including, without limitation, any lien or security interest granted in favor of any federal, state, municipal, or other governmental unit (including, without limitation, any regulatory body subject to the following proviso), commission, board, or court for any liability of the Debtors, (b) any lien or security interest that |

| | |
|---|---|
| | is avoided or preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, or (c) any other lien, security interest, or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the date hereof; *provided, however*, that if the DIP Lender determines, in consultation with the Debtors, that the imposition of the priming DIP Liens would impair any regulatory authority's lien or interest in any DIP Collateral such that the Debtors' rights, licenses, or privileges to continue and complete development of the Project would be materially and negatively impacted thereby, the DIP Lender agrees to enter into a subordination agreement pursuant to which the DIP Liens would be subordinated to such regulatory authority's lien or interest in any DIP Collateral solely and only to the extent necessary to ensure the Debtors may continue and complete development of the Project.[1]<br><br>The DIP Liens shall be effective and perfected with the foregoing specified priority as of the entry of the Interim DIP Order with effect back to the Petition Date and without requiring the execution, filing, or recording of mortgages, security agreements, intercreditor agreements, subordination agreements, control agreements, acknowledgments, financing statements, fixture filings, or other agreements or instruments, or the taking of any action to obtain possession or control of any collateral; *provided, however*, if the DIP Lender so requires, the Debtors shall use reasonable efforts to execute, file or record any documents and/or take any actions necessary or prudent to ensure the perfection of the DIP Liens. |
| **Roll Up** | In addition to the new money DIP Loans to be extended by the DIP Lender to the Debtors subject to the DIP Commitment, a portion of the Prepetition Secured Obligations shall be rolled-up into DIP Loans as follows: (i) simultaneous with the entry of the Interim DIP Order, there shall be a 1:1 roll up of Prepetition Secured Obligations to Initial DIP Loans extended by the DIP Lender to the Debtors (the "Initial Roll Up"), and (ii) upon entry of the Final DIP Order, simultaneous with the borrowing of any Subsequent DIP Loans by the Debtors under the DIP Facility, there shall be a dollar-for-dollar roll up of Prepetition Secured Obligations to Subsequent DIP Loans extended by the DIP Lender to the Debtors (the "Subsequent Roll Up" and, together with the Initial Roll Up, the "Roll Up"). All Prepetition Secured Obligations included in the Roll Up shall be DIP Loans and DIP Obligations for all purposes. |
| **Maturity Date** | The period from the date on which the Initial DIP Borrowing Conditions shall have been met to the date of the earliest to occur of (the "Maturity Date"):<br><br>    i.   the occurrence of an Event of Default (as defined below) that is not cured within the time allotted hereunder, if any;<br>   ii.  twelve (12) months from the Petition Date (as such date may be extended with the prior written consent of the DIP Lender);<br>  iii.  the date of consummation of a sale of all or substantially all of the assets of any or all of the Debtors; |

---

[1] "Project" means the conversion of the Debtors' real property into a multifamily residential property with commercial space and a penthouse unit, or such other use as made determined to be appropriate by the Debtors, subject to the prior written consent of the DIP Lender.

|  | iv. the effective date of a chapter 11 plan with respect to any or all of the Debtors. |
|---|---|
|  | The occurrence of the Maturity Date shall terminate (i) the ability of the Debtors to borrow any DIP Loans and use Cash Collateral, (ii) the DIP Commitment, and (iii) any further obligation of the DIP Lender to make any DIP Loans under the DIP Loan Documents. |
|  | Upon the Maturity Date, the Debtors shall repay to the DIP Lender all outstanding DIP Obligations. If the Maturity Date is a result of the closing of a sale of all or substantially all of the assets of any of the Debtors, all outstanding DIP Obligations shall be paid in full prior to or upon closing of such transaction either (i) directly from the buyer in such transaction or (ii) directly from the escrow account, via the escrow agent, established for the consummation of such transaction. Such payment shall be made by wire transfer of immediately available funds to an account designated in writing by the DIP Lender prior to the closing of such transaction. |
| **Permitted Uses** | The DIP Loans and Cash Collateral shall be used by the Debtors solely to: (i) fund day-to-day working capital needs of the Debtors and expenditures during the Chapter 11 Cases; and (ii) to pay reasonable fees and expenses of restructuring legal and financial advisors or other similar advisors, in each case in accordance with the applicable Approved Budget including, without limitation, funding a reserve for fees and expenses of Case Professionals (as defined below), subject to the provisions set forth below in the "Carve-Out" section, and subject to the DIP Orders (collectively, "Permitted Uses"). |
| **Limitations on Use of DIP Loans and Cash Collateral** | Except as otherwise permitted in the DIP Orders, Approved Budget, or the DIP Loan Documents, none of the funds available under the DIP Facility, the DIP Collateral, the Prepetition Collateral, or the Cash Collateral (and with respect to any official committee, the Carve-Out) may be used to fund or pay expenses in connection with any of the following: |
|  | (a) seeking authorization to obtain liens or security interests that are senior to or *pari passu* with the DIP Liens or the Prepetition Liens, except as necessary to pay off the DIP Obligations in full, in cash, or<br>(b) investigating (including, without limitation, by way of examinations or discovery proceedings), examining, preparing, asserting, joining, commencing, supporting application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the DIP Lender and/or the Prepetition Lender, and each of their respective officers, directors, controlling persons, employees, agents, attorneys, affiliates, assigns, or successors of each of the foregoing (all in their capacities as such), with respect to any transaction, occurrence, omission, action or other matter (including, without limitation, formal discovery proceedings in anticipation thereof), including, without limitation:<br>i. any claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any state law equivalents; ii. any so-called "lender liability" claims and causes of action or other actions to recover or disgorge payments against the DIP Lender, Prepetition Lender, or any of their affiliates, successors and assigns and the partners, |

