IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706, LLC, *et al.*,[1] | Case No. 25-11853 (KBO) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: December 12, 2025, at 10:00 a.m. (ET)<br>Obj. Deadline: December 5, 2025, at 4:00 p.m. (ET) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN
AND EMPLOY DLA PIPER LLP (US) AS SPECIAL COUNSEL, EFFECTIVE
AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors") submit this application (the "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors' retention and employment of DLA Piper LLP (US) ("DLA Piper") as special counsel to the Debtors, effective as of the Petition Date. In support of the Application, the Debtors state as follows.[2]

**RELIEF REQUESTED**

1. The Debtors seek entry of the Proposed Order, authorizing the Debtors to retain and employ DLA Piper, as special counsel to the Debtors under section 327(e) of the Bankruptcy Code for those matters described in this Application, effective as of the Petition Date. In support of this Application, the Debtors submit and incorporate by reference the *Declaration of Stuart M. Brown* (the "Brown Declaration"), a copy of which is attached to this Application as **Exhibit B**,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Amended and Restated Declaration of Alan Tantleff in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 60] (the "First Day Declaration"). Capitalized terms used but not otherwise defined in this Application have the meaning given to them in the First Day Declaration.

1625539371

and the *Declaration of Alan Tantleff* (the "Tantleff Declaration"), a copy of which is attached to this Application as **Exhibit C**.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

3. Under Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court on this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.

4. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the requested relief by this Application are sections 327(e), 330, and 1107(b) of 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), Rules 2014(a), 2016(b) and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2014-1.

## BACKGROUND

6. On October 22, 2025 (the "Petition Date"), each Debtor commenced a voluntary case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are operating their business and managing their property as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

7. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

8. Additional information regarding the Debtors' business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the First Day Declaration.

## DLA PIPER'S QUALIFICATIONS

9. DLA Piper is well qualified to serve as Debtors' special counsel in these Chapter 11 Cases. DLA Piper, including its international affiliates, is one of the largest law firms in the world, with a national and global practice, and has substantial experience in litigation, corporate, finance, real estate, and virtually all other aspects of the law.

10. DLA Piper provides an array of sophisticated services to assist financially distressed businesses and their creditors in maximizing value and recoveries in a broad range of challenging circumstances. DLA Piper's lawyers have played significant roles in many large and middle market cases under the Bankruptcy Code as counsel and special counsel to debtors, including, among many others: *In re Azzur Group Holdings, et al.*, Case No. 25-10342 (KBO) (Bankr. D. Del. Mar. 2, 2025); *In re UpHealth Holdings, Inc., et al*., Case No. 23-11476 (LSS) (Bankr. D. Del. Nov. 16, 2023); *In re Vesttoo Ltd., et al*., Case No. 23-11160 (MFW) (Bankr. D. Del. Sept. 21, 2023); *In re AeroFarms, Inc., et al*., Case No. 23-10737 (MFW) (Bankr. D. Del. July 29, 2023); *In re Fast Radius, Inc., et al*., Case No. 22-11051 (JKS) (Bankr. D. Del. Dec. 13, 2022); *EYP Group Holdings, Inc.,* Case No. 22-10367 (MFW) (Bankr. D. Del. April 24, 2022); *Pennsylvania Real Estate Investment Trust,* Case No. 20-12737 (KBO) (Bankr. D. Del. November 1, 2021); *In re Covia Holdings Corporation, et al.,* Case No. 20-33295 (DRJ) (Bankr. S.D. Tex. Aug. 20, 2020) (special counsel); *Valeritas Holdings, Inc.,* Case No. 20-10290 (LSS) (Bankr. D. Del. February 9, 2020); *Comcar Industries, Inc.*, Case No. 20-11120 (JTD) (Bankr. D. Del. May 17, 2020); *LK Bennett U.S.A., Inc.*, Case No. 19-10760 (JTD) (Bankr. D. Del. April 3, 2019);

1625539371

*Celadon Group, Inc.*, Case No. 19-12606 (KBO) (Bankr. D. Del. Dec. 8, 2019); *In re New Cotai Holdings, LLC, et al.,* Case No. 19-22911 (RDD) (Bankr. S.D.N.Y. Sep. 26, 2019) (special counsel); and *Promise Healthcare Group, LLC*, Case No. 18-12491 (CSS) (Bankr. D. Del. Nov. 5, 2018); *In re ADPT DFW Holdings LLC, et al.*, Case No. 17-31432 (Bankr. N.D. Tex. July 24, 2017) (special counsel).

