**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HUDSON 1701/1706, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-25-52471 (KBO)<br><br>(Jointly Administered) |
| HUDSON 1701/1706, LLC, a Delaware limited liability company; and HUDSON 1702, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>356W58 GROUND LESSOR LLC, a Delaware limited liability company,<br><br>Defendant. | Adv. Proc. No. 25-52471 (KBO) |

**THE DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT RICHARD A. WOLFE**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ......................................................................................... 2

LEGAL STANDARD........................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

I. The Opinions Offered in Sections II through VI of Wolfe's Report Should Be Excluded in Their Entirety. ................................................................... 5

A. Wolfe's Proffered Testimony Is Irrelevant. ............................................... 5

B. Wolfe's Proffered Testimony Is Inadmissible Because It Improperly Draws Legal Conclusions. ..................................................... 6

C. Wolfe Speculates And relies On Unsupported Assumptions. .................... 7

D. Wolfe's Testimony About Supposed Similarities In Tax And Bankruptcy Law Is Both Wrong And Misleading ..................................... 8

II. The Statements Made In Section VII of Wolfe's Report Should Also Be Excluded, Or At The Very Least, Limited To A Discussion of IRC § 467........... 9

A. Wolfe's Statements Are Attorney Advocacy Dressed Up As Expert Opinions ................................................................................................ 10

B. Wolfe's Statements Are Improper *Ipse Dixit* And Beyond the Scope of His Expertise. .......................................................................... 10

C. Wolfe's Proffered Testimony Is Duplicative of Mizukovski's................. 11

III. Allowing Wolfe's Testimony Would Extend Trial Unnecessarily. ...................... 12

CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*3G Licensing, S.A. v. HTC Corp.*,
2023 WL 6442140 (D. Del. Oct. 3, 2023) .................... 11

*Bradley v. Pittsburgh Bd. of Educ.*,
913 F.2d 1064 (3d Cir. 1990) .................... 4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).................... 4

*Dow Chemical Canada Inc. v. HRD Corp.*,
656 F. Supp. 2d 427 (D. Del. 2009).................... 6

*Flickinger v. Toys R Us, Inc.*,
2011 WL 2160493 (M.D. Pa. May 31, 2011).................... 6, 7

*Frank Lyon v. United States*,
435 U.S. 561, 584 (1978).................... 8

*Galentine v. Estate of Stekervetz*,
273 F. Supp. 2d 538, (D. Del. 2003).................... 4

*In re Montgomery Ward, LLC*,
469 B.R. 522 (Bankr. D. Del. 2012) .................... 6

*In re Nellson Nutraceutical, Inc.*,
356 B.R. 364 (Bankr. D. Del. 2006) .................... 4, 5

*Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*,
936 F.2d 744 (2d Cir. 1991) .................... 8, 9

*Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*,
2020 WL 5095499 (E.D. Pa. Aug. 28, 2020) .................... 10

*Leonard v. Stemtech Health Scis., Inc.*,
981 F. Supp. 2d 273 (D. Del. 2013).................... 5

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) .................... 8

*Nationwide Transport Finance v. Cass Information Systems, Inc.*,
523 F.3d 1051 (9th Cir. 2008) .................... 7

*Pineda v. Ford Motor Co.*,
520 F.3d 237 (3d Cir. 2008). .................... 5

*Player v. Motiva Enters., LLC*,
240 F. App'x 513 (3d Cir. 2007) ........ 7

*Qorvo, Inc. v. Akoustis Techs., Inc.*,
2024 WL 5334984 (D. Del. Apr. 25, 2024)........ 11

*Specht v. Jensen*,
853 F.2d 805 (10th Cir. 1988) ........ 7

*Travelers Prop. Cas. Co. of Am. v. Hallam Eng'g & Const. Corp.*,
2013 WL 30174 (D.N.J. Jan. 2, 2013)........ 5

