**<u>EXHIBIT A</u>**

## SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** (this "**Agreement**"), dated August 7, 2025 (the "**Effective Date**") is entered into by and among (I) PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership having an office at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049, as administrative agent (in such capacity, together with its successors and assigns, "**Administrative Agent**") for itself (in such capacity as a Lender, the "**Parkview Lender**") and the other lenders from time to time a party to the Loan Documents (collectively, together with their successors and assigns, "**Lender**" or "**Lenders**"), (II) HUDSON 1702, LLC and HUDSON 1701/1706, LLC, each a Delaware limited liability company, having an office at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049 (collectively, "**Borrower**"), (III) CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("**Holdings**"), and (IV) ALBERTO SMEKE SABA and SALOMON SMEKE SABA, each a natural person (individually and collectively, as the context may require, and jointly and severally, "**Guarantor**" and Holdings and Guarantor, collectively, the "**Guarantor Parties**").

**WHEREAS**, Borrower, Lenders and Guarantor Parties (collectively, the "**Parties**"), as applicable, are parties to certain loan documents set forth on Exhibit A hereto (the "**Loan Documents**");

**WHEREAS**, the Parties have agreed to settle their respective claims upon the terms and conditions set forth herein, in order to avoid lengthy, costly, and time-consuming litigation and, and without any admission by any Party of liability or fault, or payment, whatsoever.

**NOW, THEREFORE**, in consideration of the foregoing, the mutual covenants and obligations contained herein and in exchange for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. **Capitalized Terms**. Capitalized terms not otherwise set forth herein have the meaning ascribed such terms in the Loan Documents.

2. **Covenants**.

a)    Within two (2) business days of the Effective Date (the "**Escrow Date**"), Guarantors and Lender shall deliver to First American Title Insurance Company (the "**Escrow Agent**") and to Lender and Guarantors, respectively, a copy of the escrow agreement in the form attached hereto as Exhibit "B" (the "**Escrow Agreement**") duly executed by such Party.

b)    Within two (2) business days of the Escrow Date, Guarantors shall deliver, or cause to be delivered, to the Escrow Agent four (4) duly executed and notarized counterpart signature pages from Hudson 1705, LLC, a Delaware limited liability company, together with an irrevocable authorization in favor of Administrative Agent and Borrower, in each case in form and substance attached hereto as Exhibit "C" (the "**Executed Counterparts**"), for Lender's and/or Borrower's attachment to a Waiver of Execution and Subordination to Cure Agreement (and to amendments thereto) to be submitted in connection with obtaining the Cure Approval and Lifting of the Stop Work Order (as such term is defined below) and shall deliver to Lender a copy of such Executed

Counterparts marked "draft". Such Executed Counterparts shall be held pursuant to the Escrow Agreement.

c)       No later than two (2) business days following notice from the Escrow Agent confirming that Escrow Agent has received the Executed Counterparts, together with a copy of the Escrow Agreement executed by the Guarantors, Lender shall deposit an amount equal to $4,637,500.00 (the "**Cure Delivery Fee**") into the escrow account of the Escrow Agent in accordance with the wire instructions attached to the Escrow Agreement. Such Cure Delivery Fee shall be held pursuant to the Escrow Agreement. If Lender does not so deposit the Cure Delivery Fee into such escrow account by such date, the Escrow Agent shall return the Executed Counterparts to the Guarantors who shall return them to Hudson 1705, LLC, a Delaware limited liability company.

d)       The Escrow Agreement shall provide that, within two (2) business days of the deposit of the Cure Delivery Fee into the escrow account, (x) the original Executed Counterparts shall be delivered to Lender, and (y) $3,000,000.00 of the Cure Delivery Fee shall be delivered to the Guarantors. The Escrow Agreement will further provide that, provided the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction, the remainder of the Cure Delivery Fee shall be delivered to the Guarantors within five (5) business days of the earlier to occur of (x) receipt by Borrower of the Cure Approval and Lifting of the Stop Work Order and the New York City Department of Buildings (the "Department of Buildings") and each applicable agency, including the New York City Department of Buildings, granting all approvals, permits and licenses required to complete the construction and development of the Project, including, without limitation, giving effect to the J-1 Unit Zoning Conversion and (y) the date that is ninety (90) days after the Effective Date.

As used herein the term "Cure Approval and Lifting of the Stop Work Order" means an agreement with New York City Department of Housing Preservation and Development ("HPD"), HPD's Inclusionary Housing Unit (the "IH Unit") and/or any other applicable authority, in such form as Administrative Agent shall approve, that cures the public record of any "Finding of Harassment" and that stipulates satisfaction of an "Affordability Requirement" that requires that a specified percentage of the residential or hotel floor area of the Project be rented to individuals earning at or below a specified percentage of the Area Median Income in perpetuity, and the term "J-1 Unit Zoning Conversion" means the issuance by the Department of Buildings and each other applicable agency, pursuant to applicable required documentation, of all required permits to permit construction of the Project with all of the non-SRO Units in the Property classified as "J-1" for purposes of Title 27 of the New York City Building Code (the "J-1 Zoned Units") being converted to residential apartment units classified as "R2" units for purposes of Title 27 of the New York City Building Code.

e)       No later than ten days after the Effective Date, Guarantors shall deliver to Administrative Agent any and all drawings, plans, warranties, licenses, permits, approvals, registrations and other authorizations and similar or related documentation for the use, development or operation of the Property.

f)       Guarantors agree to cooperate, as reasonably requested by Administrative Agent or Lender, including, without limitation by executing and delivering such instruments or documents, and taking such other action, as the Administrative Agent or Lender may reasonably request, in

connection with the transactions contemplated by this Agreement including, without limitation, obtaining the Cure Approval and Lifting of the Stop Work Order and obtaining the J-1 Unit Zoning Conversion.

