# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706, LLC, et al., | Case No. 25-11853 (KBO) |
| Debtors. | (Joint Administration) |
| | **Related Docket No. 99** |

**OBJECTION BY ALBERTO SMEKE SABA AND SALOMON SMEKE SABA TO DEBTORS' APPLICATION TO EMPLOY DLA PIPER LLP (US) AS SPECIAL COUNSEL, EFFECTIVE AS OF THE PETITION DATE**

Alberto Smeke Saba and Salomon Smeke Saba (collectively, the "Smekes"), by and through their undersigned counsel, object (this "Objection") to the Debtors'[1] application to employ DLA Piper LLP (US) ("DLA") as special counsel to the Debtors effective as of the Petition Date [D.I. 99] (the "Application"), and state as follows:

**A.    Conflicts of Interest**

1.    Despite representing pre-petition (a) Parkview Financial REIT, LP ("Parkview"), the Debtors' prepetition lender (and now their DIP financing lender) and 100% owner of the Debtors' sole managing member, PV Hudson LLC ("PV Hudson"), (b) PV Hudson,[2] and (c) Parkview Financial LLC, an affiliate of Parkview and, on information and belief, an alternative asset manager that specializes in commercial real estate ("PFL"),[3] DLA seeks to represent the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Application.

[2] DLA does not disclose in its Application that it represented Hudson prepetition and only on Tuesday, December 2nd did DLA/Hudson "transfer" post-petition that representation to Hogan Lovells pursuant to an amended Notice of Appearance filed with the Court in these Chapter 11 Cases [D.I. 111]. On information and belief, we believe this transfer resulted from communications with the Office of United States Trustee.

[3] DLA fails to describe in its Application the relationships between PFL, Parkview and the Debtors and if DLA still represents PFL in these Chapter 11 Cases.

Debtors post-petition as "*special corporate and litigation counsel*." However, such apparent conflicts, supplemented by the overlapping scope of post-petition work between Debtors' primary bankruptcy counsel, Chipman, Brown, Cicero & Cole LLP ("Chipman"), and DLA, do not support DLA's retention as special counsel to the Debtors as requested, and accordingly such relief should be denied.

2. As acknowledged in their Application, DLA represented Parkview for well over a year prior to the Petition Date, including in respect of the same real property, the building thereon, the ground lease thereunder, and building loan therefor (collectively, the "Property"). In fact, DLA continues to represent the Debtors using the same attorneys and paraprofessionals that represented Parkview prepetition in respect of the Property. How does such overlap of working knowledge and confidential information ensure DLA's enforcement of the Debtors' fiduciary duties to creditors other than Parkview, including in respect of the Debtors' vendors, mechanics lienholders and the Smekes?

3. Furthermore, DLA (including attorneys now representing the Debtors) represented Parkview in connection that certain Settlement and Release Agreement, dates as of August 7, 2025 (the "Settlement Agreement") and the related Escrow Agreement (as defined in the Settlement Agreement) involving the Smekes.[4] Pursuant to Section 3 of the Settlement Agreement, the Smekes are contractually entitled to fifty percent (50%) of all savings arising from negotiated settlements with the third parties listed on Exhibit D thereto, including, without limitation, Elysium. DLA (including attorneys now representing the Debtors) directly communicated proposed settlement terms with Elysium on behalf of both the Debtors and Parkview, terms which

---

[4] Attached hereto as **Exhibit A** are copies of the Settlement Agreement and Escrow Agreement (attached as Exhibit B to the Settlement Agreement).

the Smekes were able to secure. Yet now, under the guise of acting as proposed special corporate and litigation counsel to the Debtors, DLA has taken the position that it must "*evaluate*" Elysium's claim as though this analysis has not already been performed by DLA itself days earlier. Compounding this, DLA recently sought on behalf of the Debtors new DIP financing from Parkview that seeks to take priority over the Elysium's mechanic's lien (i.e., a Permitted Lien), rather than honoring the previously negotiated settlement with Elysium that would have resolved that lien for approximately 4% of the lien amount.[5]

4. These and other concerns are further supported by the fact that in its Application DLA seeks, among other things, authority now to potentially also represent <u>Parkview</u> in the future for "***matters related to the Debtors.***" While it asserts that an internal ethical wall can address such direct conflict, nowhere in its Application does DLA consider the prior review and approval by the Office of the US Trustee, including, without limitation, how such wall will be structured and implemented so as to overcome this otherwise direct conflict.[6]

**B.  Duplicate Scope of Work**

5. With respect to the proposed scope of DLA's legal services, there is concern regarding the overlap of such services with Debtors' proposed primary bankruptcy counsel. In both of their applications filed with this Court, each firm includes descriptions relating to, among other things, "*plan formulations, negotiations and confirmation matters,*" "*real estate matters*" and "*management of their properties,*" and "*litigation matters*" and "*litigation and other issues.*" *Compare*, for example, Application ¶14 *with* Chipman application, ¶10. Given the foregoing,

---

[5] <u>See</u> Smekes Limited Objection To Proposed Final DIP Financing Order filed with the Court concurrently herewith.

[6] That DLA even requests such relief shows that it has not truly separated itself from its long-time representation of Parkview and its affiliates.

3

when compared to the size of the legal budget approved in connection with the interim DIP financing order, attention to the actual services rendered should be made to ensure no duplication.

6. Finally, DLA's proposed legal services appear much broader than the scope of legal services historically granted to special counsel, and this Court should not allow DLA's "*historical familiarity*" to blur that scope of retention line.

**WHEREFORE**, for the foregoing reasons, the Smekes respectfully request that the Court enter an order sustaining this Objection, and granting such further relief as may be just and proper.

| | |
|---|---|
| December 5, 2025<br>Wilmington, Delaware | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ Matthew P. Ward*<br>Matthew P. Ward, Esq. (Del. Bar No. 4471)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile:  (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br><br>-and-<br><br>**VEDDER PRICE P.C.**<br>Michael L. Schein, Esq. (pending *pro hac vice*)<br>Robert Salame, Esq.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Telephone: (212) 407-7700<br>Facsimile:  (212) 407-7799<br>Email: mschein@vedderprice.com<br>          rsalame@vedderprice.com<br><br>*Counsel to Alberto Smeke Saba and Salomon Smeke Saba* |