**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706 LLC, | Case No. 25-11853 (KBO) |
| Debtors.[1] | (Jointly Administered) |

**356W58 GROUND LESSOR LLC'S OBJECTION AND**
**RESERVATION OF RIGHTS TO THE MOTION OF THE DEBTORS FOR ENTRY OF**
**A FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION**
**FINANCING AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING**
**ADEQUATE PROTECTION TO PREPETITION LENDER; (III) MODIFYING**
**THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING**
**AND (V) GRANTING RELATED RELIEF**

356W58 Ground Lessor LLC ("356W58"), through its undersigned counsel, respectfully submits this limited objection and reservation of rights (this "Objection") to the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [Docket No. 56] (the "DIP Motion") and in support thereof respectfully states as follows:

**PRELIMINARY STATEMENT**[2]

1.    The Debtors commenced these chapter 11 cases without any meaningful dialogue with 356W58, their landlord, and little has changed in the 43 days that these cases have been pending.  What the Debtors have communicated, through the Extension Motion and the DIP

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

[2] Terms utilized but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the body of this Objection or in paragraph 46 of the Interim Order.

Motion, is that they intend to have 356W58 finance these cases by not paying rent due under the Ground Lease.  At the same time, the Debtors propose to roll-up potentially $32 million in pre-petition debt, allow liens on potentially valuable causes of action, and waive rights under section 506(c) and 552(b) to the DIP Lender—an insider of the Debtors.

2.      356W58 has serious concerns regarding the direction of these cases.  Despite budgeting for the payment of rent during the administration of these cases, Debtors immediately sought to delay payment, their single largest monthly obligation.[3]  For the Debtors to budget the payment of rent and taxes in the DIP Budget and not pay the same during the Interim Period appears to be a classic "bait and switch," which is particularly disappointing given that 356W58 refrained from objecting to the Interim Order so as to not needlessly divert estate resources.  This— along with the Debtors' numerous and continuing breaches of the Lease—has left 356W58 doubtful that the Debtors can and will successfully reorganize.

3.      While 356W58 has been and remains open and willing to discuss a reasonable path for the Debtors to complete construction and exit this bankruptcy, the terms of the Final Order are inappropriate and unreasonable—the Debtors fail to pay the administrative cost of the case while simultaneously burdening their estates by rolling up prepetition debt to an insider lender for budgeted amounts that they do not actually pay.  If Debtors wish to present a reasonable alternative, 356W58 remains ready to engage.  In the absence of such a proposal, the DIP Motion must be denied.

---

[3] The Debtors requested that 356W58 consent to a § 365(d)(3) extension and 356W58 declined to impair itself further for the benefit of the DIP Lender.  356W58 believes there is no cause to grant an extension given that the DIP will be fully funded and the Debtors are able to—and should—pay rent.

# BACKGROUND

## A.  *Relationship Between Debtors and 356W58*

4.      On May 4, 2022, Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "Debtors"), as tenants, and 356W58, as landlord, entered into the Lease for certain premises located at 353 West 57th Street in New York, New York for a period of 99 years (the "Lease").

5.      Under the Lease, the Debtors were obligated to construct and complete an agreed upon project at the premises (the "Construction Project").  The initial Construction Project was the conversion of the Leased Premises from a hotel into approximately 400 residential units to be rented at market rates. The Debtors were required to substantially complete the initial project on or before May 4, 2024.

6.      Before commencing certain work comprising the Construction Project, Debtors were required by law to obtain a Certificate of No Harassment from the New York City Department of Housing Preservation and Development ("HPD") verifying that no tenant harassment occurred at the subject property during a prescribed look-back period—or an exemption therefrom (the "CONH Requirement").[4]  Following receipt of certain HPD notices dated July 1, 2022, and September 25, 2023, it became apparent that Debtors could not satisfy the CONH Requirement, effectively nullifying their ability to legally pursue the initial Construction Project.[5]  Debtors thus elected, pursuant to the Lease, to submit a Fallback Business Plan (which 356W58 could approve or deny in its sole and absolute discretion) in order to pursue a Fallback Project, but such plans were significantly deficient and thus rejected.

