## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*,[1] | Case No. 25-11853 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: January 6, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: January 13, 2026 at 1:00 p.m. (ET)** |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING AND DIRECTING PRODUCTION OF DOCUMENTS FROM THE DEBTORS, PARKVIEW FINANCIAL REIT, LP AND ALBERTO SMEKE SABA AND SOLOMON SMEKE SABA

The Official Committee of Unsecured Creditors (the "Committee") files this motion (the "Motion"), pursuant to Sections 105(a) and 1103(c) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"):

(i)     directing the above-captioned Debtors to produce, on a rolling basis, with a substantial completion date to be agreed among the parties, but not later than January 23, 2026, all documents and communications within its possession, custody, or control as described in **Schedule 1** attached to the Proposed Order;

(ii)    directing Parkview Financial REIT, LP and its affiliates ("Parkview") to produce, on a rolling basis, with a substantial completion date to be agreed among the parties, but not later than January 23, 2026, all documents and communications within its possession, custody, or control as described in **Schedule 2** attached to the Proposed Order;

(iii)   directing Alberto Smeke Saba and Solomon Smeke Saba, and their affiliates (the "Smekes") to produce, on a rolling basis, with a substantial completion date to be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

agreed among the parties, but not later than January 23, 2026, all documents and communications within their possession, custody, or control as described in **Schedule 3** attached to the Proposed Order;

(iv)    authorizing procedures for the production of documents from and examination of certain third parties (each an "Additional Rule 2004 Party," and collectively, the "Additional Rule 2004 Parties") related to the Document Requests and the topics identified therein; and

(v)    authorizing the Committee to issue additional document requests to Parkview and the Smekes and Additional Rule 2004 Parties, as necessary.

As support, the Committee respectfully submits:

**PRELIMINARY STATEMENT**

1.    The Committee seeks discovery under Rule 2004 from the Debtors, Parkview and the Smekes to investigate matters directly affecting the Debtors' estates and the administration of these chapter 11 cases.  Based on the record presently available, the Committee has identified events preceding the Petition Date (defined below) that cannot be fully evaluated without discovery.  These events include, but are not limited to, Parkview's purported failure to disburse funds to pay for the construction of the Debtors' property located at 353 West 57th Street, New York, NY 10019 (the "Property") as required under the parties' governing loan documents, the halt in construction and unresolved regulatory issues that led to a stop work order issued on the Property, the defaults asserted by Parkview under the loan documents and foreclosure on the Debtors' equity interests, and the execution of a settlement agreement between the Debtors, Parkview, the Smekes and other parties, containing releases that potentially compromised claims and causes of actions held by the Debtors months before these chapter 11 cases were filed.

2.    Rule 2004 permits discovery where additional information is necessary to understand the Debtors' financial affairs, assets and operations and the circumstances leading up to the bankruptcy.  The foregoing events raise legitimate questions regarding the Debtors' financial distress and operational and regulatory challenges, and the effect of Parkview's and the Smekes'

prepetition actions.  Discovery is therefore warranted to enable the Committee to carry out its statutory duties to assess whether potential claims exist and to determine whether further action is appropriate for the benefit of the Debtors' estates and their unsecured creditors.

3.    For these reasons and those detailed below, the Committee requests that the Court grant the relief requested in the Motion and enter the Proposed Order (i) permitting the Committee to take discovery from the Debtors, Parkview and the Smekes and (ii) setting procedures for the Committee to issue additional discovery requests.

## JURISIDICTION AND VENUE

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The Committee consents to the entry of a final order of this Motion in accordance with Local Rule 9013-1(f) if it is determined the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## STATUTORY PREDICATES

6.    The bases for the relief requested herein are Sections 105(a) and 1103(c) of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Rule 2004-1.

## BACKGROUND

### A.    The Chapter 11 Cases

1.    On October 22, 2025 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

3

2.      On November 25, 2025, the United States Trustee appointed the Committee.  *See* Dkt. No. 104.  Subsequently, the Committee selected Seward & Kissel LLP as lead bankruptcy counsel, Morris James LLP as local counsel, and, Province LLC as financial advisor, and immediately began investigating estate assets for potential unsecured creditor recoveries.

