**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Hudson 1701/1706, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered)<br><br>Hearing Date: January 13, 2025, at 1:00 p.m. (ET)<br>Objection Deadline: January 6, 2025, at 4:00 p.m. (ET) |

**AMENDED MOTION OF THE DEBTORS
FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO CONDUCT RULE 2004 EXAMINATIONS**

Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors"), by and through their proposed special counsel, DLA Piper LLP (US), hereby submit this amended motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), directing each of CSC Hudson, LLC ("CSC"), Mr. Alberto Smeke Saba, Mr. Salomon Smeke Saba (collectively, the "Smekes", and together with CSC, the "Guarantors"), and Mr. Shlomo Rosenfeld ("Mr. Rosenfeld" and, together with CSC and the Smekes, the "Rule 2004 Parties") to (a) produce all documents and communications within their possession, custody, or control that are responsive to the requests described in the subpoenas attached hereto as **Exhibit C** (the "Amended Subpoenas"), and (b) authorize leave to serve the Amended Subpoenas to depose the Rule 2004 Parties following the production of the materials responsive to the Amended Subpoenas. In support of this Motion, the Debtors submit the declaration of Neal Kronley (the "Kronley Declaration") attached to this Motion as **Exhibit B**, and incorporate by reference the Original Motion (as defined herein) and the declaration of Stuart Brown [D.I. 18-2] (the "Brown Declaration") attached to the Original Motion, and respectfully state as follows:

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

1

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2.      Under Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court on this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested by this Motion are section 105(a) of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), Bankruptcy Rules 2004, 7026, and 9016 of the Federal Rules of Bankruptcy Procedure, and Local Rules 2004-1 and 7026-1.

**BACKGROUND**

**A. General Background.**

5.      On October 22, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

6. The Debtors continue to be in possession of their properties, operate their business, and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Additional factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of these Chapter 11 Cases, is set forth in the *Amended and Restated Declaration of Alan Tantleff in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 60] (the "First Day Declaration")[2] filed on the date hereof and incorporated herein by reference.

### B. The Need for Rule 2004 Examinations.

8. This matter arises from Debtors' plan to convert the former Hudson Hotel to a multifamily residential property originally anticipated to include approximately 440 market-rate rental units together with commercial and amenity space and a penthouse. The Guarantors, on behalf of the Debtors, received an aggregate $207 million in development and construction financing (the "Loan") from Prepetition Lender to fund the redevelopment project.

9. After defaulting on the Loan, Prepetition Lender obtained the equity interests in the Debtors following a UCC foreclosure sale on July 25, 2025 in exchange for a credit bid in the amount of $80,000,000 of existing indebtedness. The Prepetition Lender then assigned the interests it acquired to its wholly owned subsidiary, PV Hudson, LLC.

10. Debtors, Prepetition Lender, CSC, and the Smekes then entered into a Settlement Agreement on August 7, 2025, which obligated the Smekes to cooperate with Prepetition Lender to execute and deliver documents and to provide Prepetition Lender the Debtors' drawings, plans, and other related documentation for the use, development, or operation of the property.

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the First Day Declaration or the Original Motion, as applicable.

3

11. Despite repeated written demands beginning July 25 and again on October 23, 2025, the Guarantors failed to produce the Debtors' core records or authorize release of essential design documents, leaving the Debtors at risk of being unable to administer the estates, prepare schedules and respond to the U.S. Trustee's questions in connection with the Statement of Financial Affairs (the "<u>SOFA Questions</u>"), otherwise respond to requests from the U.S. Trustee, or manage operations. [*See* D.I. 165; D.I. 167.]

12. The Debtors therefore came to the Court with an emergency Rule 2004 motion on October 30, 2025, seeking authority to subpoena Guarantors to compel immediate production and examinations necessary to protect and administer the estates. [D.I. 18] (the "<u>Original Motion</u>").

13. On November 2, 2025, the Guarantors opposed the Original Motion claiming it was not necessary because: (a) the initial July 25 information request was mooted by the Settlement Agreement, which required them to provide documents; (b) no further discovery discussions or requests had taken place between the July 25 request and the October 23 letter; (c) the October 23 letter was "not addressed to the Smekes nor any entity owned or controlled thereby" (it was addressed to their counsel as their representatives); and, (d) they gave "written confirmation" that they would "produce relevant information" and produced some information just prior to the hearing. [D.I. 37 at ¶¶ 2-5].

