## Exhibit B

**Declaration of Neal Kronley**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706, LLC, *et al.*,[1] | Case No. 25-11853 (KBO) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF NEAL KRONLEY IN SUPPORT OF
## AMENDED MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
## AUTHORIZING THE DEBTORS TO CONDUCT RULE 2004 EXAMINATIONS

I, Neal Kronley, hereby declare under penalty of perjury as follows:

1.      I am Of Counsel at DLA Piper LLP (US) ("DLA Piper"), proposed special counsel to the Debtors.  I submit this declaration ("Declaration") in support of the Debtors' *Amended Motion of the Debtors for Entry of an Order Authorizing the Debtors to Conduct Rule 2004 Examinations* (the "Motion").[2]

2.      The Debtors and CSC Hudson LLC ("CSC"), Alberto Smeke Saba, and Salomon Smeke Saba (collectively, the "Smekes" and together with CSC, the "Guarantors") appear to be at an impasse concerning the production of certain documents and information that are essential for the management of the Debtors' estates.  The parties have made some progress since the Debtors first raised this issue with the Court at the November 3, 2025 hearing, including during a "meet and confer" held on December 18, 2025 (the "December 18 M&C"), following my appearance before the Court on December 12, 2025, concerning the Motion.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).  The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion.

3.      However, the Guarantors' production remains inadequate, and they refuse to provide information that is necessary for the prosecution of the case.[3]  For example, and as set forth in the accompanying amended Subpoena attached to the Motion as Exhibit C, the Guarantors refuse to provide a complete General Ledger for 2025, despite repeated requests.  What has been provided shows only one "Operating Cash" general ledger account code and does not provide necessary information to understand the full flow of Debtors' funds, including intercompany activities with CSC-related entities.  By contrast, the 2024 General Ledger provided additional account codes (e.g., Accounts Receivable, Accounts Payable, Professional Fees, etc.).  By way of further example, the documents produced, to date, indicate the existence of "Intercompany Receivables" totaling approximately $2.85 million; however, without a complete production, the Debtors are unable to verify the nature and amounts due to the Debtors from these receivables.  Notably, as the Smekes provided this detail for calendar year 2024, they should do the same for 2025.

4.      The lack of transparency is compounded by other aspects of the deficient record; for example, the Guarantors produced bank account records showing they emptied approximately $993,000 from two of the Debtors' bank accounts on April 7, 2025, days before the then-scheduled UCC Sale for April 10, 2025, which ultimately went forward on July 25, 2025.  The Guarantors have failed to produce supporting documentation setting forth the reasons for these transactions.

---

[3] In addition to the December 18 "meet and confer" the parties have exchanged correspondence and engaged in meet and confers, including: (1) a November 4, 2025 document production request letter, attached as **Exhibit 1** (the "November 4 Letter"), (2)  a November 7, 2025 response to the November 4 Letter, attached as **Exhibit 2** (the "November 7 Response"); (3) a meet and confer with counsel for the Guarantors on November 5, 2025 (the "November 5 M&C"); (4) a November 20, 2025 letter detailing document production deficiencies and seeking a meet and confer, attached as **Exhibit 3** (the "November 20 Letter"); (5) the November 25, 2025 response to the November 20 Letter, attached as **Exhibit 4** (the "November 25 Response"); (6) a December 5, 2025 letter detailing additional document production deficiencies and seeking completion of production of documents, attached as **Exhibit 5** (the "December 5 Letter"); (7) the December 11, 2025 response to the December 5 Letter, attached as **Exhibit 6** (the "December 5 Response").  In addition, on December 11, 2025, Debtors provided the Guarantors a proposed order for the exchange of confidential information and a list of search terms for the production of electronic documents.

*See* December 5 Letter.  The 2024 General Ledger produced by the Guarantors suggests these amounts could constitute insurance proceeds, which were wrongfully withdrawn by Guarantors.

5.      Moreover, the Smekes have failed to produce documentation detailing a complete list of bank accounts used for or by the Debtors from inception through present, including all wire confirmations, transfers authorizations, and supporting documentation for significant transactions (*i.e.*, those over $100,000), including the withdrawals above and the "Intercompany Receivables" noted in the 2025 Balance Sheet.  *See id*.  Notably, the Guarantors have not provided *any* agreements or other documentation elucidating the nature of the "Intercompany Receivables" whatsoever. This information is critical to properly administer the Debtors' estates and evaluate potential wrongdoing—indeed, one of the "Intercompany Receivables" listed on the 2025 Balance Sheet is owed from "MEMBERS," which may refer to the Smekes and/or CSC.

6.      Despite conducting a "meet and confer" on December 18, 2025, and receiving assurances that additional information would be forthcoming, the Guarantors have still not produced any additional documents or information. Notably, based on information produced to date, Debtors have identified over ten accounts used, associated, or receiving funds from the Debtor entities prior to July 25, 2025, but Guarantors have not provided complete bank statements for these accounts and agreed only to provide bank statements for accounts if the Debtor entities themselves owned or operated the accounts.

7.      A subpoena is necessary to ensure documents and information are timely produced in a complete fashion.  The Debtors also seek to depose Mr. Shlomo Rosenfeld, CSC's Chief Financial Officer, as he is the party best positioned to provide information regarding the Debtors' financial and tax-related document requests and provide information necessary to provide complete responses for the U.S. Trustee's Statement of Financial Affairs questions ("<u>SOFA</u>

Questions")[4], along with depositions of the Smekes. Debtors requested to speak to Mr. Rosenfeld at the December 18 M&C to ascertain the information necessary to provide complete responses to the SOFA Questions, but CSC has not made Mr. Rosenfeld available.  The Debtors have amended their initial request to both narrow the scope of the original Rule 2004 Subpoenas and to clarify the requests based on the Debtors' review of the documents produced to date.  A true and complete copy of the Amended Subpoenas are attached as Exhibit C to the Motion, including Rule 2004 examinations of the Smekes and Mr. Rosenfeld.

**Outstanding Information**

8.      As set forth in the Amended Subpoenas, the outstanding information falls in the following categories:

  a.  a General Lender for January 2025 through April 2025 but did not produce the General Ledger between April 2025 and July 2025.  A complete 2025 General Ledger is necessary to administer the estate and is in the Rule 2004 Parties' possession as the Rule 2004 Parties were in control of the Debtors until July 25, 2025.  The General Ledger that was subsequently produced through July 25, 2025 is incomplete – it covers only a single "Operating Cash" general ledger account code leaving out all other account codes (*e.g.*, Accounts Receivable, Accounts Payable, Professional Fees, etc.) that, by contrast, were included in the 2024 General Ledger (*see* Amended Subpoenas Request No. 1);

  b.  a full set of unconsolidated and consolidated financial records, including bank account information for, accounts used by or for the Debtors, from inception through the present, including wire confirmations, transfer authorizations, and

---

[4] *See* D.I.165; D.I. 167.

supporting documentation for significant transactions, including the April 7, 2025 withdrawals and "Intercompany Receivables" discussed above (*see* Amended Subpoenas Request Nos. 2, 5-11);

c.  tax filings (*see* Subpoena Request No. 3);

d.  cash turnover, balances, bank account information, and documentation for Debtors' accounts as of and following July 25, 2025 (*see* Amended Subpoenas Request Nos. 2, 5-8, 11, and 13);

e.  documents and communications regarding any agreements entered into by the Debtors or for the benefit of Debtors' operations (*see* Amended Subpoenas Request Nos. 17 and 18);

f.  documents and information necessary to provide complete responses to the SOFA Questions (*see* Amended Subpoenas Request Nos. 4, 8, 14, 21, and 22); and

g.  documents relating to issues with the general contractor, Elysium Construction, Inc (*see* Amended Subpoenas Request No. 19).

