IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706, LLC, et al., | Case No. 25-11853 (KBO) |
| Debtors. | (Joint Administration Requested) |
| | Related Docket No. 18 |

**OBJECTION BY ALBERTO SMEKE SABA, SALOMON SMEKE SABA AND CSC HUDSON, LLC TO DEBTORS' AMENDED MOTION AUTHORIZING DEBTORS TO CONDUCT RULE 2004 EXAMINATIONS**

Alberto Smeke Saba, Salomon Smeke Saba and CSC Hudson, LLC ("CSC") (collectively, the "Smekes"),[1] by and through their undersigned counsel, object (this "Objection") to the Debtors' amended motion seeking to conduct Rule 2004 examinations of the Smekes [D.I. 18] (the "Amended 2004 Motion"), and state as follows:

1. The Debtors continue to misstate the ongoing efforts of the Smekes to produce documentation requested in the original 2004 motion. While the Smekes continue to work with the Debtors and their counsel (as acknowledged by Debtors' counsel to the Court at the last hearing), such requests continue to morph from the original scope and basis of their emergency 2004 motion (which remains pending).[2] The original emergency 2004 motion sought "*documents essential for the management of the Debtors' estates, including … Debtors' Schedules of Assets*

---

[1] The Debtors now seek the production of documents directly from CSC's chief financial officer, Mr. Rosenfeld, while at the same time seeking the same document production from CSC itself. There is no basis for such duplicative and unjustified relief, especially since Mr. Rosenfeld has been gathering the documentation and information requested and produced to date. Moreover, nothing in their Amended 2004 Motion supports such relief, which relief and subpoena with respect to Mr. Rosenfeld should be denied.

[2] See letters referenced in footnote 3 and attached as Exhibit B to the Amended 2004 Motion.

VP/#74585492.2

*and Liabilities and Statements of Financial Affairs ....*"[3] See page 1 of such motion. As the Court can see from a review of the proposed amended discovery requests (Exhibit C to the Amended 2004 Motion), the scope and purpose of the Debtors' relief has gone well beyond such original relief requested, and why the Debtors have now sought to amend such relief.

2. For the avoidance of doubt, the Smekes have provided: (i) hundreds if not thousands of documents in response to Debtors' requests, and (ii) direct access to the Smeke's accounting applications so the Debtors' representatives can view and access information firsthand without any intermediary.

3. With regards to the Debtors' bald allegations that the Smekes have refused to cooperate or otherwise provide documentation, those allegations are unfounded and arise based on two general grounds, that: (i) no such documentation exists or (ii) such requests are outside the scope of the emergency 2004 motion.

4. With respect to basis (i), the Smekes cannot produce what does not exist, nor are they required to. *See* Bankruptcy Rule 7034 (parties are only required to produce documents that are within their "possession, custody or control."). That being said, Debtors' counsel has asserted, both at meet and confers and in this Amended 2004 Motion that they do not believe the Smekes are telling the truth.[4] The Smekes reject such baseless claims. As an example for the Court, the Debtors have repeatedly requested federal and state tax returns for each of the Debtors.[5] The Smekes have repeatedly informed the Debtors that they do not exist because such entities were

---

[3] As the Court is aware the Debtors have since filed such Schedules and Statements. See ECF##164-167.

[4] "*Debtors are unable to meaningfully assess the Guarantors' assertion that certain categories of documents do not exist…*" See paragraph 20 of the Amended 2004 Motion.

[5] See paragraph 21 of the Amended 2004 Motion.

2

VP/#74585492.2

filed on a consolidated basis with non-debtor entities and no individual schedules or workpapers were prepared for the Debtors. Rather, financial information already provided to the Debtors served as the basis to prepare such returns.[6] Moreover, the Smekes informed Debtors' counsel that they should talk directly to the Debtors' former accountants, whose contact information the Debtors have been provided. It's unclear, however, if the Debtors have undertaken such efforts.

5.      Additionally, throughout this process the Smekes have asked the Debtors if they had reached out to Parkview, their longtime prepetition lender, equity owner and current DIP lender, whether they have any of the documentation or information being requested. The Debtors have ignored such requests or otherwise refused to answer.[7] As this Court noted at the first-day hearing, if such documentation or information is available to the Debtors from other sources but they complain to the Court about such requests not being met, the Court will be dissatisfied to learn.[8]

6.      With respect to basis (ii), as noted above the Debtors now seek information and documentation well beyond the original emergency 2004 motion, and only now do the Debtors seek such relief before this Court (to be heard on January 13th). While the Smekes will investigate

---

[6] See Section 2 of the November 25 Response (as defined and attached to the Amended 2004 Motion).

[7] On information and belief, the Debtors have been provided various financial and other information from Parkview in connection with the development of the DIP budgets, including in respect of the Debtors' tax obligations. Furthermore, as confirmed by the Objection of the US Trustee to DLA's retention as Debtors' counsel (ECF#213), DLA, on behalf of Parkview, was involved in most, if not, all of the prepetition transactions relating to the Debtors, which raises the question why the Debtors (through DLA and Parkview) do not have the information requested in their Amended 2004 Motion.

[8] The Court's comment came in response to Debtors' counsel's assertion that the original 2004 Motion was necessary because Debtors did not have access to insurance information, information Debtors' counsel subsequently confirmed as the meet and confer was not needed because the Debtors were already in possession of such information. DLA is again making such unsupported allegations.

what documentation or information responsive to such further requests exist, they raise the following initial objections to the scope of such requests:

    a. With respect to several of the Debtors' requests, they seek "all Documents and Communications" that relate to the topic itself, including, inter alia, to determine the purpose and use of all bank accounts, any transaction over $100,000 and all cash turnover and bank account balances. Such requests are overbroad and improper.

    b. Similarly, Debtors also seek "all Documents and Communications" relating to a long list of terms set forth on Exhibit B to the Amended 2004 Motion and reaching back to August 2, 2021. Such an overly broad scope of discovery is not meant to "administer the estates" as asserted in their Amended 2004 Motion, but rather to harass the Smekes and try blame them for all the problems and conflicts the Debtors are facing now. Parkview (and their counsel) has long been involved in the operations of this property as the secured lender under a broad set of loan documents and it chose to foreclose on these assets. That it continues to "allege" that it does not to the information and documents necessary to operate the property, more than three (3) months into these bankruptcy cases is questionable and at the same time telling.

    c. Debtors also seek discovery, including communications, with respect to matters relating to a pending adversary proceeding among the Smekes, the Debtors, Parkview and commenced by First American Title Insurance Company, as escrow agent. Such discovery should be addressed in connection with that

proceeding and not a part of this Amended 2004 Motion, especially given DLA's prepetition and conflicting representation of Parkview.

WHEREFORE, for the foregoing reasons, the Smekes respectfully request that the Court enter an order (A) sustaining this Objection, (B) narrow the scope of the subpoenas as set forth herein, and (C) granting the Smekes such further relief as may be just and proper.

| | |
|---|---|
| January 6, 2026<br>Wilmington, Delaware | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ Matthew P. Ward*<br>Matthew P. Ward, Esq. (Del. Bar No. 4471)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile:  (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br><br>-and-<br><br>**VEDDER PRICE P.C.**<br>Michael L. Schein, Esq.<br>Robert Salame, Esq.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Telephone: (212) 407-7700<br>Facsimile:  (212) 407-7799<br>Email: mschein@vedderprice.com<br>           rsalame@vedderprice.com<br><br>*Counsel to Alberto Smeke Saba and Salomon Smeke Saba* |