## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706, LLC, et al.,[1] | Case No. 25-11853 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Related D.I.: 99, 123, 208, 210, 213** |

### DEBTORS' OMNIBUS REPLY TO
### OBJECTIONS TO APPLICATION OF THE DEBTORS
### FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO
### RETAIN AND EMPLOY DLA PIPER LLP (US) AS SPECIAL COUNSEL,
### EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF

Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors") submit this omnibus reply (this "Reply") in support of their application [D.I. 99] (the "Application") to retain DLA Piper LLP (US) ("DLA Piper") as special counsel pursuant to section 327(e) of the Bankruptcy Code, and in response to the objections of (i) Alberto Smeke Saba and Salomon Smeke Saba (collectively, the "Smekes") [D.I. 123] (the "Smeke Objection"), (ii) the Official Committee of Unsecured Creditors (the "Committee") [D.I. 208] (the "Committee Objection"); and (iii) the Office of the United States Trustee (the "U.S. Trustee") [D.I. 213] (the "U.S. Trustee Objection" and, together with the Smeke Objection, the Committee Objection, and the 356W58 Joinder, [2] the "Objections"). In support of this Reply, the Debtors submit the declaration of Stuart M. Brown [D.I. 99-2, Ex. B] (the "Initial Brown Declaration") and the supplemental declaration of Stuart M. Brown, attached hereto as **Exhibit A** (the "Supplemental Brown Declaration"), and state as

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] As counsel did not seek an extension to the Application objection deadline, 356W58 Ground Lessor LLC filed an untimely joinder [D.I. 210] to the Committee Objection (the "356W58 Joinder"). In any event, it raises no independent arguments and should be overruled as both untimely and without merit.

follows:[3]

## PRELIMINARY STATEMENT

1.      DLA Piper, the Debtors' chosen special counsel, is a sophisticated law firm with significant resources, experience, and ability to represent the Debtors in various litigations and in certain transactional and related matters.   The Objections rehash arguments that have been previously advanced and rejected with respect to other special counsel retention applications in other cases.   They attempt to deprive the Debtors of their chosen counsel, to the detriment of their estates.   None provides legitimate, legally sound, grounds for the Court to deny the retention of DLA Piper as special counsel under section 327(e) of the Bankruptcy Code.

2.      The Objections raise three broad arguments against DLA Piper's retention, none of which has merit.

3.      *First*, they assert that the scope of services proposed to be provided by DLA Piper during these chapter 11 cases is too broad to satisfy retention under section 327(e) of the Bankruptcy Code and argue that, instead, DLA Piper must be retained under section 327(a).   The proposed scope of DLA Piper's services, especially as narrowed through this process, is tailored to comply with section 327(e) of the Bankruptcy Code and is consistent with retentions previously approved under that section in this District.   While the Debtors believe that the initial proposed scope was appropriate, in an effort to address any concerns, the Debtors have agreed to narrow the scope of the services for which DLA Piper will serve as special counsel and have revised the

---

[3] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Amended and Restated Declaration of Alan Tantleff in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 60] (the "Last Day Declaration").   Capitalized terms used but not otherwise defined in this Reply have the meaning given to them in the Application or the First Day Declaration, as applicable.

proposed form of order authorizing DLA Piper's retention to reflect a narrower scope of services, attached hereto as **Exhibit B**.[4]

4.      As refined, DLA Piper will primarily be responsible for litigation matters, including the recharacterization action against the purported ground lessor, 356W58 Ground Lessor LLC, and disputes with the Smekes, and certain real estate, regulatory, tax, corporate, and governance matters.[5]   The proposed scope of services is a "down the middle" approach to the use of special counsel services, and courts in this District have repeatedly approved retention of 327(e) counsel to handle similar matters.

5.      The U.S. Trustee and Committee's arguments that retention under section 327(e) of the Bankruptcy Code is inappropriate in situations where litigation to be handled by special counsel is 'existential' to the chapter 11 cases, is also not a requirement imposed by the Bankruptcy Code and is inconsistent with practice in this District.   While the issues that DLA Piper will litigate are certainly important, they are not case-central, bankruptcy or plan treatment disputes. Numerous cases have approved retention of special litigation counsel under section 327(e) where representation included sizeable and important litigation and other duties.   *See e.g.*, *Stapleton v. Woodworkers Warehouse, Inc.( In re Woodworkers Warehouse, Inc.*), 323 B.R. 403, 407 (D. Del.

---

[4] A blackline comparing the revised Proposed Order against the order attached to the Application is attached as **Exhibit C**.   The Debtors have also executed an amended engagement letter with the Debtors (the "Amended Engagement Letter"), attached as **Exhibit D**. A blackline comparing the Amended Engagement Letter against the engagement letter attached to the Application is attached as **Exhibit E**.

[5] Paragraph 4 of the revised proposed form of order authorizes DLA Piper's retention in connection with debtor in possession financing and use of cash collateral matters from the Petition Date through December 4, 2025.   Consistent with terms of the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expense of Professionals* [D.I. 152], DLA Piper will seek compensation for all services rendered in connection with debtor in possession financing and use of cash collateral through and including December 4, 2025, subject to the rights of the U.S. Trustee and other parties in interest to object.   These services were provided prior to the U.S. Trustee's informal comments and Debtors' and DLA Piper's agreement to narrow the scope of DLA Piper's retention to exclude debtor in possession financing and use of cash collateral. This is not unique, as the U.S. Trustee recently agreed not to disgorge special counsel's fees incurred in connection with services that special counsel later agreed to remove from the scope of its retention. *See In re MOM CA Investco LLC*, Case No. 25-10321 (BLS) (Bankr. D. Del. May 13, 2025) [D.I. 397].

2005) (District court upheld bankruptcy court approval of counsel pursuant to section 327(e) to, among other things, assist the debtor with asset sales because the order left a wide range of services to be performed by general bankruptcy counsel, and narrowly defines the tasks to which special counsel was authorized to perform.).  Any arguments regarding the impropriety of scope, particularly in light of DLA Piper's revised proposed scope of services, should be overruled.

