## EXHIBIT A

**Supplemental Brown Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706, LLC, *et al.*,[1] | Case No. 25-11853 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Related D.I.: 99, 99-2** |

**SUPPLEMENTAL DECLARATION OF STUART M. BROWN**
**IN SUPPORT OF THE APPLICATION OF THE DEBTORS**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS**
**TO RETAIN AND EMPLOY DLA PIPER LLP (US) AS SPECIAL COUNSEL,**
**EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

Under Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1(a) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), I, Stuart M. Brown, declare that the following is true to the best of my knowledge, information and belief:

1.     I submit this supplemental declaration (the "Supplemental Declaration") (i) in support of *Debtors' Omnibus Reply to Objections to  Application of the Debtors for Entry of an Order (I) Authorizing the Debtors to Retain and Employ DLA Piper LLP (US) as Special Counsel, Effective as of the Petition Date and (II) Granting Related Relief*; and (ii) in further support of the *Application of the Debtors for Entry of an Order (I) Authorizing the Debtors to Retain and Employ DLA Piper LLP (US) as Special Counsel, Effective as of the Petition Date and (II) Granting*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).  The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

*Related Relief* [D.I, 99] (the "<u>Application</u>").[2]   Unless stated otherwise in this Supplemental

Declaration, I have personal knowledge of the facts set forth herein.

2.       As described in my Initial Declaration, DLA Piper has historic knowledge of the

Debtors' capital structure and real estate and business operations due to its representation of the

Debtors' and their prepetition lender, Parkview, prior the Petition Date and indirectly of the

Debtors' interests since before July 25, 2025, the date on which Parkview foreclosed on the equity

interests of the Debtors, which served as collateral pledged to Parkview by the Debtors' sole

member under the Prepetition Loan Agreement.

3.       DLA Piper assisted Parkview in matters related to the management of the Hudson

and the related purported leasehold interest, including negotiating loan document amendments in

May 2024.  Following the loans' maturity in November 2024, DLA Piper advised Parkview on

forbearance and the exercise of remedies, culminating in scheduling and conducting a UCC sale

of the pledged equity interests in the Debtors.  Prior to and following the foreclosure through the

Petition Date DLA Piper assisted Parkview and indirectly the Debtors in addressing mechanic lien

issues.  Also during such period DLA Piper also engaged in discussions with counsel to the

purported ground lessor regarding alleged defaults under the purported ground lease and proposed

adjustments to the Debtors' fallback business plan.

4.       Since the foreclosure, DLA Piper continued to represent Parkview and its non-

debtor affiliate PV Hudson LLC, and the Debtors as Parkview's direct and indirect subsidiaries.

DLA Piper was not separately engaged by PV Hudson LLC or the Debtors until on October 22,

2025, when DLA Piper and the Debtors entered an engagement agreement and at which time DLA

---

[2] Capitalized terms used but not otherwise defined herein have the meaning given to them in the Application or the Reply.

Piper terminated its attorney client relationship with Parkview with respect to all matters pertaining to the Debtors.  DLA Piper continues to represent Parkview in matters wholly unrelated to the Debtors and their property and estates.

5.      The Debtors have already relied upon and desire and intend to continue to rely upon this specialized knowledge to assist with litigation matters in these chapter 11 cases.  DLA Piper is mindful of the need to avoid duplication of work by Debtors' professionals and is confident that its role in these chapter 11 cases will not duplicate the efforts of general bankruptcy counsel.

