## Exhibit D

**Amended Engagement Letter**



**DLA Piper LLP (US)**
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

Stuart Brown
stuart.brown@us.dlapiper.com
T   302.468.5640
F   302.778.7913

January 8, 2026

Hudson 1701/1706, LLC
Hudson 1702, LLC
Attn: Robbin L. Itkin, Independent Manager
16350 Ventura Blvd., Suite D-509
Encino, CA 91436

      Re:     Engagement and Conflict Waiver Letter for Legal Services

Dear Ms. Itkin:

We are pleased that Hudson 1701/1706, LLC and Hudson 1702, LLC (the "Client" or "you") are engaging DLA Piper LLP (US) ("DLA Piper," "we," or the "Firm") to represent the Client as special corporate and litigation counsel pursuant to section 327(e) of the Bankruptcy Code (the "Matter"). This engagement letter supplements and, in the event of inconsistency, supersedes the engagement letter dated October 21, 2025 entered into between the Client and DLA Piper (the "Original Engagement Letter").

**General Terms**

The terms and conditions set forth in the Terms of Service accompanying this letter are incorporated herein. To the extent that the terms and conditions in this letter conflict with those in the Terms of Service, this letter shall control. DLA Piper's retention, including the Terms of Service, are subject to any retention order for DLA Piper entered in the Client's bankruptcy cases.

Stuart Brown and Neal Kronley will be responsible for and actively involved in the Matter. Additional lawyers, David Riley and Gerald Shepherd and those in other practice areas, will be added to the Matter on an as-needed basis. Any significant additions to staffing will be discussed with you in advance.

**Fees and Expenses**

The Firm's fees will be based on the amount of time we spend on the Matter. As part of the Firm's ordinary business practices, hourly time charges are reviewed annually, and may be revised for work beginning in January.

We will submit statements for services rendered for payment on a monthly basis. Our statements will also include charges and disbursements incurred by us in the course of providing services. These items will be billed in accordance with our standard practice, as described in the attached summary, which may be periodically updated, or supplemented by a bankruptcy court order. Payment is due thirty (30) days following the invoice date or as provided in a bankruptcy court order. We reserve the right to assess and collect late payment charges at the rate of 10% per year on past due accounts.



Hudson 1701/1706, LLC
Hudson 1702, LLC
January 8, 2026
Page Two

**Advance Payment Retainer**

Prior to commencing the Clients' bankruptcy cases, DLA Piper received an evergreen advance payment retainer in the amount of $250,000 for the Matter, as further described in the Original Engagement Letter, and subject to order of the bankruptcy court.

**Conflict of Interest Waiver**

In addition to the advance waiver you are providing in the Terms of Service, you waive the following conflict of interest and consent to DLA Piper's representation as follows: As you are aware, the Firm represented Parkview Financial REIT and certain of its affiliates ("Parkview") as lender to certain Hudson entities, and represents Parkview in certain real estate and litigation matters unrelated to the Matter. By signing below, you understand and agree that the Firm is permitted to continue representing Parkview in ongoing and future matters unrelated to the Client, the Hudson project, and/or in connection with the chapter 11 cases or any proceeding relating thereto or arising therefrom. The Firm believes that the concurrent representation of you and Parkview will not adversely impact our representation of you or of Parkview in unrelated matters.

**Litigation**

Parties to litigation have an obligation to preserve potential evidence in their possession, custody or control. It is important that we discuss this at your first opportunity. In the meantime, you must take all measures necessary to prevent the loss or destruction of documents, data or other potential evidence.

**Insurance**

This representation does not include services related to insurance coverage issues or disputes, including such matters as deductibles, exclusions, scope of insurance, reservation of rights, etc. Nor does the representation create any attorney-client relationship with, or duty to, any insurance carrier. You may have insurance policies that will pay for attorneys' fees and costs to litigate this matter. In addition, such insurance policies may pay for the other party's (or parties') damages. It is important to notify your insurance carrier(s) promptly. It is our understanding that you have or will take responsibility for notifying your insurance carrier(s).

