## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Hudson 1701/1706, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered)<br><br>**Related D.I.: 204, 217** |

## DEBTORS' REPLY TO OBJECTION OF ALBERTO SMEKE SABA, SALOMON SMEKE SABA AND CSC HUDSON, LLC TO DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO CONDUCT RULE 2004 EXAMINATIONS

Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors"), by and through their proposed special counsel, DLA Piper LLP (US), hereby submit this reply ("Reply") in support of their amended motion (the "Motion") for entry of an order authorizing the Debtors to conduct Rule 2004 examinations [D.I. 204] and in response to the objection of Alberto Smeke Saba, Salomon Smeke Saba, and CSC Hudson, LLC (the "Objection") to the Motion [D.I. 217]. In support of this Reply, the Debtors submit the declaration of Charles Foster, attached hereto as **Exhibit A** (the "Foster Declaration") and respectfully state as follows[2]:

1.      Debtors' Motion, which supplements their initial motion filed on October 30, 2025 [D.I. 18], demonstrated good cause to obtain the discovery of documents and information critical to Debtors in aid of administering their estates, revealing Debtors' assets and liabilities, examining transactions, and assessing whether wrongdoing has occurred or whether claims exist against any third parties. *See* Motion ¶¶ 35-43.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

2.      The Motion is necessitated by the exhaustion of efforts to meet-and-confer over the preceding two months.

3.      Accordingly, the Motion seeks authority to issue Rule 2004 Amended Subpoenas compelling the production of, *inter alia*,

- Consolidated and unconsolidated accounting records, including a complete 2025 General Ledger, and tax returns (Request Nos. 1 and 2);

- Financial records, including bank records for specific accounts identified by the Smekes, and information regarding Significant Transactions, including the Smekes transfer of approximately $1 million from Debtors' accounts on April 7, 2025, and details on "Intercompany Receivables" listed in a balance sheet  (Requests No. 5 - 9, 11, 13);

- Communications that the Smekes already agreed to provide, but have not, to the Debtors with appropriate search terms provided (Request No. 16); and

- Documents and information necessary to provide complete responses to certain SOFA Questions (Request Nos. 4, 8, 14, 21, 22).

4.      In response, the Objection vaguely suggests that they will comply with certain requests, offers conclusory objections to others and, in all events, fails to cite any legal authority in support of their position.  Guarantors resort to complaining that (i) the documents exceed the scope of the Original Motion; (ii) the Debtors should obtain the documents through other means; and (iii) the documents do not exist.

5.      As set forth below, each of these arguments falls apart under scrutiny. Accordingly, Debtors established that their Motion is necessary and the Rule 2004 Parties have refused or failed to produce sufficient documents without need for Rule 2004 Subpoenas.  The Court should authorize the Rule 2004 discovery.

6.      As an initial matter, the Guarantors suggestion that they have already provided a fulsome production is misleading.  The Guarantors claim that they have produced "hundreds if not thousands of documents" and that they gave Debtors direct access to accounting applications.

Objection at 2.  Debtors have produced 1,012 documents[3], but tellingly make no attempt to argue that they have produced the specific documents requested in the Motion and set forth in the Amended Subpoenas.  (Motion, Exh. C [Dkt. 204-3]).  Guarantors have not produced any documents since November 7, 2025, and they have failed to follow up or otherwise deliver any of the information or documents promised at the December 18 M&C.  While Guarantors did give Debtors access to the AppFolio account purportedly used to manage Debtors' accounting and finances in 2025, the software only contains records related to rental payments by the SRO Tenants and certain building maintenance items.  The AppFolio account does not "contain any other accounting or financial records such as  journal entries, general ledger, balance sheet, trial balance, or other records encompassing all aspects of Debtors' finances."  Foster Declaration ¶¶ 4-5. Guarantors should provide this information pursuant to the Rule 2004 Amended Subpoenas.

7.    In response to the Guarantors' first contention concerning scope, Debtors established that their discovery requests to the Rule 2004 Parties are reasonably tailored and appropriate given the particular circumstances of these Chapter 11 Cases. *See* Motion ¶¶ 39-43. As explained in the Motion, Debtors have clarified and supplemented their discovery requests based on their analysis of the documents produced by the Guarantors to date.  Debtors' analysis identified specific deficiencies in the production (*e.g.*, the full 2025 General Ledger (*see* Motion ¶ 18)) and the need for additional documents to explain newly-identified suspicious transactions, including the April 2025 withdrawals of nearly $1 million from Debtors' accounts (*see id.* ¶ 23) and the $2.8 million in "Intercompany Receivables" listed on Debtors' balance sheet (*see id.* ¶ 22).

