# EXHIBIT A

**Revised Final DIP Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*, | Case No. 25-11853 (KBO) |
| Debtor.[1] | (Jointly Administered) |
| | **Related D.I. 56, 71 & 82** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion")[2] of the Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an interim order (the "Interim Order") and a final order (this "Final Order" and, together with the Interim Order, the "DIP Orders"), under sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"); the Court (as defined below) having considered (i) the relief requested in the DIP Motion to be approved pursuant to the Interim Order and this Final Order, that certain Senior Secured Priming Superpriority DIP Term Sheet, dated as of November 12, 2025 (the "DIP Term Sheet"; all references in this Final Order to the DIP Term Sheet shall mean as modified by this Final Order), by and among the Debtors, as borrowers, and Parkview Financial REIT, LP ("Parkview"), as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] Capitalized terms used but not defined in this Final Order have the meaning given to them in the DIP Motion or the DIP Term Sheet, as applicable. In the event of any discrepancy between the DIP Term Sheet or the Interim Order and this Final Order, the terms of the Final Order shall control.

lender (in its capacity as such, the "DIP Lender"), a copy of which is attached to this Final Order as **Exhibit 1** (together with any and all other agreements, instruments, certificates, and other documents executed and/or delivered in connection therewith, the "DIP Loan Documents"; all references in this Final Order to the DIP Loan Documents shall mean as modified by this Final Order), pursuant to which the Debtors are seeking authority to (a) enter into and perform their obligations under the DIP Term Sheet and other DIP Loan Documents and borrow the DIP Loans (as defined below) pursuant to the provisions thereof and the DIP Orders, (b) use Cash Collateral of the Prepetition Lender (as such terms are defined below) to administer the Chapter 11 Cases and fund their operations in accordance with the Approved Budget, subject to Permitted Variances (as such terms are defined below), the DIP Term Sheet, the other DIP Loan Documents, and the DIP Orders, (c) grant the DIP Lender the DIP Liens and DIP Superpriority Claims (as such terms are defined below), and (d) grant the Prepetition Lender the Adequate Protection Liens and Adequate Protection Superpriority Claims (as such terms are defined below); and (ii) the *Amended and Restated Declaration of Alan Tantleff in Support of Debtors' Chapter 11 Petition and First Day Motions* [D.I. 60] (the "First Day Declaration"); and (iii) the evidence submitted and arguments proffered or adduced at the hearing held before the Court to consider entry of the relief requested in the DIP Motion to be approved pursuant to this Final Order (the "Final DIP Hearing"); and (iv) upon the record of the Chapter 11 Cases; and (v) adequate notice of the DIP Motion, the initial hearing on the Motion, and the Final DIP Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014 and the applicable Local Rules; and (vi) it appearing that no other or further notice of the DIP Motion or Final DIP Hearing need be provided; and (vii) all objections, responses, and reservations of rights with respect to the relief requested in the DIP Motion to be approved pursuant to this Final

\\4141-2544-3682 v13

Order having been withdrawn, resolved, or overruled by the Court; and (viii) after due deliberation and consideration, and for good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUSES THAT**:[3]

A.      **Petition Date**.  On October 22, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing the Chapter 11 Cases.

B.      **Debtor in Possession**.  The Debtors continue in possession of, and to manage and operate, their businesses and property as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.      **Jurisdiction, Venue and Statutory Predicates**.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion and the parties and property affected hereby under 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  The predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6003, and 9014; and Local Rules 2002-1, 4001-2, and 9013-1.

D.      **Committee Formation**.  On November 25, 2025, the Office of the United States Trustee for Region 3 (the "U.S. Trustee") has appointed an official committee of unsecured creditors or any other committee (any such committee, the "Committee") under section 1102(a) of the Bankruptcy Code.

---

[3] The findings and conclusions set forth in this Interim Order constitute the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.    **Notice**.  Notice of the DIP Motion, the relief requested therein to be approved pursuant to this Final Order, and the Final DIP Hearing, has been served by the Debtors on (i) the U.S. Trustee; (ii) the Debtors' top twenty (20) unsecured creditors; (iii) counsel to the DIP Lender and the Prepetition Lender; (iv) all other known holders of prepetition liens, encumbrances or security interests against the Debtors' property; (v) the Internal Revenue Service; (vi) New York Secretary of State; (vii) New York City Department of Housing Preservation and Development; (viii) the Delaware Secretary of State; (ix) the Delaware Secretary of the Treasury; (x) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (xi) any other party required to be provided notice under Local Rule 9013-1(m). Under the circumstances, notice was sent under Bankruptcy Rules 4001(b), 4001(c) and 4001(d), Local Rule 4001-2, and section 102(1) of the Bankruptcy Code, and no further notice of the relief sought at the Final DIP Hearing and the relief granted herein is necessary or required.

F.    **Necessity and Uses of DIP Financing and Cash Collateral**.

i.    <u>Need for Postpetition Financing and Use of Cash Collateral</u>.  The Debtors have a critical and ongoing need for post-petition financing through the debtor-in-possession financing facility created by and through the DIP Loan Documents (the "<u>DIP Facility</u>") and to continue to use the Prepetition Collateral (as defined below), including, without limitation, Cash Collateral (as defined below), in order to, among other things, (a) fund the continued operation of their businesses, including, without limitation, to respond to various regulatory requirements and orders, (b) maintain business relationships with vendors, (c) pay the fees, costs, and expenses incurred in connection with the Chapter 11 Cases, and (d) satisfy other working capital and operational needs.  The incurrence of the DIP Loans and use of Cash Collateral pursuant to this Final Order is necessary and vital to the preservation and maintenance of the going concern and

4

potential future value of the Debtors, their assets and businesses. Irreparable harm will be caused to the Debtors, their creditors, estates, and other stakeholders if the Debtors' continued access to post-petition financing and Cash Collateral is not authorized pursuant to this Final Order. The terms applicable to the extensions of credit under the DIP Facility are fair and reasonable, and the Debtors' entry into the DIP Facility on a final basis reflects the sound exercise of the Debtors' business judgment and is supported by reasonably equivalent value and fair consideration. Therefore, it is in the best interest of the Debtors, their creditors, and their estates to authorize and approve the DIP Facility described in the Motion, as set forth in this Final Order, and as contemplated by the DIP Loan Documents, and to authorize the Debtors' use of Cash Collateral, subject to the terms and conditions in the DIP Loan Documents as set forth in this Final Order. The Prepetition Lender has consented to the use of its Cash Collateral and to the priming of the Prepetition Liens (as defined below), in each case on the terms and conditions set forth in the DIP Term Sheet and this Final Order.

ii. <u>No Credit Available on More Favorable Terms</u>. As set forth in the First Day Declaration, the DIP Facility is the best and likely only source of debtor-in-possession financing available to the Debtors at this time. Given their current financial condition, financing arrangements, and capital structure, stalled development, and the other circumstances leading to the commencement of the Chapter 11 Cases, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lender on terms and conditions more favorable than those set forth in the DIP Loan Documents. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of

5

the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Lender the priming DIP Liens and DIP Superpriority Claims pursuant to sections 364(d) and 364(c)(1) of the Bankruptcy Code, and the other protections set forth in the DIP Loan Documents, the Interim Order, and this Final Order.

iii. <u>Use of Cash Collateral and DIP Loans</u>.  As a condition to the Debtors' entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Prepetition Collateral, including, without limitation, Cash Collateral, the Debtors have agreed that Cash Collateral and the DIP Loans will be used solely in accordance with the terms and conditions of this Final Order, the DIP Loan Documents, and the Approved Budget (subject to Permitted Variances).

G. **<u>Good Faith of DIP Lender and Prepetition Lender</u>**.

i. <u>Willingness to Provide DIP Financing</u>.  The DIP Lender has committed to provide financing to the Debtors subject to, among other things: (a) entry of the DIP Orders; (b) approval of the terms and conditions of the DIP Term Sheet and other DIP Loan Documents; (c) satisfaction of the conditions set forth in the DIP Loan Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors under the DIP Loan Documents in good faith, and that the DIP Lender's claims, superpriority claims, liens and security interests, and other protections granted under this Final Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

\\4141-2544-3682  v13

ii.  <u>Business Judgment</u>.  Based on the DIP Motion and the First Day Declaration, and the record presented to the Court at the Interim Hearing and Final Hearing, (a) the provisions the DIP Facility embodied in the DIP Loan Documents, including, without limitation, the fees, expenses, and other charges paid and to be paid thereunder or in connection therewith, (b) the adequate protection authorized by this Final Order and DIP Loan Documents, and (c) the terms on which the Debtors may continue to use the Cash Collateral, in each case under this Final Order and the DIP Loan Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing and terms available under the circumstances.

iii.  <u>Good Faith Under Section 364(e)</u>.  The terms and conditions of the DIP Loan Documents and the use of Cash Collateral were negotiated in good faith, at arm's length, and for fair consideration among the Debtors, the DIP Lender, and the Prepetition Lender, with the assistance and counsel of their respective advisors.  Accordingly, all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the extension of the DIP Facility, the DIP Loan Documents, and all fees and other obligations or indebtedness owing to the DIP Lender, shall be deemed to have been extended by the DIP Lender in good faith (as that term is used in section 364(e) of the Bankruptcy Code), and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

iv.  <u>Consent to DIP Facility and Use of Cash Collateral</u>.  The Prepetition Lender has consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the

7

Debtors' entry into the DIP Loan Documents, in accordance with and subject to the terms and conditions in this Final Order and the DIP Loan Documents.

H.     **Property of the Estates**.   Each item of the DIP Collateral and Prepetition Collateral (each as defined below) constitutes property of the Debtors' estates to the fullest extent provided for in section 541 of the Bankruptcy Code.

