# Morris James ᴸᴸᴾ

Siena B. Cerra, Esq.
(302) 888-6882
scerra@morrisjames.com

March 25, 2026

**VIA EMAIL AND CM/ECF**
The Honorable Karen B. Owens
United States Bankruptcy Court for the District of Delaware
824 N. Market Street, 6th Floor
Wilmington, Delaware 19801

> **Re:**   *In re Hudson 1701/1706, LLC, et al.*, **Case No. 25-11853 (KBO)**

Dear Judge Owens:

We represent the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-referenced chapter 11 cases. We write to bring to the Court's attention an issue with respect to the Debtors' confidentiality designations and their refusal to permit a duly-appointed Committee member to review case-critical materials provided to the Committee.

> I.   Background

On December 30, 2025, the Debtors and the Committee entered into a confidentiality agreement (the "Confidentiality Agreement") governing the exchange of information in connection with these chapter 11 cases, with the intent that the Debtors would share with the Committee information relevant to the Debtors' business, go-forward plan and other aspects of the case critical to the formulation of an exit strategy, so that the Committee members may acquit their fiduciary duties. The Confidentiality Agreement provides that the Committee will use all confidential information solely and exclusively in connection with any purpose and function allowed under the Bankruptcy Code and not for any commercial, business, competitive or other purpose. In the event of a breach or a threated breach of the Confidentiality Agreement, the Debtors shall be entitled to seek all remedies available at law or in equity, including seeking specific performance or injunctive relief. A copy of the Confidentiality Agreement is attached hereto as **Exhibit A**.

On January 6, 2026, the Debtors provided to Committee professionals the "Hudson Hotel Pre-Construction Survey Milestone 1 Package" prepared by DeSimone Builders and addressed to

3205 Avenue North Blvd., Suite 100 | Wilmington, DE 19803 **T:** 302-888-6800 **F:** 302-571-1750
**Mailing Address** P.O. Box 2306 | Wilmington, DE 19899-2306 www.morrisjames.com

17817064/1

Taconic Partners (the "First DeSimone Report"), and shortly thereafter confirmed that the First DeSimone Report could be shared with the Committee members. The Debtors did not take the position that the First DeSimone Report was privileged or created a conflict of interest for any of the Committee members.

On January 30, 2026, the Debtors provided to Committee professionals the "Hudson Hotel Pre-Construction Survey Milestone 2 Package," prepared by DeSimone Builders and addressed to Taconic Partners (the "Second DeSimone Report"). The Second DeSimone Report describes, among other things, the projected costs of completing the Hudson development project (the "Project"), an issue central to these bankruptcy cases.

At the time the Debtors provided the Second DeSimone Report to the Committee, they designated it as "Highly Confidential" pursuant to the confidentiality agreement. Such a designation limits review of the Second DeSimone Report to the Committee's professionals. As the viability of a prospective confirmable plan in these cases turns on whether the Project can be financed and completed, counsel for the Committee requested that the Debtors redesignate the Second DeSimone Report as "Confidential" so that the Committee professionals could share it with Committee members. In response, the Debtors agreed that the Committee professionals could disclose the Second DeSimone Report to two of the Committee members but refused to allow disclosure to Committee member 356W58 Ground Lessor LLC and its ultimate parent Montgomery Street Partners, LLP (collectively, "MSP").

Prior to submitting this letter, the Committee and the Debtors exchanged letters regarding the instant dispute, which are attached hereto as **Exhibits B** and C, respectively. The Debtors take the position that the Second DeSimone Report should not be disclosed to MSP because MSP is adverse to the Debtors in existing litigation brought by the Debtors to recharacterize the ground lease (the "Ground Lease Litigation"), MSP is a "likely adversary" to the Debtors' confirmation process, and MSP's access to the report would purportedly be prejudicial and harmful to the Debtors' estates. The Committee submits that the Second DeSimone Report is irrelevant to the Ground Lease Litigation and disputes that MSP is "conflicted" with respect to the Debtors' reorganization efforts. Any creditor has the right to object to any proposed reorganization—following the Debtors' logic would mean that every creditor is "conflicted." Indeed, the Debtors have not offered any proper basis to permit the disclosure of information regarding the costs of completing the Project to two members of the Committee but to restrict it from the third member. The Debtors' withholding of the Report from a single Committee member is inappropriate.

