## EXHIBIT B

## MARCH 1, 2026 LETTER FROM COMMITTEE COUNSEL

17817064/1

## SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK 10004

WRITER'S DIRECT DIAL:
ROBERT J. GAYDA
Partner
(212) 574-1490
gayda@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

901 K STREET, NW
WASHINGTON, DC 20001
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

March 1, 2026

**VIA E-MAIL**
Hudson 1701/1706, LLC
Hudson 1702, LLC

c/o Chipman Brown Cicero & Cole, LLP
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Email: chipman@chipmanbrown.com
        olivere@chipmanbrown.com
        bach@chipmanbrown.com
        maser@chipmanbrown.com

c/o Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York 10001
Email: rgordon@bsfllp.com
        mfay@bsfllp.com
        jkim@bsfllp.com
        jwaldron@bsfllp.com
        kzhang@bsfllp.com

> **Re:**  *In re Hudson 1701/1706, LLC, et al.*, Case No. 25-11853 (KBO)
> Designation of "Highly Confidential" Material

Counsel:

We write regarding the designation by the above-referenced debtors (the "Debtors") of the Hudson Hotel Pre-Construction Survey: Milestone 2 Package from DeSimone Builders to Taconic Partners (the "Second DeSimone Report") as "Highly Confidential" pursuant to the confidentiality agreement executed by the Debtors and the Committee (the "Confidentiality Agreement"). This designation is inconsistent with our agreed-upon confidentiality framework and the Debtors' prior disclosures. More troubling, the Debtors' position represents the continuation of a pattern of obstruction that wastes estate resources and undermines any possibility of a consensual resolution in these bankruptcy cases.

March 1, 2026
Page 2

The Second DeSimone Report produced to Committee counsel in a "Highly Confidential" form describes, among other things, the projected costs of completing the Hudson development project (the "Project"), which is the stated purpose of these bankruptcy cases. The very viability of a prospective confirmable plan (or other restructuring transaction) turns on whether the Project can be financed and completed. Thus, information directly related to this issue is central to the Committee's performance of its statutory duties.

During a meet and confer on February 9, 2026, the counsel to the Debtors provided an inconsistent series of explanations to justify their position that one Committee member, 356W58 Ground Lessor LLC (the "Ground Lessor"), could not be permitted access to the Second DeSimone Report. None of the Debtors' positions, however, withstand scrutiny. First, the Debtors' "attorney work-product" concerns are unfounded given that (i) the Debtors already shared the Second DeSimone Report with Committee professionals and waived any purported work-product protection, and (ii) counsel to the Debtors stated that the Committee could share the Second DeSimone Report with Committee members other than the Ground Lessor.

Second, the Debtors' vague, hypothetical "conflict" concern is similarly baseless. Notably, Debtors' counsel was unable to articulate, let alone substantiate, any purported conflict that is created by providing the Ground Lessor with the Second DeSimone Report. The Debtors conflate the concept of a conflict with their speculation that the Ground Lessor will misuse the information contained in the Second DeSimone Report. As noted above, the Second DeSimone Report is probative of critical facts in the Debtors' bankruptcy cases—specifically, the feasibility of the Debtors' completion of the Project. Given the high value of the information, the Debtors cannot simply conjure up a hypothetical and use that as a basis to deprive a Committee member of information that will allow it to acquit its duties. Regardless, any purported conflict that might arise is addressed by section 2.10 of the Committee's duly-enacted bylaws (the "Bylaws"), which we have previously provided to you. Section 2.1 contains specific procedures for identifying and addressing potential conflicts. The Bylaws define conflict as "any matter having a direct consequence on one member of the Committee that is materially different from the consequence on the unsecured creditors of the Debtors as a whole, and that renders it inappropriate for that member to vote." Accordingly, while the assertion of some purported conflict is confusing and misplaced, the Committee has a protocol in place to deal with such a conflict if it were to exist, and withholding the Second DeSimone Report on that basis is inappropriate.

Finally, the Debtors' purported concerns that the Ground Lessor would use the information in the Second DeSimone Report for some purpose other than in its role as an estate fiduciary is supposition and does not provide the Debtors with a "good faith" basis for designating the Second DeSimone Report as "Highly Confidential," as required by Section 2 of the Confidentiality Agreement. Protection against such concerns is precisely what confidentiality agreements are designed to provide. Here, section 4 of the Confidentiality Agreement provides the Debtors with protections against any improper use of "Confidential Information," expressly requiring Committee members to keep such information "strictly confidential" and only use such "in connection with any purpose and function allowed under the Bankruptcy Code," and not in connection with any other transactions regarding the Debtors in their non-Committee capacities. Thus, the provisions of the Confidentiality Agreement resolve the concerns raised by the Debtors and render the "Highly Confidential" designation of the Second DeSimone Report unnecessary.

March 1, 2026
Page 3

The **Committee hereby requests that the Debtors voluntarily remove the "Highly Confidential" designation from the Second DeSimone Report and re-designate it as "Confidential Information"** in accordance with the Confidentiality Agreement.

Absent a de-designation within seven (7) business days, the Committee will file a motion with the Bankruptcy Court challenging the designation in accordance with section 3 of the Confidentiality Agreement.  We would strongly prefer not to expend further resources on disputes that would be avoided with the Debtors' reasonable cooperation, but we will not permit the Debtors to obstruct the Committee's statutory functions.

The letter does not waive any of the Committee's rights, claims, or objections, all of which are expressly reserved.

Sincerely,

*Robert J. Gayda*

Robert J. Gayda