## EXHIBIT C

## MARCH 9, 2026 RESPONSE FROM DEBTORS' COUNSEL

17817064/1



**BOIES
SCHILLER
FLEXNER**

March 9, 2026

**VIA EMAIL**

Robert J. Gayda, Esq.
Seward & Kissel LLP
1 Battery Park Plaza
New York, NY 10004
(212) 574-1200
gayda@sewkis.com

Re:   *In re Hudson 1701/1706, LLC, et al.,*
      Case No. 25-11853 (KBO)

Counsel:

We write on behalf of Hudson 1701/1706, LLC and Hudson 1702, LLC (the "Debtors") in response to your March 1, 2026 letter regarding the "Hudson Hotel Pre-Construction Survey: Milestone 2 Package from DeSimone Builders to Taconic Partners" (the "Second DeSimone Report"). As the Debtors' counsel told your colleague during the February 9, 2026 meet and confer, the Second DeSimone Report is protected work product and was shared with counsel to the Unsecured Creditors Committee ("UCC") in recognition of the Debtors' and UCC's common interest in this bankruptcy case. Our only requirement has been that it not be shared with Montgomery Street Partners, LLP and its affiliates ("MSP"), as the Debtors are adverse to MSP and MSP's access to the report would be prejudicial and harmful to the Debtors' estates.

Your March 1 letter wastes significant space on baseless aspersions and suggests that the Debtors have somehow "waived" their work product privilege by sharing the Second DeSimone Report with UCC professionals and members other than MSP. However, if, as the Debtors have always believed, the UCC and the Debtors are working together to "maximize the size of the pie" in this bankruptcy case for non-conflicted general unsecured creditors, no waiver occurred. *See In re Leslie Controls, Inc.,* 437 B.R. 493, 501-02 (Bankr. D. Del. 2010) (finding no waiver because debtors and ad hoc committee, among others, shared a common interest); *id.* at 496 (the "common interest" doctrine "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others") (citing *In re Teleglobe Communications Corp.,* 493 F.3d 345, 364 (3d Cir. 2007)). Nonetheless, if it is now your position that the Debtors and the UCC are not working together – and that they are somehow adversarial in their interests with respect to this matter – you need to provide further explanation of that remarkable proposition. In addition, if the UCC ultimately contends that it is adverse to the Debtors with respect to matters relevant to the Second DeSimone Report, the Debtors shall demand that Report's return to the Debtors (with the destruction of any remaining copies and any derivative information, electronic or otherwise).

As we informed you on February 9, the Second DeSimone Report is integral to the Debtors' reorganization efforts, and MSP is opposed to the Debtors' reorganization, contrary to the interests



of the Debtors as well as the UCC's entire constituency other than MSP. Thus, MSP has an undeniable conflict of interest and should not be permitted to review the Report. MSP has made it clear that it wants to repossess the Hudson property at the center of this bankruptcy and, to that end, recently brought a construction crew to a site visit at the property, having given no advance warning that such a crew would be visiting. MSP is currently a litigation adversary to the Debtors in an action brought by the Debtors to support its reorganization and maximize recoveries for all general unsecured creditors; MSP is also a likely adversary in the confirmation process. The Second DeSimone Report is the Debtors' detailed plan for completion of the Hudson renovation project and, as such, is an important asset of the Debtors' estates and work product that cannot be shared with an adversary. *See, e.g., In re Circle K Corp.*, 199 B.R. 92, 99 (Bankr. S.D.N.Y. 1996) (finding memoranda relating to reorganization plan that were prepared by non-party firm to be protected work product).

In response, you suggest that MSP can abide its role as a UCC member and "estate fiduciary" when it reviews the Second DeSimone Report by somehow walling itself off from its undisputed adversarial posture to the Debtors. That is not how the world works, as even the UCC's own bylaws (the "Bylaws") demonstrate. Under Section 2.10 of the Bylaws, a conflicted member shall be "exclude[d] . . . from the deliberation of, and from voting on, the [conflict-creating] matter, and such member (or such advisor) shall not receive any Confidential Information related to the matter."

The confidentiality designations placed on the Second DeSimone Report enabled the Debtors to have transparent exchanges with the UCC without compromising their litigation and reorganization efforts. This was, and remains, a reasonable and legally supportable position that allows the Debtors to work collaboratively with the UCC in preparing for reorganization and to maximize recoveries for unsecured creditors as a whole. Nothing in your March 1 letter persuades the Debtors otherwise, and we will not be changing those designations.

The Debtors reserve all rights.

Sincerely,

/s/

Michael M. Fay
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
mfay@bsfllp.com

cc: William Chipman chipman@chipmanbrown.com
Adam Cole cole@chipmanbrown.com