# EXHIBIT B



CITY OF NEW YORK

**MANHATTAN COMMUNITY BOARD No. 4**

630 9thAvenue, Suite 208 New York NY 10036
tel: 212-736-4536
**https://cbmanhattan.cityofnewyork.us/cb4/**

**LESLIE BOGHOSIAN MURPHY**
Chair

**JESSE R. BODINE**
District Manager

March 25, 2026

Dina Levy
Commissioner
Department of Housing Preservation and Development
100 Gold Street
New York, NY 10038

**Re:   353 West 57th Street - Hudson Hotel**
**Cure for Harassment—Updated Approach**

Dear Commissioner Levy:

At Manhattan Community Board 4's (MCB4) Housing, Health, and Human Services (HHHS) Committee meeting on February 5, 2026, the Committee discussed the proposed revised approach to the Cure for Harassment by the lender in possession, Parkview Financial (Parkview) for the Hudson Hotel at 353 West 57th Street. Since the mortgage foreclosure on the prior owner, CSC Real Estate (principals Alberto and Salomon Smeke), Parkview has established a productive working relationship with the Hudson Tenants Association, tenants' attorney Goddard Riverside Law Project (Goddard Riverside) and MCB4. For the past 8 months, all parties have been meeting regularly to arrive at a revised plan to ensure the proposed harassment Cure benefits the long-term tenants (harassed by the prior owners). This proposed Cure for Harassment will create 444 units of housing, of which 138 apartments will be permanently affordable and include existing long-term, income-eligible tenants as residents, and 306 units will be market-rate.

At its regularly scheduled Full Board meeting on March 4, 2025, MCB4 voted by a vote of 45 in favor, 0 opposed, 0 abstaining, and 0 present but not eligible, to <u>support</u> the following:

- Modifications within the existing NYC Department of Housing Preservation and Development (HPD) currently approved Cure plan apartment layouts to ensure long-term income-eligible tenants can relocate to Cure apartments meeting their household needs.

1

- A request to meet with HPD to expedite this long-delayed project towards completion.

**Background**

353 West 57th Street, located between West 57th and 58th Streets and 8th and 9th Avenues, is a 26-story, mixed-use building currently containing commercial, hotel, and residential uses. The building is located partially in a C6-4 zoning district within Perimeter Area B of the Special Clinton District and partially in a C1-8 zoning district within the C1 Northern Subarea of the Special Clinton District.[1] For a building on a lot spanning multiple subareas, the zoning requirements of more restrictive subarea apply to the entire building.

The building, originally a 959-unit Single Room Occupancy (SRO) building, was constructed in 1928 as the American Women's Association clubhouse and residence for young women in New York. In 1941, after the American Women's Association went bankrupt, the building was converted into the Henry Hudson Hotel. In addition to SRO use, from 1982 to 1997, WNET, a primary PBS member television station, used the 2nd through 9th floors as its headquarters.

In 1997, the building was purchased by Morgans Hotel Group (original principals Steve Rubell and Ian Schraeger). After a 3-year renovation, the building was converted into the Hudson Hotel. The Hudson Hotel had 835 rooms, while the existing long-term tenants continued to reside in the building. These tenants lived in the building through all renovations, including a major event center on the ground floor.

From 2000 to 2003, the Hudson Hotel was the subject of continuous complaints and controversy surrounding the Hudson Bar, which occupied the second floor of the hotel. Over those 3 years, MCB4 dealt with complaints regarding excessive noise, traffic, and drunken people on the street. From 2010 to 2015, the Hudson Hotel appeared at least seven times in front of MCB4, which attempted to hold the hotel's management accountable for noise complaints and problems related to traffic. Major disturbances were caused to apartments within the building and in buildings as far as two blocks away by the excessive noise and operation of a basement dance hall. In November 2020, the hotel closed due to the COVID-19 pandemic. In May 2022, the building was purchased by 356W58 Ground Lessor LLC. CSC Coliving, a development company owned by Alberto and Salomon Smeke, proposed redevelopment of the property into a 444-unit apartment building.

