**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706, LLC, *et al.*,[1] | Case No. 25-11853 (KBO) |
| | (Jointly Administered) |
| Debtors. | |
| | **Objection Deadline: April 14, 2026, at 4:00 p.m. (ET)** |
| | **Hearing Date: April 21, 2026, at 9:30 a.m. (ET)** |

**MOTION OF THE DEBTORS TO INCREASE DIP COMMITMENT AND MODIFY**
**AND EXTEND APPROVED DIP BUDGET UNDER FINAL DIP ORDER**

The above-captioned debtors and debtors in possession (the "**Debtors**"), by and through

their undersigned counsel, hereby submit this motion (this "**Motion**") for entry of a supplemental

final debtor-in-possession financing order, substantially in the form attached as **Exhibit A** (the

(the "**Supplemental DIP Order**"), increasing the DIP Commitment (as defined below) and

modifying and extending the approved debtor-in-possession financing budget (the "**Amended**

**Budget[2]**"), in the form attached as **Exhibit 1** to the Supplemental DIP Order.  In support of this

Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).  The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

[2]    The monthly budgeted amounts for the Committee's professional fees for the months of May through August are not included in the proposed Amended Budget, as they have not been agreed to by the Committee, the Debtors, and the DIP Lender, as of the date of hereof.  The Debtors and DIP Lender will work together in good faith with the Committee on the Committee professional fee budget amount for the Amended Budget prior to the hearing. Additionally, amounts set forth in the proposed Amended Budget cannot be used to pay for fees or expenses that exceeded the Approved Budget for the initial budget period through April 30, 2026, for any professional.  Further, no amounts set forth in the Amended Budget or the Approved Budget through April may be used to fund fees or expenses incurred in excess of the Investigation Budget set forth in paragraph 41 of the Final DIP Order.

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1.       This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.       Under rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection with this Motion consistent with article III of the United States Constitution.

3.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The statutory and legal bases for the relief requested in this Motion are sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013.

**BACKGROUND**

5.       On October 22, 2025 (the "**Petition Date**"), each of the Debtors commenced a voluntary case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors are authorized to operate their business and manage their property as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

6.       On November 25, 2025, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors [Docket No. 104] (the "**Committee**").  No trustee or examiner has been appointed in these Chapter 11 Cases.

7.       Additional information regarding the Debtors' business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the *Amended and*

*Restated Declaration of Alan Tantleff in Support of Debtors' Chapter 11 Petitions and Day Motions* [Docket No. 60] (the **"First Day Declaration"**) filed on November 12, 2025, which is incorporated in this Motion by reference.

## THE FINAL DIP ORDER

8.       In connection with the commencement of their Chapter 11 Cases, on November 12, 2025, the Debtors filed their *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [Docket No. 56] (the **"DIP Financing Motion"**)[3] seeking authority incur DIP Loans and use Cash Collateral (as such terms are defined below) in order to fund the Debtors' Chapter 11 Cases as they restructure their operations.

9.       The Court granted interim relief [D.I. 82] and final relief [D.I. 255] (the **"Final DIP Order"**), authorizing, among other things, the Debtors to obtain debtor-in-possession financing (the **"DIP Loans"**), permitting the use of cash collateral (**"Cash Collateral"**), in each case, in accordance with the Approved Budget (as defined below) and granting liens and administrative expense claims to Parkview Financial REIT, LP, the Debtors' debtor-in-possession lender (the **"DIP Lender"**).

10.       Pursuant to the DIP financing term sheet (as modified by the Final DIP Order, the **"DIP Term Sheet"**) and  the Final DIP Order, the DIP Lender agreed to provide the Debtors with a $32,762,104 (the **"DIP Commitment"**) senior secured, priming, first-lien, superpriority multi-draw debtor-in-possession term loan credit facility (the **"DIP Facility"**), subject to the terms and

---

[3] The DIP Financing Motion is incorporated herein by reference as if fully set forth herein.

conditions set forth therein, including that the DIP Loans and Cash Collateral be used in accordance with a budget approved by the DIP Lender (the **"Approved Budget"**). The Approved Budget expires at the end of April 2026.

**RELIEF REQUESTED**

11. By this Motion, pursuant to sections 105, 361, 362, 363, 364, 506, 507, and 552 of the Bankruptcy Code, Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Rules 4001-2 and 9013-1 of the Local Rules, the Debtors seek entry of this Supplemental DIP Order, authorizing an increase in the DIP Commitment from $32,762,104 to $42,531,550 to allow the Debtors to borrow up to an additional $9,769,446 in DIP Loans (the **"Supplemental DIP Funding"**), and approving the Amended Budget, which incorporates the Supplemental DIP Funding, through August 2026, and otherwise on the same terms and conditions as set forth in the DIP Term Sheet and Final DIP Order.

