**CHIPMAN BROWN CICERO & COLE**

**DELAWARE | NEW YORK**

CHIPMAN BROWN CICERO & COLE, LLP
HERCULES PLAZA
1313 NORTH MARKET STREET, SUITE 5400
WILMINGTON, DELAWARE 19801
WWW.CHIPMANBROWN.COM

WILLIAM E. CHIPMAN, JR.
(302) 295-0193
chipman@chipmanbrown.com

April 9, 2026

<u>VIA CM/ECF</u>

The Honorable Karen B. Owens
United States Bankruptcy Court, District of Delaware
824 N. Market Street, 6th Floor
Wilmington, Delaware 19801

> **Re:**  *In re Hudson 1701/1706, LLC, et al.*,
> <u>No. 25-11853 (KBO)</u>

Dear Judge Owens:

We write on behalf of Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "<u>Debtors</u>") in response to the March 25, 2026 letter (ECF No. 391, the "<u>Letter</u>") submitted by the Official Committee of Unsecured Creditors (the "<u>UCC</u>") regarding the Debtors' decision not to disclose work product to its litigation adversary, 356W58 Ground Lessor LLC, and its parent company, Montgomery Street Partners, LLP (collectively, "<u>MSP</u>").[1]

As the UCC notes in its Letter, the Debtors have provided the report in question, the "Hudson Hotel Pre-Construction Survey Milestone 2 Package" (the "<u>Second DeSimone Report</u>" or "<u>Report</u>"), to the UCC's professionals, and have agreed that the professionals may share it with all UCC members other than MSP. (Letter at 2)  Accordingly, the UCC does not assert that it, as an entity, is being deprived of any information, nor does it assert that its professionals are unable to act on the information in the Second DeSimone Report.  Indeed, nowhere in the Letter does the UCC provide any actual explanation as to how the Debtors' confidentiality designations hinder the UCC's statutory duties.  In particular, the Letter does not identify any function enumerated in 11 U.S.C. § 1103(c) that the UCC or its retained professionals have been unable to perform because of the Debtors' designations.

Instead, although UCC counsel authored the Letter, the only issue is whether MSP – the Debtors' adversary in both the Adversary Proceeding and 365 Motion and most likely at confirmation – should be allowed access to the Second DeSimone Report.  It is axiomatic that

---

[1] MSP and the Debtors are adversaries in an ongoing adversary proceeding, *Hudson 1701/1706, LLC, and Hudson 1702, LLC v. 356W58 Ground Lessor LLC*, Adv. Proc. No. 25-52471 (Bankr. D. Del.) (the "<u>Adversary Proceeding</u>"), and in Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code (ECF No. 344, the "<u>365 Motion</u>").

The Honorable Karen B. Owens
April 9, 2026
Page 2

providing work product to an adversary waives any protection attached to that work product, *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) (work product waived where "the material is disclosed in a manner inconsistent with keeping it from an adversary"), and Debtors seek to avoid such a result.  That concern is particularly acute here, where the Second DeSimone Report reflects the Debtors' forward-looking analysis regarding construction sequencing, scope, and cost-to-complete issues that are central to pending and anticipated disputes in these chapter 11 cases.

A.    **The Second DeSimone Report Is Protected Work Product**

Without addressing  MSP's adverse position to the Debtors, the Letter contends that MSP, as a UCC member, has a right to receive the Second DeSimone Report.  However, even the UCC's own bylaws recognize that conflicts can arise for UCC members and when they do, recusal is appropriate. (Bylaws, § 2.10, **Exhibit A** hereto)  Nothing in the UCC's bylaws suggests that the UCC stops working when a conflict arises, and the Letter provides no specifics to the contrary.  In fact, as the Debtors explained in their March 9, 2026 letter to UCC counsel (ECF No. 391-3), the confidentiality designations placed on the Second DeSimone Report facilitate, not hinder, the UCC's work pursuant to 11 U.S.C. § 1103(c), which contemplates the performance of a committee's duties as a collective body.  Among other things, the designations have allowed the UCC's retained professionals to review and analyze the Report for purposes of advising the UCC and enabled the UCC to discharge its statutory functions, while preserving work-product protection and avoiding waiver to a litigation adversary.  Thus, the "Highly Confidential" designation on the Second DeSimone Report should be maintained.

Nonetheless, for the first time, counsel for the UCC argues that the Second DeSimone Report is not work product. (In an earlier letter, the UCC claimed that Debtors had somehow waived any work product protection.  *See* ECF No. 391-2, and response at ECF No. 391-3)  The UCC is wrong.  The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation . . . by or for another party" from disclosure. Fed. R. Civ. P. 26(b)(3).  The doctrine is "an intensely practical one, grounded in the realities of litigation in our adversary system," *United States v. Nobles*, 422 U.S. 225, 238 (1975), and "[a] healthy adversary system" must "afford[] protection to an attorney's trial preparation as against actual and potential opponents[.]"  *Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991) (citation omitted).

The Second DeSimone Report was prepared for the Debtors' reorganization and confirmation efforts and provides a detailed roadmap for the completion of construction at the former Hudson Hotel (the "Project").[2]  Providing that Report to MSP would allow the exact "free-loading off [of an] adversaries' preparation" that the work product doctrine is meant to preclude. *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603 at *36 (E.D. Pa. Nov. 29, 2006) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  Instead, MSP – which has recently visited the Project with its own construction crew (ECF No. 391-2) – is free (subject to reasonable notice to

___

[2] The first DeSimone report referenced by the UCC (Letter at 1-2) raised no work-product issues since it was essentially an inventory of the Project's assets and resources.

