# Morris James LLP

Siena B. Cerra, Esq.
(302) 888-6882
scerra@morrisjames.com

April 15, 2026

**VIA EMAIL AND CM/ECF**
The Honorable Karen B. Owens
United States Bankruptcy Court for the District of Delaware
824 N. Market Street, 6th Floor
Wilmington, Delaware 19801

>    Re:    *In re Hudson 1701/1706, LLC, et al.*, **Case No. 25-11853 (KBO)**

Dear Judge Owens:

We represent the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-referenced chapter 11 cases. The Committee submits this reply in response to the Debtors' April 9, 2026 letter [ECF No. 403] concerning the Debtors' refusal to share the Second DeSimone Report with all members of the Committee.[1]

At bottom, the Debtors' position rests on two propositions: (i) that the Second DeSimone Report constitutes protected work product; and (ii) that MSP's alleged adversity to the Debtors justifies excluding MSP from access to information that has been provided to the Committee professionals and the other two members of the Committee. Neither proposition is supported by the record, and both are untethered from the present posture of these chapter 11 cases.

>    I.    The Debtors Have Not Met Their Burden to Establish Work Product Protection

It is the Debtors' burden to support its claim of work production protection and demonstrate that the Second DeSimone Report was prepared because of anticipated litigation and not in the ordinary course of the Debtors' business or restructuring efforts. The Debtors cannot meet their burden here. The Second DeSimone Report contains construction status, sequencing, and cost-to-complete estimates for the Project. These are precisely the types of analyses a debtor-in-possession would prepare in the normal course of operating, stabilizing, and attempting to

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Committee's letter to the Court, dated March 25, 2026 [Dkt. No 391].

3205 Avenue North Blvd., Suite 100 **|** Wilmington, DE 19803 **T:** 302-888-6800 **F:** 302-571-1750
**Mailing Address** P.O. Box 2306 **|** Wilmington, DE 19899-2306 **www.morrisjames.com**

17869251/1

The Honorable Karen B. Owens
April 15, 2026
Page 2

**Morris James** ᴸᴸᴾ

maximize the value of a large real-estate asset—particularly one that remains under construction. None of the Debtors' case law supports a finding to the contrary.[2]

While the Debtors have failed to explain how the Second DeSimone Report differs from information routinely compiled by owners and developers of complex construction projects, they nevertheless repeatedly assert that the Second DeSimone Report was prepared "in anticipation of litigation" and as implicating plan feasibility and confirmation issues. That framing highlights the fundamental problem with their position: those issues are not yet ripe. The Debtors have not yet proposed a plan, a plan structure, or even defined restructuring alternatives. Accordingly, there is no feasibility analysis to protect and no confirmation objection to anticipate.

The Committee cannot evaluate or engage meaningfully with reorganization issues if Debtors selectively withhold information from certain members of the Committee about construction costs and completion assumptions based on conjecture about how a plan dispute might unfold months from now. That the Second DeSimone Report may also be relevant to potential future disputes does not establish work-product immunity. If the Debtors' theory were accepted, any analysis by the Debtors or their professionals touching on value, costs, or operations could be withheld from members of a statutory committee, undermining the transparency fundamental to chapter 11.

II.      The Debtors Do Not Identify an Actual Conflict Requiring Exclusion from MSP

Even if the Second DeSimone Report were protected work product (which it is not), the Debtors' argument that it should be withheld from Committee member MSP rests on their suggestion that MSP is conflicted and therefore properly excluded from receiving Committee information. The Debtors, however, have never identified a current Committee matter as to which MSP is conflicted that is relevant to the Second DeSimone Report, nor do they point to any determination by the Committee—pursuant to its bylaws—that a conflict exists. While the Committee's bylaws provide a mechanism for addressing conflicts if and when they arise, they do not permit unilateral exclusion of a Committee member *by the Debtors* based on generalized

---

[2]Although the Debtors criticize the Committee's case law as "non-bankruptcy and inapposite," their own cited authority is even further afield. The cases of *United States v. Nobles*, 422 U.S. 225, 238 (1975) and *Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991) only state general work product doctrine. *South Fifth Towers, LLC v. Aspen Insurance UK, Ltd.*, 763 F. App'x 401, 406 (6th Cir. 2019) and *Equal Rights Ctr. v. Lion Gables Residential Tr.*, 2010 U.S. Dist. LEXIS 58951, at *27 (D. Md. June 15, 2010) arose in non-bankruptcy litigation and involved reports prepared to support pending claims or lawsuits. In *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998), also a non-bankruptcy case, the court found that a memorandum concerning the tax consequences of a restructuring would not constitute work product unless it would not have been prepared but for the anticipation of litigation. Finally, *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603 at *36 (E.D. Pa. Nov. 29, 2006), the Debtors' only case arising in a bankruptcy proceeding, concerned materials prepared by an investigative firm hired to gather facts in preparation for possible litigation that was sought by the defendant in an adversary proceeding brought by the estate concerning the same claims for which the report was prepared.

17869251/1

The Honorable Karen B. Owens
April 15, 2026
Page 3

Morris James LLP

allegations of adversity. The Debtors seek to bypass the Committee's process entirely and substitutes speculation for a finding.

Moreover, the Debtors' reliance on potential future confirmation disputes underscores the absence of a present conflict.  As of today, the Debtors do not have a proposed chapter 11 plan, nor have they even articulated the framework for a plan.  Indeed, there is no plan objection—by MSP or any other party.  Against that backdrop, invoking hypothetical confirmation-stage disputes cannot justify excluding a Committee member from access to information necessary to perform its statutory role now.

In sum, consistent with their *modus operandi* in these cases, the Debtors seek to litigate hypothetical confirmation battles while simultaneously depriving the Committee of the information necessary to evaluate viable restructuring alternatives in the present.  The Bankruptcy Code does not support that strategy.  Accordingly, the Committee respectfully requests that the Court direct the Debtors to release the Second DeSimone Report to all Committee members for use in connection with Committee matters.

Thank you for the Court's attention to this matter.

Respectfully submitted,

*/s/ Siena B. Cerra*
Siena B. Cerra (DE Bar No. 7290)

17869251/1