**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*,[1] | Case Nos. 25-11853 (KBO) (Jointly Administered) |
| Debtors. | **Related to Docket No. 400** |
| | **Hearing Date: April 21, 2026, at 9:30 a.m. (ET)** |

**DEBTORS' REPLY IN SUPPORT OF MOTION OF THE DEBTORS
TO INCREASE DIP COMMITMENT AND MODIFY AND EXTEND
APPROVED DIP BUDGET UNDER FINAL DIP ORDER**

Hudson 1701/1706, LLC and Hudson 1702, LLC, as debtors and debtors in possession (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit this reply ("**Reply**") in support of their motion (the "**Motion**") for entry of a supplemental final debtor-in-possession financing order (the "**Supplemental DIP Order**"), increasing the DIP Commitment[2] and modifying and extending the approved debtor-in-possession financing budget (the "**Amended Budget**"), and in response to the Objection [Docket No. 410] (the "**Objection**") filed by 356W58 Ground Lessor LLC (as an affiliate of Montgomery Street Partners, and as the purported ground lessor, shall hereinafter be referred to as "**MSP**").  In support of this Reply, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

It is no surprise that MSP is objecting to the Motion that simply seeks a straightforward extension of the existing DIP Facility and additional budgeted funding on the same terms as the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] Capitalized terms used but not otherwise defined shall have the meaning ascribed to them in the Motion.

Final DIP Order.  It is clear MSP would like nothing more than for the Debtors to run out of funds, not continue the Recharacterization Litigation, be forced to make a premature decision regarding the rejection or assumption of its purported lease, and turn the Hudson Hotel back over to MSP, enabling it to reap a huge windfall, all at the expense of all other creditors and stakeholders in the Debtors' above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

Avoiding the practical issue of the Debtors' need for additional DIP financing to continue the Chapter 11 Cases, MSP complains of an alleged technical, non-monetary default by the Debtors under the Final DIP Order for failing to submit a Fallback Business Plan.  This complaint is frivolous for several reasons.  First, the Debtors have previously proposed several Fallback Business Plans (most recently contemporaneously with the commencement of the Chapter 11 Cases), all of which were rejected by MSP.  Resubmitting another Fallback Business Plan would not change this result.  Second, Parkview, as the provider of the DIP financing, has waived, at the Debtors' request, the requirement under the Final DIP Order that the Debtors submit a Fallback Business Plan.  And third, as MSP knows, during the hearing before the Court on March 12, 2026 in connection with the Debtors' motion for a determination that the purported ground lease is a lease of residential real property governed by section 365(d)(2) of the Bankruptcy Code, the Court expressed concern about any potential pivot by the Debtors away from the development of the Property specifically as a residential complex.  The Debtors' decision not to submit another Fallback Business Plan different from the use the Debtors currently intend, and have always intended (i.e., a multi-family residential complex), and Parkview's waiver of that requirement, show respect for the Court's concern in this regard.

2

Moreover, the DIP Financing Milestones were never intended to be used as events of default by non-funding parties such as MSP to the detriment of all other parties-in-interest in the Chapter 11 Cases.

MSP also complains that there has not been sufficient progress in developing the Project. This argument is both specious and inaccurate. The Debtors have indeed made progress in building out the lease space for the LA Fitness operation. And any other construction is, of course, subject to the stop-work order while the Debtors work with HPD to develop a cure program that will lift the order and permit construction to resume, which the Debtors have been actively pursuing prior to and during the Chapter 11 Cases.

Finally, MSP argues that any additional financing is of no benefit to anyone other than Parkview and, if permitted, should be characterized as an equity contribution. This argument fails to recognize the primary use of funds under the proposed supplemental DIP financing, millions of dollars of which will be used for: paying real estate taxes, paying rent to MSP (under a reservation of rights), providing for the safety and residential needs of the SRO Tenants, continuing the build-out for LA Fitness, insuring the Property, and financing repairs and maintenance. All of these expenditures benefit the Debtors' estates as a whole and even more substantially MSP, both as a stakeholder and in its individual capacity.

To suggest that the Final DIP Order should not be extended in the middle of these Chapter 11 Cases is simply a self-serving attempt by MSP to impede the Debtors' prosecution of the Chapter 11 Cases. If MSP believes it has valid grounds to terminate the Debtors' reorganization efforts, however, then it may file a motion to dismiss the Chapter 11 Cases (which the Debtors believe would be completely unjustified under the circumstances). But, objecting to the Motion, which will provide the Debtors' estates with critically needed funding, is not the proper vehicle.

## ARGUMENT

### A.  The Debtors have not Disregarded the Final DIP Order

1.      In an effort to blow up the DIP Facility for their own benefit, MSP complains that the Debtors failed to submit a "Fallback Business Plan" by the March 31st milestone contained in the Final DIP Order for the Debtors' construction project (the "**Project**") at the former Hudson Hotel on West 58th Street in Manhattan (the "**Hudson**").  However, MSP's own Objection admits that the Debtors proposed several Fallback Business Plans in the past, all of which were rejected by MSP.  Performing the pro forma act of submitting yet another Fallback Business Plan would not change this result and would serve no purpose.  Furthermore, as MSP knows, and as is set forth in more detail in the Brill Declaration[3] and the Kohn Declaration[4] [Docket Nos. 396 and 397] (both of which are incorporated herein by reference), the Debtors do not believe there is an economically feasible Fallback Business Plan that can be proposed for the Project.

