**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*, | Case Nos. 25-11853(KBO) |
| | (Jointly Administered) |
| Debtors. [1] | Hearing Date: May 22, 2026 at 9:30 a.m. (ET) |
| | Objection Deadline:  May 19, 2026 at 4:00 p.m. (ET) |

**DEBTORS' OBJECTION TO 356W58 GROUND LESSOR LLC'S MOTION TO
CERTIFY DIRECT APPEAL TO THE COURT OF APPEALS UNDER 28 U.S.C. § 158(d)**

Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "**Debtors**"), the Debtors in the above-captioned jointly administered chapter 11 bankruptcy cases (collectively, the "**Chapter 11 Cases**"), by and through their undersigned counsel, file this objection ("**Objection**") to the motion [Dkt. No. 461] (the "**Certification Motion**" or "**Motion**") filed by 356W58 Ground Lessor LLC (collectively with its parent MSP Capital Management, L.L.C., d/b/a  Montgomery Street Partners, "**MSP**") seeking entry of an order certifying a direct appeal to the Third Circuit Court of Appeals pursuant to 28 U.S.C. § 158(d) from this Court's *Order Granting Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Dkt. No. 443] (the "**Section 365 Order**"), and in support of their Objection respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

**PRELIMINARY STATEMENT**

1.      After comprehensive briefing by the parties, two hearings, the testimony of two live witnesses subject to cross examination offered by the Debtors (with MSP offering no witnesses), and the submission of nearly 1,000 pages of documentary evidence, this Court held that, based on the facts and evidence presented, the purported ground lease (the "**Ground Lease**") at the center of the Chapter 11 Cases, if a true lease, is a lease of "residential real property" under section 365(d)(2) of the Bankruptcy Code and not a lease of "nonresidential real property" under section 365 of the Bankruptcy Code.  Accordingly, on April 22, 2026, the Court entered the Section 365 Order.

2.      MSP, the lessor under the Ground Lease, is unhappy with that result. But there was no basis or evidence for a contrary ruling. In addition, a decision to the contrary would, among other things, have forced the Debtors to either assume or reject the Ground Lease on a truncated and unworkable schedule, which would have threatened to irreparably impair the Debtors' reorganization efforts.

3.      By its Certification Motion, MSP seeks extraordinary relief from the normal rules of procedure governing interlocutory orders and to certify an interlocutory appeal of the Section 365 Order directly to the Third Circuit. But the Motion is not well-founded and should be denied because:

(a)      MSP's Motion ignores the fact that the Section 365 Order is heavily fact-bound and is therefore inappropriate for direct appeal, a procedure typically reserved for resolving pure questions of law that will have broad applicability and promote coherent precedence.  Here, because the Section 365 Order is so fact-specific, MSP's argument that there is no "controlling decision of the Third Circuit

or of the Supreme Court" overstates the import of this decision. A decision from the Third Circuit on the unique facts of this Chapter 11 Case will hardly be "controlling" in other bankruptcy cases.

(b)      MSP's alternative argument that direct appeal is appropriate because it will materially advance the Chapter 11 Case is also misplaced. MSP is arguing that the deadline to assume or reject the Ground Lease should be May 20, 2026, pursuant to section 365(d)(4) of the Bankruptcy Code (the "**Section 365(d)(4) Deadline**"). By the time this matter is presented to the Third Circuit or any other appellate court, the Section 365(d)(4) Deadline will have long passed. Indeed, by the time this Court hears the Motion on May 22, 2026, the Section 365(d)(4) Deadline will have passed, and the appeal will (as a practical matter) be moot. Undoubtedly, MSP would argue against such mootness, but in doing so, MSP would be suggesting that upon a hypothetically successful appeal, a springing automatic default under section 365(d)(4) would occur giving rise to an immediate forfeiture by the Debtors of the real property that is the subject of the Ground Lease (the "**Property**"). This would be highly inequitable to the Debtors, their creditors and all parties in interest, and the law does not favor forfeiture. *See infra*, pp. 11-12.

(c)      In contrast, there is no prejudice to MSP in denying its Certification Motion (and certainly no prejudice outweighing the draconian automatic forfeiture scenario described above). Notably, the Court's interlocutory Section 365 Order does not deprive MSP of its day before the Court on the issue of whether the Ground Lease is even a true lease and, if determined to be a true lease, does not deprive MSP of the protections under section 365 with respect to any effort by the Debtors

3

to assume or reject the Ground Lease.  By its Motion, however, MSP seeks to short-cut the trial in the adversary proceeding concerning the characterization of the Ground Lease and obtain the Property before such trial occurs, causing the Debtors and their bankruptcy estates to forfeit any value from the substantial investments made to acquire and improve the Property.

