# **EXHIBIT C**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - x

In re:

HUDSON 1701/1706, LLC, et al.,

      Debtors.

------------------------------------------x

HUDSON 1701/1706, LLC, a Delaware limited
liability company, and HUDSON 1702, LLC, a
Delaware limited liability company,

      Plaintiffs,      Chapter 11
                      Case Nos.
                      25-11853 (KBO)

      V.

356W58 GROUND LESSOR, LLC, a Delaware
Limited liability company,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - x

      Videotaped Deposition of Max Nipon,
taken pursuant to notice, was held at
the law offices of Boies Schiller
Flexner LLP, 55 Hudson Yards, New York,
New York, commencing April 30, 2026 at
9:33 a.m., on the above date, before
Leslie Fagin, a Court Reporter and
Notary Public in the State of New York.

      - - -

      MAGNA LEGAL SERVICES - (866) 624-6221
            www.MagnaLS.com



APPEARANCES:
CHIPMAN BROWN CICERO & COLE, LLP
Attorneys for Debtors and Debtors in Possession
        1313 North Market Street
        Wilmington, Delaware 19801
BY:     ADAM COLE, ESQUIRE (Via Zoom)

BOIES SCHILLER FLEXNER, LLP
Attorneys for Debtors and Debtors in Possession
        55 Hudson Yards
        New York, New York
BY:     MICHAEL FAY, ESQUIRE
        VIRGINIA SU, ESQUIRE

ADLER & STACHENFELD LLP
Attorneys for 356W58 Ground Lessor, LLC
        555 Madison Avenue
        New York, New York 10022
BY:     KIRK BRETT, ESQUIRE


ALSO PRESENT:
        Daniel Irvine, Videographer
        (On Zoom).
        Bob Gayda.
        Kwame Akuffo.
        Luke Pak.
        Shivani Patel.
        Patrick Petrocell



MAGNA
LEGAL SERVICES

thought was that you would fund 170 million

for the initial purchase of units 1701 and

1702, 10 million for tenant improvements, and

8 million for the future purchase of unit

1706, right?

A.   Unit 1706 being the 10th floor?

Q.   Correct.

A.   Yes.

Q.   And one of the revisions you made

to the term sheet was to cut out the

10 million in tenant improvements, correct?

A.   Yes.

Q.   Okay.  And down here, I think you

explain why.  You say, Think this is a sneaky

way to enhance our yield, cut back on the

project proceeds, but position as less of a

retrade.  Right?

A.   Yes, I wrote that.

Q.   Okay.  And so the reason that's

true is because when you calculate yield,

it's a pretty simple calculation.  It's the

amount you are contributing divided by the

rent, right?

A.   No.  It's the inverse of that.  It



would be the rent divided by the amount we're contributing.

Q.   Okay.  All right.  That's why I'm not a math major.

But it's those two issues, right?

So the two functions of the yield are what your rent is and how much you are contributing, right?

A.   Yes.

Q.   And you can increase the yield by decreasing the amount of money you are contributing, right?

A.   You could.

Q.   And that's what is happening here, right?

A.   Yes.

Q.   You are going from 188 to 178, and that will increase your yield, right?

A.   I don't think this email reflects that we are cutting proceeds from 188 to 178. I think that was a subsequent conversation.

It reads to me as, though, this email we were still focused on a $188 million execution.  The reference to enhancing yield,



allows on a one-time basis, is the tenant to buy back some of that rent, right?

A.   Yes.

Q.   And the calculation of what the tenant would have to pay is the requested reduction divided by 30-year treasury yield, right?

A.   I believe the formula was a yield that is -- I want to make sure it's the greater of or the lesser of -- but it was two numbers.  It was either 4 and a half percent or the 30-year plus a spread.

Q.   Okay.  So the yield that is part of this calculation, the 30-year treasury yield, is capped at 4 and a half percent, right?

A.   Sorry, repeat the question.

Q.   In calculating the buyback cost, the cost of buying back rent, right -- we take the requested reduction -- so if the tenant says, I want to reduce my rent by $2 million, we would take that 2 million and then divide it by the U.S. Treasury yield, with that yield being capped at 4.5 percent, right?



MAGNA
LEGAL SERVICES

A.   Correct.

Q.   And currently, U.S. Treasury yield is about 4.9 percent.  So the cap would apply, right?

A.   Correct.

Q.   Okay.  And the buyback allows for buyback of only up to 2.5 million in rent?

A.   Correct.

Q.   So under no circumstances could the tenant lower the rent below 6.25 million, right?

A.   Per these terms.  It could certainly be presented or proposed and negotiated, but based on these terms.

Q.   Right.  Based on the contractual terms that govern the base rent buyback, the tenant could not ask for anything lower than 6.25 million, right?

A.   I would have to look exactly how the math works because I believe it applies to -- it would depend on when the reduction is applied.

Q.   Right.  Because there's escalated costs.  But assuming that the rent was still

