**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Hudson 1701/1706 LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered)<br><br>**Objection Deadline: June 16, 2026, at 4:00 p.m. (ET)**<br>**Hearing Date: TBD** |

**356W58 GROUND LESSOR LLC'S OBJECTION TO DEBTORS' MOTION FOR AN ORDER DETERMINING AMOUNT OF PROSPECTIVE POST-PETITION MONTHLY RENT DUE AS AN ADMINISTRATIVE EXPENSE CLAIM**

356W58 Ground Lessor LLC ("Landlord"), through its undersigned counsel, respectfully submits this objection (this "Objection") to the *Debtors' Motion for an Order Determining Amount of Prospective Post-Petition Monthly Rent Due as an Administrative Expense Claim* [D.I. 524] (the "Motion") and in support hereof respectfully states as follows:

**PRELIMINARY STATEMENT**

1. In contravention of well-established precedent, and their own representations to this Court, the Debtors have unilaterally stopped paying rent to Landlord in yet another attempt to gain inappropriate leverage and force Landlord into modifying the terms of the Ground Lease. This is not the first time in these Chapter 11 Cases that the Debtors have improperly sought to leverage the Landlord into making rent concessions. As the Court noted in its ruling on the Landlord's Motion to Dismiss Adversary Complaint, "the clear implication that this lawsuit is a tactic for unsuccessful lease renegotiations is troubling." May 15, 2026 Hr'g Tr. 5:17-18.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

2. The Debtors have sought to portray themselves as being responsible stewards of the Hudson Hotel project. At the same time that the Debtors sought more time to assume the Landlord's Ground Lease, the Debtors also represented that there are adequate funds to maintain these chapter 11 cases (at least through August)—and they repeatedly pointed out that the DIP budget provides for current payment of ground rent. In fact, at oral argument on April 21, Debtors' counsel referred to the budgeted $2,926,672 in forthcoming ground rent as being "necessary expenses to maintain and operate the property." April 21, 2026 Hr'g Tr. 91:19-92:2 (Gordon). In the wake of this Court's dismissal of their recharacterization complaint, the Parkview-controlled Debtors are reneging on their commitment to keep current on ground rent.

3. The current motion is also an effort to end-run the Court's ruling regarding the Ground Lease. In their recharacterization action, the Debtors effectively seek a drastic reduction in amounts they must pay for use of the Hudson Hotel premises. Although the initial complaint in that action was dismissed following the Court's review of the Ground Lease itself and confirmation that the Ground Lease is what it purports to be, the Debtors' current motion seeks a rent reduction by other means, while litigation ensues on the recently-filed amended complaint. Put another way, the current rent reduction motion improperly seeks the equivalent of a preliminary remedy for the relief requested in the amended complaint.

4. The authority in this district is clear. Absent evidence to the contrary—of which Debtors have provided none—landlords are entitled to payment of rent at the contractual lease rate. The Debtors' newly-articulated assertion that they derive no benefit from the Ground Lease is mystifying. These chapter 11 cases have been premised on the notion that there is a valuable opportunity to complete the conversion project and operate the premises as a rental apartment building. If the Debtors do not find these opportunities to be valuable, then the appropriate

response would be to reject the Ground Lease and convert these cases to Chapter 7. On the other hand, if Debtors do find these opportunities to be valuable, then it is self-evident that Debtors should pay Base Rent to preserve them.

5. The tactics of the Parkview-controlled Debtors should not be countenanced by the Court. Neither Landlord nor any other administrative claimant should be required to bear the ever-increasing risk of an administratively insolvent case if indeed the Debtors prove to be unable to assume the Ground Lease. As such, Landlord should be granted an administrative expense claim in the full amount under the Ground Lease, and the Debtors should be directed to continue making payment thereof.

## BACKGROUND

### A. Origin of the Ground Lease

6. On May 4, 2022, Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "Debtors"), as tenants, and Landlord, as landlord, entered into a lease for certain premises located at 353 West 57th Street in New York, New York for a period of 99 years. *See* Declaration of Matthew B. McGuire, Adv. Pro. No. 25-52471 [Adv. Pro. D.I. 17][2] ("McGuire Adversary Declaration"), at Ex. C (the "Ground Lease").

