**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*, | Case Nos. 25-11853 (KBO) |
| Debtors. [1] | (Jointly Administered) |
| | **Hearing Date:**<br>**July 16, 2026 at 10:30 a.m. (ET)** |
| | **Objection Deadline:**<br>**July 9, 2026 at 4:00 p.m. (ET)** |

**DEBTORS' OBJECTION TO 356W58 GROUND LESSOR LLC'S MOTION
FOR AN ORDER COMPELLING DEBTORS TO ESCROW RENT**

Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "**Debtors**"), the Debtors in the above-captioned, jointly administered, chapter 11 bankruptcy cases (collectively, the "**Chapter 11 Cases**"), by and through their undersigned counsel, file this objection ("**Objection**") to the motion [Dkt. No. 573] (the "**Escrow Motion**" or "**Motion**") filed by 356W58 Ground Lessor LLC, the purported ground lessor to the Debtors (the "**Ground Lessor**"), seeking entry of an order compelling the Debtors to (1) draw upon their DIP financing facility for the full amount of the monthly rent provided for under that certain purported ground lease dated May 4, 2022 between the Debtors and the Ground Lessor (the "**Ground Lease**") for the months of June – August 2026, in the aggregate amount of $2,187,501, and (2) deposit such amounts into escrow until this Court resolves the *Debtors' Motion for an Order Determining Amount of Prospective Post-Petition*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

1

*Monthly Rent Due as an Administrative Expense Claim* [Dkt. No. 524] (the "**Rent Motion**") and in support of their Objection respectfully state as follows:

## PRELIMINARY STATEMENT

Since the commencement of the Chapter 11 Cases, the Debtors have made well over $5 million in rent payments to the Ground Lessor. [2] In all likelihood, that sum represents a dramatic overpayment relative to the actual fair value to the Debtors of the use and occupancy of the real property that is the subject of the Ground Lease (the "**Property**"), which is under redevelopment and currently houses only 29 individual single-room occupancy tenants.

Accordingly, on June 2, 2026, the Debtors filed the Rent Motion, seeking a determination of the amount of rent under the Ground Lease entitled to administrative expense priority, if any, and suspending rent payments pending such determination (while still paying all expenses necessary to maintain the Property). On June 16, 2026, the Ground Lessor filed an objection to the Rent Motion [Dkt. No. 553], and an evidentiary hearing has been scheduled for September 9, 2026.

Notwithstanding the forthcoming evidentiary hearing, the Ground Lessor has now filed the Escrow Motion, seeking extraordinary relief compelling the Debtors to draw on their DIP financing facility for the full contractual amount of rent under the Ground Lease pending the evidentiary hearing, thereby incurring *$2,187,501* in potentially unnecessary administrative expenses plus interest and other charges under the Debtors' DIP financing facility, and to escrow that amount pending resolution of the Rent Motion.

The Escrow Motion is nothing more than an attempted end-run around the Debtors' Rent Motion and requests the equivalent of an inappropriate prejudgment attachment.

---

[2] References to "rent" or any similar references are not a concession that the Ground Lease is a true lease and that payments made to the Ground Lessor indeed constitute "rent," and the Debtors reserve all rights in this regard.

The Ground Lessor grasps at straws to justify its improper request, arguing that the Court can grant the relief it seeks by relying on its equitable powers under section 105(a) of the Bankruptcy Code. However, section 105(a) does not create substantive rights that have no other basis in the Bankruptcy Code, and the Ground Lessor is unable to point to any other substantive provision of the Bankruptcy Code justifying its request or any other authority supporting the relief that it seeks here.

Further, even if the Ground Lessor's Motion is proper under section 105(a), it entirely fails to succeed on the merits. The Ground Lessor has put forward no evidence that the rent payments it demands represent the true value of the Property to the Debtor. Instead, it obfuscates and mischaracterizes the nature of a "budget" to argue incorrectly that the budget under the *Supplemental Final Order Authorizing the Debtors to Increase the DIP Commitment* entered by the Court on April 21, 2026 [Dkt. No. 436] (the "**Supplemental DIP Order**") constituted a commitment by the Debtors to pay all amounts encompassed by that budget, regardless of their allowability (or lack thereof) as an administrative expense under the Bankruptcy Code. The Ground Lessor also makes the unfounded assertion that the lender under the Supplemental DIP Order, Parkview Financial REIT, LP ("**Parkview**"), may not be able to meet its obligations under the Supplemental DIP Order—even though Parkview has provided funding to the Debtors in excess of $26 million post-petition—creating a straw-man argument that the Ground Lessor is being required to shoulder an unfair credit risk of unpaid rent pending resolution of the Rent Motion. This argument is entirely manufactured and unsupported by any evidence in the record. The Escrow Motion should be denied.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Chapter 11 Cases under 28 U.S.C. § 1334. This Court is authorized to hear and determine the Escrow Motion under 28 U.S.C. § 157(a)-(b) and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012. Venue of the Chapter 11 Cases and this proceeding is proper in this District under 28 U.S.C. §§ 1408(1) and 1409(a), respectively.

