**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706 LLC, | Case No. 25-11853 (KBO) |
| Debtors. [1] | (Jointly Administered) |
| | **Hearing Date: July 16, 2026 at 10:30 a.m. (ET)** |

**356W58 GROUND LESSOR LLC'S REPLY IN SUPPORT OF ITS**
**MOTION FOR AN ORDER COMPELLING DEBTORS TO HOLD**
**RENT DUE UNDER THE GROUND LEASE IN ESCROW**

356W58 Ground Lessor LLC ("Landlord"), through its undersigned counsel, files this reply ("Reply") in further support of its motion ("Motion") for an order compelling Debtors to draw upon the DIP facility for ground rent payments due in June 2026, July 2026, and August 2026 under the Ground Lease, and to deposit such amounts into escrow until this Court resolves Debtors' *Motion for an Order Determining Amount of Prospective Post-Petition Monthly Rent Due as an Administrative Expense Claim* [D.I. 524] (the "Rent Motion") and in response to the Debtors' *Objection to 356W58 Ground Lessor LLC's Motion for an Order Compelling Debtors to Escrow Rent* [D.I. 583] (the "Objection") and in support hereof respectfully states as follows:

**PRELIMINARY STATEMENT** [2]

1.      Parkview and the Debtors represented that the DIP Loan would be available to pay all administrative expenses on a current basis, including ground rent to the Landlord and real estate taxes to the City of New York. But after this Court (properly) dismissed the Debtors' baseless

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

recharacterization action, Parkview and the Debtors have resorted to other devices as part of their broader litigation tactic following unsuccessful lease renegotiations.  Parkview has adopted the strategy of cutting off funding entirely as a means to conserve its own cash. Whether Parkview's actions are a result of a lack of willingness or a lack of wherewithal, the Debtors are improperly facilitating Parkview by declining to draw upon the DIP Loan and unilaterally refusing to pay rent—and, more recently, also refusing to pay real estate taxes due on July 1, 2026 in the amount of approximately $3.3 million.

2.      Neither Parkview nor the Debtors should be permitted to so easily shift the credit risk of these cases onto the Landlord, especially given their prior assurances to this Court.  In a brazen example of revisionist history, the Debtors' response to this Motion improperly suggests that the Debtors didn't really mean to promise that they would use the DIP Loan to pay rent.  The Court should not countenance Debtors' attempt to distance themselves from their representations in connection with the Supplemental DIP Budget.

3.      Moreover, the Debtors' abrupt refusal to pay rent and real estate taxes—without prior notice or permission from the Court—is fundamentally at odds with their purported interest in pursuing the completion of the project.  There are no grounds for Debtors to receive a rent holiday while they continue their misguided recharacterization litigation, as Landlord will demonstrate that the Rent Motion is meritless for multiple reasons (including that Debtors have utterly failed to overcome the presumption that the contractual rental rate should apply).

4.      Accordingly, Debtors must pay rent (and real estate taxes) if they wish to preserve the ability to assume the Lease, and Parkview must fund those payments in accordance with the Supplemental DIP Budget.  Nevertheless, in the present Motion, Landlord does not seek ownership or direct payment of the unpaid rent.  Instead, Landlord requests that this Court exercise its inherent

2

authority to ensure that funds will indeed be available—and the Supplemental DIP Budget will be given effect—if and when the Court confirms the Debtors' obligation to pay rent and real estate taxes.

## ARGUMENT

5.      Debtors are engaging in a classic bait-and-switch following their assurances that they would pay rent through August. Debtors told this Court that rent was a necessary expense to maintain and operate the property. *See* April 21, 2026 Hr'g Tr. 91:13-92:2 ("of the roughly $11 million in a supplemental budget for the months of May through August . . . ***$2,926,672 is for ground rent being paid to MSP. . . . All necessary expenses to maintain and operate the property.***") (Gordon) (emphasis added).

6.      The budget presented to (and approved by) the Court reflected that all Base Rent would be funded by the DIP Loan through August. *Notice of Filing of Further Amended Budget Related to the Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order*, at Ex. A [D.I. 430] (the "Supplemental DIP Budget"). The Supplemental DIP Budget did not include any reservation regarding payment of the Base Rent to Landlord.

