# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - x

In re:

HUDSON 1701/1706, LLC, et al.,

Debtors.

- - - - - - - - - - - - - - - - - - - - x

HUDSON 1701/1706, LLC, a Delaware limited liability company, and HUDSON 1702, LLC, a Delaware limited liability company,

Plaintiffs,

Chapter 11
Case Nos. 25-11853 (KBO)

-against-

356W58 GROUND LESSOR, LLC, a Delaware limited liability company,

Defendant.

- - - - - - - - - - - - - - - - - - - - x

Videotaped Deposition of DANIEL MIZUKOVSKI, taken pursuant to notice, was held at the law offices of Boies Schiller Flexner LLP, 55 Hudson Yards, New York, New York, commencing September 2, 2026 at 1:10 p.m., on the above date, before Leslie Fagin, a Court Reporter and Notary Public in the State of New York.

- - -

A P P E A R A N C E S:

BOIES SCHILLER & FLEXNER LLP
Attorneys for Debtors and Debtors in Possession
55 Hudson Yards
New York, New York 10001
BY: MICHAEL FAY, ESQUIRE
ROMAN CARLITTI, ESQUIRE

ADLER & STACHENFELD LLP
Attorneys for Defendant 356W58 GROUND LESSOR, LLC
555 Madison Avenue
New York, New York 10022
BY: PATRICK O'CONNOR, ESQUIRE
KIRK BRETT, ESQUIRE (Via Zoom)

ALSO PRESENT:

MAX NIPON (Via Zoom)

ROBERT HUNKELE, Videographer
Magna Legal Services



THE VIDEOGRAPHER: Good afternoon. We are now on the record.
Today's date is September 2, 2026 and the time is 1:10.
This begins the video deposition of Daniel Mizukovski in the matter of Hudson 1701/1706, LLC, et al., v. 356W58 Ground Lessor, LLC.
Will each of the attorneys please identify themselves and state their interest in the case and the court reporter will swear the witness and we will begin.
MR. FAY: Michael Fay. I have my colleague, Roman Carlitti, here and we represent the debtors.
MR. O'CONNOR: Patrick O'Connor from Adler & Stachenfeld on behalf of the Ground Lessor, 356W58 Ground Lessor, LLC.
D A N I E L M I Z U K O V S K I, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:



D. Mizukovski
EXAMINATION BY
MR. FAY:
Q. Sir, could you state your name for the record?
A. Sure. Daniel Mizukovski.
Q. And where is your business address, Mr. Mizukovski?
A. 515 Madison Avenue, 32nd floor.
Q. Are you currently employed?
A. I am.
Q. Where are you employed?
A. At Wells Hill Partners.
Q. Are you a partner at Wells Hill Partners?
A. I am.
Q. How many partners are there?
A. Two.
Q. What kind of work does Wells Hill Partners do?
A. Real estate advisory and investment banking work.
Q. How long have you been at Wells Hill Partners?
A. Since 1998.



D. Mizukovski
Q. So it's been a while.
A. Uh-huh.
Q. The rest of your employment history is in your CV, correct?
A. It is. It's the only employment that I've had since college.
Q. Wow. You look way younger than I thought you were. Okay.
Who is your partner?
A. Peter Gevalt.
Q. Did you know him in college?
A. I did not. I interviewed for this position.
Q. I see, okay. Let's take a look at your report.
MR. FAY: Let's mark this as Exhibit M-1.
(Exhibit M-1, Report by Daniel Mizukovski, marked for identification, as of this date.)
Q. Who retained you in this matter, Mr. Mizukovski?
A. The lessor.
Q. And was it counsel?



MAGNA LEGAL SERVICES

D. Mizukovski
A. Counsel did.
Q. To the lessor?
A. Correct.
Q. Was it Mr. O'Connor?
A. Yes.
Q. When were you contacted?
A. Gosh, I don't recall exactly, probably July.
Q. July. What were you asked to do?
A. I was asked to determine what market ground rent should be for this property.
Q. When you say the property, you mean the former Hudson Hotel?
A. Correct.
Q. I will just call it the Hudson, is that okay?
A. Sure.
Q. And that's what your report does, correct?
A. Correct.
Q. If you could turn to pages 6 and 7 of your report.
A. Sure.



D. Mizukovski
Q. You list a number of ground leases that you have been involved with, correct?
A. Correct.
Q. And that would be over the last 28 years, right?
A. Correct.
Q. And I see two basic concepts. One is ground lease creation and the other is ground lease restructuring?
A. Uh-huh.
Q. Would you agree?
A. Yes, it includes those, absolutely.
Q. What is a ground lease creation?
A. Ground lease creation is creating a leased fee and leasehold interests from a fee simple piece of real estate.
Q. Okay. So in those situations, do you typically have a ground lessor that is purchasing the property for purposes of some real estate development?
A. Typically, it's an owner, an established owner already of a piece of real estate that is deciding to ground lease their real estate.



D. Mizukovski
Q. I see. Okay.
Have you represented previously any ground lessors who purchased property and leased it simultaneously?
A. I don't think so.
Q. So all of these ground leases would have been for owners who had owned the property for some period of time before the ground lease was either created or restructured, correct?
MR. O'CONNOR: Objection to form.
A. Typically.
Q. Typically. I see one property, 295 Fifth Avenue, you say leasehold financing.
What was that?
A. After the ground lease was created, the leasehold financed their interest.
Q. I see. So the leasehold, the lessee financed its interest in that property?
A. Correct.
Q. Did it result in any kind of development or construction project?
A. A construction project, it was a



D. Mizukovski
repositioning of an existing office building.
Q. I see, okay. For any of these properties on page 6 and 7 of your report, was the ground lease being created for purposes of the commencement of a construction project?
A. Yes.
Q. Which ones?
A. 5055 Hudson, 1245 Broadway, 400 West 113th Street, One Morningside Drive, Princeton University, Merwick Stanworth project, 7 Bryant Park, that would be it.
Q. So for each of those properties, prior to the ground lease either being created or restructured, was it just a piece of land?
A. It was.
Q. Undeveloped land?
A. I would have to go through the list. In some cases, undeveloped land. In other cases, there was a building that was being knocked down.
Q. So it was either undeveloped land or land that was going to be --



MAGNA LEGAL SERVICES

D. Mizukovski
A. Cleared for development.
Q. Cleared for development?
A. Uh-huh.
Q. Did any of these involve a project within an existing building?
A. What does that mean?
Q. Like the Hudson, where a project is a multifamily complex that's being built within an existing building?
A. Yes, in that a number of these, not the ones I just stated, were existing buildings that were repositioned in one way or another.
Q. I know, but I want to focus on construction, a new construction project. I was telling Roman, I had a brownstone in Brooklyn in a landmark area, it would have been way cheaper to knock it down, but I wasn't allowed to do that, so I had to build a house inside it. That's my question.
Did any of these projects involve building something inside an existing building?
MR. O'CONNOR: Objection to form.



D. Mizukovski
A. For example, 295 Fifth Avenue involved adding to an existing building.
Q. Okay. So there was like an addition added to that?
A. Correct.
Q. Anything else?
A. Not of the kind you've asked.
Q. I asked you about a ground lease creation.
How does ground lease restructuring differ from a ground lease creation?
A. A ground lease restructuring is, in the way I think about it, is a ground lease already exists on the property and that ground lease has changed in one way or another.
Q. Did any of these involve a fair market reset?
A. Yes.
Q. Were you involved in calculating that fair market reset?
A. Yes.
Q. What is the process for calculating a fair market reset typically?



D. Mizukovski
MR. O'CONNOR: Objection to form.
A. What does a fair market reset mean to you? I want to understand what your question is.
Q. Well, my understanding is that some ground leases, over a periodic intervals, reset according to a definition of fair market.
Do you agree with that?
A. Fair market of land, for example.
Q. Or fair market of a building, right?
A. Sure.
Q. So what is the typical process for calculating that?
A. The typical fair market value reset involves valuing land as vacant and unencumbered.
Based on its highest and best use, typically, you are talking about the classic fair market value reset.
Q. In this case, with respect to the Hudson, your client, the ground lessor does not own the land, correct?



D. Mizukovski
A. I don't understand that question.
Q. What does your client own, do you know?
A. My client owns several condominium interests.
Q. Correct. Three condominiums in a condominium building, right?
A. Yes.
Q. So the underlying land upon which the condominium sits, your client does not own, right?
MR. O'CONNOR: Objection to form.
A. A condominium owns its own undivided interest in land, so my client would own the land associated with those condominium interests.
Q. But your client doesn't own all of the condos?
A. Right.
Q. So how could it own the land?
A. It's an interest in the land. The condominium has an interest in the land.
Q. But the condominium association owns that land, not your client?

Page 14

D. Mizukovski
MR. O'CONNOR: Objection to form.
A. Okay.
Q. The other thing too about this property is you can't tear the building down, right?
A. You would know better than I.
Q. The SRO tenants make that impossible.
A. Okay.
Q. So just like me with my brownstone, you are stuck with this building, correct?
A. Okay.
Q. Have you visited the site?
A. I haven't been inside.
Q. But you've seen it from the outside?
A. Yes, I was inside when it was the Hudson Hotel.
Q. As was I. Those were the days.
It was quite the establishment, some 25 years ago maybe.
A. Right.
Q. I want to turn to page 9 of your report.

Page 15

D. Mizukovski
A. Okay.
Q. And I'm looking at paragraph 23. The assumptions underlying Mr. Eidson's hypothetical loan are, themselves, problematic, independent of the flawed methodology they support.
In paragraph 21 of the report, Mr. Eidson explains that it is an analysis that uses the $207 million Parkview loan amount, the original 2022 construction finance to calculate annual debt service, which annual service itself is based on purportedly market terms as of 2024. This is inconsistent with what should be the purpose of the Eidson report which is determine appropriate ground rent as of today, a metric that is not impacted, nor reflective of the level of leasehold financing, real or hypothetical.
Did I read that right?
A. Yes.
Q. How is it possible to look at this project, the Hudson project, without taking into consideration the construction loan?
A. The issue with this analysis and in

Page 16

D. Mizukovski
language that you read is that Mr. Eidson starts with the loan to determine the ground rent.
Q. Okay. But let's say he didn't start with it, at some point, it should be considered, correct?
A. Correct.
Q. Where do you consider it?
A. I consider it in the overall economics of the project of the situation.
Q. If I interpret your report correctly, you, you look at the original investment by the ground lessor, 178 million, you talk about return which is as often is the case, the risk-free rate plus some multiplier, some additional group of BPs, basis points, and then towards the end of your report, you look at potential NOI from the stabilized project and you say there is enough NOI to cover this, so there it is.
I don't see the Parkview loan ever coming into consideration during your analysis.
MR. O'CONNOR: Objection to form.

