**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>HUDSON 1701/1706, LLC, *et al.*,<br><br>Debtors. [1] | Chapter 11<br>Case Nos. 25-11853 (KBO)<br>(Jointly Administered)<br>**Hearing Date:**<br>**November 18, 2026 at 2:00 p.m. (ET)**<br>**Objection Deadline:**<br>**November 11, 2026 at 4:00 p.m. (ET)** |

**DEBTORS' OMNIBUS RESPONSE IN OPPOSITION TO: (I) 356W58 GROUND LESSOR LLC'S MOTION FOR AN ORDER COMPELLING DEBTORS TO ESCROW RENT; AND (II) 356W58 GROUND LESSOR LLC'S OMNIBUS OBJECTION TO THE FEE APPLICATIONS OF THE DEBTORS' PROFESSIONALS**

Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "**Debtors**"), the Debtors in the above-captioned, jointly administered, chapter 11 bankruptcy cases (collectively, the "**Chapter 11 Cases**"), by and through their undersigned counsel, file this *Omnibus Response in Opposition* (the "**Opposition**") in response to: (I) the motion [Dkt. No. 749] (the "**Second Rent Escrow Motion**" or "**Motion**") filed by 356W58 Ground Lessor LLC, the purported ground lessor to the Debtors (referred to herein by the acronym of its ultimate parent, "**MSP**"), renewing its prior request for entry of an order compelling the Debtors and Parkview Financial REIT, LP, as the Debtors' debtor-in-possession lender (the "**DIP Lender**") to draw down on the Debtors' debtor-in-possession loan facility with the DIP Lender (the "**DIP Facility**") and escrow the full amount of

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

contractual rent called for under the Ground Lease for the period after May 31, 2026; and (II) MSP's *Omnibus Objection to the Fee Applications of the Debtors' Professionals* [Dkt. No. 745] (the "**Fee Objection**" and collectively with the Second Rent Escrow Motion, the "**MSP Pleadings**"). In support of this Opposition, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The MSP Pleadings are premised on the unfounded assertion that the DIP Facility has expired, no DIP financing is available, and that therefore administrative insolvency exists. However, this "sky is falling" argument is incorrect.

2. In this regard, it is critical to recognize that MSP's counsel never even conferred with the Debtors' counsel to ascertain whether the DIP Facility is in fact continuing. Had MSP's counsel done so, it would have learned that a new stipulation to extend the DIP Facility approved by the Court pursuant to the Final DIP Order entered on January 14, 2026 [Dkt. No. 255] and the Supplemental Final DIP Order entered on May 21, 2026 [Dkt. No. 436] (which increased the DIP Facility from $32,762,104 to $43,538,530) was in process. Indeed, the Debtors and the DIP Lender have finalized the terms of the continued DIP Facility (*nunc pro tunc* to September 1, 2026) and anticipate filing their *Stipulation Regarding Extension of DIP Facility* with the Court on November 11, 2026, substantially contemporaneously herewith (the "**DIP Financing Extension Stipulation**").

### A. The Second Rent Escrow Motion

3. Rather than be encumbered by such inconvenient facts, MSP's counsel opted to simply assume DIP financing had expired and proceed to file essentially the same motion as its prior *Motion for an Order Compelling Debtors to Hold Rent Due Under the Ground Lease in Escrow* filed on July 2, 2026 [Dkt. No. 573] (the "**First Rent Escrow Motion**"), seeking the

escrowing of rent to which MSP had not, and has not, yet established any entitlement. The Court previously denied the **First Rent Escrow Motion** on the record of the hearing conducted on July 16, 2026, and should do the same here, as the circumstances of these Chapter 11 Cases have not changed pending the trial in December to determine whether the Ground Lease is a true lease at all (the "**Recharacterization Action**").

4. The fact is that all administrative expense claims in these Chapter 11 Cases have been paid to date, totaling more than $30 million. There simply is no administrative insolvency. Boiled down, MSP's argument is that ***if*** MSP is granted a claim in the future for additional administrative expense rent and ***if*** there is an administrative insolvency at that time, then MSP would be prejudiced. All of that, of course, is pure speculation—unfounded claims that the sky is falling.

