**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hudson 1701/1706 LLC, | Case No. 25-11853 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: Nov. 18, 2026 at 2:00 p.m. (ET)** |

**365W58 GROUND LESSOR LLC'S REPLY IN SUPPORT OF ITS (A) MOTION FOR PROTECTION AND SUBSEQUENT PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM AND (B) OMNIBUS OBJECTION TO THE FEE APPLICATIONS OF THE DEBTORS' PROFESSIONALS**

356W58 Ground Lessor LLC ("Landlord"), through its undersigned counsel, files this reply ("Reply") in further support of (a) its November 4, 2026 motion [D.I. 749] (the "Rent Protection Motion") for an order compelling the Debtors to escrow the full amount of rent owed under the Ground Lease or otherwise demonstrating wherewithal to satisfy all accruing rent, and, following the Court's ruling on the Debtors' *Motion for an Order Determining Amount of Prospective Post-Petition Monthly Rent Due as an Administrative Expense Claim* [D.I. 524] (the "Rent Motion"), directing payment of all rent under the Ground Lease and (b) its November 2, 2026 objection [D.I. 745] (the "Fee Objection");and in response to the *Debtors' Omnibus Response in Opposition to: (I) 356W58 Ground Lessor LLC's Motion for an Order Compelling Debtors to Escrow Rent; and (II) 356W58 Ground Lessor LLC's Omnibus Objection to the Fee Applications of the Debtors' Professionals* [D.I. 752] (the "Objection"), and in support hereof respectfully states as follows:[2]

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Rent Protection Motion.

## PRELIMINARY STATEMENT

1. The Debtors' Objection is misleading in the extreme. The Debtors would have this Court believe that there is no risk of administrative insolvency here because the Debtors and Parkview have agreed to extend the previously expired DIP facility with a revised budget covering expenses through December. The reality, however, is that the extension of the DIP facility does not cure the current administrative insolvency of these cases.

## ARGUMENT

2. On November 11, 2026, the Debtors filed a *Certification of Counsel Submitting Order to Extend Approved DIP Budget Under Final DIP Order* [D.I. 753] and an attached budget [D.I. 753-1] (the "Second Amended Budget").[3]

3. Contrary to the Debtors' repeated statements that there is no risk of administrative insolvency (Objection at ¶¶ 1, 4, 6, 7, 36, 40), the Second Amended Budget is already insufficient to cover the currently outstanding administrative liabilities.

4. In its Objection, Debtor wrongly asserts that Landlord's concerns have been addressed by the newly filed DIP budget. Objection at ¶¶ 1-2. The Debtors' position depends upon a ruling on the Rent Motion in Debtors' favor – even though such a ruling would be contrary to the evidence and applicable law presented to the Court on the September 9 hearing. The Debtors fail to address the likelihood that the Court will rule that Debtors failed to meet their burden to overcome the presumed applicability of the contract (Lease) rate of rent, or that the Court otherwise agrees with the force of Landlord's evidence presented on September 9. In that scenario, the Debtors would be responsible for the administrative expenses that have accrued under the Lease

[3] The Landlord has reason to believe that the official committee in this case was not consulted regarding the Second Amended Budget and did not approve it.

during the Debtors' six-month rent holiday – and the Landlord's concerns about the administrative insolvency of these cases would be apparent.

5. The Debtors do not address a critical fact about the newly filed budget: because the maximum amount of the DIP loan has not been increased, if the amounts of rent were reflected in the budget the Debtors would ***already be administratively insolvent***. This is demonstrated as follows:

- The maximum amount of the DIP facility is approximately $43.5 million. *See Supplemental Final Order (I) Authorizing the Debtors to (A) Increase the DIP Commitment and (B) Modify and Extend the DIP Budget; and (II) Granting Related Relief* [D.I. 436].
- According to the Second Amended Budget, as of the end of October the DIP loan balance was a more than $35.8 million. *See* Second Amended Budget.
- This means there was about $7.7 million in funding available as of the end of October.
- As indicated in the Landlord's Rent Protection Motion, unpaid post-petition rent is more than $5.2 million (relating to the months from June through November). Rent Protection Motion at ¶ 1.[4]
- In addition, there is $3.2 million in unpaid post-petition real estate taxes (originally due July 1, 2026). *Id.* at ¶ 32.
- Thus, over $8.4 million is currently owed under the Ground Lease.
- The $7.7 million in availability is not enough to cover even the existing $8.4 million owed under the Ground Lease.

6. Additional administrative claims are accruing during November and will accrue in December, including legal fees and December rent. Debtors have not demonstrated any means of paying those expenses and the Debtors' administrative insolvency is deepening every day.

[4] The actual amount of $5,242,558.69 is comprised of six months of base rent (which totals $4,375,000), plus $357,142.00 in default interest through October 31 and late fees of $510,416.69 as permitted under the Ground Lease. The aggregate amount is correctly stated in paragraph 1 of Landlord's Rent Protection Motion. Paragraph 31 of the Rent Protection Motion has a typographical error and incorrectly states a slightly lower amount.