|  | shareholders, members, controlling persons, directors, officers, employees, agents, attorneys, advisors, and professionals; iii. any action, challenge or objection with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Loan Documents or the Prepetition Secured Obligations, or any other rights or interests of the DIP Lender or Prepetition Lender; iv. any action seeking to invalidate, modify, set aside, avoid, subordinate, recharacterize, or disallow, in whole or in part, the DIP Loan Documents, he DIP Obligations, the DIP Liens, the Prepetition Loan Documents, the Prepetition Liens, and/or the Prepetition Secured Obligations; v. any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either (A) the DIP Lender under any of the DIP Loan Documents or the Interim Order, or (B) the Prepetition Lender under any of the Prepetition Loan Documents or the Interim Order, in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Lender's or the Prepetition Lender's assertions, enforcements, realizations or remedies on or against the Debtors, the DIP Collateral or the Prepetition Collateral, as applicable; or vi. objecting to, contesting, or interfering with, in any way, the DIP Lender's or the Prepetition Lender's enforcement or realization upon any of the DIP Collateral or the Prepetition Collateral, as applicable, once an Event of Default has occurred.<br><br>Subject to entry of the Final DIP Order, notwithstanding the foregoing, a Committee (as defined below) may use up to $25,000 of Cash Collateral solely to investigate, but not in any way assert any claims against, challenge, commence or continue a Challenge to, the DIP Obligations, the Prepetition Secured Obligations, the DIP Liens, the Prepetition Liens, the Collateral, the Prepetition Collateral, the DIP Loan Documents, the Prepetition Loan Documents, or any claims or liens, held by or on behalf of the DIP Lender or the Prepetition Lender. |
| **Interest Rate; Default Rate** | The DIP Loans, including all Roll Up DIP Loans, shall bear an interest rate of 12% per annum, with such interest payable monthly in arrears in kind (*i.e.*, by adding the amount of such outstanding interest to the aggregate principal amount of the DIP Loans) on the first day of each month, computed based on a 365/366-day year; provided that any and all accrued and unpaid interest shall be due and payable in cash upon the Maturity Date (whether by acceleration or otherwise).<br><br>Default Rate. Notwithstanding anything to the contrary herein, upon the occurrence and during the continuance of an Event of Default, the DIP Loans and all other DIP Obligations shall bear interest at an additional 2% per annum above the non-default rate, upon written notice from the DIP Lender to the Debtors, which notice may be given at any time by the DIP Lender and which notice shall have retroactive effect to the date of the Event of Default. |
| **Early Termination Fee** | In the event of a Voluntary Repayment (as defined below), a fee equal to 2% of the DIP Commitment (regardless of whether the full amount of the DIP Commitment has been drawn) shall be paid by the Debtors in cash to the DIP Lender (the "Early Termination Fee"), without setoff or deduction, simultaneous with the payment of such Voluntary Repayment. The Early Termination Fee shall be fully earned upon entry of the Interim DIP Order and non-refundable once paid at Maturity. |

| | |
|---|---|
| **Prepayments** | Voluntary prepayments of the DIP Loans shall be permitted at any time, subject to payment of the Early Termination Fee, and subject in all respects to compliance with the "Negative Covenants" below and other provisions of this DIP Term and the DIP Orders ("Voluntary Prepayments").<br><br>The following amounts shall be indefeasibly paid in cash in full or partial satisfaction of the DIP Obligations within two (2) business days of receipt, except as such amounts are set forth in the Approved Budget and are necessary to satisfy the expenditures set forth in the Approved Budget:<br><br>    i.   100% of the net proceeds of the disposition of the DIP Collateral, including, without limitation, asset sales at the closing of any such disposition or sale; provided that any sale of Collateral that does not satisfy the DIP Obligations in full shall require the prior written consent of the DIP Lender;<br>   ii.   100% of the net proceeds of insurance and condemnation awards;<br>  iii.   100% of the net proceeds of any debt issuance or equity issuance; and<br>  iv.   Following entry of the Final DIP Order, 100% of proceeds of Debtors' claims and causes of action. |
| **Budget** | The budget shall consist of forecasted receipts and disbursements of the Debtors on a line-item basis for the 3 months commencing on the Petition Date (the "Initial Budget"), which Initial Budget shall be in all respects satisfactory to the DIP Lender. Beginning on December 1, 2025, the Initial Budget, and each subsequent budget, shall be updated by the Debtors by no later than the tenth day of each month at 5:00 p.m. (Eastern time) (the "Updated Budget"), which Updated Budget shall be in all respects satisfactory to the DIP Lender (the Initial Budget and each Updated Budget that is approved by the DIP Lender, the "Approved Budget"). If an Updated Budget is not approved in writing by the DIP Lender within two (2) business days of receipt thereof, subject to the occurrence of any Event of Default or the occurrence of the Maturity Date, the prior Approved Budget shall continue in place until a proposed Updated Budget is approved in writing by the DIP Lender.<br><br>Other than with respect to the Carve-Out, the DIP Lender's consent to, or acknowledgement of, the Approved Budget shall not be construed as consent to use the DIP Loans or Cash Collateral beyond the Termination Date, regardless of whether all funds covered by such Approved Budget have been expended. All amounts necessary to fund the Carve-Out (including the Professional Fee Reserve) shall be included in an Approved Budget and shall be subject to the DIP Commitment.<br><br>The DIP Loans and Cash Collateral shall be used solely to the extent set forth in the Approved Budget and DIP Orders, subject to Permitted Variances (as defined below).<br><br>Forecast Variances: Beginning on January 1, 2026, and on each subsequent first business day of each calendar month at 5:00 p.m. (Eastern time), the Debtors shall deliver to the DIP Lender a variance report in all respects satisfactory to the DIP Lender setting forth (i) the Debtors' expenditures and disbursements on an aggregate basis (excluding professional fees) during the immediately preceding calendar month compared to the projected expenditures and disbursements (on a line-by-line basis) |

|  | set forth in the Approved Budget for such Variance Testing Period (as defined below) and (ii) the variance in dollar amounts of the actual expenditures and disbursements (excluding all fees due and payable pursuant to 28 U.S.C. § 1930(a) plus any interest due and payable under 31 U.S.C. § 3717) for each monthly period ending on Sunday from those reflected for the corresponding period in the Approved Budget.<br><br>"Permitted Variance" means disbursements that are not more than 15% above the total aggregate amount of the actual disbursements across all line items (excluding Case Professional fees to the extent such fees are in accordance with, and do not exceed, amounts budgeted for such fees in an Approved Budget) (the "Operating Disbursements") during any Variance Testing Period against the projected Operating Disbursements in the Approved Budget for such Variance Testing Period; provided that, any net positive variance shall be carried forward and available in future Variance Testing Period(s) on a cumulative basis, subject to deduction for any net negative variances in any prior period without duplication.<br><br>"Variance Testing Period" means, starting on the Petition Date through the last calendar day of the next succeeding calendar month and each succeeding calendar month thereafter.<br><br>During any Variance Testing Period, the Variance from the then-current Approved Budget shall not exceed the Permitted Variance without the DIP Lender's written consent. |
|---|---|
| **Conditions Precedent to Effectiveness of Initial DIP Borrowing** | Borrowings of the Initial DIP Loans and the Debtors' use of Cash Collateral shall be subject to the following conditions precedent (the "Initial DIP Borrowing Conditions"):<br>　i.　Receipt and approval by the DIP Lender of the Initial Budget, which shall be in all respects reasonably satisfactory to the DIP Lender;<br>　ii.　The Debtors filing of a motion for entry of the Interim DIP Order and Final DIP Order, in two stages (the "DIP Motion"), which shall be in all respects reasonably satisfactory to the DIP Lender;<br>　iii.　The entry of the Interim DIP Order by the Bankruptcy Court on or before three (3) business days following the filing of the DIP Motion (subject to Bankruptcy Court availability), which shall be in all respects reasonably satisfactory to the DIP Lender, and which Interim DIP Order shall be in full force and effect, and shall have not been amended, vacated, reversed, modified, rescinded or subject to a presently effective stay pending appeal;<br>　iv.　All of the "first day orders" and other orders entered in the Chapter 11 Cases shall be consistent with the DIP Loan Documents and the Interim DIP Order, and shall be in all respects reasonably satisfactory to the DIP Lender;<br>　v.　The Initial DIP Loan shall not exceed the Initial DIP Borrowing Cap;<br>　vi.　All representations and warranties in this DIP Term Sheet shall be true and correct in all material respects on and as of the date of the Initial DIP Loan, except to the extent such representations and warranties specifically relate to an earlier date;<br>　vii.　No order, judgment or decree of any governmental authority shall restrain or purport to restrain the DIP Lender from making the Initial DIP Loan or |