11.  DLA Piper is familiar with the Debtors' businesses through DLA Piper's prepetition representation of the Debtors and Parkview Financial, LLC, an affiliate of the Debtors' lender, Parkview Financial REIT, LP ("Parkview"), which commenced in 2024. DLA Piper does not represent Parkview in these Chapter 11 Cases.[3] DLA Piper has assisted the Debtors in the prepetition development of strategic alternatives, including assisting the Debtors in drafting a fallback business plan regarding their business operations and negotiating with the former owners, the ground lessor, vendors and mechanics lienholders. DLA Piper and the Debtors agreed that DLA Piper would provide legal services as special counsel to the Debtors in connection with these Chapter 11 Cases according to that certain engagement letter agreement between the Debtors and DLA Piper, dated as of October 21, 2025 (the "Engagement Letter"), a copy of which is attached to this Application as **Exhibit D**. Pursuant to this Application, DLA Piper seeks to continue its representation of the Debtors as special counsel, and provide services, as more fully described below, including advising and representing the Debtors in connection with all financing and use of cash collateral matters, plan formulation, negotiation, and confirmation, corporate governance, real estate, and other transactional matters, and any litigation arising in or related to these Chapter 11 Cases.

---

[3]  Parkview is represented by Pachulski Stang Ziehl & Jones LLP and Hogan Lovells US LLP in these Chapter 11 Cases.

12.     DLA Piper's services will not be duplicative of work performed by the Debtors' general bankruptcy counsel, Chipman Brown Cicero & Cole, LLP ("Chipman"), or any other professional retained by the Debtors. Notwithstanding DLA Piper's prior representation of Parkview, any investigation of, or challenge to, the validity, extent, priority, perfection, enforceability, or avoidability of Parkview's prepetition liens or claims shall be conducted solely by Chipman or other conflicts counsel retained by the Debtors.

13.     DLA Piper intends to continue to counsel the Debtors in these Chapter 11 Cases with respect to certain specified matters with which it has particular historical familiarity. Due to DLA Piper's institutional knowledge, and familiarity with the Debtors' business, the Debtors believe it would be most efficient and cost-effective for DLA Piper to continue to assist the Debtors in connection with the services to be provided. If the Debtors were required to retain different counsel for this legal work, or to utilize the services of Chipman for these matters, the Debtors would have to expend significant resources and expense in ensuring that such counsel becomes familiar with the Debtors' business affairs and historical involvement in the redevelopment of the Hudson. As such, DLA Piper is best suited and uniquely able to represent the Debtors as special counsel under section 327(e) of the Bankruptcy Code, because DLA Piper has acquired substantial knowledge regarding the Debtors that will result in effective and efficient services and guidance in the Chapter 11 Cases.

## SERVICES TO BE PROVIDED

14.     Subject to order of the Court, the Debtors desire that DLA Piper will perform the following discreet legal services:

    (a)     representing the Debtors in connection with real estate matters;

    (b)     representing the Debtors in connection with corporate and strategic matters that may arise during these Chapter 11 Cases;

    (c)    representing the Debtors in connection with any and all financing matters, including debtor in possession financing and cash collateral matters, including negotiation, documentation, and implementation of DIP financing arrangements;

    (d)    representing the Debtors in connection with plan formulation, negotiation, and confirmation matters; and

    (e)    due to DLA Piper's historic representation of the Debtors, including certain investigations respecting prepetition contracts and services obtained by the Debtors from third parties, representing the Debtors in investigation and litigation matters arising in or related to these Chapter 11 Cases.

15. DLA Piper has informed the Debtors that it is willing to serve as the Debtors' special counsel and to perform the services, to the extent required.

## **COMPENSATION OF DLA PIPER**

16. Subject to the Court's approval of this Application, DLA Piper intends to (a) charge for its legal services on an hourly basis, recorded in increments of tenths of an hour, with its ordinary and customary hourly rates in effect on the date services are rendered,[4] and (b) seek reimbursement of actual and necessary out-of-pocket expenses. The names, positions, and current hourly rates of the DLA Piper lawyers and paraprofessionals currently expected to have primary responsibility for providing services to the Debtors are set forth in the Brown Declaration.[5] The Debtors believe that DLA Piper's hourly rates and terms of engagement are appropriate, fair and reasonable.