*United States v. Libutti*,
1994 WL 774646 (D.N.J. Feb. 8, 1994) ........ 12

*United States v. Mills*,
2019 WL 2464782 (W.D. Pa. June 13, 2019)........ 12

**Statutes**

11 U.S.C. § 365........ 8, 9

**Rules**

Fed. R. Bankr. P. 9017........ 1

Fed. R. Evid. 403 ........ 1

Fed. R. Evid. 611(a)........ 1, 5, 12

Fed. R. Evid. 702 ........ 1

The Debtors/Plaintiffs Hudson 1701/1706, LLC and Hudson 1702, LLC (together the "**Plaintiffs**" or the "**Debtors**") submit this memorandum of law in support of their motion pursuant to Federal Rules of Evidence 403, 611(a), and 702, made applicable through Federal Rule of Bankruptcy Procedure 9017, to exclude the testimony of Richard A. Wolfe ("**Wolfe**"), a tax attorney designated as an expert by Defendant 356W58 Ground Lessor LLC, an affiliate of Montgomery Street Partners, LP ("**Defendant**" or collectively with Montgomery Street Partners, LP, "**MSP**") in the above-captioned adversary proceeding (the "**Action**")..

## PRELIMINARY STATEMENT

This adversary proceeding seeks recharacterization of the Ground Lease under the U.S. Bankruptcy Code and relevant case law interpreting that Code. Plaintiffs have alleged nothing about how the Gound Lease would be treated under federal or state tax law and have no allegations that anyone is using the Ground Lease for the purposes of tax avoidance. Nonetheless, Defendant is offering Wolfe, a tax lawyer, to offer opinions about whether the Ground Lease would be characterized as a tax avoidance scheme under prevailing law, and how the Internal Revenue Service ("**IRS**") would characterize the Ground Lease with respect to the issue of tax avoidance. This opinion is entirely irrelevant and has no place in this Action.

Wolfe also offers the opinion that the IRS would not construe the Ground Lease as a tenancy in common. Once again, Plaintiffs do not alleged that the IRS would interpret the Ground Lease as a tenancy in common, and this second opinion is also entirely irrelevant.

Finally, Wolfe then devotes the last section of his report to reviewing various allegations of the Amended Complaint and declaring them incorrect. How his knowledge of tax law allows him to do this is unclear, and the section reads more like a legal advocate's closing argument than

a legitimate opinion under Fed. R. Evid. 702.[2] Attorney advocacy is never appropriate expert "testimony."

In fact, attorneys, who advocate in court for clients, rarely make appropriate expert witnesses. In the limited cases where they do serve an expert role, they provide background explanation of relevant areas of law and regulation, the complexity of which the court and trier of fact may not fully appreciate. However, as experts, attorneys do not tell the court what the applicable law is or the trier of fact how to apply the law to the relevant facts. Wolfe repeatedly violates all of these rules: he addressed irrelevant law, tells the court what that law (albeit irrelevant) is, and also tells the Court, as the trier of fact, how to apply that law to the facts. His testimony should be excluded.[3]

## RELEVANT BACKGROUND

This Action arises from the financing of a real estate project, namely the conversion of the real property known as 353 West 57th Street Condominium in New York, New York, from a hotel into a multifamily residential property (the "**Project**"). (D.I. 91 ("**Am. Compl.**") ¶¶ 21–25.) As part of that project, the Debtors entered into the purported ground lease (the "**Ground Lease**") with an affiliate of MSP. (*Id.* ¶¶ 14–15, 32–34.) In this adversary proceeding, the Debtors seek, among other things, to recharacterize the Ground Lease under case law interpreting Section 365 of the Bankruptcy Code. (*Id.* ¶¶ 98–118.)

---

[2] This collection of declarative statements, all of which are unabashed *ipse dixit*, is also completely duplicative of the opinions of Defendant's ground lease expert, Daniel Mizukovski ("**Mizukovski**").