**3.    Certain Additional Fees.**    Guarantors shall have the right, on behalf of the Borrower, for a period of ninety (90) days after the Effective Date, to negotiate and settle amounts claimed as payable to third parties relating to the Property and set forth on Exhibit "D" hereto (the "**Existing Obligations**"). Provided Guarantors comply in full with their obligations hereunder, including, without limitation, complying with the obligations set forth in Section 2 of this Agreement, then within ten (10) business days following the expiration of such ninety (90)-day period, fifty percent (50%) of agreed reductions in the Existing Obligations, as evidenced by binding settlement agreements releasing the applicable claims or liens, and removing the liens, if applicable, in form and substance reasonably acceptable to the Administrative Agent and, with respect to the removal of liens, the Title Insurer, executed and delivered by the applicable claimants on or prior to the expiration of such ninety (90)-day period, will be paid to Guarantors. For the avoidance of doubt, the Parties acknowledge and agree that the total amount of the Existing Obligations is the amounts listed in the column titled "Lien Amount" on the table included in Exhibit "D" and that reductions in the Existing Obligations shall be measured against such aggregate number (for the avoidance of doubt, no amounts listed in the column titled "Draw 3&5 Balance" on the table included as Exhibit "D" shall be included in such Existing Obligations).

**4.    Development Agreement.** Lender agrees that Guarantors may make a proposal for the terms and conditions of a "Property Management Agreement" and "Development Agreement" on which an affiliate of Guarantors would agree to manage the development of the Property, and Lender will review such proposal with proposals made by other parties to manage the development of the Property provided, however, that it is understood and agreed that in their sole discretion none of Administrative Agent, Lender or Borrower shall be under any obligation to select such affiliate of the Guarantors to manage the development of the Property or to negotiate, or enter into, the terms of any such Property Management Agreement or Development Agreement with Guarantors or any affiliate of the Guarantors.

**5.    Mutual Release.**

a)    Except for the agreements, obligations and covenants arising under this Agreement, effective upon the delivery by Lender to the Escrow Agent of the Cure Delivery Fee and a copy of the Escrow Agreement signed by Administrative Agent, the Guarantor Parties hereby release, waive, and forever discharge the Lender Parties and their successors in interest, and all past, present, and future assigns, officers, directors, employees, subsidiaries, affiliates, partners (known or unknown), insurers, underwriters, and attorneys, from any and all claims, demands, damages, losses, costs, expenses, fees, actions, agreements, promises, and debts, of every kind and character, whether asserted or unasserted, known or unknown, suspected or unsuspected, in law or in equity, for or by reason of any matter, cause, or thing whatsoever from the beginning of time related to the Loan Documents. In addition, nothing herein shall be deemed to be or operate as a discharge, waiver or release of a claim against any Lender for any damages arising from any fraud, misrepresentation or breach of this Agreement by Lender.

b)    Except for the agreements, obligations and covenants arising under this Agreement, effective upon the delivery by Guarantors to the Escrow Agent of the Executed Counterparts and

a copy of the Escrow Agreement signed by Guarantors, the Lenders hereby release, waive, and forever discharge the Guarantor Parties and their successors in interest, and all past, present, and future assigns, officers, directors, employees, subsidiaries, affiliates, partners (known or unknown), insurers, underwriters, and attorneys, from any and all claims, demands, damages, losses, costs, expenses, fees, actions, agreements, promises, and debts, of every kind and character, whether asserted or unasserted, known or unknown, suspected or unsuspected, in law or in equity, for or by reason of any matter, cause, or thing whatsoever from the beginning of time related to the Loan Documents. For the avoidance of doubt, any guarantees executed in connection with the Loan Documents shall be deemed terminated and of no further force or effect. Notwithstanding the foregoing, the Mortgage shall remain as a good and valid mortgage lien and it is agreed that the indebtedness of the Borrower has not been, nor shall it be deemed, cancelled or paid until such time as the Mortgage is released of record.   Notwithstanding the foregoing or any other provision in this Agreement to the contrary, in the event (A) Holdings or any Guarantor becomes the subject of any bankruptcy proceeding and such proceeding affects any of Administrative Agent's or any Lender's rights under this Agreement, (B) a court of competent jurisdiction determines that the Holdings or the Guarantor has perpetrated any fraud upon the Administrative Agent or Lenders or made any misrepresentation in this Agreement, or (C) the Holdings or any Guarantor breaches or defaults under this Agreement, then the release and covenants in this  Section 5(b) shall be null and void and of no further force or effect, and the Administrative Agent and Lenders shall have all rights at law or in equity with respect to each of  the guarantees executed in connection with the Loan Documents. In addition, nothing herein shall be deemed to be or operate as a discharge, waiver or release of a claim against any particular Guarantor for any damages arising from any fraud, misrepresentation or breach of this Agreement by any Guarantor.

6. **Mutual Non-Disparagement.**

a.      The Guarantor Parties agree that they will refrain from directly or indirectly making, causing to be made, publishing, ratifying, or endorsing any and all public disparaging remarks, derogatory statements, or comments with respect to Administrative Agent or  any of the Lenders.

b.      The Lenders agree that they will refrain from directly or indirectly making, causing to be made, publishing, ratifying, or endorsing any and all public disparaging remarks, derogatory statements, or comments with respect to any of the Guarantor Parties.