---

[4] "[I]n order for Tenant to achieve Substantial Completion of the [initial Construction Project] in accordance with Legal Requirements, Tenant must (i) satisfy the CONH Requirement with respect to the entire Leased Premises[.]" Lease at § 49.

[5] Lease at § 21(d).

7.      Successor Tenant on behalf of the Debtors was permitted to submit a replacement Fallback Business Plan to 356W58 for its approval by October 23, 2025. On October 22, 2025—the day before the Debtors were required to provide 356W58 with a Fallback Business Plan—the Debtors instead filed for bankruptcy. Debtors submitted an interim Fallback Business Plan post-petition that did not meet the standards required by the Lease and was thus not acceptable, and the Construction Project is woefully incomplete.

### B.  Bankruptcy Case Procedural History

8.      On October 22, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are authorized to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On November 25, 2025, the Office of the United States Trustee for the District of Delaware appointed the Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases. The Committee is comprised of three members, including 356W58.[6]

10.     On November 12, 2025, the Debtors filed the DIP Motion, seeking approval to borrow over $32 million (the "DIP Financing"). On November 17, 2025, the Court entered an Order [D.I. 82] approving the DIP Motion on an interim basis (the "Interim Order"). Attached as Exhibit 2 to the Interim Order is a 3-month budget (the "DIP Budget").

11.     Pursuant to the Interim Order, the Debtors sought and were granted authority to borrow up to $12,270,387 (the "Interim Amount"), for use from November 3, 2025, to December

---

[6] For the avoidance of doubt, the instant Objection is brought on behalf of 356W58 in its individual capacity, not in its capacity as a Committee member.

15, 2025 (the "Interim Period"). The Debtors sought and were granted authority to "roll up" the entirety of the Interim Amount regardless of whether the Interim Amount was actually spent during the Interim Period. The Debtors further sought and were granted liens and priming liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on and against substantially all of the Debtors' assets (the "DIP Liens").

12.      Significantly, under the DIP Budget, the Debtors proposed to use $1,458,333 of the Interim Amount for the payment of rent and $3,145,415 for the payment of property taxes. *See* DIP Budget.

13.      However, rather than use any of the Interim Amount for these purposes, on November 20, 2025, the Debtors filed the *Debtors' Motion for Extension of Time for Performance of Obligations Under Ground Lease Pursuant to Bankruptcy Code Section 365(d)(3)* [D.I. 94] (the "Extension Motion") seeking to further postpone obligations under the Lease including payment of rent.

14.      The Debtors now seek entry of a final order (the "Final Order,") seeking authority to borrow up to $20,491,717,[7] of which $729,167 is proposed to be used for the payment of rent and $2,895,382 is to be used for the payment of property taxes. *See* DIP Budget.

15.      The hearing on the Final Order is scheduled for December 12, 2025 at 10:00 A.M. (ET).

## OBJECTION AND RESERVATION OF RIGHTS

16.      Where proposed debtor-in-possession financing is to be provided by an insider, a bankruptcy court must subject the proposed financing to "rigorous scrutiny," and a debtor must

---

[7] Although the Debtors seek ***authority*** to borrow up to $20,491,717, the Budget appears to reflect additional expenditures and ***use*** of only $8,161,807.

show the "entire fairness" of the proposed transaction.  *See In re LATAM Airlines Gp. S.A.*, 620 B.R. 722, 731, 771 (Bankr. S.D.N.Y. 2020) (requiring Debtor to meet entire fairness test to acquire debtor-in-possession financing from an insider); *see e.g. In re Winstar Commc'ns., Inc.*, 554 F.3d 382, 412 (3d Cir. 2009) (stating that a claim "arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts") (citation and internal quotation marks omitted); *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holdings Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D. Pa. 1997) ("insider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein."), *aff'd*, 160 F.3d 982 (3d Cir. 1998).  In other words, postpetition financing should be approved only if "the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."  *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

17.     Here, the proposed DIP Financing should be subjected to rigorous scrutiny because Parkview Financial REIT, the Debtors' ultimate parent, is the lender (the "<u>DIP Lender</u>" or "<u>Parkview</u>").  The Debtors have not provided sufficient evidence that the terms of the insider-DIP Financing is in the best interest of the estate and its general unsecured creditors.  In fact, in the proposed Final Order, the Debtors would deliver Parkview every conceivable protection while leaving the general unsecured creditors to bear the risk of administrative insolvency.