3.      The following facts, drawn from the Committee's preliminary investigation into Parkview and the Smekes, provide context for its discovery request.

**B.      Smekes Management of Construction and Redevelopment of the Property**

4.      The Debtors were formed to redevelop the Property into a multi-family residential property (the "Project").  CSC Hudson LLC ("CSC"), an entity owned and controlled by the Smekes, previously owned the Debtors.  The Smekes managed the Debtors' operations and directed all aspects of the Project, including efforts to secure financing from Parkview.

5.      From the outset, the Project faced regulatory hurdles, including tenant occupancy issues and New York City zoning restrictions. The Committee understands that portions of the Property remain occupied by rent-stabilized tenants, and the Property is located in a special zoning district. The construction and redevelopment is subject to oversight by the New York City Department of Buildings and the Department of Housing and Preservation Development ("HPD"). To undertake alterations on the Property, New York City zoning laws require developers to obtain a Certificate of No Harassment ("CONH"), certifying that no tenant harassment had occurred.

6.      The Committee understands several tenants lodged harassment complaints against the Debtors.  HPD investigated and recommended denial of the Debtors' CONH application. Without a CONH, construction could not proceed.  The Smekes did not contest HPD's determination and, instead, sought to resolve the harassment issue through a "cure agreement" with HPD.

7.      Upon information and belief, the Smekes could have submitted a "Waiver of Execution and Subordination to Cure Agreement," with the cure application to HPD to allow construction to resume, but did not.  Since February 2024, the Project has remained subject a partial stop work order issued by the City of New York (the "<u>Stop Work Order</u>"), preventing any meaningful progress on redevelopment.  The Committee understands that Taconic Development Advisors LLC has been retained to resume construction, but it is unclear what the Debtors have done since the Petition Date.

**C.      Parkview Fails to Fulfill Funding Requests, Forecloses on the Debtors' Equity Interests and Assumes Control of the Debtors**

*a.      Construction Loan and Parkview's Failure to Fund Draw Requests*

8.      Parkview is managed by Paul Rahimian, Chief Executive Officer, and Ted Jung Chief Credit Officer.   To fund the Project, Parkview loaned the Debtors (the "<u>Loans</u>") (i) $81,782,527 under the Building Loan Agreement, dated on May 4, 2022, and (ii) $125,217,473 under the Project Loan Agreement, dated May 4, 2022 (together with the Building Loan Agreement, the "<u>Prepetition Loan Agreement</u>").  The Smekes personally guaranteed the Loans, and CSC pledged all of its equity interests in the Debtors to Parkview as additional collateral.

9.      Under the Prepetition Loan Agreement, Parkview was obligated to disburse funds when the Debtors submitted draw requests under certain conditions.  However, upon information and belief, Parkview failed to fund a number of requested draws.  Parkview has faced similar claims by other real estate developers who alleged that Parkview's failure to fulfill funding requests led to delayed payments to suppliers and vendors and liens on their project.[2]   The Committee seeks to ascertain whether Parkview's failure to fund the Project led to construction

---

[2] *See, e.g.*, 289-301 *Washington LLC v. Parkview Financial REIT, LP*, Case No. ESX-L-004427-24, Compl. (Essex Cty., N.J. Super. Ct., Jun. 27, 2024); *Triangle 613, LLC v. Parkview Financial REIT, LP*, Case No. 506965/2024, Summons with Notice (N.Y. Sup. Ct., Kings Cty., Mar. 3, 2024).

delays, work stoppages, and accrued fines and penalties.  The funding shortfalls may have further impeded the Debtors' ability to address regulatory issues and secure the lifting of the Stop Work Order and impacted tenants on the Property, who complained of harassment and construction dust and debris left behind when work stopped because contractors and service providers were not paid.