14. At the hearing on November 3, 2025, the Debtors explained that the Guarantors' pre-hearing production was still missing necessary information to administer the estate, including, among others: the full general ledger (as the produced version omitted information from April 2025 to July 2025), tax information, and bank account information. The Debtors therefore believed that a Rule 2004 subpoena was necessary to ensure that the process was fair and efficient and would result in the Debtors receiving all the information they are entitled to—information

related the administration of the Debtors estate or its right to a discharge. *See* Transcript of November 3, 2025 Hearing (attached hereto as **Exhibit D**) at 20-22.

15. In response, the Guarantors assured the Court that they were "willing to work on a cooperative schedule that our clients can work to and produce." *Id.* at 24:24-25.

16. The Court took the Guarantors "at [their] word . . . that [they] are going to work with the Debtor to get these necessary, all the necessary operational documents, financial documents that the Debtor needs to run this case smoothly to them." *Id.* at 26:3-7, 26:9-27:8.

17. The Guarantors have produced additional documentation since the November 3 hearing, but despite the Debtors engaging in multiple meet and confers and exchanging multiple letters[3], the Guarantors have still yet to provide full operational, accounting, and financial documents.

18. For example, the Guarantors produced a General Lender for January 2025 through April 2025 but did not produce the General Ledger between April 2025 and July 2025. A complete 2025 General Ledger is necessary to administer the estate and is in the Rule 2004 Parties' possession as the Rule 2004 Parties were in control of the Debtors until July 25, 2025. The General Ledger that was subsequently produced through July 25, 2025 is incomplete – it covers only a single "Operating Cash" general ledger account code[4] leaving out all other account codes (*e.g.*,

---

[3] These include: (1) a November 4, 2025 document production request letter, attached as Exhibit 1 to the Kronley Declaration (the "November 4 Letter"), (2) a November 7, 2025 response to the November 4 Letter, attached as Exhibit 2 to the Kronley Declaration (the "November 7 Response"); (3) a meet and confer with counsel for the Guarantors on November 5, 2025 (the "November 5 M&C"); (4) a November 20, 2025 letter detailing document production deficiencies and seeking a meet and confer, attached as Exhibit 3 to the Kronley Declaration (the "November 20 Letter"); (5) the November 25, 2025 response to the November 20 Letter, attached as Exhibit 4 to the Kronley Declaration (the "November 25 Response"); (6) a December 5, 2025 letter detailing additional document production deficiencies and seeking completion of production of documents, attached as Exhibit 5 to the Kronley Declaration (the "December 5 Letter"); (7) the December 11, 2025 response to the December 5 Letter, attached as Exhibit 6 to the Kronley Declaration (the "December 5 Response"); and, (8) a meet and confer with counsel for the Smekes and CSC on December 18, 2025 (the "December 18 M&C").

[4] General Ledger account codes are unique numerical identifiers used in accounting to classify and track all financial transactions, grouping them into categories to help businesses manage finances and produce accurate financial reports.

5

Accounts Receivable, Accounts Payable, Professional Fees, etc.) that, by contrast, were included in the 2024 General Ledger. The Guarantors have not explained the missing information, despite repeated inquiries. *See* Kronley Declaration ¶ 3; *see also* December 5 Letter. Accordingly, the Subpoenas reiterate the request for all consolidated and unconsolidated accounting records at Request No. 1.

19. The Guarantors have also failed to provide a full set of financial records. Based on information produced to date, Debtors have identified over ten bank accounts used, associated, or receiving funds from the Debtor entities prior to the July 25, 2025 UCC Sale. In some instances, the Guarantors have refused to provide complete bank statements for these accounts. They have informed Debtors that that they will only produce bank statements if the Debtor entities themselves owned or operated the accounts.[5] This limitation improperly narrows the necessary financial information, as Debtors will be unable to assess whether certain funds were disbursed to proper parties for proper reasons.

20. Moreover, the Debtors are unable to meaningfully assess the Guarantors' assertion that certain categories of documents do not exist because they have failed to identify the bank accounts that were associated with the Debtors to determine what bank records are available or within their possession. Accordingly, the Amended Subpoenas seeks this information at Request Nos. 2, 5-8.

21. Similarly, the Rule 2004 Parties have refused to produce tax returns that contain information related to the Debtors. In particular, in the Original Motion, the Guarantors filed a letter from Bernath & Rosenberg, P.C. ("B&R"), an accountancy firm, which acknowledged that

---

[5] The Guarantors also claim Debtors lack authority to obtain the information as no subpoena was issued by this Court. This response exemplifies the Guarantors' gamesmanship; on the one hand they have indicated to this Court that no subpoena is necessary as they will comply with the requests consensually, and when challenged during the meet and confer process they argue the Debtors lack authority for the request absent a subpoena.