9.      Additionally, during the meet and confer process Guarantors agreed to produce documents hitting on mutually agreeable search terms once the parties entered into a confidentiality agreement and once the DLA Piper retention has been resolved.  I provided both a list of search terms and a draft confidentiality agreement to counsel for Guarantors on December 11, 2025. Guarantors' counsel did not respond.  Accordingly, the Amended Subpoenas seek such documents in Subpoena Request No. 16.

10.     The ongoing noncompliance and lack of clarity from the Guarantors about which documents exist and will be produced and when they will be produced has impeded and continues to impede the Debtors' ability to administer their estates, evaluate their assets and liabilities, evaluate

any potential wrongdoing, and fulfill their obligations under the Bankruptcy Code.  Notably, the

Debtors efforts to advance the continued development of the Property have been delayed because

Guarantors have refused to authorize a contractor to release essential plans and documentation,

including a complete set of design documents necessary for ongoing development of the property.

The Debtors are also unable to provide complete disclosures to the Court and its creditors and are

unable to comprehensively respond to  SOFA Questions, including but not limited, payments in the

last 90 days, insider payments, insider withdrawals, closures of financial accounts, etc.


Dated:   December 30, 2025                    Respectfully submitted,
             New York, New York

                                                           _/s/  Neal Kronley_____
                                                           Neal Kronley

## **EXHIBIT 1**

**November 4 Letter**



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T   212.335.4584
F   917.778.8584

November 4, 2025

*VIA OVERNIGHT MAIL AND EMAIL*

**Womble Bond Dickinson (US) LLP**
1313 North Market Street, Suite 1200
Wilmington, DE
Attention: Matthew P. Ward
Email:    matthew.ward@wbd-us.com

-and-

**Vedder Price P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Attention: Robert Salame
          Michael L. Schein
Email:    rsalame@vedderprice.com
          mschein@vedderprice.com

**Re:    *In re Hudson 1701/1706, LLC, et al.*, Case No. 25-11853 (KBO)**

Counsel:

This firm is proposed special litigation and corporate counsel to the Debtors in the above-referenced cases.  As you know, Debtors filed an *Emergency Motion for the Debtors for Entry of an Order Authorizing the Debtors to Conduct Rule 2004 Examinations* (the "Motion") seeking discovery from Alberto Smeke Saba, Salomon Smeke Saba, and CSC Hudson, LLC (collectively, the "Requested Examinees").  We write following the Court's directive at the November 3, 2025 First Day Hearing that Debtors meet and confer with the Requested Examinees regarding the discovery requested in the Motion and a timeline for the production of the same.

Per the Court's instructions, Debtors identify the following documents and information as critical to Debtors' ability to maintain business operations (the "Priority Requests").  Moreover, this information is necessary for Debtors to comply with document and information requests from the United States Trustee in connection with this case.  A copy of the Initial Debtor Interview Request Letter from the United States Trustee is attached hereto as Exhibit A. Debtors ask that the Requested Examinees produce documents and information in connection with the Priority Requests as soon as possible, but no later than November 7, 2025.



November 4, 2025
Page Two

1.  All financial statements (whether audited or unaudited), income statements, profit and loss statements, balance sheets, trial balances, general ledgers, subsidiary ledgers, chart of accounts, and other financial documents (including account reconciliations) of the Debtors from May 4, 2022 through July 25, 2025.

2.  A schedule of the software systems and related accounts used to maintain Debtors' financial records.  Production should include a complete back-up copy of all data files and all passwords required to access the software systems/data files.

3.  Documents pertaining to or relating to the accounting practices used by the Requested Examinees in connection with the Debtors' business and any deviations from such accounting practices and/or from the Generally Accepted Accounting Practices ("GAAP").

4.  All federal and state tax returns and other submissions to taxing authorities, including but not limited to, the latest filed 941 payroll tax returns, latest filed Form 1120 – U.S. Corporation Income Tax Return and related schedules, and/or Form 1065 – U.S. Return of Partnership Income and related schedules.

5.  Account information for all bank accounts used by Debtors from May 4, 2022, through July 25, 2025, including but not limited to, account numbers, bank statements, and the means of access to such accounts. For the avoidance of any doubt, this request includes, but is not limited to, (i) any accounts used by Debtors that have been discontinued or closed, and (ii) the "Borrower's Account" used in connection with the Loan, Chase Bank N.A. Account No. 83625722.[1]

Debtors identify these Priority Requests without prejudice to Debtors' remaining outstanding discovery requests as set forth in the Motion. Debtors' review of the Requested Examinees' document production made on the evening of Friday, October 31, 2025, remains ongoing. However, the production appears to be deficient in several respects, including but not limited to,

---

[1] You intimated at the First Day Hearing that Debtors had access to Debtors' bank accounts because they now collect rent from the SRO Tenants. As you well know, those bank accounts were opened upon the change in management of the Debtors following the July 25, 2025 UCC Sale of the membership interests in the Debtors.  Debtors are currently not in possession of information relating to bank accounts utilized by Requested Examinees for Debtors' business operations prior to July 25, 2025.



November 4, 2025
Page Three

Requested Examinees' failure to produce any substantive email correspondences in connection with the requests, including correspondences from the email domains "@cscre.us" and "@csc-coliving.com" domains utilized by Requested Examinees in the conduct of Debtors' business. After Debtors complete their review of the document production, we will identify additional deficiencies in subsequent correspondence.

Debtors would like to meet and confer as soon as possible regarding the Priority Requests, the timeline for the production of documents, and the remaining outstanding discovery requests. We ask that you promptly provide your availability for a meet and confer between November 4, 2025 and November 6, 2025.  We are available to discuss should have any questions in the interim.

Debtors reserve all rights and waive none.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation
Counsel to the Debtors**

Neal Kronley

NK


Copy to

**DLA Piper LLP (US)**
Stuart Brown
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801

and

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

# Exhibit A



**U.S. Department of Justice**
Office of the United States Trustee

*District of Delaware*
*844 King Street, Suite 2207*
*Wilmington, DE 19801*
*Tel. No. (302) 573-6491*

---

October 23, 2025

**Via Electronic Mail**
Stuart M. Brown, Esquire
DLA Piper LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE 19801

**Subject:      Hudson 1701/1706, LLC**
**Chapter 11 Bankruptcy Case No. 25-11853 (KBO)**

Dear Mr. Brown:

In furtherance of our monitoring responsibilities, the United States Trustee conducts initial debtor interviews, ("IDI") following the filing of a petition under Chapter 11 of the Bankruptcy Code. The purpose of the IDI is to discuss the debtor's fiduciary obligations and reporting requirements, and the U.S. Trustee's role in the administration of Chapter 11 cases.