6.      *Second*, the Objections argue that DLA Piper is unable to satisfy either the section 327(e) standard—that it not hold or represent an "adverse interest" to the estates with respect to the matters on which it is to be employed—or the "disinterested" standard under section 327(a) of the Bankruptcy Code.

7.      DLA Piper does not hold or represent an interest adverse to the Debtors or their estates on the matters on which it is to be retained.  Section 327(e) of the Bankruptcy Code, applicable here, narrows the actual or potential conflict of interest issue only as to the "***particular matters*** for which representation is sought."  *See In re Statewide Pools, Inc.*, 79 B.R. 312, 314 (Bankr. S.D. Ohio 1987) (emphasis added).  Although DLA Piper represented Parkview and certain of its affiliates,[6] including in connection with certain matters related to the Debtors prior to these chapter 11 cases, DLA Piper has represented solely the Debtors since the Petition Date in matters related to Hudson.  Before the Petition Date, Parkview engaged Hogan Lovells US LLP ("Hogan Lovells") as lead counsel[7] to represent Parkview in connection with matters related to these chapter 11 cases.  No party contends that DLA Piper's prior representation of Parkview impacts the transactional services that DLA Piper will provide.  With respect to litigation matters

---

[6] The Smeke Objection incorrectly asserts that DLA Piper did not disclose its prepetition representation of PV Hudson LLC.  *See* Semeke Obj., n.2. As disclosed on Schedule 2 to the Initial Brown Declaration, DLA Piper represented Parkview.  PV Hudson is a special purpose entity created to hold the equity of the Debtors. Schedule 2 to the Initial Brown Declaration disclosed PV Hudson as a non-debtor affiliate of a current client.

[7] Pachulski Stang Ziehl & Jones LLP is serving as Parkview's local counsel.

on which DLA Piper is intended to work, the Debtors' and Parkview's interests are fully aligned.[8]

And, DLA Piper has agreed, and the revised Proposed Order reflects, that DLA Piper will not

participate in matters that directly implicate[9] or involve Parkview; such matters will be handled

exclusively by Chipman Brown Cicero & Cole, LLP ("CBCC"), as general bankruptcy counsel.

Further, DLA Piper's revised engagement letter clarifies that DLA Piper will not represent

Parkview in the future related to the Debtors, their estates, or the Project.   Any issues of concern

will be analyzed and determined by the Debtors' independent manager (the "Independent

Manager") exclusively.   To the extent that any conflict of DLA Piper's representation is identified

by the Independent Manager, DLA Piper will step aside.   DLA Piper does not represent any other

parties in connection with the Debtors or in connection with these chapter 11 cases.   Accordingly,

the Debtors submit that DLA Piper does not hold an interest adverse to the Debtors or their estates

in connection with the contemplated special counsel services as required under section 327(e) of

the Bankruptcy Code.

8.      *Third*, DLA Piper has fully and completely complied with all disclosure obligations

required under Bankruptcy Rule 2014(a).   The U.S. Trustee contends that DLA Piper failed to

disclose an August 2025 payment from Parkview of approximately $820,000 that the U.S. Trustee

contends was made on behalf of the Debtors.   While it is true that DLA Piper received a payment

---

[8] The Smekes contend that DLA Piper cannot represent the Debtors in disputes related to the Settlement Agreement to which they are a party. But they have not articulated how the firm holds an interest adverse to the estates by seeking to protect the estates' interests in funds escrowed under that agreement: both Parkview and the Debtors have an aligned interest in ensuring that estate funds are available to pay legitimate creditors of the Debtors, and ensuring that the terms of the Settlement Agreement are honored; provided, however, the Debtors reserve all rights, including with respect to whether the Settlement Agreement is executory and whether to assume or reject the Settlement Agreement and seek to discharge under a plan all claims against the Debtors arising out of or accruing under the Settlement Agreement..

[9] As Parkview is the debtor in possession lender to the Debtors and owns the equity of the Debtors, matters in these chapter 11 cases "implicate or involve" Parkview in the broadest sense. The Debtors and DLA Piper intend, however, that DLA Piper will not represent the Debtors in matters that directly implicate Parkview or its non-debtor affiliates.

of approximately $820,000 to fees for Parkview during the preference period, all but approximately $43,000 was applied to work performed before the July 25 foreclosure solely for Parkview, and the remainder was applied primarily to post-foreclosure transitional work. The Debtors disclosed this payment to the U.S. Trustee as part of customary, further inquiries and conferences out of an abundance of caution. As discussed in the Supplemental Brown Declaration, there was no improper lack of disclosure, here. DLA Piper has and will continue to disclose all connections to parties in interest in these chapter 11 cases.

9.      As set forth in the Application, and further in this Reply, retention of DLA Piper is in the best interests of the Debtors' estates and is consistent with section 327(e) of the Bankruptcy Code and longstanding practice in this District. The Debtors respectfully request that the Court overrule the Objections[10] and approve DLA Piper's retention on the terms of the revised Proposed Order.

## **REPLY**

### **A.    The Application Should Be Approved Because the Scope of DLA Piper's Retention is Appropriate Under Section 327(e) of the Bankruptcy Code**.

10.      Section 327(e) of the Bankruptcy Code authorizes a debtor, with court approval, to retain:

> for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

---

[10] Without making reference to the governing legal standards (or any case or statutory law), the Smeke Objection makes a range of accusations that DLA Piper is conflicted, attempting to use the Application to litigate issues that are not relevant to the Application or standards regarding section 327(e) employment as special counsel. The Smeke Objection peddles in vague 'concerns' about conflicts of interest and duplicative scope of work, without argument tied to any cognizable legal standard. The Court should reject the Smekes's transparent attempt to litigate substantive issues regarding discovery and the Settlement Agreement and Escrow Agreement that are pending before the Court.