6.      On December 4, 2025, DLA Piper promptly provided the U.S. Trustee with responses to requests for information regarding DLA Piper's disclosures in the Initial Brown Declaration.  DLA Piper disclosed that on August 20, 2025, it received $820,771.65 (the "Payment") from Parkview during the ninety days prior to the Petition Date. Out of an abundance of caution, DLA Piper disclosed the entire amount of the Payment to the U.S. Trustee. The Payment from Parkview, however, was applied to three invoices (i) $ 180,054.63 on account of an invoice dated June 9, 2025 for work performed from May 1, 2025 through May 31, 2025, (ii) $260,841.40 on account of an invoiced dated July 7, 2025 for work performed from June 1, 2025 through June 30, 2025, and (iii) $379,875.62 on account of an invoice dated August 5, 2025 for work performed from July 1 through July 31, 2025.  All but approximately $43,730.00 account for fees for services solely and exclusively performed for Parkview through and including the July 25, 2025 foreclosure.  Of the $43,730.00 that was earned and paid following the foreclosure, the overwhelming majority was for services exclusively rendered to Parkview for services following the foreclosure.

7.      Even assuming the *entire* Payment constituted property by the Debtors, DLA Piper has a complete new value defense, such that it has no preference exposure and no exposure under

3

*Pillowtex* (standards that I understand are inapplicable, in any event, in the context of retention under section 327(e) of the Bankruptcy Code). DLA Piper provided the U.S. Trustee with this analysis, which calculated, as of the Petition Date, and after applying a "new value" defense, net preference exposure of negative $302,797.80.[3] DLA Piper has not received payment from Parkview or the Debtors on account of services performed following the date of receipt of the Payment.

8.      DLA Piper has executed an amended engagement letter between the Debtors and DLA Piper (the "Amended Engagement Letter"), a copy of which is attached to the Application as **Exhibit D**, in connection with certain services to be provided directly and exclusively to the Debtors during the pendency of these chapter 11 cases. As a result of DLA Piper's proposed representation as special counsel to the Debtors in these chapter 11 cases, Parkview is no longer a client in connection with these chapter 11 cases or the Hudson project. I do not believe that DLA Piper's current representation of Parkview in matters unrelated to the Debtors, their estates and these chapter 11 cases, and the Hudson project precludes DLA Piper from meeting the standard for retention under section 327(e) of the Bankruptcy Code.

9.      As proposed special counsel for the Debtors, my colleagues and I at DLA Piper necessarily interact with the Debtors and their Independent Manager and other professionals to coordinate work streams. As a result of entry of the revised proposed order and these communications, DLA Piper and the Debtors will have a clear understanding of the scope of DLA Piper's services. DLA Piper is cognizant of the need for the Debtors to avoid duplication of efforts

---

[3] Since providing this analysis to the U.S. Trustee, the Debtors have further reviewed prepetition invoices and determined a net preference exposure of negative $328,194.95.

by its retained professionals. I believe the Independent Manager and the Debtors are cognizant of the same need.

10.    DLA Piper will not represent the interests of Parkview in these chapter 11 cases and matters related to or arising out of these chapter 11 cases.  Parkview is represented by separate counsel.  The interest of the Debtors and Parkview and its non-debtor affiliates are aligned in respect to the matters within the proposed scope of special counsel services.  Where their interests were not aligned, DLA Piper represented only the Debtors in all prepetition and postpetition negotiations with Parkview, including, among other things, with respect to the consensual use of cash collateral and in negotiating the initial DIP financing.  Parkview has engaged Hogan Lovells to represent it in connection with matters related to these chapter 11 cases. Hogan Lovells was retained during the prepetition period for these purposes, among others.  Moreover, following conversations with the U.S. Trustee, since December 4, 2024, CBCC has exclusively represented the Debtors with respect to the consensual use of cash collateral and in negotiating the DIP financing.

11.    Other than what is set forth herein and in the Initial Brown Declaration, DLA Piper has not represented, and will not represent Parkview including its non-debtor affiliates, in connection with any matters in, related to or arising out of these chapter 11 cases or the Debtors included as part of the DLA Piper's special counsel services.

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 8, 2025
Wilmington, Delaware

*/s/  Stuart M. Brown*
Stuart M. Brown, Partner
DLA Piper LLP (US)
1201 North Market Street,
Wilmington, DE 19801

Exhibit A-6