If the terms of this letter are satisfactory, please sign the consent form below and return it to me. Because this agreement includes waivers of conflicts of interest, we recommend that you consult with independent counsel. Please note that your instructing us or continuing to instruct us on this matter constitutes your agreement to and acceptance of the terms of this letter. We do not agree to the application of outside counsel guidelines or procedures that are inconsistent with the terms of this letter or with our obligations to other clients or prospective clients under applicable Rules of Professional Conduct. Please do not hesitate to contact me if you have any questions about this letter or the Terms of Service.



Hudson 1701/1706, LLC
Hudson 1702, LLC
January 8, 2026
Page Three

Very truly yours,

**DLA Piper LLP (US)**

/s/ Stuart Brown

Stuart Brown
Partner



Hudson 1701/1706, LLC
Hudson 1702, LLC
January 8, 2026
Page Four

I have read the above engagement and conflict waiver letter and agree and accept the terms and conditions set forth therein.

Hudson 1701/1706, LLC
Hudson 1702, LLC

By: Robbin Itkin
Its: Authorized Signatory

Date: 1/7/2026



Hudson 1701/1706, LLC
Hudson 1702, LLC
January 8, 2026
Page Five

DLA Piper LLP (US)
Client-Reimbursable Expenses and Other Charges
*Effective January 1, 2020*

DLA Piper LLP (US) bills clients for reasonable charges and disbursements incurred in connection with a matter.  Clients are billed for disbursements based on the actual cost billed by the vendor or, as noted below, at rates below or comparable to outside vendor charges.

**I.      <u>Research Services</u>.** The Firm has built digital libraries which enable lawyers to perform many research functions without incurring any additional expenses.  These functions include pulling cases, court filings and law reviews and reading treatises in digital format. Only complex research requiring the use of Lexis or Westlaw initiates an additional cost to the client.  The Firm has negotiated substantial discounts for such services which are passed on to clients at cost.

**II.      <u>Duplication</u>.**     Photocopying services (including copying, collating, tabbing and binding) performed in-house are charged at $0.15 per page.  Color photocopies or prints are charged at $1.25 per page.  Photocopying projects performed by outside vendors are billed at the actual invoice amount.

**III.      <u>Electronic Data Processing & Hosting</u>.** Electronic Data obtained from the client will be processed (e.g., scanning, CD/DVD creation, file conversion) by the Firm's Litigation Support staff and billed at the current Firm rates, or other client negotiated rates. Should the client direct that the work be performed by an outside third party, the cost to the client is the actual invoice amount and will be billed directly by the third party to the client (per section VI below).

Hosting of electronic data in Relativity One by the Firm will be provided by Relativity in Microsoft Azure and will be billed at $9 per gigabyte per month.  If directed by the client that data hosting be performed by an outside third party, the cost to the client is the actual invoice amount and will be billed directly by the third party to the client (per section VI below).

**IV.      <u>Travel Expenses</u>.** Travel expenses are billed at actual cost and include air or rail travel, mileage, lodging, meals, car rental, taxi or car service, tips and other reasonable miscellaneous costs associated with travel.  Corporate and/or negotiated discounted rates are passed on to the client.  Certain retrospective rebates may not be passed along.

**V.      <u>Postage and Courier Services</u>.** Outside messenger and express courier services are charged at the actual vendor invoice amount.  The Firm negotiates, uses, and passes along volume discount rates whenever practicable.  Where the Firm uses in-house messengers, there is a standard transaction charge.