---

[3] Over 360 of the documents produced are scans of paper files related to the SRO Tenants dating back to at least 1995, including, for example, 1995 telephone bills and a 2001 list of minor repairs.  Another 254 documents are monthly bank statements, but Guarantors' production of all bank account information still remains incomplete.

8.      Debtors brought this *amended* Motion precisely because of these clarifications. The fact that this Motion now seeks certain documents beyond the scope of the original *emergency* motion does not relieve Guarantors of their obligation to produce documents pursuant to Rule 2004, under which the scope of proper discovery is "broad and unfettered." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016).

9.      Guarantors also complain that Request No. 16, which seeks documents and communications hitting on a list of search terms, is "overly broad" despite having the opportunity to meet and confer with Debtors on such search terms— an identical list being previously provided to Debtors on December 11 – but Guarantors refused to engage in that process. *See* Kronley Declaration ¶ 9. Moreover, Guarantors claim that the requested discovery is beyond what would be necessary to "administer the estate," incorrectly cabining Rule 2004's broad scope and purpose which includes discovery necessary to reveal assets, examine transactions, and assess whether wrongdoing has occurred. *See In re Recoton Corp.*, 307 B.R. 751,755 (Bankr. S.D.N.Y. 2004).

10.     *Second*, Guarantors assertion that Debtors should have reached out directly to Debtors' former accountants for Debtors' financial records is plainly incongruent with the accounting firm's refusal on the record to provide information to Debtors "[d]ue to confidentiality obligations and professional standards governing the disclosure of client tax information . . . ." [D.I. 204-2 at 24.]

11.     Similarly, Guarantors' insistence that Debtors should have obtained the requested discovery from Prepetition Lender misses the point.  The Rule 2004 Subpoena is directed to each of the Guarantors who ran the Hudson Hotel redevelopment project on a day-to-day basis from May 2022 until July 2025 and, to this day, promote their involvement with the Hudson as part of

a "curated selection of projects that reflect [the Smekes] strategic approach and long-term vision."[4] The Smekes cannot credibly hide from their (failed) redevelopment efforts at the Hudson and extensive involvement in the Hudson while simultaneously promoting it in their public communications. Guarantors' suggestion that Debtors should look elsewhere is also speculative in that it assumes that Guarantors provided complete and transparent records to the Prepetition Lender. The Debtors are also entitled to seek discovery from multiple sources to test the completeness of any party's production.

12.     Guarantors also suggest without elaboration that some of the discovery requested in this Motion should be addressed in connection with the adversary proceeding initiated by First American Title Insurance Company. [Adv. Proc. No. 25-52468-KBO.] Debtors did not bring this lawsuit, however. And, in all events, Guarantors fail to identify what items of discovery sought by the Motion relate to that adversary proceeding—which remains in a nascent stage. Guarantors' invocation of the pending adversary proceeding is nothing more than a delay tactic.

13.     Finally, Guarantors claim that certain, unidentified documents do not exist. Yet, at the same time, Guarantors concede that they "will investigate what documentation or information responsive to such further requests exist . . . ." Objection ¶ 6. The fact that Guarantors have failed to undertake that investigation to date despite the extensive meet and confer efforts is telling and precisely what necessitated the instant Motion. In any event, Debtors seek to depose the Guarantors and their Chief Financial Officer to obtain testimonial evidence concerning the location of documents and information that they assert through counsel do not exist or are unavailable.

14.     In sum, Debtors have demonstrated good cause for the Rule 2004 discovery sought. By refusing to provide documents, offering incomplete answers, and stalling productions or

---

[4]   CSC, *A Strategic Portfolio Built for Long-Term Value: Hudson* (publicly available at https://www.cscre.us/properties) (last accessed 8 Jan. 2026).

responses, Guarantors have failed to provide any argument to meaningfully oppose the Rule 2004 Amended Subpoenas.  The Court should grant the relief sought by the Debtors.

      **WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, granting the relief requested in the Motion and such other and further relief to the Debtors as the Court may deem just and proper.

Dated:  January 8, 2026
         Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

  */s/  Stuart M. Brown*
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@us.dlapiper.com

- and -

Neal Kronley (admitted *pro hac vice*)
David M. Riley (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212)-335-4501
Email: david.riley@us.dlapiper.com
        neal.kronley@us.dlapiper.com

*Proposed Special Counsel to the Debtors*