I.     **Good Cause**.   Good and sufficient cause has been shown for immediate entry of this Final Order, and the entry of this Final Order is in the best interests of the Debtors, their creditors, estates, and other stakeholders.   Among other things, the Debtors have a critical and continuing need for the liquidity provided by the DIP Facility and Cash Collateral, as authorized pursuant to the applicable DIP Orders, in order to avoid irreparable harm, and the relief granted in this Final Order will minimize disruption of the Debtors' businesses and permit the Debtors to pay critical expenses necessary to maximize the value of their assets and estates.   The extensions of credit under the DIP Facility, the use of Cash Collateral, and the proposed adequate protection arrangements, each as set forth in this Final Order, are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment.

J.     **Immediate Entry**.   Sufficient cause exists for the immediate entry and effectiveness of this Final Order under Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.

K.     **Debtors' Stipulations**.   Each stipulation, admission, and agreement contained in this Final Order and the DIP Term Sheet will be binding upon the Debtors, and, subject to Paragraph 43 hereof, any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtors) under all circumstances and for all purposes.   The Debtors have irrevocably waived and relinquished all Challenges (as defined

below) as of the Petition Date.  Without prejudice to the rights of any other party and subject to Paragraph 43 hereof, the Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (collectively, the "Debtors' Stipulations"):

   i. Prepetition Loan Agreement. Prior to the Petition Date, the Debtors, as borrowers, and Parkview, as lender (in its capacity as such, the "Prepetition Lender"), entered into (i) that certain *Building Loan Agreement*, dated as of May 4, 2022, as amended by Amendment to Building Loan Agreement dated as of May 1, 2023, (as amended, restated or modified from time to time, the "Building Loan"), together with (ii) that certain *Project Loan Agreement*, dated as of May 4, 2022, by and among the Debtors and Parkview (as amended, restated or modified from time to time, the "Project Loan" and, together with the Building Loan, the "Prepetition Loan Agreement").  The Building Loan is secured by that certain *Building Loan Mortgage Note*, by and among the Debtors and the Prepetition Lender, dated as of May 4, 2022. The Project Loan is secured by that certain *Project Loan Mortgage Note*, by and among the Debtors and the Prepetition Lender, dated as of May 4, 2022.  For purposes of this Interim Order, the term "Prepetition Loan Documents"  means the Prepetition Loan Agreement and all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Lender in connection with, evidencing or securing the Prepetition Secured Obligations (as defined below), including, without limitation, that certain Cash Collateral Agreement, dated October 22, 2025 (the "Prepetition Cash Collateral Agreement"), between the Debtors and Prepetition Lender (each as the same may have been amended, restated, renewed, replaced, supplemented or otherwise modified from time to time).  As of the Petition Date, the Building Loan and Project Loan were fully drawn and additional protective advances were provided by the Prepetition Lender, including a protective advance made by the Prepetition

Lender on October 22, 2025, in the amount of $1,000,000, to enable the Debtors to pay critical payments and finalize preparations for filing the Bankruptcy Cases.

ii. <u>Prepetition Secured Obligations</u>.  As of the Petition Date, the Debtors are jointly and severally, justly and lawfully indebted and liable to the Prepetition Lender, without defense, counterclaim or offset of any kind, in the aggregate amount of approximately $146 million in principal amount outstanding on account of the Building Loan and the Project Loan plus all accrued and unpaid interest, fees, expenses, charges, indemnities and all other Obligations (as defined in the Prepetition Loan Agreement) incurred or accrued under or in connection with the Prepetition Loan Documents (collectively, the "<u>Prepetition Secured Obligations</u>").

iii. <u>Security for Prepetition Secured Obligations</u>.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Debtors granted to the Prepetition Lender security interests in and liens on (the "<u>Prepetition Liens</u>") all of their right, title and interest in the Collateral (as defined in the Prepetition Loan Documents) (the "<u>Prepetition Collateral</u>").

iv. <u>Validity of Prepetition Secured Obligations</u>.  The Prepetition Secured Obligations constitute legal, valid, and binding obligations of the Debtors, jointly and severally, enforceable against them in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Secured Obligations owing to, or any transfers made to the Prepetition Lender on account of the Prepetition Secured Obligations, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other legal or equitable challenges under the Bankruptcy Code or

applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Case (as defined below).

v. <u>Validity, Extent, Perfection, and Priority of Prepetition Liens</u>.  The Prepetition Liens granted to the Prepetition Lender constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), unavoidable and perfected security interests in and liens on the Prepetition Collateral (including the proceeds thereof), at any time owned by the Debtors and thereafter acquired, were granted to, or for the benefit of, the Prepetition Lender for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery under the Bankruptcy Code or applicable non-bankruptcy law or equitable remedies or regulation by any person or entity, including in any Successor Case.

vi. <u>No Challenges or Claims Related to Prepetition Secured Obligations</u>.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Loan Documents, Prepetition Liens or Prepetition Secured Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition Loan Documents, Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) under the Bankruptcy Code or applicable non-bankruptcy law or equity.  The Debtors and their estates have no valid or meritorious Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action or basis for any equitable relief against the Prepetition Liens or other property of the Prepetition Lender,

11

or the Prepetition Lender or any of its affiliates and its and their respective predecessors, agents, attorneys, advisors, professionals, officers, managers, directors, and employees with respect to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other Claims arising under sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable non-bankruptcy law equivalents. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

vii. <u>No Challenges or Claims Related to the DIP Facility</u>. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the DIP Loan Documents, DIP Liens or DIP Obligations (as defined below) exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the DIP Loan Documents, DIP Liens or DIP Obligations exist, and no portion of the DIP Loan Documents, DIP Liens or DIP Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) under the Bankruptcy Code or applicable non-bankruptcy law or equity. The Debtors and their estates have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action or basis for any equitable relief against the DIP Lender or any of its affiliates and its and their respective predecessors, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the DIP Obligations, the DIP Liens, the DIP Loan Documents or otherwise, whether arising at law or at equity, including, without limitation,

\\4141-2544-3682  v13

any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other Claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable non-bankruptcy law equivalents.

viii.    <u>Cash Collateral</u>.  Except with respect to proceeds from the DIP Loans and proceeds from the DIP Collateral, all of the Debtors' cash constitutes Cash Collateral or proceeds of the Prepetition Collateral and, therefore, is Cash Collateral of the Prepetition Lender.  For purposes of this Final Order, the term "<u>Cash Collateral</u>" includes, without limitation: (i) all "cash collateral" as defined in section 363(a) of the Bankruptcy Code on hand or in any account or accounts; (ii) all cash equivalents; (iii) all deposits subject to setoff; and (iv) all cash arising from the collection or other conversion to cash of property of the Debtors in which the Prepetition Lender asserts security interests, liens or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arose thereafter pursuant to the Interim Order or this Final Order, and whether the property converted to cash existed as of the Petition Date or arose thereafter.

**NOW, THEREFORE**, based upon the foregoing findings of fact, the DIP Motion, the First Day Declaration, and the record before the Court with respect to the DIP Motion and the Chapter 11 Cases, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    **<u>Motion Granted</u>**.  The DIP Motion is GRANTED as set forth in this Final Order. Entry into the DIP Term Sheet and the other DIP Loan Documents is hereby authorized and approved, and the use of Cash Collateral is authorized, in each case, subject to the terms and conditions set forth in this Final Order and in the DIP Loan Documents, including, without limitation, the Approved Budget (subject to Permitted Variances).  All objections to this Final

Order to the extent not withdrawn, waived, settled, or resolved, and all included reservations of rights, are hereby denied and overruled on the merits. This Final Order will become effective immediately upon its entry.

### DIP Facility Authorization

2. **Authorization of the DIP Facility.** The Debtors are expressly and immediately authorized and empowered to incur the full amount of the DIP Facility and to perform the DIP Obligations and other obligations under and in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents, and to execute, deliver, and perform under all DIP Loan Documents, including, without limitation, all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens granted by the DIP Orders and the DIP Loan Documents (the DIP Liens were immediately and automatically perfected upon entry of the Interim Order) and such perfection continues upon entry of this Final Order without the need of the Debtors or the DIP Lender to take any action, file or record any mortgage, lien, or notice, or attach or take possession of any DIP Collateral. The Debtors are hereby authorized to pay any principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents and this Final Order, as such amounts become due and owing, subject to the Approved Budget (subject to Permitted Variances), without the need to obtain further Court approval (except as otherwise provided in this Final Order or in the DIP Loan Documents), subject to and in accordance with their terms and to take any other actions that may be necessary or appropriate, all to the extent provided in this Final Order and the DIP Loan Documents. The DIP Loan Documents represent legal, valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms. Each member, manager, and

\\4141-2544-3682 v13

officer of a Debtor acting individually is hereby authorized to execute and deliver each of the DIP Loan Documents (in the event not already done), such execution and delivery to be conclusive evidence of such member, manager, or officer's respective authority to act in the name of and on behalf of the Debtors.

3.        In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) that may be reasonably required or necessary for the Debtors' performance of their obligations under or in connection with the DIP Facility and DIP Loan Documents, including, without limitation, (i) the execution, delivery and performance of the DIP Loan Documents (in the event not already done), any other documents or instruments that may be reasonably requested by the DIP Lender in connection with the DIP Facility, and, subject to the provisions of paragraph 22 of this Final Order, any waivers, forbearances, consents or amendments to the DIP Loan Documents as the Debtors and the DIP Lender may agree in writing, all in accordance with the terms of the DIP Loan Documents and this Final Order, and (ii) payment of all reasonable fees and expenses of the DIP Lender and its counsel and other retained professionals as set forth in the DIP Loan Documents and Paragraph 38 hereof.