II.     The Debtors' Position Conflicts with Section 1103(c) of the Bankruptcy Code
        and the Committee's Statutory Role

The Debtors' position with respect to the Second DeSimone Report places an unwarranted and impermissible restriction on the Committee's ability to carry out its statutory duties under section 1103(c) of the Bankruptcy Code. The Bankruptcy Code authorizes the Committee to, among other things, "consult with the trustee or debtor in possession," "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor the operation of the debtor's

17817064/1

The Honorable Karen B. Owens
March 25, 2026
Page 3

Morris James

business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan," and to "participate in the formulation of a plan." Notably, the Debtors have admitted that the Report is "integral to the Debtors' reorganization efforts"—precisely the type of information that is necessary for the Committee to fulfill its mandate under the Bankruptcy Code. The Committee cannot satisfy its obligations if one of its members—who was appointed by the United States Trustee after appropriate vetting and whose appointment was not challenged by the Debtors or any other party—is barred from reviewing materials provided specifically for the Committee's consideration.

Nothing in the Bankruptcy Code or the Confidentiality Agreement permits the Debtors to override the structure of a statutory committee or to selectively disenfranchise one of the Committee's members based on speculation about future plan-related positions. Debtors have not offered an explanation as to how the Second DeSimone Report implicates the Ground Lease Litigation, a position that might at least be defensible. Instead, they rely on a hypothetical that providing MSP access to the Second DeSimone Report would harm the estates. Committee members routinely hold views about potential restructuring outcomes—those views do not constitute disqualifying conflicts, nor do they justify withholding critical information central to the Committee's work. Excluding one member from access to Committee information is inconsistent with the Committee's fiduciary obligations as a collective body and creates the very risk of fragmentation section 1103(c) is designed to avoid.

III.     The Second DeSimone Report is not Work Product,
         and the Debtors are Protected Against Any Misuse

The Debtors' alternative position that the Second DeSimone Report is protected work product is unsupported by Third Circuit law. The work product protection applies only to materials "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). This protection extends only to documents created because of expected litigation; it does not reach materials prepared for ordinary business purposes. *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260-61 (3d Cir. 1993); *Neidich v. Progressive Advanced Ins. Co.*, No. 17-5375, 2018 U.S. Dist. LEXIS 142445, at *3 (E.D. Pa. Aug. 22, 2018); *Schlumberger Tech. Corp. v. First Mercury Ins. Co.*, 2025 U.S. Dist. LEXIS 235288, at *6–7 (M.D. Pa. Dec. 3, 2025). Here, the Second DeSimone Report—which estimates projected construction costs and was prepared by a construction company at the direction of the Debtors' project manager Taconic Partners—was created in the ordinary course of the Project and not in anticipation of the Ground Lease Litigation or any hypothetical plan confirmation dispute. Courts routinely reject work-product claims where, as here, the document would have been prepared regardless of litigation, including with respect to appraisals and other routine business records. *Sharp v. Virgin Islands*, 2003 U.S. App. LEXIS 18133, at *6 (3d Cir. Aug. 29, 2003)*; Shoop v. Harrington*, 2006 U.S. Dist. LEXIS 107944, at *3–4 (W.D. Pa. Dec. 7, 2006). Since the Second DeSimone Report was undoubtedly created for a business purpose, rather than in anticipation of litigation, it does not qualify as work product that is protected from disclosure.

The Honorable Karen B. Owens
March 25, 2026
Page 4

Morris James LLP

Moreover, the Debtors' purported concern that MSP would use the information in the Second DeSimone Report for an improper purpose other than its role as an estate fiduciary is nothing more than supposition.  This conjecture does not provide the Debtors with a "good faith" basis, as required by Section 2 of the Confidentiality Agreement, for designating the Second DeSimone Report as "Highly Confidential.  Protection against such concerns is precisely what the Confidentiality Agreement is designed to provide.  In the unlikely event of a breach of the Confidentiality Agreement, the Debtors would have their remedies.  Speculation regarding a potential misuse or non-existent conflict are all insufficient bases to withhold the Second DeSimone Report from any Committee member, including MSP.

IV.     Requested Relief

The Committee respectfully requests that the Court:

1.     direct the Debtors to remove the "Highly Confidential" designation from the Second DeSimone Report and designate the Second DeSimone Report as "Confidential" under the Confidentiality Agreement, and

2.     order that all Committee members, including MSP, be permitted to review the Second DeSimone Report under the existing confidentiality protections.

While the Committee does not believe that further discussion with the Debtors will resolve the issue, we stand ready to confer further with the Debtors or appear before the Court at its convenience to resolve this issue promptly.

Thank you for the Court's attention to this matter.

Respectfully submitted,

*/s/ Siena B. Cerra*
Siena B. Cerra (DE Bar No. 7290)

17817064/1