---

[1] See NYC ZR Chapter 6, Special Clinton District, Appendix A for the Special Clinton District Map.

**Illegal Internal Demolition and Construction**
Given that the building is within the Special Clinton District and includes SRO units, MCB4 advised against starting internal demolition and construction work until CSC received the required Certification of No Harassment (CONH).

However, from June 2022, CSC began internal demolition of mechanical systems and partitions, with long-term tenants in occupancy throughout the building.[2] With the interior demolition outside of the DOB-approved scope of work, this construction was in direct violation of the NYC Zoning Resolution, Special Clinton District § 96-107, requiring a CONH or a compliance with a Cure for Harassment prior to work.[3]

In September 2023, Raul Larios,[4] President of the Hudson Tenants Association, presented extensive documentation of hazardous building conditions and work contrary to DOB approvals and zoning.[5]

In October 2023, based on those complaints, MCB4 requested HPD to conduct an investigation of the ongoing tenant harassment based on tenant expositions and multiple documented exhibits.[6] Additionally, MCB4 requested DOB to issue a Stop Work Order and rescind all permits for the building until the owner obtained the required CONH or Cure for Harassment.[7]

The Hudson Tenants Association and Goddard Riverside submitted extensive documentation of hazardous building conditions and work contrary to the scope of DOB approvals and zoning to the NYC Office of Administrative Trials and Hearings (OATH). Given that extensive documentation, CSC Hudson, LLC informed HPD that they would not proceed with the hearing and instead would file an application for a Cure for Harassment.

**Cure for Harassment**
In September 2024, CSC Hudson LLC presented the proposed Cure for Harassment for 353 West 57th Street to the HHHS Committee. At that meeting, CSC proposed both residential and hotel components as part of the proposed redevelopment. The developers proposed a total of 444 residential units:

- 270 market rate units
- 32 existing SRO hotel stabilized units

---

[2] October 2023 Letter to HPD re 353 W 57th Street Hudson Hotel
[3] NYC ZR 96-107 Harassment and Cure
[4] Please note that Mr. Larios has a prior affiliation as a MCB4 board member.
[5] See recording of the September 2023 MCB4 HHHS Committee here.
[6] October 2023 Letter to HPD re 353 W 57th Street Hudson Hotel
[7] October 2023 MCB4 Letter to DOB re 353 West 57th Street – Hudson Hotel

- 140 Cure units
- 2 owner units
- 50 transient hotel rooms[8]

MCB4 voiced concern about the proposed hotel component, noting that the co-mingling of transient hotel and residential uses presented serious security issues for existing and future residential tenants. Since the majority of the apartments would be residential, an ongoing transient hotel use would not be compatible. MCB4 requested that the developer investigate a method to convert the proposed hotel rooms into residential apartments, and if that was not feasible, then to provide a comprehensive security plan for how security will be maintained on floors with both a permanent and transient population. [9]

At the same meeting, Goddard Riverside and the Hudson Tenants Association presented serious tenant concerns and requests, including:

- Outstanding immediate repairs to restore habitability to occupied rooms
- Security in public areas
- Establishment of a monthly construction task force to manage tenant expectations and create a clear line of communication
- Identical proposed apartment finishes in market rate and Cure units
- Tenant rent abatements and credits
- Temporary relocation during the construction period
- Permanent relocation into Harassment Cure apartments
- In-place unit renovation for existing tenants
- Enforceability provisions in the regulatory agreement

At the end of this meeting, MCB4 agreed to resolve the aforementioned concerns and requests with the Hudson Tenants Association, the Owner, Goddard Riverside, Councilmember Gale Brewer, and HPD.

In September 2024, MCB4 had 3 subsequent meetings with Councilmember Brewer and the HPD Division of Housing Incentives, which manages Cure for Harassment buildings. MCB4 worked with HPD and Councilmember Brewer to move towards a resolution for long-term, income eligible tenants to qualify for the Cure. MCB4 also held a meeting with the Hudson Tenants Association to address both the proposed Cure plan and the tenant complaints.