**BASIS FOR RELIEF REQUESTED**

**A.      Increasing the DIP Commitment and Extending the Approved Budget is a Sound Exercise of Debtors' Business Judgment.**

12. Increasing the DIP Commitment and modifying and extending the Approved Budget in the form of the Amended Budget are a sound exercise of the Debtors' business judgment. Pursuant to section 363(b)(1) of the Bankruptcy Code, "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b)(1).  Pursuant to section 363(b)(1) of the Bankruptcy Code, "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (*internal citations omitted*); *see*

4

*also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147-49 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

13.     Additionally, section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing.  Courts grant a debtor in possession considerable deference to act in accordance with their business judgment in obtaining secured postpetition credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code.  Indeed, "courts will almost always defer to the business judgment of a debtor in the selection of the lender." *See, e.g., In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment").

14.     Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable businessperson would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

15.     A sound business purpose exists here.  The Debtors require continued and additional access to the DIP Facility and Cash Collateral to fund these Chapter 11 Cases, which will provide the Debtors with necessary funds to, among other things, continue their efforts to cure regulatory issues and lift the stop-work order, so that construction at the project can recommence,

and to pursue formulation and confirmation of a reorganization plan.  Additional funding is also necessary to continue the Debtors' adversary proceeding against 356W58 Ground Lessor, LLC (the **"Purported Ground Lessor"**) [Adv. Pro. No. 25- 52471 (KBO)] (the **"Recharacterization Litigation"**).

16.     Trial on the Recharacterization Litigation is currently set to begin on May 19, 2026, which is beyond the term of the current Approved Budget.  The resolution of the Recharacterization Litigation is important for the plan process in these Chapter 11 Cases. Therefore, authorizing the increase in the DIP Commitment and the Amended Budget will enable the Debtors to pursue the Recharacterization Litigation and formulate and confirm a reorganization plan based on the outcome of that litigation.[4]  Either way, the value of the Debtors' estates would be significantly impaired, to the detriment of all stakeholders, if the DIP Commitment is not increased and the Amended Budget is not approved.

17.     As more fully set forth in the DIP Financing Motion, the Debtors' decision to enter into the DIP Facility was an exercise of their sound business judgment following arm's-length negotiations and careful evaluation of available alternatives.  As further discussed in the First Day Declaration, the DIP Facility addresses the Debtors' operational challenges and prepetition capital structure and was the product of arm's-length, good faith negotiations.  Moreover, no other financing was offered or otherwise available, and no other financing is available as of the filing of this Motion.  The increased DIP Commitment and Amended Budget are also being negotiated at arm's length and in good faith with the DIP Lender and should provide enough funding to continue

---

[4] If successful, the Purported Ground Lease will be recharacterized as a financing arrangement, title to the Hudson Hotel condominium units will be transferred to the Debtors' estates and/or the overly burdensome "Fourth Amendment" will be avoided as a fraudulent transfer.  To the extent not successful, the Debtors will have to formulate a plan, considering the terms of the current Purported Ground Lease.

6

the regulatory cure process, allow for the Debtors to complete the Recharacterization Litigation, and consummate a plan for the benefit of all parties in interest.

18.     Accordingly, the Debtors submit that approving the increase in the DIP Commitment and the Amended Budget is in the best interests of the Debtors' estates, is necessary to preserve the value of their estates, and is a reasonable exercise of their business judgement.

## WAIVER OF STAY UNDER BANKRUPTCY RULES 6004(a) AND (h)

19.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, absent approval of the Amended Budget increasing the DIP Commitment, the Debtors will face substantial liquidity challenge. It is therefore imperative for the Debtors to obtain immediate and continuing access to fund these Chapter 11 Cases.

20.     For this reason and those set forth above, the Debtors respectfully request that the Court waive the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply in these Chapter 11 Cases.

## NOTICE

21.     Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel to the DIP Lender and pre-petition lender; (iv) all other known holders of prepetition liens, encumbrances or security interests against the Debtors' property; (v) the Internal Revenue Service; (vi) New York Secretary of State; (vii) New York City Department of Housing Preservation and Development; (viii) the Delaware Secretary of State; (ix) the Delaware Secretary of the Treasury; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.

The Debtors respectfully submit that such notice is sufficient, and no other or further notice of this Motion is required.

WHEREFORE, the Debtors respectfully request entry of the Supplemental DIP Order granting the relief requested in this Motion and such other and further relief as the Court may deem just and proper.

Dated: April 7, 2026
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ *William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
        olivere@chipmanbrown.com

-and-

**BOIES SCHILLER FLEXNER LLP**
Robert Gordon (admitted *pro hac vice*)
Michael M. Fay (admitted *pro hac vice*)
Jenny H. Kim (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Email: rgordon@bsfllp.com
        mfay@bsfllp.com
        jkim@bsfllp.com

*Counsel for Debtors and Debtors in Possession*