The Honorable Karen B. Owens
April 9, 2026
Page 3

the Debtors) to continue visiting the Project and prepare its own report.  In such circumstances, courts have recognized that analyses like the Second DeSimone Report are protected under the work product doctrine. *See, e.g., South Fifth Towers, LLC v. Aspen Insurance UK, Ltd.*, 763 F. App'x 401, 406 (6th Cir. 2019) (investigation reports were protected work product; plaintiff "had exclusive access to the building for almost two weeks, and after [defendants] arrived, it had equal access.  There was ample opportunity for [plaintiff]'s own experts to inspect the damage and draw their own conclusions"); *The Equal Rights Center v. Lion Gables Residential Trust*, 2010 WL 2483613, at *9 (D. Md. June 15, 2010) (consultants' review of architectural plans for, and regulatory compliance of, properties was protected work product; "[Plaintiff] either already has or will conduct inspections of the 'subject properties,' and can draw its own conclusions based on its observations for properties that have not been remediated").

Although the UCC claims that the Report was prepared in the "ordinary course of business" (Letter at 3), that statement ignores the fact that the Debtors are operating in a contested bankruptcy proceeding and that their business efforts are subject to challenge in court.[3]  In this context, analyses directed at plan feasibility, cost-to-complete, and construction viability are inextricably intertwined with anticipated litigation at plan confirmation.  Moreover, that the Second DeSimone Report may have business-related uses other than litigation is not a material fact. *See United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) ("[T]he fact that the materials serve other functions apart from litigation does not mean that they should not be protected by work-product immunity" and they do "not lose protection . . . merely because [they are] created in order to assist with a business decision") (quotation omitted).

Counsel for the UCC also attempts to argue that MSP is somehow not adverse to the Debtors. (Letter at 2)  Of course, counsel for the UCC cannot genuinely dispute that the Debtors and MSP are adverse in the Adversary Proceeding, but it argues instead that the Second DeSimone Report is irrelevant to that Proceeding.  The Letter then simply states that MSP is not adversarial to the Debtors with respect to their reorganization efforts and plan confirmation.

Neither of these unsubstantiated assertions is credible, and MSP's conduct to date is contrary to both.  In addition, the assertions by the UCC's counsel disregard the realities of chapter

---

[3] All of the UCC's cited cases (Letter at 3) are non-bankruptcy and inapposite. In *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260-61 (3d Cir. 1993), the Third Circuit Court of Appeals upheld a claim of work product for a report analyzing alleged OSHA violations.  Both *Neidich v. Progressive Advanced Ins. Co.*, No. 17-5375, 2018 U.S. Dist. LEXIS 142445 (E.D. Pa. Aug. 22, 2018) and *Schlumberger Tech. Corp. v. First Mercury Ins. Co.*, 2025 U.S. Dist. LEXIS 235288 (M.D. Pa. Dec. 3, 2025), were insurance cases that dealt with the issue of whether an insurance company could claim that it reasonably expected litigation in creating claims-related documents; this is not an insurance case, and litigation already exists. In *Sharp v. Virgin Islands*, 2003 U.S. App. LEXIS 18133 (3d Cir. Aug. 29, 2003), the Third Circuit held that an appraisal was not work product because the government tax assessor who prepared it had a public duty to do so. And, *Shoop v. Harrington*, 2006 U.S. Dist. LEXIS 107944 (W.D. Pa. Dec. 7, 2006) dealt with investigation reports by the United Postal Service ("UPS") after a traffic accident, reports that were routinely prepared by UPS.

The Honorable Karen B. Owens
April 9, 2026
Page 4

11 practice, where feasibility, valuation, and cost-to-complete issues routinely form the basis of plan objections by parties whose stated positions evolve as plan confirmation approaches. Access to the Debtors' internal completion analysis would provide MSP with an unwarranted tactical advantage in those anticipated disputes. MSP has acted like a party that anticipates taking possession of the Project; for example, in statements made by MSP to the Debtors and why else would it visit the Project with a construction crew. These circumstances, as well as its contentiousness throughout these chapter 11 cases, underscore that MSP is likely to be adverse to the Debtors at plan confirmation. And, as an adverse party in the Adversary Proceeding, MSP clearly thinks the Second DeSimone Report and documents like it are related to that action. (*See* MSP Subpoena to Parkview Financial, LLC, **Exhibit B** hereto, ¶ 9 ("Any and all Documents and Communications relating to or concerning the amount of money required to complete the Improvements and the Project"); *see also* ¶¶ 10-12). MSP is undeniably adverse to the Debtors.

B.    **The Issue Raised By The UCC – Estimated Cost Of Completion – Can Be Addressed Without Providing The Entire Second DeSimone Report To MSP**

Instead of dealing with the full scope of the Second DeSimone Report, the UCC's counsel focuses on a single data point: estimates of the cost of completion. That estimate – which is addressed in one of the declarations filed by the Debtors last week – can be (and has been) communicated to all interested parties without divulging the entirety of the Report to MSP. The Debtors' willingness to disclose bottom-line cost information – without revealing the underlying analysis, assumptions, and litigation-sensitive judgments – strikes the appropriate balance between transparency and the preservation of work-product protections. The Debtors are willing to discuss with the UCC any additional facts which they believe need to be communicated to MSP.

For the foregoing reasons, the Debtors respectfully request the Court deny the relief requested by the UCC's counsel, which is contrary to the work-product doctrine. Denying such relief will properly preserve the adversarial process vis-à-vis MSP without any corresponding impairment to the UCC's statutory functions. Although the Debtors agree with the Letter that further discussions are unlikely to resolve the issue, they remain willing to confer further with the UCC's counsel if the Court wishes.

Respectfully,

/s/ *William E. Chipman, Jr.*

William E. Chipman, Jr. (No. 3818)

cc:  All Counsel of Record (via CM/ECF)