2.      Simply stated, there are no plans to build anything at the Hudson other than the residential apartment complex as was intended in the Purported Ground Lease and as is discussed in the Brill Declaration.  The Debtors are solely focused on that result.  Any other construction options (e.g., returning to a hotel, retail or other commercial uses) would be too costly and highly unrealistic. (*See* Brill Declaration at ¶ 23).  Satisfying the "milestone" under the DIP Final Order of submitting a useless Fallback Business Plan serves no purpose, which is why the Debtors requested a waiver of that requirement from Parkview.  The milestones were agreed to with the

---

[3]  *Declaration of Glenn Brill in Support of Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Docket No. 396] (the "**Brill Declaration**").

[4]  *Declaration of Abe Kohn in Support of Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Docket No. 397] (the "**Kohn Declaration**")

Committee to give some guideposts for the Chapter 11 Cases, not to be used as events of default to cancel the DIP Facility to the detriment of all parties-in-interest other than MSP.

**B.  The Debtors have Tirelessly Pursued Lifting the Stop-work Order to Recommence Construction at the Project**

3.      As MSP is aware, the Project is currently subject to a stop-work order[5] and expenditures in the DIP Facility are aimed at maintaining the Project, ensuring the safety and welfare of the SRO Tenants and others, completing the LA Fitness space, lifting the stop-work order and making the Project ready for construction.  As more fully set forth in the Kohn Declaration, the Debtors have been tirelessly working with Rivkin Radler LLP ("**HPD Counsel**") in communicating with the New York City Department of Housing Preservation and Development ("**HPD**") about the Project and a cure program to lift the stop-work order.  In December 2025, HPD Counsel filed a "cure" application with the HPD, which application seeks to lift the stop-work order by demonstrating compliance with several HPD preconditions.  HPD Counsel has communicated frequently and extensively with the HPD regarding the cure application.  The Debtors have shared with MSP substantially all of their communications with the HPD and have asked MSP if they have any issues or concerns.  To date, the Debtors have not received any expressions of concern.  The Debtors intend to continue to provide MSP with updates as the cure process progresses.

**C.  The Supplemental DIP Order and Amended Budget Benefits MSP and the Debtors' Estates**

4.      Due to the stop-work order, it is true that there is a limited amount of funds in the Amended Budget for the actual construction of residential units, because no work on those units can legally proceed until the stop-work order is lifted.  *See Declaration of Alan Tantleff in Support*

---

[5] The stop-work order applies to the apartment units only where SRO tenants reside.  The stop-work order does not apply to the LA Fitness space, and thus the Debtors have continued construction on this space.

*of Debtors' Reply in Support of Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order* at ¶ 3 (the "**Tantleff Decl.**").  Once the stop-work order is lifted and the Recharacterization Litigation is resolved, the Debtors will be in a position to obtain appropriate exit financing to complete the Project as part of a reorganization plan.  *Id*.  That is what the Debtors are working on now, the preliminary steps necessary to complete that process.  The completion of that process and efforts to secure exit financing are topics more appropriately to be discussed during the upcoming mediation than in the context of a continuation of reasonable and necessary DIP financing.

5. Furthermore, it is not true that the Amended Budget is primarily for financing the Recharacterization Litigation against MSP.  The Amended Budget provides for the payment of many other critical expenses, all of which benefit not only the Debtors and their estates but MSP as well. *Id*. at ¶ 4.  For example, the Amended Budget (May through August) contains $3,349,400 for LA Fitness construction; $3,211,145 for property taxes, $2,926,672 for ground rent, $870,090 for insurance, $427,276 for security and fire watch, and $79,200 for repairs and maintenance, among other things. *Id*.  The Amended Budget contains only $1,600,000 in professional fees for Boies Schiller Flexner LLP, Debtors' litigation counsel prosecuting, among other things, the Recharacterization Litigation.  Clearly, the Supplemental DIP Order is not designed primarily to fund litigation against MSP. *Id*.

6. It is also untrue that the Debtors have ample cash resources without any increase in the DIP Facility.  Any cash remaining from the previously approved DIP Budget covers accrued administrative expenses, such as accrued and unpaid professional fees and expenses. *See* Tantleff Decl. ¶ 5.

6

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request entry of the Supplemental DIP Order.

Dated: April 16, 2026
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Aaron J. Bach (No. 7364)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
        olivere@chipmanbrown.com
        bach@chipmanbrown.com
        maser@chipmanbrown.com

-and-

**BOIES SCHILLER FLEXNER LLP**
Robert Gordon (admitted *pro hac vice*)
Michael M. Fay (admitted *pro hac vice*)
Jenny H. Kim (admitted *pro hac vice*)
Jeffrey Waldron (admitted *pro hac vice*
Katherine Zhang (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 446-2300
Email: rgordon@bsfllp.com
        mfay@bsfllp.com
        jkim@bsfllp.com
        jwaldron@bsfllp.com
        kzhang@bsfllp.com

*Counsel for Debtors and Debtors in Possession*