4.      For these reasons, MSP is not entitled to an interlocutory appeal nor certification of such appeal to the Third Circuit.  Accordingly, the Court should deny the Certification Motion.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over these cases under 28 U.S.C. § 1334. This Court is authorized to hear and determine the Certification Motion under 28 U.S.C. § 157(a)-(b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012. Venue of the Chapter 11 Case and this proceeding is proper in this District under 28 U.S.C. §§ 1408(1) and 1409(a), respectively.

## BACKGROUND

A.  **The Property**

6.      On May 4, 2022, the Debtors entered into the Ground Lease with respect to the Property.

7.      The Ground Lease itself identifies the tenant's "primary purpose" as converting the Property—formerly an 800-room hotel—into a multifamily residential development with over 400 market-rate apartment units.  The Ground Lease requires that at least 75% of the rentable floor space of the Property be subleased pursuant to "Residential Subleases" for "residential purposes."

4

8. When the Debtors commenced development and construction, the Property contained 39 single-room occupancy ("**SRO**") units.  Today, the Property houses 29 SRO tenants (the "**SRO Tenants**") who are the sole present occupants of the Property.

9. On December 1, 2022, the Debtors entered into a single retail lease (the "**Retail Lease**"), as landlord, with Fitness International, LLC, a California limited liability company that owns and operates LA Fitness, as tenant. Aside from this single Retail Lease, there are no other commercial leases held by the Debtors, and the vast majority of the square footage in the Property is dedicated to the SRO units and the planned additional residential units.

10. In the four years between the execution of the Ground Lease and the present, the Debtors have spent tens of millions of dollars to complete 90 percent of the necessary demolition of the former hotel, and 40 percent of the room-to-apartment conversions. *See* Declaration of Glenn Brill [Dkt. No. 396 at ¶¶ 14-15] ("**Brill Decl.**").

11. The Property is currently subject to two separate stop work orders issued while the redevelopment project was overseen by the former owners and managers of the Debtors. However, once those stop work orders are lifted, the Debtors intend to complete the redevelopment project, and there are no plans to build anything at the Property other than multifamily housing due to (a) the complexities and unsupportable costs of pivoting toward another use such as a commercial office building or hotel, and (b) the lack of market demand for such alternative uses of the Property. *See id.* at ¶ 23.

**B.  The Debtors' Section 365 Motion**

12. On February 24, 2026, the Debtors filed their *Motion for an Order Determining That Purported Ground Lease, if a True Lease, Is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Dkt. No. 344] (the "**Section 365 Motion**").

13.     The Section 365 Motion sought a determination from this Court that the Ground Lease—if it is a lease at all[2]—constitutes a lease of "residential real property," as that term is used in section 365(d)(2) of the Bankruptcy Code.

14.     The flexible assumption/rejection timeline under section 365(d)(2) applies if the Ground Lease pertains to "residential real property," but if the Ground Lease pertains to nonresidential real property, the strict Section 365(d)(4) Deadline would be May 20, 2026.

15.     MSP submitted an objection to the Section 365 Motion on March 5, 2026 [Dkt. No. 354], and the Debtors filed their reply on March 9, 2026. [Dkt. No. 359].  The Section 365 Motion was heard by the Court at the omnibus hearing on March 12, 2026, but the Court adjourned the matter until the April 21, 2026 omnibus hearing in order to take additional evidence and provide MSP with the opportunity to conduct factual discovery.

16.     During the April 21, 2026 omnibus hearing the Debtors presented substantial evidence concerning the residential nature of the Property, including (a) the substantial investment made in specifically converting the Property to multifamily housing, (b) the impracticality of developing the Property at this juncture into anything other than multifamily housing, and (c) the lack of market demand for an alternative use of the Property and the fact that multifamily housing constituted the highest and best use of the Property.  *See* Brill Decl. at ¶¶ 14, 23, 24; Declaration of Abe Kohn [Dkt. No. 397] ("**Kohn Decl.**") ¶ 14. The Debtors' two witnesses provided the only factual evidence presented to the Court and they were subject to cross-examination by MSP. Accordingly, at the conclusion of the hearing, the Court determined that the Ground Lease, if a true lease, was a lease of residential real property and that section 365(d)(2) rather than section

---

[2] The Debtors maintain that the Ground Lease actually constitutes an acquisition financing loan that facilitated the Debtors' acquisition of the Property, which is the subject of a separate adversary proceeding.