7. Under the Ground Lease, the Debtors are obligated to pay base rent at a rate of $729,166.67 per month ("Base Rent"). Motion at ¶ 10.

### B. Bankruptcy Case Procedural History

8. On October 22, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are

[2] All references to Adv. Pro. D.I. refer to the adversary proceeding number 25-52471 (the "Adversary Proceeding").

authorized to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On November 25, 2025, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases. The Committee is comprised of three members, including Landlord.[3]

10. On November 12, 2025, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [D.I. 56] (the "DIP Motion").

11. On December 9, 2025, Landlord filed *356W58 Ground Lessor LLC's Objection and Reservation of Rights to the Motion of the Debtors for Entry of a Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [D.I. 139] (the "DIP Objection").

12. On January 14, 2025, the Court granted the DIP Motion [D.I. 255] (the "DIP Order").

13. On December 22, 2025, the Debtors commenced the Adversary Proceeding [Adv. Pro. D.I. 1] (the "Complaint").

[3] For the avoidance of doubt, the instant Objection is brought on behalf of Ground Lessor in its individual capacity, not in its capacity as a Committee member.

14. On February 4, 2026, the Landlord filed *356W58 Ground Lessor LLC's Motion to Dismiss the Complaint* [Adv. Pro. D.I. 15] (the "Motion to Dismiss") and the Dismissal Memorandum.

15. On February 11, 2026, the Debtors filed *The Debtors' Opposition to Defendants' Motion to Dismiss* [Adv. Pro. D.I. 25].

16. On February 18, 2026, Landlord filed *356W58 Ground Lessor LLC's Reply Memorandum of Law in Further Support of its Motion to Dismiss the Complaint* [Adv. Pro. D.I. 32].

17. On February 24, 2026, the Debtors filed *Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [D.I. 344] (the "365 Motion").

18. On March 5, 2026, Landlord filed *356W58 Ground Lessor LLC's Objection to Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [D.I. 354] (the "365 Objection").

19. On March 9, 2026, the Debtors filed the *Debtors' Reply to 356W56 Ground Lessor LLC's Objection to Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Docket No. 359].

20. On March 12, 2026, the Court held a hearing on the 365 Motion which was continued for further argument to April 21, 2026.

21. On April 7, 2026, the Debtors filed the *Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order* [D.I. 400] (the

"Supplemental DIP Motion") which provided for the payment of Rent through and including August 2026.

22. On April 14, 2026, Landlord filed *356W58 Ground Lessor LLC's Objection to Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order* [D.I. 410] (the "Supplemental DIP Objection").

23. On April 16, 2026, the Debtors filed *Debtors' Reply in Support of Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order* [D.I. 418] (the "Supplemental DIP Reply").

24. On April 21, 2026, the Court heard oral argument on the 365 Motion, the Supplemental DIP Motion, and the Motion to Dismiss. The Court granted the 365 Motion and the Supplemental DIP Motion on the record [D.I. 436, 443]. The Court took the Motion to Dismiss under advisement and, on May 15, 2026, ultimately granted the Motion to Dismiss [Adv. Pro. D.I. 86].

25. On June 2, 2026, the Debtors filed the Motion and, contemporaneously therewith, unilaterally stopped paying Base Rent.

## OBJECTION

### I. Landlord is Entitled to an Administrative Expense Claim for the Full Amount of Base Rent Under the Ground Lease

26. Despite styling their motion as a request for the Court to set the ***prospective*** rent, the Debtors did not await the Court's decision and have unilaterally withheld the June Base Rent and stated an intention to continue withholding Base Rent absent an order of this Court.

27. The Landlord is entitled to administrative expense claim treatment for the full amount of Base Rent provided for under the Lease. Base Rent under the Ground Lease is $729,167 per month. Additional amounts have accrued as "Additional Rent" under the Ground Lease in the

amount of approximately $2,580,000, consisting of interest and late fees on past due rent, fees and other permissible costs.[4]

28. Section 503(b) of title 11 of the United States Code (as amended or modified, the "Bankruptcy Code") provides, in relevant part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses [for] . . . the actual, necessary costs and expenses of preserving the estate[.]"