**BACKGROUND**

**A. The Ground Lease and Post-Petition Expenditures by the Debtors**

2. The Debtors and the Ground Lessor are parties to the Ground Lease regarding the Property, which consists of Condominium Units 1701, 1702, and 1706 located at 353-361 West 57th Street a/k/a 358-366 West 58th Street, New York, New York.

3. The Ground Lease has been amended four times, most recently pursuant to that certain Fourth Amendment dated March 29, 2024, (the "**Fourth Amendment**"). Under Section 3 of the Fourth Amendment—executed less than two years after commencement of the Ground Lease—base rent under the Ground Lease was increased *by almost 37%* from $6,400,000 (payable at a rate of $533,333.13 per month) to $8,750,000 (payable at a rate of $729,166.67 per month (the "**Base Rent**")).

4. On October 22, 2025, the Debtors commenced the Chapter 11 Cases.

5. The Debtors paid the full amount of the Base Rent to the Ground Lessor during the first seven months of the Chapter 11 Cases, through May 2026, for a total of $5,104,169 in post-petition rent. In addition to the $5,104,169 in rent paid to the Ground Lessor during these Chapter 11 Cases, the Debtors have borrowed under their DIP financing facility and incurred additional administrative expenses through May 2026 in the amount of approximately $12,651,209 to fund the expenses of operating and maintaining the Property (not including the expense of professional

services rendered by FTI Consulting), which have also inured to the benefit of the Ground Lessor to the extent it has an interest in the Property.

**B. The Rent Motion**

6. The Debtors suspended rent payments to the Ground Lessor in June 2026 and submitted the Rent Motion on June 2, 2026, requesting that this Court make a determination as to the amount due to the Ground Lessor for monthly rent as an administrative expense under section 503(b)(1)(A) of the Bankruptcy Code.

7. The Ground Lessor submitted an objection to the Rent Motion on June 16, 2026.

8. The parties discussed the Rent Motion with the Court at the June 17, 2026 status conference. The Court ordered the parties to meet and confer regarding a discovery schedule for the Rent Motion and a date on which the Rent Motion could be heard by the Court.

9. The Court has scheduled an evidentiary hearing regarding the Rent Motion for September 9, 2026.

**BASIS FOR OBJECTION**

**A. The Escrow Motion Has No Basis in Law**

10. Through the Rent Motion, the Debtors properly moved this Court for an order determining the reasonable amount of prospective post-petition monthly rent due to the Ground Lessor under the Ground Lease as an administrative expense, if any.

11. The Rent Motion sets forth undisputed facts rebutting the presumption that the proper payment due to the Ground Lessor is the amount of Base Rent under the Ground Lease. Those facts include: (1) the current state of the property and its lack of revenue generation, aside from the rent payments of the 29 single-room occupancy tenants; (2) the admission by representatives of the Ground Lessor that the Base Rent was determined by reference to targeted investor yields rather than market rates; and (3) the fact that the original Base Rent was increased

by almost 37% less than two years after the commencement of the Ground Lease. *See* Rent Mot. ¶¶ 10, 26-28.

12.     The Debtors will also present the testimony of an expert regarding the fair rental value of the Property to the Debtors at the upcoming hearing on the Rent Motion on September 9, 2026.

13.     Because the Debtors have duly rebutted the presumption that the contractual rent rate is the appropriate measure of the administrative expense claimable by the Ground Lessor, the Ground Lessor must now come forth with evidence at the hearing demonstrating that it is entitled to the entire Base Rent as an administrative expense.

14.     Rather than following that procedure, the Ground Lessor has launched a collateral attack on the Rent Motion in order to improperly shift the burden *back* on the Debtors to show why they should not have to pay the full amount of the Base Rent.