7.      Debtors' DIP Motion represented that there would be no need to surcharge Parkview's DIP Collateral because all administrative expenses would be paid using proceeds of the DIP Loan. *See* DIP Motion, Ex. A [D.I. 56-1] at ¶ 47(a); *see also* DIP Order [D.I. 255] at ¶ 48(a). Debtors accordingly waived any right to surcharge the DIP Collateral (including the leasehold interest) pursuant to section 506(c) of the Bankruptcy Code. *See* DIP Motion [D.I. 56] at 15; *see also* DIP Order [D.I. 255] at 22–23. Consequently, the Court approved the DIP Motion. *See* DIP Order [D.I. 255].

3

8.      Now, apparently because Parkview is unable and/or unwilling to spend any more money on these cases or the project,[3] Debtors are deliberately declining to draw upon the DIP Loan to pay Base Rent and real estate taxes.  Serving the interests of Parkview only, Debtors are incurring administrative expenses which are at risk of going unpaid, even though the Supplemental DIP Budget provides that they *would* be paid using Parkview's DIP Loan.

9.      This Court has the ability pursuant to section 105(a) to compel the Debtors and Parkview to contribute their commitments under the DIP Order in escrow pending resolution of the Rent Motion.

10.      Debtors' assertion that the Motion inappropriately relies solely on section 105(a) of the Bankruptcy Code is a deliberate misinterpretation of Landlord's arguments because (1) Landlord clearly relies on section 105(a) *buttressing the Court's inherent authority* to interpret its own orders, and (2) Landlord expressly relied upon section 503 of the Bankruptcy Code as an additional statutory basis for relief.

11.      *First*, as Landlord has made clear, Debtors flouted the underpinnings of the DIP Order to Landlord's detriment and Landlord is within its right to seek to redress this wrong. Landlord's reliance on section 105 of the Bankruptcy Code is entirely appropriate because "[s]ection 105 gives the court broad power to take any action that is necessary or appropriate to enforce rules and prevent an abuse of the process." *In re NNN 400 Cap. Ctr. 16, LLC*, No. 16-12728 (JTD), 2019 WL 5073844, at *2 (Bankr. D. Del. Oct. 9, 2019) (citing 11 U.S.C. 105(a)). Section 105(a) buttresses and reinforces a court's inherent authority. *See Abeinsa Holding, Inc*, No. 16-10790 (KJC), 2019 WL 647032, at *3 (Bankr. D. Del. Feb. 14, 2019) ("The United States

---

[3] Landlord has issued discovery requests and subpoenas to Debtors and Parkview in advance of the Rent Motion evidentiary hearing, which will confirm Landlord's understanding that Parkview is in financial distress.

Supreme Court also has recognized that a bankruptcy court 'plainly [has] jurisdiction to interpret and enforce its own prior orders.'") (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195, 2205, 174 L.Ed.2d 99 (2009)); *In re Continental Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders.").

12.     Section 105(a) of the Bankruptcy Code is purposely broad and permits "all forms of orders including those that award monetary relief." *NNN 400 Cap. Ctr. 16, LLC*, 2019 WL 5073844, at *2.

13.     Debtors' refusal to pay rent and real estate taxes contravenes the DIP Order. The Debtors sought DIP financing based on a particular budget that involved the payment of rent and real estate taxes. At the time, Debtors gave no indication that rent or taxes would not be paid—and in fact, Debtors denied such a scenario on the record. *See* April 21, 2026 Hr'g Tr. 91:13-92:2. The Court approved the DIP Order and Supplemental DIP Budget based on Debtors' representations. Nevertheless, and without seeking relief from the Court, Debtors are unilaterally refusing to adhere to the approved Supplemental DIP Budget.

14.     Given this history, the Court would be well within the scope of its inherent authority to compel the Debtors to draw upon the DIP Loan and escrow proceeds. Doing so would provide assurance that the Court's approval of the Supplemental DIP Budget will be given effect, and that funds will be available to pay the administrative expenses identified in the Supplemental DIP Budget (including rent and real estate taxes).

15.     *Second*, Landlord plainly stated that, in addition to section 105, section 503 of the Bankruptcy Code is an additional statutory basis for relief. Motion at ¶ 7 (stating that the "statutory basis for the relief requested herein are sections 105 and 503 of the Bankruptcy Code"). Because

#25003234v1

the Motion did not seek *payment of* an administrative expense, Landlord did not burden the Court with extensive argument regarding the law surrounding section 503 of the Bankruptcy Code. Rather, Landlord correctly identified that the escrow of funds is limited relief that is "necessary or appropriate" to allow Landlord to recover when it ultimately prevails under the Rent Motion.