Page 17

D. Mizukovski
A. I do consider and I say it in this report, that on a secondary basis, as a secondary consideration, a loan should be considered.
I don't talk about the Parkview loan being considered, but I talk about financing on the leasehold being considered, something that the lessee needs to consider in the context of the overall set of economics.
Q. But in this transaction, in May of 2022, your client entered into three different contracts, all of which required that the debtors enter into the $207 million worth of construction loans with Parkview?
MR. O'CONNOR: Objection to form.
Q. Have you ever looked at the closing agreement?
A. No.
Q. It is actually a condition precedent to the closing that the debtors enter into the construction loans with Parkview.
Are you aware of that?


MAGNA LEGAL SERVICES

Page 18

D. Mizukovski
A. I am.
Q. In the ground lease, the ground lease specifically refers to the requirement that the debtors complete the construction project for which that construction loan was obtained, right?
A. Okay.
Q. And then there is also attached to the ground lease, a project budget that shows sources and uses, including a construction loan, including the ground lease and including some equity from the developer, right?
A. Okay.
Q. So this is a project that required the construction loan.
How can you not include the necessity of debt service under that loan in your rent analysis?
MR. O'CONNOR: Objection to form.
A. As I said, I consider that a loan would be required by the lessee to build this project.
What I said in this report is that

Page 19

D. Mizukovski
you don't start with the amount of the loan and back into what the market ground rent is, the loan, the lease is subordinate to the leased fee interest. Therefore, it is the ground rent that needs to be determined first and then, from there, you determine what can you finance, not the other way around.
Q. But that would be if we were entering into a new transaction right now, right?
A. I don't understand what you mean.
Q. That would be -- you are treating this transaction as if it is being created now?
A. I was asked what the market ground rent should be.
Q. But this transaction and this property has a history, it has four years of history, right?
A. Right.
Q. Including $207 million worth of construction, all financed by a loan from Parkview, right?
A. Right.

Page 20

D. Mizukovski
Q. And there is additional costs on top of that, right?
A. Right.
Q. Okay. There were stop work orders and there is SRO tenants who have to be placated and they have to agree, none of that matters?
MR. O'CONNOR: Objection to form.
A. Matters to what? I'm not understanding where you are going with this.
Q. The calculation of what a reasonable market rent would be.
A. You just described a transaction that occurred between parties sitting around a table. They agreed to an amount of ground rent. That amount of ground rent was based on a project that they were going to build, that then led to the amount of cash flow that can support, after ground rent, can support a loan and the determination was made as to what that loan should be.
So all the parties sat around a table and agreed to what was in the current contract, right, so I'm not sure what you are

Page 21

D. Mizukovski
asking me.
I'm telling you that financing is important to the overall framework of a ground lease and a new project that is to be built. I considered that. That's a vital -- that's a valid consideration from a lessee's perspective and I said as much so financing is necessary to think about.
Q. But you didn't -- in your calculation, you don't have any element that is debt service coverage, right?
A. I don't have a debt service coverage ratio because, again, that is not how market ground rent is determined.
Market ground rent is determined first and when you think about it in the context of ground leases and what the lessee is able to finance based on cash flow after payment of ground rent, you think about it more in the context of coverage ratio of cash flow NOI before ground rent to ground rent and that gives you a sense of what is financeable.
Debt service coverage ratio is


MAGNA LEGAL SERVICES

Page 22

D. Mizukovski
specific to a loan and a leasehold. You don't lead with that in this kind of a situation.
Q. But again, this is not a ground lease creation, this is an existing project, right?
A. Again, I don't know what you mean by that. A ground lease was created here.
Q. Four years ago, right?
A. Right.
Q. Okay. And things have changed in those four years?
A. Okay.
Q. Interest rates are up?
A. Okay.
Q. Significantly, right?
A. Yes.
Q. Stop work orders, right?
A. Okay.
Q. Okay. Delays in construction?
A. Okay.
Q. SRO tenants that weren't very happy for a while, right?
A. Okay.

Page 23

D. Mizukovski
Q. None of that matters to determining today a reasonable market ground rent?
A. Those are all lessee issues. Your comment about interest rates going up, sure, just like yield expectations on investment have gone up as well, from the ground lessor's perspective.
Q. But the ground lessor here required the construction loan, so how is it that the ground lessor can require a rent in 2026 that doesn't take into account any amount to pay existing debt service when that ground lessor required the loan?
MR. O'CONNOR: Objection to form.
A. As I said, the ground lessor and the ground lessee should think about a number of things. Financing should be thought about. Secondarily, not in determining ground rent.
You just described a situation where parties sat around a table and agreed on something, on a lease, a certain rent, a certain loan amount based on the cash flow after payment of that rent on a project that

Page 24

D. Mizukovski
was contemplated. From there, they determined the amount of the loan that they can get, so all the parties agreed on that.
I'm thinking about it in the context of today. What's the market ground rent for this type of a project today?
Q. And the 11 million number that you come up with is based solely on a calculation of the risk-free rate plus some additional amount to that times 178 million, right?
A. Yes, but I also say that when you think about everything in totality, what makes more sense in the context of this project and in thinking about things like financing for the leasehold, what makes sense is to just keep the contract rent in place.
Q. Okay. So then you say 8.75 million, we should just keep that?
A. Right.
Q. You deduct nothing for debt service?
A. I don't need to duct anything for debt service because I'm not coming up with what the loan amount is and then figuring out

Page 25

D. Mizukovski
the market ground rent.
I am figuring out the market ground rent and then saying, okay, lessee, you, based on whatever your project is that you are going to build and the cash flow that is remaining after you pay ground rent and your coverage ratio of cash flow to ground rent, you are going to be able to finance this.
There are going to be situations in which if you didn't have enough cash flow, it would be harder to finance, but in the context of the market ground rent that I think is appropriate and based on -- the business plan isn't done, but based on pro formas that I have seen, I think that that leasehold is financeable.
Q. Okay. But there is already financing and it's financing that your client required?
A. But that's neither here, nor there.
Q. You don't care about it?
A. It's not a function of me caring or not caring. I'm just telling you what market is.


MAGNA LEGAL SERVICES

D. Mizukovski

Q. So to you, determining a market rent now does not take into consideration what the lessee is going to have to pay in the future on the construction loans it used to build the Hudson project, right?

MR. O'CONNOR: Objection to form, asked and answered.

A. Construction loans in the future to build a future project, yes. Not the construction loan that was already taken out, but construction loans or a loan in the future to build whatever this project will be, yes.

As I have said before, I have thought about making sure that that leasehold is a financeable leasehold going forward.

Q. But what about the 207 million debt that the lessee has for the construction that has already taken place, that doesn't factor into market rent at all?

A. It does not.

MR. O'CONNOR: Objection to form, asked and answered.

Q. I just want to hear that one more



D. Mizukovski

time. The $207 million construction loan that was entered into in May of 2022 does not factor into the determination of market rent now in 2026, is that your testimony?

MR. O'CONNOR: Objection to form, asked and answered.

A. I don't know whether...

Q. You can answer.

MR. O'CONNOR: You can answer.

A. Not the $207 million loan, but construction financing in the future, new construction financing, I have thought about that.

Q. I want you to answer my question, okay?

My question is, the $207 million in construction loans that the lessee obtained from Parkview, it is your testimony that that does not come into play, is not a consideration in the determination of market rent for the Hudson today, correct?

MR. O'CONNOR: Objection to form, asked and answered.

And please let the witness finish



D. Mizukovski

his answer before asking another question.

A. Correct.

Q. Okay. Let's take a look at paragraphs 36 and 37 of your report.

So if I understand your approach to calculating a market rent, the first thing you did is basically set forth in paragraph 34, right, you took the ground lessor's investment and then you applied a yield to it which comes to 6.25 percent and then you come to a ground rent of 11,125,000 annually, correct?

A. Correct.

Q. Then this is your point, then you go on to say in the continuation of the paragraph on page 14 that, let's just stay with the current contract rent of 8,750,000, right?

A. Correct.

Q. So the factors in your calculation are the landlord's original investment, the treasury rate plus an applicable risk base spread which gives you a ground rent of



D. Mizukovski

11.125 million and then the last thing you considered is the actual ground lease itself and you say it has a contract rate of 8.75 million and let's stick with that, right?

A. Correct.

Q. No mention of the Parkview loans, no mention of anything else, right?

A. Correct.

Q. No mention of any of the costs needed to finish the project, right?

MR. O'CONNOR: Objection to form.

A. Correct.

Q. Then beginning at paragraph 36, you start considering what kinds of monies can this property generate, right?

A. Correct.

Q. NOI, net operating income, right?

A. Uh-huh.

Q. You refer to some pro formas.

Pro formas is a way of referring to projections, right?

A. Right.

Q. You refer to some pro formas between 2022 and 2024 that projected NOI,



MAGNA LEGAL SERVICES

Page 30

D. Mizukovski
annual NOI of 23.3 to 31.6 million, right?
A. Right.
Q. Then you refer to an appraisal that was commissioned by your client, right?
A. Right.
Q. In December of 2025?
A. Right.
Q. And that projects an annual NOI of 15 million, right?
A. Right.
Q. Then you say, Given this continued uncertainty as to the tenant's business plan and the resulting economics of the leasehold, I have used approximately the midpoint of this range of stabilized NOI figures for purposes of the coverage ratio analysis that follows, right?
A. Right.
Q. Have you read the National Valuation Consultant Appraisal?
A. I have.
Q. That's based on the current actual plan for the Hudson, right?
A. I don't think so.