5. Such hyperbole (or, more specifically, recycled hyperbole) filed on the eve of trial in the Recharacterization Action should not be countenanced.

**B. The Fee Objection**

6. The perniciousness of the Second Rent Escrow Motion is multiplied by MSP's Fee Objection. Notably, the Fee Objection is directed solely at the Debtors' professionals and no other administrative creditors. On the eve of trial in the Recharacterization Action, the Fee Objection seeks to suspend all payments to the Debtors' professionals pursuant to monthly and quarterly interim fee applications. Apart from the flawed premise of an unsubstantiated administrative insolvency, the timing of the Fee Objection appears to be an attempt to hamper or interfere with the Debtors' prosecution of the Recharacterization Action. It will not achieve that goal.

7. In any event, the Fee Objection fails because (a) the DIP Financing Extension Stipulation demonstrates that there is not an administrative insolvency in the Chapter 11 Cases,

and (b) the Debtors' professionals' fees to date ***are protected by a carve-out under the Final DIP Order*** as to which MSP has no right to interfere.

## BACKGROUND

### A. The Ground Lease and Post-Petition Expenditures by the Debtors

8. The Debtors and MSP are parties to a certain purported Ground Lease (the "**Ground Lease**") pertaining to Condominium Units 1701, 1702, and 1706 located at 353-361 West 57th Street a/k/a 358-366 West 58th Street, New York, New York (the "**Property**").

9. The Ground Lease was amended four times prepetition, most recently pursuant to that certain Fourth Amendment dated March 29, 2024, (the "**Fourth Amendment**"). Under Section 3 of the Fourth Amendment—executed less than two years after commencement of the Ground Lease—base rent under the Ground Lease was increased ***by almost 37%*** from $6,400,000 (payable at a rate of $533,333.13 per month) to $8,750,000 (payable at a rate of $729,166.67 per month (the "**Base Rent**")).

10. On October 22, 2025 (the "**Petition Date**"), the Debtors commenced the Chapter 11 Cases.

11. On April 22, 2026, the Court entered its *Order Granting Debtors' Motion for an Order Determining That Purported Ground Lease, if a True Lease, Is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Dkt. No. 443] (the "**Section 365 Order**"). Prior to entry of the Section 365 Order, during the first seven months of the Chapter 11 Cases, through May 2026, in order to avoid potentially being in violation of section 365(d)(3) of the Bankruptcy Code if the Ground Lease were determined to be a lease of nonresidential real property, the Debtors paid the full amount of the Base Rent to MSP, for a total of $5,104,169 in post-petition rent.

**B. DIP Financing**

12. In connection with the commencement of their Chapter 11 Cases, on November 12, 2025, the Debtors filed their *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [Dkt No. 56] seeking authority to incur DIP Loans and use Cash Collateral (as such terms are defined therein) in order to fund the Debtors' Chapter 11 Cases.

13. The Court granted interim relief [Dkt. No. 82] and final relief [Dkt. No. 255], authorizing, among other things, the Debtors to obtain debtor-in-possession financing pursuant to the DIP Facility.

14. On April 7, 2026, the Debtors filed the *Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order* [Dkt. No. 400] (the "**Supplemental DIP Motion**").

15. On April 20, 2026, the Debtors submitted a *Notice of Filing of Further Amended Budget Related to the Motion of the Debtors to Increase DIP Commitment and Modify and Extend Approved DIP Budget Under Final DIP Order* [Dkt. No. 430 at Ex. A].

16. On April 21, 2026, the Court granted the Supplemental DIP Motion over the objection of MSP and entered the Supplemental Final DIP Order dated April 22, 2026 [Dkt. No. 436].

17. The Debtors and the DIP Lender, in consultation with the Official Committee of Unsecured Creditors, have finalized the terms of the continued DIP funding (*nunc pro tunc* to

September 1, 2026) and anticipate filing their DIP Funding Extension Stipulation with the Court on November 11, 2026, substantially contemporaneous herewith.

**C. The Rent Determination Motion**

18. As a result of the Section 365 Order, MSP's entitlement to postpetition rent is governed by section 503(b)(1)(A) and measured by the benefit of the Ground Lease to the Debtors' estates, not section 365(d)(3)'s ostensible requirement of contract-rate rent.