7. The DIP facility does not have the liquidity to pay those expenses and the only party bearing any risk of administrative insolvency is Landlord. The Parkview-controlled Debtors' plan appears to be fund the case through the recharacterization action – and if they lose on recharacterization they will simply walk away from the now administratively insolvent Debtors, leaving Landlord to absorb the loss. That puts Landlord in the entirely inequitable position of essentially funding litigation against itself.

8. This tangible risk of administrative insolvency distinguishes the instant case from the prior cases relied upon by the Debtors and demonstrates that there is a genuine necessity here for immediate escrow of funds sufficient to pay Landlord's administrative expenses. Debtors mistakenly rely upon *In re Global Home Products, LLC* and *Matter of Cont'l Airlines, Inc.* for the proposition that there must be a "necessity" to support immediate payment of an administrative claim. Objection at ¶¶ 37-38 (citing *In re Global Home Products, LLC*, 06–10340 KG, 2006 WL 3791955 (Bankr. D. Del. Dec. 21, 2006) and *Matter of Cont'l Airlines, Inc.*, 146 B.R. 520 (Bankr. D. Del. 1992)).[5] But neither the *Global Home Products* court nor *Continental* court were faced with the possibility of administratively insolvent estates. *See e.g. Global Home Products, LLC*, 2006 WL 3791955; *Matter of Cont'l Airlines, Inc.*, 146 B.R. 520. [6]

[5] Debtors also cited *In re NE Opco, Inc.*, 501 B.R. 233 (Bankr. D. Del. 2013). Objection at ¶ 36. While NE Opco did mention the possibility of administrative insolvency, the court there was equally persuaded by the fact that the creditor failed to explain how waiting for payment of its $80 administrative claim would cause harm. *NE Opco, Inc.*, 501 B.R. at 259 (the creditor "has not presented any evidence that it will suffer a hardship from the delay in payment.")

[6] Although Debtors attempt to criticize Landlord regarding Debtors' purported intention to extend the DIP budget, Landlord was amply justified in bringing the precarious condition of these bankruptcy cases to the Court's attention. The Debtors have been operating without a budget since September 1, and their DIP loan facility expired in October. It was incumbent upon the Debtors – not Landlord – to provide disclosure to the Court and all parties in interest as to the financial wherewithal of the Debtors' estates.

9. Here there is necessity to escrow funds to pay rent. Landlord is the only party risking nonpayment if the case is administratively insolvent.[7] To make matters worse, if and when Landlord is successful in fending off Debtors' litigation, the DIP funding will have been thoroughly depleted and there will be no motivation for the Parkview-controlled Debtors to fund the case further.

10. Put another way, under the Debtors' current strategy, Landlord will never be paid.

11. If, instead, availability under the DIP loan is increased to accommodate rent (and restore the case to administrative solvency), then the Debtors could escrow rent funds and continue litigating the recharacterization action while Landlord at least has comfort that it is not funding litigation against itself. As already set forth in the Rent Protection Motion, the Debtors have repeatedly represented to the Court that rent would be paid on a current basis, and Landlord simply seeks to ensure that is possible.

12. Given the administrative insolvency of these cases, the professionals should not be paid on a preferential basis. The Bankruptcy Code does not grant professionals any priority over Landlord in respect of administrative expense claims.

13. Nor does the existence of a carveout alter this analysis. If the Ground Lease is not recharacterized (as it should not be), then the Debtors would face the choice of assuming or rejecting the Ground Lease. However, the Debtors have indicated that, absent recharacterization, they will reject the Ground Lease. Because the leasehold is effectively the Debtors' only asset, upon rejection the Debtors will have no assets. That would leave no value for the Parkview DIP loan, and no recovery in respect of the carveout.

---

[7] According to Debtors, "all administrative expense claims in these Chapter 11 Cases have been paid to date, totaling more than $30 million[,]" Objection at ¶ 4, so Landlord must assume it is the only party not being timely paid.

14. This is not how chapter 11 is supposed to work. If the Parkview-controlled Debtors wish to maintain these cases in chapter 11, there must be adequate provision made to pay administrative expenses, including rent as well as professional fees.

15. For the avoidance of doubt, if the availability under the DIP loan is increased so as to accommodate rent (and restore the case to administrative solvency), then Landlord would have no objection to payment of the professionals' allowed fees and expenses.

## CONCLUSION

For the foregoing reasons, Ground Lessor respectfully requests that the Court (i) grant the Rent Protection Motion; (ii) enter an order (a) compelling the Debtors to escrow the full amount of rent owed under the Ground Lease or otherwise demonstrate wherewithal to satisfy all accruing rent pending this Court's determination of the Rent Motion and (b) following the Court's ruling on the Rent Motion, directing payment of all Rent under the Ground Lease; (iii) enter an order denying the Fee Applications; and (iv) granting such other and further relief as is just and proper.

Dated: November 15, 2026
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Katherine S. Dute*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
mcguire@lrclaw.com
dute@lrclaw.com
venkateswaran@lrclaw.com

– and –

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
1301 Avenue of the America, 12th floor
New York, New York 10019
Telephone: (212)883-1700
Facsimile: (212)883-8883
Email: kbrett@adstach.com
poconnor@adstach.com

*Counsel to 356W58 Ground Lessor LLC*