| | |
|---|---|
| | consummating the other transactions contemplated by this DIP Term Sheet; and<br><br>viii. No Event of Default and no conditions which would constitute an Event of Default without giving notice or lapse of time or both shall exist. |
| **Conditions Precedent to Each Subsequent Borrowing** | Borrowings of the Subsequent DIP Loans and the Debtors' continued use of Cash Collateral shall be subject to the following conditions precedent (the "Subsequent DIP Borrowing Conditions"):<br><br>i. The DIP Lender shall have received a written borrowing notice (each, a "Borrowing Notice") in all respects reasonably satisfactory to the DIP Lender which shall include the following: (a) the funding date of the requested Subsequent DIP Loan (which shall not be less than three (3) business days following the date of receipt by the DIP Lender of the borrowing notice); (b) the amount of the requested Subsequent DIP Loan (which shall not be less than \$200,000); (c) details concerning the account where the Subsequent DIP Loan should be funded (which shall be an account previously determined to be acceptable to the DIP Lender and U.S. Trustee); (d) a statement that no Events of Defaults have occurred and are continuing or will occur as a result of the borrowing of such Subsequent DIP Loan; and (e) a statement that the Subsequent DIP Loan will be used in accordance with the applicable Approved Budget and provisions of this DIP Term Sheet and DIP Orders. The Borrowing Notice must be certified by an authorized signatory of the Debtors;<br>ii. The Debtors shall be in compliance with the Approved Budget (subject to Permitted Variances) applicable to the period during with such Subsequent DIP Loan will be made;<br>iii. The Interim DIP Order shall be in full force and effect, and shall have not been amended, vacated, reversed, modified, rescinded or subject to a presently effective stay pending appeal;<br>iv. No later than 30 days after entry of the Interim DIP Order (subject to Bankruptcy Court availability), the Bankruptcy Court shall enter the Final DIP Order which shall be in all respects reasonably satisfactory to the DIP Lender, and which Final DIP Order shall be in full force and effect, and shall have not been amended, vacated, reversed, modified, rescinded or subject to a presently effective stay pending appeal;<br>v. All of the "first day orders" and other orders enter in the Chapter 11 Cases shall be consistent with the DIP Loan Documents and the Interim DIP Order, and shall be in all respects reasonably satisfactory to the DIP Lender;<br>vi. The funding of the requested Subsequent DIP Loan shall not lead to the aggregate amount of all Subsequent DIP Loans exceeding the Subsequent DIP Borrowing Cap;<br>vii. All representations and warranties in this DIP Term Sheet shall be true and correct in all material respects on and as of the date of each Subsequent DIP Loan, except to the extent such representations and warranties specifically relate to an earlier date;<br>viii. No order, judgment or decree of any governmental authority shall restrain or purport to restrain the DIP Lender from making any Subsequent DIP |

| | |
|---|---|
| | Loans or consummating the other transactions contemplated by this DIP Term Sheet; and |
| | ix. No Event of Default and no conditions which would constitute an Event of Default without giving notice or lapse of time or both shall exist. |
| | In addition to the foregoing, without the DIP Lender's prior written consent, the Debtors shall be limited to borrowing one Subsequent DIP Loan per month. |
| **Representations and Warranties** | Each Debtor hereby represents and warrants following representations and warranties by each Debtor: |
| | i. Each Debtor is duly formed, validly existing and in good standing under the laws of the jurisdiction of its formation and has all requisite power and authority to (x) own its properties and to carry on its business in the state of its incorporation and in each other jurisdiction where it transacts business, (y) to enter into this DIP Term Sheet and the transactions contemplated hereby, and (z) to carry out the provisions and conditions of this DIP Term Sheet and the other DIP Loan Documents. |
| | ii. Subject to entry of the DIP Orders, each Debtor has the corporate power and authority, and the legal right and authority, to make, deliver and perform this DIP Term Sheet and each of the other DIP Loan Documents, to borrow the DIP Loans and grant the DIP Liens and to consummate all of the other transactions contemplated hereby and thereby. |
| | iii. The execution, delivery and performance of this DIP Term Sheet are not, and the execution, delivery and performance of each of the other DIP Loan Documents when signed by a duly authorized signatory of each Debtor shall not be, in conflict with nor constitute a breach of any provision contained in such Debtor's organizational documents, nor will it constitute an event of default under any material agreement or instrument to which such Debtor is a party or by which such Debtor is bound or violate any requirement of law. |
| | iv. Subject only to the entry of the DIP Orders, no consent or authorization of, filing with, notice to or other act by or in respect of, any governmental authority or any other person is required in connection with the execution, delivery, performance, validity or enforceability of this DIP Term Sheet or the other DIP Loan Documents, the borrowing of the DIP Loans hereunder, the granting of security hereunder or the consummation of any of the other transactions contemplated hereby or thereby. |
| | v. This DIP Term Sheet has been duly executed and delivered on behalf of each Debtor and constitutes, and each other DIP Loan Document, when signed by a duly authorized signatory of such Debtor, subject to entry of the DIP Orders, shall constitute, the legal, valid and binding obligation of such Debtor, enforceable against such Debtor in accordance with its respective terms. |
| | vi. Subject to entry of the DIP Orders, the security interests granted pursuant to this DIP Term Sheet creates a valid, enforceable, continuing, fully perfected security interest in favor of the DIP Lender in all of the collateral in the priorities set forth herein. In addition, subject to entry of the DIP Orders, the DIP Lender shall be granted the DIP Superpriority Claims pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve Out. |

11

| | |
|---|---|
| | vii. Each Debtor has (i) good, sufficient and legal title to (in the case of fee interests in real property), (ii) valid leasehold interests in (in the case of leasehold interests in real or personal property), and (iii) good and marketable title to (in the case of all other personal property, including, without limitation, intellectual property) all of its properties and assets.<br><br>viii. Each Debtor is in compliance with the requirements of all applicable laws, except for such laws the noncompliance with which could not reasonably be expected to result in damages or costs to such Debtor of greater than $500,000 in the aggregate.<br><br>ix. Each Debtor is not an "investment company" or a company "controlled" by an "investment company" within the meaning of the Investment Company Act of 1940. Each Debtor is not engaged principally, or as one of the important activities, in the business of extending credit for the purpose of purchasing or carrying margin stock (within the meaning of Regulations T and U of the Board of Governors of the Federal Reserve System).<br><br>x. Each Debtor represents, warrants and agrees that (i) its obligations hereunder shall not be discharged by the entry of an order confirming a Chapter 11 plan (and such Debtor, pursuant to section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge), dismissing the Chapter 11 Cases or converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, and (ii) the DIP Superpriority Claims and the DIP Liens granted to the DIP Lender hereunder and pursuant to the DIP Orders shall not be affected in any manner by the entry of an order confirming a Chapter 11 plan dismissing the Chapter 11 Cases or converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code. |
| **Affirmative Covenants** | The DIP Facility is subject to the following affirmative covenants (including any exceptions set forth below) by the Debtors:<br><br>i. Each Debtor shall: (a) maintain its existence and will not materially change the nature of its business, dispose of all or a substantial portion of its assets or merge or consolidate with another party;  (b) comply with all applicable requirements of law, including, without limitation, all applicable environmental laws and all anti-corruption, anti-bribery, anti-money laundering and anti-terrorism laws, except for such laws the noncompliance with which could not reasonably be expected to result in damages or costs to the Debtor of greater than $250,000; and (c) remain qualified to do business in all applicable jurisdictions.<br><br>ii. The DIP Loans shall be used by the Debtors solely for Permitted Uses. No portion of the DIP Loans will be used, whether directly or indirectly, and whether immediately, incidentally or ultimately, for purchasing or carrying margin stock or for any other purpose that entails a violation of, or that is inconsistent with, the provisions of the regulations of the Board of Governors of the Federal Reserve System, including, without limitation, Regulation T, U, or X of the Federal Reserve Board.<br><br>iii. Promptly upon, and in any event within three (3) business days of, becoming aware of the occurrence of any event which constitutes a default or Event of Default, the Debtors shall deliver written notice thereof to the DIP Lender (which may be via email to the DIP Lender's counsel) together |