17. DLA Piper will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with rendering the legal services described above.

---

[4] The hourly rates charged by DLA Piper professionals differ based on, among other things, the professional's level of experience and the rates normally charged in the office in which the professional resides.

[5] DLA Piper's hourly rates are normally adjusted annually as of January 1, but may change from time to time in accordance with DLA Piper's established billing practices and procedures. If DLA Piper's rates are adjusted at any time, DLA Piper will provide the U.S. Trustee with notice of the adjusted rates within five business days after any such change.

1625539371

DLA Piper intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any additional procedures that have been or may be established by the Court in these Chapter 11 Cases. DLA Piper has agreed to accept as compensation such sums as may be allowed by the Court. DLA Piper does not offer a discount on fees for postpetition services due to the increased risk, complexity, and potential delay in collection. DLA Piper understands that interim and final fee awards are subject to approval by the Court.

**DISCLOSURE CONCERNING CONFLICTS OF INTEREST**

18. To the best of the Debtors' knowledge and as disclosed in this Application and in the Brown Declaration, DLA Piper does not represent or hold any interest adverse to the Debtors or to their estates with respect to the matters on which DLA Piper is to be employed, as required by section 327(e) of the Bankruptcy Code.

19. DLA Piper terminated its matter-level relationship with Parkview for all matters concerning the Debtors. DLA Piper continues to represent Parkview in other matters, but none concerning any interests in or claims against the Debtors. If DLA Piper is asked in the future to represent Parkview in any matter related to the Debtors, it will undertake to create a separate team of professionals and paraprofessionals to represent Parkview in such matter (the "Side 1 team"). Further, DLA Piper will establish an ethical wall between the Side 1 team and the team representing the Debtors in these Chapter 11 Cases (the "Side 2 team"), prohibiting communication about either team's matter with the other team and electronically restricting each team's access to files and records associated with the other team's matter.

20. DLA Piper will periodically make efforts during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or have arisen. If any

new material fact or relationship is discovered or arises, DLA Piper will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## SUPPORTING AUTHORITY

21. The Debtors seek to retain DLA Piper as special counsel under section 327(e) of the Bankruptcy Code, which provides that a debtor, subject to the Court's approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).[6]

22. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

23. Moreover, Bankruptcy Code section 1107(b) provides that a person is not disqualified for employment by a debtor in possession under Bankruptcy Code section 327 solely because of such person's employment by or representation of the debtor before the commencement of the case. 11 U.S.C. § 1107(b).

24. The Debtors submit that, for all the reasons stated above and in the Brown Declaration, the retention and employment of DLA Piper as special counsel to the Debtors on the

---

[6] Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("For the exception in § 327(e) to apply, an attorney must establish . . . [that it] has no conflict of interest concerning the matter at hand.").

8

terms set forth above is necessary and in the best interests of the Debtors' estates.  As set forth in the Brown Declaration, DLA Piper has in-depth knowledge of the Debtors' business, assets, and liabilities.  The services to be provided by DLA Piper will not overlap with, but rather will complement, the services to be provided by the Debtors' general bankruptcy counsel, Chipman.  DLA Piper has also represented to the Debtors that it neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

## NOTICE

25.    Notice of this Motion will be provided to: (a) the Office of the United States Trustee for Region 3; (b) the Office of the United States Attorney for the District of Delaware; (c) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (d) counsel to Parkview Financial REIT, LP; (e) counsel to MSP Capital Investments, L.L.C.; (f) counsel to CSC Hudson, LLC and Alberto Smeke Saba and Salomon Smeke Saba; (g) the Internal Revenue Service; (h) the attorney general for the State of New York; (i) any party that has requested notice under Bankruptcy Rule 2002; and (j) any other party entitled to notice under Local Rule 9013-1.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, granting the requested relief in this Application and such other and further relief as the Court may deem just and proper.

Dated: November 21, 2025  
       New York, New York

Respectfully submitted,

_/s/ Alan Tantleff_  
By: Alan Tantleff  
Title: Co-Chief Restructuring Officer for the Debtors