[3] Excluding Wolfe's testimony will also eliminate the need for the testimony of Brad Borden ("**Borden**"), a taxation expert that Plaintiffs' have retained to rebut Wolfe's testimony. (*See* Exhibit B to the Declaration of William E. Chipman ("**Chipman Decl.**"))

Although none of Plaintiffs' causes of action are brought for violations of the Internal Revenue Code ("**IRC**") or other tax avoidance law, Defendant has designated Wolfe to offer a single opinion at trial "that the [Ground] Lease will be treated as a lease for federal income tax purposes." (Chipman Decl., Ex. A ("**Wolfe Rep**.") at 2[4].) Sections II through VI of the report, spanning seventeen pages, summarize and quote federal tax avoidance case law and apply that case law to the Ground Lease. (*Id.* at 2–19.) All of the cases cited by Wolfe – including two Supreme Court decisions that he discusses at length, *Helvering v. Lazarus & Co.* and *Frank Lyon v. United States*, involve U.S. Government challenges to what the Government claimed were tax avoidance schemes. (*Id.* at 6–14.) Wolfe does this even though he concedes, as he must, that the Debtors' recharacterization case is "not based on allegations of tax avoidance." (Chipman Decl., Ex. D ("**Wolfe First Dep. Tr**.") 26:23–27:3.)

In Section VI, without citing any case law, Wolfe also declares that the IRS would not construe the Ground Lease as a tenancy in common. (Wolfe Rep. at 19.) Of course, Plaintiffs have no allegations that the IRS would do such a thing, a fact that Wolfe does not contest.

In the final section of his Report – Section VII – Wolfe begins by stating "[b]efore concluding my report, I thought it would be useful to address several statements Tenant made in its Amended Complaint" about the characteristics of the Ground Lease itself "to support Tenant's position that the Lease should be treated, not as a lease, but as a financing or tenancy in common arrangement." (*Id.* at 19.) Other than one discrete discussion of IRC § 467, which is discussed in the Ground Lease, none of the opinions in Section VII relate to Wolfe's tax expertise. (*Id.* at 19–31.) Further, they are nothing but attorney advocacy and read like a closing argument: Plaintiffs' allegations about the Debtors' direct payment to Cain International ("Cain") (the seller of the

[4] Citations to Wolfe's Report use PDF page numbering.

property at issue here); MSP's method of calculating rent; the Right-Size Payment; the Project capital stack; the triple-net provisions of the Ground Lease; and the manner in which MSP marketed ground leases are all wrong according to Wolfe, an attorney retained by MSP. Nothing other than his own *ipse dixit*, which unsurprisingly favor his client, support these conclusions. (*Id.* at 19–31.)

Defendant has also designated Mizukovski, a real estate advisor at Wells Hill Partners, to opine on "whether the Ground Lease reflects a true ground lease in the market today or whether the Ground Lease should be recharacterized as a loan or otherwise based on its characteristics." (Chipman Decl., Ex. C ("**Mizukovski Rep.**") ¶ 2.) Mizukovski's reports address, among other things, how ground leases are originated, how ground rent is set, the Debtors' upfront payment to Cain, the Right-Size Payment, the triple-net structure, the condominium structure of the leased fee, and the Debtors' tenancy in common theory. (*See* Mizukovski Rep. ¶¶ 5–14.) Accordingly, Wolfe's report is not only inappropriate, it is also duplicative of Mizukovski's report.

## LEGAL STANDARD

A motion in limine is "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Motions in limine may be invoked to exclude a variety of evidence, including the admissibility of expert testimony, which is governed by Rule 702 of the Federal Rules of Evidence. *See Galentine v. Estate of Stekervetz*, 273 F. Supp. 2d 538, 540–41 (D. Del. 2003). Under Rule 702, the admission of expert testimony requires the trial judge to evaluate whether "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 372 (Bankr. D. Del. 2006) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). In addressing a challenge to expert testimony, the trial

court's role is to ensure that any and all expert testimony is both relevant and reliable. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

Moreover, under Rule 611(a) a trial court has the ability and duty to control the number of witnesses provided to "avoid wasting time." *See also* Fed. R. Evid. 403 (evidence may be excluded by considerations of "undue delay, wasting time, or needlessly presenting cumulative evidence.")