7. **No Admission of Liability.** This Agreement shall not be construed as an admission of liability by any Party, and is limited to the terms and conditions contained in this Agreement.

8. **Other Terms:**

a.      **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and there are no inducements, representations, warranties, or understandings that do not appear within the terms and provisions of this Agreement. This Agreement may be modified only by a writing signed by all Parties.

b.      **Joint Contribution and Drafting.** Each term of this Agreement is deemed to have been drafted jointly by the Parties and any uncertainty or ambiguity shall not be construed for or against either Party.

c.    **Costs and Attorneys' Fees.** Each party hereto shall pay its own costs and expenses, including legal fees, including, but not limited to, those incurred in negotiation, preparation and execution of this Agreement.

d.    **Severability**.    If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect.

e.    **Counterparts.** This Agreement may be executed in any number of separate counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one agreement, which shall be binding upon and effective as to all of the parties. Signatures communicated electronically or by facsimile are permissible and enforceable.

f.    **No Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party or parties waiving the breach.

g.    **Section Headings.** The paragraph, section and article headings used in this Agreement are intended solely for convenience and reference and shall not in any manner amend, limit, modify, or otherwise be used in the interpretation of any of the provisions of this Agreement.

h.    **Successors.** This Agreement, along with its terms and conditions, shall be binding on and shall inure to the benefit of each of the parties and to their heirs, executors, administrators, successors-in-interest, assigns, directors, officers, employees, agents, partners, consultants, representatives, attorneys, insurers, and licensees, and shall survive any reorganization of any party.

i.    **Governing Law; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the state of New York applicable to contracts to be wholly performed therein. The exclusive forum for any disputes arising out of or relating to this Agreement shall be an appropriate state or federal court situated in the state of New York.

[Signature Page to Follow]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.


BORROWER:                         HUDSON 1702, LLC,
                                  a Delaware limited liability company

                                  By_____
                                     Name:   Ted Jung
                                     Title:    Authorized Signatory


                                  HUDSON 1701/1706, LLC,
                                  a Delaware limited liability company

                                  By_____
                                     Name:   Ted Jung
                                     Title:    Authorized Signatory


HOLDINGS:                         CSC HUDSON LLC,
                                  a Delaware limited liability company


                                  By_____
                                     Name:
                                     Title:


6

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:

HUDSON 1702, LLC,
a Delaware limited liability company

By_____
   Name:
   Title:

HUDSON 1701/1706, LLC,
a Delaware limited liability company

By_____
   Name:
   Title:

HOLDINGS:

CSC HUDSON LLC,
a Delaware limited liability company

By_____
   Name: **Alberto Smeke**
   Title: **Authorized Signatory**

GUARANTORS:

_____
ALBERTO SMEKE SABA

_____
SALOMON SMEKE SABA

## EXHIBIT A

### (List of Loan Documents)

Unless otherwise defined, capitalized terms have the definition ascribed such terms in the Loan Documents.

1.  Building Loan Agreement, dated as of May 4, 2022 (the "**Closing Date**"), by and among Borrower, Administrative Agent and Lender, as amended by Amendment to Building Loan Agreement dated as of May 1, 2023, the hereafter defined First Omnibus Amendment, the hereafter defined Second Omnibus Amendment, and the hereafter defined Third Omnibus Amendment, by and between Borrower and Administrative Agent (collectively, as so amended, the "**Building Loan Agreement**"),

2.  Building Loan Mortgage Note, dated as of the Closing Date, as amended, made by Borrower in favor of Parkview Financial REIT, LP, as a Lender and secured by that certain Building Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of the Closing Date and recorded on June 15, 2022 in the Office of the City Register of the City of New York under CRFN 2022000240500, as amended, by Borrower in favor of Administrative Agent for the benefit of Lenders (as so amended, the "**Building Loan Mortgage**")

3.  Project Loan Agreement, dated as of the Closing Date, as amended, by and among Borrower, Administrative Agent and  Lender, as amended by the hereinafter defined First Omnibus Amendment, and as further amended by the hereafter defined Second Omnibus Amendment, and the hereafter defined Third Omnibus Amendment (collectively, as so amended, the "**Project Loan Agreement**" and, together with the Building Loan Agreement, each individually a "**Loan Agreement**" and collectively, the "**Loan Agreements**

4.  Project Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of the Closing Date and recorded on June 15, 2022, in the Office of the City Register of the City of New York under CRFN 2022000240501, as amended, by Borrower in favor of Administrative Agent for the benefit of Lenders (the "**Project Loan Mortgage**" and, together with the Building Loan Mortgage, the "**Mortgages**").

5.  In connection with the Building Loan and Project Loan, Guarantor executed in favor of Administrative Agent for the benefit of Lenders a certain Guaranty, a certain Completion Guaranty and, together with Borrower, a certain Environmental Indemnity Agreement, each dated as of the Closing Date (each, a "**Guaranty**", and collectively, the "**Guaranties**").

6.  Pursuant to that certain Omnibus Amendment to Loan Documents dated as of May 1, 2023 among Administrative Agent, Lender, Borrower and Guarantor (the "**First Omnibus Amendment**"), the original Building Loan Mortgage Note was replaced by the Building Loan Note A and the Building Loan Note B (collectively, the "**Building Loan Note**"), as more particularly provided in the First Omnibus Amendment.