18.     The harm inherent in this structure already has prejudiced 356W58: while Parkview has "rolled up" $1,458,333 of its prepetition debt budgeted for ground rent during the Interim Period, 356W58 has not been paid its rent.  Given the setbacks—both historic and during the pendency of this bankruptcy—and the increased risk if the Debtors are not ultimately successful

at reorganizing, 356W58 is concerned that the Final Order places too much risk on the general unsecured claimants instead of on Parkview, for whose benefit this bankruptcy is being run.

19.     In order to protect against continuing or additional harm, 356W58 objects to several discrete provisions as inappropriate under the circumstances.

20.     **First**, Debtors should not be permitted to "roll up" any budgeted amounts that are not actually paid during this bankruptcy.[8]  Doing so would provide a windfall benefit to the insider-Lender, with no corresponding benefit to the Debtors' estates and creditors.

21.     **Second**, an early termination fee is inappropriate.  The DIP Lender is the Debtors' ultimate parent and, as an insider, should not be granted an additional fee if its wholly owned subsidiary repays the loan early.[9]

22.     **Third**, 356W58 objects to waivers of: (i) the Debtors' right to surcharge for the costs and expenses associated with the preservation and disposition of collateral under section 506(c); (ii) the power of the Court to prevent prepetition liens to extend to post-petition proceeds of collateral "based on the equities of the case"; and (iii) the marshalling doctrine.

23.     A section 506(c) waiver serves no purpose other than to eliminate a potential avenue of recovery for the Debtors' estates by ensuring that the costs of the Debtors' restructuring will be borne by the unsecured creditors alone.  A chapter 11 case should not be administered for the sole benefit of secured lenders.  *See, e.g., In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992) (prohibiting "convert[ing] the bankruptcy process from one designed to benefit all creditors to one designed for unwarranted benefit of the postpetition lender"); *see also*

---

[8] It is unclear how much the Debtors are actually seeking to roll up in this case.  Debtors have sought authority to borrow up to $32,762,104, but the DIP Budget details expenses of only $21,002,251.  It is unclear how the additional $11.7 million in authorized borrowings is proposed to be used or treated and should certainly not be "rolled up" under the circumstances.

[9] 356W58 reserves all rights to further challenge the propriety of the DIP Lender acting as prepetition lender, postpetition lender, and ultimate parent.

*In re Sun Runner Marine, Inc.*, 945 F.2d 1089, 1093 (9th Cir. 1991) (prohibiting benefiting a lender at the expense of the other unsecured creditors); *In re Ames Dep't. Stores*, 115 B.R. at 39 ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.").

24.    Unsecured creditors should not bear the cost of preserving value for a secured creditor's collateral. *See In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs."). Here, a section 506(c) waiver is particularly inappropriate because (1) the Debtors already have failed to pay rent in the Budget and (2) there is a genuine risk that the Debtors are or will become administratively insolvent, leaving 356W58, among other administrative priority creditors, to bear the cost of a case solely run for Parkview's benefit. *See, e.g., Hartford Fire Ins. Co. v. Bank Minn (In re Lockewood Corp.)*, 223 B.R. 170, 176 (B.A.P 8th Cir. 1998) (holding that provision in financing order purporting to shield the post-petition lender from surcharges under section 506(c) was unenforceable); *In re Colad Group, Inc.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) (refusing to approve post-petition financing agreement to the extent that the agreement purported to modify statutory rights and obligations created by the Bankruptcy Code by prohibiting any surcharge of collateral under section 506(c)).[10]