### b.    Debtors Default, Parkview Foreclosure Sale and Settlement Agreement

10.    The Debtors allegedly failed to repay the Loans by the stated maturity date on November 1, 2024.  Parkview did not immediately exercise its remedies under the Prepetition Loan Agreements.  Upon information and belief, on April 10, 2025, Parkview, the Debtors, CSC, the Smekes and 356W58 Ground Lessor LLC, the ground lessor of the Property, entered into a "Financing Agreement" under which the Smekes agreed to pursue a cure application with HPD and seek lifting of the Stop Work Order by May 30, 2025.  Parkview, in turn, agreed to make incentive-based payments to the Smekes.  Upon information and belief, the Smekes did not file a cure application by the May 30th deadline.

11.    On June 30, 2025, Parkview sued the Smekes in the Supreme Court of New York alleging, among other things, that the Debtors defaulted on the Loans, the Smekes breached the Financing Agreement, and the Smekes' mismanagement of the Project led to the regulatory issues with HPD and the Department of Buildings and denial of the CONH.

12.    Following unsuccessful negotiations to secure an additional extension for the Loans, on July 25, 2025, Parkview foreclosed on all equity interests in the Debtors pledged as collateral and acquired ownership of the Debtors through an $80 million credit bid at the foreclosure sale.  Parkview thereafter assigned the acquired equity interests to PV Hudson LLC ("PV Hudson"), which became the sole member of each of the Debtors.

13.     On August 7, 2025, the Debtors, Parkview, CSC and the Smekes entered into the *Settlement and Release Agreement* (the "<u>Settlement Agreement</u>"), under which the parties agreed to settle Parkview's lawsuit against the Smekes.  *See* Dkt. No. 123, Exhibit A.  Under the settlement, Parkview agreed to pay the Smekes a total of $4,637,500, which was placed in escrow until the Smekes met certain conditions.  The first $3 million was released after the Smekes delivered certain documents to Parkview, and the balance of $1,637,500 was scheduled to be released on the earlier of (i) the date the Smekes obtained approval to lift the Stop Work Order, or (ii) 90 days after the effective date of the Settlement Agreement.  Upon information and belief, the remaining funds have not been released, and the Stop Work Order remains in place.

14.     The Settlement Agreement includes broad mutual releases, including releases purportedly binding the Debtors.  *See* Dkt. No. 123, Ex. A at 3-4.  A question exists as to whether the estates are bound by the Settlement Agreement.

15.     An investigation is thus necessary to understand the intent, negotiation and intended beneficiaries of the settlement releases and whether Parkview and the Smekes impermissibly compromised estate causes of actions held by the Debtors.

**D.      Lack of Corporate Governance and Parkview's Efforts to Control these Cases**

16.     Following the foreclosure and transfer of ownership of the Debtors to PV Hudson, Parkview became the indirect owner of the Debtors.  Parkview's Ted Jung signed the resolutions commencing these chapter 11 cases, and ultimately, Parkview took its place as the Debtors' owner, Prepetition Lender and DIP Lender.  Although the Debtors (through Parkview) attempted to cleanse corporate governance issues and conflicts by appointing Robbin Itkin, a former DLA Piper partner and client of DLA Piper, Parkview has continued to exercise control over the Debtors and decision-making both before and after the Petition Date.

17.     In connection with the commencement of these cases, the Debtors and Parkview entered into a Cash Collateral Agreement under which Parkview loaned $1 million to fund limited operating expenses.   Parkview also agreed to fund these cases under a debtor-in-possession financing agreement (the "DIP Loan") that, absent the Committee's objection (see Dkt. No. 144), would have allowed Parkview to roll-up approximately $32.78 million of the outstanding amount owed under the Prepetition Loan Agreements, obtain broad releases, and secure liens on unencumbered assets such as avoidance actions, commercial tort claims, tax refunds, D&O claims, claims against insiders (i.e., Parkview), insurance policies and the proceeds thereof.  These assets may represent the only potential source of recovery for unsecured creditors.