"CSC Holdings LLC files an annual U.S. Return of Partnership Income (Form 1065) with the [IRS], which consolidates and captures the financial activity, assets, and operations of all its holdings, including [Debtors]."[6] [D.I. 37-1.] Despite the consolidation of Debtors' tax information within CSC's, the Guarantors have refused to provide the tax return. The reason, the Guarantors provide, is that the CSC tax returns are not "issued solely by the Debtors" and they have no "Debtor specific schedules or workpapers supporting the consolidated tax returns." *See* November 25 Response. To consolidate the Debtors' tax information into CSC's, however, B&R must have had and used Debtors' tax information. Accordingly, the failure to provide the CSC tax returns impedes the Debtors' ability to review its own prior tax filings. In light of the foregoing, the Amended Subpoenas seek this information at Request No. 3. Moreover, the tax returns may be necessary to provide a comprehensive response to the U.S. Trustee's questions in connection with the SOFA Questions, namely SOFA Question No. 31 regarding Debtors' inclusion in consolidated tax filings. [*See* D.I. 165 at 17; D.I. 167 at 17.] To that end, the Amended Subpoenas also specifically seek that information at Request No. 4.

22. In addition, information produced to date raises additional questions and no responses have been provided as of the date of this filing. For example, at the December 18 M&C, counsel for the Guarantors indicated that they would confirm whether any cash pooling arrangements or intercompany loans exist but have not provided further information. The Amended Subpoenas seek information concerning these items at Request No. 9. This information is particularly relevant because the production of documents shows "Intercompany Receivables" amounting to over $2.8 million. The Debtors do not know what intercompany receivables these

---

[6] The B&R letter also asserts confidentiality concerns. On December 11, 2025, the Debtors provided the Guarantors with a proposed confidentiality order. To date, the Guarantors have not responded to the draft order.

refer to or why they were made. Yet the Guarantors will not provide this information. This information is sought in the Amended Subpoenas at Request No. 11.

23. Likewise, the bank statements produced to date contain withdrawals of over $900,000 in early April 2025 that may constitute improperly transferred insurance proceeds for which Debtors seek supporting documentation. As a result, the Amended Subpoenas seek information concerning these withdrawals at Request Nos. 6.

24. In sum, the failure to provide transparent and full information has left the Debtors unable to determine, among other things, intercompany payables and receivables, as of the Petition Date, as well as unaccounted-for insurance payments. *See* Kronley Declaration ¶¶ 4-5.

25. Absent the Court granting relief sought in this Motion, Debtors will continue to be impeded in their ability to administer their estates, evaluate their assets and liabilities, evaluate any potential wrongdoing, and fulfill their obligations under the Bankruptcy Code. *See* Kronley Declaration ¶ 10; Brown Declaration ¶ 11. Importantly, the Debtors are also unable to provide complete disclosures to the Court and their creditors and are unable to comprehensively respond to requests for information from the U.S. Trustee, including the SOFA Questions. *See* Kronley Declaration ¶¶ 7-8. 10. And, regardless, the Debtors are entitled to all of the requested information under Rule 2004's broad scope.

## **RELIEF REQUESTED**

26. The Debtors request entry of an order, substantially in the form of the Proposed Order, ordering the Rule 2004 Parties to (a) produce all documents and communications within their possession, custody, or control that are responsive to the Amended Subpoenas and (b) authorize leave to serve the Amended Subpoenas to depose the Rule 2004 Parties following the production of the materials responsive to the Amended Subpoenas.

**BASIS FOR RELIEF**

**A. The Requested Relief is Appropriate.**

27. Under section 105(a) of the Bankruptcy Code, the Court maintains broad equitable powers to fashion an order or decree in aid of the enhancement of the value of the Debtors' estates for the benefit of all stakeholders. 11 U.S.C. § 105(a).

28. Bankruptcy Rule 2004(a) provides, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). An examination under Bankruptcy Rule 2004 may be made of any entity with knowledge of "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . and any other matter relevant to the case or to the formulation of a plan." *See* Fed. R. Bankr. P. 2004(b); *In re Washington Mut., Inc.*, 408 B.R. 45, 49-50 (Bankr. D. Del. 2009).

29. The party seeking a Rule 2004 examination has the burden of showing good cause. *In re Millennium Lab Holdings, LLC*, 562 B.R. 614, 627–28 (Bankr. D. Del. 2016).