Please forward the following (in electronic format only) via e-mail or other file sharing method to my attention by **end-of-business Thursday, October 30, 2025**. *Please Note: If the debtor is filing under Subchapter V, the following items should also be provided to the Subchapter V trustee appointed to the case.*

1. Copies of the latest 941 payroll tax returns filed;

2. A complete copy of each debtor's latest filed Federal tax or information return (Form 1120 – U.S. Corporation Income Tax Return and related schedules, or Form 1065 – U.S. Return of Partnership Income and related schedules);

3. Most recently prepared (i) unaudited financial statements (monthly) and (ii) audited financial statements, with disclosures;

4. Please provide an indication of whether the debtor utilizes a calendar or fiscal period reporting schedule;

5. List of each software system used to maintain financial records;

6. Chart of accounts from each software system used to maintain financial records;

7. Corporate organization chart of all debtor and any non-debtor entities;

8. If applicable, all intercompany transactions between debtor and non-debtor affiliates (if any), for 30 days prior to the petition date;

**Hudson 1701/1706, LLC    Case No. 25-11853 (KBO)**
October 23, 2025
Page 2

_____

9.  Copy of each debtor's (i) trial balance, as of the month end prior to filing, and (ii) unadjusted general ledger for thirty days prior to filing; (please provide in Excel if available);

10. Copies of most recent bank statements with un-redacted account numbers for all accounts open as of the filing date and a listing of those bank accounts (in Excel or Word) also including **full account numbers**;

11. Copies of certificates of insurance which must name the U.S. Trustee as a party to be notified (i.e., a "notice party", <u>not</u> a named insured) in the event of a policy cancellation or other change (certificates must be provided no later than 15 days after the filing date.); and

12. Unless already available on the court docket, please also provide:

    a.  Cash Flow Forecast or Budget (e.g., 13-week); and

    b.  Evidence of debtor-in-possession bank accounts (e.g., letter from bank indicating the designation).

    If the items above are already publicly available, please simply provide the docket item number (e.g., if the court has approved the use of existing bank accounts, the docket item number of the order will suffice.)

   We will contact you to schedule a time to conduct the IDI. If you or a representative of your firm is unavailable, we require your written consent to conduct the interview in your absence. **Since we will discuss reporting requirements of the Debtor(s) during the IDI, please ensure the individual(s) responsible for preparing financial reports to meet those requirements will attend.**

   If a debtor holds a substantial or controlling interest in any non-debtor entity, that debtor may also need to prepare Official Form 426, *"Periodic Reports Regarding Value, Operations and Profitability of Entities in which the Estate Holds a Substantial or Controlling Interest,"* as required by Bankruptcy Rule 2015.3. The first report is due seven (7) days before the first date set for the meeting of creditors under §341 of the Code. Official Form 426 may be found at https://www.uscourts.gov/forms/bankruptcy-forms.

   Please contact me with any questions.

                                    Very truly yours,


                                    */s/ Nyanquoi Jones*_____
                                    Nyanquoi Jones, Bankruptcy Auditor
                                    Nyanquoi.Jones@usdoj.gov

cc:  Malcolm M. Bates, Trial Attorney

## **<u>EXHIBIT 2</u>**

**November 7 Response**



November 7, 2025

**BY E-MAIL**

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Attn: Neal Kronley
Email: neal.kronley@us.dlapiper.com

      Re:   Response to Request for Information

Dear Mr. Kronley:

This letter is being sent in response to your Tuesday, November 4, 2025 letter (the "DLA Letter") and our meet and confer on Wednesday, November 5, 2025 at 11:00 a.m. Unless otherwise defined herein, all capitalized terms have the meanings assigned to them in the DLA Letter.

As previously noted, while we do not concede that Alberto Smeke Saba or Salomon Smeke Saba (collectively, the "Smekes") are obligated to produce the information requested in the DLA Letter, the Smekes are nevertheless providing certain information voluntarily, as a professional courtesy and without prejudice to any of their rights, objections, or privileges. The information is being provided solely as an accommodation, and in the form in which it presently exists in the Smekes' possession, without representation or warranty as to its accuracy, completeness, or sufficiency. Nothing contained herein should be construed as an admission of any kind, a waiver of any right, privilege, or protection, or a modification of any position previously stated or that may hereafter be asserted.

For convenience, we have reproduced below each of the requests from the DLA Letter, followed by the Smekes' corresponding responses and, where applicable, links to relevant documents.

1.    All financial statements (whether audited or unaudited), income statements, profit and loss statements, balance sheets, trial balances, general ledgers, subsidiary ledgers, chart of accounts, and other financial documents (including account reconciliations) of the Debtors from May 4, 2022 through July 25, 2025.

- Link to 2022 Documents
- Link to 2023 Documents
- Link to 2024 Documents
- Link to 2025 Documents

2.    A schedule of the software systems and related accounts used to maintain Debtors' financial records. Production should include a complete back-up copy of all data files and all passwords required to access the software systems/data files.

- Schedule of Software Systems:
  - Calendar Years 2023 – 2024: QuickBooks

1633 Broadway, 31st Floor  | New York, New York 10019  | T +1 212 407 7700  | F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



- Calendar Year 2025: AppFolio

- As previously discussed, our client is able and amenable to providing direct access to Debtors' information in AppFolio. Please provide the name(s) and email address(es) for people who need access to AppFolio.

3.    Documents pertaining to or relating to the accounting practices used by the Requested Examinees in connection with the Debtors' business and any deviations from such accounting practices and/or from the Generally Accepted Accounting Practices ("GAAP").

- Link to Accounting Practices

4.    All federal and state tax returns and other submissions to taxing authorities, including but not limited to, the latest filed 941 payroll tax returns, latest filed Form 1120 – U.S. Corporation Income Tax Return and related schedules, and/or Form 1065 – U.S. Return of Partnership Income and related schedules

- As discussed, this remains under review.

5.    Provide all Federal, state and local governmental permits, licenses, approvals and consents in connection with the Debtor's operations and the Property.

- Under review – please also see our letter to Stuart Brown at DLA Piper LLP (US) dated October 31, 2025 and attached hereto as Exhibit A.

6.    Account information for all bank accounts used by Debtors from May 4, 2022, through July 25, 2025, including but not limited to, account numbers, bank statements, and the means of access to such accounts. For the avoidance of any doubt, this request includes, but is not limited to, (i) any accounts used by Debtors that have been discontinued or closed, and (ii) the "Borrower's Account" used in connection with the Loan, Chase Bank N.A. Account No. 83625722.

- Link to Account Information and Statements

The Smekes expressly reserve all rights, privileges, and protections, whether arising under contract, statute, common law, or otherwise, including without limitation all attorney–client, work-product, joint-defense, and other applicable privileges. By providing the information contained herein, the Smekes do not waive, and expressly preserve, all objections and defenses in this matter, including as to jurisdiction, venue, standing, discovery scope, or any other procedural or substantive issue. Nothing contained in this correspondence shall be deemed or construed as an admission, agreement, or waiver of any kind.

Please feel free to reach out to me directly by phone at 212.407.6941 or by email at rsalame@vedderprice.com with any questions or concerns.

Sincerely,

Vedder Price P.C.

By:    /s/ Robert Salame
         Robert Salame

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



EXHIBIT A

(October 31 Letter to DLA Piper)


[See Attached]

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



October 31, 2025

**BY E-MAIL**

**DLA Piper LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, Delaware
Attn: Stuart Brown
Email: stuart.brown@us.dlapiper.com

      Re:   Response to Request for Information

Dear Mr. Brown:

This letter follows up on my email of Thursday, October 30, 2025, at 5:44 p.m. Unless otherwise defined herein, all capitalized terms have the meanings assigned to them in your colleague Neal Kronley's letter to me and David Rownd dated October 23, 2025 (the "DLA Letter").