11 U.S.C. § 327(e).

11.    In considering whether to appoint special counsel under section 327(e) of the Bankruptcy Code, courts generally consider whether:

> (1) the representation is in the best interest of the estate, (2) the attorney represented the debtor in the past, (3) the attorney is for a specific purpose approved by the court, other than to represent the debtor in conducting the case, [and] (4) the attorney does not represent or hold an interest adverse to the debtor or the debtor's estate.

*In re Woodworkers Warehouse, Inc.*, 323 B.R. 403 at 406.  In approving section 327(e) scope, courts "should consider all relevant facts surrounding the debtor's case, including but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, the history and relationship between the debtor and the proposed special counsel, the expense of replacement counsel, potential conflicts of interest and the role of general counsel."  *Id.*

12.    A review of practice in this District shows that Courts continue to follow the flexible approach to section 327(e) retention adopted in *Woodworkers Warehouse*, and routinely authorize the retention of counsel for special counsel retained for limited purposes that include, among other things: (a) assisting in securing a debtor's use of cash collateral, finalizing its key employee retention program, and selling estate assets, *see Woodworkers Warehouse, Inc.*, 323 B.R. at 404;[11] (b) assisting in the initial phases of a chapter 11 case on a limited basis, negotiating key government issues, and negotiating financing arrangements;[12] (c) advising on tax matters or

---

[11] *See also In re Pace Industries, LLC*, Case No. 20-10927 (MFW) [D.I. 159] (Bankr. D. Del. May 7, 2020) (authorizing the retention of special counsel under section 327(e) to advise and assist the Debtors with respect to the Debtors' debtor in possession financing and associated services); *see also In re Vice Group Holding Inc.*, Case No. 23-10738 (JPM) [D.I. 512] (Bankr. S.D.N.Y. Sep. 29, 2023) (authorizing the retention of special counsel under section 327(e) to advise on debtor in possession financing, asset sales, exit financing, general corporate and litigation matters, and other matters related to the chapter 11 cases, not otherwise duplicative.

[12] *See In re Inslaw, Inc.*, 55 B.R. 502, 505 (Bankr. D. D.C. 1985).

securities law compliance;[13] (d) advising in litigation, investigations and disputes;[14] and (e) assisting with plan negotiations and documentation related to historic corporate advice.[15]  Notably, courts in this District have allowed for a debtor's historic counsel to assist with, or take the lead on, a debtor's litigation matters.[16]  Contrary to the Committee and U.S. Trustee's assertions, the matters pursuant to which the Debtors seek to retain DLA Piper under section 327(e) of the Bankruptcy Code—limited, transactional work and litigation—are entirely the types of tasks that courts in this District typically allow debtors to retain special counsel to accomplish.

13.    The proposed revised scope of services is appropriate under section 327(e).  DLA Piper's role also is comparable to (and, in fact, more limited than) that of the special counsel in *In re Woodworkers Warehouse, Inc.*, the case cited by the Committee and the U.S. Trustee for the standard applicable to section 327(e) retentions.  In that case, the district court affirmed the bankruptcy court's order authorizing the debtor to employ special counsel to perform services such as obtaining court approval for the use of cash collateral, selling assets through a "going out of business sale" and disposing of related executory contracts, and preparing and negotiating the debtor's key employee retention program.  *Woodworkers Warehouse, Inc.*, 323 B.R. at 405.

---

[13] *See In re Enviva Inc.*, No. 24-10453 (BFK), 2024 Bankr. LEXIS 1548, at *19 (Bankr. E.D. Va. Jul. 2, 2024); *see also In re Azul S.A.*, Case No. 25-11176 (SHL) [D.I. 225] (Bankr. S.D.N.Y. Jul. 16, 2025) (authorizing the retention of special counsel under 327(e) for debtor airline to provide services related to owned aircraft, leased aircraft, contracts related to the purchase, maintenance, or lease of aircraft, the financing or restructuring thereof, litigation related to any of the foregoing, and postpetition financing).

[14] *In re WMC Mortgage LLC*, Case No. 19-10879 (CSS) [D.I. 79] (Bankr. D. Del. May 20, 2019) (authorizing the retention of special counsel under 327(e) to represent Debtor in litigation and investigation matters and consult with general bankruptcy counsel with regard to special counsel's matters to the extent those matters impact plan formulation); *see also In re Steward Health Care System LLC*, Case No. 24-90213 (CML) [D.I. 675] (Bankr. S.D. Tex. June 5, 2024) (authorizing the retention of special counsel under 327(e) to assist with 363 asset sales, ongoing litigation and governmental investigation matters, and internal and external investigations and disputes).
[15] *See In re Bicent Holdings LLC*, Case No. 12-11304 (KG) [D.I. 119] (Bankr. D. Del. May 16, 2012).

[16] *See e.g.*, *In re PGX Holdings, Inc.*, Case No. 23-10718 (CTG) [D.I. 204] (Bankr. D. Del. Jul. 19, 2023); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) [D.I. 438] (Bankr. D. Del. Aug. 13, 2019); *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) [D.I. 320] (Bankr. D. De, Jul. 26, 2017).

14. Importantly, DLA Piper is not "conducting a case," as asserted in the Committee and U.S. Trustee Objections. Rather, the Debtors have retained CBCC for that purpose. CBCC is highly competent bankruptcy counsel and is "covering matters for which [special counsel] was not specifically designated counsel, and umbrella, supervising, coordinating, and strategizing regarding the course of the bankruptcy." *In re DeVlieg, Inc.*, 174 B.R. 497, 505 (N.D. Ill. 1994); *see also Woodworkers Warehouse, Inc.*, 323 B.R. at 407 (finding that general bankruptcy counsel's role included a "wide range of services left to be performed by general bankruptcy counsel demonstrat[ing] that general bankruptcy counsel had a prominent role to take in the Debtor's bankruptcy.").