**VI.      <u>Direct Payment by Clients of Other Disbursements</u>.** Major disbursements incurred in connection with a matter will be paid directly by the client.  Examples of such major disbursements that clients will pay directly include:

*Professional Fees* (including disbursements for local counsel, accountants, witnesses and other professionals)

*Filing/Court Fees* (including disbursements for agency fees for filing documents, standard witness fees, juror fees)



Hudson 1701/1706, LLC
Hudson 1702, LLC
January 8, 2026
Page Six

*Transcription Fees* (including disbursements for outside transcribing agencies and deposition/courtroom stenographer transcripts)

*Other Disbursements* (including third party services, e.g. hosting of client data, litigation support/eDiscovery services, etc., and other required out-of-pocket expenses incurred for the successful completion of the matter).



Hudson 1701/1706, LLC
Hudson 1702, LLC
January 8, 2026
Page Seven

**TERMS OF SERVICE**

## 1. INTRODUCTION

These Terms of Service set forth the terms and conditions under which DLA Piper LLP (US) ("the Firm") will act as your counsel for all existing and future matters (collectively, the "Engagement").

The Firm has issued or will issue an engagement letter, setting forth the scope of the representation, the fee agreement, and other matter-specific terms ("Engagement Letter"). These Terms of Service should be read and understood in conjunction with the Engagement Letter. The Terms of Service and Engagement Letter are collectively referred to as "the Engagement Terms." Where there is any inconsistency between these Terms of Service and the Engagement Letter, the latter will control.

The Terms of Service supersede all prior agreements between you and the Firm with respect to the Engagement. The Engagement Terms can only be altered or amended by a writing signed by both you and the Firm.

The words "you" and "your" refer to the client(s) specified in the relevant engagement letter. The words "we," "us" and "our" refer to the Firm.

## 2. CLIENT(S) REPRESENTED

You agree and acknowledge that the Firm's representation of you does not create an attorney-client relationship with any other entity or person. We do not agree to represent, and we do not owe any duty to any other entity or person, including without limitation, your corporate parents, subsidiaries, affiliates, joint venturers, other entities owned, in whole or in part by you, entities that hold direct or indirect interests in you, or any of your directors, officers, investors, partners, employees, agents, indemnitors, insurers, third-party payors, or entities or persons to whom you owe any duty, unless such entities or persons are specifically named in the Engagement Letter. There are no third-party beneficiaries to the Engagement.

You agree that your relationships with any of the other persons or entities listed above cannot create a conflict of interest for us.

In representing corporations, we may provide information or advice to directors, officers, or employees in their corporate capacities. The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their corporate capacities.

In representing partnerships, we may provide information or advice to partners, officers or employees in their capacities as your representatives. The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their representative capacities.

In representing limited liability companies, we may provide information or advice to members, officers or employees in their capacities as your representatives. The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their representative capacities.

The Firm's representation of an association or trade group does not create an attorney-client relationship with any of the association or trade group's constituents, members, affiliates or participants individually.

In the event that you are acquired or are otherwise subject to a change in control (including by a person or group becoming a controlling affiliate of yours) after the inception of the Engagement, it is understood that the Firm does not represent the acquiring entity or such controlling affiliate or establish an attorney-client relationship with such entities or affiliates.



Hudson 1701/1706, LLC
Hudson 1702, LLC
December 11, 2025
Page Eight

### 3.    COUNSEL GUIDELINES

You agree and acknowledge that the Engagement Terms shall control over terms contained in your outside counsel guidelines or any other similar instructions supplied by you at any time.  In order for any outside counsel guidelines or instructions (or amendments or modifications thereto) to be effective, a Firm partner managing the Engagement must affirmatively agree to accept them in writing.  The Firm does not agree to any terms expanding the Firm's potential liability by contract, including to indemnify, defend or hold you harmless, whether included in your outside guidelines or otherwise.