4.        With effect from and after the entry of the Interim Order, the DIP Loan Documents shall constitute valid, binding and enforceable obligations of the Debtors, enforceable against the Debtors in accordance with the terms thereof and hereof.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or DIP Orders shall be voidable, or recoverable under the Bankruptcy Code (including, without limitation, under section 502(d) or 549 of the Bankruptcy Code) or under any applicable non-bankruptcy law, or subject

15

to any defense, reduction, setoff, recoupment or counterclaim and shall survive dismissal of, or conversion of the case to a case under chapter 7 of the Bankruptcy Code.

5.   **Authorization of DIP Facility**.  The maximum amount of DIP Loans available under the DIP Facility is $32,762,104, of which up to $12,270,387 was available to be borrowed by the Debtors in one draw upon entry of the Interim Order, subject to the satisfaction of the Initial DIP Borrowing Conditions and in accordance with the other provisions of the DIP Term Sheet (the "Initial DIP Loan").  An additional $20,491,717, is available to be borrowed by the Debtors in multiple draws upon entry of this Final Order, subject to the satisfaction of the Subsequent DIP Borrowing Conditions and in accordance with the other provisions of the DIP Term Sheet (the "Subsequent DIP Loans").  The DIP Lender's commitment to make the DIP Loans is limited to the aggregate amount of the Initial DIP Loan and Subsequent DIP Loans, i.e., $32,762,104 (the "DIP Commitment").  To prevent irreparable harm to the Debtors' and their estates, and to enable the Debtors to continue to operate their businesses and preserve and maximize the value of their assets and estates, subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order, the Debtors are hereby authorized to borrow the Subsequent DIP Loans.

6.   **Roll Up**.  The Roll Up is hereby approved as set forth in this Final Order. Notwithstanding anything to the contrary in the DIP Term Sheet or Interim Order, simultaneous with the borrowing of any Initial DIP Loans or Subsequent DIP Loans by the Debtors under the DIP Facility, there shall be a dollar-for-dollar roll up of Prepetition Secured Obligations to DIP Loans when and as funded by the DIP Lender to the Debtors up to a maximum aggregate amount of $32,762,104.  The outstanding aggregate amount of Prepetition Secured Obligations shall be

automatically and irrevocably deemed reduced by the amount of Prepetition Secured Obligations included in the Roll Up.

7.      **Early Termination Fee**.  The Interim Order approved a fee equal to 2% of the DIP Commitment that was required to be paid by the Debtors in cash to the DIP Lender (the "Early Termination Fee") in the event of a Voluntary Prepayment of all DIP Obligations. However, the DIP Lender has agreed to irrevocably waive the Early Termination Fee, which fee is now void pursuant to this Final Order.

8.      **DIP Obligations**.  The DIP Loan Documents and the DIP Orders constitute and evidence the validity and binding effect of the DIP Obligations.  All DIP Obligations are enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion in any of the Chapter 11 Cases, in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case"), or in the event any Bankruptcy Case is dismissed.  The DIP Obligations include all loans, reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Lender, including, without limitation, all principal, accrued interest, costs, charges, fees, expenses, and other amounts, in each case payable under the DIP Loan Documents and/or pursuant to the DIP Orders.  The DIP Obligations are due and payable on the Termination Date (as defined below).  No obligation, payment, transfer, or grant of collateral as security hereunder or under the DIP Loan Documents (including, without limitation, any DIP Obligations or DIP Liens) to the DIP Lender, including, without limitation, in connection with any adequate protection provided hereunder, will be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any

applicable law (including, without limitation, under sections 502(d), 544, and 547–550 of the Bankruptcy Code or under any applicable state or common law), or be subject to any disgorgement, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), claim, counterclaim, charge, assessment, cross-claim, defense, or any other liability or challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for any reason.

9. **DIP Collateral**. To secure the prompt payment and performance of all DIP Obligations, including, without limitation, all principal, the Roll Up, interest, premiums, payments, fees, costs, expenses, indemnities, and/or other amounts, pursuant to, and with effective from and after the date of entry of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender was granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition liens on and security interests in the DIP Collateral (collectively, the "DIP Liens"), subject to the Carve Out. The DIP Liens granted pursuant to the Interim Order are hereby affirmed, subject to the modifications set forth in this Final Order, and, as modified, shall apply to all DIP Loans extended pursuant to the Interim DIP Order and this Final DIP Order. Notwithstanding anything to the contrary in the DIP Term Sheet or the Interim Order, the DIP Collateral consists of all assets and properties of each of the Debtors and their estates, including, without limitation, whether tangible or intangible, real, personal, or mixed, wherever located, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, the Debtors, whether prior to or after the Petition Date, including, without limitation, all of the Debtors' rights, title, and interests in (1) all Prepetition Collateral; (2) all money, cash, DIP Loan proceeds, and cash equivalents; (3) all funds in any deposit accounts, securities accounts,

commodities accounts, deposits or other accounts together with all money, cash, and cash equivalents, instruments, and other property deposited therein or credited thereto from time to time; (4) all accounts and other receivables (including, without limitation, those generated by intercompany transactions); (5) all contracts and contract rights including, without limitation, landlord's rights under residential and non-residential real property leases; (6) all instruments, documents and chattel paper; (7) all securities (whether or not marketable); (8) all goods, as-extracted collateral, furniture, machinery, equipment, inventory and fixtures; (9) all real property interests and attendant rights, licenses, certifications and permits; (10) all interests in leaseholds; (11) all franchise rights; (12) all patents, tradenames, trademarks (other than intent-to-use trademarks), copyrights, licenses and all other intellectual property; (13) all general intangibles, refunds (excluding all tax claims and/or tax refunds), or insurance proceeds (excluding any member or management liability insurance policies and all rights of any nature with respect thereto, including all proceeds thereof); (14) all equity interests, capital stock, limited liability company interests, partnership interests and financial assets; (15) all investment property; (16) all supporting obligations; (17) all letters of credit and letter of credit rights; (18) all permits, licenses, employment contracts, and license agreements, books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records), certifications, approvals, and permits; (19) to the extent not covered by the foregoing, all other goods, inventories, supplies, assets or properties of the Debtors, whether tangible, intangible, real, personal or mixed; and (20) all products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, including, without limitation, any and all proceeds of any insurance (including, without limitation, any business interruption and property

insurance, but excluding any member or management liability insurance policies and all rights of any nature with respect thereto, including all proceeds thereof), indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing, now owned or hereafter acquired.  For the avoidance of doubt and notwithstanding anything to the contrary in this paragraph 9, the DIP Term Sheet, or the Interim Order, the DIP Collateral excludes all (i) assets of the Debtors not subject to a lien or security interest under the Prepetition Loan Documents as of the Petition Date, (ii) any claim, right, or cause of action of the Debtors arising under chapter 5 of the Bankruptcy Code and/or any state law equivalents, (iii) commercial tort claims, rights, or causes of action of the Debtors and all other litigation claims, rights, or causes of action of the Debtors, (iv) all tax claims and/or tax refunds, (v) and member or management liability insurance policies of the Debtors and all rights of any nature with respect thereto, including all proceeds thereof, and (vi) all proceeds of any of the assets listed in the foregoing clauses (i) through (v) (collectively, the "Excluded Assets").

10.    **DIP Liens**.  The DIP Liens are valid, automatically perfected upon entry of the Interim Order, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, Permitted Liens (as defined below), and all other encumbrances on, or claim to any of the DIP Collateral, except that the DIP Liens are subject and immediately junior to the Carve-Out (as defined below) and all Mechanics' Liens (as defined below).  The DIP Liens are not and shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case, and will be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Case

or Successor Case.  The DIP Liens will not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  The DIP Liens have the priorities set forth above and below.  As used in this Final Order, "Permitted Liens" means, except with respect to the Carve-Out and Mechanics' Liens, the DIP Liens, the Prepetition Liens, and any other liens in existence as of the Petition Date including, without limitation, as (i) set forth on the Title Policy (as defined in the Prepetition Loan Agreement) and constituting Permitted Encumbrances (as defined in the Prepetition Loan Agreement) (collectively, the "Permitted Liens").  As used in this Final Order, "Mechanics' Liens" means liens arising under non-bankruptcy law from or in connection with the Project and/or incidental to the ownership of the DIP Collateral or Prepetition Collateral in connection with worker's compensation, unemployment insurance and other like laws, carrier's, mechanic's, materialperson's, repairperson's, vendor's, and warehouseperson's, perfected prior to the Petition Date or subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code, and in each case to the extent such liens are valid, perfected, enforceable and non-avoidable.

11.    **Unencumbered Property**.  Notwithstanding anything to the contrary in the DIP Term Sheet or Interim Order, the DIP Liens shall not attach to the Excluded Assets or the proceeds thereof.

12.    **Priming DIP Liens**.  Pursuant to section 364(d) of the Bankruptcy Code, subject to the Carve-Out and Mechanics' Liens, the DIP Liens granted pursuant to DIP Orders constitute valid, binding, continuing, enforceable, fully and automatically perfected, first priority, priming DIP Liens upon all DIP Collateral subject to (i) a lien or security interest as of the Petition Date, including, without limitation, all Prepetition Liens and Permitted Liens, and (ii) the Adequate Protection Liens.

21

13.   **Liens Senior to Certain Other Liens**.  Subject to the Carve-Out and Mechanics' Liens, the DIP Liens and the DIP Superpriority Claims are not and shall not be made subject to or *pari passu* with (i) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, including, without limitation, any lien or security interest granted in favor of any federal, state, municipal, or other governmental unit (including, without limitation, any regulatory body subject to the following proviso), commission, board, or court for any liability of the Debtors, (ii) any lien or security interest that is avoided or preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, or (iii) any other lien, security interest, or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the Petition Date; *provided, however*, that if the DIP Lender determines, in consultation with the Debtors, that the imposition of the priming DIP Liens would impair any regulatory authority's lien or interest in any DIP Collateral such that the Debtors' rights, licenses, or privileges to continue and complete development of the Project would be materially and negatively impacted thereby, the DIP Lender agrees to enter into a subordination agreement, in all respects acceptable to the DIP Lender, pursuant to which the DIP Liens would be subordinated to such regulatory authority's lien or interest in any DIP Collateral solely to the extent necessary to ensure the Debtors may continue and complete development of the Project.