---

[8] Certain lines of SRO rooms with only lot line windows were grandfathered in as transient hotel rooms for continued use.
[9] October 2024 MCB4 Letter re 353 West 57th Street Cure for Harassment Application

4

**First Revision to Proposed Cure for Harassment**
In July 2025, CSC Hudson LLC and the project architect, Tang Studio Architect, presented an HPD-approved design update to HHHS. In that update, the building layout was reconfigured to convert hotel rooms with lot line windows by reconfiguring and extending residential Class A apartments on floors 4 to 23. Therefore, the hotel component in the proposed redevelopment was removed.

The number, bedroom mix, and distribution of Cure units and the required 28% Cure floor area were maintained. The developer noted that due to the layout changes, the assignment of affordable Cure units was partially redesignated to other apartments.

In its August 2025 letter, MCB4 supported the changes to the proposed design layout.[10] Further, MCB4 requested the owner to continue to work with Goddard Riverside to ensure that all tenant rights would be secured through the Temporary and Permanent Relocation Agreements.

**Foreclosure and Mortgagee in Possession**
CSC Hudson, LLC ran into serious financial trouble due to regulatory issues, construction delays, and ongoing open items. In July 2025, given CSC's financial standing, Parkview took possession of the property through mortgage foreclosure and transferred ownership to PV Hudson, LLC.

From July 2025 to present, Parkview, Goddard Riverside, the Hudson Tenants Association, and MCB4 engaged in approximately 15 meetings to identify specific mechanisms, means and methods for the project to move ahead as agreed. All parties met to negotiate the temporary and permanent relocation agreements. As the agreements proceeded to final drafts, MCB4 requested that the developer and the Hudson Tenants Association publicly present at the February 2026 HHHS Committee meeting.

**February 2026 HHHS Committee Meeting**
At the February 5, 2026 HHHS Meeting, Abe Kohn, Vice President of Construction at Parkview Financial, presented the progress on the proposed Cure. Parkview has assembled a team of consultants to move the proposed Cure for Harassment forward:

- Taconic Development Advisors – Development Advisory Consultant
- Dair Development – Owner's Representative
- Rivkin Radler – Ownership's Legal Counsel for HPD-Related Matters
- FTI Consulting – Approved by Bankruptcy Court as the Project's Interim Manager on Behalf of the Debtor

---

[10] August 2025 MCB4 Letter to HPD re 353 West 57th Street – Hudson Hotel Cure for Harassment Update

- TriHill Management – Property Manager

Mr. Kohn further presented that Parkview Financial filed for Chapter 11 bankruptcy. That filing created a structured and transparent process to resolve construction issues, secure required governmental approvals, and coordinate with the Hudson Tenant Association, Goddard Riverside, and MCB4 in the Cure process. Parkview stated that this foreclosure was the best path to protect the property's value, ensure resident safety and requests, and ultimately complete the project.

**Temporary and Permanent Tenant Relocation Agreements – Detailed Update**
From April 2025, MCB4 and Goddard Riverside have engaged in thorough and extensive discussions with the Hudson Tenants Association and the Parkview development team to work toward 3 comprehensive and standard Agreements:

1. Temporary Relocation Agreement
2. Temporary and Permanent Relocation Agreement
3. In Place Renovation Agreement

The Temporary and Permanent Relocation Agreements establish the provisions for relocations within the building, secure continued Hotel Stabilization[11] rights for tenants through Temporary or Permanent Relocation and respond to specific concerns raised by Hudson Hotel tenants.

At present, there are three agreements available to tenants to provide flexibility and alternatives depending on tenant circumstances.

1. <u>Temporary and Permanent Relocation Agreement</u>

| Original Apartment | Relocation Apartment – Temporary | Relocation Apartment – Permanent |
|---|---|---|

In this agreement, tenants would move to a *Relocation Apartment - Temporary*[12] during the construction of their *Relocation Apartment - Permanent*. Upon completion of their *Relocation Apartment – Permanent*, tenants would move to that apartment.