365(d)(4) applied to the Ground Lease. The Court entered the Section 365 Order the following day.

17.     On May 5, 2026—a full two weeks after the April 21, 2026 hearing and as the Section 365(d)(4) Deadline was fast approaching—MSP filed a notice of appeal [Dkt. No. 459], submitted the Certification Motion, and sought an expedited hearing [Dkt. No. 462].[3]

## BASIS FOR OBJECTION

18.     A bankruptcy court may certify an interlocutory order for direct appeal to a circuit court of appeals if the court finds that at least one of the following requirements under 28 U.S.C. § 158(d)(2) is met: (i) the order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance"; (ii) the order "involves a question of law requiring resolution of conflicting decisions;" or (iii)  an "immediate appeal . . may materially advance the progress of the case or proceeding in which the appeal is taken."  28 U.S.C. § 158(d)(2)(A).

19.     "The direct-appeal pathway for a bankruptcy court order under 28 U.S.C. § 158(d)(2) was enacted to 'foster the development of coherent bankruptcy-law precedent' by facilitating 'guidance on *pure questions of law*' from the circuit courts of appeals. *In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (MBK), 2023 WL 4875915, at *1 (Bankr. D.N.J. July 31, 2023) (quoting *Weber v. United States,* 484 F.3d 154, 158–59 (2d Cir. 2007)) (emphasis added).

20.     MSP argues that its Certification Motion satisfies two of the criteria under 28 U.S.C. § 158(d)(2) because "(i) there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States governing the treatment of a stalled

---

[3] MSP's Notice of Appeal cites (appropriately) to Bankruptcy Rule 8004, but MSP failed to submit an accompanying motion specifically requesting leave to appeal an interlocutory order pursuant to Bankruptcy rule 8004(a)(2) and (b) and 28 U.S.C. § 158(a)(3).

construction site under section 365(d) and (ii) immediate appeal may materially advance the progress of the case." Mot. at ¶ 28.

21.     MSP is wrong on both counts.

### A. MSP's Appeal Presents Mixed Questions of Fact and Law Not Appropriate for Direct Certification

22.     Certification under section 158(d)(2) is "inappropriate" where the bankruptcy court's order "involves questions of fact, mixed questions of fact and law, or the application of well-settled law to a particular set of facts." *In re Whittaker, Clark & Daniels*, 2023 WL 4875915, at \*2; *see also Weber,* 484 F.3d at 158 ("Indeed, Congress believed direct appeal would be most appropriate where we are called upon to resolve a question of law not heavily dependent on the particular facts of a case, because such questions can often be decided based on an incomplete or ambiguous record.") (citing H.R.Rep. No. 109–31, at 148–49, U.S.Code Cong & Admins.News 2005, 88, 206).

23.     Courts in this circuit routinely refuse to certify decisions that turn on factual issues. *See e.g.*, *In re Farina*, No. 24-17517 (MBK), 2025 WL 3273247, at \*10 (Bankr. D.N.J. Nov. 24, 2025) (refusing to certify for direct appeal a fact-bound order); *In re Trib. Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) ("The issue concerning how this Court measured materiality is not a pure legal issue; it is not appropriate for direct appeal."); *American Home Mortg. Inv. Corp. v. Lehman Bros., Inc. (In re American Home Mortg. Inv. Corp.),* 408 B.R. 42, 43–44 (D. Del. 2009) (deciding that mixed questions of fact and law that implicate the particular circumstances of the case are not pure legal questions warranting direct certification), *Bepco LP v. Globalsantafe Corp., et al. (In re 15375 Memorial Corp.)*, 2008 WL 2698678, \*1 (D. Del. July 3, 2007) (finding that "factual issues preclude a direct appeal" under 28 U.S.C. § 158(d)(2)).

24.    In the Certification Motion, MSP frames the question presented on appeal as: "whether a commercial lease between two sophisticated financial parties for an admittedly stalled construction project with no residents—other than permanent SRO tenants who remain unaffected by this bankruptcy—can qualify as 'residential real property' under 11 U.S.C. § 365(d)(2)."[4] Mot. at ¶ 29. But even that fact-laden recitation belies the suggestion that the appeal raises "a purely legal issue."

25.    The procedural history of the Debtors' Section 365 Motion likewise demonstrates the fact-intensive inquiry that this Court undertook to determine that the Ground Lease pertains to residential real property.