29. Courts in this district have consistently and uniformly held that "the weight of authority clearly supports permitting administrative expense claims for post-petition rent on pre-petition leases." *In re Goody's Fam. Clothing, Inc.*, 401 B.R. 656, 671 (D. Del. 2009), aff'd sub nom. *In re Goody's Fam. Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010); *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990) ("There is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled."). "[T]he mere fact that the Debtors are occupying the landlord's premises is sufficient, in and of itself, to establish that payment for that use and occupancy is an actual, necessary expense of preserving a debtor's estate under section 503(b)(1)." *In re JLM Couture, Inc.*, 661 B.R. 862, 867 (Bankr. D. Del. 2024), *on reconsideration in part,* No. 23-11659 (JKS), 2024 WL 3100775 (Bankr. D. Del. June 21, 2024).

30. The parties therefore agree that Landlord is entitled to an administrative claim for Base Rent. The only disagreement is regarding the amount of such a claim.

31. The Debtors argue that rent should be calculated not by reference to the Ground Lease but by reference to the cash Debtors receive on a monthly basis from utilization of a small

[4] Landlord has not yet sought to compel payment of Additional Rent that has accrued since the Petition Date. Landlord's restraint in this regard has been a form of accommodation to Debtors' restricted cash flow and to avoid further disputes. To be clear, Landlord reserves the right to insist upon payment of all Additional Rent at a later date, such as in connection with any proposed assumption of the Lease.

portion of the Leased Premises. In essence, the Debtors are arguing that the fair market value of the Ground Lease is *de minimis*. Such a proposition finds no support in law, facts, or logic.

*A.* *Landlord is entitled to rent at the Ground Lease rate*.

32. "A landlord is entitled to an administrative claim in the amount of the fair market value of the premises when a debtor occupies and uses them post-petition." *In re DVI, Inc.*, 308 B.R. 703, 707–08 (Bankr. D. Del. 2004) (citing *Zagata Fabricators, Inc. v. Superior Air Products,* 893 F.2d 624, 627 (3d Cir. 1990)). "Generally, the fair market value is the price at which a willing buyer will pay a willing seller when neither party is compelled to buy or sell the property." *Id.* (citing *United States v. Cartwright,* 411 U.S. 546, 551, 93 S. Ct. 1713, 36 L. Ed. 2d 528 (1973)).

33. "The contract rate is presumed to be the fair market value unless the presumption is rebutted. Accordingly, [debtor] has the burden of showing why the contract rate was not the fair market value for the rental of the Premises." *Id.* (citing *In re ZB Company, Inc.,* 302 B.R. 316, 319 (Bankr. D. Del. 2003)).

34. Debtors have failed to present any evidence sufficient to carry this burden.

35. *First*, the Debtors attempt to persuade the Court that because the Property "is in a state of incomplete development, and its only revenue is derived from SRO Tenant rents" the value of the Leasehold Interest itself is somehow impaired. But this claim is belied by both the law and the facts. In the over four years that the Debtors have held the Leasehold Interest, the Property has been in an identical "state of incomplete development" where "its only revenue is derived from SRO Tenant rents." Yet for over four years, the Base Rent has remained unchanged pursuant to the terms of the Ground Lease. It is only now—while the Debtors teeter on the brink of administrative insolvency and desperately seek funds and leverage to continue their Adversary Proceeding—that Debtors are suddenly unwilling to pay Base Rent as required.

36. Similarly, despite the Property being in a "state of incomplete development" where "its only revenue is derived from SRO Tenant rents[,]" the existence of the Ground Lease and the Debtors' occupancy rights provide the underpinnings of the Debtors' reorganization efforts. Without the Ground Lease and occupancy rights, Debtors would have no opportunity to complete the conversion project and harvest rental revenue from future tenants.

37. Debtors have managed to collateralize their Leasehold Interest post-petition, received significant funding based on their continued use of this Property, and are running this entire case on the premise there is value in their Leasehold Interest. As articulated by Debtors' counsel: if "MSP [were] entitled to declare the lease terminated and take back the property [] there are no assets to satisfy general unsecured claims." April 21, 2026 Hr'g Tr. 94:8–10 (Gordon).