15.     In support of its Motion, the Ground Lessor relies only upon section 105(a) of the Bankruptcy Code for the extraordinary relief it has requested. Mot. ¶¶ 32-33. However, the Third Circuit has cabined the equitable powers granted to bankruptcy courts under section 105(a), noting, "section 105(a) has a limited scope. It does not 'create substantive rights that would otherwise be unavailable under the Bankruptcy Code.'" *In re Cont'l Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) (quoting *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992)); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code").

16.     Tellingly, the Ground Lessor cites no other substantive provisions of the Bankruptcy Code and points to no other authority supporting the relief it is requesting.

17.     Courts in this district routinely deny relief where a party attempts to use section

105(a) to create substantive rights not otherwise granted by any part of the Bankruptcy Code, including the right to reimbursement for an administrative expense. *See, e.g., In re Women First Healthcare, Inc.,* 332 B.R. 115, 118, 120 (Bankr. D. Del. 2005) (denying request under section 105(a) for an administrative claim totaling $295,546 for expenses incurred in connection with the sale of a debtor asset prior to recission of the sale order and a new auction, explaining, "[t]here is no independent basis under section 105(a) for the allowance of an administrative expense."); *In re Mariner Post-Acute Network*, 329 B.R. 481, 490 (Bankr. D. Del. 2005) (denying request for award of sanctions for violation of plan and confirmation order, noting "[t]he Plan and Confirmation Order cannot provide authority for an award of actual or punitive damages for civil contempt, if they are not otherwise permitted by law" because "Section 105(a) cannot create substantive rights that do not otherwise exist under the Bankruptcy Code or other applicable law.").

18.     Further, the requested relief amounts to a request for a prejudgment attachment. Such relief is also not supported by any provision of the Bankruptcy Code and is generally disfavored in law. *See In re Sabratek Corp.*, 257 B.R. 732, 738 (Bankr. D. Del. 2000) (explaining that a "prejudgment sequestration" of disputed assets into an escrow account "is an extraordinary remedy and should be granted sparingly.") (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340 (1999)). The Ground Lessor's freewheeling reliance on the equitable powers granted to a bankruptcy court under section 105(a) does not pass muster. [3]

---

[3]     Further, the Ground Lessor's pursuit of relief under section 105(a) is procedurally improper. "An action to obtain equitable relief, including an injunction, generally requires an adversary proceeding." *In re Forever 21, Inc.,* 623 B.R. 53, 64 (Bankr. D. Del. 2020); *see also In re The Fairchild Corp.*, 2009 WL 4546581, at *7 (Bankr. D. Del. Dec. 1, 2009) (noting entry of injunctive relief requires initiation of an adversary proceeding); *In re Residential Cap., LLC*, 480 B.R. 529, 538 (Bankr. S.D.N.Y. 2012) (same).

**B. The Escrow Motion Fails on the Merits**

19.     Even if the Escrow Motion was procedurally correct, the Motion still fails on its merits.

20.     The Ground Lessor has essentially moved for a preliminary injunction compelling the Debtors to place the full amount of the Base Rent for June, July, and August into escrow. Litigants routinely seek similar injunctive relief under Rule 65 of the Federal Rules of Civil Procedure. *See, e.g.*, *Stephan Zouras LLP v. Marrone*, 2021 WL 5154159, at *1, *4 (M.D. Pa. June 9, 2021) (seeking a preliminary injunction pursuant to Rule 65 compelling defendant to place total amount of the plaintiff's claim in escrow).

21.     Where parties seek injunctive relief under section 105(a), the movant, "in accordance with Bankruptcy Rule 7065 and Fed. R. Civ. P. 65, has the burden of demonstrating to the court the following: substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest." *In re Wedgewood Realty Grp., Ltd.*, 878 F.2d 693, 700–01 (3d Cir. 1989); *see also In re Forever 21, Inc.*, 623 B.R. 53, 64 (Bankr. D. Del. 2020) ("Generally, courts apply the traditional preliminary injunction test when deciding whether to issue an injunction pursuant to section 105(a)."). That includes requests for equitable relief seeking the sequestration of assets. *See In re Sabratek Corp.*, 257 B.R. at 738 ("The injunctive relief which the Committee seeks is in the nature of a prejudgment sequestration or attachment under Federal Rules of Civil Procedure 64 and 65, as incorporated in the Federal Rules of Bankruptcy Procedure 7064 and 7065.").

22.     Here, the Ground Lessor cannot satisfy any of the requirements of Federal Rule of Civil Procedure 65 or Bankruptcy Rule 7065.