16.    Debtors' objection accuses Landlord of seeking prejudgment relief on the Rent Motion. Not so. This Motion asks that the Court give effect to an operative order—the Court-approved Supplemental DIP Budget—while the Court considers the Rent Motion, and to prevent Debtors and Parkview from shifting substantial credit risk onto Landlord in the intervening time.[4]

17.    Debtors' argument that Landlord is making an "end run" or seeking a prejudgment remedy is ironic in the extreme. In their recharacterization action, the Debtors (and Parkview) hope to reduce or eliminate the obligation to pay rent.  Following dismissal of the initial complaint, Debtors treated themselves to the very relief they sought in the recharacterization action: liberation from their rent obligations.

18.    Debtors' failure to pay real property taxes raises further questions of Parkview and Debtors' commitment to this project.[5] In prior hearings, Landlord expressed concern about Parkview's wherewithal and Parkview and Debtors' commitment to the project. That concern should appear increasingly well-founded given the status of these cases.  The Debtors have *still*

---

[4] In their Objection, Debtors take the position that they have already rebutted the presumption that the Ground Lease contract rate is the market rent rate.  This is false.  While Debtors may wish for an "illusory truth effect" to take hold, they cannot make something true by simply repeating it over and over.  The reality is that Debtors have plainly *not* rebutted that presumption, as Landlord will demonstrate in conjunction with its presentation concerning the (meritless) Rent Motion. "The contract rate is presumed to be the fair market value unless the presumption is rebutted. Accordingly, [debtor] has the burden of showing why the contract rate was not the fair market value for the rental of the Premises." *In re DVI, Inc.*, 308 B.R. 703, 707–08 (Bankr. D. Del. 2004).

[5] Debtors' argument with respect to the refusal to pay taxes is irrational. Debtors are responsible for paying taxes under the Ground Lease, and if the Ground Lease were recharacterized and Debtors owned the property in fee simple, they would *still* be obligated to pay such taxes.

#25003234v1

not raised third-party capital to carry and complete the project.  Nor have the Debtors achieved a cure agreement or obtained relief from the stop work orders, even though they testified that they would achieve these things by June 2026.  *See* April 21, 2026 Hr'g Tr. 20:12-23. With their non-payment of real estate taxes, it appears they are further jeopardizing any possible cure agreement with the City of New York.

19.     Debtors predictably deny that their refusal to pay rent is attributable to an inability to pay administrative expenses. If their denials are credible, then there should be no prejudice to placing funds in escrow pending resolution of the Rent Motion.  Debtors' Objection is silent on this issue.

20.     Accordingly, the Court should exercise its discretion and compel Debtors to draw upon Parkview's DIP Loan and deposit all budgeted rent payments to an escrow account in order to give assurance to the Court and Landlord that the Supplemental DIP Order is given effect while the Court considers the Rent Motion. Such an order would offer temporary protection to Landlord's "unusually vulnerable position" of assuming credit risk during the pendency of the Rent Motion. *See In re Gussie Naomi Babbs*, 265 B.R. 35, 38 (Bankr. S.D.N.Y. 2001) (quoting *In re Telesphere Comms., Inc.*, 148 B.R. 525, 529 (Bankr. N.D. Ill. 1992) ("Unlike other creditors, both residential and nonresidential lessors are in an unusually vulnerable position, subject to becoming 'involuntary extender [s] of unsecured credit' during the post-petition, pre-rejection period.").

## CONCLUSION

For the foregoing reasons, Ground Lessor respectfully requests that the Court enter an order compelling Debtors to draw upon the DIP Loan and hold in escrow Base Rent payments due in June 2026, July 2026, and August 2026, and real estate taxes that were due July 1, 2026 until this Court resolves the Rent Motion, and granting such other and further relief as is just and proper.

7

#25003234v1

Dated: July 13, 2026
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
     mcguire@lrclaw.com
     dute@lrclaw.com
     venkateswaran@lrclaw.com

– and –

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212)883-1700
Facsimile: (212)883-8883
Email: kbrett@adstach.com
     poconnor@adstach.com

*Counsel to 356W58 Ground Lessor LLC*

8