Page 31

D. Mizukovski
Q. It refers to the build-out of a multi-apartment complex with 28 percent of the leasable real estate being used for below-market apartments, right?
A. I said I don't think so because I'm under the impression that there is no business plan that's been set.
Q. Okay. Who told you that?
A. Counsel.
Q. There was a hearing in April in this case to determine whether this building met the definition of a residential leased property versus a nonresidential leased property.
Have you reviewed anything from that hearing?
A. I have reviewed some material. I don't know whether it was from that hearing.
Q. Two witnesses testified at that hearing, Abe Kohn from Parkview and Glenn Brill from FTI.
Have you read their testimony?
A. No, I'm not familiar with that.
Q. Did you read the judge's ruling

Page 32

D. Mizukovski
with respect to the property after that testimony?
A. I don't believe so.
Q. For example, you say in paragraph 37 that your midpoint is consistent with a pro forma from August 2024 which projects a stabilized NOI of approximately 23 million for a mixed use development comprising 61 hotel rooms and 140 affordable residential units and 242 market rate residential units, right?
A. Right.
Q. There is not going to be any hotel rooms in this project, right?
MR. O'CONNOR: Objection to form.
A. I'm not aware of what the business plan is.
Q. All the components of a hotel have been ripped out of the building, right?
A. I'm not aware of that.
Q. But that would change your analysis, wouldn't it? If it turns out that NVC's estimate of 15 million is the actual reasonable NOI that can be generated from

Page 33

D. Mizukovski
this property upon stabilization, that would change your analysis, wouldn't it?
MR. O'CONNOR: Objection to form.
A. I would definitely have to consider that.
Q. You've said a couple of times, you figure out the rent first, right?
A. Right.
Q. Then you have to figure out what the lessee is capable of paying, right?
A. Right.
Q. And in a project like this, that will be whatever the property can generate itself, right?
A. That is a consideration.
Q. And if after paying the rent and paying all other costs associated with the property, the lessee has negative cash flow, the deal is not going to get done, right?
A. What deal are you referring to?
Q. The ground lease. If we look at this as a new project?
A. Uh-huh, right.
Q. If after paying what the ground


MAGNA LEGAL SERVICES

D. Mizukovski
lessor says it wants for rent and all other projected costs for the property, cash flow is negative, the deal is not going to get done, right?
MR. O'CONNOR: Objection to form.
A. Cash flow is negative for how long?
Q. Forever.
A. Well, of course not.
Q. Okay, right. You cite to Safe Hold a number of times in your report, right?
A. Right.
Q. Safe Hold is a publicly traded institutional ground lease enterprise, correct?
A. Right.
Q. One of the things and you cite to page 50 of their annual report and one of the things that Safe Hold says there is that increased interest rates, inflation and competition could result in Safe Hold not doing deals, right?
MR. O'CONNOR: Objection to form.
A. Okay.
Q. Right. So if I want a rent that is



D. Mizukovski
not economically feasible for a project, the project is not going to get done on those terms, right?
A. Are you creating a hypothetical?
Q. Yes. And you are an expert. You have to answer that.
A. Okay. I just want to be clear what you are asking.
Q. Yes.
A. Repeat your question again.
Q. If I'm looking at a deal, I'm considering doing a ground lease and the ground lessor tells me what the rent is and then I figure out all the other costs, construction loans, everything else I have to do, and I look at projected NOI and I say, wow, I'm going to be cash negative, I'm not going to do the deal, right?
A. That's right.
Q. Okay. Right. So the ground lessor can want a rent, but if it's not economically feasible, given the particulars of a certain project, the ground lessor is not going to get that rent?



D. Mizukovski
A. You are talking about a hypothetical. You are just isolating one thing. You have to look at the whole thing so you have to rethink all of it.
It's not just a matter of is this deal going to get done or not because there is negative cash flow. Of course, if a project has negative cash flow indefinitely, a deal doesn't get done with anybody, but you have to think about what are the actual facts of the situation and you have to think about it from all different sides.
Q. Well, you say you have to think about everything, but you are not thinking about preexisting obligations under the construction loan, you are not thinking about that?
A. Because that's not how market ground rent is determined.
Q. That's what you say, right, that's what you say. You say market ground rent doesn't look at all those costs that were incurred in order to actually get the property to the point where it could generate



D. Mizukovski
any NOI, right?
MR. O'CONNOR: Objection to form.
A. Market ground rent looks forward to what can this -- what would this project look like, what can this project support by way of a loan and then that is the loan that this project will have to get with the balance of the costs being funded with equity.
Q. Let's say the project was complete. Let say it was complete and stabilized and by the time it was complete and stabilized, the lessee had spent 280 million to get it done. Okay.
So now we are trying to figure out an appropriate rent under the ground lease. That 280 million, you don't even think about?
MR. O'CONNOR: Objection to form.
A. Well, I don't understand that hypothetical because the lessee wouldn't have spent $280 million without knowing what it was getting into, so it would know what the ground rent is under that framework because you just created a capital structure of $280 million, so presumably there is a loan



MAGNA LEGAL SERVICES

D. Mizukovski

component and there is an equity funding and that's what pays for the entirety of the costs.

It didn't, all of a sudden, wind up spending $280 million, not knowing what his ground rent obligation was. He created this capital stack based on the ground rent obligation.

Q. And sometimes things don't go the way they are supposed to go, right?

A. Right.

Q. So four years into a project, things may be very different, right?

A. Right.

Q. So five years, let's say the project was supposed to be done in three years, it takes five years?

A. Okay.

Q. It's supposed to be done 200 million, it took 280 million.

A. Okay.

Q. Five years in, we are done. NOI was supposed to be 30 million, it's 15 million.



D. Mizukovski

A. Okay.

Q. So now, five years in, we have 280 million in sunk construction costs, we have 15 million in projected NOI. That 280 million it took us to get there, to get that 15 million, we can just chop that out of the analysis?

MR. O'CONNOR: Objection to form.

A. That's a risk the lessee takes. The lessee is a developer and that's a risk every lessee in the market takes.

If their project goes the other way, that's their risk, hence, why the leased fee interest is senior to the leasehold interest.

Q. And that happens even where the lessor required that expenditure?

A. Of course.

Q. And that happens even though the lessor's only hope of collecting its rent is from the project that all that money went to building?

MR. O'CONNOR: Objection to form.

A. That is how a ground lease works.



D. Mizukovski

Q. Did you take into consideration the possibility that the ground lessor overpaid for these three condominium units?

MR. O'CONNOR: Objection to form.

A. I didn't take into consideration that they overpaid. I took into consideration what they invest in.

Q. That is not my point.

My point is, did they invest too much?

A. I don't know the answer to that.

Q. And did you take into consideration whether they invested too much, both in 2022 and with hindsight today, in 2026?

MR. O'CONNOR: Objection to form.

A. I don't know what that means. What do you mean in 2022 and in 2026?

Q. Looking back -- let's try this. Did you analyze whether $178 million was too much for the three condominium units as of May of 2022?

A. I did not.

Q. Did you analyze whether 178 million for the three condominium units was too much



D. Mizukovski

as of August of 2026?

A. I don't know whether it is or it isn't too much.

Q. Looking back at your paragraph 34, your calculation involves two numbers, right, the 178 million and then a return of 6.25 percent, right?

A. Right.

Q. Either one of those numbers could change your analysis, right? If you decided you wanted a different return, either higher or lower or if the market value of the property was either greater or less than 178 million, right?

A. Yes.

Q. If you wanted to determine, as of May 2022, what was the value of the three condominium units, what would you do?

A. Meaning, what is the -- what was the value in the context of this project that was created in 2022?

Q. Yes.

A. I would analyze what the value of the land, the land and building, the real



MAGNA LEGAL SERVICES

D. Mizukovski

estate is at the time. I would analyze the -- what's the yield in the market, the yield expectations on the value of that real estate. I would look at the pro forma for the project and I think those would really be the ways in which I would think about the appropriate ground rent.

Q. I'm not asking for ground rent. I'm asking about the value of what was purchased, the actual condominium units.

How would you go about valuing those three units?

A. The three, but again, you are asking me -- just please clarify. The value for whom under what -- in what context? The value of the fee simple condominium units, the value of the leased fee position that was created, the value of the leasehold position? What are you asking me?

Q. The value of what the ground lessor purchased from Cain International, the three units, no development, no nothing, just the three units.

A. But they were purchased under -- my



D. Mizukovski

understanding was that they were purchased under the premise that they would be ground leased, is that correct?

Q. Correct.

A. So again, it's what I said. We need to think about the value of the real estate itself, the yield, the market evaluated on this kind of an investment, the project and the economics of the project and then what the resulting ground rent would be because you need to pro forma the ground rent out for whatever the term of this ground lease is that was the basis of the investment and then you can do a discounted cash flow analysis.

Q. And that discounted cash flow analysis would be derivative of the NOI that would be generated by the project, right?

A. It would be derivative of all the things I said and that includes what I said was what the project was and what the pro forma for the project was. It's a derivative of all of it because it's a discounted cash flow of the ground rent stream which you can



D. Mizukovski

take all the way out for 99 years or you can take it out for five years, 10 years and then cap it and apply a cap rate to the ground rent and come up with a residential interest which you then discount back, so there are a few ways to do it.

Q. Right. But that ground rent analysis is meaningless if the ground rent can't be paid, right?

A. Of course, you have to think about the pro forma of the project.

Q. So you have to think about the monies that the project would generate in this case upon stabilization in order for your DCF analysis to have any value?

A. Yes.

MR. O'CONNOR: Would now be a good time to take a break?

THE VIDEOGRAPHER: We are going off the record. The time is 2:06.

(Recess.)

THE VIDEOGRAPHER: We are back on the record. The time is 2:19.

MR. FAY: We are done. Thank you.



D. Mizukovski

THE VIDEOGRAPHER: This concludes our deposition. The time is 2:19.

(Time noted: 2:19 p.m.)



MAGNA LEGAL SERVICES

---

INDEX

---


DANIEL MIZUKOVSKI PAGE
By Mr. Fay 4


---

EXHIBIT

---


EXHIBIT PAGE
Exhibit M-1 Report by Daniel Mizukovski 5




---

DEPOSITION SUPPORT INDEX

---

Request for Production of Documents
Page Line Page Line Page Line
None

---

Stipulations
Page Line Page Line Page Line
None

---

Questions Marked
Page Line Page Line Page Line
None

---

To Be Filled In
Page Line Page Line Page Line
None

---



CERTIFICATE

I HEREBY CERTIFY that the witness, DANIEL MIZUKOVSKI, was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

______________________________
Leslie Fagin,
Registered Professional Reporter
Dated: September 2, 2026

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)



ACKNOWLEDGMENT OF DEPONENT

I, , do hereby certify that I have read the foregoing pages, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

DANIEL MIZUKOVSKI DATE

Subscribed and sworn to before me this day of , 2026.