19. Therefore, on June 2, 2026, the Debtors filed their *Motion for an Order Determining Amount of Prospective Post-Petition Monthly Rent Due as an Administrative Claim* [Dkt. No. 524] (the "**Rent Determination Motion**"), requesting that this Court determine the amount due to MSP for monthly rent as an administrative expense under section 503(b)(1)(A) of the Bankruptcy Code.

20. On June 16, 2026, MSP filed an objection to the Rent Determination Motion. [Dkt. No. 553].

21. On June 17, 2026, the parties discussed the Rent Determination Motion with the Court during a status conference conducted by the Court.

22. On September 9, 2026, the Court conducted an evidentiary hearing with respect to the Rent Determination Motion, in which the Debtors and MSP each presented the testimony of expert witnesses regarding the appropriate amount due to MSP for monthly rent as an administrative expense. The Court reserved judgment on the Rent Determination Motion.

**D. The First Rent Escrow Motion**

23. On July 2, 2026, MSP filed the First Rent Escrow Motion seeking an order compelling the Debtors to draw upon the DIP Facility for the full Base Rent due in June 2026, July

2026, and August 2026 under the Ground Lease, and to deposit such amounts into escrow pending resolution of the Rent Determination Motion. [Dkt. No. 573].

24. On July 9, 2026, the Debtors filed an objection to the First Rent Escrow Motion. [Dkt. No. 583].

25. On July 13, 2026, the Debtors filed a reply in further support of the First Rent Escrow Motion. [Dkt. No. 585].

26. On July 16, 2026, the Court denied the First Rent Escrow Motion during an omnibus hearing conducted by the Court.

## BASIS FOR OBJECTION

### A. The Court Has Already Considered and Rejected MSP's Requested Relief

27. Through the Second Rent Escrow Motion, MSP seeks substantially the same relief that it previously sought through the First Rent Escrow Motion. Indeed, MSP admits this fact: "this motion is an extension of Landlord's July 2, 2026 motion seeking to compel the Debtors to draw down on Parkview's DIP loan and place into escrow the amount of all accrued rent . . ." Mot. ¶ 2.

28. The Debtors agree—this is nothing more than a recycling of the First Rent Escrow Motion, just weeks before the trial regarding whether the purported Ground Lease is even a true lease for purposes of section 365 of the Bankruptcy Code. That MSP is re-hashing old arguments is abundantly clear from the very first section of its argument, titled "Landlord is Entitled to an Administrative Expense Claim Against Debtors." Mot. at 7.

29. In support of its renewed request, MSP claims that "[t]he facts and circumstances have significantly changed since July" (Mot. ¶ 34) because "there is no DIP loan available to satisfy ongoing administrative expenses." Mot. ¶ 1.

30. However, these assertions are entirely unsubstantiated and inaccurate.

31. Had MSP conferred with the Debtors and raised the issue of continued DIP funding, the Debtors would have provided assurances that DIP financing is continuing in these Chapter 11 Cases and the DIP Funding Extension Stipulation was in process.

32. MSP also resorts to gross speculation about the prospective outcome of the Rent Determination Motion and the status of DIP financing at that future time: ". . . Landlord ***is hopeful*** that the Court will agree that the contract (Ground Lease) rate should be applicable. Any ruling on the Rent Motion, however, would be of little utility ***if*** the Debtors have no funds to make payment." Mot. ¶ 4 (emphasis added).

33. As with the First Rent Escrow Motion, MSP's hoped-for results are not a basis for causing the Debtors to draw down on their DIP funding, incurring the costs thereof, and essentially providing MSP with a pre-judgment attachment. Nor does MSP's hypothetical that there will be no DIP funding, unsupported by the record of the Chapter 11 Cases, provide a new basis for the relief it requests.

34. The Court should once again reject MSP's requested relief in the Second Rent Escrow Motion.

**B. The Court Should Decline to Order Immediate Payment of Rent Due as An Administrative Expense**

35. In addition to its request for an escrow of the full amount of Base Rent, MSP has also moved to compel the immediate payment of all rent due to MSP as an administrative expense upon resolution of the Rent Determination Motion. In light of the fact that the Rent Determination Motion itself has been taken under advisement and remains unresolved, this request should be denied as premature.