with a detailed statement by a responsible officer of the Debtor outlining the steps being taken to cure such default or Event of Default.

iv. The Debtors shall pay and discharge all post-petition taxes, assessments and governmental charges or levies imposed upon it, or upon its income and profits, prior to the date on which penalties might attach thereto and all lawful claims which, if unpaid, might become a lien upon the assets of the Debtor; *provided, however*, that such Debtor shall not be required to pay and discharge any such tax, assessment, charge, levy or claim so long as the legality thereof shall be contested in good faith and by appropriate proceedings and for which adequate provision in accordance with GAAP has been made, except that such Debtor shall pay or cause to be paid all such taxes, assessments and governmental charges forthwith upon the commencement of proceedings to sell, seize or collect any assets attached as security therefor, unless such sale, seizure or collection is stayed by the filing of an appropriate bond; *provided, however*, Debtors may assert any challenge or defense to any such claim in good faith and may withhold payment subject to resolution of any defense or challenge.

v. The Debtors shall promptly pay and discharge all post-petition (a) trade accounts payable in accordance with usual and customary business practices; (b) all taxes, assessments and fines, and all permit, license and business privilege fees by any governmental authority with jurisdiction over the Debtors or their assets; and (c) claims for work, labor or materials which if unpaid might become a lien upon any of its assets; *provided, however*, that such Debtor shall not be required to pay any such account payable or claim the payment of which is being contested in good faith and, if necessary, by appropriate proceedings and for which adequate provision as determined in accordance with GAAP has been made, except that such Debtor shall pay or cause to be paid all such accounts payable and claims forthwith upon the commencement of proceedings to foreclose any lien which is attached as security therefor, unless such foreclosure is stayed by the filing of an appropriate bond; *provided, however*, Debtors may assert any challenge or defense to any such claim in good faith and may withhold payment subject to resolution of any defense or challenge.

vi. Each Debtor shall maintain (a) casualty insurance on all real and personal property on an all risks basis (including, without limitation, the perils of flood, windstorm and quake), covering the repair and replacement cost of all such property and coverage, business interruption and rent loss coverages with extended period of indemnity and indemnity for extra expense; (b) general and professional liability insurance; (c) director and officer, errors and omissions insurance; and (d) such other insurance coverage in each case against loss or damage of the kinds customarily insured against by persons engaged in the same or similar business of such types and in such amounts as are customarily carried under similar circumstances by such other persons. Each Debtor shall deliver to the DIP Lender (w) upon the request of the DIP Lender from time to time, full information as to the insurance carried; (x) within five (5) days of receipt of notice from any insurer, a copy of any notice of cancellation, nonrenewal or material change in coverage from that existing on the date hereof; (y) forthwith, notice of any cancellation or nonrenewal of coverage by any Debtor; and (z) at least sixty (60) days prior to expiration of any

13

|  | policy of insurance, evidence of renewal of such insurance upon the terms and conditions herein required. |
|  | vii. Each Debtor shall at any time upon the reasonable request of the DIP Lender, at the sole expense of the Debtor, execute or deliver to the DIP Lender any and all financing statements, security agreements, pledges, collateral assignments, amendments to this DIP Term Sheet or any other DIP Loan Document and all other documents that the DIP Lender may reasonably request, which shall be in all respects reasonably satisfactory to the DIP Lender, to create, perfect, and continue perfected or to better perfect the DIP Liens on the DIP Collateral (whether now owned or hereafter arising or acquired, tangible or intangible, real or personal), to create and perfect the DIP Liens in the DIP Collateral in favor of the DIP Lender and in order to fully consummate all of the transactions contemplated under this DIP Term Sheet. In furtherance and not in limitation of the foregoing, the applicable Debtor shall take such actions as the DIP Lender may reasonably request from time to time to ensure that the DIP Obligations are secured by the DIP Collateral. |
|  | viii. Without limiting each of the Debtors' other obligations under this DIP Term Sheet and each other DIP Loan Document, all Bankruptcy Court orders, and all other orders entered by the Bankruptcy Court in the Chapter 11 Cases, pleadings, motions, applications, judicial information, financial information and other documents to be filed with the Bankruptcy Court that affect or could reasonably be expected to affect the DIP Lender, the DIP Facility, the DIP Collateral, the DIP Liens, and/or the DIP Superpriority Claims, shall be in all respects satisfactory to the DIP Lender. |
| **Negative Covenants** | The DIP Facility is subject to the following negative covenants (including any exceptions set forth below) by each Debtor: |
|  | i. <u>Limitations on Indebtedness</u>. Each Debtor shall not incur or be obligated on any indebtedness other than: (a) the DIP Obligations; (b) current liabilities of such Debtor incurred in the ordinary course of such Debtor's business (including, without limitation, credit card charges or reimbursements for budgeted business expenses incurred postpetition in the ordinary course) or in connection with the Debtors' prosecution of the Chapter 11 Cases and not incurred through (1) the borrowing of money, or (2) the obtaining of credit except for credit on an open account basis customarily extended and in fact extended in connection with normal purchases of goods and services; (c) endorsements for collection, deposits or negotiation and warranties of products or services, in each case incurred in the ordinary course of business; (d) indebtedness in respect of performance, surety or appeal bonds obtained in the ordinary course of the Debtor's business; and (e) indebtedness existing as of the Petition Date. |
|  | ii. <u>Consolidation, Merger, Sale of Assets, Dissolution, etc</u>. Each Debtor shall not (a) directly or indirectly merge into or with or consolidate with any other person or permit any other person to merge into or with or consolidate with it, or (b) sell, assign, lease, transfer, abandon or otherwise dispose of any of its assets, except as otherwise permitted under this DIP Term Sheet. |