## ARGUMENT

### I. The Opinions Offered in Sections II through VI of Wolfe's Report Should Be Excluded in Their Entirety.

#### A. Wolfe's Proffered Testimony Is Irrelevant.

Wolfe's purported testimony is irrelevant to the issues presented to the Court and therefore inadmissible. An expert opinion is relevant only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Nellson Nutraceutical, Inc.*, 356 B.R. at 372 (citation omitted). Testimony relating to an issue not before the Court should be excluded. *See, e.g.*, *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 280 (D. Del. 2013) (excluding expert's testimony regarding certain licensing fees because they were not at issue and therefore irrelevant); *Travelers Prop. Cas. Co. of Am. v. Hallam Eng'g & Const. Corp.*, 2013 WL 30174, at *7 (D.N.J. Jan. 2, 2013) (excluding expert testimony regarding general pattern of negligence because it was not at issue before the court or relevant to the merits of the case).

Here, Sections II through VI of Wolfe's report recite federal tax avoidance case law and commentary and apply it to conclude that the Ground Lease would be respected as a lease – and not as a financing or tenancy in common arrangement – by the IRS for federal income tax purposes. (Wolfe Rep. at 3–19.) That testimony will not assist the Court in its determination because the federal tax laws, regulations, and legal conclusions discussed by Wolfe have no bearing on any of the claims at issue in this case. This Action requires the Court to analyze whether the Ground

Lease is a "true lease" under section 365 of ***the Bankruptcy Code*** and, separately, whether the Fourth Amendment to the Ground Lease was a fraudulent transfer. (*See* Am. Compl. ¶¶ 98–118.) *See, e.g., In re Montgomery Ward, LLC*, 469 B.R. 522, 530 (Bankr. D. Del. 2012) (listing recharacterization factors). Wolfe's proffered testimony does not assist this exercise.

For example, one of the tax cases that Wolfe cites states that the "court must find that the taxpayer was motivated by no business purposes other than obtaining tax benefits." (Wolfe Rep. at 7 n.5.) However, tax avoidance is not an issue in this case, and the Court need not make any such determination here. No party alleges that the Ground Lease was structured to evade the IRC. Wolfe himself conceded that the Debtors' pleading "is not based on allegations of tax avoidance," that he is aware of no evidence that the parties entered into the Ground Lease for tax avoidance purposes, that no taxing authority is a party to this proceeding, and that Defendant does not challenge his conclusion regarding the federal income tax treatment of the Ground Lease. (Wolfe First Dep. Tr. 14:17–19, 17:22–18:5, 19:13–18, 26:23–27:3.) Because Wolfe's tax-code opinions do not bear on any disputed issue in this action, the opinions offered in Sections II through VI of his report should be excluded in their entirety.

### B. Wolfe's Proffered Testimony Is Inadmissible Because It Improperly Draws Legal Conclusions.

The opinions in Sections II through VI are also improper legal conclusions. It is well-settled that "[t]he Rules of Evidence do not permit expert testimony as to legal conclusions." *Dow Chemical Canada Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 435 (D. Del. 2009); *see also Flickinger v. Toys R Us, Inc.*, 2011 WL 2160493, at *4 –5 (M.D. Pa. May 31, 2011) (granting motion in limine to exclude expert testimony "as to the legal conclusions contained in their reports"), *aff'd sub nom., Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x 217 (3d Cir. 2012); *Nationwide*

*Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1056–1060 (9th Cir. 2008); *Specht v. Jensen*, 853 F.2d 805, 806–810 (10th Cir. 1988).