7.  Pursuant to the First Omnibus Amendment, the original Project Loan Mortgage Note was replaced by the Project Loan Note A and the Project Loan Note B (collectively, the "**Project Loan Note**" and, together with the Building Loan Note, the "**Note**s" and each, a "**Note**"), as more particularly provided in the First Omnibus Amendment

8.  Second Omnibus Amendment to Loan Documents dated as of May 10, 2024 (the "Second Omnibus Amendment").

9.  Third Omnibus Amendment to Loan Documents dated as of June 5, 2024 (the "Third Omnibus Amendment").

10. Agreement, dated as of April 10, 2025 (the "**Financial Agreement**"),  made and entered by and among  Administrative Agent, Lenders, Borrower, Holdings, Guarantor and, for the specified purposes set forth therein, 356W58 Ground Lessor LLC.

11. The Loan Agreements, the Notes, the Mortgages, the Guaranties, and the Financial Agreement together with the documents included within the definition of Loan Documents (as such term is defined in the Loan Agreement) are collectively referred to as the "Loan Documents".

# EXHIBIT B

## (Escrow Agreement)

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Agreement") is made and entered into as of this 7th day of August, 2025 (the "Effective Date"), by and among PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership, as administrative agent (in such capacity, together with its successors and assigns, "Administrative Agent") for itself and the other lenders from time to time party to the Loan Documents (as such term is defined in that certain Building Loan Agreement, dated as of May 4, 2022, as amended, by and among Borrower, Administrative Agent and the Lenders) (collectively, together with their successors and assigns, "Lenders"), Hudson 1702, LLC and Hudson 1701/1706, LLC, each a Delaware limited liability company (collectively, "Borrower"), CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba, each a natural person (individually and collectively, as the context may require, and jointly and severally, "Guarantor"; and together with Holdings, individually and collectively as the context may require, "Guarantor Parties"), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent (the "Escrow Agent"; and, together with each of Administrative Agent and the Guarantor Parties, each, a "Party").

## RECITALS

WHEREAS, Administrative Agent, Borrower and Guarantor Parties are parties to that certain Settlement and Release Agreement, dated as of the Effective Date (the "Settlement Agreement") (All initial capitalized terms used, but not defined, in this Agreement shall have the meanings set forth in the Settlement Agreement);

WHEREAS, the Settlement Agreement provides *inter alia*, that the Guarantor shall deliver into escrow with the Escrow Agent four (4) executed counterpart signature pages (the "Executed Counterparts"), from Hudson 1705, LLC, a Delaware limited liability company, together with an irrevocable authorization in favor of Administration Agent, in each case in form and substance attached as Exhibit "C" to the Settlement Agreement for Lender's and/or Borrower's attachment to a Waiver of Execution and Subordination to Cure Agreement, and amendments thereto, and that such Executed Counterparts shall be held and disbursed in accordance with the terms hereof;

WHEREAS, pursuant to Section 2(c) of the Settlement Agreement, following Guarantor's delivery of the Executed Counterparts to the Escrow Agent and the delivery of a copy of the Executed Counterparts to the Administrative Agent marked "draft", Administrative Agent shall deposit an amount equal to $4,637,500.00 (the "Escrow Funds") into the escrow account of the Escrow Agent in accordance with the wire instructions attached hereto, and that such escrowed amount shall be held and disbursed in accordance with the terms hereof;

WHEREAS, Escrow Agent is willing to hold and disburse such Executed Counterparts and Escrow Funds pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto hereby agree as follows:

1.    Deposit of Executed Counterparts and Escrow Funds; Appointment of Escrow Agent; Escrow Account.

       (a)      By its execution and delivery of this Agreement to the other Parties, Guarantor hereby agrees that, within two (2) business days of the Effective Date, Guarantor will deliver to Escrow Agent four (4) Executed Counterparts (including, for the avoidance of doubt the irrevocable authorization attached thereto) to be held pursuant to the terms of this Agreement and Guarantor shall also deliver to Lender copies of the Executed Counterparts marked "draft". Upon receipt of the Executed Counterparts, Escrow Agent will send to Guarantor and Administrative Agent by email scanned copies of the documents received by the Escrow Agent (such scanned copies of such documents to be marked "Draft-Not For Use" by the Escrow Agent) to confirm that such documents constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement. Within two (2) business days of receipt of such scanned documents, Administrative Agent will reply to such email and confirm whether or not such documents constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement. If Administrative Agent shall state that such documents do not constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement, Guarantor shall deliver to Escrow Agent four (4) Executed Counterparts (including, for the avoidance of doubt the irrevocable authorization attached thereto) required to be delivered hereunder to be held pursuant to the terms of this Agreement and Guarantor shall also deliver to Lender copies of the Executed Counterparts marked "draft", and the forgoing approval process shall be repeated until Administrative Agent does confirm that the documents delivered to the Escrow Agent the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement.

       (b)      By its execution and delivery of this Agreement to the other Parties, Administrative Agent hereby agrees that, within two (2) business days after Administrative Agent has confirmed that the documents received by the Escrow Agent (and the copies thereof received by the Administrative Agent marked "draft") constitute the Executed Counterparts required to be delivered by the Guarantor to the Escrow Agent pursuant to this Agreement, Lender shall deposit the Escrow Funds into the escrow account of the Escrow Agent in accordance with the wire instructions attached hereto. Such Escrow Funds shall be held pursuant to this Agreement. If Lender does not so deposit the Escrow Funds into such escrow account by such date, the Escrow Agent shall return the Executed Counterparts to the Guarantors. Upon written request by a Party at any time not more than once per month, Escrow Agent shall confirm via email only to all Parties the amount of Escrow Funds then on deposit with Escrow Agent pursuant to this Agreement.

       (c)      Administrative Agent, Lender Borrower, and Guarantor Parties each hereby appoint Escrow Agent as the escrow agent pursuant to the terms of this Agreement and Escrow Agent hereby accepts said appointment pursuant to the express terms, conditions and provisions of this Agreement and agrees to act in accordance with such terms, conditions and provisions of this Agreement with respect to the Escrow.