25.    Debtors have provided no assurance that they can or will pay even the monies specifically provided for in the DIP Budget demonstrated by their decision to immediately not pay

---

[10] *See also In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (MWF) (Bankr. D. Del. May 3, 2016) [D.I. No. 1699] (denying requests for section 506(c) waiver; "[n]othing in this Final Order shall limit the rights [of] . . . any creditor or other party-in-interest with respect to surcharge of collateral pursuant to section 506( c) of the Bankruptcy Code or to assert any defenses to any such claim.").

the budgeted for "Ground Rent."  Where the Debtors have failed to pay budgeted expenses and their insider-Lender nonetheless wants the benefit of an extensive roll up, there is no justification for a section 506(c) waiver or other offensive aspects of the proposed financing.

26.     Additionally, a blanket section 552(b) waiver is inappropriate because the Court is not, at this early stage of the case, in a position to determine what the "equities of the case" may be or assess the impact of the elimination of such a remedy.  *See In re Terrestar Networks, Inc.*, 457 B.R. 254, 272–73 (Bankr. S.D.N.Y 2011) (denying request for 552(b) waiver as premature because factual record was not fully developed); *In re Metaldyne Corp.*, No. 09-13412, 2009 Bankr. LEXIS 1533, at *20 (Bankr. S.D.N.Y. June 23, 2009) ("the Court, in its discretion, declines to waive prospectively an argument that other parties in interest may make. If, in the event, the Committee or any other party interest argues that the equities of the case exception should apply to curtail a particular lenders' rights, the Court will consider it.").  Finally, given that no parties have begun investigating the financials in this case, it is unfair at this time for a marshalling waiver to be included in the Final Order.

27.     ***Fourth***, the proposed releases are inappropriate.  Paragraph 46 of the Interim Order, subject to entry of the Final Order, grants broad general releases to the DIP Lender together with its "respective affiliates" and each of its "respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof" for any claims in any way related to the "DIP Facility, the DIP Loan Documents, the DIP Liens, the DIP Obligations, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Secured Obligations, and/or the transactions contemplated hereunder or thereunder . . . ."  Interim Order at

¶ 46.  The proposed releases appear to release parties the Debtors have not identified (*i.e.* parents, affiliates, agents, officers) and are not limited to specific roles that parties may have played. Moreover, these releases cover potentially hundreds or thousands of individuals or entities that have no right to any such releases.  Under the circumstances—and particularly because the DIP Lender and the Debtors are affiliated or related entities—the scope of the releases should not extend to any parties other than the DIP Lender or to any activities beyond providing financing to the Debtors.  Accordingly, 356W58 submits that the releases should be limited solely to the DIP Lender and relate solely to its role as the DIP Lender.

28.     356W58 has been clear with the Debtors from the start: 356W58 would prefer not to seek to terminate the Lease and repossess the Leased Premises at this time.  Instead, it would prefer that the Debtors fulfill their contractual obligations, make the payments set forth in the DIP Budget, and work towards the completion of the Construction Project.  However, 356W58 is not willing to have the Debtors and insider-DIP Lender unreasonably burden the estate—especially in light of the Construction Project setbacks to date.  356W58 needs the Debtors to present a valid and reasonable path to completing the construction project, which starts with appropriate financing on appropriate terms to ensure administrative claims are paid and the estate is not unduly burdened by the insider-Lender.

29.     However, because no agreement has been reached at this time, 356W58 objects to the DIP Motion and entry of the Final Order.  356W58 expressly reserves its rights to raise any issue properly before the Court at the Final Hearing.

**WHEREFORE**, 356W58 objects on the basis stated above to the relief requested in the DIP Motion and reserves its right to raise any additional objections at the hearing on same.

10

Dated: December 9, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Katherine S. Dute*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      dute@lrclaw.com
      venkateswaran@lrclaw.com

– and –

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212)883-1700
Facsimile: (212)883-8883
Email: kbrett@adstach.com
      poconnor@adstach.com

*Counsel to 356W58 Ground Lessor LLC*