## RELIEF REQUESTED

18.     The discovery requested serves to assist the Committee in carrying out its statutory duties to investigate the acts, conduct, assets, liabilities and financial affairs of the Debtors, including transactions and events that affected the Debtors' capital structure, governance, control and efforts to obtain financing for these cases.  The discovery sought is not overbroad but instead tailored toward the issues described in this Motion.  To the extent additional issues or information is discovered, the Committee will seek additional information from the appropriate party.

19.     The Committee therefore seeks entry of the Proposed Order attached as **Exhibit A** permitting the Committee to obtain from (i) the Debtors, on a rolling basis, all documents and communications in its possession, custody or control as described in **Schedule 1** attached to the Proposed Order; (ii) Parkview, on a rolling basis, all documents and communications in its possession, custody or control as described in **Schedule 2** attached to the Proposed Order; (ii) the Smekes, on a rolling basis, all documents and communications in their possession, custody or control as described in **Schedule 3** attached to the Proposed Order; (iii) authorizing procedures for the production of documents from and examination of Additional Rule 2004 Parties; and (iv)

authorizing the Committee to issue additional document requests to Parkview and the Smekes and Additional Rule 2004 Parties, as necessary.

## **BASIS FOR RELIEF**

20.    The Bankruptcy Rules authorize discovery on any matter that relates to the property and assets of the estate, the financial condition of the debtor and any matter that may affect the administration of a debtor's estate.  *See* FED. R. BANKR. P. 2004(b).  The examination "may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any matter relevant to the case or to the formulation of a plan."  *Id.*

21.    "[T]he scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.'"  *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016);  *see also In re Wash. Mut. Inc.*, 408 B.R. 45, 49 (Bankr. D. Del. 2009) (quoting *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)) ("The scope of a Rule 2004 examination is 'unfettered and broad.'"); *see also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008).  This broad scope extends to any third parties who have a relationship with the debtors and includes the designation of an informed person to appear for an oral examination.  *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (Rule 2004 examination "may extend to creditors and third parties who have had dealings with the debtor.") (citations omitted); *In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987) ("The application of the discovery device of Bankruptcy Rule 7030 (Fed. R. Civ.

P. 30), for a corporation to designate and inform persons to testify on its behalf to Bankruptcy Rule 2004 examinations is both consistent with and assists in the accomplishment of expeditious administration."); *see also In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. D. Wis. 1984) ("Where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed."). Accordingly, bankruptcy courts routinely require third parties to produce documentary and testimonial discovery pursuant to Rule 2004. *See, e.g., Millennium*, 562 B.R. at 628. In *Millennium*, the court granted a Rule 2004 examination of third parties to determine "the scope of viable claims that may exist on behalf of the Plan trusts against potential third parties that may be culpable for causing such harm to the Debtors." *Id*. at 627.

22.     As a fiduciary for all unsecured creditors, the Committee is granted broad statutory powers to, among other things, "investigate the acts, conduct, assets and liabilities and financial condition of the debtor, . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2). Bankruptcy Rule 2004 is recognized as a proper pre-litigation device that can uncover facts and circumstances that may demonstrate whether a debtor's estate holds a claim against a third party and the strength of any such claim. This Court has also recognized that "[o]ne of the primary purposes of a Rule 2004 examination is as a prelitigation device." *Wash Mut.*, 408 B.R. at 53; *see Bennett Funding*, 203 B.R. at 28 (Bankruptcy Rule 2004 "is properly used as a pre-litigation device to determine whether there are grounds to bring an action").

23.     Discovery is warranted to allow the Committee to investigate the events before and leading up to the Debtors' bankruptcy. As set forth in this Motion, the Smekes controlled the Debtors during the period in which the Project encountered regulatory obstacles, construction

delays and the City of New York issued the Stop Work Order.  Parkview later assumed control of the Debtors after the foreclosure sale and caused the Debtors to enter into the Settlement Agreement with the Smekes that potentially released claims held by the Debtors.