30. "Generally, good cause is shown if the Rule 2004 examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the [movant] undue hardship or injustice." *Id.*

31. The scope of Bankruptcy Rule 2004 is "broad and unfettered" and affords debtors the ability to obtain discovery from "third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016). Bankruptcy Rule 2004 permits broad discovery because "[t]he purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate,

9

revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007) ("Federal Rule of Bankruptcy 2004 allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate."); *In re Washington Mut., Inc.*, 408 B.R. at 50 ("The purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate.").

32. Additionally, bankruptcy courts have broad discretion in determining whether to order an examination pursuant to Bankruptcy Rule 2004. *See id.* at 49 ("The scope of a Rule 2004 examination is 'unfettered and broad'") (quoting *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)). Bankruptcy Rule 2004 affords parties in interest an extremely broad right of discovery and "is even broader than that of discovery permitted under [the Federal Rules of Civil Procedure], which themselves contemplate broad, easy access to discovery." *In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (citations omitted).

33. This broad scope extends to discovery of third parties who "possess knowledge of the debtor's acts, conduct, liabilities or financial conditions which relate to the administration of the bankruptcy estate" or who have a relationship with the debtor. *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014); *see In re Ionosphere Clubs, Inc.*, 156 B.R 414, 432 (S.D.N.Y 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994) ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation.").

34. Moreover, in instances where estate representatives are trying to ascertain whether to pursue estate claims, Bankruptcy Rule 2004 is recognized as a proper pre-litigation device that can uncover facts and circumstances that may demonstrate whether a debtor's estate holds a claim

against a third party and the strength of any such claim. Courts in this District have previously recognized that "[o]ne of the primary purposes of a Rule 2004 examination is as a prelitigation device." *In re Washington Mut. Inc.*, 408 B.R. at 53; *see In re Bennett Funding Group*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (Bankruptcy Rule 2004 "is properly used as a pre-litigation device to determine whether there are grounds to bring an action.").

35.     Here, the Debtors have been working to administer these Chapter 11 Cases and comply with the requirements of debtors operating in chapter 11 and investigate their assets and liabilities, in order to preserve value and best position themselves to maximize the value of their estates for the benefit of all parties' interests. These efforts have been complicated by the fact that the Debtors do not have access to their full books and records, as well as the records of related parties that possess knowledge of the Debtors' acts, conduct, liabilities or financial conditions. The Debtors believe that documents and information contained in the Document Requests may allow them to recover substantial estate assets, including estate assets that were transferred in the days, weeks, and months prior to the UCC Sale on July 25, 2025. Additionally, given their possession of information that the Debtors need to achieve the objectives of these Chapter 11 Cases and to fulfil their duties and obligations under the Bankruptcy Code, examination of the Rule 2004 parties is of paramount importance.

**B. The Scope of Discovery Requested Herein is Reasonably Tailored and Appropriate Given the Particular Circumstances of These Chapter 11 Cases**.

36.     Bankruptcy Rule 2004 requires the Court to "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). In making this determination, courts consider the purpose of the request, as well as the degree of intrusiveness. *See id.* at 711-12; *In re Hawley Coal Mining Corp.*, 47 B.R. 392, 394 (S.D.W.Va. 1984).

37. Here, the balance of competing interest weighs strongly in favor of the Debtors, the production of documents, and examination of the Guarantors. As indicated above, following the hearing on November 3, 2025, the Debtors have undertaken extensive efforts to obtain the requested voluntary production of documents. But the Guarantors' cooperation has been incomplete as described above.

38. The failure to produce these documents hinders the Debtors' ability to administer their estates, assess assets and liabilities, evaluate any wrongdoing, and satisfy Bankruptcy Code requirements. Accordingly, this Motion is necessary and critical for the production of documents as soon as possible to ensure that the Debtors have the information necessary to obtain the relief required to administer their estates, preserve estate assets, provide timely and adequate notice to all creditors and parties in interest, and evaluate whether any wrongdoing has occurred or claims exist.

39. Moreover, Debtors have narrowly tailored their requests to obtain specific documents and information that have not been voluntarily produced to date, despite specific requests seeking such documents and information.

40. For example, as discussed above and in the Debtors' December 5 Letter, the Debtors alerted the Guarantors that their production of the Debtors' 2025 "General Ledger" included only a single account-code and reiterated their request for the full document. *See* December 5 Letter at 2.