As previously noted, while we do not concede that Alberto Smeke Saba or Salomon Smeke Saba (collectively, the "Smekes") are obligated to produce the information requested in the DLA Letter, the Smekes are nevertheless providing certain information voluntarily, as a professional courtesy and without prejudice to any of their rights, objections, or privileges. The information is being provided solely as an accommodation, and in the form in which it presently exists in the Smekes' possession, without representation or warranty as to its accuracy, completeness, or sufficiency. Nothing contained herein should be construed as an admission of any kind, a waiver of any right, privilege, or protection, or a modification of any position previously stated or that may hereafter be asserted.

For convenience, we have reproduced below each of the requests from the DLA Letter, followed by the Smekes' corresponding responses and, where applicable, links to relevant documents.

1.      Provide all books and records of Pledgor, including those pertaining to the SRO Tenants

- Please see letter from Bernath and Rosenberg, P.C., attached hereto as Exhibit A.

2.      Provide all financial statements (whether audited or unaudited), income statements, balance sheets, federal and state tax returns, and other financial documents of the Debtors.

- Hudson 1701/1702/1706 Balance Sheet
- Hudson 1701/1702/1706 General Ledger
- Income Statement 1701/1706
- Income Statement 1702

3.      Provide all contracts, agreements, leases, construction contracts, service and maintenance agreements, supply agreements, license agreements, utility agreements, warranties, guaranties, understandings and arrangements entered into between either Debtor and any entity, including any property management contracts, leases, etc., and any amendments or modifications thereto

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



(collectively "Agreements"), and any other material documents and correspondence relating to such Agreements, including any notices of claims, demands or defaults.

- Professional Contracts
- Third Party Reports
- Elysium GMP
- Elysium Org Chart
- Local Law 11
- Property Management Agreement
- Access Agreements
- Condo Market Reports
- Deed
- Slip and Fall Case
- Mold Report
- Leasing Brokers
- Gardiner and Thiebald
- Hotel Management Proposals
- The Malin Proposal

4.    Provide all Federal, state and local governmental permits, licenses, approvals and consents in connection with the Debtor's operations and the Property.

- All Construction Filings
- Permits
- Construction Plans
- Club Studio
- FDNY Approved Plans
- FDNY Permits
- Chiller Removal
- Water Test Results
- Sprinkler Plans
- ACP 8
- Boiler Removal
- Certificate of Capital Improvements

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



- [Community Board](#)

5.    Provide possession of all servers and passwords to email accounts owned or controlled by the Debtors.

- N/A – There are no email accounts or servers owned by Debtors.

6.    Provide the Debtors with access to all bank accounts in the Debtors' names and take all steps to cause the Debtors' current management to be signatory on all such bank accounts.

- N/A – there are no bank accounts, to which the Smekes have access, that are currently open in the name of Debtors.

7.    Identify which account SRO rents are paid into, and account for all rents paid since July 25, 2025.

- The Smekes do not have access to this information. The Smekes understand that Ms. Denise Cruz, a Parkview employee manages collections for the SRO tenants and has been since July 25, 2025.

8.    Provide the Debtors with copies of all books and accounts of the Debtors and other records for the Property and the improvements thereon.

- [Elysium Financials](#)
- [Change Orders](#)
- [Purchase Orders](#)
- [CM Agreement](#)
- [LAF Work Letter](#)
- [GMP Buyouts](#)

9.    Provide a list of all of the current SRO Tenants, their contact information, and copies of all related leases and other agreements.

- [SRO Rent Roll](#)
- [All SRO Tenant Files](#)

The Smekes expressly reserve all rights, privileges, and protections, whether arising under contract, statute, common law, or otherwise, including without limitation all attorney–client, work-product, joint-defense, and other applicable privileges. By providing the information contained herein, the Smekes do not waive, and expressly preserve, all objections and defenses in this matter, including as to jurisdiction, venue, standing, discovery scope, or any other procedural or substantive issue. Nothing contained in this correspondence shall be deemed or construed as an admission, agreement, or waiver of any kind.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



Please feel free to reach out to me directly by phone at 212.407.6941 or by email at rsalame@vedderprice.com with any questions or concerns.

Sincerely,

Vedder Price P.C.

By: ___/s/ Robert Salame_____
        Robert Salame

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



EXHIBIT A

(Letter from Bernath and Rosenberg)

[See Attached]

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



October 31, 2025

Re: **Hudson 1701/1706, LLC and Hudson 1702, LLC**
    **CSC Hudson LLC**
    **CSC Holdings LLC**

To Whom it May Concern:

We are the Certified Public Accountants for subject LLC and have been requested to address the portion of the Demand Letter dated October 23, 2025 pertaining to its tax returns.

CSC Holdings LLC is a multi-asset entity that holds numerous investments and assets beyond its prior membership interests in Hudson 1701/1706 LLC and Hudson 1702 LLC. As a partnership, CSC Holdings LLC files an annual U.S. Return of Partnership Income (Form 1065) with the Internal Revenue Service, which consolidates and captures the financial activity, assets, and operations of all its holdings, including Hudson 1701/1706 LLC and Hudson 1702 LLC. Due to confidentiality obligations and professional standards governing the disclosure of client tax information, neither we nor CSC can provide a copy of its tax return or related schedules.

Should you have any questions or if I can be of any assistance, please feel free to call at 212-221-1140.

Sincerely,
BERNATH & ROSENBERG, P.C.

Nathan Wilamowsky
Certified Public Accountant
:sb

Tel 212.221.1140 • Fax 212.221.1944
INFO@BERNATHANDROSENBERG.COM
WWW.BERNATHANDROSENBERG.COM

126 Spruce Street
Cedarhurst, NY 11516

365 Route 59, Suite 203
Airmont, NY 10952

1515 Pine Street, Suite 250
Lakewood, NJ 08701

**<u>EXHIBIT 3</u>**

**November 20 Letter**



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T  212.335.4584
F  917.778.8584

November 20, 2025

*VIA OVERNIGHT MAIL AND EMAIL*

**Vedder Price P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Attention: Robert Salame
       David Rownd
Email:  rsalame@vedderprice.com
       drownd@vedderprice.com

**Re:   Notice of Deficiency – Hudson 1701/1706, LLC and Hudson 1702, LLC
Request for Information and Turnover of Accounts**

Dear Bobby and David:

This firm is proposed special litigation counsel to Hudson 1701/1706, LLC and Hudson 1702, LLC (each, a "Debtor" and together, the "Debtors"). As you are aware, on October 23, 2025, Debtors demanded certain documents from CSC Hudson, LLC ("CSC") and Alberto Smeke Saba and Salomon Smeke Saba (individually and collectively, the "Smekes"), and provided a subsequent demand, dated November 4, 2025, seeking certain critical information (the "Priority Requests") as directed by the Court during the November 3, 2025 hearing (collectively, the "Demand Letters").

We write at this time concerning deficiencies in the document productions made by CSC and the Smekes on October 31, 2025, and November 7, 2025 (collectively, the "Production") and in response to the Demand Letters.

**Production Deficiencies**

While we appreciate that the Production provides certain categories of documents, including legacy SRO tenant files and various permits, plans, and drawings, the Production omits core financial and transactional information, fails to include basic communications with vendors and counterparties concerning claims and defaults, and is otherwise incomplete for key periods. The principal deficiencies and required remedial steps are as follows.