15. Like the arrangement in *In re DeVlieg, Inc.*, CBCC is tasked with "supervising, coordinating, and strategizing regarding the course of the bankruptcy," handling all bankruptcy matters, and matters for which DLA Piper was not specifically designated counsel, while DLA Piper will handle litigation matters and "simply does the leg-work" in relation to the narrowly tailored special transactional matters. 174 B.R. at 505. For example, under the proposed scope of services, DLA Piper would provide "back office" transactional plan support, while CBCC would draft and negotiate the actual terms of any plan. CBCC is also providing a wide scope of services in these chapter 11 cases, including with respect to (i) analyzing and assisting in the Debtors' postpetition financing and use of cash collateral (from and after December 4, 2025); (ii) preparing and finalizing traditional "first day" and "second day" pleadings; (iii) preparing the Debtors' Statements of Financial Affairs and Schedules of Assets and Liabilities and monthly operating reports and attending the section 341(a) meeting of creditors; (iv) negotiating, drafting, finalizing, and seeking confirmation of a chapter 11 plan; (v) analyzing and prosecuting proceedings respecting contracts and leases other than the purported ground lease; and (vi) addressing the

claims process, among numerous other services involved in conducting the cases. Any postpetition work that has been done by DLA Piper related to the main features of these chapter 11 cases was in furtherance of expeditiously transitioning matters to CBCC, as sole general bankruptcy counsel, as well as providing insight informed by DLA Piper's historic corporate and litigation roles.

16.     The U.S. Trustee Objection argues, based on one decision from almost thirty years ago from a bankruptcy court in the Southern District of Georgia, that the proposed scope of DLA Piper's employment exceeds the scope permitted under section 327(e) because the recharacterization litigation "is not a mere continuation of complex litigation." U.S. Trustee Obj. ¶ 56. Of course, there is no such language in the Bankruptcy Code requiring that special counsel may be retained only with respect to an action that was pending on the Petition Date. [17] In any event, the recharacterization complaint is merely one piece in a strategy with respect to the purported ground lease and does not undermine or reframe the central purpose of these chapter 11 cases or consist of conduct of the chapter 11 cases, or determine the business transactions or other terms of any plan to be proposed by the Debtors. The U.S. Trustee's position that the Court add a condition to the employment of special counsel (*i.e.*, that the 'special purpose' litigation must have been commenced prior to the Petition Date) must be rejected because it would have the Court rewrite the statute, a power reserved to Congress. *See generally Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) (courts should not add an "absent word" to a statute); *Mobil Oil Corp. v. Higginbotham,* 436 U. S. 618, 625 (1978) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.").

---

[17] Section 327(e) of the Bankruptcy Code does include language that the special counsel represented the Debtors prior to the chapter 11 cases. That language does not specify that such prior representation need be in the matters for which it is to be retained. Nevertheless, DLA Piper's prepetition representation of the Debtors did involve the matters for which DLA Piper is proposed to be retained as special counsel in these chapter 11 cases.

17.     Similarly, the Committee's argument that employment under section 327(e) is inappropriate in situations where litigation to be handled by special counsel is 'case determinative' is not a requirement of retention under section 327(e).  Committee Obj. ¶¶ 31-34.  First, the Debtors reject the contention that the litigation is case determinative.   Second, numerous cases have approved retention of special litigation counsel under section 327(e) where such representation included sizeable and important litigation and other duties.   *See e.g.*, *In re Woodworkers Warehouse, Inc.*, 323 B.R. at 407–408  (District court upheld bankruptcy court approval of counsel pursuant to section 327(e) to, among other things, assist the debtor with asset sales because the order left a wide range of services to be performed by general bankruptcy counsel, and narrowly defines the tasks to which special counsel was authorized to perform); *In re PGX Holdings, Inc. et al.*, Case No. 23-10718 (CTG) [D.I. 204] (Bankr. D. Del.) (Jul. 19, 2023) (authorizing the retention of special counsel under section 327(e) to represent the debtors in connection with all litigation involving the Consumer Financial Protection Bureau); *In re Insys Therapeutics, Inc.*, Case No.19-11292 (KG) [D.I. 438] (Bankr. D. Del. (Aug. 13, 2019) (authorizing the retention of special counsel under 327(e) to represent debtors in connection with multidistrict litigation involving "more than 1,000" actions and consult with debtors and general bankruptcy counsel on special counsel's mattes to the extent they impact efforts to estimate or resolve claims and formulate a chapter 11 plan); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) [D.I. 320] (Bankr. D. Del.) (Jul. 26, 2017) (authorizing the retention of special counsel under section 327(e) to "represent the Debtors in all matters arising from the Airbag Litigation (as defined in the Application) and to continue to represent the Debtors in connection with the antitrust, regulatory, and corporate matters described in the Application" over the objection of the U.S. Trustee); *see also In re LTL Management LLC*, Case No. 21-30589 (MBK) [D.I. 1687] (Bankr. D.N.J. Mar. 10,

2022) (authorizing the retention of special counsel under section 327(e) to serve as special trial counsel and discovery counsel over the objections of the U.S. Trustee and Official Committee of Talc Claimants).