### 4.    CONFLICTS OF INTEREST

The Firm and its affiliated entities represent clients in a broad range of industries and in a wide variety of legal matters, nationally and internationally.  A summary of our current practice areas and the industries in which we represent clients, and the roster of our affiliated entities, can be found on our web site at www.dlapiper.com. We may represent other clients in the same industry as yours.  Absent effective conflict of interest waivers, conflicts of interest could arise that could deprive you or other clients of the right to select the Firm as their counsel, and preclude us from representing you or other clients in ongoing or future matters.  Accordingly, you acknowledge and agree that the Firm and its affiliated entities may, now or in the future, represent other persons or entities on matters adverse to you or any of your current or future affiliates, provided that: 1) the matter is not substantially related to any matter in which the Firm has represented you; 2) the Firm does not violate its duty of confidentiality to you; and, 3) the Firm reasonably concludes that our representation of the other client complies with applicable ethical standards.  The future representations adverse to you may include, without limitation, commercial transactions, auctions, mergers and acquisitions, patent, trademark and other intellectual property

matters, restructuring and bankruptcy matters in which we may represent debtors, lenders, shareholders, bondholders, committees, distressed debt and asset buyers and investors, employment, real estate, franchising, tax, trusts and estates, or litigation, arbitration, third-party discovery proceedings, such as subpoenas, depositions, and motions to compel, or mediation or other dispute resolution procedure, other than those for which the Firm had been or is then engaged by you.  Such matters shall be referred to as "Allowed Adverse Representation."  We do not believe that the Firm's ability to represent other clients in Allowed Adverse Representations will impair our ability to diligently and competently represent you in the matter(s) for which you have engaged us.  You understand that the foregoing examples are illustrative, not exhaustive.

With regard to matters in which we represent you that are adverse to another party (an "Adverse Party"), you acknowledge and agree that we may represent such an Adverse Party in other matters that are not substantially related to the matter in which we represent you (each an "Adverse Party Representation").

You agree that you will not, for yourself, or any other entity or person, assert the Firm's representation of you or any of your affiliates in any past, present or future matter is a basis for disqualifying the Firm from representing another party in an Allowed Adverse Representation or an Adverse Party Representation.  Your consent shall be effective until you notify the Firm, in writing, of your intention to terminate it.  Such termination shall apply prospectively only and shall not apply to any matter for which the Firm had been engaged.  Your consent shall survive any change in your leadership, including but not limited to your general counsel.  You may consult with independent counsel regarding this section before agreeing to it, and you acknowledge that the Firm has given you the opportunity to seek such independent legal advice.



Hudson 1701/1706, LLC
Hudson 1702, LLC
December 11, 2025
Page Nine

You agree that this section does not expand the scope of the Engagement to encompass your affiliates unless expressly agreed by the Firm.

## 5.    CONFIDENTIALITY

The Firm has a professional obligation not to disclose your confidential information or to use it for another party's benefit without your consent. These obligations are subject to certain exceptions provided for in the Rules of Professional Conduct and certain laws and regulations, including those relating to mandatory reporting obligations associated with certain types of transactions, certain lobbying disclosure obligations, and those related to money laundering and terrorist financing. Such laws and regulations may require the Firm to disclose confidential information to governmental authorities, and we may be prohibited from informing you that disclosure has been made or the reasons for such disclosure. Certain laws and regulations may require us to cease work for you for a period of time and prohibit us from informing you of the reason.

Additionally, if the Firm receives a subpoena or request for information that is within our custody or control, or the custody or control of our agents or representatives, we will, to the extent permitted by applicable law, advise you before responding so that you have the opportunity to intervene or assert any objections. Should you object to the production of such information, the Firm may provide such information only to the extent authorized by you or required by a court or other governmental body of competent jurisdiction. You agree to pay the Firm for services rendered and charges and disbursements incurred in responding to any such request for information at the Firm's customary billing rates and pursuant to the Firm's charges and disbursements policies.