14.   **DIP Superpriority Claims**.  Subject to the Carve-Out and Mechanics' Liens, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with, to the fullest extent permitted under the Bankruptcy Code or other applicable law, priority over any and all administrative expenses, including, without limitation, the Adequate Protection Superpriority Claim granted to the Prepetition

\\4141-2544-3682 v13

Lender hereunder, and all other claims against the Debtors, including, now or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, with recourse against all DIP Collateral (the "DIP Superpriority Claim"), and, such DIP Superpriority Claims shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law, provided that the DIP Superpriority Claims shall not be payable from the Excluded Assets.

15.     **No Obligation to Extend Credit**.  The DIP Lender has no obligation to fund any Subsequent DIP Loans, or extend any other financial accommodations, under the DIP Loan Documents or this Final Order unless all of the applicable conditions precedent under the DIP Loan Documents, including, without limitation, the subsequent DIP Borrowing Conditions and this Final Order have been satisfied in full or waived in writing by the DIP Lender in accordance with the terms of the DIP Loan Documents.

16.     **Use of DIP Proceeds**.  The DIP Loans and Cash Collateral shall be used by the Debtors solely to: (i) fund day-to-day working capital needs of the Debtors and expenditures during the Chapter 11 Cases and (ii) to pay reasonable fees and expenses of legal and financial advisors or other similar advisors, in each case in accordance with the applicable Approved Budget (subject to the Permitted Variances) and the provisions of the DIP Loan Documents and the DIP Orders.

17.     **No Monitoring Obligation**.  The DIP Lender has no obligation or responsibility to monitor the Debtors' use of the DIP Loans and Cash Collateral, and the DIP Lender may rely upon the Debtors' representations that the use of the DIP Loans and Cash Collateral at any time

23

is in accordance with the requirements of the DIP Orders and the DIP Loan Documents, including, without limitation, the Approved Budget (subject to the Permitted Variances).

18. **Authorization to Use Cash Collateral**.   The Prepetition Cash Collateral Agreement was terminated (other than those provisions that survive termination) and superseded by the Interim Order.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtors are authorized to use Cash Collateral, including, without limitation, any remaining loan proceeds covered by the Prepetition Cash Collateral Agreement as long as such Cash Collateral use is included in the Approved Budget.  Nothing in this Final Order authorizes the disposition of any assets of the Debtors outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted by this Final Order, the DIP Loan Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), as applicable.

19. **Consent of Prepetition Lender**.  The Prepetition Lender consents to (i) the provisions of this Final Order, including the Carve-Out, (ii) the Debtors' entry into the DIP Term Sheet and other DIP Loan Documents, (iii) the incurrence by the Debtors of the Initial DIP Loan and the Subsequent DIP Loans, (iv) the granting of the DIP Liens and DIP Superpriority Claims, and (v) the Approved Budget (subject to the Permitted Variances).

20. **Adequate Protection**.

a. <u>Prepetition Lender</u>.  Subject only to a successful Challenge, the Prepetition Lender shall have and is hereby granted (effective from and after the entry of the Interim Order and without the necessity of the execution of mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing

statements or otherwise), the following adequate protection (collectively, "Adequate Protection") with respect to (i) (a) the priming of the Prepetition Liens securing the Prepetition Secured Obligations to be effectuated by the DIP Liens and DIP Facility, (b) the use of the Prepetition Collateral, including, without limitation, Cash Collateral, and (c) all of the other transactions contemplated by the DIP Facility; and (ii) for any diminution in the value of the Prepetition Liens whether or not such diminution in value results from the sale, lease or use by the Debtors of the Prepetition Collateral securing the Prepetition Secured Obligations, including, without limitation, Cash Collateral, the priming of the Prepetition Liens securing the Prepetition Secured Obligations or the stay of enforcement of any Prepetition Lien securing the Prepetition Secured Obligations arising from sections 105 or 362 of the Bankruptcy Code, or otherwise:

 i. <u>Adequate Protection Liens</u>.  Continuing valid, binding, enforceable, and perfected postpetition replacement liens under sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code on the DIP Collateral, which will be subject and subordinated only to the Carve-Out, the DIP Liens, the Permitted Liens, the DIP Superpriority Claims, and the Mechanics' Liens (the "<u>Adequate Protection Liens</u>") and which (a) shall otherwise be senior to all other liens on, security interests in, or claims against the DIP Collateral, and (b) shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case and will be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Case, and will

25

not be subject to sections 510, 549, or 550 of the Bankruptcy Code. Notwithstanding anything to the contrary in the DIP Term Sheet or Interim Order, the Adequate Protection Liens shall not attach to any Excluded Assets.

ii.  <u>Adequate Protection Superpriority Claims</u>.   Administrative superpriority expense claims in the Chapter 11 Cases under section 507(b) of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claims</u>"), which will be subject and subordinated only to the Carve-Out, the DIP Liens, the Permitted Liens, the DIP Superpriority Claims, and the Mechanics' Liens, and shall have priority over any and all other administrative expenses and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever as to and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, provided that the Adequate Protection Superpriority Claims shall not be payable from the Excluded Assets.

iii.  <u>Lender Fees and Expenses</u>.   Payment or reimbursement of all reasonable fees and out of pocket expenses of the Prepetition Lender incurred in connection with the Prepetition Obligations, Prepetition Liens, Prepetition Loan Documents, the DIP Term Sheet and other DIP Loan Documents, the DIP Orders, and the Chapter 11 Cases, whether incurred prior to or following the Petition Date, which amounts shall be added to the principal amount of the Prepetition Obligations; *provided, however*, that notwithstanding anything in the DIP Term Sheet to the contrary, the

payment and reimbursement of such fees and expenses shall be subject to the applicable notice, review and payment procedures set forth in Paragraph 38 hereof. .

b. <u>Adequate Protection for Other Lienholders</u>.  As adequate protection under sections 361 and 363 of the Bankruptcy Code, all lienholders (other than the Prepetition Lender) holding valid, perfected liens as of the Petition Date are granted replacement liens on postpetition collateral, with the same validity, priority, and extent as such liens existed on the Petition Date, subject to any existing defenses, objections, or challenges under applicable law, which replacement liens will be *pari passu* with the Adequate Protection Liens and subject and subordinated only to the Carve-Out, the DIP Liens, the Permitted Liens, the DIP Superpriority Claims, and the Mechanics' Liens.

21.    **Adequate Protection Reservation**.  Nothing in this Final Order will impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender or any lienholder hereunder is insufficient to compensate for any diminution in value of its interests in the Prepetition Collateral during the Chapter 11 Case or any Successor Case, subject to the Carve Out.  The receipt by the Prepetition Lender or any lienholder of the adequate protection provided in the DIP Orders shall not be deemed an admission that the interests of the Prepetition Lender or any other lienholder are adequately protected, and this Final Order will not prejudice or limit the rights of the Prepetition Lender or any other lienholder to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

**General Provisions Regarding DIP Financing and Use of Cash Collateral**

22.     **Amendments to the DIP Loan Documents**.  The Debtors and the DIP Lender may enter into one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case in the DIP Lender's sole discretion, and no further approval of this Court will be required for any amendment, waiver, consent, or other modification to and under the DIP Loan Documents (and any fees paid in connection therewith) that does not materially and adversely affect the Debtors or that does not (i) shorten the maturity of the DIP Facility, (ii) increase the principal amount of, the rate of interest on, or the fees payable in connection with the DIP Facility, (iii) change any Event of Default (other than to remove or make such Event of Default more favorable to the Debtors), (iv) add any covenants or amend the covenants (other than to remove or amend a covenant to make it more favorable to the Debtors), or (v) change the priorities of the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, or Adequate Protection Superpriority Claims.

23.     **Approved Budget**.

a.     Budget.  Attached to this Final Order as **Exhibit 2** is the updated DIP budget (the "Budget"), which is hereby approved.  The DIP Loans and Cash Collateral available to the Debtors under this Final Order shall only be used by the Debtors in accordance with the Budget and each subsequent Approved Budget (subject to Permitted Variances), this Final Order, and the DIP Loan Documents.

b.     Budget Updating.  The Budget, and each subsequent budget, shall be updated by the Debtors by no later than the tenth day of each month at 5:00 p.m. (Eastern time) (the "Updated Budget"), which Updated Budget shall be shared with counsel to the Committee at the same it is delivered to the DIP Lender and which shall in all respects be satisfactory in form and

substance to the DIP Lender (the Initial Budget and each Updated Budget that is approved by the DIP Lender, the "Approved Budget").  If an Updated Budget is not approved in writing by the DIP Lender within two (2) business days of receipt thereof, subject to the occurrence of any Event of Default and/or the Termination Date, the prior Approved Budget shall continue in place until a subsequent proposed Updated Budget is approved in writing by the DIP Lender.  Other than with respect to the Carve-Out, the DIP Lender's consent to, or acknowledgement of, the Approved Budget shall not be construed as consent to use the DIP Loans or Cash Collateral beyond the Termination Date, regardless of whether all funds covered by such Approved Budget have been expended.  All amounts necessary to fund the Carve-Out (including the Professional Fee Reserve (as defined below)) shall be included in an Approved Budget and shall be subject to the DIP Commitment.