2. <u>Temporary Relocation Agreement</u>

---

[11] Hotel Stabilization is a form of Rent Stabilization that protects long-term tenants in qualified hotels, SRO buildings, and rooming houses built before 1969. See NYS Homes and Community Renewal for more information.

[12] For clarity, emphasis in italics is added to represent the defined terms in the Relocation Agreements.

| Permanent Apartment | Temporary Relocation Apartment | Permanent Apartment |
|---|---|---|

In this agreement, tenants would move to a *Temporary Relocation Apartment* during the renovation of their *Permanent Apartment*. When renovations to their *Permanent Apartment* are complete, tenants would move back to their renovated *Permanent Apartment*.

3.   Renovation Agreement

| Permanent Apartment | Permanent Apartment | Permanent Apartment |
|---|---|---|

In this agreement, tenants remain in their *Permanent Apartment* while renovations are undertaken by the Owner. This agreement will detail tenant protections and renovation scope of work.

This agreement is currently being drafted by Goddard Riverside and will be brought to a final version with the assistance of MCB4 and the Owner. (MCB4 has strongly advised tenants against this option, as tenants would have to live though exceptionally disruptive construction during renovation.)

Below are summarized major provisions of both the Temporary and Permanent Relocation Agreements:

Hotel Stabilization Rights
- All Hotel Stabilized tenants will retain their rights of Hotel Stabilization throughout the temporary relocation and construction process.
- If tenants move to a Cure apartment, their Hotel Stabilized tenancy will be legally embodied via the Relocation Agreement.
- Current Hotel Stabilized rent will become Preferential Rent[13] under rent stabilization.

Utilities and Services
- All utilities and other services included in current rent for Hotel Stabilized tenants will be continued both in Temporary and/or Permanent Relocation Apartments.

---

[13] Preferential Rent is a rent-stabilized rate voluntarily offered by a landlord that is lower than the legal maximum regulated rent. As long as tenants remain in their apartment, the landlord cannot revoke the preferential rent to the higher legal rent. See NYS HCR for more information.

- The Owner agreed to include a checkbox list of existing utilities and services in the Relocation Agreements, for avoidance of doubt, to be continued as part of tenants' rent.

Major Capital Improvements (MCI) Rent Increases
- The Owner agreed to include language in the Relocation Agreements and the HPD Cure Regulatory Agreement that Cure units are not and will not be subject to MCI increases.

Right-Sizing (Requests for Larger Apartments for Larger Households)
- Owner has agreed to right-size, subject to income and household verification by Goddard Riverside.

Rent Refunds and Rent Abatements
- From June 2022 to the effective date of the Relocation Agreement, tenants will receive a rent refund via check. This refund is compensatory for the hazardous construction and substandard building conditions created by the previous Owner.
- From the effective date of the Relocation Agreement until the tenant's move to their Original or new Permanent Apartment, tenants will receive a monthly rent credit.

Renovation Plan and Scope of Work
- Owner will provide the plan and scope of work for the renovation of tenants' Permanent Apartment. This plan and scope of work will be attached to the Relocation Agreement.

Liability for Moves
- Owner will hire professional insured movers for all internal Tenant moves.

Liquidated Damages
- The Relocation Agreements include provisions on liquidated damages (in other words, financial penalties) to keep both the Owner and Tenant accountable to meet deadlines.
- In response to concerns raised by the Hudson Tenants Association about potential unexpected and extenuating circumstances, such as unexpected illness and disability, the Owner agreed to include a definition for circumstances such as illness and medical emergencies in which these liquidated damages would not be applicable to the Tenant. This consideration would apply for all internal moves.

Occupancy of Temporary Relocation Apartment

- Tenants will maintain permanent legal tenancy in their Original Apartment and will occupy the Temporary Relocation Apartment under a Temporary License Agreement. That Temporary License Agreement explicitly states that tenants will not have legal tenant rights to the Temporary Relocation Apartment.

Special Conditions

- The Relocation Agreements will have a section to detail any special conditions that are unique to an individual tenant. (For example, built-in cabinetry, or weekly rent payment, as opposed to monthly rent payment.)