26.    The Court first addressed Debtors' Section 365 Motion at the omnibus hearing held on March 12, 2026. At that initial hearing, counsel for both MSP and the Debtors presented argument to the Court in favor of the parties' respective positions. But the Court ultimately reserved decision on the Section 365 Motion, noting "I don't believe I have the evidentiary record necessary to make the ruling today." *See* Declaration of William E. Chipman ("**Chipman Decl.**"), Exhibit A (Mar. 12, 2026 Hr'g Tr.) at 48: 18-19. The Court requested "evidence from the debtor

---

[4] MSP's Motion states that its appeal raises two questions. The second is whether this Court erred in finding the Ground Lease is a lease of residential real property, but the first is "whether the Bankruptcy Court erred by accepting the Debtors invitation to rule on the 365 Motion in the first instance, thereby issuing an unconstitutional advisory opinion." Mot. at ¶ 21. MSP makes no argument that the first question satisfies any requirement of section 158(d)(2), and, indeed, there can be no doubt that MSP's argument as to whether the Section 365 Order constitutes an advisory opinion (a) does not present a pure issue of law as to which there is no controlling decision or which requires resolution of conflicting decisions and (b) is blatantly counter-factual and meritless. The Section 365 Motion, in fact, presented a live controversy with immediate practical consequences, as the Court recognized. Specifically, section 365(d)(4) imposed a looming statutory deadline that, if applicable, would likely have resulted in the near-term automatic rejection of the Ground Lease, with catastrophic consequences for the Debtors' reorganization efforts.  The Court, thus, properly exercised jurisdiction over a ripe dispute that directly affected the parties' rights.

on what the intended use of this property is" and "someone on the stand, subject to cross examination, who's going to testify to that." *Id.* at 51: 6-10; *see also id.* at 50: 12-14 ("So the heart of what I'm trying to understand and what I need in the evidence is what is going on with this property.")

27.     In compliance with the Court's request, the Debtors presented two witnesses—Glenn Brill and Abe Kohn—at the April 21, 2026 omnibus hearing. The Debtors also filed declarations by Mr. Brill and Mr. Kohn in advance of the hearing that attached nearly 1,000 pages of documentary evidence. [Dkt. Nos. 396, 397].

28.     At the April 21, 2026 hearing Mr. Brill and Mr. Kohn, both of whom are involved in the current day-to-day management of the Property, testified to the present and future use of the Property, the protections afforded to the SRO Tenants, the resources spent in furtherance of the redevelopment project, and the difficulties of abandoning the multi-family housing project in favor of another use at this point in the project.  *See generally* Brill Decl., Kohn Decl.; *see also* Chipman Decl., Exhibit B (Apr. 21, 2026 Hr'g Tr.) at 22:19-25, 28:10-29:6, 32:23-33:19. After considering all the evidence presented, the Court found that the Ground Lease was residential in nature. *See id.* at 67: 22-25. ("But based on the evidence that has been presented, I am prepared and will hold that the real property, which is the subject of the lease, is residential in nature and, therefore, Section 365(d)(2) applies.")

29.     In making its ruling, the Court considered the "unique" "facts and circumstances presented" in this specific case to resolve the Section 365 Motion. *Id.* at 68: 1-8.  Appellate review of the Court's decision, whether at the district court or circuit court level, will—by necessity—require a thorough review of the same facts and testimony that this Court considered in reaching its conclusion that the Ground Lease is residential. As such, it does not constitute a purely legal

issue appropriate for direct appeal to the Third Circuit. Moreover, although the Third Circuit has not adopted a specific legal test, the Court's application of the totality-of-the-circumstances framework to the unique facts of this case does not present the type of purely legal question that section 158(d)(2) was designed to address. A decision from the Third Circuit affirming or reversing the Section 365 Order on the present facts would provide little guidance to other courts, because any future court confronting the residential/nonresidential classification issue will necessarily grapple with its own distinct factual record.

### B. MSP's Appeal Is Moot and Would Not "Materially Advance" the Case or Would Result in a Forfeiture Disfavored in the Law

30.    Pursuant to 28 U.S.C. § 158(d)(2), a bankruptcy court may certify an order for direct appeal to the circuit court if doing so would "materially advance the progress of the case or proceeding."