38. The Debtors should not be permitted to both run their bankruptcy off the value of the Ground Lease—the post-petition use and condition of which has remained identical to pre-petition use and condition—while refusing to pay the Landlord Base Rent.

39. Further, the Debtors have presented no authority supporting their proposition. Only one of the cases presented by Debtors involved a Court valuing the administrative claim for a lease at less than the contract rate, and this case does not support the Debtors. In *Matter of Cont'l Airlines, Inc.*, the bankruptcy court analyzed recent, comparable deals with hard metrics to determine "what any other customer would have to pay under the same circumstances." 146 B.R. 520, 529–30 (Bankr. D. Del. 1992) (internal quotations omitted). The *Continental* Court specifically rejected a lower amount proposed where "no evidence was presented of a lessor who would accept such a rent." *Id*. The *Continental* valuation was rejected because no lessor would accept such a rent payment if it involved rent that was 58% of the contract rate. *Id*. The Debtors

here propose a valuation that amounts to a staggeringly low percentage of the contract rate and have not even attempted to provide evidence that any lessor would accept such a rate.

40. The remainder of the cases cited by Debtors either did not value the administrative claim for a lease—*see e.g. Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624 (3d Cir. 1990) (the court did not make any determination on the amount of rent the Debtors were required to pay under section 503 except that the amount was higher than zero); *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308 (Bankr. D. Del. 2009) (the court did not make any determination on the amount of rent the Debtors were required to pay under section 503)—or applied the contract rate.

41. *In re JLM Couture, Inc.*, relied upon by Debtors, is particularly informative. The *JLM* Court rejected the testimonial evidence—which was not supported by property descriptions, market survey, or other credible evidence—of debtors' president that comparable premises were available for less than the contract rate. 661 B.R. at 868. The Court instead allowed an administrative claim at the base monthly rental rate in the lease. *Id*. at 869.

42. Nor does the caselaw support limiting Landlord's rent to the cash received by Debtors. In *In re DVI, Inc.*, the debtors rejected a lease for residential real property but failed to vacate the property for two months. 308 B.R. 703 (Bankr. D. Del. 2004). The debtors then asserted that because the property was being used merely to show prospective purchasers the personal property stored on the site, the landlord's administrative claim should be limited to the ultimate purchase price of that property. *Id*. The *DVI* Court held that the amount made by the debtors was "irrelevant to the Lease rate's fair market value." *Id*. at 708. The *DVI* Court allowed an administrative claim at the base monthly rental rate in the lease. *Id*.

43. Without citation to caselaw, Debtors argue that they are not required to perform all of a debtor's obligations under section 365(d)(3), including payment of rent, because this Court held that the Ground Lease is a lease for residential real property. *See* Motion at p. 2; ¶¶ 9-15. Predictably, caselaw located by Landlord contradicts Debtors' position.

> Unlike other creditors, both residential and nonresidential lessors are in an unusually vulnerable position, subject to becoming "involuntary extender [s] of unsecured credit" during the post-petition, pre-rejection period (quoting *In re Telesphere Comms., Inc.*, 148 B.R. 525, 529 (Bankr. N.D. Ill. 1992)…. This Court finds that the residential or nonresidential status of the premises is irrelevant to satisfying the two preconditions of allowable administrative expenses. Both types of leases provide similar benefits to the estate and pertain to the same post-petition time period. In addition, as the risks facing either type of lessor are similar and the credit extended covers a similar length of time, the policy reasons for granting administrative expense priority to post-petition creditors apply equally to residential lessors and nonresidential lessors.

*See In re Gussie Naomi Babbs*, 265 B.R. 35, 38 (Bankr. S.D.N.Y. 2001).

44. Thus, Debtors' reliance on this Court's section 365(d) decision to unilaterally excuse themselves from Base Rent obligations under the Ground Lease is without merit.