23.     *First*, the Ground Lessor has not demonstrated a likelihood of success on the merits – that is, a determination that it is entitled to the full amount of the Base Rent as an administrative expense – in either the Escrow Motion or in its objection to the Debtors' Rent Motion.

24.     As explained in the Rent Motion (at ¶ 22), "a debtor is generally required to pay only a reasonable value for the use and occupancy of a landlord's property, which may or may not equal the amount agreed upon in the terms of the lease." *Zagata Fabricators, Inc. v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir. 1990) (citation omitted). The Ground Lessor has failed to put forward any evidence to date showing that the full amount of the Base Rent is the "reasonable value" of the Debtors' use of the Property.

25.     In its objection to the Rent Motion (at ¶ 46), the Ground Lessor argues that the "Debtors have presented no evidence that the Base Rent 'was not calculated with a view to comparable market rental rates' and have not overcome the presumption that the contract rate was the fair market value for the rental of the Premises." But that claim completely ignores the testimony by a representative of the Ground Lessor who conceded that the Base Rent was calculated with reference to specific investor "yields" rather than market rates. Rent Mot. ¶ 26.

26.     The Ground Lessor's additional argument that it is entitled to the full Base Rent under the Supplemental DIP Order is also unavailing. A budget simply indicates what funding will be made available during the budget period, as necessary. It is not a commitment, however, to incur administrative expenses to pay claims that are not entitled to administrative priority. The Escrow Motion misses this important distinction and misguidedly argues that the budget is an unequivocal commitment to pay rent and other expense items at the amounts set forth in the budget without proof of their allowability under the Bankruptcy Code.

27.     ***Second***, the Ground Lessor has failed to show that it will suffer irreparable harm. The Ground Lessor suggests that escrow is necessary to protect it from any infirmity in the financial condition of Parkview. *See* Mot. ¶ 43. The Ground Lessor does not, because it cannot, offer any evidence in support of this assertion, which is demonstrably false.

28.     Through the DIP financing facility, Parkview has financed the Debtors' payment of $5,104,169 in post-petition rent to the Ground Lessor and approximately $12,651,209 to fund the expenses of operating and maintaining the Property through May 2026, not including the expense of the professional services rendered by FTI Consulting. In total, Parkview has funded approximately $26.9 million post-petition. Unfounded and untrue accusations about Parkview's financial condition are insufficient to show irreparable harm to the Ground Lessor. Indeed, the Ground Lessor offers no facts indicating *any* present credit risk with respect to Parkview, and the suggestion otherwise is a transparent attempt to create a straw-man argument.

29.     ***Third***, the potential harm to the Ground Lessor does not outweigh the harm to the Debtors. As noted, the Debtors have already paid over $5 million to the Ground Lessor for rent through May 2026. That very likely represents a significant *overpayment* for seven months of use and occupancy of the Property. Any overpayment should be credited to the Debtors once the Court issues an order determining the post-petition rent actually due to the Ground Lessor as an administrative expense. As the Debtors have likely paid far more than their fair share to the Ground Lessor in rent, the demonstrable harm to the Debtors and their estates of unnecessarily incurring additional administrative expenses to fund the exorbitant Base Rent clearly outweighs any harm to the Ground Lessor of proceeding to trial on the Rent Motion without an escrow of the full Base Rent as requested.

30.     ***Fourth***, to the extent that there is any public interest at stake in this dispute, it is in (a) avoiding incurring perhaps unnecessarily an additional layer of debt with priority over general unsecured claims and (b) allowing the Debtors to efficiently and successfully reorganize so that the redevelopment of the Property into a multi-family residential housing complex with more than 400 units can be finally realized.

### CONCLUSION

For the foregoing reasons, the Debtors respectfully submit that the Ground Lessor's Escrow Motion should be denied.

DATED: Wilmington, Delaware
        July 9, 2026

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ William E. Chipman*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:     (302) 295-0191
Email:         chipman@chipmanbrown.com
               olivere@chipmanbrown.com

BOIES SCHILLER FLEXNER LLP
Robert D. Gordon (admitted *pro hac vice*)
Michael M. Fay (admitted *pro hac vice*)
Jenny H. Kim (admitted *pro hac vice*)
Sabina Mariella (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone:     (212) 446-2300
Email:         rgordon@bsfllp.com
               mfay@bsfllp.com
               jkim@bsfllp.com
               smariella@bsfllp.com

*Counsel for Debtors and Debtors in Possession*