My commission expires:

Notary Public



MAGNA LEGAL SERVICES

------
ERRATA
------

PAGE LINE CHANGE

**A**

**Abe**
31:21
**able**
21:19 25:9
**about**
11:9,14 12:21 14:4 16:15 17:6,7 21:9 21:17,20 23:5,17,19 24:5,13,15 25:22 26:16,18 27:13 36:2 36:11,12,15,16,17 37:17 42:7,10,12 43:7 44:11,13
**above**
1:20
**absolutely**
7:13
**according**
12:8
**account**
23:12
**ACKNOWLEDG...**
49:2
**actual**
29:3 30:23 32:24 36:11 42:11
**actually**
17:21 36:24
**added**
11:5
**adding**
11:3
**addition**
11:5
**additional**
16:17 20:2 24:10
**address**
4:7
**Adler**
2:9 3:19
**advisory**
4:21
**affordable**
32:10
**after**
8:17 20:20 21:19 23:25 25:7 32:2 33:17,25
**afternoon**
3:2
**again**
21:14 22:5,8 35:11 42:14 43:6
**against**
1:12
**ago**
14:22 22:10
**agree**
7:12 12:10 20:7
**agreed**
20:16,24 23:22 24:4
**agreement**
17:19
**al**
1:6 3:8
**all**
8:7 13:18 17:14 19:23 20:23 23:4 24:4 26:21 32:19 33:18 34:2 35:15 36:5,13,23 38:5 39:22 43:20,24 44:2
**allowed**
10:20
**already**
7:23 11:15 25:18 26:11,20
**also**
2:13 18:9 24:12
**am**
4:11,16 18:2 25:3
**amount**
15:10 19:2 20:16,17 20:19 23:12,24 24:3 24:11,25
**an**
7:22,22 9:2 10:6,10 10:23 11:3,4 13:22 13:23 15:9 20:16 22:6 28:24 30:4,9 35:6 37:16 38:2 43:9
**analysis**
15:9,25 16:24 18:20 30:17 32:23 33:3 39:8 41:11 43:16,18 44:9,16
**analyze**
40:20,24 41:24 42:2
**and/or**
48:12
**annual**
15:12,12 30:2,9 34:18
**annually**
28:13
**another**
10:14 11:17 28:2
**answer**
27:9,10,15 28:2 35:7 40:12
**answered**
26:8,24 27:7,24
**answers**
49:4
**any**
8:3,23 9:3 10:5,22 11:18 21:11 23:12 29:10 32:14 37:2 44:16 48:11,11 49:6
**anybody**
36:10
**anything**
11:7 24:23 29:8 31:16
**apartments**
31:5
**applicable**
28:24
**applied**
28:11
**apply**
44:4 48:11
**appraisal**
30:4,21
**approach**
28:7
**appropriate**
15:16 25:14 37:16 42:8
**approximately**
30:15 32:8
**April**
31:11
**are**
3:3 4:10,12,14,17 12:21 14:12 15:5 17:25 19:13 20:11 20:25 22:15 23:4 25:6,9,10 28:23 33:21 35:5,6,9 36:2 36:3,11,15,17 37:15 38:11,23 42:14,20 44:6,20,23,25
**area**
10:18
**around**
19:8 20:15,23 23:22
**as**
3:22,25 5:17,21 12:18 14:20 15:14 15:17 16:15 17:3 18:22 19:14 20:21 21:8 23:7,16 26:15 30:13 33:23 40:21 41:2,17
**asked**
6:10,11 11:8,9 19:16 26:8,24 27:7,24
**asking**
21:2 28:2 35:9 42:9 42:10,15,20
**associated**
13:16 33:18
**association**
13:24
**assumptions**
15:4
**at**

1:19,20 4:13,14,23 5:15 15:3,22 16:6 16:13,19 17:18 26:21 28:5 29:14 31:20 33:22 35:12 35:17 36:4,23 41:5 42:2,5
**attached**
18:9 49:6
**attorneys**
2:4,9 3:10
**August**
32:7 41:2
**Avenue**
2:10 4:9 8:15 11:2
**aware**
17:25 32:17,21

**B**

**B**
46:10
**back**
19:3 40:19 41:5 44:6 44:23
**balance**
37:8
**banking**
4:22
**base**
28:24
**based**
12:20 15:13 20:17 21:19 23:24 24:9 25:5,14,15 30:23 38:8
**basic**
7:8
**basically**
28:9
**basis**
16:18 17:3 43:14
**be**
6:12 7:5 9:13,25 15:15 16:6 17:4 18:23 19:6,9,13,17 20:6,13,22 21:5 23:18 25:9,10,12 26:14 32:14,25 33:14 35:8,18 38:14 38:17,20,24 42:6 43:3,11,18,19,20 44:10,18 47:13
**because**
21:14 24:24 31:6 36:7,19 37:20,23 43:12,24
**been**
3:23 4:23 5:2 7:3 8:8 10:19 14:15 31:8 32:20
**before**
1:21 8:9 21:22 26:15 28:2 49:11
**begin**
3:14
**beginning**
29:14
**begins**
3:6
**behalf**
3:19
**being**
9:5,15,23 10:9 17:7,8 19:14 31:4 37:9
**believe**
32:4
**below-market**
31:5
**best**
12:20
**better**
14:7
**between**
20:15 29:25
**Boies**
1:19 2:4
**both**
40:14
**BPs**
16:17
**break**
44:19
**BRETT**
2:12
**Brill**
31:22
**Broadway**
9:10
**Brooklyn**
10:18
**brownstone**
10:17 14:11
**Bryant**
9:13
**budget**
18:10
**build**
10:20 18:23 20:18 25:6 26:6,10,13
**building**
9:2,22 10:6,10,23,24 11:3 12:12 13:8 14:5,12 31:12 32:20 39:23 41:25
**buildings**
10:13
**build-out**
31:2
**built**
10:9 21:6
**business**
4:7 25:15 30:13 31:8 32:17
**but**
10:15,19 13:18,24 14:16 16:5 17:7,12 19:9,18 21:10 22:5 23:9 24:12 25:12,15 25:18,21 26:12,18 27:11 32:22 35:22 36:10,15 42:14,25 44:8
**by**
2:6,11 3:23 4:2 5:19 16:14 18:23 19:23 22:9 30:5 37:6,11 43:19 46:7,13 48:4 48:5,11 49:4

**C**

**C**
2:2
**Cain**
42:22
**calculate**
15:12
**calculating**
11:21,24 12:16 28:8
**calculation**
20:12 21:11 24:9 28:22 41:6
**call**
6:17
**called**
3:22
**can**
18:18 19:7 20:20,20 23:11 24:4 27:9,10 29:15 32:25 33:14 35:22 37:5,6 39:7 43:15,25 44:2
**can't**
14:5 44:10
**cap**
44:4,4
**capable**
33:11
**capital**
37:24 38:8
**care**
25:22
**caring**
25:23,24
**Carlitti**
2:7 3:16
**case**
1:11 3:12 12:23 16:16 31:12 44:15
**cases**
9:21,22

**cash**
20:19 21:19,21 23:24 25:6,8,11 33:19 34:3,7 35:18 36:8,9 43:15,17,24
**certain**
23:23,24 35:23
**CERTIFICATE**
48:2
**certification**
48:10
**certify**
48:3 49:3
**certifying**
48:12
**change**
32:22 33:3 41:11 50:3
**changed**
11:16 22:12
**changes**
49:5
**Chapter**
1:10
**cheaper**
10:19
**chop**
39:7
**cite**
34:10,17
**clarify**
42:15
**classic**
12:21
**clear**
35:8
**Cleared**
10:2,3
**client**
12:24 13:3,5,11,15 13:18,25 17:13 25:19 30:5
**closing**
17:18,22
**colleague**
3:16
**collecting**
39:21
**college**
5:7,12
**come**
24:9 27:20 28:12 44:5
**comes**
28:12
**coming**
16:23 24:24
**commencement**
9:6
**commencing**
1:20
**comment**
23:5
**commission**
49:12
**commissioned**
30:5
**company**
1:9,10,13
**competition**
34:21
**complete**
18:5 37:10,11,12
**complex**
10:9 31:3
**component**
38:2
**components**
32:19
**comprising**
32:9
**concepts**
7:8
**concludes**
45:2
**condition**
17:21
**condominium**
13:5,8,11,14,17,23 13:24 40:4,21,25 41:19 42:11,17
**condominiums**
13:7
**condos**
13:19
**consider**
16:9,10 17:2,9 18:22 33:5
**consideration**
15:24 16:23 17:4 21:7 26:3 27:21 33:16 40:2,6,8,13
**considered**
16:7 17:5,7,8 21:6 29:3
**considering**
29:15 35:13
**consistent**
32:6
**construction**
8:24,25 9:7 10:16,16 15:11,24 17:16,23 18:5,6,11,17 19:23 22:21 23:10 26:5,9 26:11,12,19 27:2,12 27:13,18 35:16 36:17 39:4
**Consultant**
30:21
**contacted**
6:7
**contemplated**
24:2
**context**
17:10 21:18,21 24:6 24:14 25:13 41:21 42:16
**continuation**
28:17
**continued**
30:12
**contract**
20:25 24:17 28:19 29:4
**contracts**
17:14
**control**
48:12
**correct**
5:5 6:4,16,21,22 7:3 7:4,7 8:11,22 11:6 12:25 13:7 14:12 16:7,8 27:22 28:4 28:14,15,21 29:6,9 29:13,17 34:15 43:4 43:5 49:4
**corrections**
49:5
**correctly**
16:13
**costs**
20:2 29:10 33:18 34:3 35:15 36:23 37:9 38:4 39:4
**could**
4:4 6:23 13:21 34:21 36:25 41:10
**counsel**
5:25 6:2 31:10
**couple**
33:7
**course**
34:9 36:8 39:19 44:11
**court**
1:2,21 3:12
**cover**
16:21
**coverage**
21:12,14,21,25 25:8 30:17
**created**
8:10,17 9:5,16 19:14 22:9 37:24 38:7 41:22 42:19
**creating**
7:15 35:5
**creation**
7:9,14,15 11:10,12 22:6