36. To the extent that MSP's request is premised *sub silentio* on MSP's unfounded speculation that DIP financing will be unavailable to pay the administrative expenses of the

Chapter 11 Cases when they come due, courts have previously rejected that as a proper basis to order the immediate payment of administrative expenses. *In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (denying request for immediate payment where "the only argument that [claimant] makes in support of immediate payment is the *possibility* that the Debtors will not be able to pay the section 503(b)(9) claims in full.").

37. Moreover, as the authority cited by MSP expressly states, immediate payment of an administrative expense requires a showing "that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *See* Mot. ¶ 42 (citing *In re Global Home Products, LLC*, 06–10340 KG, 2006 WL 3791955, *3 (Bankr. D. Del. Dec. 21, 2006)).

38. MSP has not demonstrated that that the immediate payment of rent following the resolution of the Rent Determination Motion is a "necessity."[2]

**C. MSP's Fee Objection Should Be Denied**

39. MSP's Fee Objection, directed solely at the Debtors' professionals, is premised on the false assertion that DIP financing has ceased and therefore payments to the Debtors' professionals should cease to avoid a disparate impact amongst administrative expense creditors. This Objection should be denied.

40. First, as stated, the threshold premise that DIP financing has ceased and an administrative insolvency exists—born from an active effort to avoid learning facts to the contrary and an active effort to ignore that all administrative expenses to date, totaling approximately $30 million, have been paid in full—is false.

[2] *See also Matter of Cont'l Airlines, Inc.*, 146 B.R. 520 (Bankr. D. Del. 1992) ("The timing of payment of an administrative claim is at the sound discretion of the court. Most courts postpone actual payment until confirmation of a plan." (citations omitted)).

41. Second, the Fee Objection overlooks the fact that, pursuant to the Final DIP Order, the Debtors' professionals' fees are covered by a carve-out, as follows:

> As used in this Final Order and the DIP Loan Documents, "Carve-Out" means the sum of: (i) to the extent allowed at any time, all unpaid professional fees and disbursements incurred at any time prior and on the date of to the delivery of the Carve-Out Trigger Notice (as defined below) ("Allowed Professional Fees") by the Debtors and the Committee for any of their respective retained professionals in the Chapter 11 Cases (the "Case Professionals"), in an aggregate amount not to exceed the amounts set forth in the then existing Approved Budget in the applicable line for such Case Professionals prior to the Carve-Out Effective Date; (ii) all allowed and unpaid professional fees and expenses incurred by the respective Case Professionals following the delivery of the Carve-Out Trigger Notice in an aggregate amount not in excess of $1,000,000; . . . .

Final DIP Order at ¶ 36. Thus, since all fees requested by the Debtors' professionals to date—including those subject to the Fee Objection—fall within the allowed amounts in the DIP budget, they would be treated as part of the Carve-Out in the event of a Carve-Out Trigger Notice and would not contribute to an administrative insolvency at all. Further, upon a Carve-Out Trigger Notice (which has not occurred), the Carve-Out includes an additional $1,000,000 of allowed professional fees and expenses. This is an additional buffer against the professional fees contributing to or impacting an administrative insolvency (again, in the event of a Carve-Out Trigger Notice, which has not been issued).

## CONCLUSION

For the foregoing reasons, the Debtors respectfully submit that MSP's Second Rent Escrow Motion and Fee Objection should both be denied.

DATED: Wilmington, Delaware
November 11, 2026

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ William E. Chipman, Jr.*

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
olivere@chipmanbrown.com

BOIES SCHILLER FLEXNER LLP
Robert D. Gordon (admitted *pro hac vice*)
Michael M. Fay (admitted *pro hac vice*)
Jenny H. Kim (admitted *pro hac vice*)
Sabina Mariella (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Email: rgordon@bsfllp.com
mfay@bsfllp.com
jkim@bsfllp.com
smariella@bsfllp.com

*Counsel for Debtors and Debtors in Possession*