*Execution Version*

|  |  |
|---|---|
|  | iii. <u>Organizational Changes</u>. Each Debtor shall not, directly or indirectly, amend or otherwise modify any of its organizational documents in a manner materially adverse to the DIP Lender without the prior written consent of the DIP Lender, or allow any change in control to occur.<br><br>iv. <u>Subsidiaries</u>. Each Debtor shall not acquire or cause to be formed any subsidiaries without the prior written consent of the DIP Lender.<br><br>v. <u>Liens</u>. Except with respect to the Carve-Out, DIP Liens, the Prepetition Liens, any liens in existence as of the Petition Date including, without limitation, any liens and encumbrances set forth on the Title Policy (as defined in the Prepetition Loan Agreement) and constituting Permitted Encumbrances (as defined in the Prepetition Loan Agreement) (collectively, the "<u>Permitted Liens</u>"), the Debtors shall not mortgage or encumber any of their assets or suffer any liens to exist on any of their assets without the prior written consent of the DIP Lender.<br><br>vi. <u>No Contest</u>. Each Debtor shall not contest the validity, legality, binding effect or priority of the DIP Liens, the Prepetition Liens, the DIP Loans, the Prepetition Secured Obligations, the DIP Loan Documents, the Prepetition Loan Documents, or the DIP Superpriority Claims.<br><br>vii. <u>Restricted Investments</u>. Neither Debtor shall, directly or indirectly, make any investments in any person without the prior written consent of the DIP Lender. |
| **Adequate Protection** | As adequate protection against the risk of any post-petition diminution in the value of the Prepetition Collateral (including, without limitation, Cash Collateral), including, without limitation, the granting of *pari passu* liens and superpriority claims as set forth herein and the imposition of the Carve-Out, the Prepetition Lender shall be granted the following adequate protection, subject to the Carve-Out, the Challenge Period (as defined in the DIP Orders), the DIP Liens, and the DIP Superpriority Claims: (i) valid automatically perfected replacement liens on and security interests in all Prepetition Collateral; (ii) a superpriority administrative expense claim under section 503(b) of the Bankruptcy Code with the priority set forth in section 507(b) of the Bankruptcy Code against the Debtors, jointly and severally, which claim shall have priority over any and all other claims against the Debtors and their estates (other than the Carve-Out and the DIP Superpriority Claims); and (iii) payment of all reasonable fees and expenses of the Prepetition Lender incurred in connection with the Prepetition Obligations, Prepetition Liens, Prepetition Loan Documents, this DIP Term Sheet, the DIP Orders, and the Chapter 11 Cases, which amounts shall be added to the principal amount of the Prepetition Obligations. |
| **Carve-Out** | The Prepetition Liens, DIP Liens, the Adequate Protection Liens, and all superpriority administrative expense claims granted under the DIP Orders, shall be subject and subordinate to the Carve-Out. The DIP Lender and Prepetition Lender agree to a carve-out (the "<u>Carve-Out</u>"), which sum as calculated herein shall remain in the estate notwithstanding the exercise of the DIP Lender of its rights or remedies as a result of an Event of Default and/or repayment of the DIP Loan for the benefit of the Carve-Out beneficiaries.<br><br>"<u>Carve-Out</u>" means the sum of: (i) to the extent allowed at any time, all unpaid professional fees and disbursements incurred at any time prior to the delivery of the |

|  | Carve-Out Trigger Notice (as defined below) ("Allowed Professional Fees") by the Debtors and any Committee for any of their respective retained professionals in the Chapter 11 Cases (the "<u>Case Professionals</u>"), in an aggregate amount not to exceed the amounts set forth in the then existing Approved Budget in the applicable line for such Cash Professionals prior to the Carve-Out Effective Date; (ii) all allowed and unpaid professional fees and expenses incurred by the respective Case Professionals following the delivery of the Carve-Out Trigger Notice in an aggregate amount not in excess of $1,000,000; (iii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726 of the Bankruptcy Code; plus (iv) all fees pursuant to 28 U.S.C. §1930(a) and all fees required to be paid to the Clerk of the Court for the Debtors for the time period beginning on the Petition Date and ending on the date of any dismissal or conversion of the Chapter 11 Cases, which fees described in this clause(iv) shall not be limited to amounts that may be set forth in any Approved Budget.<br><br>"<u>Carve-Out Trigger Notice</u>" means a written notice, delivered by email or U.S. Mail by the DIP Lender to the Debtor, its counsel, the U.S. Trustee, and counsel to any committees, of any default hereunder.<br><br>On a monthly basis, fees, costs and expenses of professionals retained by Case Professionals included in the applicable Approved Budget, plus, on the Carve-Out Effective Date, the estimated aggregate amount of any professional fees and disbursements accrued by Case Professionals prior to the Carve-Out Effective Date (in an aggregate amount not to exceed the amounts set forth in the then existing Approved Budget prior to the Carve-Out Effective Date for all professional fees and expenses), plus $1,000,000, shall be funded by the DIP Lender as additional DIP Loans into a segregated escrow account held in trust (the "<u>Professional Fee Reserve</u>"), which funds shall be DIP Collateral subject to the DIP Liens. Amounts funded into the Professional Fee Reserve shall be used by the Debtors in accordance with the provisions of this DIP Term Sheet, the DIP Orders, and any orders of the Bankruptcy Court entered with respect to the allowance of fees and expenses of Case Professionals. Any amounts remaining in the Professional Fee Reserve after payment of all allowed fees and expenses will be returned to the DIP Lender (unless the DIP Lender has been paid in full) without any setoff or deduction.<br><br>The DIP Lender has no obligation to advance additional DIP Loans or otherwise fund any additional amounts to pay the fees and expenses of Case Professionals or any other parties in interest in the Bankruptcy Cases. |
| :--- | :--- |
| **DIP Milestones** | The Debtors shall comply with the following milestones (the "<u>DIP Milestones</u>"), provided that if any such Milestone falls on a date that is not a business day, such Milestone automatically shall be extended to the first business day thereafter:<br><br>   i.   Within three days after the execution of this final DIP Term Sheet, the Debtors shall file the DIP Motion, which shall be in all respects satisfactory to the DIP Lender;<br>   ii.   No later than three (3) business days after the DIP Motion is filed, the Bankruptcy Court shall have entered the Interim DIP Order (subject to the Bankruptcy Court's availability), which shall be in all respects satisfactory to the DIP Lender; |

*Execution Version*

| | |
|---|---|
| | iii. No later than thirty (30) calendar days after entry of the Interim DIP Order, the Bankruptcy Court shall have entered the Final DIP Order (subject to the Bankruptcy Court's availability), which shall be in all respects satisfactory to the DIP Lender; and<br><br>iv. Any other milestones which may be agreed upon by the Debtors and DIP Lender and included in a DIP Order. |
| **Events of Default** | "<u>Events of Default</u>" shall include the following and any other defaults specified as such in the DIP Orders:<br><br>i. The Debtors shall fail to pay (a) any principal or interest of any DIP Loan when due in accordance with the terms thereof or hereof (whether at stated maturity, by acceleration, mandatory prepayment or otherwise); or (b) any other amount payable hereunder or under any other DIP Loan Document, within five (5) business days after any such other amount becomes due in accordance with the terms thereof or hereof;<br><br>ii. Any representation or warranty made or deemed made by the Debtors herein or in any other DIP Loan Document or that is contained in any certificate, document or financial or other statement furnished by it at any time under or in connection with this DIP Term Sheet or any such other DIP Loan Document shall prove to have been inaccurate in any material respect on or as of the date made or deemed made or furnished;<br><br>iii. Debtors shall default in the observance or performance of any agreement or covenant contained in this DIP Term Sheet or any other DIP Loan Document, including, without limitation, the full and timely funding of the Professional Fee Reserve Account, which default, if capable of being cured, remains uncured for a period of five (5) business days after the date that an authorized officer of the Debtors receives notice of such failure or obtains actual knowledge of such failure;<br><br>iv. Any provision of the DIP Loan Documents shall cease to be valid or binding on the Debtors, or Debtors shall so assert publicly, in writing, or in any pleading filed in any court;<br><br>v. Any direct or indirect action of the Debtors to challenge or support challenge of the Prepetition Liens, the Prepetition Secured Obligations, the DIP Liens, or the DIP Obligations;<br><br>vi. Entry by the Bankruptcy Court of an order (a) directing the appointment of an examiner with expanded powers or a chapter 11 trustee without the prior written consent of the DIP Lender (but not including the appointment of a fee examiner to assist in reviewing applications for compensation by professionals); (b) converting any or all of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing any or all of the Chapter 11 Cases; or (d) terminating or reducing the exclusive right of the Debtors to file a plan under section 1121 of the Bankruptcy Code, or any action taken directly or indirectly or supported by the Debtors seeking the entry of any such orders;<br><br>vii. The filing by the Debtors of any chapter 11 plan that is not supported by the DIP Lender and Prepetition Lender;<br><br>viii.The Debtors shall not have the exclusive right to file and solicit votes on a chapter 11 plan; |