Here, Wolfe applies federal tax statutes and case law to the evidence in order to reach the legal conclusions that the Ground Lease is a lease under tax avoidance laws. For instance, after spending more than *nine* pages reciting the holdings of various U.S. Tax Court and Supreme Court cases, his report describes the legal test for determining if "a long-term, triple-net lease of real estate will be respected as a lease for federal income tax purposes." (Wolfe Rep. at 6–14 (reciting case law), 7–8 (describing test).) Wolfe then applies that case law and the test to the Ground Lease here, and concludes that "for federal income tax purposes, the Lease would be treated as a lease, and not a financing arrangement." (*Id.* at 14–18.) He does the same with the Debtors' alternative tenancy in common theory, opining that the "federal income tax law would respect Landlord as the sole owner of the Property." (*Id.* at 18–19.) Such testimony is improper and, if any of that case law was actually relevant, would be "exactly" the "usurp[ation of] the District Court's pivotal role" that "the Third Circuit has warned about." *Flickinger*, 2011 WL 2160493, at *5.

**C. Wolfe Speculates And Relies On Unsupported Assumptions.**

Finally, Wolfe's conclusions in Sections II through VI rest on unsupported assumptions and speculation. Throughout his report, Wolfe repeatedly speculates about what the IRS thinks and what the parties to the Ground Lease thought. For example, without citing to any authority, Wolfe states conclusorily that the IRS "respects [leases similar to the Ground Lease] as being leases for federal income tax purposes." (Wolfe Rep. at 4.) Wolfe of course did not interview the IRS, nor can he point to any authority that lends itself to his conclusion about what the IRS might conclude. Courts have excluded expert testimony where, as here, the expert's opinion rests on unsupported assumptions. *See Player v. Motiva Enters., LLC*, 240 F. App'x 513, 520 (3d Cir. 2007) (holding that an expert's testimony cannot be based on "subjective believe or unsupported

speculation" (citation omitted)); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (affirming the district court's decision to exclude the opinion of a damages expert that was based on assumptions and speculation with no basis in the record).

### D. Wolfe's Testimony About Supposed Similarities In Tax And Bankruptcy Law Is Both Wrong And Misleading

At his November 16, 2026 deposition, Wolfe made clear that MSP intends to offer his testimony on the theory that "the standard used under 11 U.S.C. § 365 for determining whether you have a true lease is the same standard we use for federal income tax purposes." (*See* Chipman Decl., Ex. E ("**Wolfe Second Dep. Tr**.") 21:22–25.) Not only is that analysis nowhere to be found in Wolfe's report, but it is also wrong. The bankruptcy recharacterization standard and the federal tax avoidance standard ask different questions for different purposes

Under 11 U.S.C. § 365, the question posed to the court is whether "the parties intended to impose obligations and confer rights significantly different from those arising from the ordinary landlord/tenant relationship." *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 748 (2d Cir. 1991) ("*RPI*"); (*see also* D.I. 97 at 6–9.) To answer it, the Court must "look to 'the economic substance of the transaction and not its form,'" *id.* at 748, and *RPI* and the other recharacterization cases weigh a broad range of factors to determine that economic substance. *Id.* Illegality is not an issue, and a perfectly legal lease transaction may be recharacterized if the court determines it is significantly different than an ordinary lease transaction.

The tax inquiry is narrower and focused on unlawful intent. Under one of the Supreme Court cased that Wolfe discusses at length, *Frank Lyon*, the form of the parties transactions controls for tax purposes if the transaction (1) is "compelled or encouraged by business or regulatory realities," (2) is "imbued with tax-independent considerations," and (3) is "not shaped solely by tax-avoidance features that have meaningless labels attached." 435 U.S. 561, 584 (1978).