       (d)      Upon the receipt by Escrow Agent of Borrower's W9, Escrow Agent shall hold the Escrow Funds in a separate escrow account at Bank of America, N.A. (the "Escrow Account"), and shall not commingle the Escrow Funds with any other third-party deposits or its own funds. The Party providing the W9 shall receive a 1099 for the interest regardless of which Party actually receives the interest.

2.      <u>Investment of Escrow Funds</u>. All interest and other amounts earned on the Escrow Funds, or portion thereof, shall be paid to Borrower.

3.      <u>Term</u>.

1622241653.7

(a)     The obligations of Escrow Agent under this Agreement shall terminate on the complete disbursement of the Escrow Funds in accordance with the terms of this Agreement

(b)     Upon the termination of this Agreement, in accordance with this <u>Section 3</u>, Escrow Agent shall be relieved from all duties, obligations, liabilities and responsibilities hereunder other than those that accrued prior to such termination.

4.     <u>Delivery of Executed Counterparts; Disbursement of Escrow Funds</u>.

(a)     <u>Delivery of Executed Counterparts</u>. No later than two (2) business days following deposit of the Escrow Funds with the Escrow Agent, Escrow Agent shall, without any further action by any Party being required, deliver all the Executed Counterparts to Administrative Agent.

(b)     <u>Initial Disbursement of Escrow Funds</u>. Within two (2) business days following delivery of the Executed Counterparts to Lender, a portion of the Escrow Funds equal to $3,000,000.00 shall be disbursed to the Guarantors.

(c)     <u>Disbursement Pursuant to Joint Instructions</u>. If at any time Escrow Agent shall receive (x) a joint written direction signed by Administrative Agent and Guarantor authorizing and directing disbursement of the Escrow Funds or any portion, Escrow Agent shall disburse the Escrow Funds (or such portion thereof) as so directed within one (1) business day of receipt of such joint written direction.

(d)     <u>Disbursement Pursuant to a Claim Notice from Guarantor</u>. If Guarantor is entitled to receive the remainder of the Escrow Funds or a portion thereof pursuant to the Settlement Agreement, Guarantor (in such capacity, the "<u>Requesting Party</u>") may provide written notice to Escrow Agent that Guarantor is entitled to receive the Escrow Funds or a portion thereof pursuant to the Settlement Agreement (such notice the "<u>Claim Notice</u>") and that the Escrow Funds (or portions thereof) be distributed in accordance with the instructions given in such Claim Notice. Escrow Agent shall provide written notice (the "<u>Receipt Notice</u>") to the other Parties (each, a "<u>Confirming Party</u>") of its receipt of such Claim Notice (together with a copy of the Claim Notice) no later than one (1) business day after its receipt of such Claim Notice, provided such written notice may be delivered to the Parties via email in accordance with Section 9(b).

(i)     If any Confirming Party disputes that the Requesting Party is entitled to receive the Escrow Funds or the portion thereof so requested, the Confirming Party shall provide written notice to Escrow Agent within ten (10) business days after its receipt of the Receipt Notice disputing that the Requesting Party is entitled to receive the Escrow Funds (a "<u>Dispute Notice</u>"). For the avoidance of doubt, any delivery of a notice that Guarantor has breached the Settlement Agreement shall be deemed delivery of a Dispute Notice in accordance with this <u>Section 4(d)(i)</u>. If Escrow Agent has not received a Dispute Notice from any Confirming Party within such ten (10) business day period, Escrow Agent shall deliver a second Receipt Notice to the Parties (which second Receipt Notice shall state at the top thereof, in bold and capitalized letters, "EACH PARTY'S FAILURE TO RESPOND TO THIS NOTICE MAY RESULT IN A DEEMED APPROVAL OF DISBURSEMENT OF ESCROW FUNDS") and if each Confirming Party fails to respond to such second Receipt Notice within five (5) business days after receipt of such second Receipt Notice, each Confirming Party shall be deemed to have authorized the disbursement set forth in the Claim Notice, and Escrow Agent shall disburse the Escrow Funds (or the portion thereof so requested) pursuant to the instructions set forth in the Claim Notice. If Escrow Agent receives a Dispute Notice within such ten (10) business day period (or the additional five (5) business day period following delivery of a second Receipt Notice), Escrow Agent shall deliver a copy of such Dispute Notice to each of the other Parties and shall retain the Escrow Funds in the Escrow Account pending receipt of a joint written

3

direction signed by each of Administrative Agent and Guarantor authorizing the disbursement of the Escrow Funds, or a copy of a final decision of an arbitrator or final unappealable order of a court of competent jurisdiction with respect to distribution of the Escrow Funds. Notwithstanding the foregoing, if Escrow Agent receives contrary written directions from Administrative Agent or Guarantor or no written directions by the Termination Date, Escrow Agent shall have the right to deposit the Escrow Funds with any court of competent jurisdiction in New York and interplead Administrative Agent and Guarantor. Upon depositing the Escrow Funds and filing its complaint in interpleader, Escrow Agent shall be released from all liability under this Agreement regarding the Escrow Funds, except as otherwise expressly provided in this Agreement.

5.    Escrow Fees. All fees, costs and expenses of the Escrow Agent with respect to the escrow established pursuant to this Agreement (if any, the "Escrow Fees") shall be shared equally between Administrative Agent and Guarantor. All such Escrow Fees shall be due and payable upon the initial deposit of any Escrow Funds with Escrow Agent pursuant to this Agreement. Escrow Agent's fee is $1,500.