24.     Furthermore, the Committee understands that Parkview failed to fulfill funding requests to pay vendors and suppliers, which resulted in liens on the Property and numerous other financial after-effects.  These facts demonstrate that Parkview and the Smekes had a direct and material impact on the Debtors' financing and operations that ultimately led to these chapter 11 cases.  An investigation is therefore imperative to ascertain whether potential claims exist arising from Parkview's and the Smekes' prepetition conduct.  The investigation is a basic function of the Committee's statutory duties, and the discovery requested is narrowly tailored to the facts described in this Motion and not designed to harass or burden the Debtors, Parkview or the Smekes.

25.     Accordingly, the Committee requests that the Court grant the Motion.

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 2004-1</u>

26.     On December 23, 2025, the Committee's counsel sent the requests on Schedule 1 to the Debtors, and on December 29, 2025, the Committee's counsel conferred with the Debtors' counsel regarding the requested production of documents and timing of such production.  On December 23, 2025, the Committee's counsel sent the requests on Schedule 3 to Parkview, and on December 30, 2025, conferred with Parkview's counsel regarding the requested production of documents and the timing of such production.  The Committee agreed with each of the Debtors and Parkview that productions would begin immediately, on a rolling basis, with a substantial completion date to be discussed among the parties.  On December 23, 2025, the Committee's counsel sent the requests on Schedule 2 to the Smekes, and counsel to the Committee and the Smekes have scheduled a meet and confer regarding the requested production of documents and the timing of such production for January 5, 2026.  Accordingly, the Committee's undersigned

counsel certifies that the Committee's counsel has satisfied its meet and confer obligations under Local Rule 2004-1(a).

27.     This Motion is filed to ensure that the Debtors, Parkview and the Smekes are compelled to make complete productions of documents responsive to the Committee's requests and enable the Committee to perform an appropriate investigation in the exercise of its fiduciary duties in the expedited timeframe required by these cases.

28.     Under these circumstances, the matters requested in this Motion are appropriate and within the scope of Bankruptcy Rule 2004.

## RESERVATION OF RIGHTS

29.     The Committee reserves all rights to request, pursuant to Bankruptcy Rule 2004 or otherwise, additional documents or examinations upon review of the documents produced in connection with this Motion or otherwise.

## NOTICE

30.     Notice of this Motion will be provided to: (i) counsel to the Debtors; (ii) counsel to Parkview; (iii) counsel to the Smekes; (iv) the office of the United States Trustee for the District of Delaware; and (v) any party requesting notice under Bankruptcy Rule 2002.  The Committee submits that no other or further notice is required.

## NO PRIOR REQUEST

31.     No prior request has been made for the relief sought in this Motion.

## CONCLUSION

32.     For the foregoing reasons, the Court should enter the Proposed Order, substantially

in the form attached hereto as **Exhibit A**, granting the Motion.

Dated: December 30, 2025               Respectfully submitted,
        Wilmington, Delaware

                                       **MORRIS JAMES LLP**

                                       */s/ Siena B. Cerra*
                                       Eric J. Monzo (DE Bar No. 5214)
                                       Siena B. Cerra (DE Bar No. 7290)
                                       3205 Avenue North Blvd., Suite 100
                                       Wilmington, DE 19803
                                       Telephone: (302) 888-6800
                                       Email: emonzo@morrisjames.com
                                              scerra@morrisjames.com

                                       -and-

                                       **SEWARD & KISSEL LLP**
                                       Robert J. Gayda (admitted *pro hac vice*)
                                       Thomas Ross Hooper (admitted *pro hac vice*)
                                       Catherine V. LoTempio (admitted *pro hac vice*)
                                       Andrew J. Matott (admitted *pro hac vice*)
                                       One Battery Park Plaza
                                       New York, New York 10004
                                       Telephone: (212) 574-1200
                                       Facsimile:  (212) 450-8421
                                       Email:  gayda@sewkis.com
                                               hooper@sewkis.com
                                               lotempio@sewkis.com
                                               matott@sewkis.com

                                       *Proposed Counsel to the Official*
                                       *Committee of Unsecured Creditors*

17695658/1