41. Moreover, Debtors carefully clarified many of their requests after review of the voluntarily produced documents. For example, Debtors requested that the Rule 2004 Parties produce "supporting documentation for significant transactions." *See* December 5 Letter at 2-3. After review of bank statements voluntarily produced by the Rule 2004 Parties, Debtors identified

(i) specific transactions wherein nearly a million dollars was transferred out of the Debtors' bank accounts on April 7, 2025 – just days before the then-scheduled UCC Sale; and (ii) unknown "Intercompany Receivables" amounting to over $2.8 million. *See id* at 3. Despite this clarification, the Rule 2004 Parties have failed to produce supporting documentation for these withdrawals or the "Intercompany Receivables" and have refused to provide the bank account details, unless those bank accounts were in the names of the Debtors. *See* Kronley Declaration. ¶¶ 3-6. To date, the Guarantors have not provided full bank account names they promised to provide during the December 18 meet and confer; regardless, their offer is deficient as it would not identify bank accounts where the Debtors' money was transferred. Accordingly, the Amended Subpoenas specifically identify these deficiencies in reiterating the request for the Debtors' records. *See* Exhibit C, Request Nos. 5, 6, 7, and 11.

42. The Amended Subpoenas also seek documents and information otherwise necessary to provide comprehensive responses to SOFA Questions. [*See* D.I. 165; D.I. 167.] Request No. 4 in the Subpoenas seeks information relating to SOFA Question No. 31. Request No. 8 in the Subpoenas seeks information relating to SOFA Question No. 18. Request No. 14 in the Subpoenas seeks information relating to SOFA Question No. 3. Request No. 21 in the Subpoenas seeks information relating to SOFA Question Nos. 28 and 29. Request No. 22 in the Subpoenas seeks information relating to SOFA Question Nos. 4 and 30. At the December 18, 2025 meet and confer, counsel for Debtors requested to speak to Mr. Rosenfeld – the Chief Financial Officer for CSC – to obtain the information necessary to respond to the SOFA Questions, but, to date, he was not made available. *See* Kronley Declaration. ¶ 7.

43. The Amended Subpoenas otherwise seek categories of documents that the Rule 2004 Parties have ostensibly agreed to produce but have not done so to date. For example, the

Guarantors agreed to produce documents hitting on a set of mutually agreeable search terms. *See* December 5 Letter at 5-6. But while Debtors provided a list of search terms to CSC and the Guarantors' counsel, they have not responded or agreed to conduct these or alternative searches. *See* Kronley Declaration. ¶ 9. Accordingly, the Subpoenas seek documents hitting on the identical list of search terms. *See* Exhibit C, Request No. 16.

## CERTIFICATION PURSUANT TO LOCAL BANKRUPTCY RULE 2004-1

44. In accordance with Local Rule 2004-1(b), the undersigned counsel certifies that, prior to filing this Motion, the Debtors met and conferred with counsel to the Rule 2004 Parties through the issuance of the Letters and two conference calls with opposing counsel on November 5, 2025, and December 18, 2025. Accordingly, the Debtors have satisfied their meet and confer obligations under Local Rule 2004-1(a).

## RESERVATION OF RIGHTS

45. The Debtors reserve all rights to request, pursuant to Bankruptcy Rule 2004 or otherwise, additional documents or examinations upon review of the documents produced in connection with this Motion or otherwise.

## NOTICE

Notice of this Motion will be provided to: (a) the Office of the United States Trustee for Region 3; (b) counsel to Parkview Financial REIT, LP; (c) counsel to the Committee; (d) counsel to CSC Hudson, LLC and Alberto Smeke Saba and Salomon Smeke Saba; (e) any party that has requested notice under Bankruptcy Rule 2002; and (f) any other party entitled to notice under Local Rule 9013-1.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, granting the relief requested in this Motion and such other and further relief to the Debtors as the Court may deem just and proper.

Dated: December 30, 2025  
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ Stuart M. Brown  
Stuart M. Brown (DE 4050)  
1201 North Market Street, Suite 2100  
Wilmington, Delaware 19801  
Telephone: (302) 468-5700  
Facsimile: (302) 394-2341  
Email: stuart.brown@us.dlapiper.com

- and -

Neal Kronley (admitted *pro hac vice*)  
David M. Riley (admitted *pro hac vice*)  
1251 Avenue of the Americas  
New York, New York 10020  
Telephone: (212) 335-4500  
Facsimile: (212-335-4501  
Email: david.riley@us.dlapiper.com  
       neal.kronley@us.dlapiper.com

*Proposed Special Counsel to the Debtors*