***First***, financial statements, accounting records, and bank information have been produced in a piecemeal and limited fashion that does not enable a fulsome accounting of Debtors' assets, liabilities, cash activity, and vendor obligations. For example, no tax returns have been produced



November 20, 2025
Page Two

to date, notwithstanding the Debtors' request for federal and state tax returns. To the extent your clients contend historic returns were filed on a consolidated basis with unrelated entities, you must promptly produce any Debtor-specific schedules or workpapers that feed into those consolidated returns and confirm whether any separate returns exist for the Debtors. You also agreed to provide payroll tax returns (e.g., Forms 941) to the extent Debtors had employees; those must be produced without delay.

**Second**, the Production lacks complete accounting system exports and documentation sufficient to reconstruct the Debtors' books and records. You have confirmed that Debtors' financial records were maintained in QuickBooks for 2023–2024 and in AppFolio for 2025. We appreciate that access to AppFolio has been provided; please also provide complete exports to QuickBooks, including general ledgers, trial balances, chart of accounts, journals, subledgers, accounts payable/receivable aging, vendor master files, and bank reconciliations for all periods available. To the extent 2022 records exist, they must be produced, and if they do not, your clients must explain the accounting practices for 2022 and identify all persons or entities involved in the creation or maintenance of any financial statements for the Debtors. Furthermore, the accounting practices provided in the Production do not provide what year they were implemented, and whether the same accounting practices were used throughout the ownership of the Debtors by CSC and the Smekes.  Please also confirm whether the Debtors' financial reporting was maintained on a calendar-year or fiscal-period basis.

**Third**, the Production does not include the requested correspondences, notices, and claims materials with vendors and contractors, including with Elysium, despite the Debtors' request for claims/default correspondence and related documents.  Although certain purchase orders for Elysium were produced, they are limited to 2022 and unaccompanied by invoices, payment records, or related communications. Complete files must be produced, including contracts, purchase orders, invoices, payment proofs, change orders, notices of claim or default, and correspondence with vendors and contractors.

**Fourth**, the Production omits email correspondence, or any form of communication, including text messages in any form. You have acknowledged that business for the Debtors was conducted via personal or non-Debtor accounts, and that your clients are retaining these communications, but you have not produced any such communications.  Email and other electronic correspondence is a fundamental component of the Debtors' requests. Your clients must conduct reasonable searches for emails and attachments within their custody and control concerning the Debtors' finances, bank accounts, vendor relationships, claims/defaults, and other operational matters, subject to mutually agreed scope and search terms and, as necessary, an appropriate confidentiality agreement or protective order.

**Fifth**, notwithstanding the Demand Letters' request for possession of and access to bank accounts in the Debtors' names and identification of the accounts into which SRO rents were paid, the



November 20, 2025
Page Three

Production does not provide a complete list of bank accounts, account ownership, signatories, and historical statements dating to the Debtors' formation. By way of example, and not of limitation, we note the following:

- April 7, 2025 transactions: Bank statements for accounts ending 5722 and 7988 reflect significant withdrawals and transfer activity on April 7, 2025, including approximately $704,000 from these accounts.

- Cash position at the UCC Sale: As of July 25, 2025, trial balance records reflect total cash of approximately $557,922.05 across accounts, including approximately $500,000 in operating cash in account ending 7263.

## Demand for Production

In light of the foregoing deficiencies, please produce the following:

- Complete accounting system exports and/or access from QuickBooks (2023–2024), including general ledgers, trial balances, journals, AP/AR aging, vendor masters, bank reconciliations, and chart of accounts for all Debtor entities and accounts. Please also provide the complete 2025 general ledger transaction detail for all Debtor entities and accounts through, at minimum, July 25, 2025, and, if more current, the latest period available. The file produced to date covers only the month of July 2025 and is limited to a single account code; accordingly, a full export reflecting all account codes and transactional activity for the year to date is required.

- Federal and state tax returns and, if consolidated, all Debtor-specific schedules, workpapers, and supporting documents; Forms 941 and any other payroll returns, to the extent applicable.

- A complete list of all bank accounts used by or for the Debtors, including bank name, account number suffix, account title, signatories, and statements from inception through present; all wire confirmations, transfer authorizations, and supporting documentation for significant transactions.

- Bank transaction data for the two Valley bank accounts ending in x2336 and x3308. To date, we have received statements only through March 2022 and December 2022, respectively; accordingly, we request all missing bank statements for these accounts from account inception to present.

- Clarify the nature of the "Citizen Bank Account for Tenant Rent Payments" as referenced in the balance sheet of the "Hudson 2025 Financial reports final.xlsx" file. If this item



November 20, 2025
Page Four

pertains to an actual bank account, provide all corresponding bank statements from account opening to present. Similarly, please explain the "Operating Cash" line item listed in the same financial report; if this balance is attributable to a specific bank account, furnish all related bank statements since account inception.

- Confirm whether the Debtors have had any obligation to contribute to a pension fund, and if so, produce all relevant documentation, including but not limited to liability notices, correspondence, and records of resolution.

- Specific to April 7, 2025: full request for production of documents relating to the April 7, 2025, withdrawals and transfers, including approximately $704,000 from accounts ending 5722 and 7988, with complete wire/transfer records, authorizations, communications, destination account details, and business-purpose explanations, including any links to account ending 7690.

- Documentation and confirmation of cash turnover and current balances as of and following July 25, 2025, including all records for account ending 7263 and any other operating accounts.

- All contracts, invoices, purchase orders, payment records, change orders, notices, and correspondence with vendors and contractors, including but not limited to Elysium and other subcontractors, and all communications concerning claims, demands, or defaults.

- Electronic correspondence and attachments responsive to the Demand Letters and the meet and confer on November 5, 2025, subject to agreed custodians, date ranges, search terms, and confidentiality protections. As an initial matter, document custodians should include, at minimum, Alberto Smeke Saba, Saloman Smeke Saba, and Shlomo Rosenfeld, for the date range August 1, 2021, through the present. We are willing to propose search terms to be run within these parameters.

Please confirm by **November 25, 2025, at 12:00 p.m.** (ET) whether you will remedy these issues, and please complete a production of documents to address these deficiencies no later than **December 3, 2025**. Absent such a resolution, we will seek relief before the Court during the December 12, 2025, conference and in connection with the pending *Emergency Motion Of The Debtors For Entry Of An Order Authorizing The Debtors To Conduct Rule 2004 Examinations* (the "2004 Motion"). We are willing to meet and confer on these issues as necessary.



November 20, 2025
Page Five

Debtors reserve all rights, remedies, and cause of action, and waive none.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation
Counsel to the Debtors**

Neal Kronley

NK

Copy to

**DLA Piper LLP (US)**
Stuart Brown
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801

and

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

and

**Hogan Lovells US LLP**
Richard Wynne
David P. Simonds
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

**<u>EXHIBIT 4</u>**

**November 25 Response**



November 25, 2025

**BY E-MAIL**

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Attn: Neal Kronley
Email: neal.kronley@us.dlapiper.com

   Re: <u>Response to Request for Information</u>

Dear Mr. Kronley:

This letter is being sent in response to your Tuesday, November 20, 2025 letter (the "<u>DLA Letter</u>"), which continues a troubling pattern of factual misstatements, mischaracterizations of prior discussions, and disregard for the actual record of what has been produced to date. Unless otherwise defined herein, all capitalized terms have the meanings assigned to them in the DLA Letter.