18.    Notably, the Committee and the U.S. Trustee are unable to cite a case in which an application was rejected under section 327(e) in similar circumstances.  The Committee cites to *Century Indem. Co. v. Congoleum Corp.* (*In re Congoleum Corp.*), 426 F.3d 675, 689 (3d Cir. 2005), *In re Roper and Twardowsky, LLC*, 566 B.R. 734 (Bankr. D.N.J 2017); *In re S. Shore Golf Club Holding Co., Inc.*, 182 B.R. 94, 95 (Bankr. W.D.N.Y. 1995); *In re Tidewater Mem'l Hosp., Inc.*, 110 B.R. 221, 227-28 (Bankr E.D. Va. 1989); and *In re Hempstead Realty Assocs.*, 34 B.R. 624, 625 (Bankr. S.D.N.Y. 1983) in support of its position.  These cases are inapposite.  Each focuses on concerns about actual conflicts of interest, rather than the scope of services, as part of denying the proposed retentions.[18]  *See Congoleum Corp.*, 426 F.3d at 687–91 (finding that proposed 327(e) counsel violated the Rules of Professional Conduct in representing parties on both sides of a negotiation of plan settlements); *Roper*, 566 B.R. at 744, 753 ("[t]he record [was] replete with complaints regarding [the proposed special counsel's] lack of cooperation with the creditors and the Trustee on the issue of discovery and scheduling depositions … [and the court] had zero confidence that the retention of [the proposed special counsel] would be in the best interest of th[e] estate."); *In re S. Shore Golf Club Holding*, 182 B.R. at 95 (Bankr. W.D.N.Y. 1995) (finding that even if an accountant could be retained under section 327(e), such appointment would not be appropriate because preparing the disclosure statement and plan were inherent to "general services of an accounting professional in any case under Chapter 11"); *In re Tidewater Mem'l Hosp.*, 110 B.R. at 227-28 (finding that proposed special counsel did not meet the disinterestedness standard,

---

[18] While the Debtors address the Committee's arguments that DLA Piper holds interest adverse to the Debtors in Section B, the cited cases are also distinguishable from DLA Piper's conduct in these chapter 11 cases.

as it was an unsecured creditor of the debtor and represented both the debtor and two other hospitals competing in negotiations to acquire the debtor); *In re Hempstead Realty Assocs.*, 34 B.R. at 625 (finding that the proposed 327(e) retention of a limited partnership's general partner as special counsel was an insider that was not a "disinterested person" within the meaning of section 101(13) of the Bankruptcy Code).

19.     Here, by contrast, the Committee does not—and cannot—pinpoint to any comparable conduct on the part of DLA Piper.  The Committee's reliance on these cases is therefore misplaced.

20.     DLA Piper's revised scope of services falls squarely within the appropriate bounds of a section 327(e) retention, and should be approved.

**B.     DLA Piper Does Not Hold Any Interest Adverse to the Debtors or to Their Estates With Respect to the Special Counsel Services.**

21.     DLA Piper does not hold or represent any interests adverse to the Debtors or to the estates with respect to the matters on which it will be employed.  Section 327(e) of the Bankruptcy Code permits retention of an attorney "so long as the attorney does not hold or represent any interest adverse to the debtor or to the estate *with respect to the matter on which he is to be employed*."  *Congoleum Corp.*, 426 F.3d at 689 (emphasis added).  In addressing the meaning of "with respect to the matter," courts have held that under section 327(e) of the Bankruptcy Code, "to be disqualified, the interest held by [the professional] must be adverse to the estate on the *particular* matter for which the firm is employed."  *In re DeVlieg, Inc.*, 174 B.R. at 503 (emphasis added); *see In re Polaroid Corp.*, 424 B.R. 446, 453 (Bankr. D. Minn. 2010) (holding that section 327(e) prevents the retention of counsel who "represent or have represented a client that is an actual or potential opponent of the estate in the dispute for which counsel would be engaged"); *In re Henlar, Ltd.*, No. 94-11305, 1997 WL 4567, at *3 (E.D. La. Jan. 6, 1997) ("Section 327(e) in

effect requires the court to make the limited inquiry into whether there is an actual conflict in the special matter only."). Courts have explained that "[s]ection 327(e) has a narrower focus than § 327(a), and imposes fewer restrictions on the proposed attorney." *Polaroid Corp.*, 424 B.R. at 452; *see also City of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, Case No. 20-12522-JTD, 2022 LX 88357, at *6 (D. Del. Mar. 28, 2022) (Section 327(a)'s "'disinterested' requirement ... finds no analogue in § 327(e)").

22. "Adverse interests or conflicts must be more than speculative to justify disqualification under section 327(e)." *In re WWMV, LLC*, 661 B.R. 782, 788 (Bankr. S.D.W. Va. 2024); *see also In re J.S. II, L.L.C.*, 371 B.R. 311, 321 (Bankr. N.D. Ill. 2007) ("[C]onflicts based purely on conjecture or mere speculation do not necessarily warrant an attorney's disqualification."). Moreover, "disqualification is proper only if prospective counsel *presently* 'holds' or 'represents' an interest adverse to the estate, regardless of 'any interests it may have held or represented in the past.'" *In re Champ Car World Series, LLC*, 411 B.R. 619, 625 (Bankr. S.D. Ind. 2008) (citing *In re AroChem Corp.*, 176 F.3d 610, 623 (2nd Cir.1999)).

23. DLA Piper has no conflicts on the matters for which it is to be retained. The U.S. Trustee and Committee Objections assert that DLA Piper's historical[19] representation of Parkview on matters involving the purported ground lessor and the Smekes preclude DLA Piper's retention by the Debtors, here. The Objections contend that these representations create an adverse interest to the Debtors' estates. But the Objections ignore the realities of these chapter 11 cases and the issues presented. DLA Piper has not represented, does not represent, and will not represent Parkview, or its non-debtor affiliates, in connection with any matters related to or arising out of

---

[19] The Committee suggests that DLA Piper currently represents PV Hudson in matters related to the chapter 11 cases. *See* Committee Obj., n.3. This is incorrect. *See supra* n.6.

these chapter 11 cases or the Debtors.  Moreover, following discussions with the Committee and

the U.S. Trustee, the Debtors have included language in the revised proposed form of order at

paragraph 5 clarifying that DLA Piper shall not represent the Debtors, nor shall DLA Piper have

any role in deliberations, investigations or determinations with respect to Parkview and/or any of

its non-debtor affiliates.  And DLA Piper's revised engagement letter clarifies that DLA Piper will

not represent Parkview in the future related to the Debtors or the Project.  And any issues of

concern will be analyzed and determined by the Debtors' Independent Manager exclusively.