Companies seeking legal representation frequently require the Firm to demonstrate our experience representing clients in various areas of law and types of matters. You consent and agree

that the Firm may disclose the fact of the Engagement and related general information in response to such requests and in its public marketing materials to the extent that such disclosure does not convey specific information about the Engagement. In addition, to facilitate our compliance with the Rules of Professional Conduct, including to implement conflict of interests checks, we may need to consult with or secure a waiver from our other clients or prospective clients. You agree that we are, and will be, allowed to disclose to each such client or prospective client the fact that we have or have had an attorney-client relationship with you.

## 6.    ARBITRATION OF DISPUTES

Any and all disputes, controversies or claims between you and the Firm of any nature whatsoever in any way arising out of, or in connection with, or relating to the Engagement, the Engagement Terms or their breach, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud and disputes regarding attorney fees and/or costs charged under this Agreement (except to the extent provided below) shall be finally settled by arbitration conducted expeditiously before JAMS pursuant to its Comprehensive Arbitration Rules and Procedures, and in accordance with the Expedited Procedures in those rules. This arbitration provision shall be governed solely and exclusively by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). The FAA shall govern notwithstanding any state or foreign law or rule, and irrespective of any choice of law provision. This provision shall not apply to any ethics or disciplinary proceedings against the Firm. The parties shall bear their own legal fees and costs for all claims.

The existence and content of the arbitration proceedings, as well as any arbitration rulings and awards, shall be maintained by the parties as strictly confidential, except (i) to the extent that disclosure is required by a court or other governmental body of competent jurisdiction; (ii)



Hudson 1701/1706, LLC
Hudson 1702, LLC
December 11, 2025
Page Ten

to the extent necessary to confirm, vacate, challenge, or enforce the award in bona fide legal proceedings before a court of competent jurisdiction or other judicial authority, in which case steps shall be taken to make filings under seal if permitted; (iii) for disclosure in confidence to the parties' respective attorneys, tax advisors, insurance agents or companies, senior management, and other agents or employees on a need to know basis; or (iv) with the written consent of all parties.

You acknowledge that by agreeing to this arbitration provision, you are giving up the right to litigate claims against the Firm, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. You acknowledge that you have read and understand this arbitration provision, and that you voluntarily agree to binding arbitration.

**NOTE:** You are entitled to consult an independent lawyer to review this arbitration provision before agreeing to it. By accepting these Engagement Terms, you acknowledge that you have consulted with independent counsel, or if not, that you had the opportunity to do so.

## 7.    CLIENT IDENTIFICATION

The Firm verifies the identity of our clients and sources of payment to comply with applicable anti-money laundering, counter-terrorist financing, embargo, trade sanctions or similar policies or laws. Accordingly, prior to beginning work on the matter, the Firm may request that you provide required identification documents. A delay or failure to provide information required for verification purposes may prevent us from commencing or require us to suspend work on the matter. We reserve the right to request additional information to ensure compliance with applicable laws, rules, or regulations.

## 8.    DATA TRANSFER CONSENT

Due to legal obligations applicable to the Firm or our affiliated offices, and to efficiently maintain information provided to us, the Firm may transfer some or all of any personal or other data and information ("Data") that you provide to the Firm to one or more DLA Piper offices in other countries that may not be subject to data protection laws similar to those in the jurisdiction in which the Data is first received. By signing this letter, you give us specific consent to obtain and transfer such Data, and confirm that you have obtained and grant us all required consents to allow the Firm to do so.

## 9.    ONLINE COLLABORATION AND CLOUD SHARING PLATFORMS

The Firm may utilize secure and Firm-approved web-based tools, cloud-based collaboration platforms and cloud-sharing platforms to facilitate the exchange of electronic information with you, and with others at your direction and with your consent. These may include: OneDrive, Teams, Relativity, and ShareFile. If you require the use of an online collaboration tool or cloud-sharing platform that has not been approved by the Firm, all associated costs and management of those services will be solely your responsibility, and the Firm shall not be responsible for any actual or potential breach of confidentiality or loss that results from the use of such platforms.