c.      Reporting.  Beginning on January 1, 2026, not later than 5:00 p.m. (Eastern time) on the first business day of each calendar month, the Debtors shall deliver to the DIP Lender and counsel to the Committee a variance report in all respects satisfactory in form and substance to the DIP Lender setting forth (i) the Debtors' expenditures and disbursements on an aggregate basis (excluding Case Professionals (as defined below) fees and expenses incurred in accordance with the Initial Budget or subsequent Approved Budget) during the immediately preceding calendar month compared to the projected expenditures and disbursements (on a line-by-line basis) set forth in the Approved Budget for such Variance Testing Period (as defined below) and (ii) the variance in dollar amounts of the actual expenditures and disbursements (excluding all fees due and payable pursuant to 28 U.S.C. § 1930(a) plus any interest due and payable under 31 U.S.C. § 3717) for each monthly period ending on Sunday from those reflected for the corresponding period in the Approved Budget.  In addition, the Debtors' legal and financial

advisors and the Committee's legal and financial advisors shall meet on a weekly basis to discuss matters related to the Project, Budget, and Chapter 11 Cases, generally.  For purposes of this Final Order, "Permitted Variance" means disbursements that are not more than 15% above the total aggregate amount of the actual disbursements across all line items (excluding Case Professional fees to the extent such fees are in accordance with, and do not exceed, amounts budgeted for such fees in an Approved Budget) (the "Operating Disbursements") during any Variance Testing Period against the projected Operating Disbursements in the Approved Budget for such Variance Testing Period; *provided*, *however*, that any net positive variance shall be carried forward and available in future Variance Testing Period(s) on a cumulative basis, subject to deduction for any negative variances in any prior period without duplication.

24.    **Modification of the Automatic Stay**.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit the Debtors, the DIP Lender and/or the Prepetition Lender to accomplish the transactions contemplated by this Final Order.

25.    **Perfection of DIP Liens and Adequate Protection Liens**.  The DIP Liens and Adequate Protection Liens were automatically perfected upon the entry of, and pursuant to, the Interim Order.  This Final Order is sufficient and conclusive evidence of the creation, extent, validity, perfection, and priority of all DIP Liens and the Adequate Protection Liens and any and all other liens granted in the DIP Term Sheet, any security DIP Loan Document executed and delivered in connection therewith or herewith, or granted in the DIP Orders, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, attachment, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of

doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens or to entitle the DIP Lender and the Prepetition Lender to the priorities granted in this Final Order. Notwithstanding the foregoing, the DIP Lender and the Prepetition Lender are authorized to file, as the DIP Lender or Prepetition Lender, as the case may be, deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents will be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation will be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  Each of the DIP Lender and the Prepetition Lender may, in its discretion, file an electronic copy or photocopy of this Final Order as a financing statement, mortgage, or other official record with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments, and each such filing or recording office or with any registry of deeds or similar office is authorized to accept the same.  To the extent that the Prepetition Lender is, with respect to the DIP Collateral, a secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements or any other Prepetition Loan Documents or is listed as loss payee, lenders' loss payee or additional insured under any the Debtors' insurance policies, the DIP Lender will also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  Notwithstanding the foregoing, if the DIP

31

Lender or Prepetition Lender so requires, the Debtors shall use reasonable efforts to execute, file or record any documents and/or take any actions necessary or prudent to ensure the perfection of the DIP Liens and Adequate Protection Liens.

26.     **Proceeds of Subsequent Financing**.  If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Case obtains credit or incurs debt under sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations, if any, which expressly survive termination of the DIP Loan Documents, and which will be cash collateralized to the extent and on terms required by the DIP Lender) and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, then, after satisfaction of the Carve-Out, all cash proceeds derived from such credit or debt will immediately be turned over to the DIP Lender to be distributed in accordance with this Final Order and the DIP Loan Documents; *provided, however*, that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court.  If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in the Chapter 11 Cases, or any Successor Case, obtains credit or incurs debt (other than the DIP Facility) under section 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full of the Prepetition Secured Obligations (other than unasserted contingent obligations, if any, which expressly survive

termination of the DIP Loan Documents, and which will be cash collateralized to the extent and on terms required by the DIP Lender), the Prepetition Lender's and/or the DIP Lender's rights to object to the Debtors' use of Cash Collateral and assert a lack of adequate protection is and will be fully preserved.

27.    **Maintenance of DIP Collateral**.    Until the payment in full of the DIP Obligations and the Prepetition Secured Obligations, the Debtors shall: (i) insure and/or maintain insurance on the DIP Collateral to such extent and at such levels as exist as of the date of entry of the Interim Order and as otherwise may be reasonably required from time to time by the DIP Lender, and (ii) maintain the cash management system consistent with the terms and conditions of any orders entered by the Court with respect to the Debtors' cash management system.

28.    **Rights to Credit Bid**.

a.    Subject only to a successful Challenge and the right of the Committee to object for cause, pursuant to section 363(k) of the Bankruptcy Code and the Prepetition Loan Documents, and subject to the Carve Out, the Prepetition Lender, or its designee, shall have the right to credit bid all or any portion of its liens and claims, including, without limitation, the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Adequate Protection Superpriority Claim, in connection with any sale of any, all, or substantially all of the Debtors' assets on which the Prepetition Lender has a lien or claim, including, without limitation, any sale occurring under section 363 of the Bankruptcy Code or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including, without limitation, a plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii), or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; *provided, however*, if, prior to the expiration of the Challenge Period (as defined below), the

33

Prepetition Lender successfully credit bids all or a portion of the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claim for any assets of the Debtors on which the Prepetition Lender has a lien or claim, and any or all of such liens or claims that were credit bid are subsequently the subject of a successful, final and non-appealable Challenge pursuant to Paragraph 43, the Prepetition Lender shall be required to pay cash to the Debtors in an amount equal to the value of the liens or claims included in the credit bid which were subject to such successful Challenge.  In addition, nothing in this Final Order shall prohibit the Committee from objecting "for cause" under section 363(k) of the Bankruptcy Code to a credit bid by the Prepetition Lender.

b.  Subject to the right of the Committee to object for cause, pursuant to section 363(k) of the Bankruptcy Code and the DIP Loan Documents, subject to the Carve Out, the DIP Lender, or its designee, shall have the right to credit bid all or any portion of its liens and claims, including, without limitation, the DIP Liens, the DIP Obligations, and the DIP Superpriority Claims, in connection with any sale of any, all, or substantially all of the Debtors' assets, including, without limitation, any sale occurring under Bankruptcy Code section 363 or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including, without limitation, a plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii), or a sale or disposition by a chapter 7 trustee for the Debtors under section 725 of the Bankruptcy Code.

29.  **Milestones**.  Notwithstanding anything to the contrary in the DIP Term Sheet or Interim Order, the DIP Facility and Chapter 11 Cases are subject to the milestones set forth in **Exhibit 3** (collectively, the "Case Milestones").  All requirements in the DIP Term Sheet concerning the DIP Milestones and Development Milestones are void.

30. **Termination Date**.  The Debtors may borrow DIP Loans and use Cash Collateral from the date of entry of the Interim Order until the earliest to occur of the following (the "Termination Date"):

a.  the occurrence of an Event of Default that is not cured within the time allotted under the DIP Term Sheet, if any;

b.  twelve (12) months after the Petition Date (as such date may be extended with the prior written consent of the DIP Lender);

c.  the date of consummation of a sale of all or substantially all of the assets of any or all of the Debtors; and

d.  the effective date of a chapter 11 plan with respect to any or all of the Debtors.

31.  Upon the Termination Date, subject to the Carve Out, the Debtors shall repay to the DIP Lender all outstanding DIP Obligations, without any setoff or deduction.  If the Termination Date occurs as a result of the closing of a sale of all or substantially all of the assets of any of the Debtors, all outstanding DIP Obligations shall be paid in full prior to or simultaneous with the closing of such transaction either (i) directly from the buyer in such transaction or (ii) directly from the escrow account, via the escrow agent, established for the consummation of such transaction.  Such payment shall be made by wire transfer of immediately available funds to an account designated in writing by the DIP Lender to the Debtors prior to the closing of such transaction.

32. **Events of Default**.  The occurrence of any Event of Default under the DIP Term Sheet, unless waived in writing (which may be by electronic mail) and in accordance with the terms of the DIP Loan Documents, shall constitute an event of default thereunder and hereunder.

33.    **Rights and Remedies Upon Event of Default**.  Upon the occurrence of an Event of Default the DIP Lender shall not be obligated to make any further DIP Loans under the DIP Facility to the Debtors, and shall have the following additional rights and remedies:

    a.  Subject to Paragraph 35 hereof, following five (5) business days' advance notice to the Debtors, the Committee, and the U.S. Trustee (a "Termination Notice"), the DIP Lender shall have the right, upon the expiration of such notice period and subject to the provisions of the Carve Out, to take all or any of the following actions without further order of or application to the Court, and notwithstanding the automatic stay:

        i.  immediately terminate the Debtors' use of any Cash Collateral; *provided, however*, that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court;

        ii.  terminate the DIP Facility and DIP Commitment;

        iii.  declare all DIP Obligations to be immediately due and payable;

        iv.  freeze monies or balances in the Debtors' accounts (other than the Professional Fee Reserve Account) and sweep all funds contained in any account subject to a control agreement, or require the Debtors to transfer such funds to an account designated by the Lender for such purpose;

*provided, however*, that the Debtors, with the DIP Lender's prior written consent or pursuant to an order of this Court, may retain cash in an amount to be agreed among the Debtors and DIP Lender, or as ordered by the Court, as applicable, solely to fund life safety expenditures, and any use of cash for such purpose shall entitle the DIP Lender to adequate protection under section 361 of the Bankruptcy Code as may be agreed among the Debtors and DIP Lender or as ordered by the Court;

v.    immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Lender against the DIP Obligations, or otherwise enforce any and all rights against the DIP Collateral in the possession of the DIP Lender, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations; and

vi.    take any other actions or exercise any other rights or remedies permitted under the DIP Orders, this DIP Term Sheet, the other DIP Loan Documents, or applicable law to effect the repayment of the DIP Obligations.