Communication on Construction Schedule

- The Owner will provide monthly written updates regarding progress on construction work and progress.

Recording Relocation Agreements Against the Property

- The Owner will request HPD to include language in the HPD regulatory agreement that includes a Memorandum of Lease and appendix that memorializes the Relocation Agreements.
- The form of the agreed Relocation Agreements will be attached as an appendix to the HPD Cure Agreement.

Completion of Cure Apartment

- The Owner will provide notice via email/certified mail/hand delivery with signature when the renovation to a tenant's Permanent Apartment is complete, and DOB/HPD has completed all required inspections for legal occupancy.

Renovation Scope of Work Verification

- Tenants and Owner will inspect their renovated Permanent Apartment and Tenants and Owner will agree on an Apartment Scope Punchlist.
- Prior to their final move, tenants will confirm that the agreed upon renovation scope has been completed. Tenants' final move will take place only after the executed Apartment Punchlist is completed by the Owner.

Transfer of Relocation Agreement If the Building is Sold to a New Owner

- The Owner is required to notify tenants if the property is transferred to a new owner of the building.

**Other Matters Raised at Committee Meeting**

Certification of No Harassment (CONH) Laws

Raul Larios, President of the Hudson Tenants Association, raised concerns regarding the lack of provisions in the existing CONH regulations regarding existing tenants. The Committee responded that HHHS would revisit the existing CONH regulations and Cure for Harassment provisions in the NYC Zoning Resolution at a future HHHS Committee meeting. At that meeting, the Committee would discuss and possibly propose potential revisions regarding existing tenants in a Cure for Harassment building. For example, the Committee noted that existing tenants should be exempt from income verification to qualify for a Cure unit.

Right-Sizing

Mr. Larios stated that he received questions from several tenants in the Hudson Tenants Association requesting rightsizing. Among the 7 households that qualify for rightsizing, 6 households would prefer to incorporate proposed Cure units directly adjacent to their current Hotel Stabilized unit. However, the Committee clarified that this request could not be fulfilled, as the HPD-approved design plan can be amended only through a lengthy review process, not by specific tenant requests.

Cure apartments are subject to specific and strict HPD design requirements under the Inclusionary Housing Program. In that program, all plans must be submitted for review to the HPD Division of Building and Land Development Services (BLDS) to ensure proposed layouts meet HPD design guidelines for renovation or new construction. For example, those design guidelines require ADA compliance, minimum room dimensions, minimum room and closet square footage, and required linear feet of kitchen cabinets. It is expected, however, that there will be minimal further revisions for HPD Cure for Harassment to accommodate relocation needs of existing long-term tenants. Those proposed changes within those required regulatory parameters will be subject to the same BLDS design review and not determined through tenant request. Therefore, MCB4 supports a careful and thoughtful approach within those required parameters.

**Conclusion**

This proposed Cure for Harassment will create 444 units of housing, of which 138 apartments will be permanently affordable and include long-term tenants as residents. MCB4 thanks Parkview Financial, Taconic Development Advisors, Goddard Riverside Law Project, and the Hudson Tenants Association for continuous collaboration to ensure the long-term protection and stability of the existing Hudson Hotel tenants, and to move forward with the proposed renovation of the building.

Sincerely,

Leslie Boghosian-Murphy
Chair
Manhattan Community Board 4

Joe Restuccia
Co-Chair
Housing, Health,
and Human Services
Committee

Maria Ortiz
Co-Chair
Housing, Health,
and Human Services
Committee

Cc:    Hon. Erik Bottcher, NYS Senate
Hon. Tony Simone, NYS Assembly
Hon. Brad Hoylman-Sigal, Manhattan Borough President
Hon. Gale Brewer, NYC Council
Abe Kohn, Vice President, Construction, Parkview Financial
George Tsapelas, Senior Vice President, Development, Taconic Development Advisors
Aaron Kratzat, Supervising Attorney, Goddard Riverside Law Project
Alejandro Coriat, Lead Tenant Organizer, Goddard Riverside Law Project
Hudson Tenants Association