31.    The *ipse dixit* of a movant is not enough to grant certification under this subsection. Instead, "[m]ovants must show why there is something '*extraordinary or urgent* about this situation that recommends departing from the standard appellate process.'" *Whittaker, Clark & Daniels, Inc.*, 2023 WL 4875915, at *3 (emphasis in original) (quoting *Stanziale v. Car-Ber Testing, Inc. (In re Conex Holdings, LLC)*, 534 B.R. 606, 611 (D. Del. 2015)). If that were not the case, every litigant could claim that a direct appeal to the circuit court would "materially advance" the case and "the exception would swallow the rule, 'effectively eliminat[ing] the district court from the bankruptcy review process altogether.'" *Whittaker, Clark & Daniels, Inc.*, 2023 WL 4875915, at *3 (quoting *Polk 33 Lending LLC v. THL Corp. Fin., Inc. (In re Aerogroup Int'l, Inc.)*, 2020 WL 757892, at *4 (D. Del. Feb. 14, 2020)).

32.    Here, there is nothing urgent about this proceeding that requires a direct appeal. Had there been any urgency, MSP would not have waited two weeks to submit the Certification

Motion. The Court entered the Section 365 Order on April 22, 2026, yet MSP did not file its notice of appeal or the Certification Motion until May 5, 2026, leaving only fifteen days before the deadline it considers dispositive. The result of MSP's delay is that by the time the Motion is fully briefed, and the Court hears argument from the parties on May 22, 2026, the Section 365(d)(4) Deadline **will have already passed.** MSP cannot claim urgency when its own delay has rendered moot the practical purpose of its appeal. Moreover, by the time the Third Circuit rules, granting any relief in favor of MSP would come long after the expiration of the Section 365(d)(4) Deadline and have no prospective effect.

33.     MSP instead muses that the "imposition of a deadline" will "force" the Debtors "to make decisions about the trajectory of these cases." Mot. at ¶ 40. But what MSP is really arguing for is a determination that section 365(d)(4) applies to the Ground Lease, with that determination occurring after the Section 365(d)(4) Deadline has passed—thus giving rise to a springing, automatic default and rejection of the Ground Lease by the Debtors under section 365(d)(4) and forfeiture of the Property to MSP. This would not "advance" the Chapter 11 Cases; it would terminate them for the sole benefit of MSP.

34.     Moreover, it would result in a draconian forfeiture of the Property, to the severe detriment of the Debtors, their estates, and all stakeholders other than MSP, which is contrary to well-settled policy in the law of avoiding forfeiture. *See In re Xchange Tech. Grp. LLC*, No. 13-12809 (KG), 2014 WL 7451973, at *3 (Bankr. D. Del. Dec. 30, 2014) (denying motion for a determination that debtors had not properly exercised buyback option on a recharacterized equipment lease where such a finding would work a "windfall" or "forfeiture" for movant's benefit); *In re Seven Hills, Inc.*, 403 B.R. 327, 334 (Bankr. D.N.J. 2009) (allowing for renewal of lease agreement under section 365 and relying on "the maxim that '[a] court of equity abhors

12

forfeitures, and will not lend its aid to enforce them.'") (quoting *Jones v. N.Y. Guaranty and Indemnity Co.*, 101 U.S. 622, 628 (1879)); s*ee also Finn v. Meighan*, 325 U.S. 300, 301 (1945) ("The bankruptcy court does not look with favor upon forfeiture clauses in leases. They are liberally construed in favor of the bankrupt lessee so as not to deprive the estate of property which may turn out to be a valuable asset.").

## CONCLUSION

For the foregoing reasons, the Debtors respectfully submit that the Court should deny MSP's Certification Motion.


[signature blocks on following page]

DATED:  May 19, 2026
        Wilmington, Delaware

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ William E. Chipman*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Adam Cole (admitted *pro hac vice*)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:        chipman@chipmanbrown.com
              olivere@chipmanbrown.com
              bach@chipmanbrown.com
              maser@chipmanbrown.com

-and-

BOIES SCHILLER FLEXNER LLP
Michael M. Fay (admitted *pro hac vice*)
Robert Gordon (admitted *pro hac vice*)
Jenny H. Kim (admitted *pro hac vice*)
Sabina Mariella (admitted *pro hac vice*)
Jeffrey Waldron (admitted *pro hac vice*)
Katherine Zhang (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 446-2300
Email:        rgordon@bsfllp.com
              mfay@bsfllp.com
              jkim@bsfllp.com
              smariella@bsfllp.com
              jwaldron@bsfllp.com
              kzhang@bsfllp.com

*Counsel for Debtors and Debtors in Possession*

14