45. *Second*, Landlord has consistently maintained throughout the life of this transaction and these bankruptcy cases that Debtors and Landlord agreed to the Base Rent amount following extensive negotiations and pursuant to market forces. Later, Debtors and Landlord negotiated and agreed upon the Base Rent under the Fourth Amendment—and Parkview approved the Base Rent and executed the Fourth Amendment. *See 356W58 Ground Lessor LLC's Memorandum of Law in Support of its Motion to Dismiss the Complaint* [Adv. Pro. D.I. 16] at 9–11; *see also Declaration of Matthew B. McGuire in Support of 356W58 Ground Lessor LLC's Motion to Dismiss the Complaint*, Ex. Q [Adv. Pro. D.I. 17-17] (the "Fourth Amendment"). The fact that the purchase price paid by the Landlord acted as a basis for the Base Rent negotiations, and that Landlord desired an attractive rent amount commensurate with its risks, do not suggest that the Base Rent is

not the byproduct of market conditions. In fact, it demonstrates that market actors adhered to conventions and obtained a deal agreeable to Parkview, Debtors, and Landlord.

46. Debtors have presented no evidence that the Base Rent "was not calculated with a view to comparable market rental rates" and have not overcome the presumption that the contract rate was the fair market value for the rental of the Premises.

47. In short, the Debtors have not supplied the Court with any authority to support the position that rent should be less than the contract rate.

*B. Under the law of the case, the Ground Lessor is entitled to continued payment of rent at the Ground Lease rate.*

48. The Debtors sought and received approval of their Supplemental DIP Motion based on continued payment of Base Rent to Landlord. The Supplemental DIP Motion included a budget that expressly provided for monthly "Ground Rent" at the Ground Lease rate through August 1, 2026. *Notice of Filing of Further Amended Budget Related to the Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order*, at Ex. A [D.I. 430] (the "Supplement DIP Budget"). The Supplemental DIP Budget did not include any reservation regarding payment of the Base Rent to Landlord.

49. In fact, at the April 21, 2026 hearing, the Debtors went further and, in response to Ground Lessor's Supplemental DIP Objection stated

> [T]his argument by MSP is a gross mischaracterization of the budget. In fact, of the roughly $11 million in a supplemental budget for the months of May through August . . . ***$2,926,672 is for ground rent being paid to MSP***. . . . ***All necessary expenses to maintain and operate the property***."

April 21, 2026 Hr'g Tr. 91:19-92:2 (Gordon) (emphasis added). Debtors represented to the Court that Base Rent would be paid to Landlord through August 2026. The Supplemental DIP Order was entered thereafter and presumably in reliance on the Debtors' representations. For the Debtors

to now turn around and unilaterally fail to adhere to the Supplemental DIP Budget is, at best, bad faith.

## II. The Motion Improperly Seeks Interim Relief Regarding Recharacterization

50. It is clear that Debtors consider the instant Motion part and parcel with the Adversary Proceeding. The Debtors state that "until there is a resolution of the Recharacterization Litigation . . . it is reasonable to pay to the Ground Lessor only the rents received by the Debtors from the SRO Tenants[.]" Motion at ¶ 30. However, the Debtors have not sought nor are they entitled to interim relief pending resolution of the Adversary Proceeding.

51. If Debtors believe they are entitled to some form of interim relief, they must actually request such relief in a procedurally proper manner.

## CONCLUSION

For the foregoing reasons, Ground Lessor respectfully requests that the Court enter an order (i) granting Ground Lessor an administrative expense claim in the amounts permitted under the Ground Lease, including the currently outstanding Base Rent of $729,166.67; (ii) ordering the payment of such amounts; (iii) ordering payment of monthly Base Rent in accordance with the Ground Lease on an ongoing basis, subject to further Order of this Court; and (iv) granting such other and further relief as is just and proper.

Dated: June 16, 2026
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Katherine S. Dute*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
mcguire@lrclaw.com
dute@lrclaw.com
venkateswaran@lrclaw.com

– and –

**ADLER & STACHENFELD LLP**

Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212)883-1700
Facsimile: (212)883-8883
Email: kbrett@adstach.com
poconnor@adstach.com

*Counsel to 356W58 Ground Lessor LLC*