**current**
20:24 28:19 30:23
**currently**
4:10
**CV**
5:5

**D**

**D**
3:22 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:3
**Daniel**
1:18 3:7 4:6 5:19 46:6,13 48:4 49:8
**date**
1:20 3:4 5:21 49:8
**Dated**
48:7
**day**
49:11
**days**
14:20
**DCF**
44:16
**deal**
33:20,21 34:4 35:12 35:19 36:7,10
**deals**
34:22
**debt**
15:12 18:19 21:12,13 21:25 23:13 24:21 24:24 26:18
**debtors**
1:7 2:4,4 3:17 17:15 17:22 18:5
**December**
30:7
**decided**
41:11
**deciding**
7:24
**deduct**
24:21
**Defendant**
1:14 2:9
**definitely**
33:5
**definition**
12:8 31:13
**Delaware**
1:3,8,9,13
**Delays**
22:21
**DEPONENT**
49:2
**deposition**
1:18 3:6 45:3 47:3 48:4
**derivative**
43:18,20,23
**described**
20:14 23:21
**determination**
20:21 27:4,21
**determine**
6:11 15:16 16:3 19:7 31:12 41:17
**determined**
19:6 21:15,16 24:3 36:20
**determining**
23:2,19 26:2
**developer**
18:13 39:11
**development**
7:21 8:24 10:2,3 32:9 42:23
**did**
5:12,13 6:2 8:23 10:5 10:22 11:18 15:20 28:9 31:25 40:2,10 40:13,20,23,24
**didn't**
16:5 21:10 25:11 38:5 40:6
**differ**
11:12
**different**
17:14 36:13 38:14 41:12
**direct**
48:12
**discount**
44:6
**discounted**
43:15,17,24
**DISTRICT**
1:2,3
**do**
4:20 6:10 7:18 10:20 12:10 13:3 16:9 17:2 35:17,19 40:18 41:19 43:15 44:7 49:3
**Documents**
47:5
**does**
4:19 6:20 10:7 11:11 12:3,24 13:3,11 26:3,22 27:3,20 48:11
**doesn't**
13:18 23:12 26:20 36:10,23
**doing**
34:22 35:13
**done**
25:15 33:20 34:5 35:3 36:7,10 37:13 38:17,20,23 44:25
**don't**
6:8 8:6 13:2 16:22 17:6 19:2,12 21:11 21:13 22:3,8 24:23 25:22 27:8 30:25 31:6,19 32:4 37:17 37:19 38:10 40:12 40:17 41:3
**down**
9:23 10:19 14:5
**Drive**
9:11
**duct**
24:23
**duly**
3:23 48:4
**during**
16:23

**E**

**E**
2:2,2 3:22 46:3,10 50:2
**each**
3:10 9:14
**economically**
35:2,22
**economics**
16:11 17:11 30:14 43:10
**Eidson**
15:9,15 16:2
**Eidson's**
15:4
**either**
8:10 9:15,24 41:10 41:12,14
**element**
21:11
**else**
11:7 29:8 35:16
**employed**
4:10,12
**employment**
5:4,6
**end**
16:18
**enough**
16:21 25:11
**enter**

17:15,23
**entered**
17:13 27:3
**entering**
19:10
**enterprise**
34:14
**entirety**
38:3
**equity**
18:13 37:9 38:2
**Errata**
49:6
**ESQUIRE**
2:6,7,11,12
**established**
7:23
**establishment**
14:21
**estate**
4:21 7:17,21,24,25 31:4 42:2,5 43:8
**estimate**
32:24
**et**
1:6 3:8
**evaluated**
43:9
**even**
37:17 39:17,20
**ever**
16:22 17:18
**every**
39:12
**everything**
24:13 35:16 36:15
**exactly**
6:8
**EXAMINATION**
4:2
**examined**
3:24
**example**
11:2 12:11 32:5
**except**
49:5
**Exhibit**
5:18,19 46:12,13
**existing**
9:2 10:6,10,12,23 11:3 22:6 23:13
**exists**
11:15
**expectations**
23:6 42:4
**expenditure**
39:18
**expert**
35:6
**expires**
49:12
**explains**
15:9

**F**

**factor**
26:20 27:4
**factors**
28:22
**facts**
36:11
**Fagin**
1:21 48:6
**fair**
11:18,22,25 12:3,8 12:11,12,17,22
**familiar**
31:24
**Fay**
2:6 3:15,15 4:3 5:17 44:25 46:7
**feasible**
35:2,23
**fee**
7:16,16 19:5 39:15 42:17,18
**few**
44:7
**Fifth**
8:15 11:2
**figure**
33:8,10 35:15 37:15
**figures**
30:16
**figuring**
24:25 25:3
**Filled**
47:13
**finance**
15:11 19:8 21:19 25:9,12
**financeable**
21:24 25:17 26:17
**financed**
8:18,20 19:23
**financing**
8:15 15:19 17:8 21:3 21:8 23:18 24:16 25:19,19 27:12,13
**finish**
27:25 29:11
**first**
19:6 21:17 28:8 33:8
**five**
38:16,18,23 39:3 44:3
**flawed**
15:6
**Flexner**
1:19 2:4
**floor**
4:9
**flow**
20:19 21:19,22 23:24 25:6,8,11 33:19 34:3,7 36:8,9 43:15 43:17,25
**focus**
10:15
**follows**
3:25 30:18
**for**
1:3 2:4,9 4:4 5:13,20 6:12 7:20 8:8,9 9:3 9:5,14 10:2,3 11:2 11:24 12:11,15 18:6 22:24 24:7,16,21,23 26:19 27:22 30:16 30:24 31:4 32:5,9 34:2,3,7 35:2 38:3 40:4,21,25 42:5,9 42:16 43:13,23 44:2 44:3,15 47:5 49:5
**foregoing**
48:10 49:3
**Forever**
34:8
**form**
8:12 10:25 12:2 13:13 14:2 16:25 17:17 18:21 20:9 23:15 26:7,23 27:6 27:23 29:12 32:16 33:4 34:6,23 37:3 37:18 39:9,24 40:5 40:16 49:5
**forma**
32:7 42:5 43:12,23 44:12
**formas**
25:16 29:20,21,24
**former**
6:15
**forth**
28:9
**forward**
26:17 37:4
**four**
19:19 22:10,13 38:13
**framework**
21:4 37:23
**from**
3:19 7:16 11:12 14:16 16:19 18:13 19:7,23 21:7 23:7 24:2 27:19 31:16,19 31:21,22 32:7,25 36:13 39:22 42:22
**FTI**
31:22

**function**
25:23
**funded**
37:9
**funding**
38:2
**future**
26:5,9,10,13 27:12

**G**

**generate**
29:16 33:14 36:25 44:14
**generated**
32:25 43:19
**get**
24:4 33:20 34:4 35:3 35:25 36:7,10,24 37:8,13 39:6,6
**getting**
37:22
**Gevalt**
5:11
**given**
30:12 35:23 48:5 49:4
**gives**
21:23 28:25
**Glenn**
31:21
**go**
9:20 28:17 38:10,11 42:12
**goes**
39:13
**going**
9:25 20:11,18 23:5 25:6,9,10 26:4,17 32:14 33:20 34:4 35:3,18,19,24 36:7 44:20
**gone**
23:7
**good**
3:2 44:18
**Gosh**
6:8
**greater**
41:14
**ground**
1:13 2:9 3:9,20,20 6:12 7:2,9,10,14,15 7:19,24 8:4,7,10,17 9:5,15 11:9,11,12 11:13,14,16 12:7,24 15:16 16:3,14 18:3 18:3,10,12 19:3,6 19:16 20:16,17,20 21:5,15,16,18,20,22 21:22 22:5,9 23:3,7 23:9,11,13,16,17,20 24:6 25:2,3,7,8,13 28:10,13,25 29:3 33:22,25 34:14 35:13,14,21,24 36:20,22 37:4,16,23 38:7,8 39:25 40:3 42:8,9,21 43:3,11 43:12,13,25 44:4,8 44:9
**group**
16:17

**H**

**H**
46:10
**had**
5:7 8:8 10:17,20 37:13
**happens**
39:17,20
**happy**
22:23
**harder**
25:12
**has**
11:16 13:23 19:19,19 26:19,20 29:4 33:19 36:9
**have**
3:15 4:23 7:3,19 8:3 8:8 9:20 10:18 14:14 17:18 20:6,7 21:11,13 22:12 23:7 25:11,16 26:4,15,15 27:13 30:15,20,22 31:16,18,23 32:19 33:5,10 35:7,16 36:4,5,11,12,14 37:8,20 39:3,4 44:11,13,16 49:3
**haven't**
14:15
**having**
3:23
**he**
16:5 38:7
**hear**
26:25
**hearing**
31:11,17,19,21
**held**
1:19
**hence**
39:14
**here**
3:16 22:9 23:9 25:21
**hereby**
48:3 49:3
**higher**
41:12
**highest**
12:20
**Hill**
4:13,14,19,24
**him**
5:12
**hindsight**
40:15
**his**
28:2 38:6
**history**
5:4 19:19,20
**Hold**
34:10,13,19,21
**hope**
39:21
**hotel**
6:15 14:19 32:10,14 32:19
**house**
10:21
**how**
4:17,23 11:11 13:21 15:22 18:18 21:15 23:10 34:7 36:19 39:25 42:12
**Hudson**
1:6,8,9,19 2:5 3:8 6:15,17 9:10 10:8 12:24 14:19 15:23 26:6 27:22 30:24
**HUNKELE**
2:15
**hypothetical**
15:5,19 35:5 36:3 37:20

**I**

**identification**
5:20
**identify**
3:11
**if**
6:23 16:12 19:9,14 25:11 28:7 32:23 33:17,22,25 34:25 35:12,22 36:8 39:13 41:11,13,17 44:9 49:6
**impacted**
15:18
**important**
21:4
**impossible**
14:9
**impression**
31:7
**in**
1:2,5,21 2:4 3:7,12

5:5,12,22 7:18 8:20 8:23 9:21,21 10:11 10:13,17,18 11:13 11:16,21 12:23 13:7 13:15,22,23 15:8,25 16:10 17:2,10,12,12 18:3,19,25 20:24 21:10,17,21 22:3,12 22:21 23:11,19 24:5 24:13,14,15,17 25:10,12 26:4,9,12 27:3,5,12,17,21 28:9,17,22 30:7 31:11,11 32:5,15 33:13 34:11,21 36:24 38:17,23 39:3 39:4,5,12 40:8,14 40:15,18,18 41:21 41:22 42:3,7,16 44:14,15 47:13 49:5 49:6