\\4150-0444-8610 v1

| | |
|---|---|
| | ix. Any variance from the Approved Budget above a Permitted Variance shall have occurred without the DIP Lender's consent; |
| | x. Any breach by the Debtors of any obligation under any DIP Order shall have occurred; |
| | xi. The failure to meet any of the DIP Milestones without DIP Lender's consent; |
| | xii. The failure to meet any of the Development Milestones, as may be agreed among the DIP Lender and the Debtors within ten calendar days of the date of this Term Sheet, and such failure continues for fifteen (15) business days; |
| | xiii. (a) The Debtors file a pleading seeking to vacate or modify any DIP Order without the prior written consent of the DIP Lender; (b) the entry of an order without the prior written consent of the DIP Lender amending, supplementing or otherwise modifying any DIP Order (excluding as to an extension of any deadline or date subject to the DIP Lender's consent); or (c) the reversal, vacation or stay of the effectiveness of any DIP Order without the prior written consent of the DIP Lender; |
| | xiv. The granting of relief from the automatic stay in the Chapter 11 Cases to permit foreclosure or enforcement on assets of the Debtors in excess of $50,000; |
| | xv. The Debtors filing of (or supporting another party in the filing of) a motion seeking entry of, or the entry of an order, granting any superpriority claim or lien (except as contemplated herein) which is senior to or *pari passu* with the liens or claims of the DIP Lender and/or Prepetition Lender; |
| | xvi. Cessation of the DIP Liens, Adequate Protection Liens, or the DIP Superpriority Claims to be valid, perfected and enforceable in all respects; |
| | xvii. Subject to the Carve-Out, the Debtors' use Cash Collateral or DIP Loans for any item other than those set forth in the applicable Approved Budget; |
| | xviii. The Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables of a Debtor other than any (a) critical vendor payments pursuant to an order of the Bankruptcy Court that is in all respects satisfactory to the DIP Lender, or (b) any other payments made in accordance with the Approved Budget or as otherwise contemplated by this DIP Term Sheet or the DIP Orders. |
| **Remedies** | Upon the occurrence of an Event of Default the DIP Lender shall not be obligated to make any DIP Loans under the DIP Facility to the Debtors, and shall have the following additional rights and remedies: |
| | Following five (5) business days' advance notice to the Debtors, during which the Debtors may seek an emergency hearing from the Bankruptcy Court, the DIP Lender may, upon the expiration of such notice period, take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay: |
| | i. immediately terminate the Debtors' use of any Cash Collateral; *provided, however,* that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as |

ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court;

ii.   terminate the DIP Facility and DIP Commitment;

iii.  declare all DIP Obligations to be immediately due and payable;

iv.   freeze monies or balances in the Debtors' accounts (other than the Professional Fee Reserve Account) and sweep all funds contained in any account subject to a control agreement, or require the Debtors to transfer such funds to an account designated by the DIP Lender for such purpose; *provided, however,* that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court;

v.    immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Lender against the DIP Obligations, or otherwise enforce any and all rights against the DIP Collateral (as defined below) in the possession of the DIP Lender, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations; and

vi.   take any other actions or exercise any other rights or remedies permitted under the DIP Orders, this DIP Term Sheet, the other DIP Loan Documents, or applicable law to effect the repayment of the DIP Obligations.

No failure or delay by the DIP Lender in exercising any right, remedy, power or privilege hereunder or under any other DIP Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The remedies provided herein and in the other DIP Loan Documents are cumulative and not exclusive of any remedies provided by law. Nothing herein contained shall in any way affect the right of the DIP Lender to exercise any statutory or common law lien or right of setoff.

| | |
|---|---|
| **Indemnity** | Subject to entry of the Final DIP Order, the Debtors shall jointly and severally indemnify and hold harmless the DIP Lender and Prepetition Lender and each of their respective affiliates and its and their respective directors, officers, employees, agents, attorneys, accountants, advisors, controlling persons, equity holders, partners, members, and other representatives and each of their respective successors and permitted assigns (each, an "<u>Indemnified Party</u>") against, and hold each Indemnified Party harmless from, any and all losses, claims, damages, liabilities, and reasonable, documented and invoiced out-of-pocket fees and expenses (including, without limitation, fees and disbursements of counsel but limited, in the case of counsel, to the extent set forth in the DIP Loan Documents) that may be incurred by or asserted or awarded against any Indemnified Party, in each case, arising out of, or in any way in connection with, or as a result of: (i) the execution or delivery of any of the DIP Loan Documents, the performance by the parties thereto of their respective obligations thereunder and the other transactions contemplated thereby; (ii) the use |