The law about which Wolfe wishes to testify focuses on tax avoidance, *i.e.*, unlawful conduct, whereas the recharacterization standard under 11 U.S.C. § 365 does not. Put another way, a transaction "not shapely solely by tax-avoidance features," and "imbued" with business and other "tax-independent considerations" could still be subject to recharacterization under Section 365.

Despite these obvious differences, Wolfe insisted that *RPI* "cite[s] a tax case" as evidence that both areas of law apply the same standard. (*See* Wolfe Second Dep. Tr. 23:8–11.) Wolfe is wrong: *RPI* cites a single tax decision, *James v. Commissioner*, and only for the definition of the phrase "typical triple net lease." 936 F.2d at 751. *RPI* cites no tax authority for the standard that decides whether an agreement is a "true lease," and the same holds across the case law. Recharacterization decisions do not rely on tax avoidance precedent for guidance, and the leading tax cases which Wolfe cites in his report do not rely on recharacterization precedent. (*See* Wolfe Rep. at 6–14.)

Testimony about an overlap that does not exist would force Debtors to introduce rebuttal testimony from Borden and is a waste of time.

## II. <u>The Statements Made In Section VII of Wolfe's Report Should Also Be Excluded, Or At The Very Least, Limited To A Discussion of IRC § 467.</u>

Section VII of Wolfe's report purports to address "several statements Tenant made in its Amended Complaint," each of which Wolfe says "either is incorrect or, contrary to Tenant's claim, is consistent with treating the Lease as a long-term, triple-net real estate lease." (Wolfe Rep. at 19–20.) Other than Wolfe's opinion regarding Section 467 of the IRC, the opinions in Section VII should be excluded because they are unsupported *ipse dixit*, beyond the scope of Wolfe's expertise and duplicate Mizukovski's opinions. In addition, Wolfe testified that Section VII is just further discussions in support of his federal tax opinions, (Wolfe Second Dep. Tr. 30:6–31:9), which have no place in this action.

### A. Wolfe's Statements Are Attorney Advocacy Dressed Up As Expert Opinions

Wolfe spends *thirteen* pages of his report reciting allegations from the Amended Complaint, and explaining why each allegation "is incorrect or, contrary to [the Debtors'] claim, is consistent with treating the Lease as a long-term, triple-net real estate lease." (Wolfe Rep. at 19–31.) These criticisms of the Debtors' allegations are argumentative, conclusory, largely not tax-related and reflective of typical attorney advocacy. It is axiomatic that MSP cannot introduce Wolfe's testimony to get legal advocacy in through the back door of expert opinion. *See Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, 2020 WL 5095499, at *19 (E.D. Pa. Aug. 28, 2020) (excluding expert testimony of an attorney for stating a "legal opinion").

### B. Wolfe's Statements Are Improper *Ipse Dixit* And Beyond The Scope Of His Expertise.

Wolfe's mandate was to analyze how the Ground Lease would be treated under federal tax law (Wolfe Rep. at 2), Section VII of his report is rife with unsupported conclusions that extend beyond the realm of tax law.

For example, with respect to rent payments Wolfe opines that "[i]n my experience, the purchaser/owner of any rental property focuses on the return it will make on its investment." (Wolfe Rep. at 26.) As another example, Wolfe critiques the Debtors' contribution to the purchase price stating "[a] 'true' lender on the redevelopment project such as the Project would not have funded 82.2% of the purchase price of the Property, and certainly not at an interest rate of 3.53%." (Wolfe. Rep. at 24.) Wolfe goes on to say that GLR's financing solution "does not convert reality into fiction . . . and the arrangement between GLR and the real estate developers is a long-term ground lease." (*Id.* at 28.) These statements are entirely untethered from any tax law. Wolfe, offered as a tax expert, must be limited to testifying about tax issues and "precluded from presenting evidence and arguments outside the scope" of tax law, to the extent tax law is even

relevant in this case. *Chervon (HK) Ltd. v. One World Tech's, Inc.*, 2025 WL 2630480, at *10 (D. Del. Feb. 5, 2025) (quoting *3G Licensing, S.A. v. HTC Corp.*, 2023 WL 6442140, at *2 (D. Del. Oct. 3, 2023)) (cleaned up).