6.    Compliance with Court Orders. Each of the Parties hereby acknowledges that Escrow Agent may accept, obey and comply with any and all writs, orders, judgments or decrees issued or entered by any court with or without jurisdiction (a "Court Order"), in which case, notwithstanding anything to the contrary in this Agreement, Escrow Agent shall not be liable to any Party by reason of such acceptance, obedience or compliance, regardless of whether such Court Order is subsequently reversed, modified, annulled, set aside or vacated.

7.    Release and Indemnification.

(a)    The Parties hereby release Escrow Agent and its officers, managers, employees and agents (each, an "Escrow Agent Party"), for any liability, damage, loss, cost or expense incurred by such Escrow Agent Party to the extent resulting from (i) any action taken or not taken in good faith upon advice of Escrow Agent's counsel given with respect to any questions relating to its obligations under this Agreement, or (ii) any action taken or not taken in reliance upon any document, including any written notice provided to Escrow Agent pursuant to this Agreement, as to the due execution and the validity and effectiveness of such document, and the truth and accuracy of any information contained therein, which such Escrow Agent Party in good faith believes to be genuine, to have been signed or presented by a duly authorized person or persons and to comply with the terms of the Settlement Agreement and this Agreement, except to the extent resulting from the gross negligence, willful default or intentional misconduct by any Escrow Agent Party. Administrative Agent, Borrower, Holdings and Guarantor, jointly and severally, shall indemnify and hold harmless any Escrow Agent Party against any liability, damage, loss, cost or expense, including, without limitation, reasonable attorneys' fees and court costs, incurred by such Escrow Agent Party to the extent resulting from the performance by any Escrow Agent Party of Escrow Agent's obligations under this Agreement, except to the extent resulting from the gross negligence, willful default or intentional misconduct by such Escrow Agent Party.

(b)    It is agreed by and among the Parties that:

(i)    the duties of Escrow Agent are only as herein specifically provided and are purely ministerial in nature, and Escrow Agent shall incur no liability whatever except for willful misconduct (including, without limitation, willful disregard of the terms of this Agreement) or gross negligence, as long as Escrow Agent has acted in good faith;

(ii)    in the performance of its duties hereunder, Escrow Agent shall be entitled to rely upon any document, instrument or signature believed by it to be genuine and signed by Landlord, Tenant or their respective successors;

4

(iii)    Escrow Agent may assume that any person on behalf of any Party purporting to give any notice of instructions in accordance with the provisions hereof has been duly authorized to do so;

(iv)    Escrow Agent shall not be bound by any modification, cancellation or rescission of this Agreement unless in writing and signed by it and the Parties;

(v)    Escrow Agent is acting as a stake-holder only with respect to the Escrow. Upon making delivery of all of the Escrow in the manner provided in this Agreement, Escrow Agent shall have no further liability hereunder, except from any claims arising out of the gross negligence or willful misconduct (including, without limitation, willful disregard of the terms of this Agreement) by Escrow Agent in the performance of its duties hereunder.

(c)    By execution of this Agreement, Escrow Agent hereby acknowledges and agrees that notwithstanding anything to the contrary contained in this Agreement, Escrow Agent shall not release any Escrow Funds except in accordance with the express provisions of this Agreement.

(d)    In addition to any other indemnification of Escrow Agent contained herein, in the event that Escrow Agent incurs any actual, third-party out-of-pocket costs or expenses hereunder, including, without limitation, costs of Escrow Agent, then Escrow Agent shall be entitled to reimbursement for such costs from the Tenant Parties within thirty (30) days after receipt of demand from Escrow Agent (provided that Escrow Agent shall provide the Tenant Parties copies of bills, invoices, receipts or other documentation that evidences the reimbursement amount).

8.    _Relationship of Parties_. Administrative Agent and Guarantor Parties acknowledge and agree that Escrow Agent is acting solely as a stakeholder at their request, and that Escrow Agent shall not be deemed to be the agent of any of Administrative Agent or any Guarantor Party.

9.    _Notices_.  Except as otherwise provided for herein, all notices, approvals, consents and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given or sent (a) upon the date delivered, if delivered by hand, or (b) upon the date of delivery, if delivered by electronic mail (provided that, within three (3) business days after delivery by electronic mail, the Party delivering the notice sends a copy of such notice by at least one other method of delivery set forth in this paragraph), or (c) one (1) business day after deposit with a nationally recognized overnight courier service with next business day delivery specified and requires delivery confirmation, in each case to the party intended at its address as follows (or at such other address as may hereafter be specified by such party from time to time by like notice):

If to Administrative Agent or Lender:

Parkview Financial REIT, LP
11440 San Vicente Boulevard, 2nd Floor
Los Angeles, CA 90049
Attention: Paul Rahimian and Ted Jung
Email: paul@parkviewfinancial.com
          ted@ parkviewfinancial.com

With a copy to:          DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Attention: Neal E. Kronley, Esq.