**THIS CORRESPONDENCE SERVES AS A DEMAND THAT DLA IMMEDIATELY CEASE AND DESIST FROM ANY FURTHER MISREPRESENTATIONS REGARDING OUR CLIENTS' COOPERATION, PRIOR PRODUCTION EFFORTS, AND THE SUBSTANCE OF THE PARTIES' COMMUNICATIONS.**

The DLA Letter is premised on a series of assertions that are categorically untrue, including, but not limited to, the claim that our clients have withheld core financial information, failed to produce bank records, or refused to provide vendor-related documentation. Each assertion is objectively contradicted by the materials produced on October 31st and November 7th, prior communications between counsel, and the extensive explanations provided during our meet-and-confer discussions. Put plainly, your correspondence is inaccurate, misleading, and unacceptable. You are instructed to correct the record and refrain from any further distortions of fact.

**ASSERTIONS OF "PRODUCTION DEFICIENCIES" ARE BASED ON FALSEHOODS**

Your purported "deficiencies" fall into three categories, none of which support the inflammatory rhetoric of your letter:

1. <u>Information you claim is missing has already been produced and you can independently confirm this yourself.</u>

   Consistent with DLA's misrepresentations at the First Day hearing that it was not in possession of insurance information, numerous items listed in the DLA Letter have been in your possession for weeks, and in some cases months. The fact that your team has either failed to review its own files or continues to request materials already produced by our client does not constitute a deficiency on our clients' part.

   For example, your bald assertion that the production "*covers only the month of July 2025 and is limited to a single account code*" is objectively false. As the enclosed screenshots show, our clients

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



already produced the complete 2025 general ledger, including (i) all Debtor entities, (ii) all account codes, and (iii) all transactional activity through July 25, 2025. Please see attached screenshots as Exhibit "A" and Exhibit "B". Your failure to locate or review these materials before asserting otherwise is inexplicable.

Likewise, your claim that our clients failed to produce "*all contracts, invoices, purchase orders, payment records, change orders, notices, and correspondence with vendors and contractors, including but not limited to Elysium*" is similarly misleading. The October 31st and November 7th productions included, among other things, Elysium purchase orders, invoices, payment records, subcontractor documentation, and change orders.

2.    <u>Certain categories of information do not exist.</u>

We have repeatedly informed you that certain categories of documents you continue to demand simply do not exist. Nevertheless, your latest letter continues to insist on their production, without any legal or factual basis.

By way of example, there are no federal or state tax returns issued solely by the Debtors, nor do there exist any Debtor specific schedules or workpapers supporting the consolidated tax returns. Notwithstanding, we have produced the underlying financial information that would have supported such filings had they been created.

Additionally, no Forms 941 or other payroll tax returns exist. This, too, has been explained to you. Your renewed demand is improper and knowingly inaccurate. Your insistence that our clients "*produce*" documents that do not exist is legally indefensible.

3.    <u>Certain materials remain outstanding solely because DLA has not completed its own prerequisites.</u>

Your letter conspicuously omits the fact, acknowledged during the November 5th meet and confer, that certain materials cannot be produced until DLA satisfies its own obligations, including providing acceptable confidentiality protections and negotiated search terms. DLA confirmed this in an email to us on Wednesday, November 5, 2025, acknowledging that the parties "*agreed to conduct a search of [our] client's email accounts for production to Debtors upon mutual agreement as to scope and search terms*" and that "*Debtors will follow up on this point.*" Attached hereto as Exhibit "C" is the related email chain. To date, we have received no such follow up from you. Your failure to finalize these basic prerequisites is the only reason certain correspondence has not yet been exchanged. Any contrary suggestion is misleading.

**DLA's Conflict of Interest**

Your continued aggression and misrepresentation must be viewed against DLA's ongoing conflict of interest. As you are well aware, DLA simultaneously represented the prepetition Debtors, their sole managing member and Parkview Financial REIT, LP a Delaware limited partnership ("Parkview") a central counterparty whose actions are directly implicated in the Debtors' financial condition and in the very issues you now purport to investigate under Rule 2004 (a motion for which has not been granted). This conflict is particularly stark in the context of that certain Settlement

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



Agreement attached hereto as <u>Exhibit "D"</u> (the "<u>Settlement Agreement</u>") and the related Escrow Agreement attached hereto as <u>Exhibit "E"</u> (the "<u>Escrow Agreement</u>").

Pursuant to Section 3 of the Settlement Agreement, the Smekes are contractually entitled to fifty percent (50%) of all savings arising from negotiated settlements with the third parties listed on Exhibit D thereto, including, without limitation, Elysium. You personally communicated proposed settlement terms with Elysium on behalf of both the Debtors and Parkview, terms which the Smekes (using their own personal resources and supplemental payment commitments) were able to secure. <u>See</u> email chain attached hereto as <u>Exhibit "F"</u>. Yet now, under the guise of acting as proposed special corporate and litigation counsel to the Debtors, DLA has taken the position that it must "*evaluate*" Elysium's claim as though this analysis has not already been performed by DLA itself. This newfound posture is inconsistent with your own prior involvement and is transparently aligned with Parkview's shifting litigation interests and not the Debtors' estates. Compounding this, DLA recently sought on behalf of the Debtors new DIP financing from Parkview that takes priority over the Elysium lien (i.e., a Permitted Lien), rather than honoring the previously negotiated settlement with Elysium that would have resolved that lien for approximately 4% of the lien amount.[1] That filing also undermines the economic benefit of the Elysium settlement to which the Smekes are contractually entitled.[2]

Similarly, on November 3, 2025 DLA sent correspondence to First American Title Insurance Company erroneously alleging that the Debtors are included within the defined term "*Confirming Parties*" in the Settlement Agreement and that such escrow amounts (funded solely by Parkview) are subject to certain Bankruptcy Code timelines. <u>See</u> correspondence attached hereto as <u>Exhibit "G"</u>. As you no doubt know, the Escrow Agreement is clear that a "*Confirming Party*" must be one of the "*Parties*," and the only "*Parties*" are the Escrow Agent (First American), the Administrative Agent (Parkview), and the Guarantor Parties (the Smekes). Your misrepresentations have resulted in the delay of the release of funds that unequivocally are due and owing to the Smekes. Taken together, this pattern of conduct demonstrates that: (i) DLA is operating with divided loyalties; and (ii) DLA is actively shaping the Debtors' litigation and discovery strategy in a manner that prejudices the Smekes and is more aligned with DLA's prior representation of Parkview.

Notwithstanding all of the issues raised herein, we continue to be available to meet and confer and provide such documentation and information reasonably available under the circumstances and to continue to answer questions you may have to the extent our client has the relevant information.[3]

The Smekes expressly reserve all rights, privileges, and protections, whether arising under contract, statute, common law, or otherwise, including without limitation all attorney–client, work-product, joint-defense, and other applicable privileges. By providing the information contained herein, the Smekes do not waive, and expressly preserve, all objections and defenses in this matter, including as to jurisdiction, venue, standing, discovery scope, or any other procedural or substantive issue.

---

[1] Concerned about such extreme relief that is inconsistent with market practice, this Court required the Debtors to withdraw such relief on an interim basis and reserved its decision on a final basis.

[2] We reserve all rights to raise objections, including claims for breach of contract by Parkview.

[3] For example, the DLA Letter includes a question relating to a Citizens Bank account. Please note that such account/profile relates to another entity controlled by our client and was erroneously mapped to the Debtor entities in Appfolio. There is no activity pertaining to the Debtor entities on the Citizens Bank account.

1633 Broadway, 31st Floor  |  New York, New York 10019  |  T +1 212 407 7700  |  F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



Nothing contained in this correspondence shall be deemed or construed as an admission, agreement, or waiver of any kind.

  Please feel free to reach out to me directly by phone at 212.407.6941 or by email at rsalame@vedderprice.com with any questions or concerns.