24.     In evaluating whether an adverse interest exists, courts in this District have

considered a professional's motivations and whether the "professional holds or represents interests

in competition with the debtor that would actually (as opposed to speculatively) impair its service

as an estate fiduciary." *Century Indem. Co. v. Boy Scounts of Am. (In re Boy Scounts of Am.)*, 630

B.R. 122, 130 (D. Del. 2021), *aff'd*, 35 F.4th 149 (3d Cir. 2022).  DLA Piper does not hold or

represent a competing interest with the Debtors.  To the contrary, the Debtors and Parkview have

an "identity of interests" with respect to the matters for which DLA Piper is being retained—

serving as special litigation counsel on issues relating to recharacterization of the purported ground

lease and disputes with the Debtors former equity owners, specifically including discovery to

reconstitute and reconstruct the Debtors' books and records.  *See Bank Brussels Lambert v. Coan*

*(In re AroChem Corp.)*, 176 F.3d 610, 627 (2nd Cir. 1999) ("Retention is proper here" because

there is "an identity of interests between the trustee and special counsel's former client with respect

to the matter for which special counsel is retained.").  Parkview and the Debtors' interests are

aligned with respect to the recharacterization of the purported ground lease: both would benefit

from recharacterization as the Debtors would be found to be fee owners of the property that is

subject to the purported ground lease, and the purported ground lessor's interests would be subject

to restructuring to the benefit of all parties in interest in these chapter 11 cases. In the event that recharacterization is successful and the Debtors' and Parkview's interests are no longer aligned at some point in the future, any plan construct, including any proposed priority, security, and treatment and classification of claims, is solely within the purview of CBCC. Notably, the U.S. Trustee's assertion that DLA Piper represented Parkview, rather than the Debtors' interests, with respect to the Cure Delivery Fee and Interpleader Action (as such terms are defined in the U.S. Trustee Objection), is incorrect. *See* U.S. Trustee Obj. ¶ 63. The Debtors assert that Cure Delivery Fee constitutes estate property, as the escrowed amounts were included in the prepetition loan balance. Hogan Lovells has separately participated in that dispute on behalf of Parkview. Any and all actions taken by DLA Piper were in furtherance of protecting estate assets.

25.    Courts have approved the retention of special counsel even in circumstances where proposed counsel represented another party or creditor related to the case. *See Nisselson v. Wong (In re Best Craft Gen. Contractor & Design Cabinet, Inc.)*, 239 B.R. 462, 468 (Bankr. E.D.N.Y. 1999) ("if a creditor's attorney employed as special counsel does not otherwise hold or represent interests adverse to the estate, where there is an identity of interest between the creditor and the estate 'with respect to the matter for which special counsel is retained, there is no conflict and the representation can stand.'"); *Johnson v. Richter, Miller & Finn (In re Johnson)*, 312 B.R. 810, 822-23 (E.D. Va. 2004) ("Simply put, the interests of the Trustee and [the creditor] did not conflict; they coincided; both were interested in enlarging the estate. Thus, by seeking to enlarge the estate on behalf of the Trustee, [counsel] served both the interests of the Trustee and [the creditor].")

26.    The U.S. Trustee and Committee Objection fail to address, let alone rebut, the great deference given to the Debtors in their right to retain qualified counsel. *Smith v. Geltzer*, 507 F.3d 64, 71 (2d Cir. 2007) ("In exercising its approval function, however, the bankruptcy court should

interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice.") (internal quotation marks and citations omitted).

27.     What is more, the Committee fails to cite *any* case in this District to support the contention that since DLA Piper previously advised Parkview and the Debtors on matters involving the purported ground lease and disputes with the Smekes, such representation in and of itself disqualifies DLA Piper from advising the Debtors on these matters.  Again, any conflict of DLA Piper's representation that is identified by the Independent Manager will be resolved by DLA Piper stepping aside.

28.     DLA Piper does not hold any present interest adverse to the estates or the Debtors in connection with its proposed services.  Initial Brown Decl. ¶¶ 9, 10.  Further, DLA Piper has disclosed that the firm has in the past represented certain parties and/or their affiliated entities who are parties in interest in these chapter 11 cases, including Parkview, as well as other parties in interest, both in matters related to the Debtors and certain unrelated matters.  *Id*.  For these reasons, the Debtors submit that DLA Piper does not hold an interest adverse to the Debtors in connection with the proposed special counsel services, as required under section 327(e) of the Bankruptcy Code.

## C.     The "Disinterested Person" Standard Under Section 327(a) is Not Applicable.

29.     The Committee and U.S. Trustee incorrectly assert that DLA Piper must demonstrate that it is disinterested under section 327(a) due to the scope of services DLA Piper intends to provide.  *See* U.S. Trustee Obj. ¶¶ 58-74; Committee Obj. ¶¶ 24-26.  It is axiomatic, however, that the disinterestedness standard does not apply to special counsel retention under section 327(e).  *See In re Mallinckrodt PLC*, 2022 LX 88357 * (quoting *DeVlieg-Bullard, Inc. v.*

*Natale (In re DeVlieg, Inc.)*, 174 B.R. 497, 503 (N.D. Ill. 1994) ("[S]ection 327(e) does not require that counsel be a 'disinterested person,' as section 327(a) does.").

30.     The Committee and U.S. Trustee continue that DLA Piper cannot meet the (inapplicable) standards for disinterestedness because of the prepetition representation of Parkview and the lack of detailed information regarding the Firm's potential preference exposure.  Neither argument is supported by the evidence or the law.

31.     DLA Piper's prepetition representation of Parkview and its non-debtor affiliates does not render DLA Piper not disinterested.  DLA Piper does not represent the Debtors in any matter adverse to Parkview or represent Parkview or its non-debtor affiliates in any matter adverse to the Debtors..  The revised proposed form of order clarifies this.  There is no conflict.