## 10.    TERMINATION

Either of us may terminate the Firm's representation of you in a particular ongoing matter, or in the Engagement, at any time subject on our part only to the applicable Rules of Professional Conduct. Unless we are actively engaged in other matters for you, the Engagement and our attorney-client relationship will terminate upon our sending you our last statement reflecting legal services. Upon termination, we will have no further duty to inform you of future developments or changes in law as



Hudson 1701/1706, LLC
Hudson 1702, LLC
December 11, 2025
Page Eleven

may be relevant to such matter.  Further, unless you and the Firm mutually agree in writing to the contrary, we will have no obligation to monitor renewal, expiration, or notice dates or similar deadlines which may arise from the matters for which we had been retained.

If, at any time, our engagement is limited to a specific matter, and at the time such matter is completed we are not representing you in any other matters, our attorney-client relationship will be deemed terminated whether or not we send you a letter to confirm such termination.  Thereafter, if you and the Firm mutually agree to engage on a matter or matters, these Terms of Service (and any applicable Engagement Letter) would then become effective.

If permission for withdrawal is required by a court, we shall apply promptly for such permission and termination shall coincide with the court order for withdrawal.

## 11.      CLIENT FILES AND RECORDS RETENTION/DISPOSAL

The Firm maintains files relating to the matter(s) in which we represent you that may contain materials received from you and other materials not received from you, but which are reasonably necessary to our representation of you, including, for instance, correspondence with you or third-parties on your behalf, executed copies of agreements, filings, pleadings, deposition transcripts, and closing binders.  Together, these materials are your Client File.  The Client File is your property.  The Client File does not include materials or documents that include our attorney work product, mental impressions, notes, drafts, or internal firm correspondence or emails (together, "Work Product").  You agree that Work Product shall be and remain our property and shall not be considered part of your Client File.

At the conclusion of a matter, you have the right to take possession of your Client File (not including Work Product) or direct us to dispose of the files.

We will be entitled to make and retain copies of all or part of the Client File, at our own discretion and expense.  Furthermore, at the conclusion of a matter, we may request that you consent to the return of documents, data or other property received from you or from third parties.  You agree to cooperate in the return by the Firm of any such materials.

If you do not take possession of or direct us to dispose of the Client File at the conclusion of a matter, the Firm will store the Client File at its expense for a period of not less than seven (7) years following the conclusion of the matter.  You agree that we may dispose of the Client File following the end of that period without further notice or obligation to you.  Our retention of the Client File shall not constitute or be deemed to indicate the existence of an ongoing attorney-client relationship.

## 12.      CONSULTATION WITH COUNSEL

We may consult with our own counsel, whether outside counsel or attorneys inside the Firm who do not perform work for you on the matter, regarding compliance with the Rules of Professional Conduct or our representation of you.  These consultations may be on our own behalf and will not be charged to you.  To the extent that we are addressing the Firm's own rights or responsibilities regarding the matter, a conflict of interest might be deemed to exist between the Firm and you.  You hereby consent to such consultation, and waive any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from continuing to represent you or from acting on our own behalf, even if doing so might be deemed adverse to your interests. You acknowledge that the communications related to the consultations are protected by the Firm's own attorney-client privilege from disclosure to you.



Hudson 1701/1706, LLC
Hudson 1702, LLC
December 11, 2025
Page Twelve

**13.** **SEVERABILITY**

If any provision of the Engagement Terms is held invalid or unenforceable by any court or arbitrator of competent jurisdiction, the other provisions of the Engagement Terms shall remain in full force and effect. Any provision of the Engagement Terms held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.  Our waiver of any of the Engagement Terms shall not be deemed a further or continuing waiver of such term or any other term, unless specifically stated.

**14.** **CLIENT DUTY TO COOPERATE**

In order to best represent your interests in the Engagement, we will require information from you that we may request from time to time. It is critical that this information is complete and accurate. It is your duty to provide such information and to inform us immediately if such information is no longer accurate.