34.    No failure or delay by the DIP Lender in exercising any right, remedy, power or privilege hereunder or under any DIP Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The remedies provided herein and in the DIP Loan Documents are cumulative and not exclusive of any remedies provided by law. Nothing contained herein or in any DIP Loan Document shall in any way affect the right of the DIP Lender to exercise any statutory or common law lien or right of setoff.

\\4141-2544-3682  v13

35.     **Emergency Hearing**.  Any party in interest in the Chapter 11 Cases may seek an emergency hearing during the five (5) business days following the date a Termination Notice is delivered (such five (5) business day period, the "Remedies Notice Period").   During the Remedies Notice Period, the Debtors will continue to have the right to use Cash Collateral solely to satisfy obligations that are necessary to avoid immediate and irreparable harm to the Debtors and their estates.   Unless the Court has entered an order prior to the expiration of the Remedies Notice Period finding that an Event of Default has not occurred or otherwise enjoining the DIP Lender from exercising rights and remedies, the DIP Lender shall be entitled to exercise all rights and remedies in accordance with the DIP Loan Documents, this Interim Order, and applicable law without further order of or application to the Court, and notwithstanding the automatic stay.   Notwithstanding the foregoing, if any party in interest requests an emergency hearing during the Remedies Notice Period, but such hearing is scheduled for a later date by the Court, then the Remedies Notice Period shall be automatically extended, and no rights or remedies may be exercised pursuant to the foregoing paragraph until after the Court has issued an order or other ruling following such hearing.

36.     **Carve-Out**.

        a.   Carve-Out Definition.   As used in this Final Order and the DIP Loan Documents, "Carve-Out" means the sum of: (i) to the extent allowed at any time, all unpaid professional fees and disbursements incurred at any time prior and on the date of to the delivery of the Carve-Out Trigger Notice (as defined below) ("Allowed Professional Fees") by the Debtors and the Committee for any of their respective retained professionals in the Chapter 11 Cases (the "Case Professionals"), in an aggregate amount not to exceed the amounts set forth in the then existing Approved Budget in the applicable line for such Case Professionals prior to the

Carve-Out Effective Date; (ii) all allowed and unpaid professional fees and expenses incurred by the respective Case Professionals following the delivery of the Carve-Out Trigger Notice in an aggregate amount not in excess of $1,000,000; (iii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726 of the Bankruptcy Code; plus (iv) all fees pursuant to 28 U.S.C. §1930(a) and all fees required to be paid to the Clerk of the Court for the Debtors for the time period beginning on the Petition Date and ending on the date of any dismissal or conversion of the Chapter 11 Cases, which fees described in this clause (iv) shall not be limited to amounts that may be set forth in any Approved Budget.

        b.   "<u>Carve-Out Trigger Notice</u>" means a written notice, delivered by email or U.S. Mail, by the DIP Lender to the Debtors, their Chief Restructuring Officer, their counsel, the U.S. Trustee, and counsel to the Committee, of any default under the DIP Loan Documents (the date of such delivery, the "<u>Carve Out Effective Date</u>").

        c.   <u>Professional Fee Reserve</u>.  On a monthly basis, and as part of the Carve-Out, the fees, costs and expenses of Case Professionals included in the applicable Approved Budget may be deposited by the Debtors into a segregated escrow account by the Debtors (the "<u>Professional Fee Reserve</u>").  On the Carve-Out Effective Date, the estimated aggregate amount of any professional fees and disbursements accrued by Case Professionals prior to and on the date of delivery of the Carve-Out Effective Date (in an aggregate amount not to exceed the amounts set forth in the then existing Approved Budget prior to the Carve-Out Effective Date for all professional fees and expenses) not to exceed $1,000,000, shall, to the extent not already funded, be funded by the DIP Lender under the DIP Commitment as a DIP Loan and deposited by the Debtors into the Professional Fee Reserve into a segregated escrow account by the Debtors, which funds shall be DIP Collateral, subject to the Carve-Out.  Amounts funded into the

Professional Fee Reserve shall be used by the Debtors in accordance with the provisions of this DIP Term Sheet, the DIP Orders, and any orders of the Court entered with respect to the allowance and payment of fees and expenses of Case Professionals.  Any amounts remaining in the Professional Fee Reserve after payment of all allowed fees and expenses shall be transmitted promptly to the DIP Lender (unless the DIP Lender has been paid in full, in which case any such funds shall be promptly transmitted to the Debtors) without any setoff or deduction.

   d. <u>No Obligation to Pay Professional Fees; Right to Object</u>.  The DIP Lender and the Prepetition Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any of the Case Professionals incurred in connection with the Chapter 11 Cases, any Successor Case, or otherwise.  Nothing in the DIP Orders or otherwise shall, or be construed to, obligate the DIP Lender or the Prepetition Lender in any way to pay compensation to, or to reimburse expenses of, any Case Professional, or to guarantee that the Debtors or their estates have sufficient funds to pay such compensation or reimbursement.  Nothing herein shall be construed as consent to the allowance of any fees or expenses of any Case Processionals in the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code, or of any other person or entity, or affect the right of the DIP Lender and/or the Prepetition Lender to object to the allowance and payment of any such fees and expenses, or any other fees and expenses.

   37. **<u>Good Faith Under Section 364(e) of the Bankruptcy Code</u>**.  The DIP Lender has acted in good faith in connection with the DIP Facility, the DIP Loan Documents, and the DIP Orders and is entitled to rely upon the protections granted in the DIP Orders and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in the DIP Orders and the record made during the Interim Hearing and Final Hearing, and in accordance with section 364(e) of the

40

Bankruptcy Code, and notwithstanding any modification, amendment or vacatur of any or all of the provisions of the DIP Orders by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code.

38.     **Reimbursement of Fees and Expenses.**  The Debtors shall reimburse the DIP Lender for all of its pre-petition and post-petition reasonable fees, costs, and expenses incurred in connection with the DIP Facility, DIP Obligations, DIP Liens, DIP Loan Documents, DIP Motion, DIP Orders, and the Chapter 11 Cases, including, without limitation, the reasonable fees and out of pocket expenses of their attorneys and financial advisors.  A copy of any invoice submitted by the DIP Lender to the Debtors, or any invoice submitted by the Prepetition Lender to the Debtors under Paragraph 20(c), shall be delivered simultaneously to the U.S. Trustee and counsel to the Committee (each, a "Fee Notice").  Such invoices may be redacted to preserve any applicable privilege or work product doctrine and shall not be required to contain specific time entries; *provided*, that unredacted copies shall be provided to the U.S. Trustee upon request. None of such costs, fees, charges and expenses shall be subject to Court approval or required to be recorded or maintained in accordance with the United States Trustee guidelines relating to compensation and reimbursement of expenses and no recipient of any such payment shall be required to file any interim or final fee application with the Court, provided that if any objection is filed, the Court may review the reasonableness of such fees.  Subject to the Debtors, the Committee, or the U.S. Trustee filing a written objection with this Court to any such fees and expenses within ten (10) days after receipt of a Fee Notice, the Debtors shall pay promptly such invoice by adding the fees and expenses sought pursuant to such Fee Notice to the principal amount of the DIP Obligations or Prepetition Secured Obligations, as applicable.  To the extent a timely filed objection is filed by the Debtors, the Committee, or the U.S. Trustee, the Debtor

41

(i) shall pay such portion of the fees and expenses to which no objection is interposed and (ii) shall pay any remaining fees and expenses as ordered by the Court (or upon withdrawal or resolution of the objection), in each case by adding the fees and expenses sought pursuant to such Fee Notice to the principal amount of the DIP Obligations or Prepetition Secured Obligations, as applicable.

39.    **Indemnification**.  The Debtors will jointly and severally indemnify and hold harmless the DIP Lender and Prepetition Lender (solely in its capacity as such as not in its capacity as an equity holder of the Debtors or in any other capacity), and each of their respective affiliates (but not the Debtors) and its and their respective directors, officers, employees, agents, attorneys, accountants, advisors, controlling persons, equity holders, partners, members, and other representatives and each of their respective successors and permitted assigns, solely in such capacities (each, an "Indemnified Party") against, and hold each Indemnified Party harmless from, any and all losses, claims, damages, liabilities, and reasonable, documented and invoiced out-of-pocket fees and expenses (including, without limitation, fees and disbursements of counsel but limited, in the case of counsel, to the extent set forth in the DIP Loan Documents) that may be incurred by or asserted or awarded against any Indemnified Party, in each case, arising out of, or in any way in connection with, or as a result of: (i) the execution or delivery of any of the DIP Loan Documents, the performance by the parties thereto of their respective obligations thereunder and the other transactions contemplated thereby; (ii) the use of the proceeds of the DIP Facility and use of Cash Collateral or other Prepetition Collateral; (iii) the enforcement or protection of their rights in connection with any of the DIP Loan Documents; (iv) the negotiation of and consent to the DIP Orders; or (v) any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any Indemnified Party is a party

thereto and regardless of whether such matter is initiated by a third party or the Debtors or any of their affiliates or creditors; *provided* that no Indemnified Party will be indemnified for any loss, claim, damage, liability, cost, or other expense to the extent such loss, claim, damage, liability, cost, or expense (i) is determined by a final, non-appealable judgment of a court of competent jurisdiction to have resulted solely from the gross negligence, fraud, or willful misconduct of such Indemnified Party, (ii) relates to any proceeding between or among Indemnified Parties other than claims arising out of any act or omission on the part of the Debtors in accordance with this paragraph, or (iii) relates to a successful Challenge brought in accordance with Paragraph 43 of this Interim Order.