**include**
18:18

**includes**
7:13 43:21

**including**
18:11,12,13 19:22

**income**
29:18

**inconsistent**
15:14

**increased**
34:20

**incurred**
36:24

**indefinitely**
36:9

**independent**
15:6

**INDEX**
47:3

**inflation**
34:20

**inside**
10:21,23 14:15,18

**institutional**
34:14

**interest**
3:12 8:18,20 13:15 13:22,23 19:5 22:15 23:5 34:20 39:15,16 44:5

**interests**
7:16 13:6,17

**International**
42:22

**interpret**
16:12

**intervals**
12:7

**interviewed**
5:13

**into**
15:24 16:23 17:13,15 17:23 19:3,10 23:12 26:3,21 27:3,4,20 37:22 38:13 40:2,6 40:7,13

**invest**
40:8,10

**invested**
40:14

**investment**
4:21 16:14 23:6 28:11,23 43:9,14

**involve**
10:5,22 11:18

**involved**
7:3 11:3,21

**involves**
12:18 41:6

**isn't**
25:15 41:4

**isolating**
36:3

**issue**
15:25

**issues**
23:4

**it**
5:6,25 6:5,17 7:13 8:5,23,25 9:13,16 9:18,24 10:18,19,21 11:14 13:21 14:16 14:18,21 15:9,22 16:6,6,9,10,21 17:2 17:21 19:5,14,19 21:17,20 23:10 24:5 25:11,22 26:5,22 27:19 28:11 29:4 31:2,19 32:23,23 33:3 34:2 36:5,13 36:25 37:11,12,13 37:21,22 38:5,18,21 39:6 41:3,3 43:20 43:24 44:3,4,7

**its**
8:20 12:20 13:14 39:21

**itself**
15:13 29:3 33:15 43:8

**it's**
5:2,6 7:22 13:22 25:19,23 35:22 36:6 38:20,24 43:6,23,24

**I'm**
15:3 20:10,25 21:3 24:5,24 25:24 31:6 31:24 32:17,21 35:12,12,18,18 42:9 42:10

**I've**
5:7

**J**

**judge's**
31:25

**July**
6:9,10

**just**
6:17 9:16 10:12 14:11 20:14 23:6,21 24:17,19 25:24 26:25 28:18 35:8 36:3,6 37:24 39:7 42:15,23

**K**

**K**
3:22,22

**KBO**
1:11

**keep**
24:17,19

**kind**
4:19 8:23 11:8 22:3 43:9

**kinds**
29:15

**KIRK**
2:12

**knock**
10:19

**knocked**
9:23

**know**
5:12 10:15 13:4 14:7 22:8 27:8 31:19 37:22 40:12,17 41:3

**knowing**
37:21 38:6

**Kohn**
31:21

**L**

**L**
3:22

**land**
9:17,19,21,24,25 12:11,18,25 13:10 13:15,16,21,22,23 13:25 41:25,25

**landlord's**
28:23

**landmark**
10:18

**language**
16:2

**last**

7:5 29:2
**law**
1:19
**lead**
22:3
**leasable**
31:4
**lease**
7:9,10,14,15,24 8:10 8:17 9:5,15 11:9,11 11:12,13,14,16 18:3 18:4,10,12 19:4 21:5 22:6,9 23:23 29:3 33:22 34:14 35:13 37:16 39:25 43:14
**leased**
7:16 8:5 19:5 31:13 31:14 39:14 42:18 43:4
**leasehold**
7:16 8:15,18,19 15:19 17:8 22:2 24:16 25:17 26:16 26:17 30:14 39:15 42:19
**leases**
7:2 8:7 12:7 21:18
**led**
20:19
**Legal**
1:24 2:16
**Leslie**
1:21 48:6
**less**
41:14
**lessee**
8:20 17:9 18:23 21:18 23:4,17 25:4 26:4,19 27:18 33:11 33:19 37:13,20 39:10,11,12
**lessee's**
21:7
**lessor**
1:13 2:9 3:9,20,20 5:24 6:3 7:19 12:24 16:14 23:9,11,13,16 34:2 35:14,21,24 39:18 40:3 42:21
**lessors**
8:4
**lessor's**
23:8 28:10 39:21
**let**
27:25 37:11
**let's**
5:15,17 16:5 28:5,18 29:5 37:10 38:16 40:19
**level**
15:18
**liability**
1:9,9,13
**like**
10:8 11:4 14:11 23:6 24:15 33:13 37:6
**limited**
1:9,9,13
**Line**
47:5,5,5,8,8,8,11,11 47:11,13,13,13 50:3
**list**
7:2 9:21
**LLC**
1:6,8,9,13 2:10 3:8,9 3:21
**LLP**
1:19 2:4,9
**loan**
15:5,10,24 16:3,22 17:4,7 18:6,12,17 18:19,22 19:2,4,23 20:21,22 22:2 23:10 23:14,24 24:3,25 26:11,12 27:2,11 36:17 37:7,7,25
**loans**
17:16,23 26:5,9,12 27:18 29:7 35:16
**long**
4:23 34:7
**look**
5:8,15 15:22 16:13 16:19 28:5 33:22 35:17 36:4,23 37:5 42:5
**looked**
17:18
**looking**
15:3 35:12 40:19 41:5
**looks**
37:4
**lower**
41:13

**M**

**M**
3:22
**made**
20:21
**Madison**
2:10 4:9
**Magna**
1:24 2:16
**make**
14:8
**makes**
24:14,16
**making**
26:16
**many**
4:17
**mark**
5:17
**marked**
5:20 47:10
**market**
6:12 11:19,22,25 12:3,9,11,12,17,22 15:13 19:3,16 20:13 21:15,16 23:3 24:6 25:2,3,13,24 26:2 26:21 27:4,21 28:8 32:11 36:19,22 37:4 39:12 41:13 42:3 43:8
**material**
31:18
**matter**
3:7 5:22 36:6
**matters**
20:8,10 23:2
**MAX**
2:14
**may**
17:12 27:3 38:14 40:22 41:18
**maybe**
14:22
**me**
14:11 21:2 25:23 35:14 42:15,20 48:4 49:4,11
**mean**
6:14 10:7 12:3 19:12 22:8 40:18
**Meaning**
41:20
**meaningless**
44:9
**means**
40:17 48:11
**mention**
29:7,8,10
**Merwick**
9:12
**met**
31:13
**methodology**
15:7
**metric**
15:17
**Michael**
2:6 3:15
**midpoint**
30:15 32:6
**million**
15:10 16:14 17:15

19:22 24:8,11,19 26:18 27:2,11,17 29:2,5 30:2,10 32:8 32:24 37:13,17,21 37:25 38:6,21,21,24 38:25 39:4,5,6,7 40:20,24 41:7,15
**mixed**
32:9
**Mizukovski**
1:18 3:7 4:1,6,8 5:1 5:20,23 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:6,14 48:4 49:8
**money**
39:22
**monies**
29:15 44:14
**more**
21:21 24:14 26:25
**Morningside**
9:11
**Mr**
3:15,18 4:3,8 5:17,23 6:5 8:12 10:25 12:2 13:13 14:2 15:4,8 16:2,25 17:17 18:21 20:9 23:15 26:7,23 27:6,10,23 29:12 32:16 33:4 34:6,23 37:3,18 39:9,24 40:5,16 44:18,25 46:7
**much**
21:8 40:11,14,21,25 41:4
**multifamily**
10:9
**multiplier**
16:17
**multi-apartment**
31:3
**my**
3:15 10:21 12:6 13:5 13:15 14:11 27:15 27:17 40:9,10 42:25 49:12
**M-1**
5:18,19 46:13

**N**

**N**
2:2 3:22 46:3
**name**
4:4
**National**
30:20
**necessary**
21:9
**necessity**
18:19
**need**
24:23 43:7,12
**needed**
29:11
**needs**
17:9 19:6
**negative**
33:19 34:4,7 35:18 36:8,9
**neither**
25:21
**net**
29:18
**new**
1:20,20,21 2:6,6,11 2:11 10:16 19:10 21:5 27:12 33:23
**NIPON**
2:14
**no**
17:20 29:7,8,10 31:7 31:24 42:23,23
**NOI**
16:19,21 21:22 29:18 29:25 30:2,9,16 32:8,25 35:17 37:2 38:23 39:5 43:18
**none**
20:7 23:2 47:6,9,11 47:14
**nonresidential**
31:14
**nor**
15:18 25:21
**Nos**
1:11
**not**
5:13 10:11 11:8 12:25 13:11,25 15:17 18:18 19:8 20:10,25 21:14 22:5 23:19 24:24 25:23 25:24 26:3,10,22 27:3,11,20,20 31:24 32:14,17,21 33:20 34:4,9,21 35:2,3,18 35:22,24 36:6,7,15 36:17,19 38:6 40:9 40:23 42:9 48:11
**Notary**
1:21 3:24 49:14
**noted**
45:4 49:6
**nothing**
24:21 42:23
**notice**
1:18
**now**
3:3 19:10,15 26:3 27:5 37:15 39:3 44:18
**number**
7:2 10:11 23:17 24:8 34:11
**numbers**
41:6,10
**NVC's**
32:24

**O**

**O**
3:22
**Objection**
8:12 10:25 12:2 13:13 14:2 16:25 17:17 18:21 20:9 23:15 26:7,23 27:6 27:23 29:12 32:16 33:4 34:6,23 37:3 37:18 39:9,24 40:5 40:16
**obligation**
38:7,9
**obligations**
36:16
**obtained**
18:7 27:18
**occurred**
20:15
**off**
44:20
**office**
9:2
**offices**
1:19
**often**
16:15
**okay**
5:9,15 6:18 7:18 8:2 9:3 11:4 14:3,10,13 15:2 16:5 18:8,15 20:5 22:12,14,16,20 22:21,22,25 24:18 25:4,18 27:16 28:5 31:9 34:10,24 35:8 35:21 37:14 38:19 38:22 39:2
**on**
1:20 3:3,19 9:4 10:15 11:15 12:20 15:13