| | |
|---|---|
| | of the proceeds of the DIP Facility and use of Cash Collateral or other Prepetition Collateral; (iii) the enforcement or protection of their rights in connection with any of the DIP Loan Documents; (iv) the negotiation of and consent to the Interim Order; or (v) any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any Indemnified Party is a party thereto and regardless of whether such matter is initiated by a third party or the Debtors or any of their affiliates or creditors; *provided* that no Indemnified Party will be indemnified for any loss, claim, damage, liability, cost, or other expense to the extent such loss, claim, damage, liability, cost, or expense that (i) is determined by a final, non-appealable judgment of a court of competent jurisdiction to have resulted solely from the gross negligence, fraud, or willful misconduct of such Indemnified Party or (ii) relates to any proceeding between or among Indemnified Parties other than claims arising out of any act or omission on the part of the Debtors in accordance with the foregoing. |
| **Increased Costs; Taxes** | All payments to be made by the Debtors to the DIP Lender under or in connection with the DIP Facility shall be made free and clear of any deduction, withholding or set off by reason of any taxes or other amounts, except as required by applicable law. Subject to applicable law, if any taxes or other amounts are required by applicable law to be deducted or withheld from any payments made by the Debtors under the DIP Facility to the DIP Lender, then the amount payable by the Debtors shall be increased as necessary so that, net of any such withholding or deduction, the DIP Lender receives the amount it would have received had no such withholding or deduction been made. |
| **Credit Bidding** | The DIP Lender shall have the right to credit bid any or all of the obligations under the DIP Facility in connection with any disposition of DIP Collateral. Subject to a successful Challenge (as defined below), the Prepetition Lender shall have the right to credit bid any or all of the Obligations under the Prepetition Loan Agreement in connection with any disposition of Prepetition Collateral. |
| **Challenge Period** | The Debtors acknowledge the validity and enforceability of the Prepetition Liens, Prepetition Secured Obligations and Prepetition Loan Documents and waive any claims, potential claims and defenses against or with respect to the Prepetition Lender relating thereto or with respect to the Prepetition Liens, Prepetition Secured Obligations and Prepetition Loan Documents; *provided, however,* that such acknowledgement and waiver shall not affect or be binding upon any non-Debtor estate representative or party in interest until the conclusion of the Challenge Period (as defined below).<br><br>The DIP Orders shall provide that any Committee or, if none is appointed, any party in interest in each case with requisite standing, must file a pleading with the Bankruptcy Court challenging any releases granted under the DIP Orders or the Debtors' stipulations and other admissions, releases, agreements, and waivers regarding the validity, extent, perfection and/or priority of any claims or security interest of the Prepetition Lender (a "<u>Challenge</u>") no later than seventy-five (75) days after the Bankruptcy Court enters the Interim DIP Order (the "<u>Challenge Period</u>"). Challenges shall be deemed made, for purposes of the Challenge Period, on the earlier of (i) the commencement of an adversary proceeding or contested matter challenging the acknowledgement/waiver, or (ii) filing a request for standing to pursue such a |

| | |
|---|---|
| | challenge which attaches a draft complaint, if the party in interest did not have standing prior to such request.<br><br>Failure of any Committee or any other party in interest to file a Challenge during the Challenge Period with the Bankruptcy Court shall forever bar such party from making such a challenge. To the extent a party in interest with requisite standing and authority timely and properly commences a Challenge during the Challenge Period, all claims, causes of action and other matters not specifically set forth in such challenge shall be deemed forever waived, released, and barred with respect to such party in interest and all other parties in interest. |
| **DIP Lender Expenses** | Subject to customary review rights to be set forth in the DIP Orders, the Debtors shall pay all costs and expenses of the DIP Lender, including, without limitation, all reasonable and documented fees and expenses of the DIP Lender's professionals and advisors. Such fees and expenses shall be paid in kinds by adding them to the principal amount of the DIP Obligations. |
| **Releases** | Effective as of the date of entry of the Final DIP Order, subject solely to the Challenge rights and limitations set forth herein and in the DIP Orders relating to the Prepetition Lender, the Debtors, on behalf of themselves and their estates (including, without limitation, any successor trustee or other estate representative in the Chapter 11 Cases and any successor case, and any party acting by, through or under the Debtors or their estates), hereby stipulates and agrees that they absolutely and unconditionally release and forever and irrevocably discharge and acquit the Prepetition Lender, the DIP Lender, and their respective affiliates and each of its and their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the DIP Liens, the DIP Obligations, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Secured Obligations, and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens and/or claims of the Prepetition Lender and/or the DIP Lender that exist or may exist prior to the entry of the Interim Order by the Court. Subject to entry of the Final Order, the Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any |

21

|  | and all acts, omissions or events occurring prior to the entry of the Interim Order by the Court. For the avoidance of doubt, nothing in this release shall relieve the Debtors of their obligations under the Prepetition Loan Agreement or their obligations under the DIP Loan Documents or DIP Orders. Released Parties (other than the DIP Lender) are third party beneficiaries of this DIP Term Sheet for purposes of receiving the benefits of and enforcing this "Releases" section. |
|---|---|
| **Section 506(c) Waiver; Marshalling Waiver; Section 552(b) Benefits** | Effective upon entry of the Final DIP Order, the DIP Lender and the Prepetition Lender shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied under the Final DIP Order and the DIP Loan Documents notwithstanding any other agreement or provision to the contrary. <br><br>Effective upon entry of the Final DIP Order, the Debtors (on behalf of themselves and their estates) shall waive, and shall not assert in the Chapter 11 Cases or any successor case, (i) any surcharge claim under sections 105(a) and/or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender and the Prepetition Lender, upon the DIP Collateral or the Prepetition Collateral, and (ii) the DIP Lender and the Prepetition Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender and the Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or DIP Collateral. |
| **Assignments and Participations** | This DIP Term Sheet, once it has been executed and delivered by the DIP Lender and Debtors, and other DIP Loan Documents, shall be binding upon and inure to the benefit of the Debtors, the DIP Lender, the Prepetition Lender, and their respective successors and assigns, except that Debtors may not assign or transfer any of their rights or obligations under this DIP Term Sheet or any other DIP Loan Documents without the prior written consent of the DIP Lender and any purported such assignment or transfer by Debtor without such consent shall be null and void. Subject to applicable law, the DIP Lender and Prepetition Lender reserve the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, the DIP Lender's or Prepetition Lender's respective rights and benefits under the Prepetition Loan, the Prepetition Loan Documents, this DIP Term Sheet, the DIP Loans or any other DIP Loan Documents. In addition, the DIP Lender may at any time pledge or assign a security interest in all or any portion of its rights under this DIP Term Sheet to secure obligations of the DIP Lender. |
| **Amendments and Waivers** | Neither this DIP Term Sheet or any other DIP Loan Document nor any of the terms herein or therein may be changed, waived, discharged or terminated unless such change, waiver, discharge or termination is in writing and signed by the Debtor, the DIP Lender and the Prepetition Lender (with respect to any matters concerning Cash Collateral and/or the rights and obligations of the Prepetition Lender); *provided however*, that any material amendments (other than to the Initial Budget, any Updated Budget, or any Approved Budget) must be approved by the Bankruptcy Court following notice and a hearing. |

1625539427.14

\\4150-0444-8610  v1

| | |
|---|---|
| | No waiver of any of the provisions of this DIP Facility Term Sheet shall be deemed or constitute a waiver of any other provisions of this DIP Facility Term Sheet, whether or not similar, nor shall any waiver be deemed a continuing waiver. |
| **Survival** | All representations and warranties made hereunder and in any other DIP Loan Document shall survive the execution and delivery hereof and thereof. Further, the provisions of the following sections of this DIP Term Sheet shall survive and remain in full force and effect regardless of the repayment of the DIP Obligations, the termination of the DIP Commitment, or the termination of the DIP Facility or this DIP Term Sheet: (i) "Survival"; (ii) "Indemnity"; (iii) "Increased Costs; Taxes"; (iv) "Amendments and Waivers"; (v) "Severability"; (vi) "Releases"; (vii) "Resurrection of Obligations"; (viii) "No Third Party Beneficiaries"; (ix) "Governing Law; Jurisdiction"; and (x) "Conflicting Provisions". |
| **Severability** | In the event any one or more of the provisions contained in this DIP Term Sheet is determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. |
| **Resurrection of Obligations** | To the extent that the DIP Lender receives any payment on account of any of the DIP Obligations, and any such payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside, subordinated or required to be repaid to a trustee, receiver or any other person or entity under any contract, bankruptcy act, state or federal law, common law or equitable cause, then, to the extent of such payment received, the DIP Obligations or part thereof intended to be satisfied and any and all DIP Liens upon or pertaining to any DIP Collateral created or existing in favor of the DIP Lender as security for the payment of such DIP Obligations shall be revived and continue in full force and effect, as if such payment had not been received by the DIP Lender and applied on account of the DIP Obligations. |
| **No Third Party Beneficiaries** | This DIP Term Sheet is solely for the benefit of the parties hereto and, except as specifically provided in the "Indemnity" and "Releases" sections, is not intended to be for the benefit of any other person or entity except for any successor, assignee, designee, or participant of the DIP Lender (subject to any agreements between the DIP Lender and any such successor, assignee, designee, or participant). |
| **Governing Law; Jurisdiction** | Except as governed by the Bankruptcy Code, the law of the State of New York.<br><br>**THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT, AND IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY AND OF THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK, AND ANY APPELLATE COURT FROM ANY THEREOF, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS DIP TERM SHEET OR ANY OTHER DIP LOAN DOCUMENT.** |