Wolfe also provides no citations, footnotes, or support for the vast majority of the conclusions in Section VII. Wolfe should not be permitted to offer testimony about whether the Ground Lease is a true lease based on his own say so or general statements that he disagrees with the Debtors' arguments or that those arguments "make no sense to me." (*See, e.g.*, Wolfe Rep. at 26.) Wolfe has given the Debtors and the Court no way "to assess his reliability" or pointed "to any specific experiences, policies, or incidents on which he based his opinion." *See, e.g.*, *Qorvo, Inc. v. Akoustis Techs., Inc*., 2024 WL 5334984, at *3 (D. Del. Apr. 25, 2024) (excluding expert opinions that "consist of a general pattern of disagreeing with the Plaintiff's expert's report and then providing a general *ipse dixit* statement about what works or does not work for information security in the technology field, without citation to specific examples or analysis under any analytical framework or method").

**C. Wolfe's Proffered Testimony Is Duplicative of Mizukovski's.**

Wolfe's opinions in Section VII of his report are also duplicative of the opinions of Defendant's other expert, Mizukovski. Defendant retained Mizukovski, a real estate advisor and proffered ground lease expert, to opine on "whether the Ground Lease reflects a true ground lease in the market today or whether the Ground Lease should be recharacterized as a loan or otherwise based on its characteristics." (Mizukovski Rep. ¶ 2.) Section VII of Wolfe's report covers the same exact ground, reaching the same exact conclusions. (*Compare* Wolfe Rep. at 23–27, 29-31 *with* Mizukovski Rep. ¶¶ 7–8, 38, 46.)

## III. Allowing Wolfe's Testimony Would Extend Trial Unnecessarily.

Lastly, given that Wolfe's testimony is irrelevant, laden with improper legal conclusions, unsubstantiated *ipse dixit,* and duplicative of Mizukovski, Wolfe's testimony should be excluded for the independent reason that it will waste the Court's and parties' time and resources. Under Fed. R. Evid. 611(a) and 403, this Court may control the number of expert witnesses presented in pursuit of judicial efficiency. Indeed, courts routinely preclude expert testimony where an expert's testimony is "unduly consumptive of time on an issue not in dispute." *See e.g.*, *United States v. Libutti*, 1994 WL 774646, at *13 (D.N.J. Feb. 8, 1994). This is particularly true since any Wolfe testimony would require additional rebuttal testimony from Plaintiffs' expert, Borden. This would result in two separate witnesses providing extensive testimony about "matters which have little to do with this case" – *i.e,* the IRC, the IRS, and tax avoidance issues – makes no sense. *United States v. Mills*, 2019 WL 2464782, at *4 (W.D. Pa. June 13, 2019).

## CONCLUSION

For the foregoing reasons, the Court should grant the Debtors' motion to exclude Wolfe's proffered testimony from the trial of this action or, alternatively, limit it to a discussion of IRC § 467.

Dated: November 17, 2026
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Aaron J. Bach (No. 7364)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
olivere@chipmanbrown.com
bach@chipmanbrown.com
maser@chipmanbrown.com

**BOIES SCHILLER FLEXNER LLP**
Michael M. Fay (admitted *pro hac vice)*
Robert Gordon (admitted *pro hac vice)*
Sabina Mariella (admitted *pro hac vice)*
Jeffrey Waldron (admitted *pro hac vice)*
55 Hudson Yards
New York, New York 10001
Telephone:(212) 446-2300
Email: rgordon@bsfllp.com
mfay@bsfllp.com
smariella@bsfllp.com
jwaldron@bsfllp.com

*Counsel for Debtors and Debtors in Possession*