1622241653.7

E-mail: Neal.Kronley@us.dlapiper.com

| | |
|---|---|
| If to Borrower: | Hudson 1702, LLC<br>Hudson1701/1706,LLC<br>c/o Parkview Financial REIT, LP<br>11440 San Vicente Boulevard, 2nd Floor<br>Los Angeles, CA 90049<br>Attention: Paul Rahimian and Ted Jung<br>Email: paul@parkviewfinancial.com<br>        ted@ parkviewfinancial.com |
| With a copy to: | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 27th Floor<br>New York, New York 10020<br>Attention: Neal E. Kronley, Esq.<br>E-mail: Neal.Kronley@us.dlapiper.com |
| If to Holdings: | CSC Hudson LLC<br>459 Columbus Avenue, Unit #1082<br>New York, New York 10024<br>Attention: Alberto Smeke Saba and Salomon Smeke Saba<br>Email: as@cscre.us and ss@cscre.us |
| With a copy to: | Vedder Price P.C.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Attention: Robert Salame, Esq.<br>Email: rsalame@vedderprice.com |
| If to Guarantor: | Alberto Smeke Saba<br>Salomon Smeke Saba<br>459 Columbus Avenue, Unit #1082<br>New York, New York 10024<br>Attention: Alberto Smeke Saba and Salomon Smeke Saba<br>Email: as@cscre.us and ss@cscre.us |
| With a copy to: | Vedder Price P.C.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Attention: Robert Salame, Esq.<br>Email: rsalame@vedderprice.com |
| If to Escrow Agent: | First American Title Insurance Company<br>666 Third Avenue<br>New York, NY 10017<br>Attention: Andrew Jaeger<br>Email: ajaeger@firstam.com<br>Tel: 212-551-9433<br>Reference Number: 1272624 |

6

The giving of any notice required hereunder may be waived in writing by the Party entitled to receive such notice. No failure or delay in the routing of any such notice, demand, request, consent, approval, declaration or other communication within any organization to the individual designated to receive the same or a copy thereof shall in any way qualify the effectiveness of such notice, demand, request, consent, approval, declaration or other communication.

10.     Assignment. None of Administrative Agent, Borrower, Holdings or Guarantor shall assign any of its rights, or delegate any of its obligations, in this Agreement, without the prior written consent of the other Party. Escrow Agent shall not, directly or indirectly, assign any of its rights, or delegate any of its obligations, in this Agreement, without the prior written consent of each other Party hereto.

11.     Successors and Assigns; Third Party Beneficiaries. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns pursuant to this Section 11. This Agreement shall not confer any rights or remedies upon any Person other than the Parties any their respective successors and permitted assigns pursuant to Section 11.

12.     Conflict with Settlement Agreement. If any of the terms or provisions of this Agreement conflict with, or are inconsistent with, any terms or provisions of the Settlement Agreement, the terms and provisions of this Agreement shall control.

13.     Governing Law; Severability. This Agreement shall be governed by the laws of the State of New York. If any term or provision of this Agreement is held to be or rendered invalid or unenforceable at any time in any jurisdiction, such term or provision shall not affect the validity or enforceability of any other terms or provisions of this Agreement, or the validity or enforceability of such affected terms or provisions at any other time or in any other jurisdiction.

14.     Jurisdiction; Venue. Any litigation or other court action regarding this Agreement shall be conducted in the New York State Supreme Court in New York County or the United States District Court for the Southern District of New York, in the State of New York, and each Party hereby submits to jurisdiction and consents to venue in such courts.

15.     Waiver of Trial by Jury. Each Party hereby waives its right to a trial by jury in any action or proceeding by any Party against any other Party with respect to any matter arising from or in connection with this Agreement.

16.     Prevailing Party. If any litigation or other court action, arbitration or similar adjudicatory proceeding is undertaken by any Party to enforce its rights under this Agreement, all fees, costs and expenses, including, without limitation, reasonable attorneys' fees and court costs, of the prevailing Party in such action, suit or proceeding shall be reimbursed or paid by the Party against whose interest the judgment or decision is rendered. This Section 16 shall survive the termination of this Agreement. This Section 16 shall not apply to Escrow Agent.

17.     Recitals. The recitals to this Agreement are incorporated herein by such reference and made a part of this Agreement.

18.     Entire Agreement; Amendments to Agreement. This Agreement sets forth the entire understanding and agreement of the Parties hereto, and shall supersede any other agreements and understandings (written or oral) between or among the Parties on or prior to the date of this Agreement with respect to the transaction contemplated in this Agreement. No amendment or modification to any terms of this Agreement, waiver of any covenant, obligation, breach or default under this Agreement or termination of this Agreement (other

7

than as expressly provided in this Agreement), shall be valid unless in writing and executed and delivered by each of the Parties.

19.    <u>PDF; Counterparts</u>. A Party may deliver executed signature pages to this Agreement by e-mail transmission of a PDF file containing such pages to any other Parties, which PDF copy shall be deemed to be an original executed signature page. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one agreement with the same effect as if the Parties had signed the same signature page.

*[Remainder of page intentionally left blank;*
*signatures on following pages.]*

1622241653.7

IN WITNESS WHEREOF, Administrative Agent, Borrower, Holdings. Guarantor and Escrow Agent have caused this Agreement to be executed and delivered in their names by their respective duly authorized officers or representatives as of the Effective Date.

ADMINISTRATIVE AGENT:
PARKVIEW FINANCIAL REIT, LP,
a Delaware limited partnership

By:    Parkview Financial Fund GP, Inc.,
       a California corporation,
       its general partner

By: _____
Name:    Ted Jung
Title:    Chief Credit Officer

BORROWER:

HUDSON 1702, LLC,
a Delaware limited liability company

By:_____
Name:    Ted Jung
Title:    Authorized Signatory

HUDSON 1701/1706, LLC,
a Delaware limited liability company

By:_____
Name:    Ted Jung
Title:    Authorized Signatory

HOLDINGS:

CSC HUDSON LLC,
a Delaware limited liability company


By_____
   Name:
   Title:


GUARANTORS:


_____
ALBERTO SMEKE SABA


_____
SALOMON SMEKE SABA

10

ESCROW AGENT:

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____
        Name:
        Title:

1622241653.7

**Exhibit A**

**Wire Instructions**

\

.