       Sincerely,

       Vedder Price P.C.

       By:   /s/ Robert Salame     
          Robert Salame

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2

**<u>EXHIBIT 5</u>**

**December 5 Letter**



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T   212.335.4584
F   917.778.8584

December 5, 2025

*VIA OVERNIGHT MAIL AND EMAIL*

Robert Salame
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
rsalame@vedderprice.com

**Re:     Second Notice of Deficiency - Hudson 1701/1706, LLC and Hudson 1702, LLC Request for Information and Turnover of Accounts**

Dear Bobby:

This firm serves as proposed special litigation and corporate counsel to Hudson 1701/1706, LLC and Hudson 1702, LLC (each, a "<u>Debtor</u>" and together, the "<u>Debtors</u>").  We have reviewed your letter, dated November 25, 2025, including the "demands" set forth therein. We write to respond and to attempt to resolve these issues without judicial intervention. Your letter's sweeping accusations, conclusory assertions, and use of incendiary rhetoric—such as the capitalized "cease and desist" directive and generalized allegations of "misrepresentations" and "falsehoods"— appear calculated to manufacture conflict rather than address the Debtors' reasonable and properly framed discovery requests and meet-and-confer positions. That approach is neither persuasive nor productive, and it does not relieve your clients of their existing and ongoing discovery obligations.

To ensure that there is a coherent record of our position, we have set forth the open requests from our November 20 letter, along with our understanding of Guarantors' position based on your November 25 letter.  We have noted where Guarantors have not provided a response.  We remain willing to meet and confer with you and your team in the hope of resolving these issues.

<u>**Request No. 1**</u>:

Complete accounting system exports and/or access from QuickBooks (2023–2024), including general ledgers, trial balances, journals, AP/AR aging, vendor masters, bank reconciliations, and chart of accounts for all Debtor entities and accounts. Please also provide the complete 2025 general ledger transaction detail for all Debtor entities and accounts through, at minimum, July 25, 2025, and, if more current, the latest period available. The file produced to date covers only the month of July 2025 and is limited to a single account code; accordingly, a full export reflecting all account codes and transactional activity for the year to date is required.



December 5, 2025
Page Two

**<u>Guarantors' Response</u>:**

Guarantors have produced "complete 2025 general ledger, including (i) all Debtor entities, (ii) all account codes, and (iii) all transactional activity through July 25, 2025. Please see attached screenshots as Exhibit "A" and Exhibit "B".

**<u>Debtors' Reply</u>:**

Guarantors produced a spreadsheet titled "Hudson 2025 Financial reports final.xlsx". The "General Ledger" provided in the second tab only covers the "1000-Operating Cash" account code. Debtors renew their request for the complete 2025 general ledger transaction details including all accounts through July 25, 2025.

<strong><u>Request No. 2</u>:</strong>

Federal and state tax returns and, if consolidated, all Debtor-specific schedules, workpapers, and supporting documents; Forms 941 and any other payroll returns, to the extent applicable.

**<u>Guarantors' Response</u>:**

Guarantors maintain that "certain categories of documents" simply do not exist, and state that "there are no federal or state tax returns issued solely by the Debtors, nor do there exist any Debtor specific schedules or workpapers supporting the consolidated tax returns. Notwithstanding, we have produced the underlying financial information that would have supported such filings had they been created. Additionally, no Forms 941 or other payroll tax returns exist."

**<u>Debtors' Reply</u>:**

During the meet and confer process, Guarantors noted that they will provide Form 941 or other payroll tax returns if they exist. With the November 25 letter, Guarantors appear to be stating, for the first time, that these documents do not exist. Debtors find it unlikely that that the Debtors have not filed tax returns, even in a consolidated return that the Smekes or CSC has filed. Please confirm that this is your position or produce redacted tax returns used in a consolidated memo so that we can review all necessary financial information.

<strong><u>Requests No. 3 and 4</u>:</strong>

A complete list of all bank accounts used by or for the Debtors, including bank name, account number suffix, account title, signatories, and statements from inception through present; all wire confirmations, transfer authorizations, and supporting documentation for significant transactions.



December 5, 2025
Page Three

Bank transaction data for the two Valley bank accounts ending in x2336 and x3308. To date, we have received statements only through March 2022 and December 2022, respectively; accordingly, we request all missing bank statements for these accounts from account inception to present.

**<u>Guarantors' Response</u>:**

No response provided.

**<u>Debtors' Reply</u>:**

Debtors appreciate that certain information has been provided with respect to the following bank accounts: (1) Chase Bank No. 7988, (2) Chase Bank No. 5722, (3) Chase Bank No. 7263, (4) Chase Bank No. 3993, (5) Valley Bank No. 2336, and (6) Valley Bank No. 3308. However, our November 20 letter sought, *inter alia*, "a complete list of all bank accounts used by or for the Debtors." It does not appear, however, that information regarding all bank accounts has been produced. By way of example, the bank statements for Chase Bank No. 5722 show a transfer of $704,000 on April 7, 2025 to another checking account ending in 7690.  Please produce the information for the account ending in 7690 and any other bank accounts used by or for the Debtors.

Please also produce the supporting documentation that sets forth the reason for the following transactions: (1) the April 7, 2025 withdrawal of $704,000 from the Chase Bank No. 5722 and (2) the April 7, 2025 withdrawal of $289,000 from Chase Bank No. 7263.  Likewise, please provide supporting documentation including any agreements and communications regarding the "Intercompany Receivables" listed on the 2025 Balance Sheet. Please provide information as to the identity, business, and purpose of the receivables for each of the entities listed in the Balance Sheet: (i) "340 Clifton," (ii) "Chestnut Retail LLC," (iii) "MEMBERS," (iv) "Arsa," (v) "CSC Coliving," (vi) "Mason," and (vii) "Rectory." Please also provide supporting documentation and any agreements and communications regarding the "Intercompany Notes" listed on the 2025 Balance Sheet.

<b><u>Request No. 5</u></b>:

Clarify the nature of the "Citizen Bank Account for Tenant Rent Payments" as referenced in the balance sheet of the "Hudson 2025 Financial reports final.xlsx" file. If this item pertains to an actual bank account, provide all corresponding bank statements from account opening to present. Similarly, please explain the "Operating Cash" line item listed in the same financial report; if this balance is attributable to a specific bank account, furnish all related bank statements since account inception.



December 5, 2025
Page Four

**<u>Guarantors' Response</u>**:

No response provided.

**<u>Debtors' Reply</u>**:

Debtors reiterate the demand for this information.

**<u>Request No. 6</u>**:

Confirm whether the Debtors have had any obligation to contribute to a pension fund, and if so, produce all relevant documentation, including but not limited to liability notices, correspondence, and records of resolution.

**<u>Guarantors' Response</u>**:

No response provided.

**<u>Debtors' Reply</u>**:

Debtors reiterate the demand for this information.

**<u>Request No. 7</u>**:

Specific to April 7, 2025: full request for production of documents relating to the April 7, 2025, withdrawals and transfers, including approximately $704,000 from the accounts ending 5722 and 7988 with complete wire/transfer records, authorizations, communications, destination account details, and business-purpose explanations, including any links to account ending 7690.

**<u>Guarantors' Response</u>**:

No response provided.

**<u>Debtors' Reply</u>**:

Debtors reiterate the demand for this information.



December 5, 2025
Page Five

**Request No. 8**:

Documentation and confirmation of cash turnover and current balances as of and following July 25, 2025, including all records for account ending 7263 and any other operating accounts.