32.     The Committee relies on *In re Congoleum Corp.*[20]  There, the court held that failing "to consider and appraise the conduct of the parties and counsel pre-petition" was "not a proper exercise of the bankruptcy code" where proposed special insurance counsel likely violated the relevant rules of professional conduct by representing both the debtor and creditors who were settling claims with the debtor related to the matters on which the counsel was to be retained.  426 F.3d at 693.  In connection with the representation, the counsel also "continued to participate actively in formulating and revising the plan," including multiple plan amendments.  *Id.* at 680-81,

---

[20] The Committee also relies on two other cases outside of the District that are entirely distinguishable and raise issues irrelevant to these chapter 11 cases.  In *In re Enviva Inc.*, 2024 Bankr. LEXIS 1548 (E.D. Va. 2024), the Court noted that while the debtors, ad hoc group and indenture trustee adequately discussed the difficulties, delays and expenses that the Debtors would face if Vinson & Elkins LLP ("V&E") were not retained, the court was required to consider V&E's application under the disinterestedness standard required by section 327(e).  Contrary to the Committee Objection, V&E was ultimately retained, and the Court held that "one purpose of § 327(e) is 'to allow counsel who cannot meet the disinterestedness requirement of § 327(a) nevertheless to render valuable services to the debtor in matters where counsel has no adverse interest." Similarly, the facts in *In re Hart Oil & Gas, Inc.*, 2013 Bankr. LEXIS 3128 (Bankr. D.N.M. 2013) are distinguishable, as proposed special counsel was largely performing general bankruptcy work and had filed a large administrative expense claim against the estate.  Moreover, the proposed special counsel sought retention by the trustee, while the firm also served as the debtor's current counsel and the debtor arguably still had an interest in the estate.

691–92.  These issues are irrelevant here, because the facts are inapposite.  Courts in this District have authorized retention under section 327(e) of the Bankruptcy Code over similar objections. *See In re MOM CA Investco LLC, et al.*, Case No. 25-10321 (BLS) [D.I 397] (Bankr. D. Del.) (May 13, 2025) (authorizing retention of special counsel under section 327(e) over the U.S. Trustee's objection, where counsel represented both the debtors and certain creditor parties in a defamation action, and counsel represented a party directly adverse to the debtors in prepetition arbitration proceedings that gave rise to significant claims against the estate); *see also In re 8e14 Networks, Inc.*, Case No. 22-10708 (BLS) [D.I. 156] (Bankr. D. Del.) (Sept. 12, 2022) (authorizing retention of special counsel under section 327(e) to perform services in connection with debtor in possession financing and the sale of substantially all of the debtors' assets over the U.S. Trustee's objection, where counsel had represented the proposed debtor in possession lender and stalking horse bidder, as well as a major shareholder of the debtor).

**D.**  **DLA Piper Has Provided Complete and Accurate Disclosures in Accordance With Its Obligations Under Section 327(e) and Bankruptcy Rule 2014(a)**.

33.     DLA Piper's disclosures are compliant with the disclosure requirements of Bankruptcy Rule 2014(a).  *See In re Rubin & Rubin, P.A. v. Office of the United States Tr. (In re NNN 400 Capitol Ctr. 16 LLC)*, 632 B.R. 243, 261 (D. Del. 2021), *aff'd*, No. 21-3013, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) (citing 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2014(a) & 2016(b); Del. Bankr. L.R. 2014-1(a) & 2016-1)) ("Every law firm representing a debtor in bankruptcy must disclose (i) the amount and source of any compensation received or agreed to be paid; and (ii) all connections to creditors and parties in interest.").  The U.S. Trustee Objection incorrectly asserts that there are faults with the disclosures related to the prepetition payments DLA Piper received from Parkview.[21]  U.S. Trustee Obj. ¶¶ 69, 70.

34.     Bankruptcy Rule 2014 disclosures are "for the Court's benefit so that it can scrutinize any adverse interest of the attorney."  *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP* (*In re Nw. Corp.),* 346 B.R. 84, 89 (D. Del. 2006) (quoting *In re CIC Inv. Corp.,* 175 B.R. 52, 54 (B.A.P. 9th Cir. 1994)).  The disclosure requirements are meant to "ensure all relevant connections have been brought to light" (*In re Enron Corp.,* Case No. 02 CIV. 5638 (BSJ), 2003 WL 223455, *6 (S.D.N.Y. Feb. 3, 2003)), and are not so onerous "as to require the party to raise with the court every imaginable conflict which may occur in a bankruptcy" (*In re eToys, Inc.,* 331 B.R. 176, 191 (Bankr. D. Del. 2005)).

35.     The U.S. Trustee largely relies on case law where professionals seeking retention under section 327(**a**) were denied for failure to provide sufficient disclosures.[22]  These cases are

---

[21] Information regarding prepetition payments "without more, are not relevant to whether special counsel has a qualifying adverse interest with respect to the matter on which such attorney is to be employed" for § 327(e) purposes." *In re Mallinckrodt PLC*, 2022 LX 88357 at *20-21 (citations omitted).

[22] The U.S. Trustee cites one case where the court considered disclosure obligations for professionals to be retained under section 327(e*), In re Molten Metal Tech., Inc*., 289 B.R. 505 (Bankr. D. Mass. 2003).  The facts in *In Molten*

distinguishable, as they are under section 327(a) and the facts involve the failure to disclose an

***actual conflict of interest***.  Here, however, the U.S. Trustee asserts DLA Piper did not disclose

the ***details*** of its previous engagement with Parkview.  Case law in this District does not hold that

Rule 2014(a) mandates such disclosure.  *In re Mallinckrodt PLC*, 2022 LX 88357 *18-19 ("Acthar

Plaintiffs cite only two cases addressing § 327(e). In those cases, the bankruptcy court found that

the undisclosed information revealed a disqualifying adverse interest. *See In re NNN 400 Cap. Ctr.