40.      **Limitations on the Use of DIP Proceeds, Cash Collateral, the Carve Out, and Other Funds**.   The DIP Loans, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out, may not be used, directly or indirectly, by the Debtors or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, the Committee, or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with any of the following:

a.   seeking authorization to obtain liens or security interests that are senior to or *pari passu* with the DIP Liens or the Prepetition Liens, except as necessary to pay off the DIP Obligations in full, in cash, or

b.   investigating (including, without limitation, by way of examinations or discovery proceedings), examining, preparing, asserting, joining, commencing, supporting or prosecuting any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests

43

of, in any capacity, the DIP Lender and/or the Prepetition Lender, and each of their respective officers, directors, controlling persons, employees, agents, attorneys, affiliates, assigns, or successors of each of the foregoing (all in their capacities as such), with respect to any transaction, occurrence, omission, action or other matter (including, without limitation, formal discovery proceedings in anticipation thereof), including, without limitation:

   i. any claims or causes of action arising under chapter 5 of the Bankruptcy Code or any state law equivalents;

   ii. any so-called "lender liability" claims and causes of action or other actions to recover or disgorge payments against the DIP Lender, Prepetition Lender, or any of their affiliates, successors and assigns and the partners, shareholders, members, controlling persons, directors, officers, employees, agents, attorneys, advisors, and professionals;

   iii. any action, challenge or objection with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Loan Documents or the Prepetition Secured Obligations, or any other rights or interests of the DIP Lender or Prepetition Lender;

   iv. any action seeking to invalidate, modify, set aside, avoid, subordinate, recharacterize, or disallow, in whole or in part, the DIP Loan Documents, the DIP Obligations, the DIP Liens, the Prepetition Loan Documents, the Prepetition Liens, and/or the Prepetition Secured Obligations;

\\4141-2544-3682 v13

    v.   any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either (A) the DIP Lender under any of the DIP Loan Documents or the DIP Orders, or (B) the Prepetition Lender under any of the Prepetition Loan Documents or DIP Orders, in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Lender's or the Prepetition Lender's assertions, enforcements, realizations or remedies on or against the Debtors, the DIP Collateral or the Prepetition Collateral, as applicable; or

    vi.   objecting to, contesting, or interfering with, in any way, the DIP Lender's or the Prepetition Lender's enforcement or realization upon any of the DIP Collateral or the Prepetition Collateral, as applicable, once an Event of Default has occurred.

41.    Notwithstanding the foregoing Paragraph 40, the Committee may use up to $150,000 of Cash Collateral included in the Approved Budget (the "Investigation Budget") solely to investigate, but not in any way assert any claims against, challenge, commence or continue a Challenge to, the DIP Obligations, the Prepetition Secured Obligations, the DIP Liens, the Prepetition Liens, the Collateral, the Prepetition Collateral, the DIP Loan Documents, the Prepetition Loan Documents, or any claims or liens, held by or on behalf of the DIP Lender or the Prepetition Lender.  Notwithstanding anything to the contrary, the Investigation Budget shall not be deemed to be, or require, an increase in the DIP Commitment but rather shall be funded under amounts available for Committee professionals as set forth in the Approved Budget.

42.     **Payments Held in Trust**.  Other than with respect to the Prepetition Collateral, in the event that any person or entity (other than a holder of a Permitted Lien solely with respect to the collateral on which its Permitted Lien applies) receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents and termination of the DIP Facility in accordance with the DIP Term Sheet, such person or entity (other than a holder of a Permitted Lien solely with respect to the collateral on which its Permitted Lien applies) shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lender (in the same form received) and will immediately turn over such proceeds to the DIP Lender (in the same form received, unless otherwise agreed by the DIP Lenders), for application in accordance with the DIP Loan Documents and this Interim Order.

43.     **Effect of Stipulations on Third Parties.  The agreements, stipulations and findings contained in this Final Order shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Committee, except to the extent that (i) a party in interest with standing, has timely commenced an adversary proceeding or contested matter asserting any claims or causes of action against the Prepetition Lender, objecting to the Prepetition Lender's claims or liens, or challenging any of the admissions set forth in Paragraph K of this Interim Order (a "Challenge") no later than 120 days after the date of appointment of the Committee (i.e., March 25, 2026) (the "Challenge Period"), subject, for the avoidance of doubt, to Paragraph 44, and (ii) the Court subsequently rules in favor of the party who timely commenced such Challenge.  If no Challenge is timely commenced within the Challenge Period, (a) all of the stipulations, admissions,**

acknowledgements and agreements in Paragraph K of this Interim Order shall be binding and preclusive on the Debtors and their estates and their respective creditors, the Committee (if any), equity holders, and all other parties in interest in these Chapter 11 Cases, (b) the claims of the Prepetition Secured Parties shall constitute allowed claims for all purposes in these Chapter 11 Cases and any Successor Case, (c) the Prepetition Liens shall be deemed legal, valid, binding, perfected and otherwise unavoidable, (d) the Prepetition Liens and Prepetition Secured Obligations shall not be subject to subordination, counterclaims, set-off, defense, avoidance or any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (e) as a result of the foregoing, the repayment of any Prepetition Secured Obligations (including, but not limited to, by means of the Roll-Up Loans) in accordance with the terms of this Interim Order and the Prepetition Loan Documents, subject to the Carve Out, shall constitute an indefeasible payment and shall be final and binding for all purposes.  If a Challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in Paragraph K of the DIP Orders shall nonetheless remain binding and preclusive on the Debtor and its estate and its creditors, the Committee (if any), equity holders, and all other parties in interest in these Chapter 11 Cases, except to the extent that such findings or admissions were expressly and successfully disputed in such Challenge.

44.    Nothing in the DIP Orders confers on any person or entity, including, but not limited to the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition Secured Obligations.  However, a Challenge shall be deemed made, for

47

purposes of the Challenge Period if a party in interest without standing files with the Court, and properly and timely serves the same, a request for standing to pursue a Challenge which attaches a draft complaint prior to the end of the Challenge Period.

45.      Failure of any party in interest, including the Committee, to file a Challenge during the Challenge Period with the Court shall forever bar such party from making any Challenge.  To the extent a party in interest with requisite standing and authority timely and properly commences a Challenge during the Challenge Period, all claims, causes of action and other matters not specifically set forth in such Challenge shall be deemed forever waived, released, and barred with respect to such party in interest and all other parties in interest.  For the avoidance of doubt: (a) the agreements, stipulations and findings contained in Paragraph K of this Interim Order shall not apply to a chapter 7 or chapter 11 trustee until expiration of the Challenge Period with no Challenge filed; (b) a chapter 7 trustee automatically has standing by virtue of section 323 of the Bankruptcy Code; (c) if the chapter 11 cases convert or a chapter 11 trustee is appointed before the termination of the Challenge Period, the Challenge Period shall be extended for any chapter 7 or chapter 11 trustee to 30 days after such trustee's appointment; and (d) any trustee appointed or elected in these chapter 11 cases shall, until the expiration of the Challenge Period, as extended in the immediately preceding clause (c), and thereafter for the duration of any Challenge proceeding commenced pursuant to Paragraph 43 (whether commenced by such trustee or by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for the purposes of such Challenge proceeding, be bound by the agreements, stipulations and findings contained in Paragraph K of this Interim Order.

46.  **Ground Lease**.  The Debtors are parties to that certain Ground Lease between Hudson 1701/1706, LLC and Hudson 1702, LLC collectively, as Tenant, and 356W58 Ground Lessor LLC, as Landlord (the "Lease").  Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to them in the Lease.  The Debtors and Lender reserve all rights and waive none respecting or related to the character of the Lease and the labels under the Lease of the transactions and parties.  Notwithstanding anything to the contrary in this Final Order, no DIP Lien shall attach to: (1) any interest of Landlord in the Lease, in the Fee Estate and Landlord's remainder and/or reversionary interest in the Improvements; (2) any interest of Landlord in any New Lease and the Fee Estate thereunder; (3) any judgment arising from Tenant's breach of the Lease; (4) any rights or remedies of Landlord or any Fee Mortgagee's rights and remedies under the Lease; and (5) any rights of a Fee Mortgagee with respect to the Fee Estate.  Any DIP Superpriority Claim may not be satisfied from any proceeds of the foregoing.  Notwithstanding the foregoing, and subject to paragraphs 43-45 of this Final Order, Lender holds a perfected lien on, among other things, all of the Debtors' rights, if any, (i) under and respect to the Lease, (ii) any successor lease, (iii) the fee and reversionary interests, (iv) any cause of action, and (v) proceeds of any cause of action and any equitable remedies, now existing or hereafter acquired or determined or recharacterized.

47.  **Releases**.  Subject to the Challenge rights and limitations set forth in this Final Order solely with respect to the Prepetition Lender and its affiliates and Related Parties, solely in their capacities as such, the Debtors, on behalf of themselves and their estates (including, without limitation, any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Case, and any party acting by, through or under the Debtors or their estates), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably

discharge and acquit the Prepetition Lender (solely in its capacity as such as not in its capacity as an equity holder of the Debtors or in any other capacity), the DIP Lender, and their respective affiliates (but not the Debtors) and each of its and their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof (collectively, the "Related Parties"), in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the DIP Liens, the DIP Obligations, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Secured Obligations, and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens and/or claims of the Prepetition Lender and/or the DIP Lender (collectively, the "Released Claims") that exist or may exist prior to the entry of the Interim Order by the Court.  Subject to the Challenge rights and limitations set forth in this Final Order solely with respect to the Prepetition Lender

and its affiliates and Related Parties, solely in their capacities as such, the Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of the Interim Order by the Court.