17:3,8 20:2,18 21:19 23:6,23,23,24 23:25 24:4,9 25:5 25:14,15 26:5 28:17 28:18 30:23 35:3 38:8 42:4 43:9 44:23
**one**
7:8 8:14 9:11 10:13 11:16 26:25 34:17 34:18 36:3 41:10
**ones**
9:9 10:12
**only**
5:6 39:21
**operating**
29:18
**or**
8:10,24 9:16,25 10:14 11:16 12:12 15:19 25:23 26:12 36:7 41:3,13,13,14 44:2 49:5,5
**order**
36:24 44:15
**orders**
20:5 22:19
**original**
15:11 16:13 28:23
**other**
7:9 9:22 14:4 19:8 33:18 34:2 35:15 39:13
**our**
45:3
**out**
24:25 25:3 26:11 32:20,23 33:8,10 35:15 37:15 39:7 43:13 44:2,3
**outside**
14:17
**over**
7:5 12:7
**overall**
16:10 17:10 21:4
**overpaid**
40:3,7
**own**
12:25 13:3,12,14,16 13:18,21
**owned**
8:8
**owner**
7:22,23
**owners**
8:8
**owns**
13:5,14,25
**O'Connor**
2:11 3:18,18 6:5 8:12 10:25 12:2 13:13 14:2 16:25 17:17 18:21 20:9 23:15 26:7,23 27:6,10,23 29:12 32:16 33:4 34:6,23 37:3,18 39:9,24 40:5,16 44:18

**P**

**P**
2:2,2
**page**
9:4 14:24 28:18 34:18 46:6,12 47:5 47:5,5,8,8,8,11,11 47:11,13,13,13 50:3
**pages**
6:23 49:3
**paid**
44:10
**paragraph**
15:3,8 28:9,18 29:14 32:5 41:5
**paragraphs**
28:6
**Park**
9:13
**Parkview**
15:10 16:22 17:6,16 17:24 19:24 27:19 29:7 31:21
**particulars**
35:23
**parties**
20:15,23 23:22 24:4
**partner**
4:14 5:10
**partners**
4:13,15,17,20,24
**Patrick**
2:11 3:18
**pay**
23:12 25:7 26:4
**paying**
33:11,17,18,25
**payment**
21:20 23:25
**pays**
38:3
**percent**
28:12 31:3 41:8
**period**
8:9
**periodic**
12:7
**perspective**
21:8 23:8
**Peter**
5:11
**piece**
7:17,23 9:16
**placated**
20:7
**place**
24:17 26:20
**Plaintiffs**
1:11
**plan**
25:15 30:13,24 31:8 32:18
**play**
27:20
**please**
3:10 27:25 42:15
**plus**
16:16 24:10 28:24
**point**
16:6 28:16 36:25 40:9,10
**points**
16:18
**position**
5:14 42:18,19
**Possession**
2:5
**possibility**
40:3
**possible**
15:22
**potential**
16:19
**precedent**
17:22
**preexisting**
36:16
**premise**
43:3
**PRESENT**
2:13
**presumably**
37:25
**previously**
8:3
**Princeton**
9:12
**prior**
9:15
**pro**
25:15 29:20,21,24 32:7 42:5 43:12,22 44:12
**probably**
6:9
**problematic**
15:6
**process**
11:24 12:15
**Production**

47:5
**Professional**
48:7
**project**
8:24,25 9:7,13 10:5,8 10:16 15:23,23 16:11,20 18:6,10,16 18:24 20:18 21:5 22:6 23:25 24:7,15 25:5 26:6,10,13 29:11 32:15 33:13 33:23 35:2,3,24 36:9 37:5,6,8,10 38:13,17 39:13,22 41:21 42:6 43:10,10 43:19,22,23 44:12 44:14
**projected**
29:25 34:3 35:17 39:5
**projections**
29:22
**projects**
10:22 30:9 32:7
**properties**
9:4,14
**property**
6:13,14 7:20 8:4,9,14 8:21 11:15 14:5 19:19 29:16 31:14 31:15 32:2 33:2,14 33:19 34:3 36:25 41:14
**propounded**
49:5
**Public**
1:21 3:24 49:14
**publicly**
34:13
**purchased**
8:4 42:11,22,25 43:2
**purchasing**
7:20
**purportedly**
15:13
**purpose**
15:15
**purposes**
7:20 9:6 30:17
**pursuant**
1:18
**p.m**
1:20 45:4

**Q**

**question**
10:21 12:5 13:2 27:15,17 28:3 35:11
**questions**
47:10 49:4
**quite**
14:21

**R**

**R**
2:2 50:2,2
**range**
30:16
**rate**
16:16 24:10 28:24 29:4 32:11 44:4
**rates**
22:15 23:5 34:20
**ratio**
21:14,21,25 25:8 30:17
**re**
1:5
**read**
15:20 16:2 30:20 31:23,25 49:3
**real**
4:21 7:17,21,23,25 15:19 31:4 41:25 42:4 43:7
**really**
42:6
**reasonable**
20:13 23:3 32:25
**recall**
6:8
**Recess**
44:22
**record**
3:3 4:5 44:21,24 48:4
**refer**
29:20,24 30:4
**referring**
29:21 33:21
**refers**
18:4 31:2
**reflective**
15:18
**Registered**
48:7
**remaining**
25:7
**rent**
6:12 15:17 16:4 18:20 19:3,6,17 20:13,17,17,20 21:15,16,20,22,22 23:3,11,20,23,25 24:7,17 25:2,4,7,8 25:13 26:3,21 27:4 27:22 28:8,13,19,25 33:8,17 34:2,25 35:14,22,25 36:20 36:22 37:4,16,23 38:7,8 39:21 42:8,9 43:11,12,25 44:5,8 44:9
**Repeat**
35:11
**report**
5:16,19 6:20,24 9:4 14:25 15:8,16 16:12 16:19 17:3 18:25 28:6 34:11,18 46:13
**reporter**
1:21 3:13 48:7,12
**repositioned**
10:13
**repositioning**
9:2
**represent**
3:17
**represented**
8:3
**reproduction**
48:11
**Request**
47:5
**require**
23:11
**required**
17:14 18:16,23 23:9 23:14 25:20 39:18
**requirement**
18:4
**reset**
11:19,22,25 12:3,8 12:17,22
**residential**
31:13 32:10,11 44:5
**respect**
12:23 32:2
**rest**
5:4
**restructured**
8:11 9:16
**restructuring**
7:10 11:11,13
**result**
8:23 34:21
**resulting**
30:14 43:11
**retained**
5:22
**rethink**
36:5
**return**
16:15 41:7,12
**reviewed**
31:16,18
**right**
7:6 12:13 13:8,12,20 14:6,23 15:20 18:7 18:14 19:10,11,20 19:21,24,25 20:3,4

20:25 21:12 22:7,10 22:11,17,19,24 24:11,20 26:6 28:10 28:20 29:5,8,11,16 29:18,22,23 30:2,3 30:5,6,8,10,11,18 30:19,24 31:5 32:12 32:13,15,20 33:8,9 33:11,12,15,20,24 34:5,10,11,12,16,22 34:25 35:4,19,20,21 36:21 37:2 38:11,12 38:14,15 41:6,8,9 41:11,15 43:19 44:8 44:10
**ripped**
32:20
**risk**
28:24 39:10,11,14
**risk-free**
16:16 24:10
**ROBERT**
2:15
**Roman**
2:7 3:16 10:17
**rooms**
32:10,15
**ruling**
31:25

**S**

**S**
2:2 3:22
**Safe**
34:10,13,19,21
**said**
18:22,25 21:8 23:16 26:15 31:6 33:7 43:6,21,21
**same**
48:11 49:4
**sat**
20:23 23:22
**say**
6:14 8:15 16:5,20 17:2 24:12,18 28:17 29:4 30:12 32:5 35:17 36:14,21,22 36:22 37:10,11 38:16
**saying**
25:4
**says**
34:2,19
**Schiller**
1:19 2:4
**Secondarily**
23:19
**secondary**
17:3,4
**see**
5:15 7:8 8:2,14,19 9:3 16:22
**seen**
14:16 25:16
**senior**
39:15
**sense**
21:23 24:14,16
**September**
1:20 3:4 48:7
**service**
15:12,13 18:19 21:12 21:13,25 23:13 24:22,24
**Services**
1:24 2:16
**set**
17:10 28:9 31:8
**several**
13:5
**Sheet**
49:6
**should**
6:12 15:15 16:6 17:4 19:17 20:22 23:17 23:18 24:19
**shows**
18:10
**sides**
36:13
**Significantly**
22:17
**simple**
7:17 42:17
**simultaneously**
8:5
**since**
4:25 5:7
**Sir**
4:4
**site**
14:14
**sits**
13:11
**sitting**
20:15
**situation**
16:11 22:4 23:21 36:12
**situations**
7:18 25:10
**so**
5:2 7:18 8:6,7,19 9:14,24 10:20 11:4 12:15 13:10,15,21 14:11 16:21 18:16 20:23,25 21:8 23:10 24:4,18 26:2 28:7 28:22 30:25 31:6 32:4 34:25 35:21 36:5 37:15,22,25 38:13,16 39:3 43:6 44:6,13
**solely**
24:9
**some**
7:20 8:9 9:21 12:6 14:22 16:6,16,17 18:13 24:10 29:20 29:24 31:18
**something**
10:23 17:9 23:23
**sometimes**
38:10
**sources**
18:11
**specific**
22:2
**specifically**
18:4
**spending**
38:6
**spent**
37:13,21
**spread**
28:25
**SRO**
14:8 20:6 22:23
**stabilization**
33:2 44:15
**stabilized**
16:20 30:16 32:8 37:11,12
**Stachenfeld**
2:9 3:19
**stack**
38:8
**Stanworth**
9:12
**start**
16:6 19:2 29:15
**starts**
16:3
**state**
1:21 3:11 4:4
**stated**
10:12
**STATES**
1:2
**stay**
28:18
**stick**
29:5
**Stipulations**
47:8
**stop**
20:5 22:19
**stream**
43:25

**Street**
9:11
**structure**
37:24
**stuck**
14:12
**subordinate**
19:4
**Subscribed**
49:10
**substance**
49:5
**sudden**
38:5
**sunk**
39:4
**supervision**
48:12
**support**
15:7 20:20,20 37:6 47:3
**supposed**
38:11,17,20,24
**sure**
4:6 6:19,25 12:14 20:25 23:5 26:16
**swear**
3:13
**sworn**
3:23 48:4 49:10