*Execution Version*

| | THE DEBTORS, THE DIP LENDER, AND THE PREPETITION LENDER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS DIP TERM SHEET OR ANY OTHER DIP LOAN DOCUMENT AND FOR ANY COUNTERCLAIM RELATING THERETO. |
|---|---|
| **Independence of Covenants** | All of the covenants contained in this DIP Term Sheet and the other DIP Loan Documents shall be given independent effect so that if a particular action, event or condition is prohibited by any one of such covenants, the fact that it would be permitted by an exception to, or otherwise be in compliance within the provisions of, another covenant shall not avoid the occurrence of a default or Event of Default if such action is taken, such event occurs or such condition exists. |
| **Conflicting Provisions** | In the event of any conflict between this DIP Term Sheet and the terms of the Interim DIP Order, the terms of the Interim DIP Order shall govern and control. In the event of any conflict between the terms of this DIP Term Sheet and the Final DIP Order, the Final DIP Order shall govern and control. |
| **Counterparts; Electronic Delivery** | This DIP Term Sheet may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. It is not necessary that all parties hereto execute the same counterpart. Counterparts of this DIP Term Sheet may be executed and delivered by facsimile, email transmission, DocuSign, or by any other electronic means, and any such signature so delivered shall be deemed fully effective as an original signature of the party delivering the same. |

*[Signature Pages Follow]*

1625539427.14

\\4150-0444-8610 v1

*Execution Version*

The parties hereto have caused this DIP Term Sheet to be duly executed by their respective authorized officers as of the date first above written.

**DEBTORS:**

**HUDSON 1701/1706, LLC**

By: _____

Name: _____

Title: _____

**HUDSON 1702, LLC**

By: _____

Name: _____

Title: _____

**DIP LENDER:**

**PARKVIEW FINANCIAL REIT, LP**

By: _____

Name: _____

Title: _____

25

*Execution Version*

## EXHIBIT 1

**Development Milestones**

[To be agreed]

## <u>EXHIBIT 2</u>

**Initial Budget**

**Hudson 1701/1706; Hudson 1702**

Consolidated 13-Week Cash Flow

*($ USD)*

| Week ending (Fri) | Cash Collateral | Interim Period 11/3/2025 - 12/15/2025 | Final Order 12/16/25 - 01/26/26 | 13-week DIP Budget | Total |
|---|---|---|---|---|---|
| ***Collections*** | | | | | |
| Receipts | $ - | $ 24,000 | $ 12,000 | $ 36,000 | $ 36,000 |
| **Total Collections** | **$ -** | **$ 24,000** | **$ 12,000** | **$ 36,000** | **$ 36,000** |
| ***Operating Disbursements*** | | | | | |
| Insurance | $ 139,214 | $ 278,429 | $ 139,214 | $ 417,643 | $ 556,858 |
| Property Tax | $ - | $ 3,145,415 | $ 2,895,382 | $ 6,040,797 | $ 6,040,797 |
| Utilities | $ 210,000 | $ 280,000 | $ 140,000 | $ 420,000 | $ 630,000 |
| Elevators (Monthly Maintenance) | $ - | $ 11,600 | $ 5,800 | $ 17,400 | $ 17,400 |
| Security/Fire Watch | $ - | $ 102,633 | $ 34,211 | $ 136,844 | $ 136,844 |
| Property Management | $ - | $ 100,000 | $ 50,000 | $ 150,000 | $ 150,000 |
| Operating Expenses | $ 10,000 | $ 20,000 | $ 285,000 | $ 305,000 | $ 315,000 |
| Legal/HPD | $ 20,000 | $ 40,000 | $ 20,000 | $ 60,000 | $ 80,000 |
| Ground Rent | $ - | $ 1,458,333 | $ 729,167 | $ 2,187,500 | $ 2,187,500 |
| Fire Alarm Service Contract | $ - | $ 6,000 | $ 3,000 | $ 9,000 | $ 9,000 |
| Contractor/Architect | $ 50,000 | $ 66,750 | $ - | $ 66,750 | $ 116,750 |
| Misc/Contingency | $ - | $ - | $ - | $ - | $ - |
| ***Development*** | | | | | |
| LAF Contractor - Landlord TI | $ - | $ 379,781 | $ - | $ 379,781 | $ 379,781 |
| Development Manager | $ - | $ 50,000 | $ 25,000 | $ 75,000 | $ 75,000 |
| LAF TI  Allowance | $ - | $ 1,534,754 | $ 840,269 | $ 2,375,023 | $ 2,375,023 |
| Development Partner | $ - | $ 500,000 | $ 250,000 | $ 750,000 | $ 750,000 |
| Preconstruction GC | $ - | $ 55,000 | $ 55,000 | $ 110,000 | $ 110,000 |
| Design | $ 20,000 | $ 46,000 | $ 373,000 | $ 419,000 | $ 439,000 |
| ***Construction*** | $ - | $ - | $ - | $ - | $ - |
| ***First Day Motions*** | | | | | |
| Utility Assurance | $ - | $ 70,000 | $ - | $ 70,000 | $ 70,000 |
| D&O Insurance | $ - | $ 168,300 | $ - | $ 168,300 | $ 168,300 |
| Life Safety | $ - | $ 500,000 | $ 250,000 | $ 750,000 | $ 750,000 |
| Critical Vendor | $ 120,842 | $ 525,310 | $ 574,534 | $ 1,099,844 | $ 1,220,686 |
| | | | | $ - | |
| **Total Operating Disbursements** | **$ 570,056** | **$ 9,338,305** | **6,669,576** | **$ 16,007,882** | **$ 16,577,938** |
| ***Non-Operating Activities*** | | | | | |
| Professional Fees | $ - | $ 2,890,769 | $ 1,504,231 | 4,395,000 | 4,395,000 |
| US Trustee | $ - | $ 65,313 | $ - | 65,313 | 65,313 |
| **Total Non-Operating Activities** | **$ -** | **$ 2,956,082** | **1,504,231** | **$ 4,460,313** | **$ 4,460,313** |
| **Net Cash Flow** | **$ (570,056)** | **$ (12,270,387)** | **(8,161,807)** | **$ (20,432,194)** | **$ (21,002,251)** |