First American Title Insurance
Company National Commercial
Services
666 Third Avenue, 5th Floor
New York, NY 10017

# INCOMING WIRE INSTRUCTIONS

BENEFICIARY NAME:      First American Title Insurance Company National Commercial Services
BENEFICIARY ADDRESS: 666 Third Avenue, 5th Floor, New York, NY 10017
BANK NAME:                    First American Trust-Santa Ana
ADDRESS:                        5 First American Way, Santa Ana, CA 92707
BANK ACCOUNT NO.:      3023140000
ROUTING NUMBER:         122241255
SWIFT Code:                    FATUUS66

PLEASE REFERENCE THE FOLLOWING:
PROPERTY:                      Hudson Hotel,  New York, NY
FILE NUMBER:                 3020-1272624 ()

## Failure to reference all of the above information may result in a delay of your funds being applied to your file.

**PLEASE NOTE:** With cybercrimes on the increase, it is important to be ever vigilant. If you receive an e-mail or any other communication that appears to be generated from a First American employee that contains new, revised or altered bank wire instructions, consider it suspect and call our office at a number you trust. Our bank wire instructions rarely change.

**If funds are coming from other than buyer, seller or Lender please contact your Escrow Officer before remitting for additional requirements**

**ACH Transfers are NOT wire transfers:** An ACH transfer is not immediately available funds and requires additional time for clearance. An ACH transfer cannot be confirmed for earnest money, additional funds due in connection with your transaction or closing funds until the ten business day clearance period has expired. The acceptance of ACH transfers is subject to state law.

Contact our office at ,  before remitting such a transfer for more details.

Contact our office at ,  when funds are sent.

**In the event funds are received after 2:30 PM (Pacific Time), we cannot guarantee funding by close of business that day. The Company will not be responsible for additional interest, penalties, fees, or charges that may be due.**

## EXHIBIT C

### (Form of Executed Counterparts)

The undersigned hereby irrevocably authorizes each of Parkview Financial REIT, LP ("Administrative Agent"), Hudson 1702, LLC and Hudson 1701/1706, LLC (collectively, "Borrower') and their respective affiliates, members, partners, officers, employees and agents to submit the attached signed counterparts to a Waiver of Execution and Subordination to Cure Agreement New York City Department of Housing Preservation and Development ("HPD"), HPD's Inclusionary Housing Unit, the New York City Department of Buildings and any other applicable authority in connection with the entry into a Cure Agreement, and any amendments thereto,  in such form as the Administrative Agent and/or Borrower may approve (including, for the avoidance of doubt, revisions to plans to be submitted with such Cure Agreement as Administrative Agent and or Borrower may approve, and the undersigned  hereby consents in advance to any such revisions to the Cure Agreement or to such plans and to the submission thereof).

The undersigned hereby agrees that it will not sell, assign or otherwise transfer any interest in any condominium unit in the Property unless it shall obtain from such transferee and deliver to Administrative Agent four counterparts of the attached signature page, together with an authorization in the form set forth above, in each case duly signed and notarized by such transferee.

Hudson 1705, LLC

By:_____
Name:
Title:

Case 25-11853-KBO   Doc 122-1   Filed 12/05/25   Page 27 of 28

**IN WITNESS WHEREOF,** [Unit Owner/Lessee/Mortgagee] has duly executed this Waiver and Subordination as of the date and year first above written.

**[UNIT OWNER/LESSEE/MORTGAGEE]**

By: _____
Name:
Title:

STATE OF NEW YORK   )
                         ) ss.:
COUNTY OF _____ )

On the ___ day of _____, 2024 before me, the undersigned, a notary public in and for said state, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

1622119782.13                    13

**EXHIBIT D**

**(Existing Obligations)**

| Contractor | Lien Amount | Draw 3 & 5 Balance | Settlement | Notes |
|---|---|---|---|---|
| Elysium (GC + Fee) | $5,028,110.80 | | $150,000 | Previously communicated they would remove all liens for GC |
| CMBM | $273,402.79 | | $0 | Funded to Elysium for payment to CMBM; Elysium never paid. |
| Dolcinium | $67,514.48 | | $67,514 | Full lien amount |
| Dolcinium | $86,000.00 | $85,500.00 | $86,000 | Full lien amount |
| The Square | $166,680.17 | | $34,796 | Amount currently owed |
| Tritech | $653,691.68 | | $653,692 | Full lien amount |
| Nouveau Elevators | $1,310,488.92 | | $1,225,053 | Settlement Amount |
| Gilbar | $166,783.88 | | $166,784 | Full lien amount |
| G&T | $528,215.63 | $282,000.00 | $200,000 | CSC obligation - agree or go through legal to remove |
| Jackson Lewis | | $240,000.00 | $0 | CSC obligation - no claim |
| Rosenburg & Estis | | $87,500.00 | $0 | CSC obligation - no claim |
| Cole Shotz | | $200,000.00 | $0 | CSC obligation - no claim |
| AES | $204,375.71 | | $109,196 | Remaining Balance |
| Ward Stategies | | $1,700,000.00 | $800,000 | Settlement Amount |
| Bhuber | | $50,000.00 | | CSC obligation - no claim |
| **TOTAL:** | **$8,485,264.06** | **$2,645,000.00** | **$3,493,035.46** | |

| | |
|---|---|
| Balance funded to Elysium | $454,556.55 |
| Lien Escrow Balance | $227,243 |
| **Total New Fund Remaining:** | **$2,811,236** |
| | $3,000,000 |