**Guarantors' Response**:

No response provided.

**Debtors' Reply:**

Debtors reiterate the demand for cash turnover information. In particular, the 2025 Balance Sheet produced by Guarantors reflects cash balances of $577,922.05 as of July 25, 2025.  Please provide information regarding the location of and access to those monies.

**Request No. 9**:

All contracts, invoices, purchase orders, payment records, change orders, notices, and correspondence with vendors and contractors, including but not limited to Elysium and other subcontractors, and all communications concerning claims, demands, or defaults.

**Guarantors' Response**:

Guarantors state that "the October 31st and November 7th productions included, among other things, Elysium purchase orders, invoices, payment records, subcontractor documentation, and change orders."

**Debtors' Reply:**

Debtors confirm that certain information related to Elysium was provided; however, no communications with Elysium or any subcontractors have been produced and only limited other documents were produced relating to subcontractors.  Debtors reiterate the demand for this information.

**Request No. 10**:

Electronic correspondence and attachments responsive to the Demand Letters and the meet and confer on November 5, 2025, subject to agreed custodians, date ranges, search terms, and confidentiality protections.  As an initial matter, document custodians should include, at minimum, Alberto Smeke Saba, Saloman Smeke Saba, and Shlomo Rosenfeld, for the date range August 1, 2021, through the present.  We are willing to propose search terms to be run within these parameters.



December 5, 2025
Page Six

**<u>Guarantors' Response</u>:**

Guarantors appear willing to provide this information subject to search terms and a confidentiality agreement.

**<u>Debtors' Reply</u>:**

Please confirm that you agree to the particular document custodians and we will provide search terms.

**<u>Purported "Conflicts of Interest"</u>**

Your November 25 letter raises unfounded allegations that this law firm has a conflict of interest in serving as proposed special litigation and corporate counsel to the Debtors, and we note that you have objected to the retention application filed by DLA Piper in the U.S. Bankruptcy Court for the District of Delaware. This firm understands its ethical and legal obligations in discharging its duties as proposed special litigation counsel, and we will respond in due course to the Court in response to your objections.

Debtors reserve all rights, remedies, and cause of action, and waive none.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation
Counsel to the Debtors**

Neal Kronley

NK

Copy to

**DLA Piper LLP (US)**
Stuart Brown
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801



December 5, 2025
Page Seven


and

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

and

**Hogan Lovells US LLP**
Richard Wynne
David P. Simonds
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067


David Rownd (drownd@vedderprice.com)

## **EXHIBIT 6**

**December 11 Response**



December 11, 2025

**BY E-MAIL**

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Attn: Neal Kronley
Email: neal.kronley@us.dlapiper.com

      Re:   Response to December 5 Letter

Dear Mr. Kronley:

      This letter is being sent in response to your December 5, 2025 letter (the "DLA Response"), which, like your prior correspondence, continues a pattern of factual misstatements, selective omissions, and an evident effort to manufacture a record that does not exist. Your attempt to recast the Guarantors' accurate and well-documented responses as evasive or incomplete is entirely inconsistent with the actual productions, communications, and meet-and-confer history. The DLA Response misstates the Guarantors' positions, rewrites the historical record, and appears designed not to advance discovery but to create a fabricated narrative for later use. That tactic is a waste of time and resources, and it does nothing to resolve the issues you purport to raise.

      Your letter falsely attributes to the Guarantors positions they never took, strips context from prior explanations, and reframes clear statements as deficiencies. Likewise, your characterization of the absence of standalone Debtor tax returns, Debtor-specific schedules, and Forms 941 as "new" revelations is both incorrect and misleading. The Guarantors have stated repeatedly that those documents do not exist. Your subjective belief that such documents "likely" exist does not create them, nor does it justify a demand for records that were never prepared.

      Compounding this, the DLA Response introduces entirely new questions while pretending they were somehow previously asked and ignored. Many of the items you now label as "Requests" were never raised in your November 20 letter; they appear for the first time in the DLA Response. Repackaging newly manufactured queries as previously unanswered questions is an improper attempt to shift the burden and create a false record of non-responsiveness. The actual record shows the opposite: the Guarantors have responded promptly, accurately, and with documentation, while DLA continues to construct a narrative unsupported by facts.

      Your letter also ignores a critical fact. My November 25 letter expressly offered a meet and confer to address any remaining questions. Since that date, no one from your team has made any effort to schedule such a meeting. Instead of accepting that invitation, DLA chose to deliver another multi-page letter rehashing issues already addressed, injecting new demands, and accusing the Guarantors of conduct contradicted by the documentary record. This posture underscores that your letter is not intended to facilitate resolution but to generate paper for future motion practice. If DLA's genuine objective is to obtain information rather than perpetuate an unnecessary letter-writing campaign, then it should cease mischaracterizing the parties' communications and schedule the meet and confer the Guarantors already offered. We remain available to do so.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



The DLA Response further attempts to shift blame for the absence of email production onto the Guarantors while omitting DLA's failure to satisfy or even follow up on the prerequisites. As documented in your November 5 email, production of electronic correspondence cannot proceed until (i) an appropriate confidentiality agreement is finalized and executed, and (ii) search terms and custodians are agreed upon. Yet the DLA Response falsely implies that the Guarantors are withholding emails (e.g., with respect to Elysium). That accusation is knowingly inaccurate. The Guarantors stand ready to proceed once DLA satisfies the production requirements. Any suggestion to the contrary is misleading.

Your treatment of the conflict issues raised in my November 25 letter is equally deficient. The Response offers no substantive rebuttal to the fact that DLA simultaneously represented the Debtors, their sole managing member, and Parkview, a party whose interests diverge sharply from both the Debtors' and the Guarantors'. You do not deny your prior role in negotiating settlement terms with Elysium on behalf of both Debtors and Parkview. You do not address how your current position is inconsistent with your own prior evaluation of the Elysium claim. You do not address the misstatements made to First American concerning the definition of "Confirming Parties." You do not address why DLA sought DIP financing from Parkview that would undermine the negotiated lien resolution that benefits the Guarantors. Instead, you offer a single conclusory sentence that DLA "understands its obligations," which is no response at all. These conflict issues remain unresolved and will be pursued as appropriate.

Given the foregoing, the Guarantors reject the false narrative advanced in the DLA Response and reaffirm the accuracy of the record set forth in my November 25 letter. Nevertheless, and as previously stated, we remain willing to engage in a substantive meet and confer to address any remaining questions. To that end, please provide two or three proposed dates within the next five business days. Unless and until the conflicts concerns and confidentiality requirements are resolved and DLA finalizes search terms, email production cannot proceed

The Guarantors expressly reserve all rights, privileges, and protections, whether arising under contract, statute, common law, or otherwise, including without limitation all attorney–client, work-product, joint-defense, and other applicable privileges. By providing the information contained herein, the Guarantors do not waive, and expressly preserve, all objections and defenses in this matter, including as to jurisdiction, venue, standing, discovery scope, or any other procedural or substantive issue. Nothing contained in this correspondence shall be deemed or construed as an admission, agreement, or waiver of any kind.

Please feel free to reach out to me directly by phone at 212.407.6941 or by email at rsalame@vedderprice.com with any questions or concerns.

Sincerely,

Vedder Price P.C.

By: ____/s/ Robert Salame_____

Robert Salame

1633 Broadway, 31st Floor  | New York, New York 10019  |  T +1 212 407 7700  |  F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2