16, LLC*, 619 B.R. 802, 814-15 (Bankr. D. Del. 2020) (firm failed to disclose fee-sharing

arrangement with undisclosed third-party that created "a pecuniary interest adverse to the

Debtors"); *Molten Metal*, 289 B.R. at 508-09, 512 (firm failed to disclose prepetition

confidentiality agreement with debtor that created "a disqualifying adverse interest"). ***No similar***

***facts are present here. Fundamentally, Acthar Plaintiffs cite no case for the proposition that a***

***professional may be disqualified because of (at most) a slightly delayed disclosure of***

***information that provides more detail about a connection that had already been disclosed***.")

(emphasis added).

36.    Under *Mallinckrodt,* DLA Piper's initial disclosures in the Application and the

Initial Brown Declaration satisfy Bankruptcy Rule 2014(a).  *See* Initial Brown Decl. ¶¶ 6, 9-10.

Potential preference exposure (and there is none, here) is not relevant for section 327(e) counsel.

The purported non-disclosure was not of the relevance that the U.S. Trustee makes of it, and, in

any event, any non-disclosure has since been cured.  More fundamentally, however, of the

---

*Metal Tech.* are distinguishable, as the proposed special counsel failed to disclose the existence of a confidentiality and joint defense agreement as part of their prepetition representation, which obligated counsel to restrict the use and disclosure of some of the debtors documents. *Id.* at 512. The court held that the agreement was relevant for the bankruptcy employment decision, and non-disclosure thereof created a disqualifying adverse interest. *Id.* at 513. The agreement was clearly a "connection" that should have been disclosed under Fed. R. Bankr. P. 2014(a). Because of the non-disclosed adverse interest, the law firm was not entitled to a final payment for fees and expenses. *Id.* at 516.Here, however, DLA Piper specifically disclosed the Parkview relationship in the Application and the Initial Brown Disclosure and, following questions from the U.S. Trustee, provided a payment breakdown of prepetition fees paid by Parkview to DLA Piper in the ninety days prior to the Petition Date.

approximately $820,000 received from Parkview during the preference period, all but approximately $43,000 was applied to work performed before the July 25 foreclosure solely for Parkview, and the remainder was applied primarily to post-foreclosure transitional work. Moreover, the information was disclosed to the U.S. Trustee by DLA Piper informally as part of customary conferences with the Office of the U.S. Trustee.  *See* Supp. Brown Decl. ¶¶ 6, 7.  DLA Piper has provided all disclosures sought by the U.S. Trustee and will address further questions from the Court or the U.S. Trustee as necessary.

37.     DLA Piper does not hold or represent an "adverse interest" in matters related to its proposed services and DLA Piper has complied with relevant disclosure obligations. Section 327(a) does not apply and the disinterestedness requirement set forth in section 327(a) is not relevant to the present dispute.

**E.     <u>DLA Piper's Retention is in the Best Interests of the Estates</u>**.

38.     In determining whether the appointment of special counsel is in the best interests of a debtor under section 327(e), courts have repeatedly recognized that the requirement is easily satisfied where special counsel has prior experience and institutional knowledge of the kinds of claims that are likely to be asserted against the debtor or by virtue of having represented that entity or affiliated companies in similar litigation.  *In re DeVlieg*, 174 B.R. at 502-503 (affirming bankruptcy court's retention of special counsel because the law firm had previously represented the debtor in fraudulent conveyance and fiduciary duty litigation and therefore "possesse[d] a high degree of familiarity with the[] legal bases [of those claims] and with the evidentiary materials these highly complex matters involve"); *In re Polaroid Corp*., 424 B.R. at 451-52 ; *In re Cockings*, 195 B.R. 735, 737 (Bankr. E.D. Ark.1996); *see also In re White Glove, Inc.*, 1998 Bankr. LEXIS 545, at *19 (Bankr. E.D. Pa. Apr. 29, 1998) ("The Third Circuit in *Marvel* has made clear that an appearance of impropriety… is not sufficient to disqualify counsel. In balancing the likelihood of

an impropriety and the importance of honoring a debtor's right to counsel of its own choosing, the scale tips in favor of the latter.").

39.     This approach is consistent with section 327(e), as the provision is designed to "promote[] economy in administration," and "continuing the retention of pre-petition counsel will avoid wasteful expenses and delay that might result from having to hire disinterested counsel unfamiliar with the subject matter." *In re Jackson*, 448 F. Supp. 3d. 775, 783 (E.D. Mich. 2020) (citations omitted); *see also In re DeVlieg*, 174 B.R. at 502-503.

40.     Here, as explained in the Application, the Initial Brown Declaration, and the Supplemental Brown Declaration, DLA Piper's prior representation of the Debtors has made it intimately familiar with matters involving the purported ground lease and disputes with the Debtor's prior equity owners.  The Committee does not argue otherwise, but instead asserts that because CBCC and FTI Consulting, Inc., the Debtors' financial advisor, are qualified and competent professionals, this nullifies the value that DLA Piper's services provide to the estates. Notably, the Committee is unable to present any evidence or cite a single case in which an application was rejected under section 327(e) in similar circumstances.

## CONCLUSION

41.     For the reasons stated herein, the Debtors respectfully request that the Court (a) overrule the Objections, (b) enter the revised proposed form of order approving DLA Piper's retention under section 327(e) of the Bankruptcy Code, and (c) grant such other and further relief as is appropriate under the circumstances.

Dated:  January 8, 2026
Wilmington, Delaware

Respectfully submitted,

**CHIPMAN BROWN CICERO & COLE, LLP**

 /s/  William E. Chipman, Jr.
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Aaron J. Bach (No. 7364)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
        olivere@chipmanbrown.com
        bach@chipmanbrown.com
        maser@chipmanbrown.com

*Counsel for the Debtors*

**DLA PIPER LLP (US)**

 /s/  Stuart M. Brown
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email:  stuart.brown@us.dlapiper.com

- and -

Neal Kronley (admitted *pro hac vice*)
David M. Riley (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212-335-4501
Email: david.riley@us.dlapiper.com
        neal.kronley@us.dlapiper.com

*Proposed Special Counsel to the Debtors*