48.    **Waivers**.  As a further condition of the DIP Loan Documents and the obligation of the DIP Lender to make DIP Loans under the DIP Loan Documents (and the consent of the DIP Lender to the payment of the Carve-Out to the extent provided in this Final Order and the consent of the Prepetition Lender to the priming of the Prepetition Liens by the DIP Liens and the use of Cash Collateral):

a.    <u>Limitation on Charging Expenses</u>.  No costs or expenses of administration of the Chapter 11 Cases or any Successor Case shall be charged against or recovered from or against the DIP Lender, the Prepetition Lender, the DIP Collateral, or the Prepetition Collateral, in each case under section 105 or section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender or the Prepetition Lender, as applicable, and no such consent will be implied from any other action, inaction, or acquiescence of any or all of the DIP Lender or the Prepetition Lender.

b.    <u>No Marshaling</u>.  In no event shall the DIP Lender or the Prepetition Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Collateral, or Prepetition Secured Obligations, as applicable, and all proceeds shall be received and applied in accordance with this Final Order, the DIP Loan Documents, and the Prepetition Loan Documents, as applicable.

c. <u>Equities of the Case</u>.  In no event will the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Lender or Prepetition Collateral.

49. **No Lender Liability**.  In determining to make any loan (whether under the DIP Loan Documents or the Prepetition Loan Documents or otherwise) or to permit the use of Cash Collateral, neither the DIP Lender nor, subject to Paragraph 43, the Prepetition Lender are or will be in control of the Debtors and none will owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estate.  Furthermore, nothing in the DIP Orders will in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or, subject to Paragraph 43, the Prepetition Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

50. **Corporate Governance**.

a. Notwithstanding anything in the Debtors' organizational and governance documents to the contrary, Robbin Itkin, the Debtors' independent manager (the "<u>Independent Manager</u>"), is hereby granted the exclusive authority on behalf of the Debtors to review, consider, negotiate, adopt, and approve any document, action, or transaction in the Chapter 11 Cases (including, but not limited to, debtor-in-possession financing, a sale transaction, or any plan of reorganization or liquidation) in which Parkview, Parkview Financial Fund GP, Inc., PV Hudson LLC, Parkview Financial, LLC, and/or any of their non-debtor affiliates (collectively, the "<u>Parkview Entities</u>") is or becomes interested or implicated (collectively, the "<u>Interested Party Transactions</u>").

52

b.  Chipman Brown Cicero & Cole, LLP ("Chipman") shall have exclusive authority to represent and advise the Independent Manager in connection with any Interested Party Transactions.

c.  Whether a matter constitutes an Interested Party Transaction or otherwise constitutes a conflict of interest at the Debtors requiring the recusal of any person or party shall be determined for the Debtors exclusively by the Independent Manager, in consultation with Chipman and not in consultation with DLA Piper LLP (US), acting solely at the direction of the Independent Manager; *provided*, *however*, that the rights of any party in interest in these Chapter 11 Cases to bring any claims or seek any relief regarding any determination by the Independent Manager is reserved, and the Court shall retain jurisdiction to consider any such claims or requests for relief.  For the avoidance of doubt, nothing herein shall limit the Committee's ability to act with respect to any Interested Party Transactions.

d.  With respect to any investigation, prosecution, release, or settlement of any claims or causes of action in which the Parkview Entities or any past or current manager of the Debtors is or becomes implicated, the Independent Manager, in consultation with Chipman and not in consultation with DLA Piper LLP (US), is granted control of the use, disclosure, or waiver of any privileged work product or other privileged information.  For the avoidance of doubt, the rights of all parties in interest in these Chapter 11 Cases seeking the production of such information alleged to be non-discoverable for any reason shall be preserved.

\\4141-2544-3682 v13

51.    **No Third Party Beneficiaries**.  Except as explicitly provided for in the DIP Orders or the DIP Term Sheet, the DIP Orders and the DIP Term Sheet do not and shall not be deemed to, create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

52.    **Insurance Proceeds and Policies**.  To the fullest extent provided by applicable law, the DIP Lender and the Prepetition Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral or Prepetition Collateral.

53.    **No Waivers or Modifications of Final Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lender and the Prepetition Lender, and no such consent will be implied by any other action, inaction, or acquiescence of the DIP Lender or the Prepetition Lender.

54.    **Binding Effect of this Final Order**.  Immediately upon entry of this Final Order by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lenders, the Prepetition Lender, the Case Professionals, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any Successor Case, or upon dismissal of any chapter 11 case or Successor Case; *provided* that neither the DIP Lender nor the Prepetition Lender shall have any obligation to permit the use of DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or to extend any DIP Loans or other financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors, their properties, or their estates.

55.    **Discharge**.  The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein to the Prepetition Lender shall not be discharged by the entry of an order confirming any plan of reorganization in the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full, in cash.

56.    **Joint and Several Liability**.  The Debtors are jointly and severally liable for the DIP Obligations and all other obligations hereunder and under the DIP Loan Documents. Nothing in this Final Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates.

57.    **Survival**.  The provisions of this Final Order and any actions taken pursuant hereto will survive entry of any order which may be entered: (i) confirming a plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iii) dismissing any of the Chapter 11 Case or any Successor Case; or (iv) by which this Court abstains from hearing the Chapter 11 Case or any Successor Case.  The terms and provisions of this Final Order, including, without limitation, the claims, liens, security interests, and other protections granted to the DIP Lender and the Prepetition Lender under this Final Order and the DIP Loan Documents, will continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of the Chapter 11 Cases or any Successor Case, and will maintain their priority, subject to the Carve Out, as provided by this Final Order until: (a) in respect of the DIP Facility, all the DIP Obligations under the DIP Loan Documents and this Final Order have been indefeasibly paid in full, in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) or otherwise satisfied with the consent of the DIP Lender; and (b) in

55

respect of the Prepetition Loan Documents, all of the Prepetition Secured Obligations under the Prepetition Loan Documents and this Final Order, have been paid in full or otherwise satisfied with the consent of the Prepetition Lender. The terms and provisions concerning the indemnification of the DIP Lender and Prepetition Lender shall continue in the Chapter 11 Cases, in any Successor Case, following dismissal of the Chapter 11 Cases or any Successor Case, following termination of the DIP Facility and/or the indefeasible repayment of the DIP Obligations. In addition, the terms and provisions of this Final Order shall continue in full force and effect for the benefit of the Prepetition Lender notwithstanding the satisfaction in full or termination of the DIP Obligations until the satisfaction in full of the Prepetition Secured Obligations.

58.    **Necessary Actions**. The Debtors are authorized and directed to take any and all such necessary actions as they may determine to be reasonable and appropriate to implement the terms of this Final Order and the DIP Loan Documents.

59.    **Enforceability**. This Final Order constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and will take effect and be enforceable immediately upon entry thereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, any applicable Local Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be effective immediately and enforceable upon its entry and there will be no stay of execution or effectiveness of this Final Order.

60.    **Rights Reserved**. Notwithstanding anything in this Final Order, any DIP Loan Document or any Prepetition Loan Document to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (i) the rights of the DIP Lender or the Prepetition Lender to seek any other or supplemental relief in respect of

the Debtors that does not conflict with the terms of this Final Order; (ii) the rights of the DIP Lender or the Prepetition Lender under the DIP Loan Documents, the Prepetition Loan Documents, or the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (a) request modification of the automatic stay of section 362 of the Bankruptcy Code, (b) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (c) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (iii) any other rights, remedies, claims, powers, or privileges (whether legal, equitable or otherwise) of the DIP Lender or the Prepetition Lender.

61.    **Headings**.  All paragraph headings used in this Final Order are for reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

62.    **Proofs of Claim**.  Neither the DIP Lender nor the Prepetition Lender will be required to file a proof of claim in the Chapter 11 Cases or any Successor Case.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in the Chapter 11 Cases or any Successor Case shall not apply to the DIP Lender or Prepetition Lender.  Notwithstanding the foregoing, each of the DIP Lender and the Prepetition Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Chapter 11 Cases.

63.    **Waiver**.  In determining to make any DIP Loan under the DIP Term Sheet, or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Lender shall not, solely by reason thereof, be deemed to be in control

of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. § 9601 *et seq.,* as amended, or any similar federal or state statute).

64.     **Retention of Jurisdiction**.   The Court shall retain jurisdiction to interpret and enforce the provisions of the DIP Loan Documents and this Final Order.   This retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or order confirming such chapter 11 plan or any order dismissing or closing one or both Chapter 11 Cases.

\\4141-2544-3682 v13

## **EXHIBIT 1**

**DIP Term Sheet**

**<u>EXHIBIT 2</u>**

**Updated Budget**

**EXHIBIT 3**

**Case Milestones**

| Paid | November, December Ground Rent Payment |
|---|---|
| **Paid** | January Ground Rent Payment |
| **Later of the (i) entry of Final DIP Order, or (ii) denial or withdrawal of Motion to Convert.** | January 2026 Real Estate Tax Payment |
| **1/16/2026** | Deadline to pay post-petition amounts and file Motion to Assume LA Fitness Lease |
| **1/31/2026** | Provide status update to UCC on progress towards finalizing: Construction Scope, ROM ('Rough Order of Magnitude') Budget and Draft Construction Schedule |
| **30 days following receipt of HPD comments on CURE Agreement** | Resubmission of CURE Agreement to HPD |
| **2/2/2026** | February Ground Rent Payment (provided no recharacterization) |
| **3/2/2026** | March Ground Rent Payment (provided no recharacterization) |
| **3/31/2026** | Provide the Committee with Fallback Business Plan |
| **60 days after CURE Agreement Execution** | Upload CURE Agreement to DOB system to remove last permit application objection and lift the Stop Work Order |
| **4/1/2026** | April Ground Rent Payment (provided no recharacterization) |
| **5/1/2026** | May Ground Rent Payment (provided no recharacterization) |