**T**

**T**
46:10 50:2
**table**
20:16,24 23:22
**take**
5:15 23:12 26:3 28:5 40:2,6,13 44:2,3,19
**taken**
1:18 26:11,20
**takes**
38:18 39:10,12
**taking**
15:23
**talk**
16:15 17:6,7
**talking**
12:21 36:2
**tear**
14:5
**telling**
10:17 21:3 25:24
**tells**
35:14
**tenants**
14:8 20:6 22:23
**tenant's**
30:13
**term**
43:13
**terms**
15:14 35:4
**testified**
3:24 31:20
**testimony**
27:5,19 31:23 32:3 48:5
**than**
5:8 14:7 41:14
**Thank**
44:25
**that's**
6:20 10:9,21 21:6,7 25:21 30:23 31:8 35:20 36:19,21,21 38:3 39:10,11,14
**their**
3:11 7:24 8:18 31:23 34:18 39:13,14
**themselves**
3:11 15:5
**then**
16:18 18:9 19:7 20:19 24:18,25 25:4 28:11,12,16,16 29:2 29:14 30:4,12 33:10 35:15 37:7 41:7 43:11,15 44:3,6
**there**
4:17 9:22 11:4 16:20 16:21 18:9 19:7 20:2,5,6 24:2 25:10 25:18,21 31:7,11 32:14 34:19 36:7 37:25 38:2 39:6 44:6
**Therefore**
19:5
**therein**
49:5
**these**
8:7 9:3 10:5,11,22 11:18 40:4
**they**
15:7 20:7,16,18 24:2 24:3 38:11 40:7,8 40:10,14 42:25 43:2 43:3
**thing**
14:4 28:8 29:2 36:4,4
**things**
22:12 23:18 24:15 34:17,19 38:10,14 43:21
**think**
8:6 11:14 21:9,17,20 23:17 24:13 25:14 25:16 30:25 31:6 36:11,12,14 37:17 42:6,7 43:7 44:11 44:13
**thinking**
24:5,15 36:15,17
**this**
3:6 5:13,17,21,22 6:12 12:23 14:4,12 15:14,22,25 16:21 17:2,12 18:16,23,25 19:14,18,18 20:11 22:3,5,6 24:7,14 25:9 26:13 28:16 29:16 30:12,16 31:12,12 32:15 33:2 33:13,23 36:6 37:5 37:5,6,7 38:7 40:19 41:21 43:9,13 44:15 45:2 48:11 49:11
**those**
7:13,18 9:14 13:16 14:20 22:13 23:4 35:3 36:23 41:10 42:6,13
**though**
39:20
**thought**
5:9 23:18 26:16 27:13
**three**
13:7 17:13 38:17 40:4,21,25 41:18 42:13,14,22,24
**through**
9:20
**time**
3:5 8:9 27:2 37:12 42:2 44:19,21,24 45:3,4
**times**
24:11 33:7 34:11
**today**
15:17 23:3 24:6,7 27:22 40:15
**Today's**
3:4
**told**
31:9
**too**
14:4 40:10,14,20,25 41:4
**took**
28:10 38:21 39:6 40:7
**top**
20:3
**totality**
24:13
**towards**
16:18
**traded**

34:13
**transaction**
17:12 19:10,14,18 20:14
**transcript**
48:11
**transcription**
49:4
**treasury**
28:24
**treating**
19:13
**true**
48:4
**try**
40:19
**trying**
37:15
**turn**
6:23 14:24
**turns**
32:23
**two**
4:18 7:8 31:20 41:6
**type**
24:7
**typical**
12:15,17
**typically**
7:19,22 8:13,14 11:25 12:21

**U**

**U**
3:22
**Uh-huh**
5:3 7:11 10:4 29:19 33:24
**uncertainty**
30:13
**under**
18:19 31:7 36:16 37:16,23 42:16,25 43:3 48:12
**underlying**
13:10 15:4
**understand**
12:4 13:2 19:12 28:7 37:19
**understanding**
12:6 20:11 43:2
**undeveloped**
9:19,21,24
**undivided**
13:15
**unencumbered**
12:19
**UNITED**
1:2
**units**
32:11,11 40:4,21,25 41:19 42:11,13,17 42:23,24
**University**
9:12
**unless**
48:11
**up**
22:15 23:5,7 24:9,24 38:5 44:5
**upon**
13:10 33:2 44:15
**us**
39:6
**use**
12:20 32:9
**used**
26:5 30:15 31:4
**uses**
15:10 18:11

**V**

**v**
3:8,22
**vacant**
12:18
**valid**
21:7
**Valuation**
30:21
**value**
12:17,22 41:13,18,21 41:24 42:4,10,15,17 42:18,19,21 43:7 44:16
**valuing**
12:18 42:12
**versus**
31:14
**very**
22:23 38:14
**Via**
2:12,14
**video**
3:6
**Videographer**
2:15 3:2 44:20,23 45:2
**Videotaped**
1:18
**visited**
14:14
**vital**
21:6

**W**

**want**
10:15 12:4 14:24 26:25 27:15 34:25 35:8,22
**wanted**
41:12,17
**wants**
34:2
**was**
1:19 3:24 5:25 6:5,11 8:10,16,17,25 9:5 9:16,18,22,22,24,25 10:17 11:4 14:18,18 14:20,21 18:6 19:16 20:17,21,24 22:9 24:2 26:11 27:3 30:5 31:11,19 37:10 37:11,12,22 38:7,17 38:24 40:20,25 41:14,18,20,22 42:10,18 43:2,14,22 43:22,23 48:4
**wasn't**
10:20
**way**
5:8 10:13,19 11:14 11:16 19:8 29:21 37:6 38:11 39:14 44:2
**ways**
42:7 44:7
**we**
3:3,13,16 19:9 24:19 33:22 37:15 38:23 39:3,4,7 43:6 44:20 44:23,25
**well**
12:6 23:7 34:9 36:14 37:19
**Wells**
4:13,14,19,23
**went**
39:22
**were**
5:9 6:7,10 10:12,13 11:21 14:20 19:9 20:5,18 36:23 42:25 43:2
**weren't**
22:23
**West**
9:11
**what**
4:19 6:10,11,20 7:14 8:16 10:7 11:24 12:3,4,15 13:3 15:15 18:25 19:3,7 19:12,16 20:10,12 20:22,24,25 21:18 21:23 22:8 24:13,16 24:25 25:24 26:4,18 29:15 32:17 33:10 33:21,25 35:8,14 36:11,21,22 37:5,5

37:6,21,22 38:3,6 40:8,17,17 41:18,19 41:20,20,24 42:10 42:16,16,20,21 43:6 43:11,21,22,22
**whatever**
25:5 26:13 33:14 43:13
**what's**
24:6 42:3
**when**
6:7,14 14:18 21:17 23:13 24:12
**where**
4:7,12 10:8 16:9 20:11 23:22 36:25 39:17
**whether**
27:8 31:12,19 40:14 40:20,24 41:3
**which**
9:9 13:10 15:12,16 16:15 17:14 18:6 25:11 28:12,25 32:7 42:7 43:25 44:6
**while**
5:2 22:24
**who**
5:10,22 8:4,8 20:6 31:9
**whole**
36:4
**whom**
42:16
**why**
39:14
**will**
3:10,13,14 6:17 26:13 33:14 37:8
**wind**
38:5
**with**
7:3 12:10,23 13:16 14:11,12 15:14,25 16:3,6 17:16,23 19:2 20:11 22:3 24:9,24 28:19 29:5 31:3,24 32:2,6 33:18 36:10 37:8,9 40:15 44:5
**within**
10:6,10
**without**
15:23 37:21
**witness**
3:13,23 27:25 48:3,5
**witnesses**
31:20
**work**
4:19,22 20:5 22:19
**works**
39:25
**worth**
17:16 19:22
**would**
7:5,12 8:7 9:13,20 10:18 13:16 14:7 18:23 19:9,13 20:13 25:12 32:22 33:2,5 37:5,22 41:19,24 42:2,5,6,7,12 43:3 43:11,18,19,20 44:14,18
**wouldn't**
32:23 33:3 37:20
**wow**
5:8 35:18
**www.MagnaLS.com**
1:25

**X**

**x**
1:4,7,15 46:3,10

**Y**

**Yards**
1:19 2:5
**years**
7:6 14:22 19:19 22:10,13 38:13,16 38:18,18,23 39:3 44:2,3,3
**yes**
6:6 7:13 9:8 10:11 11:20,23 13:9 14:18 15:21 22:18 24:12 26:10,14 35:6,10 41:16,23 44:17
**yield**
23:6 28:11 42:3,4 43:8
**York**
1:20,20,22 2:6,6,11 2:11
**younger**
5:8
**your**
4:4,7 5:4,5,10,16 6:20,24 9:4 12:4,24 13:3,11,18,25 14:24 16:12,19,23 17:13 18:20 21:10 23:4 25:5,7,19 27:5,19 28:6,7,16,22 30:5 32:6,22 33:3 34:11 35:11 41:5,6,11 44:16
**you've**
11:8 14:16 33:7

**Z**

**Z**
3:22
**Zoom**
2:12,14

**$**

**$178**
40:20
**$207**
15:10 17:15 19:22 27:2,11,17
**$280**
37:21,24 38:6

**1**

**1:10**
1:20 3:5
**10**
44:3
**10001**
2:6
**10022**
2:11
**11**
1:10 24:8
**11,125,000**
28:13
**11.125**
29:2
**113th**
9:11
**1245**
9:10
**14**
28:18
**140**
32:10
**15**
30:10 32:24 38:24 39:5,7
**1701/1706**
1:6,8 3:8
**1702**
1:9
**178**
16:14 24:11 40:24 41:7,14
**1998**
4:25

**2**

**2**
1:20 3:4 48:7
**2:06**
44:21
**2:19**
44:24 45:3,4
**200**
38:20
**2022**

15:11 17:13 27:3 29:25 40:14,18,22 41:18,22
**2024**
15:14 29:25 32:7
**2025**
30:7
**2026**
1:20 3:4 23:11 27:5 40:15,18 41:2 48:7 49:11
**207**
26:18
**21**
15:8
**23**
15:3 32:8
**23.3**
30:2
**242**
32:11
**25**
14:22
**25-11853**
1:11
**28**
7:5 31:3
**280**
37:13,17 38:21 39:3 39:5
**295**
8:14 11:2

**3**

**30**
38:24
**31.6**
30:2
**32nd**
4:9
**34**
28:10 41:5
**356W58**
1:13 2:9 3:9,20
**36**
28:6 29:14
**37**
28:6 32:6

**4**

**4**
46:7
**400**
9:10

**5**

**5**
46:13
**50**
34:18
**5055**
9:10
**515**
4:9
**55**
1:19 2:5
**555**
2:10

**6**

**6**
6:23 9:4
**6.25**
28:12 41:7
**61**
32:9
**624-6221**
1:24

**7**

**7**
6:23 9:4,13

**8**

**8,750,000**
28:19
**8.75**
24:18 29:4
**866**
1:24

**9**

**9**
14:24
**99**
44:2